UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA
EX REL. CORI RIGSBY and KERRI RIGSBY                                        RELATORS

V.                                                                CIVIL ACTION NO.1:06CV0433 LTS-RHW

STATE FARM INSURANCE COMPANY, ET AL.                                        DEFENDANTS

## MEMORANDUM OPINION

The Court has before it State Farm Fire & Casualty Company's (State Farm) motion [103] to disqualify plaintiffs' counsel, Bartimus, Frickleton, Robertson & Gorny, PC and Bartle, Marcus & Graves, PC, (the current attorneys) from further participation in this action. For the reasons set out below this motion will be granted.

Relators Cori Rigsby and Kerri Rigsby (the Rigsby sisters) bring this action under the False Claims Act, 31 U.S.C. §§ 3729 - 3733. The original complaint was filed on April 26, 2006, and an amended complaint was filed on May 22, 2007. The original and amended complaints identify the following individuals and firms as co-counsel for the Rigsby sisters:

    The Scruggs Law Firm
    Richard F. Scruggs (Scruggs)
    Sid Backstrom
    Zachary Scruggs

    Bartimus, Frickleton, Robertson & Gorny, P.C.
    Edward D. Robertson, Jr. (Robertson)
    Anthony L. DeWitt (DeWitt)
    Mary Doerhoff Winter (Winter)

    Bartle, Marcus & Graves, PC
    Todd Graves (T. Graves)

The False Claims Act authorizes individuals, in this instance the Rigsby sisters, to bring a civil action on behalf of the United States against anyone who knowingly presents a false claim to the government. The United States has the option to intervene in the case. If, as is the case here, the United States declines to intervene, the relator may proceed with the lawsuit on behalf of the United States, and if the suit is successful the relator is entitled to a share of the recovery. The United States is the

1

real party in interest, even when it declines to intervene.  *United States ex rel. Lu v. Ou*, 368 F.3d 773 (7th Cir.2004).

The Rigsby sisters allege that the defendants (four insurance companies, seven engineering and adjusting firms, and three individuals) have conspired to enable the insurance companies to present false claims to the United States.  These false claims allegedly took the form of requests for reimbursements of flood insurance benefits paid to policyholders following Hurricane Katrina.  The Rigsby sisters allege that the defendant insurance companies, acting in concert with the other defendants, wrongfully paid flood insurance benefits to cover property damage that was actually caused by storm winds and not by storm surge flooding.  The Rigsby sisters assert that the insurance company defendants overpaid flood claims in order to reduce their obligation to pay wind damage claims under their homeowners policies.

Typically, a home owner purchases both flood insurance and homeowners insurance from the same private insurer.  Wind damage is an excluded peril under the standard flood insurance policy, and it is among the perils usually covered by the defendants' homeowners policies.  Flood damage is excluded from the defendants' homeowners policies.  The insurer is authorized by the Flood Insurance Act to both sell the flood insurance policy and adjust flood claims, under regulations issued by the United States.  Flood claims are adjusted and paid by the private insurance company, but the flood insurance payments the insurers make are reimbursed by the United States.

The Rigsby sisters were claims managers employed by E. A. Renfroe, Inc. (Renfroe), an independent adjusting service.  The Rigsby sisters assert that they detected the defendants' alleged misconduct in the course of their work for Renfroe.  Upon their discovery of this misconduct, the Rigsby sisters made contact with Richard Scruggs, a Mississippi attorney, and told him what they had discovered.  On Scruggs's advice, the Rigsby sisters brought this matter to the attention of the Mississippi Attorney General and the United States Attorney for the Southern District of Mississippi.  The Rigsby sisters made copies of hundreds of the claims files Renfroe was handling, and they delivered these documents to the law enforcement officials they had notified.  Scruggs also obtained copies of these documents from the Rigsby sisters.

Scruggs accepted these documents with knowledge that the Rigsby sisters had purloined the documents from the claims files Renfroe was handling.  When the Rigsby sisters told their Renfroe superiors what they had done, their employment with Renfroe was terminated.  Scruggs made an arrangement with the Rigsby sisters after their employment with Renfroe was terminated, and, under the terms of this arrangement, Scruggs paid each of the Rigsby sisters an annual salary of $150,000 to act as "consultants" for his law firm in connection with hurricane damage claims. Discovery conducted in individual cases seeking insurance benefits for hurricane damage has disclosed that the "consulting" arrangement was a sham.  The Rigsby sisters were not required to perform any regular duties under this arrangement, nor were they required

to keep any regularly scheduled hours.  From the standpoint of the attorney directly involved, Scruggs, the payments under this arrangement were improper and unethical.  The Rigsby sisters were obviously material witnesses in many storm damage claims Scruggs was handling, and Scruggs knew this at the time he agreed to make these payments.  The Rigsby sisters were also Scruggs's clients, and, as I noted above, Scruggs filed this action, along with current counsel, on behalf of the Rigsby sisters.

  At the time Scruggs made the arrangement with the Rigsby sisters he was part of a joint venture known as the Scruggs Katrina Group (SKG).  The SKG was a consortium of five law firms that were actively engaged in pursuing individual insurance claims for storm damage.  Scruggs and his firm withdrew from the cases the SKG was handling (and from this case) when Scruggs and two of his associates (Sid Backstrom and Zachary Scruggs) were indicted for their parts in a scheme to bribe a state court judge. Scruggs and his associates have since pleaded guilty.

  Because the other members of the SKG knew or should have known of Scruggs's improper financial arrangement with the Rigsby sisters, Judge William Barbour (in *Shows v. State Farm Fire & Cas. Co.*, No. 1:07 CV 709) and I (in *McIntosh v. State Farm Fire & Cas. Co.*, No. 1:06 CV 1080) have disqualified the other members of the SKG and those who were associated with them from further participation in the storm damage cases pending in this court.  I made my ruling on the issue of disqualification because the other SKG members' participation in these cases, after they knew or should have known of Scruggs's improper payments, was, in my view, a ratification of Scruggs's professional misconduct.  I also disqualified any counsel the SKG or its members had associated as co-counsel to assure that the judicial process in these cases could proceed free of the effect of Scruggs's misconduct.  To this same end, I disqualified the Rigsby sisters as witnesses in these individual cases, and I ruled that any documents the Rigsby sisters had taken from Renfroe would be excluded from evidence unless these documents were obtained through the ordinary channels of discovery.

  The issue now before me is whether the Rigsby sisters' current attorneys stand on a substantially different footing from the members of the SKG and their associated counsel with respect to the improper payments Scruggs undertook, and whether the circumstances of this case or the nature of this action under the False Claims Act requires a different outcome.

  The nature of this case does not, in my opinion, change the standard of conduct required of the attorneys.  Attorneys are subject to the same ethical obligations regardless of whether they are representing a civil litigant in an insurance contract dispute or in an action under the False Claims Act.

  The current attorneys were not part of the SKG joint venture, but from the time they agreed to associate themselves with Scruggs to represent the Rigsby sisters in this action they were engaged in a cooperative effort equivalent to a joint venture under

3

Mississippi law.  See: *Duggins v. Guardianship of Washington ex rel. Huntley*, 632 So.2d 420 (Miss.1993).

I accept the representations of the current attorneys that they had no actual knowledge concerning the financial arrangement between Scruggs and the Rigsby sisters until "the late Summer or early Fall of 2006" (Robertson Declaration Paragraph 16), several months after they agreed to act with Scruggs as co-counsel in this case. There is no accusation that the current attorneys have paid the Rigsby sisters under any arrangement or given the Rigsby sisters anything of value.  Thus the question is whether, like other associated counsel, the current attorneys' relationship with Scruggs was such that they can be fairly said to have condoned or ratified this arrangement.  To determine that issue, I must consider what action the current attorneys took when they learned of their co-counsel Scruggs's on-going financial arrangement with the Rigsby sisters.

While it is questionable, at best, whether any legitimate employment arrangement (i.e. any employment arrangement that involved a regular work schedule and the performance of genuine services for fair and reasonable compensation) can ethically be made between an attorney and his client or between an attorney and any individual known to be a potential non-expert material witness in a case the attorney is handling, I will stretch a point to give the current attorneys the benefit of the doubt on this issue, and I will assume without deciding that such an arrangement is at least theoretically possible.  That said, once the current attorneys learned that there was a financial arrangement between Scruggs and the Rigsby sisters, they had a duty, in my opinion, to inquire into the arrangement in sufficient depth to determine its true nature, i.e. to determine the particulars of that arrangement.  This inquiry would necessarily have included the question whether the compensation Scruggs was paying the Rigsby sisters was for legitimate work, at a fair rate of compensation, and whether the arrangement was compatible with the ethical duties of an attorney undertaking representation of the Rigsby sisters, along with Scruggs as co-counsel, on a claim under the False Claims Act.  Had the current attorneys made and pursued that inquiry they would have discovered that the Rigsby sisters were material witnesses in many litigated cases being handled by their co-counsel, Scruggs; that Scruggs was paying each of the Rigsby sisters $150,000 per year under a "consulting" agreement; that the Rigsby sisters were performing no regularly scheduled work in exchange for these payments; and that this arrangement was not consistent with the ethical duties that govern the conduct of attorneys.

When the current attorneys learned of the financial arrangement among Scruggs, their co-counsel in this case, and the Rigsby sisters, their clients, they took no action.  While the current attorneys assert that they "affirmatively disavowed any participation in any payments to the Relators" (Relators' Response to Defendant State Farm's Motion To Disqualify the Law Firm of Bartimus, Frickleton, Robertson & Gorny, PC, Page 20 [141]) in fact they continued to represent the Rigsby sisters with Scruggs acting as their co-counsel.  I do not consider this to be a repudiation or disavowal of

Scruggs's arrangement with the Rigsby sisters.  Rather, continuing to act as co-counsel with Scruggs and taking no other action after learning of this arrangement constitutes a tacit approval, if not an outright ratification of the arrangement.  Since the Rigsby sisters were both material witnesses in many civil actions Scruggs was then handling and the relators in this action, the payments Scruggs was making were clearly improper.  Although the role of current counsel was that of attorney for the Rigsby sisters in this particular False Claims Act case, current counsel could not simply turn a blind eye to the impropriety of these payments or to the circumstances in which the payments were being made.  In light of the current attorneys' having acquired, during the course of their joint representation of the Rigsby sisters, actual knowledge of the financial arrangement among their co-counsel, Scruggs, and the Rigsby sisters and constructive knowledge that the arrangement was improper, I find that the current attorneys should be disqualified from further participation as counsel in this action.

      From the point of view of the Rigsby sisters, I see no evidence that at the time they made their arrangement with Scruggs they were aware of the ethical implications of such an agreement.  Scruggs was both their attorney and their employer under this arrangement.  The Rigsby sisters are not attorneys, and they are not bound by the rules of professional conduct that apply to Scruggs, the other members of the SKG, or the current attorneys.  But all of these attorneys who undertook to represent the Rigsby sisters were operating under these rules of professional conduct, and all of these attorneys have a duty to adhere to the ethical rules that govern the conduct of members of the bar.  Having become associated with Scruggs during the time this "consulting" arrangement was in existence, and having learned of this arrangement, the current attorneys were under a duty, at a minimum, to make a reasonable inquiry into the particulars of this arrangement, and they are charged with knowledge of what such an inquiry would have disclosed.  Current counsel had ample opportunity to see the role the Rigsby sisters were playing in litigation against State Farm since at least April 2006.  Thus, I find that the current attorneys knew or should have known that their co-counsel had entered an improper financial arrangement with their mutual clients, that the current attorneys took no action after learning of this improper arrangement, and that the current counsel should therefore be disqualified from further participation in this case.  An appropriate order will be entered.

      **DECIDED** this 19th day of May, 2006.

                                    s/ L. T. Senter, Jr.
                                    L. T. SENTER, JR.
                                    SENIOR JUDGE