# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
**EX REL. CORI RIGSBY and KERRI RIGSBY**                              **RELATORS**

**V.**                              **CIVIL ACTION NO.1:06CV0433 LTS-RHW**

**STATE FARM INSURANCE COMPANY, ET AL.**                              **DEFENDANTS**

## <u>ORDER</u>

The recent voluntary dismissal of four defendants (Rimkus Consulting Group, Inc.; Jade Engineering; Exponent, Inc.; and Structures Group) leaves this action with nine parties: Relators Cori Rigsby and Kerri Rigsby versus Forensic Analysis Engineering Corporation; Haag Engineering Company; E. A. Renfroe, Inc.*;* Alexis King; Gene Renfroe and Jana Renfroe; and State Farm Mutual Insurance Company. Defendants Alexis King, Gene Renfroe and Jana Renfroe have not yet answered the Amended Complaint, and it is not clear from the record whether these three defendants have been properly served with process.

There are dispositive motions pending, both motions to dismiss and for summary judgment, and the Relators have asked the Court to allow them to conduct discovery before they are required to respond to these motions.

Because this is a case brought under the False Claims Act (FCA), 31 U.S.C. §3729, *et seq.*, the Relators' "direct and independent knowledge of the information on which the allegations are based" is essential to their qualifying as an "original source" where, as here, there has been a public disclosure of the alleged wrongdoing in the news media. 31 U.S.C. §3730(e)(4). "Relators found to have direct and independent knowledge are those who actually viewed source documents or viewed first hand the fraudulent activity that is the basis for their qui tam suit. *U.S. ex rel. Lam, 287 Fed.Appx. 396, 400 (5th Cir.2008).* "The paradigmatic 'original source' is a whistleblowing insider." *U.S. ex rel Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co. 944 F.2d 1149, 1160 (3d Cir.1991)*

My reading of the Amended Complaint and the documents submitted in connection with the pending motions leads me to the following conclusions:

1.      The merits of this action depend on evidence that the defendants, acting in concert, systematically submitted false flood insurance claims to the United States, claims that were not valid under the terms of the Standard

Flood Insurance Policy (SFIP) used in the National Flood Insurance Program (NFIP).

2.    It is the amount of the flood insurance claims that the Relators allege to be false, *i.e.* the allegation is that the defendants acted in concert to submit flood insurance claims in an amount greater than the flood damage that actually occurred.

3.    The Relators allege that the motive for the submission of these false claims was the defendants' desire to reduce the exposure under State Farm homeowners policies, which covered wind damage, by exaggerating the extent of the flood damage where both types of policies were in force on the same property.

4.    The Relators allege that the defendants had the opportunity to submit these false claims because the insurers are authorized to evaluate and settle claims for both wind damage and flood damage, and the adjustors and engineers the insurers hired were in a position to inflate the amount of flood damage they observed.

5.    There is no allegation that the defendants ever submitted claims to the United States that were fabricated, only that the defendants acted in concert to inflate or exaggerate the amount of the legitimate flood insurance claims that they submitted.

The Court has now tried several storm damage cases and heard the testimony of various experts in the context of disputes over whether property damage was caused by wind or by storm surge flooding. I have also had the opportunity to read and study many expert reports concerning this type of dispute. While the expert testimony has stood in sharp disagreement concerning the amount of damage that was done by the winds Katrina generated, there has been no disagreement among the experts that the forces generated by storm surge flooding are far greater than the forces attributable to wind alone. The forces generated by storm surge flooding at the shore line were absolutely devastating, and, in most cases, the question is how much wind damage had occurred by the time the storm surge reached the insured property. Residences along the shore line that were subjected to storm surge flooding sustained far more physical damage than adjacent neighborhoods further inland and out of reach of this type of flooding. The many cases in which nothing remained of the insured property after the storm except its foundation occurred only in the area where storm surge flooding occurred.

After Katrina, the Federal Emergency Management Association (FEMA), the agency responsible for administering the NFIP, relaxed the rules that applied to claims under SFIPs. FEMA extended the statutory deadline for filing proofs of loss and instructed the insurance companies who sold SFIPs and adjusted flood damage claims

not to await the submission of a formal proof of loss in cases where extensive flood damage was observable in an on-site inspection.

Because the NFIP limits the amount of coverage available under a SFIP to $250,000 for a dwelling and $100,000 for its contents, and because many of the homes that were subjected to storm surge flooding were at or near the shore line, where property values were relatively high, in many instances there was overwhelming evidence that regardless of the damage from wind, the damage from storm surge flooding exceeded SFIP policy limits.  Of course, not all the homes damaged by storm surge flooding were insured under SFIPs for the statutory maximum coverages, but the extensive damage caused by storm surge flooding was also readily observable at many of these properties that had less than the maximum available coverage.

In their Amended Complaint, Relators identify two and only two specific instances in which they allege the submission of false flood damage claims: the McIntosh property situated at 2558 South Shore Drive, Biloxi, Mississippi; and the Mullins property situated at 6057 Pine Tree Drive, Kiln, Mississippi.  The defendants assert that the Mullins property was not covered by a SFIP and that the SFIP payments made on the McIntosh property were fully justified in light of the flood damage there. McIntosh collected the statutory maximum SFIP coverage on his property, and the individual who supervised and approved this payment was one of the Relators.

My review of the material from the McIntosh case discloses that the McIntosh home was inundated with approximately six feet of water.  The house was not reduced to a shell or left as a foundation only by the storm, so there was physical evidence from which the extent of flood damage could be reasonably estimated.  Because this is a FCA case and because the McIntosh property is the only property covered by a SFIP and identified in the Amended Complaint, I believe it is appropriate to conduct a hearing on the pending motions to allow the parties to present evidence concerning the question whether the payment of the flood insurance limits in the McIntosh case was justified, as a matter of law.

I am going to treat all of the dispositive motions [91] [96] [98] [106] [108] [115] [156] [160] [161] [179] [181]  as motions for summary judgment because I will hear evidence outside the pleadings.  To meet their burden of proof on their pending dispositive motions, the movants (the defendants) must show that there is no genuine issue of material fact and that the McIntosh flood insurance payments were justified, as a matter of law.  If the defendants meet this burden of proof I will dismiss this action on its merits.

Accordingly, I will schedule a hearing on the pending motions at a time to be arranged through the clerk's office.  Recent settlements of cases scheduled for trial make it possible for me to schedule this hearing in April, May, or June, and I have instructed the clerk's office to attempt to arrange a time for this hearing that is agreeable with all the parties.  I believe we can hear the necessary evidence in one or

two days, but I will allow as much time as necessary to afford all of the parties an opportunity to present the evidence necessary to determine whether there exist sufficient grounds to proceed with this action.

Because this is a qui tam case, I will **DENY** the Relators' motions [212] [230] to allow discovery before I hear the pending motions.  I am interested in the Relators' first hand knowledge of the conspiracy they have alleged, and no discovery is necessary to present evidence on this point.  I am particularly interested in evidence that there was insufficient flood damage to the McIntosh property to justify payment of the applicable SFIP limits.  The parties are free to present expert testimony on this issue if they see fit to do so, but any such expert testimony must be consistent with expert disclosures made at least thirty days before the hearing on this matter.

I will **GRANT** the Relators' motions [214] [215] for extensions of time to respond to the pending motion, and I will allow a period of fourteen days from the date of this order for the Relators to file a consolidated response to all the pending dispositive motions.  I will **GRANT** the motion [226] of State Farm requesting eleven additional pages for briefing its rebuttal for its motion [98], and I will add eleven pages to the limits that would otherwise apply to the Relators' brief.

**SO ORDERED**  this 12th day of February, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER,JR.
SENIOR JUDGE