## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.;
CORI RIGSBY; AND KERRI RIGSBY         RELATORS/
                                       COUNTER-DEFENDANTS

v.                                     CASE No. 1:06-cv-433-LTS-RHW

STATE FARM MUTUAL INSURANCE            DEFENDANT/
COMPANY, et al.                        COUNTER-PLAINTIFF

### RELATORS' ANSWER TO STATE FARM FIRE AND CASUALTY COMPANY'S SECOND AMENDED COUNTERCLAIM

COME NOW Relators, by and through their counsel of record, and in answer to the

allegations made in defendant's counterclaim, state and aver as follows:

1.     Relators deny paragraph 1.

2.     Relators admit paragraph 2.

3.     Relators admit paragraph 3.

4.     Relators admit paragraph 4.

5.     Relators admit paragraph 5.

6.     Relators admit paragraph 6.

7.     Relators admit paragraph 7.

8.     Relators admit paragraph 8.

9.     Relators admit paragraph 9.

10.     Relators admit that portion of paragraph 10 that asserts that Bartimus, Frickleton, Robertson & Gorny is a professional corporation, but deny that its principal place of business is at 715 Swifts Highway, Jefferson City, Missouri.

11.     Relators admit paragraph 11

12.     Relators admit paragraph 12.

13.     Relators are without sufficient information to admit paragraph 13, and so deny it.

14.     Relators deny so much of paragraph 14 as suggests that the Rigsby Relators worked solely or exclusively for E.A. Renfroe.

15.     Relators deny the whole of paragraph 15.

16.     Paragraph 16 states a jury demand that can neither be admitted nor denied.

17.     The allegations in paragraph 17 state a legal conclusion to which Relators need not provide a response.  To the extent a response is required, Relators deny paragraph 17.

18.     The allegations in paragraph 18 state a legal conclusion to which Relators need not provide a response.  To the extent a response is required, Relators deny paragraph 18.

19.     The allegations in paragraph 19 state a legal conclusion to which Relators need not provide a response.  To the extent a response is required, Relators deny paragraph 19.

20.     The allegations in paragraph 20 state a legal conclusion to which Relators need not provide a response.  To the extent a response is required, Relators deny so much of

paragraph 20 as may be read to assert a counterclaim or imply that such counterclaim is valid.

21. The allegations in paragraph 21 state a legal conclusion to which Relators need not provide a response. To the extent a response is required, Relators deny paragraph 21.

22. The allegations in paragraph 22 state a legal conclusion to which Relators need not provide a response. To the extent a response is required, Relators deny that the court may exercise *in personam* jurisdiction over the Rigsbys as set forth in paragraph 22 because the counterclaim is barred by public policy and has no jurisdictional basis.

23. Relators admit that venue is proper pursuant to paragraph 23 but deny so much of paragraph 23 as may be read to suggest that any acts were committed against State Farm in this district.

24. Relators deny paragraph 24.

25. Relators deny paragraph so much of paragraph 25 as suggests that Scruggs Law firm or any of its principals were acting jointly with the Rigsbys. The Rigsbys filed their complaint on behalf of the United States of America.

26. Relators deny paragraph 26.

27. Relators deny paragraph 27.

28. Relators deny paragraph 28.

29. Relators are without sufficient information to admit or deny paragraph 29, and hence deny it.

3

30.    Relators deny so much of paragraph 30 as may be read to suggest that information about a criminal enterprise and rampant fraud against the United States taxpayer are in any way commercially sensitive, confidential, or private information.

31.    Relators are without sufficient information to admit or deny paragraph 31, and hence deny it.

32.    Relators admit the execution of an employment agreement as set forth in paragraph 32  but deny the legal conclusions asserted therein and the remainder of that paragraph.

33.    Relators admit that the defendant has set for some language from the employment agreement in paragraph 33 with regard to confidential information but deny that information about criminal activity and fraud on the National Flood Insurance Program is covered by such agreement.

34.    Relators admit so much of paragraph 34 that they signed access agreements but deny that the purpose of said agreement was to protect confidential private or proprietary information.

35.    Relators admit paragraph 35.

36.    Relators admit that the defendants have set forth what appears to be Cori Rigsby's access agreement following paragraph 36 but have insufficient information to determine if this is a true and correct copy and hence deny the same.

37.    Relators admit so much of paragraph 37 as is recorded in the deposition transcript but deny that the confidentiality or access agreement prohibited them from

providing evidence of criminal wrongdoing and fraud against the National Flood Insurance Program to their attorneys or the United States.

38.     Relators admit so much of paragraph 38 as is recorded in the deposition transcript but deny that the confidentiality or access agreement prohibited them from providing evidence of criminal wrongdoing and fraud against the National Flood Insurance Program to their attorneys or the United States.

39.     Paragraph 39 states a legal conclusion that may neither be admitted nor denied. To the extent it may be interpreted to contain any factual averment it is denied.

40.     Relators admit that paragraph 40 is a partial recitation of the quoted statute but deny that it applies to any actions of the Relators.

41.     Relators admit that paragraph 41 is a partial recitation of the quoted statute but deny that it applies to any actions of the Relators.

42.     Relators admit that paragraph 42 is a partial recitation of the quoted statute but deny that it applies to any actions of the Relators.

43.     The allegations in paragraph 43 state a legal conclusion to which Relators need not provide a response. To the extent a response is required, the allegations in paragraph 43 are denied.

44.     The allegations in paragraph 44 state a legal conclusion to which Relators need not provide a response. To the extent a response is required, the allegations in paragraph 44 are denied.

45.     Relators admit so much of paragraph 45 as suggests that they were deployed to the Gulf Coast but deny the remainder of the paragraph.

46.    Relators admit so much of paragraph 46 as suggests that they had access to State Farm databases during the tenure of their employment by State Farm but deny so much of it as implies that all the information they were exposed to was confidential, private or proprietary.

47.    Relators deny so much of paragraph 47 as implies that the evidence of fraud observed by the Rigsbys and found by them in the electronic mail communications, and evidenced in any claims files, was in any way confidential, proprietary, private or trade secret information on the basis of public policy.

48.    Relators deny so much of paragraph 48 as implies or states that the information relevant to ongoing fraud and criminal activity perpetrated by executives, employees, and agents of State Farm is in any way protectable as a legitimate trade secret or has independent economic value.

49.    Relators deny paragraph 49.

50.    Relators deny paragraph 50.

51.    Relators deny paragraph 51.

52.    Relators deny paragraph 52.

53.    Relators deny paragraph 53.

54.    Relators admit so much of paragraph 54 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

55.    Relators deny paragraph 55.

56.    Relators deny paragraph 56.

57.     Relators lack sufficient information to admit or deny the allegations in paragraph 57.

58.     Relators deny paragraph 58.

59.     Relators accept the judicial admission that the Rigsbys were State Farm employees but deny the remainder of paragraph 59.

60.     Relators are without sufficient information to admit or deny paragraph 60, and so deny the same.

61.     Relators deny paragraph 61.

62.     Relators admit so much of paragraph 62 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

63.     Relators deny paragraph 63.

64.     Relators deny paragraph 64.

65.     Relators deny paragraph 65.

66.     Relators deny paragraph 66.

67.     Relators deny paragraph 67.

68.     Relators deny paragraph 68.

69.     Relators deny paragraph 69.

70.     Relators deny paragraph 70.

71.     Relators deny paragraph 71.

72.     Relators admit so much of paragraph 72 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

73.    Relators admit so much of paragraph 73 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

74.    Relators deny paragraph 74.

75.    Relators admit paragraph 75.

76.    Relators admit paragraph 76.

77.    Relators admit so much of paragraph 77 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

78.    Relators deny paragraph 78.

79.    Relators deny paragraph 79.

80.    Relators deny paragraph 80.

81.    Relators deny paragraph 81.

82.    Relators admit so much of paragraph 82 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

83.    Relators admit paragraph 83.

84.    Relators deny paragraph 84.

85.    Relators deny paragraph 85.

86.    Relators deny paragraph 86

87.    Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 87.

88.     Relators admit so much of paragraph 88 as recites the deposition testimony and deny the remainder of the allegations set forth in that paragraph.

89.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 89.

90.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 90.

91.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 91.

92.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 92.

93.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 93.

94.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 94.

95.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 95.

96.     Relators are without sufficient information to identify what date in April is asserted in this paragraph and without specific information are unable to admit or deny paragraph 96.

97.     Relators deny paragraph 97.

98.     Relators deny paragraph 98.

99.     Relators deny so much of paragraph 99 as suggests that the Rigsbys were acting as agents of any member of Graves, Bartle & Marcus or Bartimus, Frickleton, Robertson & Gorny, PC, or any other law firm.  Relators admit gathering information about to be destroyed so as to protect it from spoliation.

100.    Relators deny paragraph 100.

101.    Relators deny so much of paragraph 101 as suggests they were working from documents supplied by Scruggs, and so much of the remainder as suggests that they had unlawful objectives.

102.    Relators admit so much of the information appearing below paragraph 102 that purports to be a partial transcript of Cori Rigsby's testimony in the retaliatory lawsuit brought by E. A. Renfroe, but deny the implication that it was a "data mining" operation.

103.    Relators deny paragraph 103.

104.    Relators deny paragraph 104.

105.    Relators admit that the collection of information occurring on June 2 through June 5, 2006 was conducted on a weekend to avoid detection by State Farm but deny all other aspects of paragraph 105.

106.    Relators admit that the collection of information occurring on June 2 through June 5, 2006 was conducted on a weekend to avoid detection by State Farm but deny all other aspects of paragraph 106.

107.    Relators deny paragraph 107.

108.    Relators deny paragraph 108.

109.    Relators lack sufficient information to admit or deny the allegations in paragraph 109.

110.    Relators deny paragraph 110.

111.    Relators deny paragraph 111.

112.    Relators deny paragraph 112.

113.    Relators deny paragraph 113.

114.    Relators deny paragraph 114.

115.    Relators deny paragraph 115.

116.    Relators admit so much of paragraph 116 as states that after they secured the evidence of criminal fraud and fraud on the National Flood Insurance Program that they then disclosed that they had copied this information to State Farm, but deny that they engaged in anything wrongful, unlawful or in any misappropriation of State Farm information or property.

117.    Relators admit paragraph 117.

118.    Relators deny paragraph 118

119.    Relators admit receiving a salary from the Scruggs Katrina Group but deny the
remainder of paragraph 119.

120.    Relators admit that they received salary payments through December 2007.

121.    Relators deny paragraph 121.

122.    Relators deny paragraph 122.

123.    Relators deny paragraph 123.

124.    Relators admit the text of the statute pleaded in paragraph 124 but deny its
application to Relators.

125.    Relators admit the text of the statute pleaded in paragraph 125 but deny its
application to Relators.

126.    Relators admit the text of the statute pleaded in paragraph 126 but deny its
application to Relators.

127.    Relators deny paragraph 127.

128.    Relators deny paragraph 128.

129.    Relators deny paragraph 129.

130.    Relators admit that the Court made the holding listed in paragraph 130 but deny its
application to any issue in this case.

131.    Relators admit that the Court made the holding listed in paragraph 131 but deny its application to any issue in this case.

132.    Relators deny paragraph 132.

133.    Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 133.

134.    Relators are without sufficient information to admit or deny paragraph 134 and so deny the same.

135.    Relators deny paragraph 135.

136.    Relators deny paragraph  136.

137.    Relators deny paragraph 137.

138.    Relators deny paragraph 138.

139.    Relators deny paragraph 139.

140.    Relators deny paragraph 140.

141.    Relators are without sufficient information to admit or deny paragraph 141 and so deny the same.

142.    Relators admit paragraph 142.

143.    Relators deny paragraph 143.

144.    Relators deny paragraph 144.

145.    Relators deny paragraph 145.

146.    Relators deny paragraph 146.

147.  Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 147.

148.  Relators deny paragraph 148.

149.  Relators deny paragraph 149.

150.  Relators deny paragraph 150.

151.  Relators deny paragraph 151.

152.  Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 152.

153.  Relators deny paragraph 153.

154.  Relators deny paragraph 154.

155.  Relators deny paragraph 155.

156.  Relators deny paragraph 156.

157.  Relators deny paragraph 157.

158.  Relators deny paragraph 158.

159.  Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 159.

160.  Relators are without sufficient information to admit or deny paragraph 160 and so deny the same.

161.  Relators deny paragraph 161.

162.  Relators deny paragraph 162.

163.    Relators deny paragraph 163.

164.    Relators deny paragraph 164.

165.    Relators deny paragraph 165.

166.    Relators incorporate by reference the denials and, where applicable, their
admissions, to the same extent as set forth above with respect to paragraph 166.

167.    Relators deny paragraph 167.

168.    Relators deny paragraph 168.

169.    Relators deny paragraph 169.

170.    Relators incorporate by reference the denials and, where applicable, their
admissions, to the same extent as set forth above with respect to paragraph 170.

171.    Relators deny paragraph 171.

172.    Relators deny paragraph 172.

173.    Relators deny paragraph 173.

174.    Relators deny paragraph 174.

175.    Relators deny paragraph 175.

176.    Relators deny paragraph 176.

177.    Relators incorporate by reference the denials and, where applicable, their
admissions, to the same extent as set forth above with respect to paragraph 177.

178.    Relators deny paragraph 178.

179.    Relators deny paragraph 179.

180.    Relators deny paragraph 180.

181.    Relators deny paragraph 181.

182.    Relators deny paragraph 182.

183.    Relators deny paragraph 183.

184.    Relators deny paragraph 184.

185.    Relators deny paragraph 185.

186.    Relators deny paragraph 186.

187.    Relators admit the text of the statute cited in paragraph 187 but deny its applicability
in this case.

188.    Relators deny paragraph 188.

189.    Relators incorporate by reference the denials and, where applicable, their
admissions, to the same extent as set forth above with respect to paragraph 189.

190.    Relators deny paragraph 190.

191.    Relators deny paragraph 191.

192.    Relators deny paragraph 192.

193.    Relators deny paragraph 193.

194.    Relators deny paragraph 194.

195.    Relators deny paragraph 195.

196.    Relators deny paragraph 196.

197.    Relators deny paragraph 197.

198.    Relators admit that the Access Agreement contains the language pleaded in paragraph 198 but deny that the language has any applicability to the reporting of criminal conduct and fraudulent activity by the Relators.

199.    Relators deny paragraph 199.

200.    Relators deny paragraph 200.

201.    Relators deny paragraph 201.

202.    Relators deny paragraph 202.

203.    Relators deny paragraph 203.

204.    Relators deny paragraph 204.

205.    Relators deny paragraph 205.

206.    Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 206.

207.    Relators deny paragraph 207

208.    Relators deny paragraph 208.

209.    Relators deny paragraph 209.

210.    Relators deny paragraph 210.

211.    Relators deny paragraph 211.

212.    Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 212.

213.    Relators deny paragraph 213.

214.     Relators incorporate by reference the denials and, where applicable, their admissions, to the same extent as set forth above with respect to paragraph 214.

215.     Relators deny paragraph 215 and all subparagraphs.

WHEREFORE, having answered Relators deny that they are liable for any tort, Statutory violation, breach of contract, conversion, trespass or any other wrongful act and pray that the counterclaim be dismissed with prejudice and that the Relators' costs and expenses of litigation be assessed against State Farm and its Attorneys pursuant to 31 USC § 3729 et seq.

## FIRST AFFIRMATIVE DEFENSE.
### Privilege

1.     Since at least September 3, 2005, State Farm Insurance, E. A. Renfroe & Company, and its other many co-conspirators have been engaged in a concerted effort to defraud the United States through its National Flood Insurance Program.

2.     State Farm sent a "catastrophe team" to the Gulfcoast for the purpose of carrying out a complex scheme to reduce the amount of cash outlay that State Farm and its reinsurers would have to expend in paying Katrina damage claims.

3.     One mechanism selected for this purpose and process was a plan to push as much of the coverage issues as possible off on the National Flood Insurance Program through the submission of false and fraudulent claims.

4.     The chief facilitator of this plan was a State Farm employee named Alexis King.

5.     Alexis King issued strict "lock and key" orders in order to segregate the evidence of her wrongdoing as an agent of State Farm.  These orders were not designed to protect trade secrets.  Rather, they were placed under lock and key to further a

criminal and fraudulent scheme aimed at milking the National Flood Insurance Program.

6.     The Relators, because they eventually became aware of King's goals in this project, were also aware that King planned to spoliate the evidence of her conduct.

7.     18 USC § 1341 makes it unlawful to use the mails to defraud.  "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

8.     18 USC § 1343 makes it unlawful to use the wires to further a fraud scheme.  The elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994) (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire); *see also*, *e.g.*, *United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.) (the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a

scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used)

9.    Relators were aware that King had made phone calls to the engineers at defendant Forensic, firing them, as a key component to advancing her fraud scheme to have engineers submit false engineering reports.

10.   Relators were aware that Forensic and the other conspirators were sending in reports both by U.S. Mail and by facsimile transmissions.

11.   Relators knew that co-conspirators, including E. A. Renfroe and Company, and their agents and employees, were fully aware of the scheme.

12.   Relators were asked to perform tasks ancillary to the fraud scheme, and although they had no fraudulent intent, felt compelled to carry out the orders of those appointed above them in order to retain employment.

13.   As a result of becoming aware of what they believed to be criminal conduct, the Relators sought counsel.

14.   In order to permit counsel to properly evaluate the nature of the fraud schemes, Relators provided copies of documents found in the claims files of State Farm customers Mullins and McIntosh, among others.

15.   In order to permit counsel to evaluate the nature of the fraud schemes, and to assist them with preparing a case pursuant to 31 USC § 3729, Relators dragged emails to the desktop of their laptop.

16.     The emails that Relators dragged to the desktop of their laptops were, at all times, emails that had been sent to the Relators by those who advocated, orchestrated, engineered or facilitated the criminal and civil fraud scheme at issue.

17.     Relators provided these documents to their counsel.

18.     Relators provided these documents to the United States Attorney's office in advance of filing a False Claims Act case.

19.     Relators provided these documents to the Mississippi Attorney General prior to filing a False Claims Act case.

20.     Relators at some time in late May, or early June of 2006, after the False Claims Act case was already on file, became aware of the increased spoliation of evidentiary material relevant to their complaint.

21.     Without consulting the *qui tam* counsel, Relators downloaded electronic files and printed these documents in an effort only to preserve evidence of criminal and civil wrongdoing.

22.     Relators never used the documents for their own purposes; their use at all times was in furtherance of their duty to report criminal wrongdoing.

23.     Relators were privileged to make copies of information in order to report criminal activity.  See *Lachman v. Sperry-Sun Well Surveying Co*., 457 F.2d 850, (10th Cir. 1972).

24.     Relators may not be held liable for their good faith belief, supported by the repeated invocations of the Fifth Amendment by State Farm's agent, employee and co-

conspirator King, that State Farm was engaged in criminal conduct and civil fraud

on the National Flood Insurance Program.

## SECOND AFFIRMATIVE DEFENSE
### Relators Were Contractually Required to Act

25.    To the extent that the Rigsbys were joint employees of both State Farm and E.A.

Renfroe, they had a contractual duty to report the fraud on the federal government

and on the policyholders.

26.    E.A. Renfroe's code of conduct, in relevant part, stated as follows:

```
RENFROE expects employees to conduct the business of RENFROE
in an ethical and legal manner, and to recognize that in all
their transactions and at all times they have a duty of
undivided loyalty to RENFROE, our clients, and their
customers.  These obligations demand positive action by all
employees to protect those interests and to avoid situations
where their self-interests actually or even appear to
conflict with the interests of RENFROE, our clients and
their customers.
```

27.    E. A. Renfroe, by contract, required the Relators to adhere only to legal means when

engaged in employment for or on behalf of E. A. Renfroe.

28.    The contract provided that "at all times they [Relators] have a duty of undivided

loyalty to RENFROE, our clients, and their customers."

29.    While a duty of "undivided loyalty" divided among three entities (Renfroe, its

clients, and their [the client's] customers) is an oxymoron, Renfroe introduced this

ambiguity into the code of conduct, not the Relators.

30.    The prefatory language in the paragraph provided the only guidance that the Rigsbys

were to receive on the issue of what to do if this duty of loyalty became divided and

if they had to choose between honoring the duty of loyalty to Renfroe, or to State Farm, or to State Farm's customers.

31.    That language required them to act in a legal and ethical manner.

32.    The Rigsbys held and hold the justifiable belief that the actions of State Farm were in violation of 18 USC § 1341 and 18 USC § 1343 as well as 31 USC § 3729.

33.    The conduct of State Farm was not lawful or legal.

34.    The Rigsbys were aware that management personnel from E. A. Renfroe were aware of the fraudulent scheme being employed in the adjustment of flood claims and had ratified the improper, unlawful, criminal and fraudulent actions of State Farm, and did not believe that they could report their concerns to E. A. Renfroe without this report causing State Farm to further accelerate its data destruction efforts.

35.    The conduct of E. A. Renfroe was not lawful or legal.

36.    The Rigsbys believed that the code of conduct that they signed with Renfroe required them to report State Farm's unlawful, criminal, and fraudulent activity to law enforcement.

37.    The contract the Rigsbys signed required them to exercise an undivided duty of loyalty to the customers of State Farm Insurance, and further guides them to act in a legal and ethical manner.

38.    At all times, the Rigsbys in acting to blow the whistle on the false and fraudulent schemes of State Farm were acting in accord with their undivided duty of loyalty to the customers of State Farm Insurance, as well as their duty as honest citizens to report crime to proper authorities, and were carrying out duties they were

23

contractually required to carry out by the Code of Conduct they signed with E. A. Renfroe.

### THIRD AFFIRMATIVE DEFENSE
### Impossibility of Performance

39.   State Farm asserts that the Rigsbys breached their duty of undivided loyalty as required of them in the Renfroe contract.

40.   State Farm also asserts that the Rigsbys breached their computer access agreements.

41.   To the extent that State Farm seeks to assert a cause of action on the basis of this contract, the cause of action is barred by the doctrine of impossibility of performance.

42.   Counterclaimants assert that the Rigsbys breached their duty of "undivided loyalty" under the contract by providing documents to the United States Attorney, their attorneys, and policyholders pursuing litigation against State Farm Mutual Insurance Company.

43.   It is well recognized in Alabama that impossibility of performance will excuse a person's performance under a contract.  *Hawkins v. First Federal Savings & Loan*, 291 Ala. 257, 259, 280 So.2d 93, 94.

44.   "[T]he impossibility which will, or may, excuse the performance of a contract must consist in the nature of the thing to be done and not in the inability or incapacity of the obligor to do it."  *Id.*

45.   An agent may owe an undivided duty of loyalty to a principal, and this is well-described in common law.  *Williams v. Williams*, 497 So.2d 481 (Ala. 1986).

However, here, the employer modified the general common-law rule of undivided loyalty by requiring the Rigsbys to owe their duty to three separate entities: E.A. Renfroe, Inc., State Farm Mutual Insurance Company, Inc., and the customers of State Farm.

46.   It is impossible to have an undivided duty of loyalty to three distinct entities.

47.   If the ends pursued by State Farm, and the ends pursued by State Farm's customers diverge, and it is clear with respect to Hurricane Katrina that those interests did diverge, then there cannot be a situation where it is possible for an employee with a duty of undivided loyalty to both to ever faithfully discharge his duty to both when one [State Farm] is violating the law.

48.   By creating a situation where there is a duty of "undivided loyalty" to three different entities, E.A. Renfroe has essentially required the Relators to make a choice.

49.   In spite of requiring them to make this choice, E. A. Renfroe has admitted that it did not provide training with respect to these duties.

50.   The impossibility inherent in the contract's performance was introduced into it by bad draftsmanship on the part of E.A. Renfroe, Inc.

51.   Renfroe required that the Rigsbys consider the impact of their actions not only on Renfroe, but on State Farm and on State Farm's customers.

52.   Had they disclosed the existence of the rampant fraud only to Renfroe, and had Renfroe not taken appropriate corrective action, the Rigsbys would have breached their duty to State Farm and to State Farm's customers and been potentially liable to them.

25

53.    It is a well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter of the contract.  *Ex parte Palm Harbor Homes, Inc*., 798 So.2d 656, 661 (Ala. 2001);  *Birmingham News Co. v. Lynch*, 797 So.2d 440, 443 (Ala. 2001);  *Brewbaker Motors, Inc. v. Belser*, 776 So.2d 110, 112 (Ala. 2000);  *Strickland v. General Motors Acceptance Corp.*, 578 So.2d 1275, 1277 (Ala. 1991);  *Lilley v. Gonzales,* 417 So.2d 161, 163 (Ala. 1982);  *Alabama-Tennessee Natural Gas Co. v. City of Huntsville*, 275 Ala. 184, 153 So.2d 619, 628 (1963).

54.    Here the ambiguity was introduced into the contract by the drafters of the contract by including a requirement of "undivided loyalty" to three separate entities.

55.    "The question whether a contract is ambiguous is for a court to decide.  *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293 (Ala. 1999).

56.    As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law.  *Commercial Credit Corp. v. Leggett*, 744 So.2d 890 (Ala. 1999).

57.    "When any aspect of a contract is capable of more than one meaning, it is ambiguous."  *Voyager Life Ins. Co. v. Whitson*, 703 So.2d 944, 948 (Ala. 1997); see also *Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co.*, 622 So.2d 314, 317 (Ala. 1993); *Cannon v. State Farm Mut. Auto. Ins. Co.*, 590 So.2d 191, 194 (Ala. 1991).

58.    Here, E.A. Renfroe created the ambiguity by stating a duty of "undivided loyalty" existed to itself, *and* State Farm, *and* State Farm's customers.

59.     The contract is suspectible to far more than one meaning. The Rigsbys must owe

their duty to three entities without regard to how those entities compete with each

other, profit from the loss of each other, or take actions inconsistent with their own

duties to one another.  This leaves the Rigsbys in a position where they must guess

how to discharge their duty of "undivided loyalty" where there is division between

the three entities.

60.     Due to the conflicting and confusing duties inherent in the E.A. Renfroe contract,

the contract is impossible to perform and impossible to enforce.

61.     Similarly, the Renfroe Code of Conduct required the Rigsbys to act in an ethical and

lawful manner.  The State Farm Access Agreement cannot be asserted to trump the

duty of the Relators to report criminal and fraudulent conduct.[1]  A report of criminal

conduct is privileged under Mississippi law.

62.     To the extent that State Farm asserts its access agreement precluded the reporting of

the criminal conduct the Relators believed to be happening, it would be impossible

for the Court to enforce because it would amount to contractual misprision of felony.

## FOURTH AFFIRMATIVE DEFENSE
### Public policy

63.     State Farm's computer access agreement is void as in violation of public policy.

---

[1]     "[A] citizen has a privilege to start the criminal law into action by complaints to the proper officials so long as one acts either in good faith, *i.e.*, for a legitimate purpose, or with reasonable grounds to believe that the person proceeded against may be guilty of the offense charged.'" *Benjamin v. Hooper Elec. Supply Co.*, 568 So.2d 1182, 1187 (Miss.1990) (quoting Harper, James and Gray, THE LAW OF TORTS § 4.1 at 406 (2d. ed 1986)).  "The law allows a wide latitude for honest action on the part of the citizen who purports to assist public officials in their task of law enforcement." *Id.* at 1187 (citing Harper James and Greg, THE LAW OF TORTS § 4.1 at 407; PROSSER AND KEETON ON TORTS, § 119 at 871 (5th ed. 1984).

64.     Every citizen in Mississippi is privileged to communicate information to law enforcement.

65.     State Farm reads its computer access agreement to prevent the transmission of information contained on any of its computers to an employees attorney for the purpose of advising that employee about that employee's potential liability for civil and criminal fraud.

66.     State Farm also reads its computer access agreement as prohibiting the Relators from turning over evidence of fraud and criminal activity to the Relators' attorneys.

67.     State Farm also reads its computer access agreement as prohibiting the Relators from turning over evidence of fraud and criminal activity to the United States.

68.     For strong public policy reasons, agreements that attempt to restrain a party from cooperating with criminal investigations or disclosing matters of public consequence are unenforceable.

69.     The public policy interest at stake in the reporting of possible crimes to the authorities is one of the highest order and is indisputably 'well defined and dominant' in the jurisprudence of contract law.

70.     Permitting State Farm to shield its criminal, unlawful and fraudulent acts in violation of 31 USC § 3729 from public view by enforcing State Farm's access agreement would be unconscionable and in violation of the public policy associated with immunity for truthfully reporting criminal activities of others.

### FIFTH AFFIRMATIVE DEFENSE
#### Unclean hands

71.     In this action, Relators have pleaded that State Farm engaged in a pattern and practice of defrauding the National Flood Insurance Program.

72.     Civil fraud is inequitable.

73.     "He who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." *Thigpen v. Kennedy,* 238 So. 2d 744 (Miss. 1970).

74.     Here, State Farm seeks injunctive and other equitable relief not because it has been injured financially, but as yet another way to shield its criminal and civil fraudulent conduct from the sunshine of public inspection and judicial scrutiny.

75.     State Farm asks for injunctive relief not to further equitable ends, but to keep hidden its unlawful conduct.

76.     The Court will not aid a party who grounds his suit upon an immoral or illegal act. *Downing v. Jackson*, 24 So. 2d 661 (Miss. 1946); *Carter v. Allstate Indem. Co.,* 592 So. 2d 66 (Miss. 1991)

77.     Willful misconduct is to be condemned as wrongful by honest and fair-minded men, and courts of equity do not give countenance to inequity nor give it sanctuary. *Cole v. Hood,* 371 So. 2d 861 (Miss. 1979) and *Shelton v. Shelton,* 477 So. 2d 1357 (Miss. 1985).

78.     Because State Farm does not have clean hands in any respect, and because a party seeking equity must do equity, State Farm's counterclaim should be dismissed.

**SIXTH AFFIRMATIVE DEFENSE**
**Failure to state a claim**
**Count I of Counterclaim**

79.     State Farm's claim fails to state a cause of action upon which relief can be granted because Relators at no time exceeded their authorized access in that they were at all times authorized to see and view claims files.

80.     State Farm had a policy of non-retaliation against employees who report fraud and Relators justifiably relied on that policy in taking actions to report fraud.

81.     The Relators' access was authorized by State Farm, and their actions in gathering evidence of fraudulent and criminal activity on the part of State Farm are protected by sound public policy.

82.     There was no access of information from any protected computer as that term is used in the statute.

83.     The Rigsbys acted with the intention to report fraud, not with the intention to commit fraud.

84.     State Farm has not pleaded that the Rigsbys received anything of value from their authorized access to the computer.

85.     There was never any conduct on the part of the Relators that involved the use of interstate communication.

86.     State Farm did not incur any legal damage in having its fraudulent and criminal conduct exposed to federal authorities.

87.     The actions of the Relators were privileged under 31 USC § 3730(h).

**SEVENTH AFFIRMATIVE DEFENSE**
**Failure to state a claim**
**Count II of the Counterclaim**

88.     State Farm's claim fails to state a cause of action under 18 USC § 1030(a)(4) in that State Farm has failed to plead the fraudulent intent of the Relators with any particularity.

89.     Relators' intent at all times was to disclose fraud and criminal activity not to engage in it.

90.     State Farm has failed to plead any fraudulent act.

91.     State Farm did not sustain any legal damage in having its fraudulent and criminal conduct exposed to federal and state authorities.

92.     The actions of the Relators were privileged under 31 USC § 3730(h).


**EIGHTH AFFIRMATIVE DEFENSE**
**Failure to State a Claim**
**Count III of the Counterclaim**

93.     State Farm's claim fails to state a cause of action under 18 USC § 1030(a)(4) in that State Farm at all times State Farm authorized the access of the Relators to the computer system.

94.     State Farm did not sustain any legal damage in having its fraudulent and criminal conduct exposed to federal and state authorities.

95.     No computer or computer system sustained damage as that term is used in 18 USC § 1030 *et seq*.

96.     The actions of the Relators were privileged under 31 USC § 3730(h).

**NINTH AFFIRMATIVE DEFENSE**
**Failure to State a Claim**
**Count IV**
**Privilege and Permission**

97.    State Farm's claim for trespass to chattels fails to state a cause of action.

98.    State Farm gave permission for Relators to access its computer system.

99.    During the tenure of employment, while this access was granted, Relators discovered fraud and criminal activity.

100.    Once they discovered this unlawful conduct, they were privileged to report it.

101.    Relators did not trespass on chattels.  They received email documents from State Farm and were authorized to receive those documents.

102.    Relators were permitted to use the computer system, and were privileged to disclose information obtained through that system to federal and state authorities with regard to the criminal activities and civil fraud perpetrated by Alexis King, State Farm, and the other co-conspirators of State Farm and E.A. Renfroe.

103.    Because they made copies of information obtained from the computer system, and did not remove or destroy any information contained in State Farm files, there was no misappropriation.

104.    State Farm did not sustain any legal damage in having its fraudulent and criminal conduct exposed to federal and state authorities.

105.    The actions of the Relators were privileged under 31 USC § 3730(h).

**TENTH AFFIRMATIVE DEFENSE**
**Failure to State a Claim**
**Count V**
**Conversion**

106.    State Farm has failed to plead the elements of conversion under Mississippi law.

107.    The Relators took only copies of documents and left the electronic files they

accessed unaltered and therefore did not deprive State Farm of dominion over the

files.

108.    Relators were authorized to access State Farm's networks, computers, and files.

109.    The actions of the Relators were privileged under 31 USC § 3730(h).

110.    Relators' possession of the documents obtained from State Farm was not wrongful,

but exercised under a claim of right to expose the criminal and fraudulent practices

of King, State Farm, E. A. Renfroe, and the other co-conspirators.

111.    Relators' use and possession of the documents obtained from State Farm was

authorized by State Farm and not injurious to State Farm in that State Farm cannot

be injured by the exposure of its criminal and fraudulent conduct.

112.    Relators' use of the documents to plead and prove a False Claims Act case is not the

type of use that will support a claim for conversion.

113.    State Farm did not sustain any legal damage in having its fraudulent and criminal

conduct exposed to federal and state authorities.

114.    Moreover, a claim for conversion cannot be found where the owner, in this case,

State Farm, has not been deprived of title or right to use the property.

## ELEVENTH AFFIRMATIVE DEFENSE
### Failure to State a Claim
### Count VI
### Fraud

115.    State Farm's claim for fraud fails to state a cause of action upon which relief can be

granted.

116.    State Farm has not pleaded any false statement.

117.    State Farm has not pleaded any material omission.

118.    State Farm's pleadings state only legal conclusions divorced from any factual

averments.

119.    State Farm has not pleaded and cannot show that its reliance on any statements it

claims were false was reasonable.

120.    State Farm has failed to plead fraud with the particularity required by Rule 9(b).

121.    State Farm has not sustained any damage as a result of any act of the Relators.

122.    Relators' actions were privileged under 31 USC § 3730(h).


## TWELFTH AFFIRMATIVE DEFENSE
### Failure to State a Claim
### Count VII
### Trade Secrets

123.    State Farm's claim for a violation of Mississippi's Trade Secrets Act fails to state a

cause of action.

124.    Relators' actions were privileged under 31 USC § 3730(h) and the common law.

125.    State Farm has failed to plead any facts establishing any trade secrets were in fact

taken.

126.    Relators accessed information that was directly related to their assertions of fraud by State Farm against the National Flood Insurance Program.

127.    Relators provided this information to their counsel and to law enforcement.

128.    Evidence of criminal wrongdoing – documents which are the utensils through which a crime is committed – cannot be a trade secret.

129.    Relators never engaged in any improper means in accessing State Farm's files, and never came into the possession of trade secrets at any time during their employment by State Farm.

130.    Relators have only disclosed evidence of fraud and criminal wrongdoing; they have never disclosed to any party any trade secret of State Farm.

131.    Because the documents and emails were not trade secrets, and were not acquired by improper means, and because they were turned over to law enforcement and to the United States Department of Justice, the Rigsbys' conduct in reporting fraud and criminal conduct does not violate the Trade Secrets Act.

132.    State Farm has not sustained any legal damages as a result of any act by the Relators.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**Failure to State a Claim**
**Court VIII**
**Breach of Contract**

133.    State Farm's claim for breach of contract fails to state a cause of action for which relief can be granted.

134.   State Farm's Network Access Agreement, to the extent that State Farm asserts that it is a violation of that agreement to use State Farm's Computer systems to report fraud and wrongdoing to law enforcement and the United States Department of Justice, is void and unenforceable as against public policy.

135.   In reporting fraud and criminal activity, Relators were privileged to breach the unenforceable contract by 31 USC § 3730, which required them to turn over substantially all the material evidence in their possession to the United States Department of Justice.

136.   In reporting fraud and criminal activity to law enforcement, the Relators were privileged under the common law.

137.   In reporting fraud and criminal activity to law enforcement, the Relators were not using the information obtained from State Farm for their own benefit, but for the benefit of the United States and its taxpayers.

138.   The Rigsbys acted in good faith at all times.

139.   State Farm has not sustained any legal damages as a result of any act by the Relators.

### FOURTEENTH AFFIRMATIVE DEFENSE
### Failure to State a Claim
### Count IX
### Civil Conspiracy

140.   State Farm's claim for Civil Conspiracy fails to state a cause of action because an attorney and a client do not engage in a conspiracy when the client hires the attorney to bring an action under 31 USC § 3729.

141.    Relators actions were privileged under 31 USC § 3730(h) and the common law.

142.    State Farm has not pleaded conspiracy with sufficient particularity under Rule 9(b).

143.    State Farm has not sustained any legal damages as a result of any act by the Relators.

## FIFTEENTH AFFIRMATIVE DEFENSE
### All Of State Farm's Damage Flows From Its
### Own Criminal Conduct, Not Relators' Actions

144.    Since at least September 3, 2005, State Farm and its other many co-conspirators have been engaged in a concerted effort to defraud the United States through its National Flood Insurance Program.

145.    State Farm sent a "catastrophe team" to the Gulf Coast for the purpose of carrying out a complex scheme to reduce the amount of cash outlay that State Farm and its reinsurers would have to expend.

146.    One mechanism selected for this purpose and process was a plan to push as much of the coverage issues as possible off on the National Flood Insurance Program through the submission of false and fraudulent claims.

147.    The chief facilitator of this plan was a State Farm employee named Alexis King.

148.    Any damages sustained by State Farm as a result of its own criminal and unlawful conduct flow from its own inequitable actions and are not the result of the Rigsbys' reporting that criminal and unlawful conduct to federal and state authorities.

149.    State Farm cannot pawn off on the Relators the costs relating to the defense of their own criminal conduct by claiming that the damages relate to the access of its computer systems.

150.    Neither can State Farm make out a claim that a systematic plan to cheat the federal government, the roughly 173,000,000 United States taxpayers, and the Mississippi policy-holders out of billions of dollars is a "trade secret" as that term is commonly understood.

151.    All of State Farm's damages were caused directly by its conduct and are not the responsibility of the Relators.

## SIXTEENTH AFFIRMATIVE DEFENSE
### Estoppel

152.    The Chairman of State Farm Insurance has said "At State Farm, not only do we do what is legal, but we also do what is right. In 1922, George Mecherle said, 'Honesty isn't the best policy - it is the only policy.'"[2]

153.    State Farm further assured its employees that "State Farm's commitment to maintaining high standards of integrity remains the same.  We all have a responsibility to exercise good judgment, honesty, and integrity when performing our jobs."[3]

154.    State Farm requires employees: "State Farm and its employees must comply with this Code and all laws and policies applicable to State Farm's business."[4]

---

[2]    State Farm's Code of Conduct, available on its website.
[3]    *Id.*
[4]    *Id.*

155.    State Farm "expects employees to conduct State Farm's business in an ethical and legal manner."[5]

156.    State Farm also explicitly promised "State Farm will not tolerate retaliation against anyone who reports in good faith any known or suspected improper conduct or a breakdown of security or business controls, nor will State Farm tolerate retaliation against anyone who participates in an investigation. "[6]

157.    State Farm's management and executives were well aware of the criminal and fraudulent conduct undertaken by King and others on its behalf.

158.    King's emails to Relators, as well as her emails to engineers and employees at defendant Forensic Engineering Analysis Corp., were sent through State Farm's servers and documented King's efforts to cause all damages to be classified as water in order to defraud the National Flood Insurance Program.

159.    After copying information and turning it over to federal authorities, as State Farm readily admits, Relators disclosed their reporting of the criminal conduct in reliance upon the promises of no retaliation contained in the State Farm Code of Conduct.

160.    By the clear terms of its promise to Relators in the Code of Conduct, State Farm's claims against Relators are barred by the doctrine of estoppel.

---

[5]    *Id.*
[6]    *Id.*

## SEVENTEENTH AFFIRMATIVE DEFENSE
### Protected Concerted Activity Consistent With 31 USC § 3730(h)

161. State Farm's claims fail to state a cause of action upon which relief can be granted because they are all barred by 31 USC § 3730(h) in that they are asserted for the purpose of vexation and delay.

162. "[T]he purpose of the *qui tam* provision of the Act is to encourage those with knowledge of fraud to come forward."[7] In order to proceed with an FCA action, the FCA requires that Relators disclose to the United States "substantially all material evidence and information the person possesses,"[8] and ties a relator's share to the importance of her participation in the action and the relevance of the information she provided.[9]

163. Courts continually recognize the importance of the FCA, the purpose of which is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government."[10] Achieving that goal requires the "coordinated effort" between private citizens and the government.[11]

164. "From targeting massive contractor fraud during the Civil War to halting healthcare fraud today, the ability of individuals to serve as private attorneys general and to protect the interests of the government has and continues to serve vital purposes."[12]

---

[7]  Neal v. Honeywell, 33 F.3d 860, 861 (7th Cir. 1994) (citing H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986))

[8]  31 U.S.C. § 3730(b)(2).

[9]  *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 964 (9th Cir. 1995).

[10]  S. Rep. 99-345, at 1, U.S. Code Cong. & Admin. News 1986, 5266.

[11]  *Id*. at 2, U.S. Code Cong. & Admin. News 1986, 5266, 5266–67.

[12]  *United States ex. rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 769–70 (N.D. Ill. 2004).

165.    The primary purposes of the FCA—encouraging the exposure of fraud—are supported by the *qui tam* provisions that "seek to ensure that information bearing on potential fraud will come to light even if government officials should decide not to initiate proceedings based on information contained in government files."[13]

166.    The FCA provides at 31 USC § 3730(h) for make-whole relief when a whistleblower is discharged from employment for lawful acts.

167.    The acts of the Relators were lawful in that they were aimed at exposing criminal wrongdoing and civil fraud under the explicit terms of the False Claims Act.

168.    State Farms claims in all counts are in express violation of 31 USC § 3730(h) and are further proof of the defendant's own retaliatory conduct in this matter.

*        *        *

---

[13]     *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1520 (10th Cir. 1996).

WHEREFORE, Relators seek a judgment of dismissal of defendant's counterclaim, for Relators'

Attorneys Fees, costs and expenses as provided by 31 USC § 3730,  and for such other and further

relief as this Court deems just, right and proper.

THIS the 14th of September, 2009

Respectfully submitted,

     /s/ C. Maison Heidelberg
C. MAISON HEIDELBERG, MB #9559
GINNY Y. KENNEDY, MB #102199

OF COUNSEL:

MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, Mississippi  39157
Phone No.      (601) 351-3333
Fax No.        (601) 956-2900

Scott D. Gilbert (admitted *pro hac vice*)
August J. Matteis, Jr. (admitted *pro hac vice*)
Craig J. Litherland (admitted *pro hac vice*)
Benjamin Davidson (admitted *pro hac vice*)
GILBERT LLP
1100 New York Avenue NW, Suite 700
Washington, DC 20005
Phone No.      (202) 772-2200
Fax No.        (202) 772-3333

Attorneys for Kerri Rigsby and Cori Rigsby

<u>**CERTIFICATE OF SERVICE**</u>

      I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

                  Dunn O. Lampton, Esq.
                  UNITED STATES ATTORNEY
                    FOR MISSISSIPPI
                  188 East Capitol Street, Suite 500
                  Jackson, MS  39201

                  Felicia Adams, Esq.
                  ASSISTANT U.S. ATTORNEY
                  188 East Capitol Street, Suite 500
                  Jackson, MS  39201

                  Joyce R. Branda, Esq.
                  Patricia R. Davis, Esq.
                  Jay D. Majors, Esq.
                  UNITED STATES DEPARTMENT OF JUSTICE
                  Commercial Litigation Branch
                  Civil Division
                  601 D Street, NW
                  Washington, DC  20004

                  Larry G. Canada, Esq.
                  Kathryn Breard Platt, Esq.
                  GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
                  701 Poydras Street, Suite 4040
                  New Orleans, LA  70139
                  (p) 504-525-6802
                  ATTORNEYS FOR HAAG ENGINEERING CO.

                  Robert C. Galloway, Esq.
                  Emerson Barney Robinson, III, Esq.
                  Jeffrey A. Walker, Esq.
                  BUTLER, SNOW, O'MARA,
                    STEVENS & CANNADA, PLLC
                  P.O. Box 22567
                  Jackson, MS 39225
                  (p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON,
  PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM MUTUAL
INSURANCE COMPANY

Robert D. Gholson
GHOLSON BURSON ENTREKIN & ORR, P.A.
55 North 5th Avenue
P.O. Box 1289
Laurel, MS 39441-1289
ATTORNEYS FOR FORENSIC ANALYSIS
ENGINEERING CORPORATION


    /s/   C. Maison Heidelberg