IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.;<br>   CORI RIGSBY; AND KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE No. 1:06-cv-433-LTS-RHW |
| STATE FARM MUTUAL<br>   INSURANCE COMPANY, et al. | DEFENDANTS/COUNTER-PLAINTIFFS |

**RELATORS' OPPOSITION TO STATE FARM'S
MOTION FOR PROTECTIVE ORDER**

Cori and Kerri Rigsby ("Relators") respectfully submit this opposition to State Farm Fire & Casualty Company's ("State Farm") Motion for a Protective Order ("State Farm's Motion") filed on January 11, 2010.  State Farm's Motion should be denied because it seeks to prevent the Relators from discovering information that is directly related to whether the McIntosh flood claim was a false claim for payment made to the United States government.

**I.  PRELIMINARY STATEMENT**

State Farm asserts that the contested discovery requests "do not pertain to the McIntosh flood claim and amount to mere speculation by the Rigsbys of the type that has been condemned by this Court."  State Farm's Motion at 6.  In fact, the Relators have tailored carefully their discovery requests based on this Court's August 10, 2009 Order ("Order") [343 and 344] and this Court's related rulings in individual policyholder cases.[1]  Accordingly, all of the discovery sought by the Relators seeks information that may lead to admissible evidence regarding whether the Defendants submitted a false claim with respect the McIntosh flood claim.

---

[1]   This case also involves allegations that the defendants conspired to submit false claims to the government.  As such, permissible discovery should be even broader in this case than in individual policyholder cases because this care directly involves the defendants' intent, an issue not present in individual policyholder suits.

1

First, State Farm refuses to produce information related to claims it adjusted within half a mile of the McIntosh home, despite the fact that this Court has consistently compelled discovery relating to claims within a "reasonable proximity" of the policyholder's home. S*ee, e.g.*, *Muller v. State Farm Fire and Cas. Co.*, 1:06-cv-95 (March 29, 2007) ([44]); *Gunn v. Lexington*, 1:07-cv-00478 (March 3, 2008) ([89]).  Indeed, the Relators did not randomly choose the distance of one-half mile, but rather followed this Court's guidance in an individual policyholder case. *See Gunn*, 1:07-cv-00478 ([89]) at 2**.**

Second, State Farm refuses to provide any information related to the procedures it used in ordering engineering reports and the instructions it gave engineers on how to conduct engineering analyses.  State Farm's use of engineering reports goes directly to the heart of the fraudulent scheme that the Relators will demonstrate led to the submission of the McIntosh false claim.  Much of the evidence presented by the parties at the summary judgment evidentiary hearing related to State Farm's fraudulent scheme to intimidate engineers into finding flood damage in cases where wind was the actual cause of loss.  Indeed, this Court denied summary judgment on the grounds that there was a material dispute of fact with respect to Alexis King's "motive" in ordering a second engineering report on the McIntosh house.  Order at 8.  Accordingly, the Relators are entitled to take some discovery in connection with State Farm's procedures for ordering engineers and instructions it gave to engineers in order to demonstrate that State Farm's motive in soliciting a second report from John Kelly was not based on a good-faith disagreement on what damaged the McIntosh home, but rather was consistent with State Farm's overall scheme to force engineers and adjusters to find flood damage instead of wind damage.

## II. ARGUMENT

Discovery is permitted as to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Courts have "traditionally construed relevance broadly: information is relevant if it encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (internal quotation omitted). Although district courts are afforded "wide discretion in handling discovery matters," the Fifth Circuit will not uphold a ruling which has "failed to adhere to the liberal spirit of the Rules." *Id.*

Here, Judge Senter's August 10, 2009 Order limited "the presentation of evidence in this action to facts relevant to the McIntosh claim" in order to "strike a balance between the Relators' interest indentifying these other allegedly false claims and the defendants' interest in preventing a far ranging and expensive discovery process." Order at 10. The Relators' discovery is appropriate because it is not aimed at identifying other allegedly false claims. Rather, it seeks discovery of information directly related to the McIntosh claim, including State Farm's treatment of other claims that are in close proximity to the McIntosh claim, and State Farm's procedures for using engineering reports.

### A. The Relators are Entitled to Information Related to Claims Located within Half a Mile of the McIntosh Home.

Document Request No. 2 seeks documents related to State Farm's adjusting of claims under flood policies or homeowner policies for properties located within a half mile of the McIntosh home, including but not limited to complete copies of homeowner and flood files. State Farm objects to this request first, for seeking information concerning "State Farm policyholders other than the McIntoshes" and second, for seeking information "related to the

3

adjustment of other *homeowner* claims which have nothing to do with the McIntosh *flood* claim." State Farm's Motion at 3. Neither of these objections justify State Farm's requested protective order.

First, information related to State Farm's adjustment of other claims that are in reasonably close proximity to the McIntosh claims is relevant to State Farm's adjustment of the McIntosh claim. In individual policyholder suits, this Court has routinely compelled disclosure of information related to an insurer's handling of policyholder claims located within a "reasonably close proximity" to the plaintiff's home. *See, e.g.*, *Muller*, 1:06-cv-95 ([44]) (compelling production of policy information for "damages sustained to nearby and adjacent property" because State Farm personnel purportedly considered such damage when adjusting the loss"); *Gunn*, 1:07-cv-00478 ([89]) (compelling production of claims information regarding payments made to other insured within a *half mile* of Plaintiff's property). Here too, State Farm's adjustment of other claims within half a mile of the McIntosh claim is likely to contain discoverable information including information relating to the weather conditions to which the McIntosh home was subjected, whether State Farm adjusted neighboring claims consistently, and whether there are other witnesses to the damage the McIntosh home sustained.

Second, the Relators are equally entitled to discovery relating to State Farm's treatment of both homeowner and flood claims. The August 10, 2009 Order recognized that this case involves allegations that the defendants conspired to "reduce the property owners' claims for wind damage by mischaracterizing part of the wind damage as flood damage." Order at 3. As such, relevant information about State Farm's mischaracterization of wind damage as flood damage will be found both in homeowner and flood claim files.

4

Moreover, when State Farm attempted to prevent the Relators from deposing Alexis King on the grounds that she had no "firsthand knowledge of the McIntosh flood claim,"[2] the Court agreed that "[t]o a certain extent, Relators are correct that the flood claim can not be totally separated from the wind claim on the same insured property, and the Court believes that Defendants should not be in control of limiting the areas of inquiry." [274] at 2-3.

      **B.**    **The Relators are Entitled to Information Related to State Farm's Procedures for the Use of Engineers and their Instructions Given to Engineers.**

State Farm also seeks a protective order from four discovery requests relating to State Farm's use of engineers in assessing damage caused by Hurricane Katrina. Although State Farm has agreed to produce documents "concerning Forensic Analysis Engineering company related to the McIntosh home," including "any communications concerning the engineering reports authored by Brian Ford and/or Jack Kelly for the McIntosh property," State Farm seeks a protective order to prevent it from having to provide information related to the procedures by which engineering reports were ordered and used in assessing damage caused by Hurricane Katrina. State Farm's position, that the Relators are entitled to discover the details regarding the McIntoshes' engineering report, but not the details regarding the procedures by which the McIntoshes' engineering report was ordered and evaluated, is no different from producing a policyholder's claim file but refusing to produce the claims handling procedures used in creating the file.

The Relators have previously explained how State Farm's use of engineering reports played a central role in its scheme to defraud the government. *See* Relators' Consolidated Post-Hearing Brief [348] at 13-21. In short, State Farm instructed its adjusters when they were

---

[2] Alexis King turned out to be knowledgeable of the McIntosh flood claim. Q: Do you know anything about the McIntosh flood or wind claims? A: I know about the McIntosh flood claim. King Dep. 12:7-9

5

adjusting claims like the McIntoshes' that they should make initial payments for flood policy limits as well as discernible wind damage and they could rely on engineers to make the more difficult damage determinations. However, State Farm also coerced engineering companies to skip any real investigation and analysis into the actual cause of loss in order to ensure that their reports concluded that the predominant cause of damage was flood. Kerri Rigsby testified that when she supervised Cody Perry's adjustment of the McIntosh home, they "anticipated an engineer would be coming out behind us to determine the amount of wind damage." Transcript 266:19-20. Alexis King also confirmed that before Katrina State Farm had never issued a blanket order for engineering reports, and it cancelled the order "about a month, if not a little bit more" after State Farm received Brian Ford's engineering report. King Dep. 183:23-184:2; 185:10-12; and 240:7-14.

Accordingly, the Relators are entitled to discover how State Farm used engineering reports in adjusting claims following Hurricane Katrina because that information is likely to lead to evidence of the defendants' scheme to defraud the government.

### 1. State Farm's Procedures for Using Engineers are Discoverable.

Interrogatory No. 11 seeks a description of State Farm's "procedures for using engineering reports for adjusting claims for damage caused by Hurricane Katrina," including the types of claims for which engineering reports were ordered, whether State Farm ever cancelled engineering reports after they had been ordered, and State Farm's procedures for handling and reviewing engineering reports. Similarly, Document Request No. 11 seeks "All documents related to the use of engineers in assessing damages caused by Hurricane Katrina."

State Farm objects to this discovery on the grounds that it seeks information that is "well beyond the McIntosh flood claim." State Farm's Motion at 3. State Farm now claims that it

6

never cancelled an engineering report in connection with the McIntosh homeowner claim, and "no report was ordered in connection with the McIntosh flood claim." State Farm's Motion at 3. But State Farm's decision to cancel its blanket order for engineering reports is a relevant part of its overall scheme to use engineering reports to defraud the government. In fact, State Farm attempted to conceal its use of engineers even after litigation was under way. State Farm's 30(b)(6) witness in *Guice v. State Farm* testified that "[w]ell, we handle every claim *one at a time. Everyone one of them is different*. There was no blanket, widespread, we're not going to do this anywhere. It was each claim representative and team manager make that decision on the *specific claim file* as to whether we needed an engineer or not." *Quoted in* October 25, 2006 Order, *McFarland v. State Farm Fire and Cas. Co.*, 1:06-cv-466 [46] at 1-2 (emphasis in original). In contrast, Alexis King later admitted that "[a]fter Katrina struck, we were instructed that there were going to be engineers on all claims that involved flooding. . . The request to get engineers in our office on all the wind files that had flood companions was withdrawn eventually." King Dep. 185:10-12; 239: 15-18. The Relators are entitled to discover when these decisions were made, whether the decision to cancel engineering reports was motivated by engineers finding wind damage, and why State Farm has taken inconsistent positions with respect to ordering engineering reports.

Furthermore, the August 10, 2009 Order makes clear that State Farm's procedures for using engineering reports as they applied to the McIntosh flood claim is relevant:

- "In [Kerri Rigsby's] experience it was unprecedented to have two engineering reports on a single property, and it was also very unusual to see an engineering report prepared just two days after the engineer, Kelly, inspected the property" [343] at 6;

- "Kerri Rigsby testified King acknowledged she (Rigsby) was not supposed to have seen these two engineering reports" [343] at 6;

7

- "The two reports are very similar except for the conclusions drawn by the two engineers." [346] at 6;

- "King freely acknowledges she ordered the second engineering report, and she asserts she was fully justified in doing so. In King's opinion the Ford engineering report was false in that it did not include the substantial flood damage documented in State Farm's closed flood insurance file. Relators ascribe a different motive behind King's decision to order a second report. *This creates a genuine issue of material fact that cannot be resolved summarily*." [343] at 8 (emphasis added).

As the Court recognized, State Farm's treatment of the multiple McIntosh engineering reports, including Alexis King's motivation in ordering a second report, is directly relevant to whether the McIntosh flood claim was a false claim. King's motivation may be evidence of the scheme to defraud the government. Furthermore, as King acknowledged, State Farm would have been required to reimburse the NFIP if it accepted the conclusions in Brian Ford's report. King Dep. 136:1-14.

### 2. State Farm's Instructions to Engineers are Discoverable.

Document Request No. 12 seeks "All documents related to the procedures used by engineers to assess damage caused by Hurricane Katrina," including "instructions given to engineering firms related to how to conduct an engineering analysis. . . distinguishing between damaged caused by wind and damaged caused by water, and describing the damage sustained by a home." The instructions State Farm gave engineering companies on how to conduct engineering analyses are relevant to the Relators' allegation that State Farm conspired with Forensic to defraud the federal government by creating engineering reports that supported State Farm's attempts to attribute the cause of damage to homes, including the McIntosh home, to flooding.

8

During the May 20-22 evidentiary hearing, John Kelly testified he was instructed that "go[ing] through some kind of engineering analysis, wind analysis, to come to any conclusions other than just general observations" was "outside the scope" of his assignment in performing an engineering analysis of the McIntosh home. Tr. 348:19-349:8. The August 10, 2009 Order also recognized that "Kelly testified his employer, Forensic, instructed him not to estimate the quantity of damage caused by wind or water, but only to determine the predominant cause of the damage to the McIntosh dwelling." Order at 7. Kelly's testimony shows that State Farm was involved in determining how engineering reports were written. It also demonstrates that State Farm attempted to prevent engineers from conducting any real investigation into the cause of loss. This appears to be quite consistent with State Farm's scheme to discourage adjusters from conducting a good faith investigation into the amount of wind damages that properties in fact sustained after Hurricane Katrina. Accordingly, the Relators should be entitled to discover information related to how State Farm influenced engineering reports as such information may evidence the intention and method of defrauding the government.

### 3. Instances in which State Farm Disputed Forensic's Reports are Discoverable.

Interrogatory No. 4 seeks the identity of each engineering report prepared by Forensic for which State Farm challenged or disputed the final written report, including information sufficient to identify the policyholder, a description of the subject of the dispute, and whether Forensic provided a new report. As the August 10, 2009 Order recognized, the parties' dispute as to why Alexis King ordered a second engineering report for the McIntosh home "creates a genuine issue of material fact that cannot be resolved summarily." Order at 8. A description of instances in which State Farm disputed reports prepared by Forensic is relevant to assessing Alexis King's

9

motivations in ordering a duplicate engineering report. Interrogatory No. 4 should reveal discoverable information including: how many reports King disputed, whether she ever found a report faulty for attributing too much damage to flood and not enough damage to wind, and whether Forensic ever submitted a second written report that supported the conclusions in the initial report with additional evidence rather than changing the conclusions in the initial report.[3] All such information could provide evidence of the intent to defraud the government.

### III.  CONCLUSION

For all of the reasons set forth above, State Farm's Motion should be denied.

THIS the 25th day of January, 2010

Respectfully, submitted,

　/s/ C. Maison Heidelberg　
C. MAISON HEIDELBERG, MB #9559
GINNY Y. KENNEDY, MB #102199

| | |
|---|---|
| OF COUNSEL | Attorneys for Cori Rigsby and Kerri Rigsby |
| August J. Matteis, Jr. (*admitted pro hac vice*) | MAISON HEIDELBERG PA |
| Craig J. Litherland (*admitted pro hac vice*) | 795 Woodlands Parkway, Suite 220 |
| Scott D. Gilbert (*admitted pro hac vice*) | Ridgeland, Mississippi 39157 |
| Benjamin Davidson (*admitted pro hac vice*) | Phone No.    (601) 351-3333 |
| GILBERT LLP | Fax No.    (601) 956-2090 |
| 1100 New York Avenue NW, Suite 700 | |
| Washington, DC 20005 | |
| Phone No.    (202) 772-2200 | |
| Fax No.    (202) 772-3333 | |

---

[3] State Farm's concern that answering this interrogatory may implicate the "right of privacy of State Farm policyholders" may be addressed by redacting any confidential information. However, Interrogatory No. 4 seeks only the name, address, policyholder number and a description of the dispute. State Farm has not explained how any of this information could implicate the privacy of its policyholders.

## CERTIFICATE OF SERVICE

     I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System and electronic mail:

          Don Burkhalter, Esq.
          UNITED STATES ATTORNEY
            FOR MISSISSIPPI
          188 East Capitol Street, Suite 500
          Jackson, MS 39201

          Felicia Adams, Esq.
          ASSISTANT U.S. ATTORNEY
          188 East Capitol Street, Suite 500
          Jackson, MS 39201

          Joyce R. Branda, Esq.
          Patricia R. Davis, Esq.
          Jay D. Majors, Esq.
          UNITED STATES DEPARTMENT OF JUSTICE
          Commercial Litigation Branch
          Civil Division
          601 D Street, NW
          Washington, DC 20004

          Larry G. Canada, Esq.
          Kathryn Breard Platt, Esq.
          Galloway, Johnson, Tompkins, Burr & Smith
          701 Poydras Street, Suite 4040
          New Orleans, LA 70139
          (p) 504-525-6802
          ATTORNEYS FOR HAAG ENGINEERING CO.

          Robert C. Galloway, Esq.
          Emerson Barney Robinson, III, Esq.
          Jeffrey A. Walker, Esq.
          BUTLER, SNOW, O'MARA,
            STEVENS & CANNADA, PLLC
          P.O. Box 22567
          Jackson, MS 39225
          (p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON
  PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM MUTUAL
INSURANCE COMPANY

Robert D. Gholson
GHOLSON BURSON ENTREKIN & ORR, P.A.
55 North 5th Avenue
P.O. Box 1289
Laurel, MS 39441-1289
ATTORNEYS FOR FORENSIC ANALYSIS
ENGINEERING CORPORATION


                              /s/    C. Maison Heidelberg___