**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.; CORI RIGSBY; AND KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE No. 1:06-cv-433-LTS-RHW |
| STATE FARM MUTUAL INSURANCE COMPANY, et al. | DEFENDANTS/COUNTER-PLAINTIFFS |

**RELATORS' RESPONSE TO STATE FARM'S MOTION
TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

Cori and Kerri Rigsby ("Relators" or "Rigsbys") respectfully submit this opposition to State Farm Mutual Insurance Company's ("State Farm") Motion to Compel Responses to Discovery Requests ("Motion"). For the reasons stated below, State Farm's motion to compel should be denied.

I. **PRELIMINARY STATEMENT**

When the Court denied the Relators' current counsel leave to obtain documents from the Relators' former counsel on the grounds that it sought an advisory opinion, the Court explained, "It was my intention in disqualifying these attorneys to minimize the potential pernicious influence of Scruggs' payments and to assure, to the extent possible, that the Court can reach *the merits of this case free of the controversy surrounding the Relators' financial arrangement with Scruggs and his associated counsel*." [210] at 1 (emphasis added). The Court further advised, "At some point, this action has to be resolved on its merits, and the enormous *sideshow* that has developed around the identity of Relators' counsel and the wrongful taking of these documents has to stop. . . The parties and the public deserve no less" *Id.* at 3 (emphasis added). Nevertheless, State Farm now seeks vast discovery related to the Rigsbys' financial arrangement

with their former counsel. Indeed, State Farm not only seeks such evidence directly, but also indirectly, seeking discovery into the Relators' personal financial information. State Farm apparently hopes to find some secret payment from former counsel to Rigsbys that somehow was not uncovered through multiple depositions of the Rigsbys and related documentary discovery from other matters.

State Farm's motion to compel does not attempt to defend the contested discovery requests on the grounds that they are relevant to whether it engaged in a scheme to defraud the federal government that resulted in the McIntosh flood claim being false. Instead, State Farm argues that it should be able to take essentially unlimited discovery into the Relators' personal information and their relationship with former counsel because this information is relevant to showing the Relators' bias, motive, or credibility.

While State Farm is entitled to some discovery related to the credibility of witnesses, Federal Rule of Civil Procedure 26 requires a balancing test that weighs the burden of any such discovery against the likely benefit. For all of the reasons set forth below, the balance weighs heavily against State Farm with respect to the discovery at issue. State Farm essentially is asking this Court to issue it a license for a sweeping and invasive fishing expedition into highly private areas of discovery so that State Farm can prove that the Rigsbys may have had a financial interest in this litigation. But the Rigsbys' readily admit that they did, and still do, have a financial interest in this litigation. Indeed, all Relators who bring actions under the qui tam provisions of the False Claims Act have a financial interest in the outcome of the litigation. The federal statute provides that incentive so that more whistleblowers will bring to light fraud against the government. Therefore, even if State Farm discovers a secret payment (though none exist), such evidence would not meaningfully change Relators' financial incentive and it

2

certainly would not justify the intrusive discovery sought by State Farm. Moreover, here, State Farm already has had the opportunity to take multiple depositions and seek scores of documents from the Relators in connection with payments they received from their former counsel. While receipt of the payments may not have complied with rules of legal ethics, the Relators never attempted to hide that they received such payments. Rather, Relators have been forthcoming from the beginning with respect to the precise nature of the their financial arrangement with their former counsel.

Accordingly, State Farm already has more than enough information regarding the Relators' past and present financial interests in this litigation. The parties can dispute whether and to what extent such information will be admissible at trial, but the Relators respectfully request that the Court deny State Farm's motion into more of the same discovery and end this recurring sideshow.

In addition, for the reasons set forth below, State Farm's motion to compel also should be denied with respect to discovery of the Relators telephone and email records, communications with the media, and communications with government officials.

II.    **ARGUMENT**

   A.    **Legal Standards**

Fed. R. C. P. 26(b) permits discovery into any "nonprivileged mater that is relevant to any party's claim or defense." District courts are "vested with a large measure of discretion as it relates to establishing the scope of discovery." *Conboy v. Edward D. Jones & Co.*, 140 Fed. Appx. 510, 516 (5th Cir. 2005). Although the boundaries of permissible discovery are "construed broadly," the "court must limit discovery otherwise allowed by the Federal Rules of

3

Civil Procedure when, *inter alia*, the burden or expense of the proposed discovery outweighs its likely benefit." *Keys v. Safeway Ins. Co.*, No. 2:07-cv-327, 2008 WL 4544396 (S.D. Miss. Oct. 2, 2008 at *1). Fed. R. Civ. P. 26(b)(2)(C) requires courts to limit discovery if, for example, "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

While parties generally are entitled to take some discovery that may lead to admissible evidence regarding bias and credibility, *see, e.g., United States v. Abel*, 469 U.S. 47, 48-51 (1984), Rule 26(b)(2)(C)'s balancing test places limits on the scope of such discovery. For example, in *In re Subpoena to Goldberg*, the United State District Court for the District of Columbia quashed a subpoena directed to a journalist because even though the journalist could provide information about a parties' bias, there was already sufficient information in the public record. --- F. Supp. 2d -----, 2010 WL 893661 (D.D.C. March 15, 2010). The court reasoned that even though evidence of bias is always relevant, "[i]t hardly follows" that all evidence of bias is discoverable. *Id.* at *3. Instead, "discovery even of relevant evidence is subject to the balancing calculus articulated in Rule 26 of the Federal Rules of Civil Procedure." *See also Wacker v. Gehl Co.*, 157 F.R.D. 58, 58 (W.D. Mo. 1994) (denying discovery of a witnesses' tax records because the broad "standard of relevance. . . should not be misapplied so as to allow fishing expeditions in discovery"); *Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 267 (E.D. MI. 2007) (denying discovery of a party's bank accounts and credit card statements because they "have much less relevance to the central issue" of the case, and "would likely

4

contain a great deal of personal information").

Further, because the False Claims Act "seeks first to make the government whole," possible prejudice to the government's interests must be weighed in determining whether evidence is admissible in False Claims Act cases. *See U.S. ex rel Miller v. Bill Harbert Intern. Constr.*, No. 95-cv-1232, 2007 WL 851868 at *2 (D.D. C. March 14, 2007) (holding that the defendant could not introduce into evidence the amount of the relator's potential recovery because such evidence would prejudice the government's interests).

### B. State Farm is Not Entitled to Stage Another Sideshow Starring Richard Scruggs.

While there are several disputed categories of discovery, the majority of the requests and interrogatories at issue relate to the Relators' financial arrangement with their former counsel. Some of the disputed requests seek the information directly,[1] while others seek it indirectly, through discovering highly intrusive financial information from the Relators, such as their credit card statements and bank records.[2] State Farm argues that it should be allowed discovery into the Relators' finances in order to explore the possibility of a secret payment from the Relators' former counsel that has not yet been uncovered despite scores of depositions and document

---

[1] Interrogatory 2 and Document Request 5 seek information relating to everything of value the Relators have received from their counsel; Interrogatory 3 and Document Request 6 seek everything of value a relative of the Relators has received from the Relators' counsel; Interrogatory 12 seeks the identity of every law firm that has represented the Relators since Hurricane Katrina, the amount of their fees, and who paid those fees.

[2] Interrogatory 4 seeks all sources of income; Interrogatory 5 seeks the identity of the Relators banks; Interrogatory 14 seeks the identity of the Relators' accountants; Documents Request 3 seeks documents related to the purchase or sale of real property by the Relators; Document Request 4 seeks documents related to the purchase of real property by the Relators' relatives; Document Request 7 seeks materials regarding the Relators' bank records; Document Request 9 seeks the Relators tax returns; Document Request 10 seeks tax returns for private corporations in which the Relators were shareholders; Document Request 11 seeks materials related to credit or financing; Document Request 18 seeks monthly credit card statements; Document Request 19 seeks records of closed credit obligations; Document Request 20 seeks records of real property ownership; and Document Request No. 28 seeks foreign tax returns; Document Request 36 seeks descriptions of the Relators' net worth.

discovery that has targeted this issue in other matters. The Relators already have described the terms of their financial relationship with current counsel, they have answered State Farm's follow-up questions about that arrangement, and they have agreed to produce a copy of their fee arrangement with their current counsel. *See* Exhibit 5 to Motion. In sum, the Relators' discovery answers make clear that Scruggs and the Scruggs Katrina Group do not have any stake in the outcome of this litigation.[3] Accordingly, the Relators should not be required to provide any further information relating to their financial arrangement with their previous counsel, and they should not be required to provide any further information related to their personal finances based on State Farm's unfounded suspicion that this information may also reveal further information about their financial arrangement with previous counsel. Under Fed. R. Civ. P. 26(b)(2)(C)(iii) "the burden or expense of the proposed discovery outweighs its likely benefit."

### 1. There is little, if any, likely benefit to allowing State Farm to conduct a Fishing Expedition into the Rigsbys' finances.

There are minimal benefits to allowing further discovery into the Relators' financial arrangements with their former counsel because (1) this information has nothing to do with the merits of this action, but rather is precisely the "sideshow" that the Court already has shut down; (2) the Relators no longer have an employment, attorney-client, or any other relationship with their former counsel; (3) State Farm already has explored these matters at length in this and other proceedings; and (4) this type evidence will not likely be admissible at trial because of potential prejudice to the government in this False Claims Act case.

---

[3] More specifically, there are no agreements with respect to their prosecution of claims in this action (Doc. Request 30), the Realtors have not agreed to transfer any part of their potential recovery in this action to anyone other than their current counsel (Doc. Request 33), the Relators have not been promised any portion of any recovery in any other action (Doc. Request 34) and the Relators current counsel have not received or made any payments to the Relators' prior counsel (Exhibit 5 at 2).

First, discovery into the Rigsbys' relationship with their former counsel is of minimal importance in resolving the issue at stake in this phase of the litigation -- whether the McIntosh claim was false. When the Court denied the Relators' current counsel leave to obtain documents from the Relators' former counsel it explained, "[i]t was my intention in disqualifying these attorneys to minimize the potential pernicious influence of Scruggs' payments and to assure, to the extent possible, that the Court *can reach the merits of this case free of the controversy surrounding the Relators' financial arrangement with Scruggs and his associated counsel.*" [210] at 1 (emphasis added). To further focus the parties on the merits, the Court bifurcated the Relators' claims from State Farm's counterclaims and clearly defined the scope of the first phase of these proceedings. Accordingly, the Relators' financial arrangements with their former counsel have no bearing on whether the McIntosh flood claim is false.

Second, State Farm argues that this information relates to whether the Relators are biased and/or credible, but even this argument fails in this case because the Relators no longer have any relationship with their prior counsel. Although State Farm relies heavily on discovery rulings from the *McIntosh* proceeding, those rulings were issued while the Relators were employed by their former counsel. Here, the Relators have absolutely no financial relationship with Scruggs or any other former counsel. Accordingly, the specific terms of the Relators' relationship with former counsel cannot impact the Relators' credibility in this proceeding.

Third, the Rigsbys' relationship with former counsel has already been explored at length. The Relators have testified regarding their financial relationship with the Scruggs Katrina Group in at least three depositions, one of which was taken after the Relators were ordered to provide State Farm copies of their "state and federal tax returns, 1099 forms, paycheck stubs, etc." *See McIntosh v. State Farm*, no. 1:06-cv-1080 [1139]. The Relators have been candid in describing

the terms of this relationship, and the Court has recognized "Scruggs paid each of the Rigsby sisters an annual salary of $150,000 to act as 'consultants' for his law firm in connection with hurricane damage claims." [178] at 2. The Court has also acknowledged, "I see no evidence that at the time they made their arrangement with Scruggs [the Rigsby sisters] were aware of the ethical implications of such an arrangement. . . The Rigsby sisters are not attorneys, and they are not bound by the rules of professional conduct." *Id.* at 5.

And fourth, the so-called evidence sought by State Farm would not likely be admissible at trial because of the potential prejudice that the government could suffer. In every False Claims Act Case brought under the qui tam provisions, the relator, who generally is a witness, has a strong financial interest in the outcome of the matter. Indeed, the federal statute *provides* a financial incentive for individuals to bring to light fraud against the government that they personally witness. Defendants sometimes try to exploit the qui tam provisions by arguing that the whistleblower should not be believed because of the financial incentive. However, because the False Claims Act "seeks first to make the government whole," evidence about the relator's potential bias, motive, or credibility due to a financial interest may be limited when it is prejudicial to the government's interest in recovering from the fraud. *See U.S. ex rel Miller v. Bill Harbert Int'l Const.*, 2007 WL 851868 at *2 (D.D.C. 2007).

In *Miller*, the district court held that the defendant could introduce evidence of the Relators' financial interest by mentioning his potential to share proportionally in any recovery, but the defendant could not mention the *amount* of the potential recovery because "whatever such slight incremental probative value such evidence might carry is substantially outweighed by the significant prejudicial effect it is likely to have." *Id.* The significant prejudicial effect was the possibility that a jury might "reduce[e] its damages figure or the number of violations it

8

finds" based on its knowledge of the relators' recovery. *Id.* The court cited the Supreme Court as having "strongly implied that juries in FCA cases are generally not to be made aware of penalties and trebling" in order to ensure that "the jury is open to no such temptation to improperly increase or decrease an actual damages award if it finds liability." *Id.* at *2 (*citing Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119, 130-31 (2003) (internal quotation omitted)). The same analysis should apply here. State Farm seeks expansive discovery from the Relators in hopes of proving that the size of their financial incentive is incrementally greater than what they currently can demonstrate. But this is precisely what the Court in *Miller* found to be more prejudicial than probative. Accordingly, even if State Farm is able to uncover an additional secret payment (which does not exist), they likely would not be able to offer the exact amount of any such payment as admissible evidence at trial.

### 2. The burden, expense and prejudice caused by State Farm's sideshow would be substantial.

State Farm essentially seeks a complete accounting of the Relators' financial transactions from Hurricane Katrina through the present, including the Relators' tax documents, sources of income, bank records, and credit card statements. State Farm also seeks all documentation about the Relators' legal representation in these proceedings. As set forth below, the burden of producing this extremely personal information outweighs whatever benefit may exist.

In the Fifth Circuit, discovery of tax returns requires a finding "both that the returns are relevant to the subject matter of the action, and that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Walker v. Rent a Center*, 2006 WL 2860553 (E.D. Tex. 2006) at *2 (*citing Mohnot v. Bhansali*, 2001 WL 515242

at *1 (E.D. La. 2001) (quotation omitted)). This is because "income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as part of discovery." *Id.* (*quoting Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993)). Although the "compelling need" standard has not been applied to other financial documents, State Farm has not demonstrated *any* need at all for this information. Rather, as set forth above, this information will at best provide a slight incremental benefit that is mostly duplicative of information that State Farm already possesses.

Moreover, some of the information, such as documents reflecting the Relators' relationship with former counsel, would require Relators to obtain such information from former counsel. However, when the Relators' current counsel sought leave of the Court to obtain documents and confer with the Relators' former counsel, State Farm opposed the request on the grounds that it would "inevitably spread an indelible taint." [207] at 2. The Court denied the Relators' request as seeking an advisory opinion, but it recognized that "[c]onferring with disqualified counsel carries a substantial risk of engendering additional litigation related solely to that interaction and thereby distracting both parties and the Court from the merits of this case." [210] at 2. As the Court recognized, retrieving documents from former counsel would create a substantial risk, and it would therefore be burdensome to the Relators.

Accordingly, the Court should deny State Farm's motion to compel production of documents and responses to interrogatories that relate to the Rigsbys' potential financial arrangements with their former counsel.

### C. State Farm Also is Not Entitled to the Other Categories of Discovery It Seeks.

#### 1. Telephone and Email Records

State Farm seeks the identity of the Relators' telephone service providers and phone numbers (Interrogatory No. 7), all cellular records reflecting calls made between August 29, 2005 and August 1, 2007 (Document Request No. 26), and the identify of the Relators' internet service providers and e-mail accounts (Interrogatory No. 11).

State Farm contends that the Relators' telephone records are relevant because "[t]he Rigsbys have admitted their previous counsel provided them with cellular telephones. State Farm is entitled to seek information concerning who they have communicated with since Hurricane Katrina and the date of such communications." Motion at 9, 31-32. That argument is a non sequitur. The Relators' communications since Hurricane Katrina are either relevant or not, regardless of who provided them with telephones.

The Relators have answered State Farm's Interrogatory No. 15 seeking the identity of each natural person with whom the Relators have discussed this action, their claims against defendants in this action, or their contention that the use of XactTotal was impermissible. The Relators have had general discussions about this action with their immediate family members, but they have not had conversations with anyone other than their attorneys relating to their contention that the use of XactTotal in the adjustment of the McIntosh flood claim was impermissible, and they could not identify everyone with whom they have discussed this action because they are routinely asked about this action, often by people they do not know.

State Farm should not be entitled to discover the Relators' telephone records on the suspicion that there may have been other communications, as these records will inevitably contain private information that is not relevant to this action. *Fontana v. CEC Entertainment,*

11

*Inc.*, 2008 WL 170974 (M.D. La. 2008) ("The time and expense likely to be expended to derive relevant admissible evidence based on the plaintiff's credit card and telephone records outweighs the possible benefit the defendant might obtain. Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., this discovery will not be allowed."); *Loubser v. Pala*, 2007 WL 3232136 at *6 (N.D. Ind. 2007) (denying a discovery request for three years worth of telephone records because it "will produce primarily irrelevant information that also infringes on privacy").

### 2. Communications with the Media

Interrogatory No. 9 seeks the identity of every contact between the Relators, their agents, and the media since August 29, 2005, and Document Request 32 seeks related materials. State Farm argues that it is entitled to these communications because "Among other things, these contacts most likely will show violations of the seal imposed by 31 U.S.C. § 3730(b)(2)." Motion at 12-13. The Relators do not know what "other things," State Farm is referencing, but its argument that these materials may demonstrate seal violations does not warrant the discovery. The Court denied State Farm's 12(b)(6) motion (which was converted to summary judgment), in which State Farm argued that the Relators' former counsel's seal violation warranted dismissal of this action. Doc. no [344]. Moreover, the Relators already were ordered to produce these materials in *McIntosh*, well after the seal was lifted in this case. *See* Exhibit 8 to Motion at 6. Accordingly, any more recent communications that were not produced in *McIntosh* would not contain admissible evidence that relates to whether the Relators and their prior counsel violated the seal in this case.

### 3. Communications with Government Officials

Document Request No. 24 seeks communications with Trent Lott, Gene Taylor, or members of their staffs. State Farm seeks discovery of these communications because "they may

demonstrate the Rigsbys' violation of the seal order" and because "Such communications also bear on the Rigsbys' credibility, bias and motives." Motion at 30-31. The Relators' counsel asked State Farm how communications between the Relators, their agents, and their congressional representatives could bear on the Relators' credibility, bias, or motive, *See* Exhibit 4 to Motion at 5, and State Farm did not offer an explanation. However, State Farm renewed this assertion in its Motion. Motion at 30. The Relators do not understand the basis of State Farm's assertion. To the extent these communications are relevant to the alleged seal violation, which State Farm argued in its unsuccessful dispositive motion, the Relators have stated that that their current counsel are not in possession of any responsive materials while the case was still under seal. Exhibit 5 at 3.

Document Request No. 21 seeks documents relating to communications with the U.S. Attorney's Office, the United States Department of Justice, the Federal Bureau of Investigation, or the Mississippi General Attorney's Office. The Relators objected to providing any materials disclosed to the government without either the government's consent or a Court order. Motion at 29. State Farm asserted in its March 9, 2010 letter that "most courts that have addressed the issue have found disclosure statements to be discoverable," but State Farm has not cited any legal authority in either its March 9 letter, or its Motion to Compel. On the contrary, communications between Relators and the government generally are protected under the common interest privilege. *See e.g., Miller v. Holzmann*, 240 F.R.D. 20, 21 (D.D.C. 2007) (declining to compel production of information the relator provided the government because "the United States and relator had a common interest in the prosecution of common defendants in an existing civil or criminal case"). State Farm also asserts that the "state and federal investigations. . . have been concluded," but the August 1, 2007 Order lifting the seal in this

13

case acknowledged that the government's civil investigation was ongoing. [25] at 1.

### 4.  Identity of Computer Technicians

Interrogatory No. 8 seeks the identity of all computer technicians the Relators have allowed access to computers issued by State Farm. State Farm's explanation for the relevance of this interrogatory is that the Rigsbys' former counsel "admitted that the Rigsbys allowed them access to their computers. . . in violation of the terms of their State Farm computer access agreement," and this conduct is relevant to the Relators' bias, credibility and motivation. Whether the Relators violated the terms of their State Farm computer access agreement is the central question in State Farm's counterclaim. [395] at 76-88. Asserting that the substantive allegations of its counterclaim are relevant to the Relators' bias, credibility, and motive has no basis and is a transparent attempt to undermine the Court's decision to bifurcate this proceeding. [363]

### 5.  Obtaining Documents from Disqualified Former Counsel

State Farm's motion to compel cites several discovery requests for which the Relators supplemented their answers, and the only outstanding issue is whether the Relators should be required to obtain documents from their prior counsel.[4]

State Farm's March 9, 2010 letter asserts that "we know of no reason why you or Relators themselves cannot request those materials from previous counsel." However, as set forth in Section II(B), above, Relators have plenty of reasons not to contact the Relators' former counsel, including the Court's finding that "[c]onferring with disqualified counsel carries a

---

[4] These discovery requests are: Document Request No. 27, Relators calendars and diaries; Document Request No. 30, materials relating to contracts for prosecution of claims in this action; Document Request 31, Relators' surveillance materials; Document Request No. 35, agreements to finance the costs of pursuing this action; Document Request No. 37, communications with law firms not representing the Relators; Document Request No. 38, indemnity agreements; Document Request No. 39, communications with Scruggs.

substantial risk of engendering additional litigation related solely to that interaction and thereby distracting both parties and the Court from the merits of this case." [210] at 2. In any event, the Relators' current counsel are not withholding any responsive materials on the grounds that they were originally obtained from Relators' prior counsel, but they do object to having to obtain potentially responsive materials from the Relators' prior counsel. The risk recognized by the Court of engendering additional litigation makes State Farm's discovery unreasonably burdensome to the extent it would require Relators or their current counsel to obtain documents from the Relators' prior counsel.

### 6. Discovery Requests Already Answered in Full

Document Request No. 33 seeks agreements to pay a portion of the Relators' recovery in this action, and Document Request No. 34 seeks materials regarding receiving anything of value from recovery by any attorney in Hurricane Katrina. The Relators have answered that there are no materials responsive to either request. *See* Exhibit 4 to Motion at 3. Accordingly, State Farm's Motion to Compel answers to these discovery requests is unnecessary.

### III. CONCLUSION

For the foregoing reasons, State Farm's motion to compel should be denied.

This the 5th day of April 2010                     Respectfully, submitted,

                                                          /s/ C. Maison Heidelberg
                                                       C. MAISON HEIDELBERG, MB #9559
                                                       GINNY H. KENNEDY, MB#102199

OF COUNSEL                                        Attorneys for Cori Rigsby and Kerri Rigsby
August J. Matteis, Jr. (*admitted pro hac vice*)    HEIDELBERG HARMON PA
Craig J. Litherland (*admitted pro hac vice*)       795 Woodlands Parkway, Suite 220
Scott D. Gilbert (*admitted pro hac vice*)           Ridgeland, Mississippi 39157
Benjamin Davidson (*admitted pro hac vice*)       Phone No.        (601) 351-3333
GILBERT LLP                                     Fax No.           (602) 956-2090
1100 New York Avenue NW, Suite 700
Washington, DC 20005
Fax No.       (202) 772-3333
Phone No.   (202) 772-2200

**CERTIFICATE OF SERVICE**

      I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this day caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

                Don Burkhalter, Esq.
                UNITED STATES ATTORNEY
                  FOR MISSISSIPPI
                188 East Capitol Street, Suite 500
                Jackson, MS 39201

                Felicia Adams, Esq.
                ASSISTANT U.S. ATTORNEY
                188 East Capitol Street, Suite 500
                Jackson, MS 39201

                Joyce R. Branda, Esq.
                Patricia R. Davis, Esq.
                Jay D. Majors, Esq.
                UNITED STATES DEPARTMENT OF JUSTICE
                Commercial Litigation Branch
                Civil Division
                601 D Street, NW
                Washington, DC 20004

                Larry G. Canada, Esq.
                Kathryn Breard Platt, Esq.
                Galloway, Johnson, Tompkins, Burr & Smith
                701 Poydras Street, Suite 4040
                New Orleans, LA 70139
                (p) 504-525-6802
                ATTORNEYS FOR HAAG ENGINEERING CO.

                Robert C. Galloway, Esq.
                Emerson Barney Robinson, III, Esq.
                Benjamin M. Watson, Esq.
                Jeffrey A. Walker, Esq.
                Amanda B. Barbour, Esq.
                BUTLER, SNOW, O'MARA,
                    STEVENS & CANNADA, PLLC
                P.O. Box 22567
                Jackson, MS 39225
                (p) 601-948-5711

        Michael B. Beers, Esq.
        BEERS, ANDERSON, JACKSON
          PATTY & FALWAL, PC
        250 Commerce Street, Suite 100
        Montgomery, AL 36104
        (p) 334-834-5311
        ATTORNEYS FOR STATE FARM MUTUAL
        INSURANCE COMPANY

        Robert D. Gholson
        GHOLSON BURSON ENTREKIN & ORR, P.A.
        55 North 5th Avenue
        P.O. Box 1289
        Laurel, MS 39441-1289
        ATTORNEYS FOR FORENSIC ANALYSIS
        ENGINEERING CORPORATION


                          /s/    C. Maison Heidelberg___