IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY             RELATORS/COUNTER-DEFENDANTS

v.                                       CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY     DEFENDANT/COUNTER-PLAINTIFF

and

FORENSIC ANALYSIS ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                    DEFENDANTS

### STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PATRICIA LOBRANO TO COMPLY WITH [499] SUBPOENA DUCES TECUM

*(With Verified Good Faith Certificate)*

Robert C. Galloway (MSB #4388)
Jeffrey A. Walker (MSB #6879)
E. Barney Robinson III (MSB #09432)
Benjamin M. Watson (MSB #100078)
Amanda B. Barbour (MSB #99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988, Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ...........................................................................................................................1

      A.     Summary of Argument ...........................................................................................1

      B.     Procedural History .................................................................................................2

INTRODUCTION ...........................................................................................................................5

ARGUMENT ...................................................................................................................................5

      I.     THE SUBPOENA SEEKS MATERIALS THAT ARE PROPERLY DISCOVERABLE AND MRS. LOBRANO SHOULD BE COMPELLED TO PRODUCE RESPONSIVE MATERIALS .........................................................5

      II.    MRS. LOBRANO SHOULD BE COMPELLED TO RE-APPEAR FOR DEPOSITION, IF NECESSARY .......................................................................14

CONCLUSION ..............................................................................................................................15

CERTIFICATE OF SERVICE .....................................................................................................17

Defendant/Counter-Plaintiff State Farm Fire and Casualty Company ("State Farm"), respectfully submits this Memorandum in Support of its Motion to Compel Patricia Lobrano to Comply With [499] Subpoena Duces Tecum (With Verified Good Faith Certificate).[1]

## INTRODUCTION

### A. Summary of Argument

This motion concerns a straightforward – but troubling – matter. State Farm served a [499] subpoena duces tecum on Patricia Lobrano – who is the Rigsbys' mother and a key witness in this case. When Mrs. Lobrano appeared for her deposition, counsel for the Rigsbys – who are now also representing Mrs. Lobrano – told State Farm that Mrs. Lobrano would not be producing a single document, invoking essentially the same objections asserted by the Rigsbys that were recently overruled by this Court in its [490] Order adjudicating State Farm's [431] Motion to Compel.

In light of this Court's [490] Order – which essentially rejected many of the objections advanced by counsel on behalf of Mrs. Lobrano – State Farm has attempted to confer with counsel for the Rigsbys/Lobrano. However, these efforts have come to naught, as counsel for the Rigsbys/Lobrano have declined to respond to conferral correspondence or to even execute and return a Good Faith Conferral Certificate. (Verified Good Faith Cert. at ¶2 & Ex. 1, Ex. A to Mtn.)

The Rigsbys' and Mrs. Lobrano's disregard for the Federal Rules governing discovery and the rulings of this Court could not be more blatant. Their meritless objections have already been overruled. Yet State Farm must once again seek this Court's intervention to obtain

---

[1] The Rigsbys' counsel refused to execute and return the Good Faith Certificate tendered them by the undersigned. Accordingly, State Farm is filing its motion accompanied by a Verified Good Faith Certificate. (Verified Good Faith Cert. at ¶2 & Ex. 1, Ex. A to Mtn.)

1

discoverable documents. State Farm respectfully requests that the Court order Mrs. Lobrano to comply with State Farm's subpoena duces tecum forthwith.

### B. Procedural History

On March 23, 2010, State Farm Fire and Casualty Company ("State Farm") served a [499] subpoena duces tecum on Patricia Lobrano, the Rigsbys' mother. That subpoena commanded production, as well as Mrs. Lobrano's appearance for deposition on April 8, 2010. On April 6, 2010, counsel for the Rigsbys/Lobrano served objections to that subpoena, by means of a letter to counsel for State Farm. (05-06-2010 Letter from Davidson to Galloway, Ex. B to Mtn.)

When Mrs. Lobrano appeared for deposition on April 8, 2010, counsel for the Rigsbys/Lobrano stated that many of the objections were also raised in the Rigsbys' response to State Farm's motion to compel and that, based on those objections, Mrs. Lobrano was not producing any materials responsive to the subpoena:

> MR. HEIDELBERG:
>
> Let me make a preliminary statement, if you don't mind. I think a number of objections have been asserted to the subpoena that were set out in a letter, I believe, dated April the 6th. And I'll just make that – rather than repeat what those objections are, I think everybody knows what they are, I'll make that an exhibit to the deposition, which I'll have to get a copy, but I'll make that Exhibit 1. I think a lot of the discovery issues are also set out in --
>
> (Exhibit 1 was marked.)
>
> MR. HEIDELBERG:
>
> <u>A lot of the issues</u>, or at least some of the issues, not knowing exactly what the questioning will be, <u>are also addressed as part of a discovery dispute in our response filed April the 5th of 2010 to the Motion to Compel by State Farm</u>. I mean, we've got a number of concerns and objections about the scope of the deposition, the scope of the documents requested and all of those things.

    So that said, we'll just have to, I think, work through this as we go and try to -- try to state those as they come up and address those as they come up.

MR. WALKER:

Are you finished?

MR. HEIDELBERG:

Yes.

MR. WALKER:

Just so the record is clear and I'm clear, are these -- are the objections that you're interposing here on the record today interposed on behalf of Mrs. Lobrano or the Rigsbys or both?

MR. HEIDELBERG:

Both and.

MR. WALKER:

Okay.

MR. HEIDELBERG:

<u>And in terms of document production, I don't believe there are any – there aren't any documents to be produced based on the objections that have been asserted in the record.</u>  And the categories that were unobjected to, I just don't think there are any responsive documents, but certainly you can ask her about that.

(04-08-2010 P. Lobrano Dp. at 6-8, Ex. C to Mtn.) (emphasis added).  In other words, Mrs. Lobrano's position is that, to the extent she has responsive materials, all of them are within the scope of the objections she has proffered – and those objections overlap with the now-overruled objections that were at issue in State Farm's [431] motion to compel the Rigsbys.

    There is no question that Mrs. Lobrano has possession or control of responsive materials.  For example, her recent deposition testimony revealed that she has at least the following items:

1. The photographs depicting Hurricane Katrina damage to the Lobrano residence at 241 Lovers Lane, Ocean Springs, Mississippi, including but not limited to those taken on the inspection with Kerri Rigsby and others on the afternoon of Katrina, described on pages 139 to 143 of her deposition transcript;

3

2. The e-mail from Richard Scruggs' assistant described on page 90 of her deposition transcript;

3. Her communications with government agencies concerning Hurricane Katrina, including communications with the Mississippi Attorney General, the U.S. Attorney's Office and/or the Federal Emergency Management Agency, described on pages 102 to 105 of her deposition transcript;

4. The video rental records concerning the rental of the movie *The Insider* that she described on pages 105 to 106 of her deposition transcript;

5. Her cellular telephone records from August 29, 2005 to August 1, 2007 for the Cellular South and AT&T accounts described on pages 107 to 108 of her deposition transcript;

6. Her laptop computer described on pages 39 to 43 of her deposition transcript; and

7. Her PC computer described on pages 35 to 36 of her deposition transcript.

(04-08-2010 P. Lobrano Dp. at 35-36, 39-43, 90, 102-08 & 139-43, Ex. C to Mtn.)

On May 5, 2010, this Court issued its [490] Order, granting in part and denying in part State Farm's [431] motion to compel. That [490] Order overruled the overwhelming majority of the Rigsbys' objections in State Farm's favor – objections that substantially overlap with those proffered by Mrs. Lobrano to her [499] subpoena duces tecum.

Two days after this Court issued its [490] Order, State Farm's counsel e-mailed counsel for the Rigsbys/Lobrano a discovery conferral letter, which stated in part:

> [S]ince Mrs. Lobrano's failure to produce any documents was based on your position that her obligation to do so was somehow tied to the motion to compel ruled on by Judge Walker this week. Since those arguments were rejected, please let me know when we can expect to receive those documents.

(05-05-2010 Letter from Jeffrey A. Walker to C. Maison Heidelberg at 2, Ex. D to Mtn.) Counsel for the Rigsbys/Lobrano did not respond to that letter.

In yet another attempt to resolve this matter without Court intervention, on May 13, 2010, counsel for State Farm sent counsel for the Rigsbys/Lobrano a second conferral communication and included a Good Faith Certificate. (Verified Good Faith Cert. at ¶2 & Ex. 1, Ex. A to Mtn.)

4

Counsel for the Rigsbys/Lobrano have made no response to that communication and have declined to execute and return the Good Faith Certificate – forcing State Farm to prosecute this motion. (*Id.*)

## ARGUMENT

**I.    THE SUBPOENA SEEKS MATERIALS THAT ARE PROPERLY DISCOVERABLE AND MRS. LOBRANO SHOULD BE COMPELLED TO PRODUCE RESPONSIVE MATERIALS**

**Request 1:** All Documents reflecting your communications with Kerri or Cori Rigsby related to State Farm, the McIntosh property or insurance claims for Hurricane Katrina damage to the Lobrano residence.

**Objection:** "We do not understand what possible relevance Ms. Lobrano's insurance claim has on whether the McIntosh flood claim was false, and we object to providing these documents. Moreover, because Ms. Lobrano's insurance policy was with State Farm, you are already in possession of any materials Ms. Lobrano may have." (05-06-2010 Letter from Davidson to Galloway at 1, Ex. B to Mtn.)

**Request 1 Is Proper:** As an initial matter, Mrs. Lobrano did not object to the portion of this request seeking documents related to her communications with the Rigsbys or related to the McIntosh property. Accordingly, she should be compelled to produce all such materials.

Further, it is known that the Rigsbys interceded in various ways in the Lobranos' Hurricane Katrina claims with State Farm. For example, Tammy Hardison testified:

> Q.  Okay. At any time did you ever observe Kerri or Cori trying to get themselves involved in their mother's State Farm claim?
>
> A.  Oh, yeah. Constantly, yes.
>
> Q.  What, if anything, do you know about that?
>
> A.  Well, I remember one time they tried to get an adjustor to work their mother's claim that was known as a big payer. And Kerri ended up telling the adjustor, and he decline the claim.
>
> Q.  Which adjustor was that?
>
> A.  That was Jamie Woody.
>
> Q.  Okay. Telling the -- Kerri told the adjustor?
>
> A.  Kerri told him. Said, you know, you just got my mother's claim, Ms. Lobrano. And he said, well, I can't do your mother's claim because I can't do anybody's claim that I know.

5

>   Q. Okay. Any other way that you observed them getting involved?
>
>   A. They -- you know, they befriended another adjustor that was supposed to inspect her mother's claim. They -- I think they tried to access her file and see what was going on with it all the time. See, you know, if it's been inspected or who has got it.

(07-18-2008 T. Hardison Dp. at 26-28, Ex. E to Mtn.)

Therefore, materials related to Mrs. Lobrano's Hurricane Katrina claim are discoverable, as they may further reveal attempts by the Rigsbys to improperly influence the outcome of Mrs. Lobrano's State Farm insurance claim, which would be relevant to the Rigsbys' bias, prejudice, credibility and motive. *See* ([490] at 2) ("This interrelationship of the McIntosh claim, the Scruggs attorneys, and the Rigsbys serves as the foundation for State Farm's exploration of bias, prejudice or motive, rather than the obvious financial motive that is necessarily a component of any *qui tam* action. More specifically, State Farm wishes to explore the Rigsbys' possible motivation 'to concoct evidence' or 'concoct claims'. …Accordingly, evidence reflecting on the Rigsbys' credibility is discoverable").

**Request 4:** All Documents depicting the weather, tidal surge or wind at the Lobrano residence during Hurricane Katrina.

**Request 5:** All Documents reflecting Hurricane Katrina damage to the Lobrano residence.

**Request 6:** All Documents reflecting your communications with any person, entity or government agency related to the Lobranos' insurance claims for Hurricane Katrina damage to the Lobrano residence.

**Objection:** "We do not understand what possible relevance Ms. Lobrano's insurance claim has on whether the McIntosh flood claim was false, and we object to providing these documents. Moreover, because Ms. Lobrano's insurance policy was with State Farm, you are already in possession of any materials Ms. Lobrano may have." (05-06-2010 Letter from Davidson to Galloway at 1, Ex. B to Mtn.)

**Requests 4-6 Are Proper:** Materials related to the Lobranos' Hurricane Katrina claims and their house damage are relevant for multiple reasons. For example, Mrs. Lobrano testified that she took photographs of her house damage, including those taken on the afternoon of Katrina during an inspection with Kerri Rigsby and others. (04-08-2010 P. Lobrano Dp. at 139-

6

43, Ex. C to Mtn.) Those pictures will show "cabana"-type damage to the first floor of the Lobranos' home, similar to damage in the McIntosh house, damage that Kerri Rigsby quickly and immediately recognized as caused by flood:

> Q. Okay. Were any comments made by either Cori or Kerri in your presence to the Lobranos about the type of loss they suffered?
>
> A. Yes. At that particular day when we first went out there it was -- you know, Kerri was -- made the comment about it being flood damage and that -- you know, that -- you don't understand that homeowners doesn't pay for this flood, you know, flood damage.
>
> So she talked to her mom about that a little bit, but then on -- later I remember Cori talking to her mom and talking about it to me later that her mom had only bought -- she bought the maximum coverage, the 250, but she didn't buy any contents coverage and how stupid that was. And that she had told her mother, you know, you're an intelligent woman, why wouldn't you have bought all -- you know, the maximum that you could have bought and so...
>
> Q. Did do you recall Cori making any comments in your presence or to you about whether or not her mother was -- had any coverage under the homeowner's policy for the loss that she observed?
>
> A. Well, yeah, I mean, Kerri and Cori both made comments about that because they obviously knew that -- and then I heard them tell her, you know, that it's not going to be covered under that. You may have some wind damage to the roof or something like that that will be covered, but for all her lower levels that were destroyed, you know, they, you know, were explaining to her that that's not covered.

(07-18-2008 D. Lee Dp. at 44-46, Ex. F to Mtn.) These pictures are therefore discoverable, as they depict, and will illustrate to the jury, damage that Kerri Rigsby contemporaneously recognized as flood damage long before the supposed State Farm meeting at which she contends that she was bewitched by State Farm into a zombie claims handler who was unable to recognize flood damage based on her training and experience, and on what she saw with her own eyes. *See, e.g.*, (Hr'g Tr. at 206:8-208:19, Ex. G to Mtn. & [322] at 5-6.)

Moreover, as noted above, materials related to Mrs. Lobrano's Hurricane Katrina claim are discoverable, as they may reveal attempts by the Rigsbys to improperly influence the outcome of Mrs. Lobrano's State Farm insurance claim, which would be relevant to the Rigsbys'

7

bias, prejudice, credibility and motive. *See* ([490] at 2). Finally, Mrs. Lobrano's testimony, in which she acknowledged possession of certain materials previously unknown to State Farm, reveals the inaccuracy the argument by counsel for the Rigsbys/Lobrano that State Farm already has possession of all of Mrs. Lobrano's claims-related materials.

**Request 7:** All rental agreements and similar Documents relating to living space for the Lobrano family after Hurricane Katrina.

**Request 10:** All canceled checks or bank statements indicating payments to Payton Properties.

**Objection:** "Requests 7 and 10 seek information related to Ms. Lobrano's living arrangement with her daughters following Hurricane Katrina. The terms of Mrs. Lobrano's living arrangements are not related to whether the McIntosh flood claim is false." (05-06-2010 Letter from Davidson to Galloway at 1, Ex. B to Mtn.)

**Requests 7 & 10 Are Proper:** Materials related to Payton Properties are relevant to the Rigsbys' credibility, and this Court has already ruled that "evidence reflecting on the Rigsbys' credibility is discoverable." ([490] at 3).

By way of explanation, Dr. and Mrs. Lobrano stayed in Kerri Rigsby's trailer for several weeks after Katrina struck. Subsequently, Rachel Fischer moved into Kerri Rigsby's camper and the Lobranos moved into Kerri Rigsby's house. (04-08-2010 P. Lobrano Dp. at 156-64, Ex. C to Mtn.) The Lobranos paid Kerri Rigsby $2,800 per month in rent to an account that Kerri opened in the name of "Payton Properties," which was named after her dog, Payton. (*Id.*)

Kerri Rigsby knew that her mother executed the lease in order to collect coverage for Alternative Living Expenses ("ALE") under the Lobrano's homeowners policy from State Farm, but claims not to have known that if ALE was collected from a family member then that would require a social security or a tax ID number. But Kerri Rigsby did not get a tax ID number for Payton Properties, register it with the State of Mississippi, or form it as a PLLC or as a corporation. (04-30-2007 K. Rigsby Dp. at 344-57, Ex. H to Mtn.) Later, Kerri Rigsby transferred the "Payton Properties" account to Cori Rigsby when the Lobranos moved into Cori

8

Rigsby's house. The Lobranos' monthly $2,800 rent payment curiously matched the amount of the Lobranos' monthly note on their house. (*Id.*)

One can easily conclude that Mrs. Lobrano and the Rigsbys concocted these Byzantine transactions in order to conceal the reality of the situation from State Farm. Thus, materials related to it are relevant to the Rigsbys' credibility – or, more specifically, the lack thereof.

**Request 8:** All records relating to video rentals from December 2005 to May 2006.

**Objection:** "Requests 8 and 9 seek Ms. Lobrano's video rentals and telephone records. Ms. Lobrano is not in possession of these materials, and even if she were, they are private materials that are no related to whether the McIntosh claim was false." (05-06-2010 Letter from Davidson to Galloway at 1-2, Ex. B to Mtn.) "Video record rentals are also protected by the Video Privacy Protection Act. 18 U.S.C. § 2710." (05-06-2010 Letter from Davidson to Galloway at 2 n.1, Ex. B to Mtn.)

**Request 8 Is Proper:** Two former associates of the Rigsbys, Dana Lee and Tammy Hardison, have given testimony making clear that the Rigsbys' association with Dickie Scruggs and the unlawful activities they engaged in on his behalf were not motivated by altruistic goals, but rather by a desire for money and fame. Sometime in March 2006, the Rigsbys told Ms. Lee that they were going to work for Dickie Scruggs by providing him with documents about his clients. (07-18-2008 Lee Dp. at 59-60, Ex. F to Mtn.) They tried to convince Ms. Lee and Ms. Hardison to join them, saying: "You'll be heroes. We are going to get a book deal. We're going to make a movie. . . . We're going to be famous." (07-18-2008 Lee Dp. at 63, Ex. F to Mtn.)

In fact, Ms. Lee and Ms. Hardison testified that they were at Cori Rigsby's house around December 2005 and observed the Rigsbys *and Mrs. Lobrano* watching the movie "*The Insider*," a film based upon Scruggs's exploits in the tobacco litigation. While watching "*The Insider*," the Rigsbys were discussing who was going to play each of them in their future movie. (07-18-2008 Lee Dp. at 71-72, Ex. F to Mtn.; 07-18-2008 Hardison Dp. at 40-41, Ex. E to Mtn.)

9

Mrs. Lobrano admitted in her deposition that she rented *The Insider* and watched it with the Rigsbys:

> Q. Do you recall a time back when you were living at Kerri or Cori's house when you and Kerri and/or Cori sat down and watched a video of the movie, *The Insider*?
>
> A. Yes, I recall.
>
> Q. All right. Where was this?
>
> A. Time-period wise or --
>
> Q. Yeah. Which house were you living in?
>
> A. Cori's.
>
> Q. Okay. Whose idea was it to rent the movie?
>
> A. Mine.
>
> Q. Okay. What was the occasion for that?
>
> A. That would have been -- it might have been the same weekend after their first meeting with Dick Scruggs. And since they were reluctant to meet him and I sort of took it on myself to go to him because I was concerned about them and what they were seeing and what was going on, they didn't really have an opinion of Dick Scruggs one way or the other. They had heard about him, but they didn't know him. And I kind of had a history with him working for my family and having seen what he had done for others and with the tobacco case. I asked the girls, I said, well, have you read anything about his case with tobacco because he had a whistle blower in that case. Because they were very nervous about talking to him. And this was after they had already talked to him. And they said, well, they felt better after talking to him, but they were still a little nervous because they -- they didn't know what was going to happen. And I said, well, have you read *The Insider*; and they said, no. And I said, well, that sort of explains some work he did there. And I said, well, I'll just see if they have that movie and you can see sort of what Dick has done in the past so you're more familiar with this person you've just talked to. And so I went out and rented the movie.

(04-08-2010 P. Lobrano Dp. at 95-96, Ex. C to Mtn.)

State Farm is only interested in Mrs. Lobrano's rental records regarding *The Insider* – and has no interest in the production of her other video records. State Farm therefore limits its request to records relating to rental(s) of that particular film from December 2005 to May 2006.

Mrs. Lobrano's video rental records are within the scope of discovery because they will reveal the date of Mrs. Lobrano's rental(s) – and in conjunction with her testimony, such date(s)

could show the Rigsbys were already secretly working with Scruggs at a time potentially *far earlier* than they have admitted.  If the rental records so demonstrate, this proof would go directly to the Rigsbys' veracity and credibility, making this request well within the scope of matters this Court has already found discoverable.  *See* ([490] at 3) ("Accordingly, evidence reflecting on the Rigsbys' credibility is discoverable").

Former Deputy Insurance Commissioner, Lee Harrell has testified that in mid-December 2005, Dickie Scruggs called Mississippi Commissioner of Insurance George Dale and requested a meeting.  On December 15, 2005, Scruggs met with Commissioner Dale and Deputy Commissioner Harrell.  At that meeting, Scruggs demanded that Dale "make State Farm put up $500 million for him to administer to pay claims [to clients of the Scruggs Katrina Group]."  (10-31-07 L. Harrell Dep. at 318:14-18, Ex. I to Mtn.)  When asked why the Mississippi Department of Insurance should set aside or require State Farm to pay a half billion dollars for the SKG to administer as it saw fit,

> [Scruggs] said he was going to do it the same way he did in the tobacco case, that he had a couple insiders, high-ranking State Farm representatives ***working for him as insiders***, and he was going to work it the same way he and [former Mississippi AG] Mike Moore worked the tobacco case.

(10-31-07 L. Harrell Dp. at 320:10-16, Ex. I to Mtn.) (emphasis added).

When questioned further on this point, Harrell confirmed that Scruggs said "he had a couple of . . . insiders" and "whistle blower[s]" with knowledge of "claims files [and] engineer reports" who were "working for him" at State Farm.  *Id.* at 324:13-325:24.  December 15, 2005 is far earlier than the February date that the Rigsbys contend was when they first met with Dickie Scruggs regarding State Farm and the McIntosh claim, again showing the relevance of the movie rental date(s), which the records can establish.  (05-01-2007 *McIntosh*, C. Rigsby Dp. at 75:10-19, Ex. J to Mtn.; 05-01-2007 *McIntosh*, K. Rigsby Dep. at 301:12-302:2, Ex. H to Mtn.)

11

Mrs. Lobrano contends that – even if otherwise discoverable – she should not be required to produce the records due to the Video Privacy Protection Act, 18 U.S.C. § 2710. However, that Act applies to a "video tape service provider," not a consumer like Mrs. Lobrano. 18 U.S.C. § 2710(a)(4) & (b). Further, even with respect to the "video tape service provider," that entity may disclose the information "to the consumer" – Mrs. Lobrano – and in response to a court order in a civil action upon a showing of need. 18 U.S.C. § 2710(b)(2)(A) & (b)(2)(F).

Mrs. Lobrano's contention that her rental records showing when she rented *The Insider* are "private materials," (05-06-2010 Letter from Davidson to Galloway at 1-2, Ex. B to Mtn.), is especially disingenuous, given her prior conduct. Mrs. Lobrano previously gave an interview to the *Sun Herald* and stated publicly that "Lobrano also checked video records and found that she rented "*The Insider*" on Feb. 27, 2006 - after the Rigsbys met with Scruggs." (*State Farm Alleges Ulterior Motives; Insurer Says "Money, Fame,"* Sun Herald, July 30, 2008, Ex. K to Mtn.) If these records and the date on which she rented the movie were ever "private information," they certainly are no longer private after Mrs. Lobrano volunteered herself for a *Sun Herald* article on the subject in one of the most public fora possible.

Finally, Mrs. Lobrano's contention that she "is not in possession of these materials," is no excuse, even if true. Fed. R. Civ. P. 34(b) requires production of materials that are in "the responding party's possession, custody or *control*…." *Id.* (emphasis added). Mrs. Lobrano's video rental records regarding *The Insider* are without doubt under Mrs. Lobrano's *control* pursuant to the Act and as confirmed by her *Sun Herald* interview, and Mrs. Lobrano should be compelled to retrieve them from the rental store for production, should she no longer have them in her possession.

**Request 9:** All telephone records including your home telephone or any cell phones used by you from December 2005 to May 2006.

12

**Objection:** "Requests 8 and 9 seek Ms. Lobrano's video rentals and telephone records. Ms. Lobrano is not in possession of these materials, and even if she were, they are private materials that are no related to whether the McIntosh claim was false." (05-06-2010 Letter from Davidson to Galloway at 1-2, Ex. B to Mtn.)

**Request 9 Is Proper:** Ms. Lobrano has admitted interacting with the Rigsbys and Scruggs with respect to their actions against State Farm. Mrs. Lobrano's phone records may reveal important dates of communications, as well as a deeper involvement in the underlying events than she has conceded. In its [490] Order, this Court found the Rigsbys' phone records from the time period of October 12, 2005 to February 28, 2006 discoverable. ([490] at 4.) Consistent with that [490] Order, State Farm limits its request to the period of December 1, 2005 to February 28, 2006 and requests the Court to compel Mrs. Lobrano to produce those records.

**Request 11:** All Documents reflecting your communications with Tammy Hardison or Dana Lee after Hurricane Katrina.

**Request 12:** All Documents reflecting your communications with Dreux Seghers after Hurricane Katrina.

**Request 13:** All Documents reflecting your communications with Brian Ford after Hurricane Katrina.

**Objection:** "These requests are overbroad because they seek all communications, not just communications related to the subject matter of this litigation. Subject to that objection, Ms. Lobrano is not in possession of any documents related to communications with these individuals." (05-06-2010 Letter from Davidson to Galloway at 2, Ex. B to Mtn.)

**Requests 11-13 Are Proper:** It is unclear from Mrs. Lobrano's response whether she claims to have no materials related to any communications with these four individuals or no such materials that she believes are "related to the subject matter of this litigation." Any contacts Mrs. Lobrano may have had with these four individuals would almost per se have some relationship to the subject matter of this litigation, as these individuals – Lee and Hardison (Renfroe adjusters), Seghers (engineer) and Ford (engineer) – all had connections to the subject matter of this Action. For example, Mrs. Lobrano testified that she met with Lee and Hardison on several occasions, including in connection with their adjustment of a claim. (04-08-2010 P. Lobrano Dp. at 135-36

13

& 140, Ex. C to Mtn.)  She further testified that she discussed engineer reports with Dreux Seghers.  *E.g.*, (04-08-2010 P. Lobrano Dp. at 167-74, Ex. C to Mtn.)

**Request 14:**  All Documents reflecting or relating to payments or reimbursement for expenses to the Lobranos by Richard F. "Dickie" Scruggs, the Scruggs law firm or the Scruggs Katrina Group.

**Request 15:**  All Documents reflecting or relating to payments or reimbursements for expenses to the Lobranos by Richard F. "Dickie" Scruggs, the Scruggs law firm or the Scruggs Katrina Group on behalf of or for the benefit of Kerri Rigsby or Cori Rigsby.

**Objection:**  "Dick Scruggs represented Ms. Lobrano in her individual policyholder suit against State Farm.  The only payments Ms. Lobrano received from Dick Scruggs, The Scruggs Law Firm, [sic] or the Scruggs Katrina group, were the proceeds of her individual policyholder litigation against State Farm.  Ms. Lobrano objects to producing any materials related to that litigation because they are privileged and irrelevant."  (05-06-2010 Letter from Davidson to Galloway at 2, Ex. B to Mtn.)

**Requests 14 & 15 Are Proper:**  This Court has previously ruled that "the compensation received by the Rigsbys from the Scruggs group, is relevant and discoverable" as it "goes to issues of bias, prejudice or motive…."  ([490] at 2.)  Here, Mrs. Lobrano contends that she had extensive conversations with Dickie Scruggs regarding matters at issue in this Action.  In fact, Mrs. Lobrano contends she had *more* communications than either of the Rigsbys – "frequently I heard from Dick Scruggs before they [the Rigsbys] did.  I mean, he was communicating with me as much as them, or  more."  (04-08-2010 P. Lobrano Dp. at 89, Ex. C to Mtn.)  Given that those communications with Mr. Scruggs and the Rigsbys render Mrs. Lobrano a material witness to the Rigsbys' story and motivations, Mrs. Lobrano's "bias, prejudice or motive," ([490] at 2), is every bit as important to decipher as that of her daughters and therefore any compensation she may have received from Mr. Scruggs or anyone else somehow associated with SKG is discoverable under the reasoning of this Court's [490] Order.

## II.  MRS. LOBRANO SHOULD BE COMPELLED TO RE-APPEAR FOR DEPOSITION, IF NECESSARY

At the conclusion of Mrs. Lobrano's deposition, the following exchange took place:

14

MR. WALKER:

In light of the objections interposed to the subpoena and the lack of any documents produced today, at this point, we'll adjourn the deposition subject to any instructions from the Court on Mrs. Lobrano's obligation to produce documents.  In the event documents are produced that require additional examination, we would reserve our right to reconvene.

MR. HEIDELBERG:

All right.  And we would, of course, object to that, but somebody else can decide that for us.

(04-08-2010 P. Lobrano Dp. at 197, Ex. C to Mtn.)

Should this Court compel Mrs. Lobrano to produce some or all of the materials that are requested by the subpoena and at issue on this motion, State Farm requests that this Court order Mrs. Lobrano to re-appear for deposition – if so requested by State Farm – for questioning on those materials.

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests that its motion to compel be granted and that Patricia Lobrano be required to immediately produce all materials in her possession or control that are within the scope of the [499] subpoena duces tecum.  State Farm further moves for leave to resume Mrs. Lobrano's deposition, after she produces all responsive materials. State Farm seeks such further, supplemental and alternative relief as may be appropriate in the premises.

This the 21st day of May, 2010.

    Respectfully submitted,

    STATE FARM FIRE AND CASUALTY COMPANY

By:   s/*E. Barney Robinson III* (MSB #09432)
      Robert C. Galloway (MSB # 4388)
      Jeffrey A. Walker (MSB # 6879)
      E. Barney Robinson III (MSB #09432)
      Benjamin M. Watson (MSB #100078)
      Amanda B. Barbour (MSB # 99119)

    ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
 (E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

16

**CERTIFICATE OF SERVICE**

  I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
maison@heidlebergpa.com
ginny@heidelbergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
gilberts@gotofirm.com
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409
(E) felicia.adams@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441
gholson@gbeolaw.com
wallace@gbeolaw.com

ATTORNEYS FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

THIS the 21st day of May, 2010.

By:    s/*E. Barney Robinson III* (MSB #09432)
          E. Barney Robinson III (MSB #09432)

Jackson 5153352v3

18