IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CORI RIGSBY and KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE NO. 1:06cv433-LTS-RHW |
| STATE FARM FIRE AND CASUALTY COMPANY | DEFENDANT/COUNTER-PLAINTIFF |
| and | |
| FORENSIC ANALYSIS ENGINEERING CORPORATION; HAAG ENGINEERING CO.; and ALEXIS KING | DEFENDANTS |

**STATE FARM FIRE AND CASUALTY COMPANY
AND NON-PARTY WITNESS MARK DRAIN'S
REBUTTAL IN SUPPORT OF THEIR JOINT MOTION TO QUASH [509]
DEPOSITION SUBPOENA TO KENNETH MARK DRAIN
AND FOR A PROTECTIVE ORDER**

Robert C. Galloway (MSB #4388)
Jeffrey A. Walker (MSB #6879)
E. Barney Robinson III (MSB #09432)
Benjamin M. Watson (MSB #100078)
Amanda B. Barbour (MSB #99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988, Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

      I.      ALLOWING DRAIN'S DEPOSITION – GIVEN THE CIRCUMSTANCES OF THIS ACTION – WOULD BE UNREASONABLE .........................................1

            A.      Neither the Rigsbys Nor State Farm Have Identified Drain as Someone Who Has Discoverable Information .............................................1

            B.      The Anna Vela Homeowners' Claim Referenced By the Rigsbys is Beyond the Scope of Discovery ...................................................................2

            C.      Drain's Testimony Would Be Temporally Irrelevant ................................4

      II.     ALLOWING DRAIN'S DEPOSITION WOULD BE OPPRESSIVE ....................5

      III.    DEPOSITIONS ARE NOT A NUMBERS GAME ...............................................10

CONCLUSION .............................................................................................................................12

      I.      THIS COURT SHOULD QUASH THE SUBPOENA TO MARK DRAIN AND ISSUE A PROTECTIVE ORDER PREVENTING HIS DEPOSITION IN THIS ACTION ........................................................................12

CERTIFICATE OF SERVICE .....................................................................................................14

Defendant/Counter-Plaintiff State Farm Fire and Casualty Company ("State Farm") and Non-party witness Mark Drain, respectfully submit this Rebuttal in Support of Their [530] Joint Motion to Quash [509] Deposition Subpoena and for Protective Order (With Verified Good Faith Certificate).

## INTRODUCTION

The Rigsbys open their Response by noting that "[a]s the moving party, State Farm 'has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.' *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)." ([568] at 1.) Exactly. As previously explained in State Farm and Drain's opening memorandum, and as explained below, allowing Drain's deposition would be both "unreasonable" and "oppressive." (*Id.*)

## REBUTTAL ARGUMENT

### I. ALLOWING DRAIN'S DEPOSITION – GIVEN THE CIRCUMSTANCES OF THIS ACTION – WOULD BE UNREASONABLE

#### A. Neither the Rigsbys Nor State Farm Have Identified Drain as Someone Who Has Discoverable Information

As prominently pointed out in State Farm and Drain's opening memorandum, neither the Rigsbys nor State Farm identified Drain as a person with knowledge of "discoverable information regarding some or all of the claims alleged by Relators in this Action and/or potential defenses." ([530-22] at 1-8, [530-23] at 1-9 & [530-24] at 1-20.)[1] Tellingly, the Rigsbys have not disputed that they failed to disclose Drain in their Rule 26 disclosures or to identify him in response to State Farm's Interrogatory number 13, which required identification of all persons with discoverable knowledge, "regardless of whether you may use such

---

[1] Even after State Farm pointed this out, the Rigsbys made no effort to supplement their disclosures or interrogatory responses to identify Drain. Of course, if they had done so at this late stage, such would have been a transparent act.

1

information to support your claims or challenge any Defendant's defenses".[2] ([530-21] at 13-16 & [530-22] at 1-2.)

Of course, this means that no Party contends Drain even "*likely* [has] discoverable information…" Fed. R. Civ. P. 26(a)(1)A)(i) (emphasis added) – and he almost certainly would therefore not have information "relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). It further means that the Rigsbys could not "use [Drain's] information on a motion, at a hearing, or at a trial…[,]" Fed. R. Civ. P. 37(c)(1), again revealing the futility of allowing the Rigsbys to take Drain's deposition.

### B. The Anna Vela Homeowners' Claim Referenced By the Rigsbys is Beyond the Scope of Discovery

Both in their conferral correspondence and their Response, the Rigsbys focus on Drain's supposed involvement in the claims decision on the Anna Vela property homeowners' claim. For example:

> Mark Drain also has unique information about how Lecky King was evaluating engineering reports. Mark Drain issued homeowner policy limit payments based on the conclusion in an engineering report that a home had been destroyed by wind. Am. Compl. [16] at ¶ 88.[3]

([568] at 2.)

---

[2] State Farm Interrogatory number 13 unambiguously requested the following information:

**Interrogatory No. 13:** Identify all Persons with knowledge of discoverable information regarding any of the claims alleged by you in this Action, or any defenses to those claims, regardless of whether you may use such information to support your claims or challenge any Defendant's defenses. This request includes, but is not limited to, all Persons known to you who were witnesses to any of the events forming the basis of your claims in this Action or any defenses to those claims. For each such Person, please provide a brief summary of their potential knowledge that may be relevant to any claim or defense in this Action.

([530-21] at 13.)

[3] Paragraphs 86-90 of the Rigsbys' [16] Amended Complaint relate to the Anna Vela homeowner's claim.

2

Yet in the case of Vela, as with Mullins, the Rigsbys do not allege that she had an NFIP policy or that she made an NFIP claim to the government. *See* ([16] at 86-90.) The inclusion of this example is, therefore, wholly irrelevant to the False Claims Act.

This Court, considering the Mullins claim – which also lacked a flood policy – placed properties without flood insurance beyond the scope of discovery, when it decided what discovery would be permitted before the May 20, 2009 hearing.[4] Accordingly, allowing Drain's deposition on the Vela homeowners' claim would be unreasonable – given this fact and his unchallenged testimony that he had "no involvement whatsoever in the adjustment, handling, approval or processing of the flood insurance or homeowners' claims of Thomas C. and Pamela McIntosh, either direct or managerial." ([530-20] at 1-2.)

Further, - and alone dispositive of this issue – as pointed out in movants' opening memorandum, the Rigsbys have not even contended – let alone offered any admissible evidence – that the Vela residence is within the one-half mile radius of the McIntosh residence set by this Court as the outer limit for discovery on other claims. *See* ([413] at 2) (limiting discovery of other claims to "one half mile of the subject property"). The reason they have not done so is obvious – it is not, as it is more than three times the permissible limit – at 1.66 miles away. *See* http://www.mapquest.com/maps?1c=Biloxi&1s=MS&1a=2558+S+Shore+Dr&1z=39532-3010&1y=US&1l=30.43493&1g=-88.99038&1v=ADDRESS&2c=Biloxi&2s=MS&2a=2275+Baywood+Dr&2z=39532-4107&2y=US&2l=30.42649&2g=-88.97217&2v=ADDRESS#mqPgSt2 (Distance between 2558 South

---

[4] *E.g.*, ([261] at 3) ("The defendants assert that the Mullins property was not covered by a SFIP…"); ([266] at 1) ("The role of the other three individuals [who had no involvement in the McIntosh claims] the Relators have identified and the relevant knowledge they have is not readily apparent in the record" and no discovery of them is permitted"); ([343] at 10) ("State Farm is the only defendant now charged with having presented a false claim, and the allegations of the Amended Complaint identify only one specific instance of misconduct: the McIntosh claim").

Shore Drive, Biloxi, MS 39532 (McIntosh) and 2275 Baywood Dr., Biloxi, MS 39531 (Vela) is 1.66 miles).

        **C.**        **Drain's Testimony Would Be Temporally Irrelevant**

In order to prevail at trial, the Rigsbys must prove that the $250,000 payment on the McIntosh flood insurance claim was knowingly false. *See, e.g.*, 31 U.S.C. § 3729(a)(1), (2) (2006); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008), *adopted by United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009). Further, the Rigsbys must prove that this claim was knowingly false ***when it was made***. "'The falsity of a claim is determined *at the time of submission*.'" *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 875 (S.D. Tex. 2007)) (quoting *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 681 (5th Cir. 2002) (emphasis in original), *vacated on other grounds on reh'g en banc*, 326 F.3d 669 (5th Cir. 2003)), *aff'd*, 575 F.3d 458 (5th Cir. 2009); *see also United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006) ("false claims must in fact be 'false when made.' . . . In short, a palpably false statement, known to be a lie ***when it is made***, is required for a party to be found liable under the False Claims Act") (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996)) (emphasis added); *United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) ("The test of whether a claim is false must be ***as of the date when the claim is made***.") (emphasis added); *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 554 F. Supp. 2d 966, 971 (D. Ariz. 2008) (claim must be "false ***at the time it was made*** – the defendant must have knowingly made the false claim . . . .") (emphasis added).

Here, the McIntoshes' flood claim was paid on October 2, 2005. *See, e.g.*, (05-20-2009-05-22-2009 Hr'g Tr. at 228:5-13, Ex. J.) Because the key to the Rigsbys' case is proving that this claim was knowingly false *when made*, issues and events after this date, such as Drain's

4

supposed subsequent discussions with Lecky King, *e.g.*, ([568] at 2), are irrelevant to proving their case-in-chief, and discovery as to these issues and events is not calculated to lead to admissible evidence.

## II.   ALLOWING DRAIN'S DEPOSITION WOULD BE OPPRESSIVE

The Rigsbys attempt to brush away the ten lengthy Drain deposition transcripts – containing 1346 pages of deposition testimony – which State Farm and Drain have provided to them, by contending:

> Each of Mr. Drain's prior depositions were taken in individual policyholder cases. The issue in those cases was not whether State Farm had conspired to defraud the government, and as such, those depositions should not preclude the Relators from deposing Mark Drain in this case.

([568] at 4.)

They then suggest – without explicitly so stating[5] – that the following subject matter areas were not covered in this prior 1346 pages of testimony provided them:

> [T]estimony of a State Farm manager who was present in the Gulfport office, who supervised employees in adjusting flood claims, and who had conversations with Lecky King about whether an engineering report incorrectly concluded that a home was damaged by wind.
>
> ….
>
> [K]nowledge[] of the State Farm procedures at issue in this litigation, including, when Xact Total was authorized, what State Farm adjusters were told about the weather conditions during Hurricane Katrina, and how eye witness accounts were collected and used.
>
> ….
>
> [Testimony from] another State Farm employee who had a similar interaction with Lecky King because such testimony is relevant to exploring Lecky King's bias, motive, and credibility, and to determining whether and when State Farm disputed conclusions in engineering reports.
>
> ….

---

[5] Likely because they know any such representation would be readily revealed as false by the record.

>…State Farm's policies and procedures that were in place when the McIntosh claims were adjusted.

([568] at 2-3.)

In reality, these topics, for example: the supervision of employees adjusting flood claims; conversations with Lecky King; engineering reports; State Farm policies and procedures and a myriad of other matters, were well covered in the prior Drain depositions provided to the Rigsbys.[6] For example, and without limitation, Drain has been questioned regarding his approval of payment on the Anna Vela claim:

---

[6] *E.g.*, (12-18-2006 Drain Dp. in *Roper*, no. 1:06cv713-BAF (S.D. Miss.) (Vol. 1) at 31; 60-61; 63-67; 75; 83-85; 90; 92; 94-102; 108 -109; 115-117; 125-133; 134-135; 142-143; 148; 150-151; 215-216; 219; 243-244, Ex. A to Reb.); (02-09-2007 Drain Dp. in *Eagan*, no. 1:06cv704-LTS-RHW (S.D. Miss.) at 25-26; 74-75, Ex. B to Reb.); (02-16-2007 Drain Dp. in *McCoy*, no. 1:06cv00004-LTS-RHW (S.D. Miss.) at 10; 17-18; 20, Ex. C to Reb.); (02-21-2007 Drain Dp. in *Roper*, no. 1:06cv713-BAF (S.D. Miss.) (Vol. 2) at 329; 384; 385, Ex. D to Reb.); (02-23-2007 Drain Dp. in *Fowler*, no. 1:06cv489-TLS-RHW (S.D. Miss.) at 31; 32; 80-87; 88-90; 111-112; 131-132, Ex. E to Reb.); (06-22-2007 Drain Dep. in *Aicklen*, no. 1:06cv1233-LTS-RHW (S.D. Miss.) at 41; 46; 465-47; 47-50; 50; 82-84; 92; 99-100; 101; 108; 111-112; 116-118; 120; 121; 126-127; 131; 137; 139-141, Ex. F to Reb.); (09-21-2007 Drain Dp. in *Waterman*, no. 1:06cv871-LTS-RHW (S.D. Miss.) at 13-14, Ex. G to Reb.); (04-28-2008 Drain Dp. in *Gagne*, no. 1:06cv0711-LTS-RHW (S.D. Miss.) at 56-58; 58-59; 60; 61, Ex. H to Reb.); (10-16-2008 Drain Dp. in *Payment*, no. 1:07cv1003-LTS-RHW (S.D. Miss.) at 38-39; 92-93; 151-152; 152: -153; 160-161; 162-163, Ex. I to Reb.)

first page of the report, which is the second page of the exhibit, right?
  A.  He does.
  Q.  And what is the -- what is the second conclusion that he gave?
  A.  Number 2 says, "It is my opinion that the subject residence was destroyed prior to the storm surge from the effects of the hurricane-force winds."
  Q.  Right. So you knew, in mid October of 2005, that at least some engineers were reporting that the winds of Hurricane Katrina destroyed at least some residences before the surge got there, right?
  A.  I reviewed this letter, so the answer would be yes.
  Q.  You did review this letter?
  A.  I did.
  Q.  Do you know when you received this letter?
  A.  I don't.
  Q.  And we see, back to the first page of Exhibit 3, that Ms. Vela, her residence was at 2275 Baywood Drive in the city of Biloxi, right?

7

A. Right.
Q. Do you know -- do you recall where that was?
A. I don't.
Q. If you look over at the second page of Mr. Seghers' report, in the first paragraph under discussion, about the -- two-thirds of the way down that paragraph, you see where he says, "The property is location approximately 500 north of the normal waterline of the Back Bay of Biloxi."
A. Okay.
Q. Right? 500 north, do you know what that means, 500 north? 500 feet, you think?
MR. TUCKER:
    Objection, speculation.
A. Feet or yards. I don't know.
MR. VAN CLEAVE:
Q. Did you contact him and ask?
A. I didn't.
Q. Okay. In any event, Mr. Seghers is concluding that this residence, which was some 500 units north of the Back Bay in Biloxi, was destroyed prior to the storm surge from the effects of hurricane force

8

winds, right?
A. Yes.
Q. Did you pay the Vela claim?
A. We did.
Q. In full?
A. I think so. I don't -- I don't know the exact amount, but I think so.
Q. As a result of this report?
A. Not -- not just the report. No. And I -- I guess I would need the whole Vela claim file to answer that question. But it seems like we had an eyewitness report, some other things that -- in conjunction with the engineer report.
Q. Turn over to the last page of his report, which is Page 4 of the Vela assessment, dated October 11th, 2005.
A. Where are you, now?
Q. Page 4 of the report. I think the actual report -- the text part of the report, there's numbers at the top, left-hand corner of the page.
A. I'm there.
Q. In the second paragraph, what did Mr. Seghers say?

> A. "It is also my opinion that had the storm surge caused the destruction of the residence, the force of the water acting on the residence would have displaced the timber pylons. I did not see evidence to support this occurring."
>
> ....

> Q. How did you come to get a copy of the Vela report?
> A. It came directly to me.
> Q. From Mr. Seghers?
> A. Correct.
> Q. Were all of Mr. Seghers' reports on claims that you were involved in sent directly to you?
> A. I can't remember.
> Q. Do you know whether or not maybe that changed -- that process changed and his reports were sent first to Ms. King or Mr. Moore after he completed a report concluding hurricane winds destroyed a home before the storm surge got there?
> A. I don't know that.
> Q. Do you know whether or not State Farm made a decision to cancel further reports from Mr. Seghers as a result of his report on October the 11th that Ms. Vela's home was destroyed by hurricane force winds before the storm surge got there?
> A. I don't know that.

(12-18-2006 Drain Dp. in *Roper*, no. 1:06cv713-BAF (S.D. Miss.) (Vol. 1) at 99-102, 108-109, Ex. A to Reb.)

Given his prior testimony on the same subjects proffered by the Rigsbys, deposing Drain again – even if, as it *not* the case, he *had* been identified as someone with discoverable knowledge – would be oppressive. A protective order is justified.

### III. DEPOSITIONS ARE NOT A NUMBERS GAME

The Rigsbys close their Response by making a "good for the goose, good for the gander"-type argument. They contend:

> State Farm recently deposed Patricia Lobrano for the third time, and later this month it will depose Cori and Kerri Rigsby for the fourth times respectively. The Relators have not objected to those depositions, even though they were taken by

10

the same party, unlike Mr. Drain's prior depositions which were taken by a variety of individual plaintiff's [sic].

([568] at 4.)

Yet depositions are not a mere numbers game. State Farm and Drain have not contended that the sheer number of Drain's ten-plus prior depositions – *standing alone* – justifies a protective order. Rather, movants have argued that: (a) Drain has no discoverable knowledge relevant to the very limited current scope of this Action – (and the Parties have not contended otherwise in their disclosures or interrogatory responses); and (b) the prior transcripts provided the Rigsbys more than cover the broad-brush subject matters on which they contend they desire to question him.

Given Lobrano's admitted extensive involvement in the Rigsbys' activities – with Scruggs, McIntosh and her own State Farm claims – no one can legitimately contend she lacks discoverable knowledge. *E.g.*, ([521-4] at 7.) Likewise, it should go without saying that the Rigsbys – who are "the Relators" bringing this Action and who contend they are "original sources" of information concerning a putative fraud on the government – are certainly holders of discoverable knowledge. In contrast, no Party to this Action has listed Drain as a person with discoverable knowledge in their disclosures or interrogatory responses.

Further, it is worth noting that the Rigsbys have [559] noticed the deposition of State Farm's Michael Ferrier – even though they cross-examined him extensively at the May 2009 hearing. *E.g.*, (Hrn'g Trans. at 1-5, 32-186, Ex. J to Reb.) Despite the extensive prior cross-examination, neither State Farm nor Ferrier has objected to his deposition on that basis, again demonstrating that State Farm and Drain are not playing some numbers game.

## CONCLUSION

In sum, as the Rigsbys correctly point out at the beginning of their Response, the issue here is whether yet another deposition of Drain would be "unreasonable and oppressive." ([568] at 1) (citation omitted).  In light of the above, State Farm and Drain respectfully suggest that it would be.

For the foregoing reasons, State Farm and Drain respectfully request that the [509] deposition subpoena to Drain be quashed and that a protective order issue preventing the Rigsbys from taking his deposition in this Action. State Farm and Drain seek such further, supplemental and alternative relief as may be appropriate in the premises.

This the 8th day of June, 2010.

          Respectfully submitted,

          KENNETH MARK DRAIN and
          STATE FARM FIRE AND CASUALTY COMPANY

By:    s/*E. Barney Robinson III* (MSB #09432)
          Robert C. Galloway (MSB # 4388)
          Jeffrey A. Walker (MSB # 6879)
          E. Barney Robinson III (MSB #09432)
          Benjamin M. Watson (MSB #100078)
          Amanda B. Barbour (MSB # 99119)

          THEIR ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500

(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

**CERTIFICATE OF SERVICE**

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company and Kenneth Mark Drain, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
maison@heidlebergpa.com
ginny@heidelbergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
gilberts@gotofirm.com
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409
(E) felicia.adams@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441
gholson@gbeolaw.com
wallace@gbeolaw.com

ATTORNEYS FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

THIS the 8th day of June, 2010.

By:   s/*E. Barney Robinson III* (MSB #09432)
         E. Barney Robinson III (MSB #09432)

Jackson 5221125v3