IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. | |
| CORI RIGSBY and KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE NO. 1:06cv433-LTS-RHW |
| STATE FARM FIRE AND CASUALTY COMPANY | DEFENDANT/COUNTER-PLAINTIFF |
| and | |
| FORENSIC ANALYSIS ENGINEERING CORPORATION; HAAG ENGINEERING CO.; and ALEXIS KING | DEFENDANTS |

**STATE FARM FIRE AND CASUALTY COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER
WITH RESPECT TO RULE 30(B)(6) DEPOSITION NOTICED IN [616]**

*(With Verified Good Faith Certificate)*

*Miss. Unif. Civ. L. R. 7(b)(8) Expedited Consideration Requested*
*Concerns June 30, 2010 Deposition*

| | |
|---|---|
| Robert C. Galloway (MSB #4388) | Michael B. Beers (ASB-4992-S80M), PHV |
| Jeffrey A. Walker (MSB #6879) | BEERS, ANDERSON, JACKSON, PATTY & |
| E. Barney Robinson III (MSB #09432) | FAWAL, P.C. |
| Benjamin M. Watson (MSB #100078) | Post Office Box 1988, Suite 100 |
| Amanda B. Barbour (MSB #99119) | 250 Commerce Street (36104) |
| | Montgomery, Alabama 36102 |
| BUTLER, SNOW, O'MARA, STEVENS & | (P) (334) 834-5311 |
| CANNADA, PLLC | (F) (334) 834-5362 |
| Post Office Drawer 4248 | (E) mbeers@beersanderson.com |
| Gulfport, MS  39502 | |
| (P) (228) 575-3019 | *PRO HAC VICE* |
| (E) bob.galloway@butlersnow.com | |
| | James R. Robie (CA State Bar # 67303), PHV |
| BUTLER, SNOW, O'MARA, STEVENS & | ROBIE & MATTHAI |
| CANNADA, PLLC | Biltmore Tower, Suite 1500 |
| 200 Renaissance at Colony Park, Suite 1400 | 500 South Grand Avenue |
| 1020 Highland Colony Parkway (39157) | Los Angeles, California  90071 |
| Post Office Box 6010 | (P) (213) 706-8000 |
| Ridgeland, MS 39158-6010 | (F) (213) 706-9913 |
| (P) (601) 948-5711 | (E) jrobie@romalaw.com |
| (F) (601) 985-4500 | |
| (E) jeff.walker@butlersnow.com | *PRO HAC VICE* |
| (E) barney.robinson@butlersnow.com | |
| (E) ben.watson@butlersnow.com | |
| (E) amanda.barbour@butlersnow.com | |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. I

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.      THIS COURT SHOULD QUASH THE [616] DEPOSITION NOTICE AND ISSUE A PROTECTIVE ORDER PREVENTING THE DEPOSITION ............................................................................................................. 2

          A.      The Rigsbys' Eleventh Hour Request for a Rule 30(b)(6) Deposition Should Be Denied as Untimely ................................................. 2

          B.      The Rigsbys' Topics Are Beyond the Scope of Discovery and/or Otherwise Improper ........................................................................................ 4

CONCLUSION ............................................................................................................................. 13

CERTIFICATE OF SERVICE ..................................................................................................... 15

Defendant/Counter-Plaintiff State Farm Fire and Casualty Company ("State Farm") respectfully submits this Memorandum in Support of its Motion for a Protective Order With Respect to Rule 30(b)(6) Deposition of State Farm Noticed in [616] (With Verified Good Faith Certificate).[1]

## **INTRODUCTION**

On June 8, 2010, the Rigsbys' counsel sent State Farm's counsel a letter asking for a proposed date for a Rule 30(b)(6) deposition of State Farm and attaching a draft notice. (Letter from Davidson to Galloway, Exhibit A to Mtn.)

As an initial matter, the proposed topics accompanying the letter are grossly overly broad. Further, in many respects they encompass issues straying far beyond the confines of the McIntosh flood claim – despite this Court's repeated reminders to the Rigsbys of the currently limited scope of discovery.

Additionally, this letter was the first time since the entry of the October 29, 2009 [365] Case Management Order – *almost eight months ago* – that the Rigsbys had provided State Farm any proposed topics or requested a specific date for a Rule 30(b)(6) deposition. (Verified Good Faith Cert. at ¶2 Ex. B to Mtn.)

The deposition schedule between now and the July 1, 2010 discovery deadline ([365] at 2), is nothing short of daunting. There are 13 depositions already noticed, scheduled or planned between now and the discovery deadline – *and only 8 business days remaining* between now and July 1, 2010. Miss. Unif. L. Civ. R. 26(b)(2) makes clear that deposition requests must be "made sufficiently in advance of the discovery deadline date" so as to allow completion of

---

[1] The Rigsbys' counsel – in what has unfortunately become a pattern – refused to execute and return the Good Faith Certificate tendered them by State Farm's counsel. Accordingly, State Farm is filing its motion accompanied by a Verified Good Faith Certificate. (Verified Good Faith Cert. at ¶3 & Ex. 1, Ex. B to Mtn.)

discovery by the Case Management Order deadline. The Rigsbys' eleventh hour request violates that Local Rule.

Further, as this Court knows from its experience, preparing company designee(s) for Rule 30(b)(6) depositions is often no easy or expeditious task – especially when a notice contains broad-brush topics, such as the notice at issue here.

Accordingly, on June 15, 2010, State Farm's counsel wrote the Rigsbys' counsel explaining why the Rigsbys' eleventh-hour request for a Rule 30(b)(6) deposition was unreasonable, especially in light of its timing and substance – as well as the schedule already in place for the few and fast-fleeting remaining days of the discovery period. (Verified Good Faith Cert. at ¶3 & Ex. 1, Ex. B to Mtn.) Regardless, on June 16, 2010, the Rigsbys went ahead and [616] noticed State Farm's Rule 30(b)(6) deposition; forcing State Farm to file the instant motion.

State Farm respectfully submits that this Court should quash the [616] notice and issue a protective order against State Farm's deposition altogether. As explained below, the Rigsbys' request for this deposition comes far too late – and given the extremely tight schedule remaining, it is now simply impracticable for State Farm to adequately locate and prepare designees – as well as to find a reasonable time slot for the conduct of the deposition before the July 1, 2010 discovery cut-off, a mere eight business days away.

## ARGUMENT

**I. THIS COURT SHOULD QUASH THE [616] DEPOSITION NOTICE AND ISSUE A PROTECTIVE ORDER PREVENTING THE DEPOSITION**

**A. The Rigsbys' Eleventh Hour Request for a Rule 30(b)(6) Deposition Should Be Denied as Untimely**

As explained above, the Rigsbys have known of the July 1, 2010 discovery deadline since the October 29, 2009 entry of this Court's [365] Case Management Order – almost eight months

ago. Despite this fact, they waited until three-weeks before discovery is set to end to even provide State Farm proposed topics, let alone request a date(s) for the deposition. Further, even a cursory review of the [616] notice reveals that none of the Rigsbys' proposed topics concerns newly discovered issues – rather, all these matters could have been raised by the Rigsbys' months ago (assuming, of course, they were all discoverable).

The Rigsbys' extreme delay is especially unreasonable in light of the fact that the deposition schedule between the June 8, 2010 date of the Rigsbys' draft notice and the July 1, 2010 discovery deadline ([365] at 2) is nothing short of daunting. For example, the following 20 depositions are or were noticed, scheduled, planned or soon to be noticed between the June 8, 2010 date of the Rigsbys' letter and the close of discovery. 14 of these are depositions taken or to be taken by the Rigsbys:

| **Date** | **Docket No(s).** | **Deponent** | **Location** |
|---|---|---|---|
| June 8 | [558] | Gary Dailey | Ridgeland, MS |
| June 9 | [508] | Kurtis Gurley | Ridgeland, MS |
| June 10 | [533] & [542] | Robert Dean | Ridgeland, MS |
| June 16 | [559] & [563] | Michael Ferrier | Minneapolis, MN |
| June 16 | [560] & [564] | Jody Prince | Minneapolis, MN |
| June 17 | [561], [565] & [602] | John Conser | Minneapolis, MN |
| June 18 | [566] & [600] | Lisa Wachter | Minneapolis, MN |
| June 22 | [510] & [613] | Mark Drain | Nashville, TN |
| June 23 | [629] | Maria Brown | Ridgeland, MS |
| June 23 | [614] | Steven Hinkle | Ridgeland, MS |
| June 24 | [615] | Dave Randle | Ridgeland, MS |
| June 25 | [553] | Kerri Rigsby | Ridgeland, MS |
| June 25 | [596] | Charlene Bosarge | Gulfport, MS |
| June 26 | [554] | Cori Rigsby | Ridgeland, MS |
| June 28 | [571] | Richard F. Scruggs | Ashland, KY |
| June 29 | [608] | Brian Ford | Atlanta, GA |
| June 29 | [611] | Beth Jones | Bethesda, MD |
| June 29 | [621] | Mark Watson | Ridgeland, MS |
| June 30 | [626] | Robert Kochan | Raleigh, NC |
| June 30 | [620] | David Haddock | Florence, AL |

Miss. Unif. L. Civ. P. 26(b)(3) could not be more clear:

> Counsel must initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery deadline date to comply with this rule, and discovery requests that seek responses or schedule depositions that would otherwise be answerable after the discovery deadline date are not enforceable except by order of the court for good cause shown.

Miss. Unif. L. Civ. R. 26(b).

The Rigsbys' eleventh hour request – given all the depositions already scheduled and the very short time period remaining – violates this Local Rule. As the Fifth Circuit has held, "[g]ranting protective orders because of impending discovery deadlines is not an abuse of discretion." *Grey v. Dallas Independent School Dist.*, 265 Fed.Appx. 342, 348 (5th Cir. 2008). Here, there is not only a soon-impending July 1, 2010 discovery deadline, but also 13 depositions to be taken in the mere 8 business days remaining.

Importantly, State Farm is not attempting to deprive the Rigsbys of adequate discovery. A review of the docket reflects that **the Rigsbys have either already taken or noticed to be taken 22 depositions in this Action** – *with the majority being current or former State Farm or Renfroe personnel*. Given the large number of depositions they have already taken – and the literally thousands of pages of testimony, it is inconceivable that the Rigsbys could learn anything that is both discoverable and new in their proposed Rule 30(b)(6) deposition of State Farm. A protective order should be issued.

### B. The Rigsbys' Topics Are Beyond the Scope of Discovery and/or Otherwise Improper

This Court has been crystal clear that discovery must be reasonably related to the McIntosh flood claim in order to be permissible at this stage of the case. In fact, the Court has firmly rejected the Rigsbys' desire to engage in a "far ranging and expensive discovery process that relates only to claims that are not ... specifically identified," ([343] at 10), and has stated – repeatedly – that "[t]he trial of this action will be limited to the McIntosh claim," ([363] at 1, and "the only relevant discovery at this stage of litigation involves Defendants' alleged fraud in

4

adjusting the McIntosh insurance claim." ([490] at 1); *see also* ([343] at 10) ("I will limit the presentation of evidence in this action to facts relevant to the McIntosh claim"); ([413] at 1) ("at this stage of the litigation [the McIntosh claim] is the only claim that is at issue"); ([447] at 1) ("this lawsuit is proceeding with respect to the McIntosh claim only"). Further, in its recent [595] Order, the Court found "the Motion for Protective Order is granted in part. The parties are instructed to avoid to the extent possible inquiry regarding specific insurance claims or properties other the McIntoshes." ([595] at 2.)

Despite being repeatedly reminded of the limited scope of discovery, the Rigsbys have propounded the following Rule 30(b)(6) topics, which are improper for the reasons explained below.

**Topics 1-4:**

1. The steps State Farm took to preserve documents and other data that might be relevant to this litigation, the timing that such steps were taken, and the types of documents and data preserved.

2. The steps State Farm took to search for and collect documents potentially responsive to the Relators' requests for production in this case, the timing of such steps, any circumstances that prevented State Farm from collecting and producing all responsive documents within 60 days of Relators' requests, and the identity of the individuals who participated in the gathering of potentially responsive documents.

3. The steps State Farm took to organize, retain, shred, destroy, or discard any documents and/or materials that might be responsive to this litigation and whether such steps were in accordance with the procedures routinely used by State Farm with respect to other claims resulting from Hurricane Katrina.

4. Whether State Farm's document retention policies that were in effect in 2005, 2006, and 2007 were followed with respect to documents relating to Hurricane Katrina, including, without limitation, whether State Farm followed its document retention policies for all documents related to the McIntosh property; all drafts, preliminary reports and final reports received from engineers by State Farm with respect to houses damaged by Hurricane Katrina; and all documents related to claims adjusting and processing procedures used in connection with Hurricane Katrina damage.

([616-1] at 2-3.)

**Why Improper.** These topics seek information that is protected by the attorney-client privilege and Rule 26(b)(3). There has been no evidence in this case demonstrating that any relevant documentation or information has not been provided to the Rigsbys. Additionally, on their face, these topics go beyond the scope of McIntosh, for example, by seeking testimony on "procedures routinely used by State Farm with respect to *other claims* resulting from Hurricane Katrina." ([616-1] at 2-3) (emphasis added).

To date, State Farm has produced numerous witnesses and none of them has identified any documents that were not produced to the Rigsbys. Moreover, Kerri Rigsby testified that she had no evidence that anyone *ever* shredded or destroyed any evidence. For example:

> Q.  And listen to my question because I wasn't even asking you what somebody else may have told you.  I was asking you do you have any knowledge -- and I don't care what the source of it is, but do you have any knowledge, because if you do I want to explore it --
> A.  Right.
> Q.  -- about a single document in a State Farm policyholder file that should be in their file that was shredded -- intentionally shredded or destroyed by State Farm?
> MR. BARRETT:  I'm going to object and instruct her not to answer at any time from which the attorney-client privilege attached. So anything you found out after the attorney-client privilege.
> A.     I was working with State Farm, no.  No.

(06-20-07 K. Rigsby Dp. at 199-200 in *Marion*, No. 1:06cv00969-LTS-RHW, ex. C to Mtn.)[2] These topics are therefore not only beyond the legitimate scope of discovery, but also unreasonable and without justification.

---

[2] *Accord* (11-20-2007 K. Rigsby *McIntosh* Dp. II at 509-510 (no shredding), 510:2-20 (similar), Ex. K to Mtn.); *see also* (11-19-2007 C. Rigsby *McIntosh* Dp. II at 325-326 (no info that McIntosh report was shredded), 339-340, Ex. L to Mtn.); (04-30-2007 K. Rigsby *McIntosh* Dp. I at 429, Ex. M to Mtn. (no info that any McIntosh document was shredded).

**Topic number 5:**

     5. Under what circumstances engineering reports or draft or preliminary engineering reports were returned to engineers, destroyed, or otherwise removed from Hurricane Katrina claims files.

([616-1] at 3.)

**Why Improper.** This topic is entirely irrelevant to the issues in this Action as defined by the Court. There is no evidence of any "draft or preliminary engineering report[]" in the McIntosh matter and the Court has limited the discovery in this case to things related to McIntosh. The topic is therefore beyond the scope of discovery.

**Topic number 6:**

     6. Under what circumstances State Farm reported to the NFIP that State Farm was using claims procedures, with respect to a particular property or group of properties that did not rely upon a Stick Build Estimate and how any such notice or report was provided to the NFIP in connection with Hurricane Katrina claims.

([616-1] at 3.)

**Why Improper.** To the extent there is any relevant evidence on this topic, it has already been produced to the Rigsbys through State Farm's production of documents and through the testimony of Lecky King, Mike Ferrier, Juan Guevara, Cody Perry, David Maurstad, James Shortley and Gerry Waytowich.[3] By way of nonexclusive example, Juan Guevera testified:

> MR. MATTEIS: Q. The next one says -- the next line -- I'm sorry -- says, "For the cabana - suggest XactTotal and back all the value of the roof rather than stick estimate the entire house." Do you know what that means?
>
> A. Just what's stated there in regards to using XactTotal and backing out the roof instead of using a stick estimate or a line-by-line estimate.
>
> Q. Do you know if that suggestion was ever made to the NFIP in September of 2005?

---

[3] *See* (05-05-2009 Lecky King Dp. at 99-100, Ex. D to Mtn.); (06-16-2010 Mike Ferrier Dp. at 1-4, 12-20, 40-43, 84-99 & 101-102, Ex. E to Mtn.); (04-14-2010 Juan Guevara Dp. at 1-7, 14, 17-19, 36-38, 44-46, 65-69, 83-89, 100-102, 111-116 & 124-126, Ex. F to Mtn.); (04-27-2010 Cody Perry Dp. at 1-3, 53-56, 115-128 & 219-222, Ex. G to Mtn.); (06-02-2010 David Maurstad Dp. at 1-3, 59-81, 108-113, 117-120, 160-169, 253-260, Ex. H to Mtn.); (06-03-2010 James Shortley Dp. at 1-8, 18, 27-28, 31-32, 45-75, 83, 103-182 & 187-190, Ex. I to Mtn.) & ( 06-04-2010 Gerry Waytowich Dp. at 1-8, 30-49, 88-137, 155-157 & 173-175, Ex. J to Mtn.)

7

> A.  I cannot say whether it was or was not suggested in the discussions with NFIP.
>
> Q.  Do you recall any discussions with the NFIP regarding cabanas in September of 2005?
>
> A.  Yes, there would have been discussions with Jim Shortley and David Maurstad.
>
> Q.  And what was said in those discussions?
>
> A.  Discussions were to provide the information in regards to our recommendations on the handling of claims.
>
> Q.  What did Mr. Shortley and Mr. Maurstad say regarding cabanas at that time?
>
> A.  What I recall is there was discussions in regards to the damage along the coastline in regards to slick slabs, cabanas, Popsicle sticks, and the use of XactTotal in those situations.
>
> Q.  And what was said with respect to the use of XactTotal in those situations, and by whom?
>
> A.  There would have been discussion with Jim Shortley in regards to the use of XactTotal and what he had already seen along the coastline.
>
> Q.  Do you remember what Mr. Shortley or Mr. Maurstad concluded as to whether State Farm could use XactTotal in those circumstances?
>
> A.  Mr. Shortley had agreed on the use of XactTotal in those situations where -- along the coastline or specific areas that were severely damaged and close to policy limits or exceeded policy limits.
>
> Q.  So Mr. Shortley specifically told you that State Farm could use XactTotal with respect to cabanas along the coastline in Hurricane Katrina?
>
> MR. BEERS:  Object to the form.
>
> THE WITNESS:  My recall is that, in discussion with, Jim Shortley agreed in the use of XactTotal in situations where you had severe damage to the buildings themselves, and you could use the XactTotal to determine replacement cost value and it was going to exceed policy limits, to be able to use that tool to pay the policy limits and document the claim file.

(04-14-2010 Juan Guevara Dp. at 36-38, Ex. F to Mtn.)  Moreover, witnesses noticed by the Rigsbys for upcoming depositions in the few days remaining for discovery, have knowledge of facts related to this request.

Given the substantial discovery that the Rigsbys have had from State Farm's employees and former employees, any hypothetical relevant information that an additional deposition on

8

this topic may provide is far outweighed by the incredible burden and expense of having to revisit well-traveled grounds at this late stage in the litigation.

Further, and perhaps most importantly, like many of their other topics, this one is not limited to the McIntosh flood claim. Accordingly, it is beyond the scope of discovery and State Farm should not be required to prepare designee(s) to answer it.

**Topic number 7:**

> 7. Whether State Farm provided FEMA with any notice or report that would have indicated that the McIntosh Flood claim was adjusted using claims procedures that did not rely upon a Stick Build Estimate.

([616-1] at 3.)

**Why Improper.** To the extent there is any relevant evidence on this topic, it has already been produced to the Rigsbys through State Farm's production of documents and through the testimony of Lecky King, Mike Ferrier, Juan Guevara, Cody Perry, David Maurstad, James Shortley and Gerry Waytowich. *See supra* at n.6; *see also* Guevera testimony quoted *supra* re: Topic 6. Moreover, witnesses noticed by the Rigsbys for deposition this week and at the end of this month have knowledge of facts related to this request, as is obvious from a review of the McIntosh flood claim file.

Given the substantial discovery that the Rigsbys have had from State Farm's employees and former employees, any hypothetical relevant information that an additional deposition on this topic may provide is far outweighed by the incredible burden and expense of having to revisit well-traveled grounds at this late stage in the litigation. A protective order should issue.

**Topic number 8:**

> 8. How XactTotal worked and could be used, including what information was entered into the XactTotal program and what options exist for the types of information input, the options that exist within the XactTotal software for electing the type of report generated, and how XactTotal manipulated the entered data to generate a report.

([616-1] at 3.)

**Why Improper.** To the extent that there is any relevant evidence on this topic, it has already been produced to the Rigsbys through State Farm's production of documents and through the testimony of Lecky King, Mike Ferrier, Juan Guevara, Cody Perry, David Maurstad, James Shortley and Gerry Waytowich. *See supra* at n.6.

Specifically, Juan Guevara, Mike Ferrier and Lecky King are three of the State Farm personnel who were primary contacts with FEMA regarding NFIP claim handling issues and interpretation of NFIP policies and procedures.[4] David Maurstad (Administrator of NFIP), James Shortley (Director of Claims, NFIP, FEMA) and Gerry Waytowich (Claims Manager, CSC, for NFIP), were the individuals who had primary interaction with State Farm regarding these issues.[5] All of these individuals have been deposed by the Rigsbys.

By way of nonexclusive example, Mike Ferrier gave substantial testimony about XactTotal, including the following general overview:

> Q. XactTotal, is that part of the Xactimate process?
>
> A. It is. It is part of the Xactimate program. Xactimate is the company. Xactimate estimate, which could be a line by line, or stick built estimate, which is referred to --estimates are often referred to as stick built. That's just a vernacular that people use. I usually say line by line. It's the same thing. It's item by item. But Xactimate, XactTotal is the same program. It pulls from the same exact price list, and you can also convert it into an estimate format so that you can look room by room and look at it line by line. So it really is the same thing. They're not two different programs.

(05-20-2009 Hrn'g Trans. at 51, Ex. N to Mtn.)

Similarly, Cody Perry testified:

---

[4] The Rigsbys also deposed Jody Prince and John Conser of State Farm on these same issues. *E.g.*, (06-17-2010 J. Prince Dp. at 1-4, 14-22, 66, 68-77 & 145, Ex. O to Mtn. & 06-17-2010 J. Conser Dp. at 1-6, 14-23, 64-70, 104-105 & 114-145, Ex. P to Mtn.)

[5] (06-02-2010 David Maurstad Dp. at 1-3, 10, 59-81, 108-113, 117-120, 160-169, 253-260, Ex. H to Mtn.); (06-03-2010 James Shortley Dp. at 1-9, 18, 27-28, 31-32, 45-75, 83, 103-182 & 187-190, Ex. I to Mtn.) & ( 06-04-2010 Gerry Waytowich Dp. at 1-8, 15-16, 30-49, 88-137, 155-157 & 173-175, Ex. J to Mtn.)

Q. Is XactTotal a program that basically just gives you the total value of a home?

A. The total value, meaning -- I mean, what -- what sense are you meaning that?

Q. Well, is XactTotal a way to calculate what a home's worth based on square footage and some assumptions about what might be in a house of that size?

MR. BEERS: Object to the form.

MR. TWIFORD: Join.

A. It's -- it's inputted. There was two different program. It's -- yeah, it's based on square footage, on an average, you know, or whatever type of house it is.

BY MR. MATTEIS:

Q. Did you ever use XactTotal instead of Xactimate when you were adjusting hurricanes for State Farm in 2004?

A. Not in 2004.

Q. When was the first time you used XactTotal?

A. That would have been in 2005.

Q. Was the first time you used XactTotal in connection with claims arising out of Hurricane Katrina?

A. Yes, it was.

Q. Did you know whether anyone was using XactTotal with respect to the Florida hurricanes prior to Hurricane Katrina?

MR. BEERS: Object to the form.

MR. TWIFORD: Join.

A. Not any -- anybody specifically; but, yes, I know it was being used.

BY MR. MATTEIS:

Q. Had you heard about XactTotal when you were in Florida adjusting claims in 2004?

A. Yes, I had heard of it.

Q. What did you hear about it?

A. I just knew it was part of the program that we -- part of the Xactware program.

Q. Did anybody ever tell you while you were adjusting claims in 2004 for State Farm that there were certain times when you could use XactTotal instead of Xactimate?

MR. TWIFORD: Object to the form.

MR. BEERS: Object to the form.

A. Not in 2004. I never had an issue that I would need to.

BY MR. MATTEIS:

Q. Did you receive any training in 2003 or 2004 with respect to how to use XactTotal?

A. There was never an incidence that I would have needed training on it.

Q. Were you aware at the time of any instance that might have required you to use XactTotal?

A. At what time?

Q. 2004.

A. Not in 2004.

Q. So in 2004 had you even heard of XactTotal?

A. Yes, I'd heard of it.

Q. And what was your understanding of when it should be used at the time?

MR. BEERS: Object to the form.

MR. TWIFORD: Join.

A. At what time it would be necessary to use it? Is that what you're saying?

BY MR. MATTEIS:

Q. Right.

A. If there was a -- if there was a property damage that was clearly going to exceed the limits of -- of their limits, then it was a -- it was just a -- a program that would expedite the handling of the claim when it was clear that the damage was going to exceed their limits.

(04-27-2010 C. Perry Dp. at 32-35, Ex. G to Mtn.) Moreover, witnesses noticed by the Rigsbys for deposition this week and at the end of this month have knowledge of facts related to this request.

Given the substantial discovery that the Rigsbys have had from State Farm's employees and former employees, any hypothetical relevant information that an additional deposition on this topic may provide is far outweighed by the incredible burden and expense of having to revisit well-traveled grounds at this late stage in the litigation. A protective order should issue.

## **CONCLUSION**

For the foregoing reasons, State Farm respectfully requests that its motion be granted. State Farm seeks such further, supplemental and alternative relief as may be appropriate in the premises.

This the 21st day of June, 2010.

>Respectfully submitted,
>
>STATE FARM FIRE AND CASUALTY COMPANY
>
>
>By:   s/*E. Barney Robinson III* (MSB #09432)
>      Robert C. Galloway (MSB # 4388)
>      Jeffrey A. Walker (MSB # 6879)
>      E. Barney Robinson III (MSB #09432)
>      Benjamin M. Watson (MSB #100078)
>      Amanda B. Barbour (MSB # 99119)
>
>ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
 (E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company and Kenneth Mark Drain, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
maison@heidlebergpa.com
ginny@heidelbergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
gilberts@gotofirm.com
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409
(E) felicia.adams@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441
gholson@gbeolaw.com
wallace@gbeolaw.com

ATTORNEYS FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

THIS the 21st day of June, 2010.

By:   s/*E. Barney Robinson III* (MSB #09432)
         E. Barney Robinson III (MSB #09432)

Jackson 5259976v4