**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

UNITED STATES OF AMERICA ex rel.;
   CORI RIGSBY; AND KERRI RIGSBY      RELATORS/COUNTER-DEFENDANTS

v.                                   CASE No. 1:06-cv-433-LTS-RHW

STATE FARM FIRE & CASUALTY
   COMPANY, et al.                DEFENDANTS/COUNTER-PLAINTIFFS

**REPLY IN SUPPORT OF RELATORS' MOTION TO COMPEL STATE FARM FIRE &
CASUALTY COMPANY TO ANSWER INTERROGATORIES**

      Cori and Kerri Rigsby ("Relators") respectfully submit this reply in support of their

Motion to Compel State Farm Fire & Casualty Company ("State Farm") to Answer

Interrogatories.

**I.      INTRODUCTION**

      State Farm's Response in Opposition to Relators' Motion to Compel ("Response") once

again focuses far more on the merits of Relators' allegations than the issue before the Court:

whether the contested discovery is relevant to those merits.

      The Court's August 10, 2009 Order denied State Farm's motion for summary judgment

based in part on a finding that the different motives the parties attributed to State Farm's decision

to order a second engineering report for the McIntosh property created a genuine issue of

material fact.[1]  In order to explore State Farm's motives, Relators' Interrogatory No. 4 sought a

description of each engineering report by Forensic for which State Farm disputed in any way the

final written report.  The Court found that "by inclusion of the phrase 'in any way' the

---

[1] [343], at 8.

1

interrogatory as drafted [was] overly broad and not sufficiently tailored to the facts of the McIntosh claim."[2]  Relators Interrogatories No 15 and 16 were more narrowly drafted to focus on the parties' differing explanations as to why State Farm ordered multiple engineering reports for the McIntosh property.  State Farm argues that the revised interrogatories are "grossly overbroad," but State Farm's argument rests on immaterial differences and meaningless distinctions.[3]

State Farm directs the rest of its Response to the merits of Relators' factual allegations, not this discovery dispute.  State Farm argues at great length that Brian Ford's engineering report on the causes of damage to the McIntosh property (the "Ford Report") has been discredited, and that the recent evidence of its systematic pattern to pressure Forensic Analysis & Engineering Corp. ("Forensic") into changing engineering reports is a "sham."  These disputed issues are questions for a jury, who will be free to accept or reject State Farm's defenses; they do not bear on whether the contested discovery is appropriate.

State Farm likewise argues that the contested discovery is irrelevant because the Ford Report "has no bearing on whether the McIntosh flood claim was knowingly false."  This argument is refuted by the Court's prior rulings denying summary judgment based in part on facts related to the Ford Report and ordering State Farm to answer Relators' discovery related to its use of engineers.  Thus, State Farm is wrong on both the facts and their legal significance. State Farm should be compelled to answer Relators' interrogatories.

---

[2] Order, [413], at 1

[3] Response, [645] at 6, quotation omitted.

## II.     ARGUMENT

### A.     State Farm Should Answer Relators' Interrogatories Nos. 15 and 16 Because They are Narrowly Tailored to the Facts of the McIntosh Claim.

The Court's August 10, 2009 Order denying State Farm's motion for summary judgment found the fact that Relators and State Farm "ascribe. . .  different motive[s] behind" State Farm's decision to order a second engineering report for the McIntosh property "creates a genuine issue of material fact that cannot be resolved summarily."[4]  State Farm alleges that it ordered a second engineering report on the McIntosh property because the Ford Report lacked adequate scientific explanation or analysis.  Relators allege that State Farm ordered a second engineering report because the Ford Report determined that wind—not flood—caused the damage to the McIntosh house.

Since State Farm's actual motives in disputing the Ford Report are at issue, Relators asked State Farm to identify each Forensic engineering report in which State Farm disputed in any way the final report.  Other instances of changed engineering reports will be relevant to the finder of fact in determining State Farm's actual motive in ordering the second McIntosh report.  However, this Court found that, "by inclusion of the phrase 'in any way' the interrogatory as drafted [was] overly broad and not sufficiently tailored to the facts of the McIntosh claim."[5]

Relators addressed that concern with Interrogatories Nos. 15 and 16.  They removed the "in any way" language and added language to reflect the parties' differing explanations behind State Farm's decision to order a second engineering report for the McIntosh claim.  Interrogatory No. 15 is directed at State Farm's purported explanation, and it seeks the instances in which State Farm challenged Forensic reports for lacking scientific data, explanation or analysis.

---

[4] [343], at 8.

[5] Order, [413], at 1.

Interrogatory No. 16 is directed at Relators' explanation, and it seeks instances in which State Farm challenged Forensic reports for improperly attributing the cause of damage to wind instead of flood. Together, they focus on the parties' competing theories and set aside any engineering report that is not directly related to the circumstances of the McIntosh claim.

          **1.**      **The Interrogatories address the specific circumstances of the McIntosh claim**

State Farm claims that these revised interrogatories are "nowhere close" to the circumstances of the McIntosh case, but its defense rests on a series of trivial distinctions between Relators' revised interrogatories and the facts of McIntosh claim.[6] First, State Farm faults Relators for seeking information about claims with revised engineering reports "regardless of whether the properties were insured by both homeowners and flood policies."[7] State Farm also faults Relators for seeking information about claims with revised engineering reports "involving any type of property," rather than incredibly specific factual circumstances presented by the McIntosh property.[8] These distinctions are immaterial.

If, for example, in the vast majority of cases, the initial report found the damage to a property had been caused by wind, and the revised report found the damage to be caused by flood, a jury would be more likely to accept Relators' explanation that State Farm ordered multiple engineering reports on the McIntosh property in order to minimize payments under homeowner policies. Similarly, if, in the vast majority of cases where State Farm rejected the initial report for lacking "adequate" scientific data, the revised report nevertheless did not contain any additional scientific data, a jury would be less likely to accept State Farm's proffered

---

[6] Response at 6.

[7] *Id.*

[8] *Id.*

defense of its actions.  Thus, State Farm's course of conduct on other claims is powerful evidence of its motives in ordering a second engineering report for the McIntosh property.

Second, State Farm faults Relators for seeking information about homes more than a half-mile from the McIntosh house.[9]  But a home's location in relation to the McIntosh property had no bearing on State Farm's efforts to find flood damage.  As the Court explained in *Muller v. State Farm*, the half-mile radius was derived from testimony that "State Farm personnel, when adjusting this loss, purportedly considered property damage sustained to adjacent and surrounding properties of the insured location."[10]  Here, State Farm's scheme covered the entire region, and distance from the McIntosh property would not reduce the probative value of evidence that State Farm systemically pressured Forensic to alter its findings of wind damage.

Third, State Farm faults Relators for seeking "information regarding engineering reports where State Farm challenged or disputed the *final* written report, but State Farm questioned the *initial* written report from Forensic on the McIntosh house."[11]  Brian Ford submitted his report to State Farm as a finished product, a final report.  State Farm employees reviewed that report, supposedly decided it was inadequate, and then caused a subsequent report to be written.  Calling the Ford report an "initial" report and the Kelly report a "final report" misconstrues Relators' interrogatories.[12]

---

[9] Response at 7.

[10] [413], at 2-3 (citing *Muller v. State Farm Fire and Cas. Co.*, 1:06-cv-95, [44] (S.D. Miss.) at 2).

[11] Response at 7 (emphasis in original, quotation omitted).

[12] State Farm's argument also is tautological.  If a "final" report meant the last report that was written, then by definition, State Farm never could have disputed the conclusions in a "final" report and caused Forensic to supplement or replace that report.  But as this Court has seen, State Farm repeatedly did.  Thus, reports were "final" only when as State Farm approved of their conclusions.

Fourth, State Farm faults Relators for seeking information regarding reports "regardless of whether the initial engineering report was ever provided to State Farm."[13]  State Farm's point here is confusing.  But if State Farm somehow managed to dispute reports that were never provided to it, then it certainly should identify those reports.  Indeed, evidence that State Farm demanded changes to reports it had not even seen would be even more powerful than the evidence produced to date.

**2.      All of State Farm's efforts to change engineering reports are relevant**

State Farm's attempts to undermine the recent evidence obtained from Forensic, further demonstrate why it should be required to answer the contested discovery.  State Farm argues that of the 19 engineering reports, 15 are irrelevant because those policyholders did not have flood insurance, and one of the remaining four was a waterfront property reduced to a slab.  Response at 9.  Put another way, under State Farm's theory, there are, at most, *three* relevant instances where it pressured Forensic to supplement its initial report instead of the *nineteen* relevant instances of which Relators are aware.  If Relators had not obtained this information from Forensic, State Farm might successfully have concealed how surprisingly often it rejected the conclusions in Forensic's initial reports.  Relators are entitled to take discovery from State Farm to uncover any defenses State Farm might attempt to present.[14]

**B.      State Farm's Arguments on the Merits Are Not Relevant to Relators' Requested Discovery**

The first several pages of State Farm's Response argue that the Ford report has been thoroughly discredited.  State Farm accuses Relators of "[t]rafficking in rank speculation" by

---

[13] Response at 7.

[14] State Farm's concerns that this information will result in 19 separate mini trials has to do with whether and how this information should be admissible at trial, not whether this information is discoverable.  At this juncture, Relators are only asking State Farm to answer two of their interrogatories.

6

contending that State Farm had an "ulterior motive" when it reviewed Forensic's engineering reports.

As explained above, the Court recognized that there are genuine issues of material fact as to State Farm's true motives, and that question cannot be resolved on summary judgment. It certainly follows that Relators should be allowed discovery relevant to answering that question.

State Farm also argues, once again, that because the McIntosh flood claim was paid before the Ford report was written, the Ford report is irrelevant and has "no bearing on whether the McIntosh flood claim was knowingly false." State Farm has unsuccessfully made this argument several times before. As explained above, the Court denied summary judgment based in part on facts surrounding the use of engineers in adjusting the McIntosh flood claim, and State Farm has been ordered to produce evidence relating to its use of engineers.

## III.    CONCLUSION

For the foregoing reasons, Relators ask this Court to grant their Motion to Compel State Farm to Answer Interrogatories.


Respectfully submitted,

THIS the 25th day of June, 2010

   /s/ C. Maison Heidelberg

August J. Matteis, Jr. (admitted *pro hac vice*)
matteisa@gotofirm.com
Craig J. Litherland (admitted *pro hac vice*)
litherlandc@gotofirm.com
Benjamin Davidson (admitted *pro hac vice*)
davidsonb@gotofirm.com
Derek Y. Sugimura (admitted *pro hac vice*)
sugimurad@gotofirm.com
GILBERT LLP
1100 New York Avenue NW, Suite 700
Washington, DC 20005
Phone No.        (202) 772-2200
Fax No.          (202) 772-3333

C. MAISON HEIDELBERG, MB #9559
mheidelberg@heidelbergharmon.com
GINNY Y. KENNEDY, MB #102199
gkennedy@heidelbergharmon.com
OF COUNSEL:
HEIDELBERG HARMON PLLC.
795 Woodlands Parkway, Suite 220
Ridgeland, Mississippi  39157
Phone No.        (601) 351-3333
Fax No.          (601) 956-2090

Attorneys for Kerri Rigsby and Cori Rigsby

## CERTIFICATE OF SERVICE

I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this **25th day of June, 2010,** caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

Don Burkhalter, Esq.
UNITED STATES ATTORNEY
   FOR MISSISSIPPI
188 East Capitol Street, Suite 500
Jackson, MS 39201

Felicia Adams, Esq.
ASSISTANT U.S. ATTORNEY
188 East Capitol Street, Suite 500
Jackson, MS 39201

Joyce R. Branda, Esq.
Patricia R. Davis, Esq.
Jay D. Majors, Esq.
UNITED STATES DEPARTMENT OF JUSTICE
Commercial Litigation Branch
Civil Division
601 D Street, NW
Washington, DC 20004

Larry G. Canada, Esq.
Kathryn Breard Platt, Esq.
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
(p) 504-525-6802
ATTORNEYS FOR HAAG ENGINEERING CO.

Robert C. Galloway, Esq.
Emerson Barney Robinson, III, Esq.
Benjamin M. Watson, Esq.
Jeffrey A. Walker, Esq.
Amanda B. Barbour, Esq.
BUTLER, SNOW, O'MARA,
   STEVENS & CANNADA, PLLC
P.O. Box 22567
Jackson, MS 39225
(p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON
   PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM FIRE & CASUALTY
COMPANY

Robert D. Gholson
GHOLSON BURSON ENTREKIN & ORR, P.A.
55 North 5th Avenue
P.O. Box 1289
Laurel, MS 39441-1289
ATTORNEYS FOR FORENSIC ANALYSIS
ENGINEERING CORPORATION


/s/     C. Maison Heidelberg___