IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY            RELATORS/COUNTER-DEFENDANTS

v.                             CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY    DEFENDANT/COUNTER-PLAINTIFF

and

FORENSIC ANALYSIS ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                DEFENDANTS

**STATE FARM'S RENEWAL AND SUPPLEMENTATION OF ITS MOTION
TO EXCLUDE THE RIGSBYS' EXPERT WITNESS DAVID J. FAVRE ([300] & [301])**

1.       State Farm Fire and Casualty Company respectfully renews and re-urges its motion to exclude the testimony of the Rigsbys' expert witness, David J. Favre. ([300] & [301].)

2.       On June 1, 2009, State Farm's motion to exclude Mr. Favre was fully briefed and *sub judice*. ([300], [301], [325] & [334].)

3.       On August 10, 2009, the Court issued a memorandum opinion noting that State Farm had moved to exclude four of the Rigsbys' experts, including Mr. Favre, and that the motion would be addressed in a separate opinion. ([343] at 1.) The motion remains *sub judice* before this Court.

4.       After the Court issued its August 10, 2009 Order, the Rigsbys submitted an updated report from Mr. Favre. ([409-4].) That report is nearly identical to his prior report and does not change the multiple grounds for excluding his opinion in any material way.

5.       In the interests of brevity and judicial economy, State Farm respectfully relies upon and re-urges all the grounds previously set forth for excluding Mr. Favre, *see* ([300], [301] & [334]), as supplemented herein, and respectfully seeks leave from the requirement to submit a separate memorandum inasmuch as all of the supplemental analysis is set forth herein. Of course, much more than Mr. Favre's qualifications are at issue, *see* ([343] at 1), and "[w]hile there is inevitably some

overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).  The reasons for excluding Mr. Favre have only been strengthened by his admissions at deposition, which was taken after the Court's August 10, 2009 Order.

6.      Mr. Favre admits that everything in his report rests on one assumption – that the flooding reached only 2.1 feet inside the McIntosh house.  (Favre Dep. (Ex. A) at 42:24-43:8.)  "I was given a height.  And I did my adjustment based on that height."  (*Id.* at 87:1-7.)  According to Mr. Favre, that "given" height was not based upon measurements at the McIntosh house, but on "debris marks" from the "outside wall" of *another* house in the area.  (*Id.* at 37:17-38:20.)  As State Farm previously demonstrated, the use of that 2.1 feet flood line contradicts the physical, empirical, and testimonial record of the flood line at the McIntosh house, thereby rendering Mr. Favre's entire opinion unreliable and inadmissible.  ([301] at 2, 7-10; [334] at 2-7.)  Robert McVadon, the contractor who rebuilt the McIntosh house in the wake of Katrina, has since testified that he, too, found a "four or five feet" interior water line, based on the residue he saw on its staircase.  (McVadon Dep. (Ex. B) at 12:4-13:8.)

7.      When confronted with photographic evidence of the flood line at the McIntosh house, Mr. Favre admits that empirical data are inconsistent with his assumed 2.1 feet flood line.  (Favre Dep. at 152:1-16.)  Obstinately clinging to his 2.1 feet flood line despite photographic evidence to the contrary, which Mr. Favre concedes show rub marks that "look to be about four foot off the ground," he says that "it's kind of hard to use 2.1 and then go against it because I see something a little bit higher."  (*Id.* at 207:3-24.)  Despite the patent contradiction between the empirical data and his presumed 2.1 feet, Mr. Favre blindly adheres to "what I want to believe happened" to the McIntosh house.  (*Id.* at 208:3-24.)

8.      Trying to excuse what he "wants to believe happened," Mr. Favre concocts a new scenario that is not set forth in his report.  He "assumes" that water-borne debris "crawled up" the walls to make the flood marks higher than his pre-conceived 2.1 feet level, because otherwise those marks are

2

"inconsistent" with his 2.1 feet flood line.  (*Id.* at 211:12-213:8.)  Though damage from water-borne debris – even if it "crawls up" or is "pushed up" a wall by several feet – is not excluded under the flood policy, *see* 44 C.F.R. pt. 61, app. A(1), § V, when faced with empirical data contradicting his opinion, Mr. Favre serves up a *post hoc* excuse for his use of the 2.1 feet flood line that drives his opinions, not to discern by any reliable method what actually happened to the McIntosh house.  "'Coming to a conclusion first and then doing research to support it is the antithesis of'" a scientific method.  *Newkirk v. Conagra Foods, Inc.*, 2010 WL 2680184, at \*13 (E.D. Wash. July 2, 2010) (quoting *Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994)); *see Rutigliano v. Valley Bus. Forms*, 929 F. Supp. 779, 787 (D.N.J. 1996); *Wills v. Amerada Hess Corp.*, 2002 U.S. Dist. LEXIS 1546, at \*29 (S.D.N.Y. 2002).  And "[e]xpert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all.  Both analyses rest in pure speculation.  We find the testimony properly excluded on this ground." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

9.      "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).  *Daubert* "'require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions." *Frazier*, 387 F.3d at 1260 (citation omitted; emphasis in original).  Mr. Favre's opinion does not pass that exacting scrutiny.

10.      An expert such as Mr. Favre whose opinion disregards relevant facts, *Cole v. Homier Distributing Co.*, 599 F.3d 856, 865 (8th Cir. 2010), relies upon "'unrealistic'" or "unsupported assumptions," *Compania Embotelladora del Pacifico, S.A., v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 318-320 (S.D.N.Y. 2009), or pursues a "preordained conclusion," *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 175, 190 (D. Conn. 2009), is unreliable and inadmissible.

11.      Photographs of the McIntosh house taken during Hurricane Katrina also expose Mr. Favre's 2.1 feet flood line to be unreliable.  These photographs – taken after the floodwaters had already receded about two feet from their peak, *see* (Denny Dep. (Ex.C) at 9:1-12, 14:10-15:5, 16:8-20:3;

Briscoe Dep. (Ex. D) at 16:18-17:10) – reveal significant storm surge with superimposed wave action:




12.      State Farm's expert engineer, Mark Watson, also performed a quantitative analysis of the height of the rub marks documented at the McIntosh house.  (Watson Rpt. [417-4] at 5, app. B).  Mr. Watson used measurements of the McIntosh house, confirmed them with house plans, and calculated the height of the rub marks.  (*Id.*)  That analysis revealed that the rub marks on the exterior ranged from about 4.9 to 5.75 feet.  (*Id.*, app. B at ECF 11-16).  Rub marks on the same foyer columns that Mr. Favre says he relied on as a "determining factor[] indicating" a 2.1 foot flood line (Favre Rpt. [279-4] at ECF 3; [409-4] at ECF 3) actually reached 3.8 feet – nearly twice what Mr. Favre erroneously assumed.



(Watson Rpt., [417-4], app. B at ECF 12, 17.)  Other photographs taken shortly after Katrina also show

flood damage well in excess of 2.1 feet inside the McIntosh house.[1]

  

13.     The empirical evidence of the flood damage at the McIntosh house exposes Mr. Favre's data to be grossly incomplete and his methodology to be unreliable because it fails to account for contradictory data.  Mr. Favre cannot, for example, rely on an isolated 2.1 foot rub mark, if any, to the exclusion of other facts and data that show the flooding inside the McIntosh house to be much higher. Mr. Favre's opinion must be "based upon sufficient facts or data."  Fed. R. Evid. 702.  "[A]ny theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect," and "courts have excluded expert testimony 'where the expert selectively chose his support from the scientific landscape.'"  *In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 & n.164 (S.D.N.Y. 2005) (citation omitted).  An expert who "cherry-picked the facts he considered to render an expert opinion" and who "merely accepted some of the … data that suited his theory and ignored other portions of it that did not" fails to employ a reliable methodology.  *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001).  "[S]uch a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to assist the trier of fact."  *Id.* (internal quotations omitted).

14.     Just as he disregards empirical evidence refuting his assumed flood line, Mr. Favre also

---

[1] Beyond extensive flood damage, the left photo also shows a section of the ceiling that had been cut out by Mr. McIntosh before Hurricane Katrina to repair an air conditioning leak.  (McIntosh Dep. (Ex. E) at 132:8-133:3.)

disregards empirical evidence refuting his repair estimate.  As State Farm has previously shown, the McIntoshes actually spent $946,198 to make repairs and upgrades.  ([301] at 3, 10; [334] at 10.)  Of that total, $525,689.73 was actually spent to repair the flood damage, as detailed by Mr. McVadon based on his actual work and on extensive invoices and receipts.  ([417-6] at 1, Ex. 1; McVadon Dep. at 10:2-16, 16:9-17:12, 34:18-35:12, 40:17-24).  Of that, $473,630.76 qualified for coverage under the flood policy, as explained by Gerry Waytowich, a flood claim reinspector for FEMA during Hurricane Katrina. ([492-2] at 1-3.)  The amount the McIntoshes actually spent on covered flood repairs is more than 360% greater than Mr. Favre's theoretical estimate of $129,850.03, *see* ([494], Ex. B at 22), and nearly double the flood policy limits of $250,000.  The McIntoshes had no incentive to inflate their actual flood repair costs because they were not reimbursed under the flood policy for any amount above the $250,000 limit.

15.    Even though Mr. Favre's failure to examine actual repair costs was addressed in State Farm's initial papers, ([301] at 3, 10), Mr. Favre's supplemental report continues to ignore the ***actual*** repair costs and relies instead upon his ***estimated*** repair costs.  Mr. Favre freely admits that "[t]o get an accurate amount" for replacement costs, "the invoices and any contracts that had been signed would put it to the penny" and "that's typically how we do [it] for insurance companies."  (Favre Dep. in *Pipkins,* [300-3] at 60:16-24).)  But he still refuses to consult any such records.

16.    Courts in Hurricane Katrina cases have repeatedly excluded estimates of repair costs where, as here, an insured has actually repaired the property.  Once "actual repairs have been completed," estimates are "superseded by actual work," *Legacy Condos., Inc. v. Landmark Am. Ins. Co.*, 2008 WL 80373, at *5 (S.D. Miss. Jan. 4, 2008); *see Matthews v. State Farm Fire & Cas. Co.*, 2007 WL 2127581, at *2 (E.D. La. July 24, 2007), thus rendering repair estimates "irrelevant." *Legacy Condos., Inc.*, 2008 WL 80373, at *3.  An expert whose opinion relies upon repair estimates instead of actual repair costs is unreliable and inadmissible. *See, e.g.*, *Tardo v. State Farm Fire & Cas. Co.*, 2009 WL 1804766, at *2-3 & n.10 (E.D. La. June 22, 2009).

6

17.     Mr. Favre's estimates are also inadmissible because that method is inconsistent with his standard approach outside of the courtroom, where he uses actual repairs costs when available to get an accurate amount: "that's typically how we do [it] for insurance companies."  ([300-3] at 60:16-24.) One of the goals of "*Daubert*'s gatekeeping requirement" is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Thus, "[t]he court should ensure that the opinion comports with applicable professional standards outside the courtroom and that it 'will have a reliable basis in the knowledge and experience of [the] discipline.'"  *Watkins v. Telsmith*, 121 F.3d 984, 991 (5th Cir. 1997) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)) (alteration in original); *see also Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).  Mr. Favre's opinions and methods fail to meet these and other fundamental requirements.

18.     The "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000), required of experts in federal court are not satisfied by "subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590, or by "mere guesswork." *Allen*, 102 F.3d at 199.  An expert is not free to "simply pick[] the cause that is most advantageous to [plaintiff's] claim." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *see also Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 312 (5th Cir. 1990).  "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).  Mr. Favre's opinion suffers from all of these fatal defects, and his admissions at deposition underscore the many grounds for excluding his opinion in its entirety.  (*See* [301] & [334].)

19.     For the reasons set forth in State Farm's prior papers, as supplemented herein, this Court should exclude Mr. Favre's testimony in its entirety.

This the 26th day of July, 2010.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:    <u>/s/ E. Barney Robinson III (MSB #09432)</u>
Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB #09432)
Benjamin M. Watson (MSB # 100078)

ITS ATTORNEYS

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) bob.galloway@butlersnow.com
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com

Michael B. Beers (ASB-4992-S80M)
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988, Suite 100
250 Commerce Street (36104)
Montgomery, Alabama  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) gilberts@gotofirm.com
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441

ATTORNEY FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

This the 26th day of July, 2010.

/s/ E. Barney Robinson III (MSB #09432)
E. Barney Robinson III (MSB #09432)

10