IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY              RELATORS/COUNTER-DEFENDANTS

v.                                        CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY   DEFENDANT/COUNTER-PLAINTIFF

and

FORENSIC ANALYSIS ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                        DEFENDANTS

**STATE FARM'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO EXCLUDE THE RIGSBYS' EXPERT WITNESS LOUIS G. FEY, JR.**

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

State Farm Fire and Casualty Company respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Evid. 104(a), 702, 703, 401, 402, and 403 to exclude the testimony of the Rigsbys' expert witness, Louis G. Fey, Jr.

## I.    PRELIMINARY STATEMENT

The Rigsbys proffer the expert testimony of Mr. Fey, an insurance claims handling consultant, but one who has never adjusted a federal flood claim.  Mr. Fey's opinion is inadmissible for many reasons that independently and collectively warrant the exclusion of his opinion.

Mr. Fey's opinion is neither probative nor sufficient to inform whether the McIntosh flood claim was "knowingly false" at the time it was made.  *See* 31 U.S.C. § 3729.  Indeed, his opinion is immaterial in light of Kerri Rigsby's dispositive admissions that she thought there was at least $250,000 in flood damage to the McIntosh house and that she "absolutely" "believed it" "in good faith."  *See, e.g.*, (Hr'g Tr. (Ex. A) at 220:13-221:7; 258:23-259:3, 274:14-16, 277:15-18, 286:14-17, 287:9-14, 302:3-7, 302:14-1.)  The Rigsbys cannot avoid the dispositive effect of these and other admissions by proffering Mr. Fey's opinion.

His opinion is otherwise inadmissible because it lacks the requisite "fit" with the facts and claims at issue in this case.  He reviewed the process by which Kerri Rigsby and Cody Perry investigated the McIntosh flood claim and believes different steps should have been taken to conform with "industry standards."  Yet unlike other Katrina cases, this case does not involve a negligence or bad faith claim.  Rather, it proceeds solely under the False Claims Act, and federal law does not recognize bad faith or other tort claims for adjusting a federal flood insurance claim.  Nor is the False Claims Act a vehicle for policing technical compliance with administrative regulations such as those governing federal flood claims.  Mr. Fey's views on the flood adjustment process suffer from a lack of fit.

When asked about the core issue of whether the $250,000 McIntosh flood payment was accurate, Mr. Fey disclaims the subject as beyond his limited "role."  Yet even within his narrow and detached

role, his opinion is unhelpful.  While he believes that different steps should have been taken to investigate the flood claim, Mr. Fey was not a certified flood adjuster when he issued his opinion.  Nor has he ever adjusted a federal flood claim or supervised the adjustment of one, much less during the unprecedented flooding wrought by Hurricane Katrina.

Lacking the requisite expertise, Mr. Fey cannot determine whether any of his critiques of the adjustment affected the amount of money paid under the McIntosh flood claim.  He admits that, despite his issues with the claim handling procedure, the $250,000 payment could well have been proper.  Thus, Mr. Fey's opinion sheds no light on the essential questions in this case, *i.e.*, whether there was an overpayment of the McIntosh flood claim that was knowingly false at the time it was made.  *See United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 875 (S.D. Tex. 2007) ("'The falsity of a claim is determined ***at the time of submission***.'") (quoting *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 681 (5th Cir. 2002) (emphasis in original), *vacated on other grounds on reh'g en banc*, 326 F.3d 669 (5th Cir. 2003)), *aff'd*, 575 F.3d 458 (5th Cir. 2009); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006) ("false claims must in fact be 'false when made.' ...  In short, a palpably false statement, known to be a lie ***when it is made***, is required for a party to be found liable under the False Claims Act") (citation omitted; emphasis added); *United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) ("The test of whether a claim is false must be ***as of the date when the claim is made***.") (emphasis added); *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 554 F. Supp. 2d 966, 971 (D. Ariz. 2008) (claim must be "false ***at the time it was made*** – the defendant must have knowingly made the false claim ....") (emphasis added); 31 U.S.C. § 3729.

Mr. Fey also applies the wrong standard when reviewing the adjustment of the McIntosh flood claim.  His entire opinion is based upon an unidentified "industry standard," but that standard is not the standard required by federal law.  A proffered opinion that is contrary to the law and based upon the wrong metric is irrelevant, unreliable, and misleading to the jury.

Mr. Fey is simply unable – and, when questioned, unwilling – to anchor his opinion to the facts and issues at stake in this case. His opinion does "not bear directly on the merits of the McIntosh flood claim" and should be excluded. ([266] at 2.) So, too, Mr. Fey's other opinions about how the McIntosh **homeowners** claim was handled and about questions of law are improper, irrelevant, and inadmissible.

## II.   THRESHOLD SCRUTINY OF EXPERT TESTIMONY

This Court must fulfill a vital "gatekeeping role" that requires it to make a threshold assessment "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). Throughout the evaluation, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. These "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000), require far "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

"Rule 702 further requires that the evidence" must be "'sufficiently tied to the facts of the case'" so as to be helpful to the jury and have relevant "fit." *Id.* at 591 (citation omitted). Expert testimony must thus be "suitably proportioned" to the specific claims at issue and an expert whose opinion lacks this "'connection to the pertinent inquiry … should be excluded because there is no 'fit.'" *Boca Raton Comm. Hosp. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232-33 (11th Cir. 2009); *Phillips v. Am. Honda*, 238 F. App'x 537, 540 & n.2 (11th Cir. 2007); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (citation and footnote omitted).

Rule 702 further mandates that expert evidence must possess a sound basis and a sound methodology, properly applied to the facts of the case, before an opinion can be admitted into evidence.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, *if* (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, **and** (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added).  Thus, courts must exclude expert evidence that is not "based on sufficient facts or data," that is not "the product of reliable principles and methods," or whose methods are not applied "reliably to the facts of the case."  *Id.*  Indeed, "**any** step that renders the analysis unreliable ... renders the expert's testimony inadmissible.  ***This is true whether the step completely changes a reliable methodology or merely misapplies that methodology***."  Fed. R. Evid. 702 advisory committee's note (2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)) (emphasis and omission in original).

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."  *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).  Indeed, a core rule of evidence is that "speculation is unreliable ... and is inadmissible."  *Dunn v. Sandoz Pharm. Corp.*, 275 F. Supp. 2d 672, 684 (M.D.N.C. 2003).  "The courtroom is not the place for scientific guesswork, even of the inspired sort."  *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).  "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

The Rigsbys, as the proponents of the expert evidence, bear the burden of showing that it is admissible.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc); *see also Daubert*, 509 U.S. at 592 n.10.  State Farm does **not** bear the burden of demonstrating its inadmissibility.  *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1230 n.10 (N.D. Okla. 2007); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 102 n.3 (D. Conn. 2006); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).

*Daubert* carefully distinguishes between the threshold reliability inquiry that the Rigsbys must satisfy and the role of cross-examination.  "Vigorous cross-examination, presentation of contrary

4

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky *but admissible* evidence. ... These conventional devices ... are the appropriate safeguards *where* the basis of scientific testimony *meets the standards* of Rule 702." *Daubert*, 509 U.S. at 596 (emphasis added).  As the highlighted language shows, the Rigsbys must first satisfy their burden of demonstrating that the proffered evidence is admissible.  *See McLendon v. Georgia Kaolin, Co., Inc.*, 841 F. Supp. 415, 418 (M.D. Ga. 1994) ("these devices are only sufficient safeguards where the scientific testimony meets the standards of Rule 702"); *see also Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) ("cross-examination at trial" cannot "take the place of scientific peer review"); *Porter v. Whitehall Labs.*, 791 F. Supp. 1335, 1345 & n.10 (S.D. Ind. 1992) ("an expert's opinion must have *some* basis other than hypothesis before the opinion may have the privilege of being assailed by cross-examination") (emphasis in original), *aff'd*, 9 F.3d 607 (7th Cir. 1993).

Even if Mr. Fey's testimony could somehow survive this Court's threshold scrutiny under Rule 702 (which it cannot), then it would be subject to further review and preclusion under Rule 403. "[E]xpert evidence can be both powerful and quite misleading. ... Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## III.   THE PROPOSED EXPERT TESTIMONY IS IRRELEVANT, IMMATERIAL, AND INADMISSIBLE

None of the Rigsbys' proposed expert testimony is probative of whether the McIntosh flood claim was "knowingly false" at the time it was made, *see* 31 U.S.C. § 3729, and it should be excluded on that basis alone.  *See* Fed. R. Evid. 401, 402, 702.  Indeed, the Rigsbys' expert evidence is not probative of the issues in this case given that Kerri Rigsby has repeatedly made dispositive admissions that she "believed there was $250,000 worth of flood damage," (Hr'g Tr. at 220:13-221:7), and that,

based on her inspection of the property, she "absolutely" "believed it" "in good faith." (*Id.* at 258:23-259:3, 274:14-16, 277:15-18, 286:14-17, 287:9-14, 302:3-7, 302:14-1; *see also* K. Rigsby *Marion* Dep. II (Ex. B) at 139:9-140:8, 142:7-13.) She has further testified that she did not knowingly submit a false claim, (Hr'g Tr. at 301:4-9), that she has no personal knowledge that the submission of the claim was false, (*id.* at 300:14-301:3), and that even to this day she does not know that the flood damage to the McIntosh home was below $250,000. (*Id.*) The dispositive effect of these sworn factual admissions cannot be negated by expert testimony, rendering such expert testimony irrelevant, immaterial, and inadmissible. *See, e.g., United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008).

## IV.   MR. FEY'S OPINION HAS NO "FIT" WITH THE FACTS AND ISSUES AT STAKE

An expert opinion must properly "fit" the facts and issues of the case to assist the trier of fact. *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702. An expert who provides "no reliable link between his data and the facts at issue in the case," *Phillips*, 238 F. App'x at 540 & n.2, or whose opinion is not "'connect[ed] to the pertinent inquiry … should be excluded because there is no 'fit.'" *Boca Raton Comm. Hosp.*, 582 F.3d at 1232-33; *see Korte v. ExxonMobil Coal USA, Inc.*, 164 F. App'x 553, 556-557 (7th Cir. 2006). Where "an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate. Even a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, should not be admitted if it does not apply to the specific facts of the case." *Concord Boat Corp.*, 207 F.3d at 1056 (citation and footnote omitted). "Federal judges must … exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). Mr. Fey's opinion lacks the requisite fit to the facts and issues in this case, and the Rigsbys cannot meet their burden to show otherwise.

### A.   Mr. Fey's Opinion Is Immaterial To This False Claims Act Case

Mr. Fey's criticisms of the processes used to investigate the flood claim are immaterial.  This case does not involve a claim for negligence, bad faith, or breach of fiduciary duty.  It proceeds solely under the False Claims Act.  *See* (First Am. Compl. [16].)  As a matter of law, evidence of "mere negligence or even gross negligence" cannot establish the requisite intent mandated by the False Claims Act, *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008); *see also Taylor-Vick*, 513 F.3d at 232, nor can it demonstrate – as it must – that the flood claim was knowingly false at the time it was made.  *See* ([343] at 3); *Longhi*, 513 F. Supp. 2d at 875; *Hendow*, 461 F.3d at 1171-72; *Nat'l Wholesalers*, 236 F.2d at 950; *Frazier*, 554 F. Supp. 2d at 971; 31 U.S.C. § 3729.[1]

Federal law, which does not recognize extra-contractual claims arising from the adjustment of a federal flood claim, *see, e.g.*, *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007), *cert. denied*, 522 U.S. 1184 (2008), preempts such claims brought under state law.  *See, e.g.*, *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005).  And while Mr. Fey believes that different processes should have been used to investigate the flood claim, the False Claims Act does not contemplate policing compliance with federal administrative processes or regulations.  Every Circuit Court of Appeals to consider the issue – including the Fifth Circuit – has expressly recognized that "[v]iolations of laws, rules, or regulations alone do not create a cause of action under the FCA."  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  As the Fifth Circuit explained:

> "claimants [do not] 'knowingly' present[] false claims where there were instances of 'mere' contractual or regulatory noncompliance," because the "FCA is *not* an appropriate vehicle for policing technical compliance with administrative regulations.  The FCA is a

---

[1]  The Rigsbys have freely admitted in open court that this case does *not* involve a reverse false claim. "*[A] reverse false claim is not what's at issue here*.  A reverse false claim is if the government – if you falsely represent that you don't need to make a payment that you owe to the government, so, like, a tax return might be a good example of it.  *This is a false claim*.  There's only one claim at issue here.  There was a continuing duty to make sure that that claim was not false.  So *we're not in the reverse false claim situation at all*."  (Hr'g Tr. at 237:20-238:11.)

fraud prevention statute; violations of [agency] regulations are **not** fraud unless the violator knowingly lies to the government about them."

*United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 340, n.12 (5th Cir. 2008) (emphasis added), *cert. denied*, 129 S. Ct. 570 (2008) (quoting *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir. 2003) (en banc) (Jones, J., specially concurring); *accord United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999); *see also United State ex rel. Ramadoss v. Caremark Inc.*, 586 F. Supp. 2d 668, 691 (W.D. Tex. 2008) ("the FCA is not a catch-all enforcement vehicle for all government regulations").  Thus, Mr. Fey's criticisms of how the flood claim was investigated are immaterial to the issues in this case.

### B.   Mr. Fey Fails To Anchor His Opinion To the Facts and Issues of This Case

Beyond being immaterial, Mr. Fey's disagreements with the way the flood claim was adjusted are also unhelpful.  Whatever else might be said about his views, including whether XactTotal should be used, *see* (Fey Rpt. [409-5] at 4-5), Mr. Fey makes no effort to connect his views to the facts of this case or to the fundamental issues at stake.  He effectively opines in a vacuum – criticizing investigative steps in the abstract without showing how they affected the flood payments, if at all.  "[A]bstract conclusions not adequately grounded in the facts of the case" or "anchored" to the specific conduct at issue are unhelpful, irrelevant, and misleading to the jury.  *El Aguila Food Prod., Inc. v. Gruma Corp.*, 131 F. App'x 450, 453-54 (5th Cir. 2005); *see United States v. Dixon*, 261 F. App'x 800, 805 (5th Cir. 2008); Fed. R. Evid. 401-403, 702.  His opinions should be barred.

When asked about "whether there was an overpayment of the McIntosh flood claim," ([343] at 3), Mr. Fey steadfastly denies having any opinion.

> Q.   Are you prepared to tell me how much, in your opinion, Mr. McIntosh should have been paid on this flood claim?
>
> A.   No.
>
> Q.   You don't know the answer to that, do you?
>
> A.   No.

Q.      Nor can you say that he was overpaid on that flood claim?

A.      No.  It wasn't part of what I was asked to opine on.

Q.      In fact, as you sit here today, you have no information to suggest that Mr. McIntosh's flood damage was less than $250,000, do you?

A.      I wasn't asked to look at that.

Q.      And so you're not prepared to answer – you're not prepared to say that he had less than $250,000 in damage from that flood?

A.      Correct.

Q.      Because you don't have that information, do you?

A.      I have no opinion on that whatsoever.

….

Q.      How much should Kerri Rigsby and Cody Perry have paid Mr. McIntosh on this flood claim?

A.      I was not retained to come up with evaluations on the claim –

Q.      So you don't know?

A.      – or adjust the loss.  No.

Q.      You're not critical of the payer paying $250,000, are you?

A.      I have no opinion on it.

….

Q.      So you're not prepared to offer an opinion that he was overpaid, are you?

A.      Correct.

(Fey Dep. (Ex. C) at 51:13-52:15, 53:16-18, 104:9-105:4 (objection omitted), *see also id.* at 108:15-109:1, 125:15-22, 151:25-152:5, 155:8-15.)  Having no opinion on the merits of the flood payment, Mr. Fey does not dispute Kerri Rigsby's and Cody Perry's findings that the flooding reached five feet inside the McIntosh house, (*id.* at 113:4-16), that the surge on the Biloxi coast was "massive," (*id.* at 131:12-16), or that there was substantial flood damage to the McIntosh house.  (*Id.* at 145:2-10.)

So, too, though the Rigsbys admit that "[a]s an initial matter, [they] must prove that the damage to the home was caused by wind rather than water before [they] can prove that State Farm knowingly, deliberately, or recklessly disregarded that finding," ([324] at 24), Mr. Fey did not "do any investigation into what's wind and what's flood" damage to the McIntosh house.  (Fey Dep. at 163:11-18.)

Further, despite his misplaced critique of how the flood claim was investigated, Mr. Fey admits that the $250,000 flood payment could well have been proper:

> Q.    Well, and the impact of that negligent claim handling could – could be nothing or it could be an improper payment, right?
>
> A.    Or it – *it could be a proper payment*.  That depended on what – what we'll never know because it never happened.
>
> Q.    We just can't know because we don't know the outcome of all those variables that you're pinpointing to as negligently done, right?
>
> A.    Correct.

(*Id.* at 123:7-16 (emphasis added).)

In sum, Mr. Fey never connects his views about the claim investigation to the results of that investigation, *i.e.*, the payments under the flood policy.  Nor can his opinion establish whether the flood claim was knowingly false at the time it was made.  Mr. Fey's opinion is not "'properly … applied to the facts in issue'" and is therefore unhelpful to the jury, immaterial, and inadmissible.  *See Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-93).

### C.    Mr. Fey's Opinion Is Further Precluded by Fed. R. Evid. 403

The misfit between Mr. Fey's opinion and the issues in this case is compounded by the additional danger that his opinion will mislead the jury and confuse the issues.  *See* Fed. R. Evid. 403.  "Federal judges must … exclude proffered scientific evidence under [Rule] 403 unless they are convinced that it … will not mislead the jury."  *Daubert*, 43 F.3d at 1321 n.17.  Mr. Fey's opinion will likely do so because it is not grounded to the facts and issues in this case.

Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004), "the Supreme Court … has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule]

403." *Viterbo*, 826 F.2d at 422.  Mr. Fey's opinion sheds no light on the issues at stake in this case and would impermissibly mislead the jury and confuse the issues.  *See* Fed. R. Evid. 403.

## V.   THE DEFECTS IN MR. FEY'S INAPT OPINION STEM FROM HIS INSUFFICIENT QUALIFICATIONS

Even if the issue in this case were whether Kerri Rigsby and Cody Perry properly followed the federal processes when they investigated and adjusted the McIntosh federal flood claim – and, as explained above, that cannot be the issue in a False Claims Act case, *see, e.g.*, *Farmer*, 523 F.3d at 340, n.12; *Hopper*, 91 F.3d at 1267; *Lamers*, 168 F.3d at 1020 – Mr. Fey lacks the qualifications to render an opinion on those matters.  While he disagrees with how the federal flood claim was adjusted, Mr. Fey has never adjusted one.  In his "entire insurance career," he has "never supervised the adjustment of a loss under the National Flood Insurance Program" and has "never handled a claim under the National Flood Insurance Program."  (Fey Dep. at 45:23-46:5.)  He never used XactTotal and has little more than a passing familiarity with similar software programs.  (*Id.* at 124:16-18, 125:4-22.)

Nor was Mr. Fey a certified flood adjuster when he issued his opinion in this case.  *Compare* (Fey Rpt. [409-5] at 1) *with* (Fey Dep. at 32:4-11, 33:22-34:4.)  His opinion is instead based upon his experience adjusting ***homeowners*** insurance claims according to general industry practice, not federal flood claims according to federal rules and regulations, much less those in force following Katrina.  *See, e.g.*, (Fey Dep. at 22:19-24, 45:5-13, 85:14-86:3.)  Mr. Fey's opinion – even if it was otherwise relevant and possessed "fit" (which it does not) – is not grounded in the requisite expertise.

"The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question" at issue in the particular case.  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).  A proffered expert "must possess 'some special skill, knowledge or experience' concerning the ***particular issue*** before the court" for his opinion to be admissible.  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) (emphasis added) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir.

1998)).

Mr. Fey's general experience in the insurance field is not adequate.  *See, e.g.*, *Travelers Prop. Cas. Co. v. Nat'l Union Ins. Co.*, 557 F. Supp. 2d 1040, 1050 (W.D. Mo. 2008); *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152, 1154 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008).  An expert who is qualified in a general field is not necessarily qualified as to any issue within its breadth.  Thus, for example, "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue," *Ralston v. Smith & Nephew Richards*, 275 F.3d 965, 969-70 (10th Cir. 2001), and "an expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering." *Shreve*, 166 F. Supp. 2d at 392; *see Delehanty v. KLI, Inc.*, 663 F. Supp. 2d 127, 131-33 (E.D.N.Y. 2009); *Solfest v. Arctic Cat Inc.*, 2008 WL 4615447, at *3 (W.D. Wis. Apr. 18, 2008); *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1357 (D. Ariz. 1996).  The same is true for the insurance field.  "45 years of overall experience in the insurance industry is not necessarily sufficient" for a proffered expert to opine as to any issue within the insurance field, especially where the expert lacks "'particularized experience'" as to the insurance issues at stake in the case.  *Certain Underwriters at Lloyds, London*, 389 F. Supp. 2d at 1152, 1154.  Regardless of whether Mr. Fey is "an expert in other areas of insurance, his experience has not established that he is an expert on the areas of insurance involved in this case," and his opinion should be excluded.  *Travelers Prop. Cas. Co.*, 557 F. Supp. 2d at 1050.

## VI.   MR. FEY'S IMMATERIAL OPINION IS ALSO BASED ON THE WRONG METRIC

As noted above, because the False Claims Act is not a vehicle for policing technical compliance with administrative regulations, the issue in this case is not whether Kerri Rigsby and Cody Perry properly followed federal regulations and guidelines when they investigated and adjusted the McIntosh flood claim.  *See Farmer*, 523 F.3d at 340, n.12; *Hopper*, 91 F.3d at 1267; *Lamers*, 168 F.3d 1020.  Thus,

Mr. Fey's opinion on that issue is wholly immaterial and would confuse the issues and mislead the jury.

Even if his opinion did not suffer from those fatal defects (which it does), Mr. Fey's opinion about the flood claim is unreliable because it is based upon the wrong standard. An expert whose opinion depends upon the wrong analytical framework is unreliable, unhelpful, and inadmissible.

Mr. Fey based "[a]ll" of his views as to the flood claim handling upon a "standard which applies in the property insurance industry." (Fey Rpt. [409-5] at 1.) Whatever else can be said about Mr. Fey's unidentified "industry standard," it is the wrong standard according to federal law, FEMA claim handling guideline W-5054, and the then head of the NFIP, David Maurstad. (Maurstad Dep. (Ex. D) at 11:15-21.)

Federal law requires an insurer to "use its own customary standards" when adjusting a federal flood claim, 44 C.F.R. § 62.23(e), and "general Company standards, guided by NFIP Claims manuals," *id.* § 62.23(i)(1), not any "industry standard." Nothing in FEMA's Hurricane Katrina claim handling guideline W-5054 adopts any "industry standard," but instead refers to "the company's normal claim procedures." FEMA, Hurricane Katrina – Flood Handling Standards (Sept. 21, 2005) at 1, Attachment A at 4 (Ex. E).

Just as federal regulations and guidelines reveal Mr. Fey's standard to be erroneous, so does the testimony of the then head of the NFIP, Mr. Maurstad. Mr. Maurstad expressly rejected the processes that Mr. Fey believes – despite his lack of expertise – should have been implemented when adjusting the federal flood claim. For instance, Mr. Maurstad disagreed with Mr. Fey's view, *see* (Fey Rpt. [409-5] at 4, 6), that a flood adjuster must determine the extent of the wind damage to the property before paying flood policy limits, explaining that employing such grounds to deny flood insurance payments would have been an "unconscionable" act that would have violated the letter and spirit of the NFIP. (Maurstad Dep. at 125:10-127:12.) In fact, Mr. Maurstad, expressly testified that determining wind damage was "not needed to determine the amount of damage caused by flood" and that, under a flood policy,

13

"determining [the] amount [of flood damage] is what is critical to appropriately adjusting the claim."

(*Id.* at 121:23-122:21.)

> Q.    But by that, are you also saying that you didn't think it was necessary for the flood adjuster to have information about wind and wind damage to the property they were adjusting?
>
> A.    Correct.
>
> Q.    They didn't need to know anything about the wind?
>
> A.    That's correct.

(*Id.* at 122:22-123:6 (objection omitted).)

Contrary to Mr. Fey's view, *see* (Fey Rpt. [409-5] at 4-5), Mr. Maurstad as well as Gerry Waytowich – who was responsible for conducting routine FEMA reinspections of flood adjustments done by companies such as State Farm to ensure compliance with FEMA policies and procedures during Hurricane Katrina – confirmed that there was nothing improper about using XactTotal to adjust the McIntosh flood claim.  They explained that FEMA guidelines and "common sense" permitted a flood claims adjuster to forego an "itemized line-by-line claim adjusting process" where (as here) the "damage far exceeded the policy limits."  *E.g.*, (Maurstad Dep. at 150:5-20; Waytowich Rpt. [492-2] at 3; Waytowich Dep. (Ex. F) at 47:6-48:6.)

Accordingly, Mr. Fey applied the wrong standard when forming his opinion about the McIntosh flood claim adjustment, contrary to federal regulations.  "Expert opinions that are contrary to law are inadmissible."  *Loeffel Steel Prods. Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005).  "They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact.  Indeed, 'it is not an expert opinion,'" *id.* (citation omitted); *see* Fed. R. Evid. 401-402, 702, and is far more likely to mislead the jury and confuse the issues.  *See* Fed. R. Evid. 403.  Mr. Fey's opinion should be excluded.

## VII.   MR. FEY'S VIEWS ABOUT THE MCINTOSH HOMEOWNERS CLAIM ARE IRRELEVANT

By proffering Mr. Fey, the Rigsbys seek to re-litigate issues from the *McIntosh* homeowners case. Though that case is long settled, Mr. Fey devotes much of his opinion to the engineering analysis of the McIntosh house, (Fey Rpt. [409-5] at 5-6), which analysis was performed solely for the homeowners claim, ***after*** the flood claim was adjusted and paid.   "[T]he essential question in this action is whether there was an overpayment of the McIntosh flood claim" that was knowingly false at the time it was made, *see* ([343] at 3); 31 U.S.C. § 3729; *Longhi*, 513 F. Supp. 2d at 875 ("'The falsity of a claim is determined ***at the time of submission*.'"); *Hendow*, 461 F.3d at 1171-72 ("false claims must in fact be 'false when made.' ...  In short, a palpably false statement, known to be a lie ***when it is made***, is required for a party to be found liable under the False Claims Act") (citation omitted; emphasis added); *Nat'l Wholesalers*, 236 F.2d at 950 ("The test of whether a claim is false must be ***as of the date when the claim is made***.") (emphasis added); *Frazier*, 554 F. Supp. 2d at 971  (claim must be "false ***at the time it was made*** – the defendant must have knowingly made the false claim ....") (emphasis added).  The issue is ***not*** how any "overpayment affected State Farm's obligations under its homeowners policies." ([343] at 3).  Thus, Mr. Fey's views about how the homeowners claim was adjusted are inadmissible.

Based on their inspection – before any engineer was assigned – Kerri Rigsby and Cody Perry recognized that the flood damage to the McIntosh property exceeded the flood policy limits.  (Hr'g Tr. at 302:3-7, 302:14-19; Perry Dep. (Ex. G) at 177:12-179:21.)  During that inspection, Mr. McIntosh requested an engineer in connection with his ***homeowners*** claim.  *See* (Flood Activity Log (Ex. H).)  On October 2, 2005, full policy limits were paid on the McIntosh flood claim.  *See, e.g.*, (Hr'g Tr. at 288:5-13.)  Thereafter, Forensic received its engineering assignment, and it was not until October 12, 2005, that the Ford engineering report was issued.  Kerri Rigsby has freely admitted that the Ford report had no influence over the adjustment of the McIntosh flood claim because it did not even exist "when we adjusted the claim."  (*Id.* at 288:15-22.)

Since the McIntosh flood claim was adjusted and paid before any engineer became involved, Mr. Fey's criticisms of how the engineers were assigned and how their reports were interpreted are irrelevant. They are not and cannot be probative of whether the flood claim was knowingly false at the time it was made. *See Hendow*, 461 F.3d at 1171-72; *Nat'l Wholesalers*, 236 F.2d at 950; *Frazier*, 554 F. Supp. 2d at 971; *Longhi*, 513 F. Supp. 2d at 875. Consequently, Mr. Fey's views about those reports do "not bear directly on the merits of the McIntosh flood claim" and should be excluded. ([266] at 2.)

Such opinions on unrelated issues would also mislead the jury and confuse the issues. *See* Fed. R. Evid. 403. This Court foresaw the "danger of re-litigating the McIntosh homeowner's claim (which has been settled to the McIntosh's satisfaction) when it is the flood claim on which this False Claims Act action is based." ([274] at 2.) The Rigsbys' attempt to reopen issues from *McIntosh* should be rejected, and Mr. Fey's opinions as to the adjustment of the McIntosh homeowners claim should be excluded.

## VIII.   MR. FEY'S LEGAL OPINIONS ARE IMPROPER AND SHOULD BE EXCLUDED

Mr. Fey also attempts to express opinions on questions of law, such as interpretations of homeowners and flood insurance contracts and provisions in the Code of Federal Regulations, the existence and scope of State Farm's legal duties, and whether those duties have been "breached." (Fey Rpt. [409-5] at 3-6; Fey Dep. at 74:24-75:8, 78:15-79:2, 157:23-158:10.) No such legal opinions are proper subjects for expert testimony and should be barred by this Court.

"On numerous occasions, this Court has excluded testimony and evidence that constitutes a legal conclusion and invades the province of the Court in instructing the jury," *Tab Indus., Inc. v. Nationwide Mut. Ins. Co.*, 2009 WL 1938983, at *4 (S.D. Miss. July 6, 2009) (Senter, J.), including "independent expert testimony concerning the interpretation of policy provisions." *Tejedor v. State Farm Fire & Cas. Co.*, 2007 WL 162180, *1 (S.D. Miss. Jan. 16, 2007) (Senter, J.); *accord Payment v. State Farm Fire & Cas. Co.*, 2008 WL 5381925, at *3 (S.D. Miss. Dec. 18 2008) (Senter, J.); *Medical Plaza, LLC v. U.S. Fid. & Guar. Co.*, 2008 WL 4446524, at *2 (S.D. Miss. Sept. 22, 2008) (Senter, J.). Expert evidence is

16

also an impermissible legal opinion when it asserts "legal conclusions to be drawn from the evidence," *Old Line Life Ins. Co. v. Brooks*, 2007 WL 892448, at *8-9 (S.D. Miss. Mar. 21, 2007) (applying *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)), including whether a defendant has complied with federal statues or regulations, *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 - 14 (D.C. Cir. 1997); *In re Midland Enters., Inc.*, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002), acted reasonably or in bad faith when adjusting an insurance claim, *Adams v. UNUM Life Ins. Co. of Am.*, 2005 WL 2030840, at *31 (S.D. Tex. Aug. 23, 2005); *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1105 (D. Ariz. 2003), or "breached" legal duties, *see, e.g.*, *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Yet Mr. Fey improperly discusses all of these things in his opinion.

An expert like Mr. Fey whose opinions project a particular "understanding of the law" not only invades the province of the Court to instruct the jury on the governing law, *Burkhart*, 112 F.3d at 1213; *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985), but also reduces the expert to "nothing more than an advocate … before the jury." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986). Expert testimony of this kind must be barred.

## CONCLUSION

For the foregoing reasons, State Farm respectfully urges this Court to grant its motion and exclude Mr. Fey's testimony in its entirety.

This the 26th day of July, 2010.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:     /s/ E. Barney Robinson III (MSB #09432)
        Robert C. Galloway (MSB # 4388)
        Jeffrey A. Walker (MSB # 6879)
        E. Barney Robinson III (MSB #09432)
        Benjamin M. Watson (MSB # 100078)

ITS ATTORNEYS

17

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) bob.galloway@butlersnow.com
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com

Michael B. Beers (ASB-4992-S80M)
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988, Suite 100
250 Commerce Street (36104)
Montgomery, Alabama  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

<u>**CERTIFICATE OF SERVICE**</u>

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

C. Maison Heidelberg
Ginny Y. Kennedy
**MAISON HEIDELBERG P.A.**
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
**GILBERT LLP**
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) gilberts@gotofirm.com
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441

ATTORNEY FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

This the 26th day of July, 2010.

/s/ E. Barney Robinson III (MSB #09432)
E. Barney Robinson III (MSB #09432)