IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS

v.                                              CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY    DEFENDANT/COUNTER-PLAINTIFF
and

FORENSIC ANALYSIS ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                        DEFENDANTS

### STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS ON PRIVILEGE LOG OR ALTERNATIVELY FOR *IN CAMERA* REVIEW

*EXPEDITED CONSIDERATION REQUESTED, Miss. Unif. L.R. 7(b)(8)*

Robert C. Galloway (MSB #4388)
Jeffrey A. Walker (MSB #6879)
E. Barney Robinson III (MSB #09432)
Benjamin M. Watson (MSB #100078)
Amanda B. Barbour (MSB #99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988, Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

Defendant/Counter-Plaintiff State Farm Fire and Casualty Company ("State Farm") files this Memorandum in Support of its Motion to Compel Production of Documents on Privilege Log or Alternatively for *In Camera* Review, and states as follows:

## 1.     <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

The history of this dispute is simple and straightforward.

On July 1, 2010, the Court granted in part State Farm's motion to compel production of documents (Doc. 593) subpoenaed from the Katrina Litigation Group ("KLG") and Don Barrett. (Doc. 667.)  The KLG is a successor of sorts to the Scruggs Katrina Group ("SKG").  Don Barrett and/or his law firm was a member of SKG and is a member of KLG.  The Court disqualified these attorneys, and others associated with them, from representing the plaintiffs in this action, based on improper conduct concerning the Rigsby sisters, including compensating them as "consultants."

The Court ordered the production of requested documents about the compensation (in all of its multiple forms) by KLG of the Rigsbys, communications with Brian Ford and communications with the media.  The July 1, 2010 order specifically mentions the Court's prior discovery rulings that communications with Ford were not privileged, the compensation of the Rigsbys was not privileged and communications with the media were not privileged.  (Doc. 490; Docs. 563, 1194, *McIntosh v. State Farm*, Civ. A. No. 1:06cv1080.)

KLG and Barrett asserted that responsive documents have been moved from firm to firm and should be sought elsewhere, an unsuccessful shell game which this Court did not accept.  The latest dilatory tactic of the former Rigsby lawyers is to claim the responsive documents may be shielded from view under the work product doctrine, no doubt because the Court has rejected the claims of

attorney-client privilege.  Further, objections continue to be interposed based on the attorney client

privilege, contrary to the rulings of this Court.

## CURRENT ISSUE

Though some documents have been produced per the Court's order, thousands of documents

have been  improperly withheld, as shown by the lengthy log of withheld documents served by KLG

and Barrett on July 21, 2010.  (*See* Exhibit 1, Privilege Log.)  This motion challenges these

assertions of work product (and attorney client privilege) which are interposed as reasons for not

producing documents ordered to be produced by the Court.  These very same objections have been

previously asserted, overruled by this Court and been the subject of repeated orders compelling

production.  Apparently, KLG and Barrett will not appropriately respond unless they receive yet

another order of this Court compelling them to produce clearly discoverable and non-privileged

documents.

As a threshold issue, KLG's privilege log is grossly inadequate.  In order to claim the

protection of the work product doctrine, a party must produce a privilege log that contains sufficient

information that would allow a court or party to assess the applicability of the privilege or protection.

 Fed. R. Civ. P. 26(b)(5).  "The standard for testing the adequacy of the privilege log is whether, ***as

to each document***, the entry sets forth facts that would suffice to establish each element of the

privilege or immunity that is claimed. ***The focus is on the specific descriptive portion of the log,

and not on conclusory invocations of the privilege or work-product rule, since the burden of the

party withholding documents cannot be discharged by mere conclusory assertions***. *Chemtech

Royalty Assoc., L.P. v. United States*, 2009 WL 854358, at *3. (M.D. La., 2009) (emphasis added;

citations and internal quotation marks omitted).  Indeed, the hallmark of a proper privilege log is that

it provides "a specific explanation of why the document is privileged." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). Thus, a party must describe those documents it contends are privileged to the best of its ability, even if doing so is difficult to do without revealing the confidential nature of the documents. *Estate of Manship v. United States*, 232 F.R.D. 552, 561 (M.D. La. 2005). Where, as here, the descriptions in the privilege log fail to meet this standard, "'then disclosure is an appropriate sanction.'" *Chemtech Royalty Assoc.*, 2009 WL 854358, at *3 (citation omitted). Examples of vague and inadequate entries include "email re: Cori and Kerri Rigsby-Zuckerman Spaeder Agreement" (Exh. 1, p. 5, 9/26/07); and "email re Rigsby Expense." (Exh. 1, p. 6, 11/16/07.)

But even KLG's cursory entries demonstrate that these doctrines are being abused. Considering the well-known sordid history of misconduct by principals of these law firms and law groups, including lack of compliance with discovery requests and related Court orders (and similar discovery misbehavior by the Rigsbys), the claims of work product and privilege ring hollow and warrant strict scrutiny. State Farm seeks the production of these documents or alternatively an *in camera* review by the Court in order to test the reasons asserted for withholding responsive information.

Despite repeated orders that the material is discoverable, the documents being withheld concern the Rigsbys' compensation, Brian Ford, and media contacts, matching the categories of information repeatedly ordered to be produced. These categories are described in sections 3-5 below, but some entries deserve immediate mention.

The log contradicts the Rigsbys' sworn statements that they did not meet with Dickie Scruggs until February 2006, and that they did not contact Scruggs or any of the affiliated law firms or legal

groups prior to that date.  The privilege log at page 7, first entry dated January 7, 2008, regarding document KLG-1259, identifies an e-mail about "documents sent to Rigsbys in Dec. 2005 re: Pontius v. State Farm."  (Privilege Log, Ex. 1) (emphasis added).  Plainly, the Rigsbys and Scruggs and/or lawyers affiliated with Scruggs, SKG, and/or KLG were communicating in December 2005.  This timeframe set out on the privilege log is consistent with Dickie Scruggs' boasting – not coincidentally also in December 2005 – about two "insiders" who he was using to procure confidential information about policyholders and their claims.  No "insiders" other than the Rigsbys have ever presented themselves in this matter.

This e-mail must be produced.  The Rigsbys have never claimed that they had any lawyers representing them in December 2005.  Their testimony is unambiguous:  They did not retain Scruggs et al. until February 2006 at the earliest.

On its face, the first of the numerous entries dated August 7, 2007, describes a document which is not work product and which appears to not be confidential in the first instance.  The entry states "email re: letter to Jack Held (recently Cori cleaned garage) Aug. 6, 2007 document."  Jack Held is an attorney who represented Renfroe, the Rigsbys' former employer, in the Alabama action against the Rigsbys.  The correspondence to Mr. Held is not work product.  Mr. Held was counsel for the Rigsbys' adversary.  An e-mail simply forwarding the letter along is not work product.

The abuse of the work product protection and attorney client privilege is also demonstrated by the attempt to keep secret documents about the Maria Brown litigation, in which the KLG was accused of wrongdoing with respect to litigation against State Farm.  A January 9, 2008 entry (KLG-001266) identifies an e-mail from an attorney with the Brunini Law Firm to Meg McAlister about the

Rigsbys' attorneys' request to interview Derek Wyatt. This is not protected by the work product doctrine, as claimed.

Sections 3-5 below categorize improperly withheld documents listed on the log and demonstrate that the material is inappropriately withheld. For the convenience of the Court, a version of the log, sorted to be in chronological order, is attached as Exhibit 2 to State Farm's Motion.

## 2. THE COURT IS EMPOWERED TO CONDUCT AN *IN CAMERA* REVIEW OF CLAIMED WORK PRODUCT

Work product protection under the Federal Rules of Civil Procedure, Rule 26(b)(3) applies to "documents and tangible things that are prepared in anticipation of litigation or for trial" by or on behalf of a party. Fed. R. Civ. P. 26(b)(3)(A). KLG is seemingly claiming that the material withheld as work product is attorney work product. There is no assertion that the material constitutes opinion work product.

It is well established that protection for work product is qualified and is not absolute. Fed. R. Civ. P. 26(b)(3)(A)(ii). The material sought to be protected as work product is required to be confidential. *See Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 418-420 (N.D. Cal. 1994) (disclosure of purported work product waives protection). District courts are empowered to conduct *in camera* inspections of material claimed to be work product (or attorney client privileged). *American Nat'l Bank & Trust Co. of Chic. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 880 n.7 (7th Cir. 2005); *In re Grand Jury Subpoena* (5th Cir. 1999) 190 F.3d 375, 387-388.

6

3.    **THE RIGSBY COMPENSATION INFORMATION IS IMPROPERLY**
      **WITHHELD**

The log displays several categories of e-mail or other information which simply are not protected work product or attorney client privileged material.  Many of the descriptions of the withheld e-mail show that the communications were about the compensation to the Rigsbys.

The Rigsbys were compensated supposedly as consultants to SKG and KLG.  While it is true that those entities may have also represented the Rigsbys as attorneys, until being disqualified (and later as to some lawyers incarcerated), this Court has ruled that not every communication between the Rigsbys and KLG and SKG was protected by the attorney client privilege.  (Doc. 490; Doc. Nos. 563, 1194 in *McIntosh* case.)  As paid consultants (for in essence "no show" jobs), the Rigsbys= relationship with these entities is that of employer-employee, not attorney-client.

The Court has succinctly ruled in a prior order:

> The Court expressly holds that SKG=s taking on representation of the Rigsbys, hiring them as Alitigation consultants,@ and filing the qui tam lawsuit on their behalf should not, and will not, be allowed to transform everything they learned and the things they physically took from their employer into privileged information available only to SKG as their attorney and/or present employer. In defending itself in the present action, State Farm may fully explore the Rigsbys= knowledge of the McIntosh case and pertinent documents gained through their employment relationship with Renfroe/State Farm. (Doc. 563, *McIntosh v. State Farm*.)

The Court has also repeatedly ruled that the compensation of the Rigsbys is discoverable because it relates to bias and credibility.  The form the compensation took extended beyond $150,000 per year for consulting services and also consisted of airplane travel, hotel rooms, and the

payment of attorneys' fees in seven-figure amounts for several lawsuits [and payment of a settlement of the Renfroe case]. Nonetheless, the log plainly indicates that KLG has claimed work product protection over communications about payment of the Rigsbys' legal fees. And the log also indicates that KLG inexplicably persists in asserting that the compensation of the Rigsbys is protected by the attorney-client privilege. (*See* entries dated 9/26/07, regarding documents KLG-001160, KLG-001161, KLG-001162; *see also* entry dated 9/27/07 regarding KLG-001163-1164.) Internal communication about the facts of the Rigsbys' compensation is not privileged, or subject to protection as work product. In an effort to point the Court to the dozens of entries on the log which contain descriptions of documents about the Rigsbys' compensation, State Farm has highlighted in yellow on Exhibit 2, the entries which have descriptions relating to the compensation of the Rigsbys.

Further, there are two entries dated 9/29/06 which are described as *faxed letters* between Dick Scruggs and Meg McAlister "re: the Rigsbys sisters' compensation." (KLG-000008, 000410-413.) This description does not establish that there is any work product protection over the information. Instead, the documents seem to be non-confidential letters about a discoverable topic, the sisters= payment by the involved lawyers or groupings of lawyers.

There are numerous e-mails about a "deal with Rigsby lawyers to reduce fees." (*See* Exh. 1, p. 10, entries dated 3/27/08 to 3/31/08.) These attempts to arrange the reduction of the Zuckerman Spaeder fees are not privileged or work product protected based on the description.

Dozens of entries on pp. 10-13 (Exh. 1) also contain descriptions relating to the payment of legal fees on behalf of the Rigsbys. This includes numerous entries with such descriptions as "Payments to the Rigsby Sisters" and "Rigsby sister defense costs." The following examples are reproduced from Exhibit 1:

8

| 3/27/2008 | Don Barrett | Sparky Lovelace, John Crongeyer, Alex Peet, David McMullan, Richard Barrett and other KLG counsel and staff recipients | email re: Deal with Rigsby lawyers to reduce fees | work product |
|---|---|---|---|---|
| 3/27/2008 | David McCarty | Don Barrett, Sparky Lovelace, John Crongeyer, Alex Peet, David McMullan, Richard Barrett and other KLG counsel and staff recipients | email re: Deal with Rigsby lawyers to reduce fees | work product |
| 3/27/2008 | Charles Barrett | David McCarty | email re: Deal with Rigsby lawyers to reduce fees | work product |
| 3/31/2008 | Derek Wyatt | David McCarty, Don Barrett, Sparky Lovelace and other KLG counsel and staff recipients | email re: Deal with Rigsby lawyers to reduce fees | work product |
| 3/31/2008 | Meg McAlister | Derek Wyatt, David McCarty, Don Barrett, Sparky Lovelace and other KLG counsel and staff recipients | email re: Deal with Rigsby lawyers to reduce fees | work product |
| 4/23/2008 | Meg McAlister | Derek Wyatt, Beth Clatworthy, Renee Hitt | Email re: Rigsby Sisters Contacts | work product; confidential MS Bar proceeding |
| 4/29/2008 | David McMullan | Meg Mcalister, Don Barrett, Sparky Lovelace | email re: Rigsby Sisters' defense costs | Work product; confidential MS Bar proceeding |
| 4/29/2008 | Meg McAlister | David McMullan, Don Barrett, Sparky Lovelace, Derek Wyatt and other KLG staff recipients | email re: Rigsby Sisters' defense costs | work product; confidential MS Bar proceeding |
| 5/14/2008 | Derek Wyatt | Melinda Gantt | email re: Payments to the Rigsby sisters | work product: confidential MS Bar proceeding |

These topics are precisely what the Court over and over again ruled to be discoverable. The latest attempted tactic of trying to obstruct and block efforts to obtain relevant information, by improperly interjecting the work product doctrine, after the rejection of all previous advanced reasons, should not be countenanced by the Court. As mentioned, these entries are highlighted in yellow in Exhibit 2 for the Court's comments. State Farm requests that the Court review the withheld material *in camera* so that these assertions are tested by someone other than the author of the log.

**4.      BRIAN FORD DOCUMENTS ARE NOT PROTECTED FROM DISCLOSURE**

Another category of documents on the log that is not properly characterized as work product are the e-mail exchanges between Derek Wyatt and Brian Ford. (*See* Exh. 1, p. 12, KLG 001643, 1649, 1651, 1652, 1666, 1667-1668, 1673.) The Court's July 1, 2010 order granting to motion to compel provides:

> State Farm seeks documents concerning communications to with Brian Ford. Given Ford's central role in the McIntosh claim, and his communications with attorneys connected to KLG, the court finds that this document request is reasonably calculated to lead to the discovery of admissible evidence. (Doc. 667.)

Flouting the order, the privilege log reveals that numerous e-mails about this topic have been withheld. For example, the following entries, going to the heart of the Ford materials which the Court found to be discoverable, demonstrate that the documents described as follows have been withheld:

1.      "Email re: Brian Ford Consulting";

2.      "Email re: McIntosh, Brian Ford Consulting"; and

3.      "Email re: Mullins v. State Farm, Brian Ford Consulting." (See Exh. 2, pp. 1-2.)

For the convenience of the Court, the Brian Ford entries are highlighted in blue on Exhibit 2.

Curiously, KLG/Barrett have produced some but not all of these communications. State Farm is entitled to see for itself these other communications or alternatively to have the Court scrutinize the reasons for attempting to shield these documents.

The evidence from Ford is that, though not for lack of trying, Ford was never officially retained by SKG or Scruggs or Wyatt or KLG as a consultant. Thus, no work product (or attorney client protection) ever attached to the e-mail communications listed on the log. The withholding of the information, as it is described in the privilege log, disregards the Court=s order granting the motion to compel. It is unclear what further information that KLG wants to shield from view by a belated and misbegotten claim of work product, but State Farm is entitled to see the document. Alternatively, State Farm requests that the Court review the withheld material *in camera* so that these assertions are tested by someone other than the author of the log.

## 5.   THE MEDIA COMMUNICATION E-MAILS HAVE BEEN IMPROPERLY WITHHELD

The order granting the motion to compel could not be more clear that information "concerning communications between KLG and the media . . . was deemed discoverable in the *McIntosh* lawsuit . . . [and] . . . in the present lawsuit." [Doc. 667.]

Despite that order, an e-mail dated May 1, 2007 (KLG-001008) about a TV spot is withheld from production. The document is or is about a contact with the media, as to which work product protection is claimed. Based on the limited description, the e-mail appears to be represented or relate to a contact with a third party and does not involve confidential subject matter (advertising). This is not protected as work product. And the entry dated May 7, 2007, KLG001015-1017, an e-mail from

Renee Hitt to Derek Wyatt and Meg McAlister, described as "email re Anti-mediation ad" also indicates that a communication regarding media has been withheld.  Communications with the media are not work product.

6.      **CONCLUSION**

State Farm believes that the thousands of e-mails on the log should be produced.  It is plainly reasonable to question non-production of these e-mails, given the history of discovery misconduct of the involved attorneys, especially as regards their dealing with the Rigsbys, and by the Rigsbys themselves.  Alternatively, the Court should review the withheld material *in camera* in order to test the propriety of the objections.

This the 2nd day of August, 2010.

Respectfully submitted,
STATE FARM FIRE AND CASUALTY COMPANY

By:       s/*Benjamin M. Watson* (MSB #100078)
            Robert C. Galloway (MSB # 4388)
            Jeffrey A. Walker (MSB # 6879)
            E. Barney Robinson III (MSB #09432)
            Benjamin M. Watson (MSB #100078)
            Amanda B. Barbour (MSB # 99119)
            ITS ATTORNEYS

OF COUNSEL:
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS   39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

12

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M)(
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, Alabama 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303)
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, California  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, Benjamin M. Watson, one of the attorneys for State Farm Fire and Casualty Company, do

hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be

delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
maison@heidlebergpa.com
ginny@heidelbergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
gilberts@gotofirm.com
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409
(E) felicia.adams@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441
gholson@gbeolaw.com
wallace@gbeolaw.com

ATTORNEYS FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

THIS the 2nd day of August, 2010.

By:   s/*Benjamin M. Watson* (MSB #100078)
      Benjamin M. Watson (MSB #100078)

15

Jackson 5432028v1