**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.; CORI RIGSBY; AND KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE No. 1:06-cv-433-LTS-RHW |
| STATE FARM FIRE & CASUALTY COMPANY, et al. | DEFENDANTS/COUNTER-PLAINTIFFS |

**RELATORS' OPPOSITION TO
STATE FARM'S RENEWAL AND SUPPLEMENTATION OF ITS
MOTION TO EXCLUDE TESTIMONY OF DAVID J. FAVRE**

State Farm Fire & Casualty Company's ("State Farm") renewed and supplemented motion to exclude the testimony of the Rigsbys' expert witness, David J. Favre ("Favre"), raises no new issues and should be denied for the same reasons that this Court already denied several other State Farm motions to exclude.[1]

**I.   PRELIMINARY STATEMENT**

Even a cursory reading of Favre's report and deposition demonstrates that he prepared a highly detailed, carefully considered, line-by-line stick-build estimate matching precisely to the damaged items in the McIntosh home. Favre did what State Farm refused to do when adjusting this claim—he stick-built an estimate that accounted for all of the flood damage, and only the

---

[1] *See* Order, [720]. State Farm initially moved to exclude all testimony by Favre on May 6, 2009. *See* Defendants' Motion to Exclude All Testimony by David J. Favre and Memorandum in Support Thereof, [300] and [301]. Relators' prior opposition, [325], addressed State Farm's initial arguments, and Relators respectfully rely upon the grounds set forth in that opposition. State Farm's May 2009 motion was fully briefed, but the Court has not yet denied that motion.

On January 20, 2010, Favre submitted a revised expert report pursuant to the Court's Case Management Order, [365]. On July 26, 2010, State Farm renewed and "supplemented" its motion to exclude Favre's testimony. *See* State Farm's Renewal and Supplementation of Its Motion to Exclude the Rigsbys' Expert Witness David J. Favre, Ph.D. [706] (the "Supplementation"). In this Opposition, Relators address State Farm's Supplementation and identify additional reasons to deny the motion to exclude Favre's testimony.

flood damage. In contrast, State Farm chose instead to employ its Xact Total software to approximate the total value of a house somewhat like the McIntosh house, ignoring the actual flood damage to the home. Yet State Farm now argues that *Favre*'s estimate is wholly irrelevant and unreliable.

To the contrary, Favre's estimate is accurate, precise, and itemizes the actual damage to the McIntosh house using State Farm's own stick-build programming tools and pricing guides. Favre's report also relies upon objective, scientific, and accurate flood data to approximate the flood line in the McIntosh home. The McIntosh home sits 16.5 feet above sea level – State Farm's own experts established that fact, which is not in dispute. It is also undisputed that the Federal Emergency Management Agency ("FEMA") high-water mark on the neighboring Briscoe property, some 50 feet from the McIntosh home, is 18.6 feet above sea level. State Farm's expert, Dr. Robert Dean, included that information in his own report and testified about the reasonable reliability of FEMA high water marks:

> A: Following Hurricane Katrina, FEMA, the Federal Emergency Management Agency, initiated an effort to collect high-water marks; and these high-water marks were collected primarily by consulting companies but also by some -- at least one government agency. And basically what they do is they go out and they flag the high-water marks because they're, in a sense, perishable. If you don't find them early, they tend to degrade. And then following that flagging, they'll send in survey teams to determine the elevations of those high-water marks.
>
> …
>
> Q. Is this -- is this part of the information you used to determine the height of water at the McIntosh property?
>
> A. Yes.
>
> Q. Okay. So you would consider this to be reliable data?

A.   Reasonably so.  Reasonably so.[2]

State Farm's summary dismissal of Favre's 2.1 foot approximation of the water line disregards the most reliable measurements available as to this home.  That is, the science credibly establishes an approximate 2.1 foot water line, and Favre correctly begins his analysis there.  If State Farm believes that the photos show additional damage, it should not summarily disregard the 2.1 foot line -- it should look instead for other possible alternate explanations for that higher damage.

Regardless, it also is unequivocally true that numerous photographs support a high water mark of less than three feet and that another expert certified as an NFIP flood adjuster testified that the high water mark in many of those photographs appears to be in the three-foot range.[3]  But more importantly, Favre testified that his estimate numbers would not change in any way unless the high water mark eclipsed four feet.

An objective juror who studies Favre's report and testimony would not summarily belittle it as State Farm does.  To the contrary, that juror may very well conclude that Favre's opinions are well grounded, based on reliable data, sensible, and well-reasoned.  A jury ultimately might decide, after weighing all of the available evidence, that Favre is wrong.  But it is not SF's prerogative to exclude any and all evidence that it simply does not like.

Likewise, State Farm cannot use the "repair costs" charged by Thomas McVadon as a proxy for the flood damage caused by Hurricane Katrina or a means to criticize the Favre Report.  McVadon himself admitted that he had no "opinion about whether the wind or the water . . . wracked the house," yet his testimony "attributed [the wracking damage] to the cost of what [he]

---

[2] Excerpt Depo. of Robert Dean dated June 10, 2010, at 41:9-42:2, attached as **Exhibit A** hereto**.**

[3] Excerpt of Depo. of Louis G. Fey, Jr. dated June 4, 2010, at 112:15-23, attached as **Exhibit B** hereto.

did to the first floor" as flood damage.[4] On that basis alone, McVadon's report is facially invalid and was properly disregarded by Favre. Moreover, McVadon's work significantly altered the McIntosh property from its pre-storm condition, and his costs were exorbitant. For all of those reasons, Favre properly disregarded State Farm's self-serving attempt to adopt the McVadon costs as a measure of flood damages.

## II.    ARGUMENT

### A.    Kerri Rigsby's Deposition Testimony Does Not Preclude Favre's Analysis

As a threshold matter, State Farm argues that statements made by Kerri Rigsby in a deposition demonstrate that it lacked the scienter necessary to commit fraud.[5] This Court already has implicitly rejected that argument; State Farm made the same threshold argument in its unsuccessful motions to exclude Drs. Fitzpatrick and Blackwell.[6] Likewise, the Court should reject State Farm's argument here for the same reasons.[7]

### B.    State Farm Cannot Use Its Contested Waterline to Exclude Favre

State Farm's supplementation again relies in large part on pictures and testimony that, it contends, invalidates Favre's use of a 2.1' waterline in the McIntosh home.[8] As detailed in Relators' earlier opposition, however, the evidence for that waterline comes from State Farm's own experts and the federal government. Moreover, although Favre relied on the 2.1' waterline established by objective and measured evidence, his report provided for the replacement of

---

[4] Excerpt of Depo. of Thomas McVadon dated April 6, 2010, at 23:2-5; 25:12-28:8, attached as **Exhibit C** hereto.

[5] State Farm's Memorandum in Support of Its Motion to Exclude All Testimony by David J. Favre, [301] at 6 (citing *U.S. ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008).

[6] Order, [720].

[7] *See*, e.g., Relators' Opp. to Motion to Exclude Testimony of David J. Favre, [325], at 5-6. Relators' rebuttal in section II.B. of that Opposition is incorporated here by reference to the extent that this Court's August 4 Order does not represent the law of the case regarding State Farm's argument.

[8] *See* Supplementation at 2-5.

everything damaged by water within four feet of the floor pursuant to standard insurance adjusting practices.[9]

State Farm has not identified—and cannot identify—any better waterline; its own evidence suggests that the water might have ranged between three feet and five and a half feet, but the pictures, witnesses, and past claims disagree with themselves and each other.[10]

The wide disparity among even State Farm's own factual allegations highlights the role that must be played by the jury as finder of fact in determining who and what to believe.[11]

### C. The McVadon "Repair Costs" Do Not Represent Flood Damage

State Farm also suggests that Favre should have used the exceptionally high prices charged by Robert McVadon as evidence of the "actual costs" to repair the flood damage to the McIntosh home. But McVadon's report does no such thing. Instead, McVadon aggregated the entire cost of the repairs to the first floor and simply assumed that the number represented flood damage. That assumption was obviously wrong. For example, the McVadon report claims that the flood damaged items, such as crown molding and upper cabinets, that were located well above even State Farm's purported flood line.[12]

---

[9] Drywall typically is sold in four-foot-long sections. Although the evidence demonstrates that only two feet of flood water reached the McIntosh property, an entire four-foot-long section of drywall still would have to have been replaced. *See* Excerpt of Depo. of David J. Favre, dated June 2, 2010, at 43:11-44:5, attached as **Exhibit D** hereto.

[10] *Compare, e.g.,* Renewed and Supplemented Mot. at ¶ 6 (quoting Depo. of Robert J. McVadon, but omitting full context of remarks, in which the witness testified that water might have been "four to five feet, I guess. I don't know exactly. I never measured[.]"), *with* ¶ 12 (citing claim of rubmarks at "3.8 feet" and showing unmeasured pictures showing damage significantly less than half the distance to the ceiling).

State Farm's expert inserted what it contends are height measurements into other pictures, but chose not to do so for evidence that obviously does not support its 5' waterline.

[11] *See 14.38 Acres of Land*, 80 F.3d at 1077.

[12] Excerpt of Favre Depo. at 96:16-97:3.

Moreover, as McVadon himself testified, he never considered the possibility that wind damaged the home before the flood water reached it.[13] He knew that the primary "[e]xterior wall on the southeast corner that fronted the brunt of the water and the wind [was completely destroyed . . . All I know, the house was wracked, meaning out of alignment."[14] Dr. Sinno's testimony indicates that the wracking could only have been caused by wind.[15] Yet even though McVadon admitted that he had no "opinion about whether the wind or the water . . . wracked the house," his testimony "attributed [the wracking damage] to the cost of what [he] did to the first floor" as flood damage.[16] As a result of these manifest errors, McVadon's report is useless as an estimate of the cost of flood damage, and Favre appropriately disregarded it. Indeed, given McVadon's own admission that he has no training as a flood adjuster and made no effort to differentiate between wind and water damage, this Court appropriately could strike McVadon's entire report.

Since McVadon's numbers do not competently report flood damage, Favre appropriately considered and disregarded them. Favre also noted, however, that the amounts charged were "exorbitant."[17] McVadon billed almost a million dollars to remodel a 2500-square foot home; his numbers not only do not represent *flood* damage; in all likelihood, they do not represent *actual* damage or the cost to repair the McIntosh house that would have been covered by any

---

[13] Excerpt of McVadon Depo. at 22:3-5.

[14] *Id.* at 21:19-22:3-5.

[15] *See* Report of Dr. R. Ralph Sinno, dated Jan. 29, 2010, at 18-19, [409-9]).

[16] Excerpt of McVadon Depo. at 23:2-5; 25:12-28:8.

[17] Excerpt of Favre Depo. at 95:8-96:1.

6

insurance policy.[18]  McVadon's individual item costs, like his fatally flawed analysis of the causes of damage, do not represent an appropriate basis to calculate flood damage.

In any event, the McVadon testimony is, at most, simply an alternative opinion that the jury will have to weigh when it makes its determination of which opinions to accept and which to reject.  But, that kind of weighing of alternative, inconsistent expert opinions is a jury function, not a matter properly decided by motion to exclude testimony.

## III.    CONCLUSION

Favre's testimony is directly relevant to the damage sustained by the McIntosh house. State Farm's attempt to exclude that testimony on the basis of contested facts should be denied.

THIS the 12th of August, 2010                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ C. Maison Heidelberg
　　　　　　　　　　　　　　　　　　　　　　　　　　　C. MAISON HEIDELBERG, MB #9559
　　　　　　　　　　　　　　　　　　　　　　　　　　　GINNY Y. KENNEDY, MB #102199

OF COUNSEL                                                  Attorneys for Cori Rigsby and Kerri Rigsby
August J. Matteis, Jr. (*admitted pro hac vice*)   HEIDELBERG HARMON PLLC
Craig J. Litherland (*admitted pro hac vice*)      795 Woodlands Parkway, Suite 220
Benjamin Davidson (*admitted pro hac vice*)   Ridgeland, Mississippi 39157
Derek Sugimura (*admitted pro hac vice*)        Phone No.         (601) 351-3333
GILBERT LLP                                                 Fax No.             (601) 956-2090
1100 New York Avenue NW, Suite 700           mheidelberg@heidelbergharmon.com
Washington, DC 20005
Phone No.      (202) 772-2200
Fax No.          (202) 772-3333
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com
sugimurad@gotofirm.com

　　　　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Kerri Rigsby and Cori Rigsby

---

[18] State Farm suggests that "amount the McIntoshes actually spent on covered flood repairs is more than 360% greater than Mr. Favre's theoretical estimate" and that "[t]he McIntoshes had no incentive to inflate their actual flood repair costs because they were not reimbursed under the flood policy for any amount above the $250,000 limit."  Supplementation at 6.  But that circular argument simply begs the question and assumes that McVadon's report is in some way a competent estimate of the flood damage.  As noted above, it is not; it is simply the total cost to repair the McIntosh house.

**CERTIFICATE OF SERVICE**

  I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this day caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

    Don Burkhalter, Esq.
    UNITED STATES ATTORNEY
     FOR MISSISSIPPI
    188 East Capitol Street, Suite 500
    Jackson, MS 39201

    Felicia Adams, Esq.
    ASSISTANT U.S. ATTORNEY
    188 East Capitol Street, Suite 500
    Jackson, MS 39201

    Joyce R. Branda, Esq.
    Patricia R. Davis, Esq.
    Jay D. Majors, Esq.
    UNITED STATES DEPARTMENT OF JUSTICE
    Commercial Litigation Branch
    Civil Division
    601 D Street, NW
    Washington, DC 20004

    Larry G. Canada, Esq.
    Kathryn Breard Platt, Esq.
    Galloway, Johnson, Tompkins, Burr & Smith
    701 Poydras Street, Suite 4040
    New Orleans, LA 70139
    (p) 504-525-6802
    ATTORNEYS FOR HAAG ENGINEERING CO.

    Robert C. Galloway, Esq.
    Emerson Barney Robinson, III, Esq.
    Benjamin M. Watson, Esq.
    Jeffrey A. Walker, Esq.
    Amanda B. Barbour, Esq.
    BUTLER, SNOW, O'MARA,
     STEVENS & CANNADA, PLLC
    P.O. Box 22567
    Jackson, MS 39225
    (p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON
   PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM FIRE & CASUALTY
INSURANCE COMPANY


/s/     C. Maison Heidelberg___