**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

UNITED STATES OF AMERICA ex rel.;
   CORI RIGSBY; AND KERRI RIGSBY     RELATORS/COUNTER-DEFENDANTS

v.                                   CASE No. 1:06-cv-433-LTS-RHW

STATE FARM FIRE & CASUALTY
   COMPANY, et al.               DEFENDANTS/COUNTER-PLAINTIFFS

**RELATORS' OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE THE RIGSBYS' EXPERT WITNESS JOHN A. FOWLER, P.E.**

      Cori and Kerri Rigsby ("Relators" or the "Rigsbys") respectfully submit this Opposition

to State Farm Fire & Casualty Company's ("State Farm") Motion to Exclude the Rigsbys' Expert

Witness John A. Fowler, P.E. [707] (the "Motion") and State Farm's Memorandum in Support of

Its Motion [708] (the "Memorandum").

**I.      PRELIMINARY STATEMENT**

      In its Order dated August 4, 2010, this Court already denied two of State Farm's motions

to exclude all of Relators' experts because those experts' proferred reports and testimony

addressed Hurricane Katrina's dynamics and were thus relevant to the issues in the case.[1]  John

A. Fowler, P.E. ("Fowler") inspected the Mucha property shortly after Hurricane Katrina.  The

Mucha house stood two doors down the street from the McIntosh property, and Fowler's

investigation and report determined that Hurricane Katrina's winds had destroyed the house.

Thus, Fowler's testimony provides evidence that winds strong enough to destroy houses

occurred in the immediate vicinity of the McIntosh property during Hurricane Katrina.  Fowler's

testimony also provides a conclusive rebuttal to State Farm's key witnesses, who claimed that

---

[1] [720]

Katrina's "winds that occurred on the coast were not blowing hard enough to blow a house down" and "not significant."[2]  Accordingly, his testimony will be directly relevant to the forces that acted on the McIntosh house.  This Court already has recognized the relevance and admissibility of similar testimony from Drs. Blackwell and Fitzpatrick when it denied State Farm's motions to exclude their testimony.[3]

## II.    ARGUMENT

### A.    Standard of Admissibility For Expert Testimony

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence."[4]  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 codifies *Daubert*'s two-step inquiry requiring expert testimony to be "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[5]

While the Court has "wide discretion" in determining the admissibility of expert testimony, "rejection of expert testimony is the exception rather than the rule."[6]  Rule 702 "is not intended to provide an excuse for an automatic challenge to the testimony of every expert."[7]

---

[2] Excerpt of Depo. of Alexis King dated May 5, 2009 (the "King Depo.") , at 178:23-179:9 attached as **Exhibit A** hereto; Excerpt of Depo. of David Randel dated June 23, 2010 (the "Randel Depo."), at 34:25-35:7 attached as **Exhibit B** hereto.

[3] Order, [720]

[4] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998).

[5] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

Relators bear the burden of proving the admissibility of Fowler's testimony, but they "do not have to demonstrate . . . that the assessments of their experts are correct."[8]   They need only "demonstrate by a preponderance of evidence that their [expert's] opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness."[9]

Finally, the determination of this Court is not meant to "replace the traditional adversary system and the place of the jury within the system."[10]  When setting forth the *Daubert* test, the Supreme Court recognized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[11]  The United States Court of Appeals for the Fifth Circuit also has recognized that cross-examination is the appropriate place to challenge the bases of an expert's opinion in finding that a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[12]

---

[6] Fed. R. Evid. 702 advisory committee's note (2000).

[7] *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), for the proposition that a court can "avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted . . .").

[8] *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

[9] *Id.*

[10] *Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07-4393, 2009 WL 411459 at *3 (E.D. La. Feb. 17, 2009) (internal citation and quotation omitted).

[11] *Daubert*, 509 U.S. at 596.

[12] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (hereinafter *14.38 Acres of Land*).

**B.      Kerri Rigsby's Deposition Testimony Does Not Preclude Fowler's Analysis**

As a threshold matter, State Farm argues that statements made by Kerri Rigsby in a deposition demonstrate that it lacked the scienter necessary to commit fraud.[13]  This Court already has implicitly rejected that argument; State Farm made the same threshold argument in its unsuccessful motions to exclude Drs. Fitzpatrick and Blackwell.[14]  Likewise, the Court should reject State Farm's argument here for the same reasons.[15]

**C.      Fowler Meets the Requirements of Rule 702**

To meet the requirements of Rule 702, Fowler must be qualified to testify, and his testimony must be (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) rest on a reliable application of methods to facts of the case.  Fowler's testimony meets all of these requirements.

**1.      Fowler is a Qualified Witness**

Fowler has over 27 years of experience in evaluation and design for all types of buildings and industrial and commercial construction.[16]  He is a licensed Professional Engineer in Alabama, Florida, Mississippi, and several other states, with extensive post-graduate education.[17]  He inspected a number of houses after Hurricane Katrina, including several houses in the McIntoshes' neighborhood and has served as an expert witness in other matters.[18]

---

[13] Mem. at 5-6 (citing *U.S. ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008).

[14] Order, [720].

[15] *See*, *e.g.*, Relators' Opp. to Defs. Mot. to Exclude All Testimony of David J. Favre, [323], at 5-6.  Relators' rebuttal in section II.B. of that Opposition is incorporated here by reference to the extent that this Court's August 4 Order does not already represent the law of the case denying State Farm's argument.

[16] Expert Report of John A Fowler, P.E., dated Jan. 29, 2010, [409-7], at 11.

[17] *Id*.; Excerpt of Depo. of John A. Fowler, P.E. dated June 3, 2010 (the "Fowler Depo"), at 93:8-94:1, attached as **Exhibit C** hereto.

[18] Fowler Depo. at 16:18-17:14; Fowler Report at p. 1 of third attachment thereto.

### 2.    Fowler's Report is Based on Sufficient Facts and Data

Fowler visited South Shore Drive and carefully inspected the Mucha property on February 22, 2006, while the damage from Hurricane Katrina still was visible.[19]  Fowler was the *only* engineer in this matter to do so.  Fowler then spoke to eyewitnesses, gathered meteorological data, and took pictures documenting his findings before his report, which described the pre-storm condition of the building, identified and classified the damage he saw, and gave the reasons for his conclusions.[20]  His work provided ample factual support for the expert opinions he provides in his report and testimony.

### D.    Fowler Reliably Applied His Methods to the Facts of the Case.

### 1.    Fowler's Opinion on the Mucha Property is Obviously Relevant to the Forces Acting on the Neighboring McIntosh Property.

State Farm suggests that the McIntosh property must be examined in a vacuum, and that the Court should completely disregard evidence of the force of Hurricane Katrina's winds.[21]  The Court already has rejected that argument; as it noted, the opinions of Drs. Fitzpatrick and Blackwell address "the storm's dynamics, the strength of the storm's forces and the timing of their effects on shore," all of which are relevant here.[22]  Fowler's report complements and confirms their analytical findings.

State Farm has argued that the McIntosh property did not suffer significant wind damage. But as Fowler's report conclusively demonstrates, the fierce winds on South Shore Drive were

---

[19] Fowler Report at 2

[20] Fowler Report at 3-6.

[21] Mem. at 6-9.

[22] Order, [720], at *2.

more than adequate to inflict major damage on structures.[23]  On that basis alone, Fowler's report is relevant to the issues in this case.[24]

>    **2.   Testimony From State Farm Witnesses Also Makes Fowler's Opinion Relevant**

Fowler's testimony will also tend to disprove State Farm's assumption that wind could not possibly have caused significant damage during Hurricane Katrina, an assumption on which most of State Farm's claims adjustment rested.  Alexis King controlled State Farm's investigation and payment of  flood claims after Hurricane Katrina.  In "[King'] opinion . . . the wind that occurred on the coast were not blowing hard enough to blow a house down."[25]  That was her irrebuttable assumption when she ordered Forensic to reinspect the McIntosh property, fired Forensic after Brian Ford refused to change his conclusion, and uncritically accepted a new report with a changed conclusion.  Other State Farm employees had the same preconception.[26]

Fowler's independent evaluation of the Mucha property tends to prove that King's and State Farm's assumption was simply wrong.  As such, it is directly relevant to a jury's determination that State Farm was and is wrong about the causes of damage to the McIntosh home.

>    **3.   Fowler's Report Adequately Cites His Sources**

Finally, State Farm complains that Fowler did not adequately cite his sources.[27]  But Fowler's report does not rely on meteorological data; he primarily based his opinion on the *physical* damage he observed at the site of the Muchas' former house immediately after

---

[23] *See* Fowler Report at 5.

[24] *See* Order, [720], at *2.

[25] Ex. B (King Depo.).

[26] *See, e.g.,* Ex. C (Randel Depo.)

[27] Mem. at 12-13.

Hurricane Katrina and the corroborating eyewitness testimony provided by the homeowner.[28] Fowler saw damage that, in his opinion as a qualified professional engineer, could only have been caused by wind damage. Meteorological data only confirmed and supported the facts that he observed.

Moreover, State Farm's "argument" is a technical quibble with no real merit. There is no dispute that Hurricane Katrina's winds were very strong, and Fowler explained that "Hurricane Katrina with its 118 mph winds destroyed this house."[29] State Farm cannot seriously dispute that statement, since its own expert, Dr. Kurtis Gurley, provided a report stating that peak winds at the McIntosh house were "120 mph, *according to two independent, widely used, peer reviewed models that utilize all available and verified wind measurements*."[30] Thus, State Farm's own expert thinks that the winds were even *stronger* than Fowler stated. And as this Court itself has noted, Katrina's peak winds preceded the storm surge by several hours. Accordingly, Fowler's report rests on basic, uncontested meteorological facts already known about Hurricane Katrina.

### E. The Probative Value of Fowler's Report and Testimony Far Outweighs Any Prejudicial Effect

State Farm also complains that a jury might assign too much weight to Fowler's testimony.[31] As explained in above, a jury *should* assign significant weight to that testimony; it discredits significant elements of State Farm's defenses. That is not a basis to exclude it; it is a reason to *include* it. A defendant may not hide behind Rule 403 to escape evidence harmful to its defenses.[32]

---

[28] *See* Fowler Report at 5.

[29] *Id.*

[30] Expert Report of Kurtis R. Gurley, Ph.D., April 20, 2009, at 5 (exhibit A to [275]) (emphasis added).

[31] *See* Mem. at 11-12.

[32] *See, e.g., Dollar v. Long Mfg., N.C. Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) (Rule 403 can only exclude evidence

### III.    CONCLUSION

Fowler's testimony is directly relevant to the strength of the forces acting on the

McIntosh property and the validity of State Farm's assumptions when it adjusted the McIntosh

flood claim.  State Farm's efforts to suppress that evidence should be denied, and its motion

should be rejected.

THIS the 12th of August, 2010

Respectfully submitted,


  /s/ C. Maison Heidelberg
C. MAISON HEIDELBERG, MB #9559
GINNY Y. KENNEDY, MB #102199


OF COUNSEL                                                 Attorneys for Cori Rigsby and Kerri Rigsby
August J. Matteis, Jr. (*admitted pro hac vice*)           HEIDELBERG HARMON PLLC
Craig J. Litherland (*admitted pro hac vice*)              795 Woodlands Parkway, Suite 220
Benjamin Davidson (*admitted pro hac vice*)               Ridgeland, Mississippi 39157
Derek Sugimura (*admitted pro hac vice*)                  Phone No.       (601) 351-3333
GILBERT LLP                                                Fax No.          (601) 956-2090
1100 New York Avenue NW, Suite 700                         mheidelberg@heidelbergharmon.com
Washington, DC 20005
Phone No.       (202) 772-2200
Fax No.          (202) 772-3333
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com
sugimurad@gotofirm.com

Attorneys for Kerri Rigsby and Cori Rigsby

---

that is "unfair[ly]" prejudicial); *U.S. v. Murillo*, 288 F.3d 1126, 1137 (2d Cir. 2008) (prejudice must result in an
adverse impact beyond its tendency to prove the fact or issue that makes the evidence relevant in the first place).

## CERTIFICATE OF SERVICE

I, C. Maison Heidelberg, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this day caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

Don Burkhalter, Esq.
UNITED STATES ATTORNEY
  FOR MISSISSIPPI
188 East Capitol Street, Suite 500
Jackson, MS 39201

Felicia Adams, Esq.
ASSISTANT U.S. ATTORNEY
188 East Capitol Street, Suite 500
Jackson, MS 39201

Joyce R. Branda, Esq.
Patricia R. Davis, Esq.
Jay D. Majors, Esq.
UNITED STATES DEPARTMENT OF JUSTICE
Commercial Litigation Branch
Civil Division
601 D Street, NW
Washington, DC 20004

Larry G. Canada, Esq.
Kathryn Breard Platt, Esq.
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, LA 70139
(p) 504-525-6802
ATTORNEYS FOR HAAG ENGINEERING CO.

Robert C. Galloway, Esq.
Emerson Barney Robinson, III, Esq.
Benjamin M. Watson, Esq.
Jeffrey A. Walker, Esq.
Amanda B. Barbour, Esq.
BUTLER, SNOW, O'MARA,
    STEVENS & CANNADA, PLLC
P.O. Box 22567
Jackson, MS 39225
(p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON
  PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM FIRE & CASUALTY
INSURANCE COMPANY


/s/     C. Maison Heidelberg___