IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS

v.                                              CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY   DEFENDANT/COUNTER-PLAINTIFF

and

FORENSIC ANALYSIS ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                          DEFENDANTS

## DEFENDANT/COUNTER-PLAINTIFF
## STATE FARM FIRE AND CASUALTY COMPANY'S
## MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF CORI RIGSBY

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)
Amanda B. Barbour (MSB # 99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS 39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com


BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL 36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, CA 90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

As this Court has recognized, "a federal court has no jurisdiction to hear [a False Claims Act] action brought by a private citizen and based on publicly disclosed information unless the individual bringing the action, the relator, is the original source of the information on which the claim is based." ([343] at 2.)  In this False Claims Act case, Cori Rigsby alleges that State Farm defrauded the federal government by "misallocating" wind damage to the McIntosh property as flood damage.  Because "misallocation" charges were publicly levied against State Farm and other Write-Your-Own insurers shortly after Hurricane Katrina in civil complaints and Congressional hearings (and before Cori Rigsby learned about State Farm's supposed "misallocation" of McIntosh property damage from her sister, Kerri Rigsby), Cori Rigsby is required to prove, at the very least, that she is an "original source," i.e., that she has direct and independent knowledge of the supposed fraud in the McIntosh flood claim, on which this lawsuit is based.  She cannot.

At her recent deposition, Cori Rigsby made clear that she does ***not*** possess direct and independent knowledge regarding the McIntosh flood claim.  Time and again, she freely admitted:  "I don't have any firsthand knowledge."  (Ex. A, C. Rigsby Dep. at 11:7-25.)  The lack of firsthand knowledge regarding the McIntosh flood claim precludes Cori Rigsby from qualifying as an original source.  She therefore has no standing as a relator, and her claims must be dismissed as a matter of law.

## I.   CORI RIGSBY IS NOT AN ORIGINAL SOURCE OF THE MCINTOSH CLAIM

Under the False Claims Act ("FCA"), an "original source" is "someone who has 'direct and independent knowledge' of the allegations on which the FCA claim is premised."  ([343] at 4.) "'[D]irect' knowledge is obtained first hand, by the relator's own efforts rather than by the labor of others, and [is] not derivative of the information of others."  *United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400 (5th Cir. 2008) (citing *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs., Co.*, 336 F.3d 346, 355 (5th Cir. 2003)).  "[W]hen a relator's claim is based on knowledge received from other persons it is not direct and independent."  *Id.* at 400-01.  In this manner, the original source requirement precludes FCA lawsuits brought by individuals whose

knowledge was "'learned second-hand through the efforts of others.'"  *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177 (5th Cir. 2004) (quoting *Laird*, 336 F.3d at 355).

Cori Rigsby admittedly does not possess direct and independent firsthand information about the McIntosh flood claim.  Rather, her information is derivative of information she received from others.  Accordingly, she does not qualify as an original source and must be dismissed from this case.[1]

## A.  Cori Rigsby Admittedly Has No Firsthand Knowledge of the McIntosh Flood Claim

After the evidentiary hearing, this Court appeared skeptical as to whether Cori Rigsby – who did not take the stand at the hearing – could pass the original source test.

> I have heard no evidence, and I find no evidence in the record before me, to support the conclusion that Cori Rigsby qualifies as an "original source."  It appears to me Cori Rigsby's knowledge concerning the McIntosh claim was gained through her conversations with Kerri Rigsby.  In these circumstances, Cori Rigsby's knowledge is neither direct nor independent.

([343] at 4.)  The Court found that "there is a genuine issue of material fact concerning Cori Rigsby's standing as a Relator."  (*Id.*)  Nevertheless, the Court gave Cori Rigsby "the benefit of the doubt" and did not disqualify her as a relator "[a]t this juncture, on a motion for summary judgment, and a necessarily limited evidentiary record."  (*Id.*)

A much more robust record that has been developed in the year since the Court issued its post-hearing Order confirms that Cori Rigsby has no firsthand knowledge regarding anything having to do with the adjustment of the McIntosh flood claim.  At her June 25, 2010, deposition, Cori Rigsby made clear that she does not have "direct and independent knowledge" of the McIntosh claim.

> ➢ Cori Rigsby admits that she learned of the alleged fraud in the McIntosh flood claim from her sister, Kerri Rigsby.  (*See* Ex. A, C. Rigsby Dep. at 92:9-93:1, 96:22-97:6.)

> ➢ She admits that she never visited the McIntosh property.  (*See id.* at 9:21-10:8.)

---

[1] Although State Farm does not challenge in this motion this Court's earlier finding that Kerri Rigsby qualifies as an original source, it respectfully reserves all of its rights including appellate rights in this regard.

2

➢ She admits that she never spoke with Mr. McIntosh.  (*See id.* at 9:16-20.)

➢ She admits that she has no personal knowledge of Kerri Rigsby and Cody Perry's adjustment of the McIntosh flood claim.  (*See id.* at 8:17-9:5, 110:9-12.)

➢ She admits that she was not involved with the scoping or diagramming of the McIntosh home.  (*See id.* at 11:16-19.)

Indeed, Cori Rigsby repeatedly and freely admitted that she has no firsthand knowledge of the McIntosh claim.

➢ "I don't have any firsthand knowledge.  I wasn't there with [Kerri Rigsby and Cody Perry] during [the estimating] process."  (Ex. A, C. Rigsby Dep. at 11:20-25.)

➢ "I'm really not that familiar with the [McIntosh] claim . . . ."  (*Id.* at 97:14-22.)

➢ "I wasn't involved in the [adjusting] process when it originally occurred at all."  (*Id.* at 13:2-7.)

➢ "As far as firsthand knowledge of anything that was done and the decision making, the claims process, I don't have any firsthand knowledge."  (*Id.* at 13:9-19.)

➢ "I wasn't involved in the McIntosh claim at that time [when State Farm received the first engineering report on the McIntosh property]."  (*Id.* at 115:2-8.)

Because Cori Rigsby's knowledge of the McIntosh claim was "learned second-hand," she is not, by definition, an original source as to that claim.  *Reagan*, 384 F.3d at 177.

**B.    Kerri Rigsby's Purported Original Source Status Does Not Permit Cori Rigsby to Bypass The Original Source Requirement**

The FCA provides that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."   31 U.S.C. § 3730(e)(4)(A) (2006).[2]  In other words, "once information becomes public, only the Attorney General

---

[2] In 2009, Congress enacted certain amendments to the FCA.  While limited portions of the amendments applied retroactively, the substantive provisions affecting this lawsuit did not.  The Rigsbys' Amended Complaint alleges violation of the pre-amendment version of the FCA and has not been amended.  Accordingly, State Farm will cite to that pre-amendment version of the FCA, which controls this lawsuit.

and a relator who is an 'original source' of the information may represent the United States." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (quotation marks, citations omitted).

As a threshold matter, this inquiry is jurisdictional and must be established for ***each*** relator and ***each*** claim. As the party "invoking federal jurisdiction," Cori Rigsby has "the burden of proving its existence." *United States ex rel. Ward v. Commercial Metals Co.*, No. C-05-56, 2007 WL 1390612, at *9 n.7 (S.D. Tex. May 9, 2007) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). Moreover, "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984); *accord United States ex rel. Jamison v. McKesson Corp.*, No. 2:08CV214-SA-DAS, 2010 WL 1276712, at *1 (N.D. Miss. Mar. 25, 2010).

Although this Court gave Cori Rigsby the benefit of the doubt based on the limited evidentiary record then in existence, it is now beyond any genuine dispute, as evinced by her deposition testimony taken after the hearing, that she has no firsthand knowledge regarding the McIntosh flood claim – "anything that was done[,] the decision making, [or] the claims process" (Ex. A, C. Rigsby Dep. at 13:9-19) – and has no standing to represent the United States in this lawsuit.

The Fifth Circuit has recognized that each party in an FCA case must separately establish subject matter jurisdiction. In *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447 (5th Cir. 1995), the putative relator argued that its lack of direct and independent knowledge was of no consequence because jurisdiction was established by the United States' intervention. *See id.* at 452. Rejecting this argument, the Fifth Circuit recognized that the government's intervention "does not . . . confer subject matter jurisdiction over the relator's claims." *Id.*; *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 477 (2007) (rejecting argument that government's intervention "provided an independent basis of jurisdiction" and dispensed with need to qualify as an original source). Whatever status Kerri Rigsby

4

might possess as an original source "does not . . . confer subject matter jurisdiction over" Cori Rigsby's allegations.

To be sure, one relator's status as an original source does not provide umbrella jurisdiction over other putative relators who lack direct and independent knowledge. In *United States v. Rockwell International Corp.*, 730 F. Supp. 1031 (D. Colo. 1990), for example, two putative relators – an individual, David Navarette, and a non-profit corporation, Taxpayers Against Fraud ("TAF") – jointly brought a lawsuit under the FCA's *qui tam* provisions. *See id.* at 1032. Navarette had direct and independent knowledge of the alleged fraud. *See id.* at 1036. TAF did not. Rather, TAF "learned about the alleged wrongful activities . . . from the plaintiff Navarette." *Id.* Because "[o]nly the 'original source' can institute suit," the court held that "TAF is not a proper plaintiff under § 3730(e)(4)" and dismissed TAF from the lawsuit. *Id.* (citation omitted).

Similarly, the suit in *United States ex. rel. Hutcheson v. Blackstone Medical, Inc.*, 694 F. Supp. 2d 48 (D. Mass. 2010), was brought by two putative relators, Hutcheson and Brown. *See id.* at 51. The court held that Hutcheson, who had firsthand knowledge of the conduct alleged in the complaint, qualified as an original source, but dismissed Brown's claims because he could not independently establish that he was an original source. *Id.* at 60.

While, on a limited factual record, it previously appeared to this Court that "Cori Rigsby's knowledge concerning the McIntosh claim was gained through her conversations with Kerri Rigsby," ([343] at 4), given Cori Rigsby's recent deposition testimony, which now cements that conclusion, there can no longer be any "genuine issue of material fact concerning Cori Rigsby's standing as a Relator." (*Id.*) As she lacks direct and independent knowledge regarding the McIntosh claim, she does not qualify as an original source. Accordingly, the Court lacks subject matter jurisdiction over, and must dismiss, Cori Rigsby's FCA claims. *See Rockwell*, 549 U.S. at 475-76.

## II.   THE ORIGINAL SOURCE RULE APPLIES IN THIS CASE

This Court must reach the original source inquiry because this lawsuit is based upon public disclosures that were made by others long before this lawsuit was filed. *See* 31 U.S.C. § 3730(e)(4)(A) (2006). Citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), which concerned allegations that several physicians at a local hospital were fraudulently billing Medicare and Medicaid for services not performed, the Court suggested that this case might not be subject to the original source rule. (*See* [343] at 4.) But the original source rule was not implicated in *Grubbs* because there had been no public disclosure regarding anything having to do with the alleged fraud. *See Grubbs*, 565 F.3d at 194-95. Unlike *Grubbs*, the "flood fraud" alleged by Cori Rigsby in her Complaint had already been publicly disclosed by others in civil litigation and at Congressional hearings: (i) before Kerri Rigsby told Cori Rigsby anything about the McIntosh property; and (ii) several months before the Rigsbys filed this lawsuit.

The Fifth Circuit has repeatedly held that allegations in civil complaints constitute "public disclosures" under section 3730(e)(4)(A). *Reagan*, 384 F.3d at 174; *Fed. Recovery Servs.*, 72 F.3d at 450. This lawsuit was filed on April 26, 2006, and alleged that State Farm "made a corporate decision to misdirect and misallocate claims from those of hurricane coverage (which [it] would be required to pay from its reserves or reinsurance) to flood claims that could be submitted and paid directly from the United States Treasury." (Compl. [2], ¶ 33; Am. Compl. [16], ¶ 56.) But lawsuits making these precise allegations were already filed by other plaintiffs completely unrelated to the Rigsbys long before they filed this lawsuit.

For instance, on September 20, 2005 – less than a month after Katrina struck and many months before this lawsuit was filed – several plaintiffs filed a putative class action lawsuit alleging that State Farm, among other insurers, was engaged "[i]n an effort to save money and ***pass on the costs of the loss to the federal flood insurance program***," rather than making payments under homeowners insurance

6

policies. *See Cox v. Nationwide Mut. Ins. Co.*, No. 1:05-cv-436-LG-RHW (S.D. Miss. filed Sept. 20, 2005), Cmpl. (Dkt. 1) ¶ 12 (emphasis added) (Ex. B); *see also id.* ¶¶ 1(d), 6. On January 31, 2006, these plaintiffs amended their complaint to add allegations that State Farm and others had improperly sought to "***shift repayment obligations to the Federal Flood Insurance Program . . . at . . . taxpayers' expense.***" *See Comer v. Nationwide Mut. Ins. Co.*, No. 1:05-cv-436-LTS-JMR (S.D. Miss.), Second Am. Cmpl. (Dkt. 53-2) ¶ 12 (emphasis added) (Ex. C); *see also id.* ¶¶ 1(d), 5.[3]

There is simply no way that Cori Rigsby (or Kerri Rigsby) is the source of the public disclosures in the *Cox/Comer* lawsuit. Cori Rigsby testified that she did not even suspect that State Farm "made a corporate decision to misdirect and misallocate claims from those of hurricane coverage . . . to flood claims" until Kerri Rigsby showed her the two engineering reports pertaining to the McIntosh property. The first was the Brian Ford report, dated October 12, 2005; the second was the report prepared by Jack Kelly, dated October 20, 2005. (*See* Ex. A, C. Rigsby Dep. at 92:9-93:13, 96:22-97:6, 148:13-20; Ex. D, C. Rigsby Dep. in *McIntosh v. State Farm Fire & Cas Co.*, No. 1:06-cv-1080-LTS-RHW (S.D. Miss.) at 436:9-437:16.) Cori Rigsby testified emphatically that prior to that point, she had no reason to question State Farm's flood claims adjustment practices and was "very proud to work for State Farm." (*See* Ex. A, C. Rigsby Dep. at 14:6-10, 39:5-19; Ex. D, C. Rigsby *McIntosh* Dep. at 358:18-359:19.) Kerri Rigsby testified to the same effect. (Ex. E, K. Rigsby Dep. at 9:9-15, 22:10-23:3, 69:17-70:14.) Cori Rigsby cannot be an original source of the public disclosure of "flood fraud" contained in the *Cox/Comer* lawsuit filed in September 2005 when she swears that she had no knowledge of any alleged fraud by State Farm until late October 2005 at the earliest.

For the purposes of establishing a public disclosure, it is irrelevant whether or not FEMA, the Attorney General, or Cori Rigsby was aware of the *Cox/Comer* pleadings. In fact, just last Term, the

---

[3] *Cox* and *Comer* are the same case. It was brought as a putative class action on behalf of Mississippi property owners. When Mr. Cox withdrew, Mr. Comer was substituted as the first named plaintiff. (*See* Ex. F, *Comer* Dkt. 2.)

Supreme Court made clear that the "statutory touchstone" of § 3730(e)(4)(A) is "whether the allegations of fraud have been 'publicly disclosed,' not whether they have landed on the desk of a DOJ lawyer." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1410 (2010) (citation omitted). "It is the fact of 'public disclosure' – not Federal Government . . . receipt – that is the touchstone of § 3730(e)(4)(A)." *Id.* at 1405.

These same "flood fraud" theories were also the subject of several Congressional hearings, which constitute additional "public disclosures" under 31 U.S.C. § 3730(e)(4)(A) (2006). *See, e.g.*, *Dingle v. Bioport Corp.*, 388 F.3d 209, 211 (6th Cir. 2004); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553-54 n.5 (10th Cir. 1992). On October 18, 2005 – two days **before** the second engineering report on the McIntosh property was even issued – a Congressional hearing expressly covered the topic of alleged fraudulent overpayments by insurance companies that participated in the Write Your Own ("WYO") program. These hearings included testimony specifically asserting that insurers were overpaying flood claims so that they would not have to pay wind claims – precisely the same allegation that the Rigsbys later made in their pleadings in this case. J. Robert Hunter, the Director of Insurance for the Consumer Federation of America and a former Federal Insurance Administrator who ran the NFIP, testified before the Senate Committee on Banking, Housing and Urban Affairs that WYO carriers had incentives to unfairly allocate damages to NFIP policies in the wake of Hurricane Katrina, and he urged an audit by the Government Accountability Office ("GAO").

> Since Hurricane Katrina devastated the Gulf Coast, there has been much public discussion about whether damage to homes was caused by wind and rain, or by flooding.
>
> \*       \*       \*
>
> To the extent that insurers underpay wind when **allocating damage between their homeowners' policy and the NFIP policy**, taxpayers will suffer.
>
> \*       \*       \*
>
> For the benefit of taxpayers[] and those with no flood insurance, it is essential that the government assure a fair and proper **allocation of the wind/flood damage by the WYO**

> *insurance companies* who have a serious conflict of interest.  CFA urges this Committee to insure that the ***GAO audits these allocations starting right now, so that any tendency of the insurers to diminish their wind losses for their own benefit is stopped quickly.***

National Flood Insurance Program, Congressional Testimony, *available at* 2005 WLNR 16872930, at 6-8 (Oct. 18, 2005) (written Testimony of J. Robert Hunter) (emphasis added).

These allegations were underscored in Dr. Hunter's oral testimony as well.

> ***You must make sure that the Write Your Own insurers do not hurt taxpayers by overstating flood damage in their claims adjustment***, as oppose[d] to wind.  You can see the conflict of interest.  If it's a flood damage, they don't pay anything.  They just adjust it and send the bill to us as taxpayers.  If it's a wind damage, it affects their bottom line.  There are serious questions about where wind stops and flood starts.  Many lawsuits have already been filed.  And there will be more.  It's not a slam dunk that these damages are not wind related. . . .  I think GAO – I'm glad to hear they're there.  You should make sure they do a really good audit.

Transcript of Hearing, Senate Banking and Urban Affairs Committee Meeting, *available at* 2005 WL 2661294, at 24 (Oct. 18, 2005) (Statement of J. Robert Hunter) (emphasis added).

And on February 2, 2006, months before the Rigsbys filed their Complaint, another Congressional hearing was held on the NFIP before the same Senate Committee.  Dr. Hunter again testified about alleged wind/water allocation issues and repeated his assertion of the need for a GAO audit.  *See* National Flood Insurance Program, Congressional Testimony, *available at* 2006 WLNR 1848600, at 6 (Feb. 2, 2006) (written Testimony of J. Robert Hunter).

Once again, Cori Rigsby could not have been the original source of these multiple public disclosures in the Congressional hearings.  The October 18, 2005, hearings took place before the second engineering report on the McIntosh house was issued on October 20, 2005, and before the Rigsbys had any suspicions regarding State Farm's adjustment practices.  Nor can Cori Rigsby (or Kerri Rigsby) be the original source of the February 2, 2006, testimony.  Indeed, Cori Rigsby and Kerri Rigsby have both testified that they did not discuss their suspicions with anyone other than themselves and their mother, Pat Lobrano, until they met with Dickie Scruggs in late February 2006.  (Ex. A, C. Rigsby Dep. at 95:8-

13; Ex. D, C. Rigsby *McIntosh* Dep. at 304:18-305:8; Ex. G, C. Rigsby Dep. in *E.A. Renfroe & Co. v. Moran*, No. 06-WMA-1752-S (N.D. Ala.) at 114:24-116:2; Ex. E, K. Rigsby Dep. at 212:5-13; Ex. H, K. Rigsby *McIntosh* Dep. at 403:15-404:1.)  And they did not file their evidentiary disclosure statement with the government until April 24, 2006.

While the multiple prior public disclosures did not specifically point to the McIntosh flood claim, "[s]ection 3730(e)(4)(A) bars actions based on publicly disclosed allegations whether or not the information on which those allegations are based has been made public." *Rockwell*, 549 U.S. at 471 (emphasis omitted).  "An allegation can be made public, even if its proof remains hidden." *Wang v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992).  To this end, "it has been held, repeatedly, that '[d]isclosures which reveal *either* the allegations of fraud *or* the elements of the underlying fraudulent transaction are sufficient to invoke the jurisdictional bar.'" *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 842 (S.D. Tex. 2003) (emphasis in original, citation omitted), *aff'd*, 384 F.3d 168 (5th Cir. 2004).  "All that is required is that public disclosures put the government on notice to the possibility of fraud," *Dingle*, 388 F.3d at 214, or "'to raise the inference of fraud,'" *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999) (citation omitted).

Accordingly, Cori Rigsby's identification of the McIntosh flood claim as one "specific instance" of State Farm's supposed "reallocation of claims from wind damage to flood damage" (Compl. ¶¶ 41-46; Am. Compl. ¶¶ 65-70), does not allow her to evade the public disclosure bar.  "Even if [a relator] uncovered some nuggets of new, *i.e.*, non-public information, his claims of fraud are based at least in part on allegations ***already publicly disclosed***." *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (emphasis added).

The Complaint and Amended Complaint are subject to the public disclosure bar because they are "based upon" these public disclosures.  31 U.S.C. § 3730(e)(4)(A) (2006).  "[A] lawsuit is based upon

10

publicly disclosed allegations when the relator's allegations and the publicly disclosed allegations are substantially similar." *Glaser*, 570 F.3d 907, 915 (citing, *inter alia*, *Fed. Recovery Servs.*, 72 F.3d at 451). Thus, as Judge Aycock recently explained, "[a] *qui tam* action is based upon public disclosures if it repeats what the public already knows, regardless of whether or not relators learned about the fraud independent of the public disclosures." *Jamison*, 2010 WL 1276712, at *8 (citing *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 683 (D.C. Cir. 1997)). Nor do a relator's pleadings need to perfectly overlap with the public disclosures to be based upon them. "[I]f a *qui tam* action is 'even *partly* based upon public allegations or transactions' then the jurisdictional bar applies." *Fried*, 527 F.3d at 442 (citation omitted, emphasis added). A relator "cannot avoid the jurisdictional bar simply by adding other claims that are substantively identical to those previously disclosed." *Fed. Recovery Servs.*, 72 F.3d at 451.

The basis for this *qui tam* action is the supposed "misallocation" of damages from wind to flood – charges that were made public by others in civil complaints and Congressional hearings before Kerri Rigsby saw the engineering reports relating to the McIntosh homeowners insurance claim and showed them to Cori Rigsby. The allegations in this case are, at the very least, "substantially similar" to the misallocation charges leveled in those earlier public disclosures. Accordingly, Cori Rigsby must independently pass the original source test. Since she cannot, her claims must be dismissed as a matter of law.

## CONCLUSION

Cori Rigsby has no firsthand knowledge of the McIntosh flood claim and cannot be an original source of the allegations of fraud premised on the adjustment of that claim. The fact that she is Kerri Rigsby's sister does not provide her with a pass on establishing her own status as an original source. For the foregoing reasons, the Court should grant State Farm's motion for summary judgment for lack of subject matter jurisdiction and dismiss Cori Rigsby's claims with prejudice.

11

This the 16th day of August, 2010.

                        Respectfully submitted,

                        STATE FARM FIRE AND CASUALTY COMPANY

        By:     s/*E. Barney Robinson III* (MSB #09432)
                  Robert C. Galloway (MSB # 4388)
                  Jeffrey A. Walker (MSB # 6879)
                  E. Barney Robinson III (MSB #09432)
                  Benjamin M. Watson (MSB #100078)
                  Amanda B. Barbour (MSB # 99119)

                  ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT OSHINSKY LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

14

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA 70139
(P) (504) 525-6802
(F) (504) 525-2456

ATTORNEYS FOR HAAG ENGINEERING CO.

Robert D. Gholson
Daniel D. Wallace
GHOLSON, BURSON, ENTREKIN & ORR, P.A.
535 North 5th Avenue (39440)
P.O. Box 1289
Laurel, MS 39441-1289
(P) (601) 649-4440
(F) (601) 649-4441

ATTORNEYS FOR FORENSIC ANALYSIS ENGINEERING CORPORATION

This the 16th day of August, 2010.

/s/ E. Barney Robinson III (MSB # 09432)
E. Barney Robinson III (MSB # 09432)

Jackson 5478643v1

15