IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS

v.                                              CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY   DEFENDANT/COUNTER-PLAINTIFF

and

HAAG ENGINEERING CO.; and ALEXIS KING                          DEFENDANTS

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS DUE TO THE RIGSBYS' REPEATED AND
CALCULATED VIOLATIONS OF THIS COURT'S SEAL ORDER**

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)
Amanda B. Barbour (MSB # 99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .............................................................................................................1

FACTUAL BACKGROUND ............................................................................................2

        A.     The Rigsbys Repeatedly Violated the Seal Order by Disclosing this Action to the National Media......................................................................2

        B.     The Rigsbys Disclosed this Action to at Least One Member of Congress............................................................................................................6

        C.     The Rigsbys Utilized a Public Relations Firm to Unlawfully Promote Media Coverage of their Allegations in the FCA Action While It Was under Seal. .......................................................................7

ARGUMENT ....................................................................................................................12

CONCLUSION .................................................................................................................15

CERTIFICATE OF SERVICE .........................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Abney v. State Farm Fire and Casualty Co.*, 2008 WL 2331098, *6 (S.D. Miss. 2008) .............15

*Anderson v. Dunn*, 19 U.S. 204 (1821)...........................................................................14

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.,* 249 U.S. 134 (1919) .......................................14

*Bailey v. U.S. Fid. & Gty. Co.*, 1998 WL 527269, * 2 (N.D. Miss. 1998) ...................................15

*Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845 (7th Cir. 2009) ...........................................................................................................................12

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911).........................................................15

*In re Bradley*, 588 F.3d 254 (5th Cir. 2009) ...........................................................................14

*In re Debs*, 158 U.S. 564 (1895).............................................................................................14

*Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787 (7th Cir. 2009) ...................................12

*United States ex rel. Bain v. Georgia Gulf Corp.*, No. 06-30304, 2006 WL 3093637, at *2 (5th Cir. Oct. 26, 2006)...........................................................................................................12

*United States ex rel. Fellhoelter v. Valley Milk Prods., L.L.C.*, No. 3:05-CV-343, 2008 WL 217116, at *4 (E.D. Tenn. Jan. 24, 2008) ...........................................................................12

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242 (9th Cir. 1995) ..................12, 13

*United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995) ..................1, 12

*United States ex rel. Windsor v. DynCorp, Inc.*, 895 F. Supp. 844 (E.D. Va. 1995)...........1, 13, 14

## STATUTES

31 U.S.C. § 3730..........................................................................................................1, 2, 13

## RULES

Fed. R. Civ. P 30................................................................................................................8

Defendant/Counter-Plaintiff State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum of authorities in support of its Motion to Dismiss Due to the Rigsbys' Repeated and Calculated Violations of this Court's Seal Order.

## INTRODUCTION

The claims of Relators Cori and Kerri Rigsby ("the Rigsbys")[1] should be dismissed due to their repeated and calculated violations of the False Claims Act's ("FCA") mandatory seal requirement and this Court's Seal Order [1].   It is undisputed that there were multiple and intentional public disclosures of both the existence and content of this *qui tam* lawsuit while it was under seal.

Specifically, the FCA provides that the complaint "*shall* be filed in camera, *shall* remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2) (emphasis added).   "These procedures reflect Congress' desire to permit the government to investigate the allegations without 'tipping off' the alleged wrongdoers, while also protecting the defendants from damaging reputational injuries associated with possibly baseless public accusations."  *United States ex rel. Windsor v. DynCorp, Inc.*, 895 F. Supp. 844, 847-48 (E.D. Va. 1995).  The seal provision protects a defendant's reputation when a "meritless *qui tam* action is filed, because the public will know that the government had an opportunity to review the claims but elected not to pursue them."  *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 999 (2d Cir. 1995).

As set forth below, the Rigsbys repeatedly disclosed not only the existence of this FCA Action, but also the actual pleadings themselves to the national news media and to at least one

---

[1] State Farm seeks dismissal with prejudice as to the Rigsbys and without prejudice as to the United States.

1

Member of Congress in violation of 31 U.S.C. § 3730(b)(2).  More importantly, these disclosures constituted a willful violation of the Seal Order entered by this Court on April 26, 2006.  [1]. This was not mere inadvertence or sloppiness, but a carefully calculated media campaign designed to thwart this Court's Seal Order and to promote the credibility of the Rigsbys while at the same time demonizing State Farm.

State Farm previously raised the seal violation issue as a part of its April 8, 2008 Motion to Dismiss [98 & 99].  The Court did not decide this issue in its August 10, 2009 Order [343] and, since that time, State Farm has taken discovery from SLF, Inc., the successor to The Scruggs Law Firm, P.A. as well as from The Rendon Group, a Washington, D.C., public relations firm hired to promote the Rigsbys' story.  This discovery has not only revealed numerous additional violations of the Court's Seal Order, but also established that the violations were an egregious abuse of the justice system demonstrating a complete disregard for this Court's directives.  For the reasons set forth below, dismissal of this case is the appropriate sanction for the Rigsbys' repeated, calculated, and intentional violations of this Court's Seal Order.

## **FACTUAL BACKGROUND**

### A. The Rigsbys Repeatedly Violated the Seal Order by Disclosing this Action to the National Media.

Despite the fact that federal law requires *qui tam* actions such as this one to remain under seal upon filing, 31 U.S.C. § 3730(b)(2), and despite the Seal Order issued by this Court the day of filing [1], the Rigsbys unlawfully distributed the First Amended Complaint and Evidentiary Disclosure to national news organizations, including ABC News, CBS News, the Associated Press, and the New York Times, who then ran stories echoing the Rigsbys' sealed allegations.  In this media campaign against State Farm, the Rigsbys repeatedly disclosed to the media sealed pleadings and confidential evidentiary disclosures from this matter, up to a year before the Court

lifted the seal on August 1, 2007.   [25] As set forth below, this campaign included the cooperation of the Rigsbys, who actively participated in personal interviews, filming, or photo shoots with national media outlets such as ABC News, the Associated Press, and Glamour Magazine.

The efforts of the Rigsbys to publicly disseminate the contents of the sealed *qui tam* Complaint was well under way by July 28, 2006, just three months after the Court entered the Seal Order, when Zach Scruggs contacted ABC News producer Joseph Rhee about working up a story on the nationally-broadcast "20/20" program that would feature the Rigsbys as its "stars" and make the McIntosh matter with State Farm as its centerpiece.[2]   This exchange would lead to the August 2006 "20/20" program that featured as props the two Forensic Engineering reports concerning the McIntosh property.  There can be no doubt from whom ABC News obtained the two engineer reports.  On August 7, 2006, the Rigsbys' counsel e-mailed them to Mr. Rhee, with Beth Jones, a secretary at the Scruggs Law Firm, even going as far as saying that "this information is not the information that is under seal."[3]

On that same day, the Rigsbys' counsel e-mailed Mr. Rhee a copy of the Rigsbys' Evidentiary Disclosure in this FCA Action to use as "background information" for his then-upcoming *20/20* story featuring the Rigsbys.[4]   Subsequently, on August 25, 2006, ABC News

---

[2] (E-mail from Zach Scruggs to Joseph E. Rhee @ ABC News, Subject: abc news, July 28, 2006, 1:56 p.m., SMPH1-002665, Ex. A  to State Farm's Motion.)

[3] (E-mail from Beth Jones to Joseph E. Rhee @ ABC News, Subject: RE: Engineering Reports, August 7, 2006, 12:46 p.m., SMPD1-002559, Ex. B to State Farm's Motion.)

[4] (E-mail from Beth Jones to Joseph E. Rhee @ ABC News, Subject: [Blank], Attach: Final Evidentiary Disclosure PDF, August 7, 2006, 2:03 p.m., SMPD1-000387-424, Ex. C to State Farm's Motion.)

aired its *20/20* story featuring the Rigsbys and the McIntosh claim as its centerpiece.[5] This story aired allegations against State Farm substantively identical to those raised in the Rigsbys' then-sealed *qui tam* Complaint and Evidentiary Disclosure.[6] The Rigsbys spent hours being interviewed for *20/20* and even chose the location of a property on Lovers Lane in Ocean Springs, Mississippi for part of the shoot.[7]

On August 14, 2006, yet another unlawful disclosure occurred when a copy of the sealed Evidentiary Disclosure was e-mailed to Michael Kunzelman at the Associated Press.[8] Shortly thereafter, on or about August 23, 2006, Mr. Kunzelman interviewed the Rigsbys.[9] In preparation for this story, Mr. Scruggs' assistant sent the McIntosh engineer reports to Mr. Kunzelman.[10] On August 27, 2006, within days of his interview, Mr. Kunzelman published "*Sisters Blew Whistle on Katrina Claims*," Associated Press Newswires.[11]

On September 18, 2006, the Rigsbys violated the Court's Seal Order for at least the third time with a release of the sealed Evidentiary Disclosure, this time by e-mailing it to Joseph

---

[5] Cori Rigsby also recounts the interview given to The Sun Herald in August 2006 at about the same time as the filming of the *20/20* interview. (Ex. D to State Farm's Motion, C. Rigsby, *McIntosh* Dep. II at 446:18-448:21).

[6] *Compare* (*20/20* Trans. at 4, Ex. E to State Farm's Motion) *with* (Evidentiary Discl. at 8-14, Ex. I to State Farm's Motion.)

[7] (Ex. F to State Farm's Motion, K. Rigsby, *McIntosh* Dep. I at 79:8 – 84:16).

[8] (E-mail from Dick Scruggs to Michael Kunzelman @ AP, Subject: [Blank], Attach: SF Disclosure PDF, August 14, 2006, 7:59 a.m., SMPD1-000115-149, Ex. G to State Farm's Motion.)

[9] (Ex. D to State Farm's Motion, C. Rigsby, *McIntosh* Dep. II at 446:12-448:21).

[10] (E-mail from Beth Jones to Michael Kunzelman @ AP, Subject: RE: fed ex; Attach: McIntosh Forensic Eng. Report 10-12-15.pdf; McIntosh Forensic Eng. Report 10-20-05.pdf, Minh Nguyen Reports.pdf, August 22, 2006, 7:46 a.m., SMPD1-000150-210, Ex. H to State Farm's Motion.)

[11] (Ex. I to State Farm's Motion). In his story, Mr. Kunzelman discussed the engineer reports and other matters contained in the sealed Evidentiary Disclosure unlawfully provided to him on August 14, 2006. (Ex. G to State Farm's Motion, E-mail, Bates nos. SMPD1-00115 to 149.)

Treaster of the New York Times.[12]  Thereafter, on March 16, 2007, the New York Times ran Mr. Treaster's story, "*A Lawyer Like a Hurricane*."[13]  Not surprisingly, that story also contains details matching up with allegations in the Rigsbys' sealed Evidentiary Disclosure.[14]  Indeed, in the interim between the unlawful transmittal of the evidentiary disclosure and the article, Mr. Treaster expressed his thanks for being sent the documents "in confidence."[15]

Yet another violation of the Court's Seal Order occurred on June 6, 2007 when a copy of the May 22, 2007 *First Amended Complaint* in this matter – which was still under seal – was e-mailed to "rey"[16] at CBS News (believed to be Michael Rey, a Producer at CBS News).[17]  The fact that the Rigsbys knew that this activity was wrongful is further revealed from the face of the e-mail to Mr. Rey, which sought to conceal the communication by stating, "THIS IS OFF THE RECORD."  (*Id.*)[18]  Of course, appending a statement such as "THIS IS OFF THE RECORD" does not give the Rigsbys or their counsel license to knowingly flout the terms of this Court's Seal Order.

---

[12] (E-mail from Beth Jones to Joseph Treaster @ NY Times, Subject: [Blank], Attach: Final Evidentiary Disclosure PDF, September 18, 2006, 2:25 p.m., SMPD1-000271-305, Ex. I to State Farm's Motion.)

[13] (New York Times, March 16, 2007, Ex. J to State Farm's Motion.)

[14] (E-mail, Bates nos. SMPD1-000271-305, Ex. I to State Farm's Motion.)

[15] (E-mail from Joseph Treaster @ NY Times to Beth Jones, Subject: Re: back, January 22, 2007, 1:40 p.m., SMPD1-000093, Ex. K to State Farm's Motion.)

[16] http://www.cbsnews.com/stories/2006/11/29/primarysource/about/main2217473.shtml.

[17] (E-mail from Beth Jones to Michael Rey @ CBS News, Subject: FW, Attach: False Claims Act First Amended Complaint.doc, Renfroe Code of Conduct.pdf, June 6, 2007, 3:49 p.m., SMPH1-001744-89, Ex. L to State Farm's Motion.)

[18] SLF, Inc., the successor to The Scruggs Law Firm, P.A., admitted that these communications did in fact take place.  Despite the fact that the FCA Evidentiary Disclosure and First Amended Complaint were sent to the national media, SLF seeks refuge in its excuse that these illegal communications were "not intended for distribution" and were solely for "background information." (Dep. of R. Deloach at 93:23-94:12, Ex. M to State Farm's Motion.)

Mr. Scruggs' on-the-record statements to the press also demonstrate that these prohibited disclosures were part and parcel of an orchestrated plan directed at State Farm through the media – a plan that was designed without consideration for court orders or other rules governing the conduct of Scruggs and the Rigsbys:   "Scruggs boasted of using 'every trick in the book, political, public opinion and legal' to force State Farm into resolving civil cases in which Scruggs represents State Farm policyholders."[19]

Tellingly, when Richard Scruggs was recently asked about the numerous disclosures that violated this Court's Seal Order, he refused to answer these questions and asserted his rights under the Fifth Amendment.[20]  For example:

> Q.     You intentionally violated the court order obligating you to keep this material confidential in order to generate negative publicity about State Farm, did you not?

> MR. MALLETTE: Object to the form.

> THE WITNESS: I invoke my rights under the Fifth Amendment.

### B.  The Rigsbys Disclosed this Action to at Least One Member of Congress.

The Rigsbys met with United States Representative Gene Taylor on September 16, 2006, and apparently disclosed to him the contents of their then-sealed FCA Complaint in violation of the Court's Seal Order.[21]  That violation is evidenced by Representative Taylor's statement before Congress on September 21, 2006, in which he stated that he met with the Rigsbys, and then – closely echoing the Rigsbys' allegations – accused State Farm of having "violated the

---

[19] ("Federal Judge Considers Class Action in Miss. Katrina Lawsuits," AP, February 28, 2007, Ex. N to State Farm's Motion.)

[20] (Dep. of R. Scruggs at 19:1-27:13, Ex. O  to State Farm's Motion.)

[21] (Dep. of C. Rigsby at 190:6-190:9, Ex. P  to State Farm's Motion.)

False Claims Act by manipulating damage assessments to bill the federal government instead of the companies" and of having "defrauded federal taxpayers by assigning damage to the federal flood program that should have paid [sic] by the insurers' wind policies."[22]

Several months later, on February 28, 2007, Representative Taylor provided written testimony to a Congressional sub-committee that "[t]he Scruggs Law Firm represents the [Rigsby] sisters in a False Claims Act filing against State Farm and Renfroe" – all at a time that the *qui tam* action was under seal and when the Rigsbys had not yet amended their *qui tam* complaint to name Renfroe as a defendant.[23]   Indeed, the Rigsbys' First Amended Complaint, which first named Renfroe as a defendant, was not filed with this Court until nearly three months later on May 22, 2007.  [16] The only means by which Congressman Taylor could have been privy to this information is through the Rigsbys or others acting on their behalf with knowledge of the sealed FCA Action.  A privilege log turned over by Scruggs's Washington, D.C., public relations firm, The Rendon Group, shows communications between Zach Scruggs and Rendon concerning that testimony by Representative Taylor.[24]

### C.  The Rigsbys Utilized a Public Relations Firm to Unlawfully Promote Media Coverage of their Allegations in the FCA Action While It Was under Seal.

The Rigsbys used the Rendon Group to promote press coverage of their "whistleblower" story that is central to this FCA Action.  This relationship began in December 2006, well before the Court's Seal Order was lifted on August 1, 2007.[25]

---

[22] (*Congressional Record – House*, Sept. 21, 2006 at H6903-04, Ex. Q  to State Farm's Motion.)

[23] (*Insurance Claims Payment Processes on the Gulf Coast*:  Hearing Before the House Financial Services Committee on Oversight and Investigation at 6, Feb. 28, 2007, Ex. R  to State Farm's Motion.).

[24] (Rendon Privilege Log, Ex. S  to State Farm's Motion.)

[25] (Dep. of R. Deloach at 126:15-127:14, Ex. M  to State Farm's Motion.)

Some examples of Rendon's involvement with the Rigsbys, and the publication of their allegations that are at the heart of this FCA Action in violation of the April 26, 2006 Seal Order, are as follows:

- ➢ On January 24, 2007, the Rendon Group[26] began ginning up media coverage for the Rigsbys' "whistleblower" story.[27]

- ➢ The next day, on January 25, 2007, Sid Backstrom of The Scruggs Law Firm disclosed in writing to Ainsley Perrien, a strategist with the Rendon Group, the existence of the "Qui Tam case."[28]

- ➢ On February 12, 2007, the Rendon Group solicited CBS News to interview the "whistleblowers."[29]

- ➢ On February 15, 2007, the Rendon Group assisted with publishing the Rigsbys' "whistleblower" claims to Senator Trent Lott and Representative Gene Taylor.[30]

- ➢ On February 16, 2006, the Rendon Group and the Scruggses pushed the idea of an article in *Glamour* Magazine featuring the Rigsbys and their "whistleblower" claims.[31]

---

[26] Sandra Libby, one of the Fed. R. Civ. P 30(b)(6) designees of the Rendon Group, authenticated the 17,424 pages of documents that were produced on July 7, 2010 bearing Bates numbers TRG 000001 through TRG 017424.  (Dep. of S. Libby at 58:19-59:5, Ex. U  to State Farm's Motion.)  Ms. Libby has also testified that these documents were maintained in the ordinary course of the Rendon Group's business activities and that they were made at or near the time by or from information transmitted by a person or persons with knowledge.  (*Id.* at 65:9-65:17; 65:18-66:16.)  Exhibits bearing a Bates number TRGXXXXXX  are contained within this sub-set of documents.

[27] (E-mail from Ainsley Perrien to John Rendon, Subject: The day, January 24, 2007, 11:24 p.m., TRG000190, Ex. V  to State Farm's Motion.)

[28] (E-mail from Sid Backstrom to Ainsley Perrien, Subject: agenda, Attach: DML SKG Bio.wpd, January 25, 2007, 11:51 a.m., TRG000194-197, Ex. W  to State Farm's Motion.)

[29] (E-mail from Ainsley Perrien to Jill Rosenbaum, Subject: scruggs/katrina, February 12, 2007, 3:00 p.m., TRG000427-28, Ex. X  to State Farm's Motion.)

[30] (E-mail from Ainsley Perrien to John Rendon, Bryan Rich and Robert Page, Subject: FW: Lott – Taylor Letter, February 15, 2007, 8:06 p.m., TRG 000813-816, Ex. Y  to State Farm's Motion.)

[31] (E-mail from Zach Scruggs to Ainsley Perrien, Subject: FW: [keyword] – Martindale Hubbell – Potential Client Inquiry – Found word(s) farm in the HTML body, February 16, 2007, 3:13 p.m., TRG000843, Ex. Z  to State Farm's Motion.)

➢ On February 19, 2007, a Rendon Group representative e-mailed the Rigsbys to get their input on the *Glamour* Magazine article which would ultimately feature their allegations against State Farm.[32]

➢ On February 20, 2007, the Rendon Group coordinated with Zach Scruggs in pushing the Rigsbys' story to CNBC stating, "the girls [should be] the story of this lawsuit."  In this exchange, the Rigsbys explicitly sought Scruggs' guidance on contact with the media and wanted him "to make the final decision."[33]

➢ In February 2007, well before the Seal Order was lifted, the Rigsbys were intimately involved with the creation of their Wikipedia page that aired the same "whistleblower" allegations that are contained in this FCA Action, including the "alteration" of engineer reports.[34]  Kerri Rigsby even stated that she "liked the 'wikipedia thing', but there are some corrections that need to be made."[35]  Kerri Rigsby ultimately sent in her changes on February 21, 2007.[36]  Cori made hers the same day.[37]  The reason for the Wikipedia entry is made clear by the Rendon Group:  "Please get this edited and fixed as quickly as possible.  We'll get it posted to Wikipedia within hours.  This will generate much more exposure . . . ."[38]  Once it went live on February 21, 2007, Kerri Rigsby responded that "[i]t looks great!"[39]

---

[32] (E-mail from Ainsley Perrien to Cori Rigsby and Kerri Rigsby, Subject: FW: Media Coverage – Rigsby Girls, February 19, 2007, 7:23 p.m., TRG000875, Ex. AA  to State Farm's Motion.)

[33] (E-mail from Ainsley Perrien to Zach Scruggs, Subject: CNBC, February 20, 2007, 4:45 p.m., TRG000891-892, Ex. BB  to State Farm's Motion.)

[34] (E-mail from Robert Page to Ainsley Perrien, Subject:  Rigsby Girls, Wiki, February 15, 2007, 2:42 p.m., TRG 000810-812, Ex. CC to State Farm's Motion; E-mail from Ainsley Perrien to Cori Rigsby and Kerri Rigsby, Subject:  when you can, February 17, 2007, 10:23 a.m., TRG 000850, Ex. DD to State Farm's Motion.)

[35] (E-mail from Kerri Rigsby to Ainsley Perrien, Subject:  when you can, February 17, 2007, 11:19 a.m., TRG 000851, Ex. EE  to State Farm's Motion.)

[36] (E-mail from Kerri Rigsby to Ainsley Perrien, Subject:  rigsby webpage, February 21, 2007, 7:31 a.m., TRG 000929-930, Ex. FF  to State Farm's Motion.)

[37] (E-mail from Cori Rigsby to Ainsley Perrien, Subject:  rigsby webpage, February 21, 2007, 11:55 a.m., TRG 000932-935, Ex. GG  to State Farm's Motion.)

[38] (E-mail from Ainsley Perrien to Richard Scruggs and Beth Jones, Subject"070220-WikiEntry-RigsbyGirls-Draft.doc, February 20, 2007, 1:57 p.m., TRG 000884, Ex.HH  to State Farm's Motion.)

[39] (E-mail from Kerri Rigsby to Ainsley Perrien, Subject:  Wikipedia entry, February 21, 2007, 10:46 p.m., TRG 000947, Ex. II  to State Farm's Motion.)

➢ On March 15, 2007, with the involvement of Zach Scruggs, the Rendon Group prepared articles and editorial responses publicizing the Rigsbys' "whistleblower" allegations.[40]

➢ On March 21, 2007, Kerri Rigsby and Ainsley Perrien of the Rendon Group directly coordinated their media effort with ABC News.[41]

➢ On April 13, 2007, Zach Scruggs and Ainsley Perrien of the Rendon Group coordinated coverage of the Rigsbys through "national whistleblower week", stating "it will help in the effort to [] get air cover for the girls and we can mention they are featured as heros [sic] in glamour mag that is out on the newsstands…."[42]  This was done more than four months before the Seal Order was lifted.

➢ The Rendon Group has produced an April 13, 2007 e-mail exchange between Anthony DeWitt (the Rigsbys' since-disqualified FCA lawyer in this case) and Jay Majors with the United States Department of Justice.  This e-mail is significant because someone – likely DeWitt – forwarded this supposedly confidential exchange about this FCA Action to the Rendon Group while it was still under seal.  Also, the Rendon Group could not have known who DeWitt was or the nature of his involvement on April 13, 2007, unless the Rigsbys/Scruggs had previously told the Rendon Group of this FCA Action, as DeWitt was not of record in any SKG litigation, only the sealed FCA Action.[43]

➢ On May 22, 2007, a Rendon Group Alert Desk e-mail alerted certain members of the SKG as to Katrina issues and, not coincidentally, this document was turned over in discovery by The Rendon Group followed by an unsigned copy of the First Amended Complaint in this FCA that was filed on the same day [16].  The Rendon Group clearly had a draft of the First Amended Complaint in its possession well before the Seal Order was lifted on August 1, 2007.[44]

➢ On May 22, 2007, Sid Backstrom of the Scruggs Law Firm told Ainsley Perrien of the Rendon Group that the *Branch* suit, a competing FCA Action in Louisiana, had been

---

[40] (E-mail from Ainsley Perrien to Zach Scruggs, Subject: RE: phone meeting with Joe Treaster on Thursday, pls, March 15, 2007, 11:41 .m., TRG001282-1274, Ex. JJ  to State Farm's Motion.)

[41] (E-mail from Ainsley Perrien to Kerri Rigsby, Subject: RE: pictures, March 21, 2007, 9:26 a.m., TRG001557, Ex. KK  to State Farm's Motion.)

[42] (E-mail from Ainsley Perrien to Zach Scruggs, Subject: National Whistleblower Week, May 13, 2007, 2007, 2:10 p.m., TRG004894-4897, Ex. LL  to State Farm's Motion.)

[43] (E-mail from Jay Majors @ DOJ to Anthony L. DeWitt, Subject: Supplemental Disclosure, April 13, 2007, 2:28 p.m., TRG 011090, Ex. MM  to State Farm's Motion.)

[44] (Rendon Alert Desk E-mail, TRG (8-10-2010) 000115-158, Ex. NN  to State Farm's Motion.)

unsealed.  The Rendon Group already knew of the Rigsby FCA Action and therefore needed to be aware of this potentially competitive lawsuit to the Rigsbys' suit.[45]

➢ On May 24, 2007, personnel of the Rendon Group communicated concerning the *Branch* FCA Action.[46]

➢ On May 29, 2007, Ainsley Perrien communicated with John Rendon concerning the *Branch* FCA Action.[47]

➢ A June 5, 2007 communication between Ainsley Perrien and John Rendon further demonstrates that the Rendon Group knew of the Rigsby FCA Action as Perrien says "But SKG has asked DOJ to lift their seal (rigsby case filed in april 2006)…."[48]

➢ In an August 6, 2007 e-mail to members of SKG, as well as Ainsley Perrien of the Rendon Group, Backstrom told the group of the unsealing of the FCA Action and that "this is SF's first knowledge of this case."[49]

As this brief chronology demonstrates, time and again, the Rigsbys and their counsel told their public relations firm – whose job it was to broadcast their message to the world – about this FCA Action that was sealed by operation of statute and by this Court's Seal Order.  The reason for these activities, and the others also summarized above, is obvious.  The Rigsbys and their counsel paid little heed to the statutory seal or to this Court's Seal Order.  Rather than barriers, they treated them as nothing more than a speed bump in their path and were determined not to let the seal requirements impede their coordinated publicity campaign against State Farm.  Yet the

---

[45] (E-mail from Sid Backstrom to Ainsley Perrien, Subject: RE: This is awkward, May 22, 2007, 4:36 p.m., TRG 006464, Ex. OO  to State Farm's Motion.)

[46] (E-mail from Joel Feyerherm to Ainsley Perrien, Subject: FW: Allstate Subpoenas, May 24, 2007, TRG006496-97, Ex. PP  to State Farm's Motion.)

[47] (E-mail from Ainsley Perrien to John Rendon, Subject: reaching out, Attach: allstate subpoena articles.doc, Longtime ally turns on insurers.doc, May 29, 2007, 10:10 a.m., TRG 006555, Ex. QQ to State Farm's Motion.)

[48] (E-mail from Ainsley Perrien to John Rendon, Subject: One idea, June 5, 2007, 7:00 a.m., TRG006784, Ex. RR  to State Farm's Motion.)

[49] (E-mail from Sid Backstrom to Meg McAllister et al, Subject: RE: Activity in Case 1:06cv433-LTS-RHW Rigsby et al v. State Farm Insurance Company et al Remark, August 6, 2007, 2:18 p.m., TRG008641-43, Ex. SS  to State Farm's Motion.)

law instructs that statutory seals and seal orders issued by this Court cannot be flouted with abandon and without consequence.

## **ARGUMENT**

A relator who violates the seal provision may forfeit her right to bring a claim under the FCA.  *See United States ex rel. Bain v. Georgia Gulf Corp.*, No. 06-30304, 2006 WL 3093637, at *2 (5th Cir. Oct. 26, 2006); *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d Cir. 1995); *United States ex rel. Fellhoelter v. Valley Milk Prods., L.L.C.*, No. 3:05-CV-343, 2008 WL 217116, at *4 (E.D. Tenn. Jan. 24, 2008) ("By violating the mandatory statutory requirements, [relator] lost his right to bring this statutory cause of action.  Therefore, on this basis, the case will be dismissed.").  Furthermore, a relator who discloses the contents or existence of the sealed *qui tam* action to a third party violates the seal.  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 244 (9th Cir. 1995) (holding that disclosure of the existence and nature of a *qui tam* suit unequivocally violates the seal provision).  *See also Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 798 (7th Cir. 2009)  ("the district court did not abuse its discretion in dismissing Salmeron's [*qui tam*] suit with prejudice as a sanction for Sanchez's unauthorized disclosure ….  While harsh, the sanction was merited").  *Salmeron* also makes clear that any argument that a supposedly "blameless" client – and, here, the Rigsbys are not "blameless," but rather are complicit and participated in multiple related media interviews – ought not suffer the consequences of "her counsel's bad actions … gets nowhere." *Salmeron*, 579 F.3d at 797, n.4.  "The rule is that *all* of the attorney's misconduct ... becomes the problem of the client."  *Id.* (quoting *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009)) (emphasis in original).

Indeed, the Ninth Circuit has held that disclosure to the media unequivocally violates the seal provision:

> [Relator] clearly violated the seal provision of 31 U.S.C. § 3730(b)(2) by making statements to the *Los Angeles Times* about the existence and nature of her *qui tam* suit.  Any suggestion that her disclosure to a major newspaper is not a violation of the seal provision cannot be taken seriously.

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 244 (9th Cir. 1995) (footnote omitted).  Similarly, in *Windsor*, *supra*, the court held that disclosure of the *qui tam* suit to employees of the defendant company would violate the seal and warrant dismissal of the *qui tam* suit.  *See Windsor*, 895 F. Supp. at 848 (stating rule, but declining to grant summary judgment because of factual dispute regarding whether such disclosure took place).

In this case, the Rigsbys flagrantly violated this Court's Seal Order on multiple occasions through a well-coordinated media campaign.  Here, the Complaint – which was filed on April 26, 2006 and amended on May 22, 2007 – remained under seal until August 1, 2007, when this Court ordered that it be unsealed.  [25]  Yet numerous leaks to the national media as well as written Congressional testimony given by Representative Gene Taylor on February 28, 2007 – five months *before* the seal was lifted – plainly show that the Rigsbys had no regard for this Court's Seal Order.  The Rigsbys even went as far as to utilize a Washington, D.C. public relations firm to manage these efforts.  Both before and after the seal was lifted, that firm sought out every conceivable person and/or organization that might possibly be in a position to further the Rigsbys' goals:  The Washington Post, USA Today, CNN, Mississippi Public Radio, CBS News, ABC News, New York Times, The Clarion Ledger, Glamour Magazine, Associated Press, Los Angeles Times, New Republic, CNBC, 60 Minutes, Birmingham (AL) News, Atlanta Journal Constitution, TIME Magazine, The Sun Herald, and numerous Members of Congress.[50]

---

[50] The documents produced by the Rendon Group that establish these contacts are attached hereto as collective Exhibit TT, and bear the Bates numbers TRG 010214 (Washington Post); TRG 000780 (Washington Post); TRG 013448 (Washington Post); TRG 010214 (Washington Post); TRG 003894-3895 (USA Today); TRG 010743-44 (USA Today); TRG 010775-76 (USA Today); TRG 010784 (USA Today); TRG001816 (CNN & Mississippi Public Radio); TRG 000427-28 (CBS News); TRG 001557

*(cont'd)*

In short, a central purpose behind the FCA's strict seal provision is "protecting the defendants from damaging reputational injuries associated with possibly baseless public accusations." *Windsor*, 895 F. Supp. at 847. Here, the Rigsbys purposely engaged in an elaborate media campaign specifically designed to *cause* reputational injuries to State Farm. In doing so, the Rigsbys violated the letter and spirit of 31 U.S.C. § 3730(b)(2). As a result, the Rigsbys have forfeited any right they may have had to bring this FCA action.

Moreover, this Court has the "inherent . . . power to punish violations of [its] own orders." *In re Bradley*, 588 F.3d 254, 266 (5th Cir. 2009). "[T]he power of a court to make an order carries with it the equal power to punish for disobedience of that order." *In re Debs*, 158 U.S. 564, 594 (1895). "It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.,* 249 U.S. 134, 146 (1919); *see Anderson v. Dunn*, 19 U.S. 204 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation with power to impose . . . submission to their lawful mandates."). Indeed:

> [T]he power of courts to punish for contempts is a necessary and integral part of
> the independence of the judiciary, and is absolutely essential to the performance

_____

*(cont'd from previous page)*
(ABC News); TRG 010113-15 (ABC News); TRG 013841 (ABC News); TRG 013795-96 (ABC News); TRG 014338-42 (ABC News); TRG 017358-60 (ABC News); TRG 006568-69 (New York Times); TRG 008905-09 (New York Times); TRG 014195-97 (New York Times); TRG 006328-30 (New York Times); TRG 006516 (The Clarion Ledger); TRG 013598-99 (The Clarion Ledger); TRG 000875 (Glamour Magazine); TRG 014246-50 (Associated Press); TRG 014613 (Los Angeles Times); TRG 008987 (New Republic); TRG 000889 (CNBC); TRG 016541-42 (60 Minutes); TRG 014166-69 (Birmingham News); TRG 13598-99 (Atlanta Journal-Constitution); TRG 012712-13 (Time Magazine); TRG 012724-26 (TIME Magazine); TRG 006654-59 (Sun Herald); TRG 009959-60, 010852, 010853-54, 010931-32, 012994 (Biden); TRG 010368-69, 010743-44, 010775-76, 010784, 014843 (Taylor); TRG 012724, 013510, 013583, 013874-75, 014460-61 (Grassley); TRG 014460-61 (Leahy); TRG 000389-92 (Lott); TRG 014943-45, 015038 (Watt).

of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.

If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the "judicial power of the United States" would be a mere mockery.

This power has been uniformly held to be necessary to the protection of the court from insults and oppression while in the ordinary exercise of its duty, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of citizens.

*In re Bradley*, 588 F.3d at 265 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911)); *see Abney v. State Farm Fire and Casualty Co.*, 2008 WL 2331098, *6 (S.D. Miss. 2008) (noting "the Court's inherent power to sanction bad faith conduct."); *Bailey v. U.S. Fid. & Gty. Co.*, 1998 WL 527269, * 2 (N.D. Miss. 1998) ("The court finds it is appropriate to dismiss the claim under its inherent powers….").

To allow the the Rigsbys to continue with this lawsuit would make a mockery of this Court's Seal Order.  A clear message must be sent that this Court's Orders are to be obeyed, not intentionally defied.

## CONCLUSION

The Rigsbys repeatedly violated 31 U.S.C. § 3730(b)(2) as well as the April 26, 2006 Seal Order of this Court [1].  In order to protect the policies behind this Congressional mandate as well the integrity of this Court's directives, this case should be dismissed with prejudice as to the Rigsbys.[51]

---

[51] State Farm requests a with prejudice dismissal as to the Rigsbys and a without prejudice dismissal as to the United States.

This the 16th day of August, 2010.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:     s/*Benjamin M. Watson* (MSB #100078)
     Robert C. Galloway (MSB # 4388)
     Jeffrey A. Walker (MSB # 6879)
     E. Barney Robinson III (MSB #09432)
     Benjamin M. Watson (MSB #100078)
     Amanda B. Barbour (MSB # 99119)

ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

16

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, Benjamin M. Watson, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS  39157
(P) (601) 351-3333
(F) (601) 956-2090
maison@heidlebergpa.com
ginny@heidelbergpa.com

Scott D. Gilbert
August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC  20005
gilberts@gotofirm.com
matteisa@gotofirm.com
litherlandc@gotofirm.com
davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.

Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS  39201
(P) (601) 965-4480
(F) (601) 965-4409
(E) felicia.adams@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street
Suite 4040
New Orleans, LA  70139
(P) (504) 525-6802
(F) (504) 525-2456
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

THIS the 16th day of August, 2010.

By:    s/*Benjamin M. Watson* (MSB #100078)
          Benjamin M. Watson (MSB #100078)

Jackson 5449845v9

19