IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS

v.                                              CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY            DEFENDANT/COUNTER-PLAINTIFF

and

FORENSIC ANALYSIS & ENGINEERING CORPORATION;
HAAG ENGINEERING CO.; and ALEXIS KING                              DEFENDANTS

**STATE FARM'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE
THE BRIAN FORD REPORT AND RELATED DOCUMENTS**

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)
Amanda B. Barbour (MSB # 99119)

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY &
FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Biltmore Tower, Suite 1500
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

## TABLE OF CONTENTS

Page

I.   Preliminary Statement ................................................................................................. 1

II.  The Ford Report Is Inadmissible Hearsay .................................................................. 2

    A.   The Ford Report Is Inadmissible Hearsay within Hearsay ................................................. 3

    B.   The Ford Report Is Not Admissible under the Business Records Exception
        Because the Circumstances Surrounding Its Preparation Indicate a Complete Lack
        of Trustworthiness ................................................................................................. 5

III. The Rigsbys' Attempt to Circumvent the Hearsay Bar Fails as a Matter of Law ........................ 7

    A.   The Ford Report Has No Non-Hearsay Use ................................................................. 7

    B.   The Ford Report Is Further Excluded under Rule 403 ................................................... 10

IV.  The Ford Report Is Irrelevant to Whether the Flood Claim Was Knowingly False at the
     Time It Was Made ................................................................................................. 11

V.   The Other Evidence Referencing the Ford Report Must Also Be Excluded ............................... 14

VI.  Conclusion ................................................................................................. 15

State Farm Fire and Casualty Company respectfully submits this memorandum in support of its motion *in limine*, pursuant to Federal Rules of Evidence 401, 402, 403, 801, and 802, to exclude the Brian Ford report and all ancillary evidence and argument that reference that report.

## I.   PRELIMINARY STATEMENT

The Rigsbys intend to offer into evidence the October 12, 2005 engineering report of Brian Ford. *See* Rigsbys' Initial Disclosures (Ex. A) at 3.  Though the Rigsbys contend that the Ford report is supposedly the "strongest evidence illustrating" the "fraudulent scheme," ([348] at 20), the Ford report is inadmissible, untrustworthy hearsay that does not fit any exception.  *See* Fed. R. Evid. 801.  Indeed, discovery has revealed that the Ford report is driven by the hearsay statements of a purported witness, Mike Church, who in fact did not make the statements Ford attributed to him.  This, in addition to Ford's personal bias against finding water damage, reveals the Ford report to be nothing more than multiple layers of inadmissible hearsay.

Further, the Ford report is irrelevant because it did not exist until after the McIntosh flood claim was paid on October 2, 2005.  A report that did not exist when State Farm paid the McIntosh flood claim cannot be "evidence" that the claim was knowingly false at the time it was made.

Rather, the report was prepared at Mr. McIntosh's request in connection with the adjustment of the homeowners claim.  (*See* Ford Rep. (Ex. B) at 1; Flood Activity Log Excerpt (Ex. C).)  But this Court has held that the "essential question in this action is whether there was an overpayment of the McIntosh flood claim," not "how the overpayment affected State Farm's obligations under its homeowners policies."  ([343] at 3.)  Early on, the Court recognized "the danger of re-litigating the McIntosh homeowner's claim . . . when it is the flood claim on which this False Claim Act action is based."  ([274] at 2.)  Contrary to these rulings, the Rigsbys seek to depart from the flood claim and relitigate the McIntosh homeowners claim by introducing the Ford report and ancillary evidence related to that report.  Finally, whatever probative value the Ford report has (and it has none) would be

substantially outweighed by the risk that it would confuse the issues, mislead the jury, and waste the Court's time. Thus, the Ford report and all ancillary evidence and argument must be excluded from trial.

## II.   THE FORD REPORT IS INADMISSIBLE HEARSAY

The Ford report is a consummate example of inadmissible hearsay. It is hearsay by definition, *i.e.*, an out-of-court statement proffered by the Rigsbys to prove the cause of damage to the McIntosh house. *See* Fed. R. Evid. 801(a)-(c), 802. Thus, the Ford report is inadmissible unless the Rigsbys can prove that it ***and*** the statements within it all fit exceptions to the hearsay rule. They cannot show any of these things.

While the Rigsbys will no doubt attempt to admit the Ford report under the business records exception, that exception does not apply for two independent but interrelated reasons. <u>First</u>, the entire report relies upon a statement purportedly made first by Mr. Church to Mr. McIntosh, and second by Mr. McIntosh to Mr. Ford, who relied upon these statements as the basis for his conclusions. (*See* Ford Rep. at 2-3.) The purported statement by Mr. McIntosh is double hearsay and that of Mr. Church is triple hearsay. To admit the report into evidence, the Rigsbys must show that all levels of hearsay within the Ford report fit an exception to the hearsay rule. *See Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991); Fed. R. Evid. 805. They do not. Neither the triple-hearsay statement from Mr. Church nor the double-hearsay statement from Mr. McIntosh fits any hearsay exception.

<u>Second</u>, the business records exception does not apply where, as here, the "circumstances of preparation [of the business record] indicate lack of trustworthiness." Fed. R. Evid. 803(6); *United States v. Skilling*, No. H-04-025, 2006 WL 1006622, at *5 (S.D. Tex. Apr. 13, 2006). Discovery has revealed that Mr. Ford did not draft his report as an objective expert but was biased in favor of finding evidence of wind damage. So, too, though Mr. Ford relied on purported witness statements in lieu of physical evidence, both witnesses on whom Mr. Ford relied deny making the statements Mr. Ford

attributed to them.  The Ford report is therefore untrustworthy and should be excluded as inadmissible hearsay.

### A.    The Ford Report Is Inadmissible Hearsay within Hearsay

Mr. Ford's deposition testimony establishes that the conclusion in his report is based entirely on inaccurate and inadmissible hearsay.  In his deposition, he testified to extensive physical evidence that showed flood damage to the McIntosh house, including a 5½-foot waterline and photographic evidence of flood damage.  (*See* Ford Dep. (Ex. D) at 55:14-57:11, 114:1-115:11, 119:9-14, 129:14-16, 164:4-10.) Mr. Ford reviewed photographs of the first floor of the McIntosh house and testified that the damage appeared to be caused by flooding.  (*See id.* at 149:16-150:21, 151:2-20, 152:2-153:21.)

Yet Mr. Ford ignored the physical evidence of flood damage and relied almost exclusively on a purported "eyewitness account" of wind-driven debris that was allegedly made by Mr. Church to Mr. McIntosh and then relayed from Mr. McIntosh to Mr. Ford.  (Ford Rep. at 2-3.)  Crucially, Mr. Ford admitted that if this "eyewitness account" was inaccurate, then he would have concluded that flood – not wind – caused most of the damage to the first floor of the McIntosh house.  (*See* Ford Dep. at 128:15-129:2, 164:4-24.)

This supposed eyewitness account *never occurred*.  Mr. Church swears that he did not see any debris blown into the McIntosh house nor did he tell Mr. McIntosh that he did:

> I did not see any debris blown into the McIntosh home during Hurricane Katrina.  I never told Chris McIntosh that I saw debris blown into his house during Hurricane Katrina.  In fact, to the best of my knowledge, I never even looked at the McIntosh house on August 29, 2005, until the storm was over, and I don't recall anything about damage to the McIntosh house that day.

(Church Aff. (Ex. E) ¶ 4.)  Mr. Church has "no personal knowledge of how much damage to the McIntosh house was caused by wind and water during Hurricane Katrina."  (*Id.* ¶ 5.)  And unsurprisingly, Mr. McIntosh does not recall receiving any statement by Mr. Church about wind-driven debris.  (T. McIntosh Dep. (Ex. F) at 60:7-61:7, 63:6-64:9.)  Nor does he recall relaying any such

account to Mr. Ford.  (*Id.*)  Since the record expressly refutes the entire basis of the Ford report and the "evidence" upon which Mr. Ford relied does not exist, his report is untrustworthy, to say the least.

Moreover, even if Messrs. Church and McIntosh had stated that wind-driven debris was blown into the McIntosh house, those conversations would each be inadmissible hearsay unless the Rigsbys could show that (i) Mr. Church's supposed statement to Mr. McIntosh *and* (ii) Mr. McIntosh's supposed statement to Mr. Ford both fit an exception to the hearsay rule.  As the proponents of this hearsay evidence, the Rigsbys bear the burden of demonstrating its admissibility.  *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).  "'[I]f the source of the information is an outsider . . . Rule 803(6) does not, by itself, permit the admission of the business record.  The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.'"  *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 729 n.5 (10th Cir. 1993) (quoting *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991)).  Neither statement fits an exception.

Further, the statement that Mr. Ford erroneously attributed to Mr. McIntosh would have been made after Mr. McIntosh received full payment for his flood claim and while his homeowners claim was still pending.  An insurance policyholder's "self-serving statement" made while seeking insurance payments "simply cannot provide the circumstantial guarantees of trustworthiness" required by the hearsay exceptions.  *Rock*, 922 F.2d at 282-83; *Nyiri v. Aktiebolaget Electrolux*, No. 3:03 CV1311BN, 2005 WL 6032846, at *4 (S.D. Miss. June 16, 2005) (Barbour, J.) (excluding statement made to insurance adjuster as lacking "circumstantial guarantees of trustworthiness").

In all events, the Ford report is hearsay that contains layers of inadmissible and untrustworthy hearsay.  It is inadmissible.  *See* Fed. R. Evid. 801, 802.

**B.    The Ford Report Is Not Admissible under the Business Records Exception Because the Circumstances Surrounding Its Preparation Indicate a Complete Lack of Trustworthiness**

Under Federal Rule of Evidence 803(6), a business record is inadmissible if the "circumstances of preparation indicate lack of trustworthiness."  The fact that Mr. Ford ignored the physical evidence of flood damage and based his report on a fictitious eyewitness statement demonstrates that the Ford report lacks trustworthiness.

Indeed, the day after Mr. Ford produced his report, Robert Kochan, his boss and president of Forensic Analysis & Engineering Corporation, had grave concerns about the report's utter lack of empirical support.  (*See* Kochan Dep. (Ex. G) at 54:3-56:2.)  Mr. Kochan noted that the Ford report lacked "supportive evidence of the wind direction and surge levels," and he was "concerned that we may be relying too heavily on what some desperate homeowner who is also concerned about their own insurance coverage may have told us."  (Kochan 10/13/05 email (Ex. H).)  Mr. Kochan later told Mr. Ford that he did not consider the McIntosh report methodologically sound, stating:  "When I did the peer review of this home loss, I wondered to myself how you found it to be a wind loss when so much of the structure appeared to be unaffected by the wind," and "we both have to admit that it looks very much like flood damage from the photos that you used in your report."  (*See* Kochan 10/17/05 email (Ex. I).)

Through further investigation, Mr. Kochan determined that Mr. Ford was not acting as an objective professional.  Mr. Kochan concluded that Mr. Ford lost his objectivity and disregarded abundant physical evidence of flood damage because Mr. Ford was emotionally distraught over the destruction of his daughter's new house by storm surge during Katrina:

Q.    At some point did you come to the conclusion that Brian Ford was biased?

A.    Yes, I did.

Q.    And approximately when is it that you reached that conclusion?

A.    When he personally was talking to me and began to cry and verbalized that his own daughter['s] . . . home became totally flooded . . . and that she had just

> recently purchased it.  I mean, he gave me a very sad story of her situation, and that they were having to live with him, and he had a tree on his house and so forth.  So it became very evident that he was being affected emotionally by the circumstances that his neighbors and he himself and his family were all encountering.

(Kochan Dep. at 74:4-20.)

When Mr. Kochan determined that Mr. Ford was biased and incapable of authoring objective engineering reports, he told Mr. Ford that he could no longer work as an engineer but could remain to develop new business.  Mr. Ford declined this offer and resigned.  (*See id.* at 44:9-45:12, 74:4-75:8.)

Mr. Kochan further testified that State Farm was completely justified in questioning the validity of Mr. Ford's conclusions:

> Q.    In your opinion, Mr. Kochan, was [Lecky King] right that the photographs showed extensive water damage to the first floor of the [McIntosh] house?
>
> A.    I hate to say it, but she was absolutely right.
>
> Q.    And the data that was in the file supported the unmistakable conclusion that there was water damage to that first floor, didn't it?
>
> A.    Absolutely.

(*Id.* at 261:16-262:4.)  Indeed, the Ford report was just one of many reports by Mr. Ford in which "the physical evidence did not support [Mr. Ford's] conclusions."  (*Id.* at 256:20-257:5.)

Based on this record, the Ford report cannot qualify under the business records exception to the hearsay rule because the source of information and the circumstances of the report's preparation indicate that it is untrustworthy.  *See* Fed. R. Evid. 803(6).  "The overarching theory for the Rule 803 exceptions is that, under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence."  *Rock*, 922 F.2d at 280.  "Whether evidence is admissible under Rule 803(6) is 'chiefly a matter of trustworthiness.'"  *Skilling*, 2006 WL 1006622, at *5 (internal citation omitted); *see also Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (Senter, J.) ("the rule 803 exceptions to the hearsay rule are based" upon

"indicia of reliability").  Hearsay documents that contain "glaring inaccuracies," *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 560 (5th Cir. 1980), *abrogated on other grounds sub nom. Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991), are later contradicted by the declarant's deposition testimony, *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 n.10 (10th Cir. 1995), or contain other false statements that "indicate [a] lack of trustworthiness" and render the document inadmissible hearsay.  *United States v. Spano*, 421 F.3d 599, 604 (7th Cir. 2005).  The Ford report suffers from all of these fatal defects.

Evidence of Mr. Ford's motivation to "fabricate such statements creates too great a risk of inaccuracy or untrustworthiness to provide the circumstantial guarantees of trustworthiness contemplated by the hearsay exceptions."  *Rock*, 922 F.2d at 280; *see also Spano*, 421 F.3d at 604 ("'[W]hen the record keeper . . . is a principal with a strong motive to falsify the records, the district judge may deem them so unreliable as to be unworthy of consideration by the jury . . . .'") (citation omitted); *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993) (holding that statement should have been excluded as untrustworthy, stating that "there is still a dark cloud hovering over this particular business record").  The Ford report is not a trustworthy business record and is therefore inadmissible hearsay.

## III.  THE RIGSBYS' ATTEMPT TO CIRCUMVENT THE HEARSAY BAR FAILS AS A MATTER OF LAW

### A.  The Ford Report Has No Non-Hearsay Use

The Rigsbys have previously attempted to circumvent the hearsay bar by arguing that the Ford report can be admitted for a non-hearsay purpose.  According to the Rigsbys, the Ford report is "*only* being used to show that State Farm received the report and summarily rejected its conclusion."  ([767] at 5 n.14 (emphasis added).)[1]  This assertion is false and withers under even minimal scrutiny.  Throughout

---

[1]     Of course, the record shows quite clearly that State Farm did ***not*** "summarily reject" the Ford report's conclusions. Rather, when Ms. King reviewed Mr. Ford's report on the McIntosh property, she became concerned because the report expressly stated that there was a "five-plus-foot waterline in the home" and the "pictures [taken by Mr. Ford] depicted
*(cont'd)*

this litigation, the Rigsbys have consistently proffered the Ford report in a misplaced effort to prove their theories that:  (i) the McIntosh home was damaged by wind and not water; and (ii) State Farm ordered the reports to be changed in order to suppress this "fact."  Indeed, the Rigsbys' Amended Complaint quotes extensively from the Ford report, alleging that it is proof that the McIntosh home was damaged "principally [by] wind, and not [by] water," ([16] ¶ 67), and that "State Farm engaged in reallocation of claims from wind damage to flood damage."  (*Id.* ¶ 65.)  The Rigsbys further represented to this Court that the Ford report is "exactly . . . what this case is about," (Hr'g Tr. at 236:3 (Ex. K)), and is "the strongest evidence illustrating both the nature of the Defendants' fraudulent scheme and the manner in which the McIntosh claim exemplified that scheme."  ([348] at 20.)  And in their Opposition to Summary Judgment – *the same brief in which they assert their non-hearsay argument* – the Rigsbys again cite the Ford report to support their argument that "Brian Ford inspected the damage to the McIntosh property and he concluded that the damage was predominately caused by wind."  ([757] at 11.)  The Rigsbys' contradictory assertions that Mr. Ford's report is the cornerstone of their case but they are *not* proffering it to prove the truth of the matters asserted is patently disingenuous.

Moreover, the Rigsbys' contention that the Ford report is *only* being proffered for its non-hearsay purpose is unavailing because the inferences that the Rigsbys seek to draw from Ms. King's reaction to the Ford report's conclusion are inextricably intertwined with whether those conclusion are, in fact, true.  "If the hearsay rule is to have any force, courts cannot accept without scrutiny an offering party's representation that an out-of-court statement is being introduced for a material non-hearsay

_____

*(cont'd from previous page)*

that there was flood damage to the home," but "Mr. Ford's conclusion was that all damages to the home were wind."  (L. King Dep. (Ex. J) at 25:7-14.)  Ms. King then called Mr. Ford to go over his findings and asked him for the scientific basis supporting his conclusions, which Mr. Ford could not provide.  (*Id.* at 45:14-23.)  When Ms. King asked him to review the report and provide a scientific basis for his wind finding, he flatly refused.  (*Id.* at 46:13-19.)  Only then did Ms. King "reject" the conclusions in the Ford report.  Mr. Ford's superior, Robert Kochan, testified that Ms. King was completely justified in questioning the validity of Mr. Ford's conclusions, in light of the photographs showing extensive water damage to the first floor of the McIntosh house.  (Kochan Dep. at 261:16-262:4 ("I hate to say it, but [Ms. King] was absolutely right.").)

purpose.  Rather, courts have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid."  *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993) (district court committed reversible error by admitting hearsay statements for ostensible non-hearsay purpose of providing background and context).  Where, as here, the proffered non-hearsay use is closely related to the hearsay use, the statement is inadmissible hearsay.

For instance, in *Miles v. Great Northern Insurance Co.*, 656 F. Supp. 2d 218 (D. Mass. 2009), plaintiffs' house was destroyed by a fire that the local authorities determined was likely intentionally set.  *Id* at 221.  After the plaintiffs refused to cooperate with the insurer's investigation, the insurance company declined to pay further benefits and the plaintiffs brought suit.  *Id.*  The insurer sought to introduce an affidavit from its investigator stating that he had been told by a representative at the alarm company that serviced plaintiffs' house that the alarm was functioning properly and could have been disabled by the plaintiffs.  *Id.* at 225.  The insurer claimed that this statement was being introduced for the non-hearsay purpose of demonstrating what evidence would have been available had the plaintiffs cooperated with the insurer's investigation.  *Id.*  The court rejected this argument, explaining that this non-hearsay purpose "necessitates reliance on those statements for the truth of the matters asserted."  *Id.*

Similarly, in *United States v. Harwood*, 998 F.2d 91 (2d Cir. 1993), a codefendant argued that a reporter should be permitted to testify that the principal defendant told the reporter that codefendant was "in the wrong place at the wrong time."  *Id.* at 97.  The codefendant argued that the statement was not hearsay because it would be introduced solely to establish the fact that it was made, and not for the truth of the matter asserted.  *Id.*  The court rejected this argument, explaining that the statement is only relevant if it is true.  "Here the fact that [defendant] made the statement to [reporter] is irrelevant.  What would be relevant is that [codefendant] was in truth in the wrong place at the wrong time – not that

[defendant] thought so. ***Hence the statement is irrelevant unless it was true, in which case it would be hearsay, and inadmissible under any of the exceptions*** . . . ." *Id.* (emphasis added).[2]

This case is no different. The Rigsbys want the jury to infer that Ms. King acted with a nefarious purpose from the fact that Ms. King questioned the Ford report's conclusions. But it is impossible to draw that inference without first determining whether the Ford report's conclusion – that the McIntosh house was damaged primarily by wind and not water – is correct. In other words, the Ford report has absolutely no evidentiary value except for its truth (or lack thereof). The law instructs that where, as here, the statements "have no evidentiary value unless they are true," they are inadmissible hearsay. *United States v. Kostopoulos*, 119 F. App'x 308, 311 (2d Cir. 2004).

### B.    The Ford Report Is Further Excluded under Rule 403

Even if the Ford report's non-hearsay purpose had any evidentiary value independent of its hearsay value, it still must be excluded under Federal Rule of Evidence 403 because its probative value would be substantially outweighed by the danger of unfair prejudice and jury confusion. It is well settled that "'the mere identification of a relevant non-hearsay use of evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice.'" *United States v. Kaiser*, 609 F.3d 556, 572-73 (2d Cir. 2010) (citation omitted). For example, in an age discrimination case, the Fifth Circuit affirmed the exclusion of otherwise-admissible EEOC evidence because it "spoke directly to the ultimate issue in the case" and the jury would be prejudiced by exposure to the EEOC's conclusion that age discrimination occurred. *Guerra v. N.E. Indep. Sch. Dist.*, 496 F.3d 415, 419 (5th Cir. 2007).

---

[2]    *See also United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) (district court committed reversible error by allowing statements into evidence for the purported non-hearsay purpose of providing "background" information to show the circumstances surrounding the events, and explaining that "there was no purpose for the hearsay testimony except for its truth," *United States v. Midyett*, 256 F.R.D. 332, 336 (E.D.N.Y. 2009) (rejecting video evidence submitted for supposed non-hearsay purpose because "the court is hard pressed to accept the government's contention that the [evidence] is not being offered for the truth of the matter asserted")).

Similarly, in *Moore v. Metropolitan Water Reclamation District of Greater Chicago*, No. 02 C 4040, 2004 WL 2958769 (N.D. Ill. Nov. 22, 2004), plaintiff in a sexual harassment suit sought to introduce into evidence an investigatory report concerning sexual harassment charges brought against the defendant in order to refute the defendant's defense that it took reasonable steps to respond to allegations of sexual harassment. *Id.* at *4. The court excluded the report, holding that even if the report was admissible under a hearsay exception, it was unduly prejudicial under Rule 403 because "[t]here is a possibility that the jury would give substantial weight to the findings in the [] Report that [plaintiff] seeks to admit. . . . As a result, the jury might reach a conclusion regarding [plaintiff]'s claim without properly assessing the evidence at trial." *Id.* at *6.

The same concerns that warranted exclusion in *Guerra* and *Moore* are manifest in this matter. Here, the Rigsbys are seeking to introduce the Ford report precisely because they believe it is their "strongest evidence illustrating both the nature of the Defendants' fraudulent scheme and the manner in which the McIntosh claim exemplified that scheme." ([348] at 20.) Nor can there be any serious dispute that the Rigsbys are hoping that a jury will ignore the abundant physical, photographic, and testimonial evidence of catastrophic flood damage and give substantial weight to the findings of the Ford report.

## IV. THE FORD REPORT IS IRRELEVANT TO WHETHER THE FLOOD CLAIM WAS KNOWINGLY FALSE AT THE TIME IT WAS MADE

The Ford report is not relevant to whether the McIntosh flood claim was knowingly false when it was made because it was paid on October 2, 2005, before the Ford report was ordered. (*See* Hr'g Tr. at 288:5-13.) The October 12, 2005 Ford report was only created at Mr. McIntosh's request in connection with the homeowners claim, and this Court has expressly limited the scope of this case to evidence pertaining to the adjustment of the flood claim. "It is the amount of the flood insurance claims that the Relators allege to be false." ([261] at 2.) This Court has repeatedly held that the trial of this case will be limited to the McIntosh flood claim. (*See, e.g.*, [363] at 1 ("The trial of this action will be limited to the

11

McIntosh claim"); [343] at 10 ("I will limit the presentation of evidence in this action to facts relevant to the McIntosh claim"); [447] at 1 ("this lawsuit is proceeding with respect to the McIntosh claim only"); [490] at 1 ("the only relevant discovery at this stage of litigation involves Defendants' alleged fraud in adjusting the McIntosh insurance claim").)  The Ford report was prepared after the flood claim was paid and is outside the scope of the issues in this case.  Thus, it is irrelevant and inadmissible.

The Ford report has no logical bearing on whether the flood claim was knowingly false when made; it was created after the flood claim was paid.  It is well established that whether a claim is knowingly false is determined at the time it is made.  *See United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 875 (S.D. Tex. 2007) ("'[T]he falsity of a claim is determined *at the time of submission*.'") (alteration in original) (quoting *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 681 (5th Cir. 2002) (emphasis in original)); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006) ("[F]alse claims must in fact be 'false when made.' . . .  In short, . . . a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act.") (citations omitted); *United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) ("The test of whether a claim is false must be as of the date when the claim is made.").  The Ford report, prepared for the adjustment of the homeowners claim, is irrelevant to whether the prior flood claim was knowingly false when it was made, and is therefore irrelevant.

Simply put, the Ford report has nothing to do with the prior adjustment of the McIntosh flood claim.  It was not even commissioned until October 4, 2005, at the request of Mr. McIntosh, in connection with the adjustment of the McIntosh homeowners claim.  (*See* Ford Rep. at 1; Flood Activity Log.)  All three State Farm representatives involved in the adjustment of the McIntosh claim – Cody Perry, Kerri Rigsby, and John Conser – testified that they had no trouble concluding, based on the site inspection and the abundant physical evidence, that the McIntosh property sustained catastrophic flood damage well in excess of policy limits.  (*See* Perry Dep. (Ex. L) at 177:12-179:21; Hr'g Tr. at 220:13-

221:7, 274:14-16, 277:15-18, 286:14-17, 287:9-14, 302:3-7, 302:14-19 (K. Rigsby); Conser Dep. (Ex. M) at 104:11-17, 105:24-106:12, 148:13-20, 149:12-151:11.)  There was simply no need to retain an engineer to complete the proper adjustment of the McIntosh flood claim.  Nor does FEMA require an engineering opinion.  David Maurstad, the former head of the NFIP, expressly rejected any suggestion that an adjuster should have withheld payment under the flood policy until the wind damage was assessed, rejecting such a practice as "unconscionable" and contrary to the letter and spirit of the NFIP. (Maurstad Dep. (Ex. N) at 126:1-127:12.)  Determining wind damage was "not needed to determine the amount of damage caused by flood."  (*Id.* at 121:23-122:21.)  "[D]etermining [the] amount [of flood damage] is what is critical to appropriately adjusting the claim."  (*Id.*)

> Q.   But by that, are you also saying that you didn't think it was necessary for the flood adjuster to have information about wind and wind damage to the property they were adjusting?
>
> A.   Correct.
>
> Q.   They didn't need to know anything about the wind?
>
> A.   That's correct.

(*Id.* at 122:22-123:6 (objection omitted).)  In keeping with the overwhelming physical evidence, State Farm paid the McIntoshes the full limits under their flood policy on October 2, 2005.  Not surprisingly, Kerri Rigsby has freely admitted that the Ford report had no influence over the adjustment of the McIntosh flood claim because it did not even exist "when we adjusted the claim."  (*See* Hr'g Tr. at 288:15-22.)  Thus, as the evidence amply demonstrates, the Ford report has no bearing on the adjustment of the federal flood claim.  It should be excluded as irrelevant.

Even if the Ford report had any probative value, that value would be substantially outweighed by the danger that it would confuse the issues, mislead the jury, and waste the Court's time, especially since the McIntosh homeowners claim has already been resolved and settled.  (*See* [274] at 2.)  The trial of this case is "proceeding with respect to the McIntosh [flood] claim only."  ([490] at 1.)  Introduction of the Ford report, which is not relevant to the McIntosh flood claim, "poses the danger of confusion of the

13

issues, which may tend to mislead the jury and would otherwise cause delay and waste time." *See Aiken v. Rimkus Consulting Group, Inc.*, No. 1:06cv741, 2007 WL 4245906, at *2 (S.D. Miss. Nov. 29, 2007) (Senter, J.), *aff'd in part*, 333 F. App'x 806 (5th Cir. 2009); *accord Huynh v. State Farm Fire & Cas. Co.*, No. 1:06cv1061, 2008 WL 80759, at *2 (S.D. Miss. Jan. 7, 2008) (Senter, J.). The Ford report must therefore be excluded from evidence.

## V.   THE OTHER EVIDENCE REFERENCING THE FORD REPORT MUST ALSO BE EXCLUDED

Just as the Ford report is inadmissible pursuant to Federal Rules of Evidence 401 and 403, so is other evidence that references and discusses the Ford report. Such evidence includes, for example, emails between Forensic employees and emails between State Farm and Forensic employees, and an unidentified, unsigned handwritten note referencing the Ford report.[3] For the same reasons that the Rigsbys should not be permitted to introduce the Ford report, the Rigsbys should likewise not be permitted to enter into evidence documents that reference the report as a backdoor way to introduce the substance of the hearsay-riddled, irrelevant Ford report.

Further, several of the documents referencing the Ford report constitute inadmissible hearsay. By definition, emails are out-of-court statements, and four of these documents are emails between Forensic employees. Thus, these emails, offered for the truth of the matter asserted, are inadmissible hearsay that fit no exception. *See, e.g., Tunica Web Adver., Inc. v. Barden Miss. Gaming, LLC*, No. 2:03CV234, 2008 WL 3833229, at *1-2 (N.D. Miss. Aug. 14, 2009); *accord Stevens Shipping & Terminal Co. v. M/V Japan Rainbow II*, No. Civ. A. 01-669, 2002 WL 1339141, at *1 (E.D. La. June 17, 2002). In addition, one of the emails contains a double-hearsay statement repeating Mr. McIntosh's statement about other engineering reports. (Ex. Q.) This email, in addition to being irrelevant, is further

---

[3]   *See* Jan. 30, 2006 email from Jack Kelly to Randy Down (Ex. O); handwritten note (Ex. P); Aug. 31, 2006 email from Terry Blalock to State Farm employees (Ex. Q); Oct. 17, 2005 email from Brian Ford to Robert Kochan (Ex. R); Oct. 17, 2005 email from Adam Sammis to Robert Kochan & Nellie Williams (Ex. S); Oct. 18, 2005 email from Randy Down to Robert Kochan & Nellie Williams (Ex. T).

inadmissible for containing a double-hearsay statement that fits no hearsay exception. *See Rock*, 922 F.2d at 280; Fed. R. Evid. 801, 805.

Because these documents discussing the Ford report are all irrelevant and constitute inadmissible hearsay, they (and any other evidence that references the Ford report) should likewise be excluded along with the Ford report.

## VI.   CONCLUSION

For the foregoing reasons, State Farm respectfully urges this Court to grant its motion *in limine* in its entirety and exclude Brian Ford's engineering report and all other evidence or argument that reference the Ford report.

This the 24th day of September, 2010.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:    /s/ *E. Barney Robinson III* (MSB # 09432)
       Robert C. Galloway (MSB # 4388)
       Jeffrey A. Walker (MSB # 6879)
       E. Barney Robinson III (MSB # 09432)
       Benjamin M. Watson (MSB # 100078)
       Amanda B. Barbour (MSB # 99119)

       ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com

(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

James R. Robie (CA State Bar # 67303), PHV
ROBIE & MATTHAI
Suite 1500
Biltmore Tower
500 South Grand Avenue
Los Angeles, CA  90071
(P) (213) 706-8000
(F) (213) 706-9913
(E) jrobie@romalaw.com

*PRO HAC VICE*

16

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the CM/ECF system and as otherwise indicated below:

**Via E-mail**
Russell J. Gaspar
Cohen Mohr LLP
Suit 504
1055 Thomas Jefferson St. NW
Washington, DC 2007

Frank W. Trapp
Phelps Dunbar, LLP
4270 I-55 North
Jackson, Mississippi 39211-6391

COUNSEL FOR THE RENDON GROUP, INC. AND JOHN RENDON

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT OSHINSKY LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Stan Harris
Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
2510 14th Street
Suite 910
Gulfport, MS 39501
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

This the 24th day of September, 2010.

/s/ *E. Barney Robinson III* (MSB # 09432)
E. Barney Robinson III (MSB # 09432)