UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA
*EX REL.* CORI RIGSBY and KERRI RIGSBY                                                         RELATORS

V.                                                            CIVIL ACTION NO.1:06CV0433 LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY, *ET AL.*                           DEFENDANTS

<u>MEMORANDUM OPINION ON STATE FARM FIRE AND CASUALTY COMPANY'S
MOTIONS TO EXCLUDE EXPERT TESTIMONY OF DAVID J. FAVRE, JR.</u>

The Court has before it two motions [300] [706] filed by State Farm Fire and Casualty Company (State Farm) to exclude from evidence the testimony of Relators' expert David J. Favre, Jr. (Favre).  For the reasons set out below, these motions will be granted in part and denied in part.

Relators have identified Favre as an expert who will be called to testify concerning the extent of the flood damage to the McIntosh property.  Favre, who has previously stated an opinion on this issue while he was employed to testify on behalf of the McIntosh family, has now estimated the flood damage to be between $89,417.05 and $131,155.89, depending on whether certain damage is attributed to broken water pipes (yielding the lower estimate) or to storm surge flooding (yielding the higher estimate).  According to State Farm, Favre's previous estimate for this same damage was considerably higher.

Favre accepts the broken water pipes scenario to account for the damage he excluded in arriving at his lower flood damage estimate of $89,417.05.  This theory is based on the analysis done by another of the Relators' expert witness, Ralph Sinno (Sinno), who is expected to testify that the storm winds compromised the structural integrity of the McIntosh home before the property was flooded.  Sinno is of the opinion that roof damage and broken water pipes, both attributable to the effect of storm winds acting on the structure, account for much of the water damage to the ground floor of the McIntosh residence.

Even setting the broken water pipe theory aside, Favre's higher estimate ($131,155.89) is well below the $250,000 flood insurance policy limit State Farm paid to settle the McIntosh claim for structural damage under their Standard Flood Insurance Policy (SFIP).  Relators contend that the difference between Favre's estimates and this $250,000 payment constitutes a false claim presented to and paid by the United States.  Relators contend that State Farm knowingly presented this false claim as part of a fraudulent scheme to maximize its payment of flood insurance benefits (for which it was reimbursed by the United States) in order to reduce its payment of wind insurance benefits (for which it received no government reimbursement).

As grounds for its motions, State Farm asserts: 1) Favre's used an incorrect water level (2.1 feet) inside the McIntosh property to arrive at his estimates; 2) Favre's estimates are flawed because Favre relied on Sinno's theory that much of the water damage on the first floor of the property was caused by broken water pipes, a theory State Farm contends to be invalid; 3) Favre used improper values to make an Xactimate approximation of the water damage; 4) Favre's theory that use of a single adjustor for assessing both flood damage and wind damage constitutes a conflict of interests between State Farm and the United States; and 5) Favre's testimony does not support the inference that State Farm knowingly made a false claim in connection with the McIntosh property.

### The Water Line Inside the McIntosh Property

Favre acknowledges that determining the water line inside a given property is one of the essential steps in evaluating flood damage. Damage below the water line is ordinarily considered flood damage, and damage above the water line is ordinarily considered wind damage.

When a fact is in dispute, an expert is entitled to rely on what he believes to be the truth. This will often require an expert to decide which of the disputed versions of the facts to accept. As long as there is substantial evidence to support his decision, the expert is entitled to make his own evaluation for purposes of reaching his opinions and conclusions. Thus, Favre is entitled to base his opinions on a waterline of 2.1 feet if there is substantial evidence that this is the height of the water inside the McIntosh property.

According to the report of Robert Dean (Dean), one of State Farm's experts, the height of the storm surge flooding in the area of the McIntosh property, determined by FEMA, was 18.6 feet above sea level. Dean estimates the first floor of the McIntosh home is 16.5 feet above sea level. If these two figures are correct, this is substantial evidence to support the conclusion that the flood water inside the first floor of the McIntosh property reached a depth of 2.1 feet. Of course, this is not a precise measure of the water level, given the storm conditions that kept the water in motion, but it is a valid estimate or approximation, and one Favre is entitled to rely upon in forming his opinions.

### Favre's Use of Sinno's Theory Concerning the Rupture of Water Pipes Inside the McIntosh Property

Ralph Sinno, one of the Relators' experts, theorized that the wind forces on the McIntosh dwelling were sufficient to compromise the structural integrity of the building before the arrival of the storm surge. Sinno expressed his opinion that these wind forces may have forced enough movement in the structure to cause interior water pipes

to rupture, leading to extensive water damage not properly attributable to storm surge flooding.

I have previously ruled that Sinno is qualified to give testimony as an expert witness in this case. It follows that Favre may rely on Sinno's expert opinions in reaching his own conclusions concerning the extent of flood damage to the McIntosh property. While Rule 703 does not require a court to admit an opinion based on "facts that are indisputably wrong," disputed facts can easily give rise to conflicting opinions, none of which should be excluded from evidence. *See Guillory v. Domtar Indus., Inc.,* 95 F. 3d 1320, 1331 (5th Cir. 1996).

### The Values Favre Used in Preparing his Xactimate Estimate

Xactimate is, as I understand it, a computer program generally recognized by insurance adjustors as a reliable method of estimating physical damage to insured property. The program allows the user to input a number of variables reflecting the extent of the physical area that sustained damage (so many square feet of drywall, so many square feet of carpeting, etc.) and the cost of the material necessary to repair or replace the damaged property.

State Farm contends that the variables Favre used result in a gross understatement of the actual flood damage the property sustained. According to State Farm's memoranda submitted in support of this motion [301], Favre used the wrong data for nearly every variable allowed by the Xactimate program. While this argument is vigorously pressed, State Farm has offered no evidence, in the form of an affidavit or otherwise, to support the argument. Without such evidence, the Court is not in a position to evaluate the merits of the State Farm argument on this point.

State Farm also argues that because the McIntosh property has now been repaired, any estimate of the repair cost has been rendered irrelevant. While this argument might have considerable weight if the issue were the actual cost of repairs, it is less persuasive in the context of this case, where the issue is whether, *based on the information available at the time*, i.e. before the repairs were done, State Farm intentionally overpaid the McIntosh flood claim, as the Relators have alleged. Again, State Farm has not offered evidence, by affidavit or otherwise, that the repairs done to the McIntosh property reflect only the restoration of the property to its pre-storm condition, i.e. that the actual costs incurred did not reflect any changes or improvements to the pre-storm condition of the structure.

I am of the opinion that because the merits of this case include questions about State Farm's use of the Xactimate and Xactotal damage estimation programs, Favre's use of one of these programs is permissible. This is particularly true since it is my understanding that State Farm made use of one or both of these programs in arriving at its original estimate of the flood damage sustained by the McIntosh property.

**Favre's Opinion on the Conflict of Interest Issue**

State Farm objects to Favre's offering his opinion that–in the context of adjusting a loss that includes both flood damage and wind damage–a conflict exists between the interest of the insurer, who must pay for damage attributable to wind, and the interest of the United States, who must pay for damage attributable to flooding. State Farm also objects to Favre's anticipated testimony concerning the duties that arise in these circumstances.

In connection with the flood insurance program, there exists an acknowledged potential for a conflict of interest, and, with full knowledge of this potential problem, the United States elected to go forward with the current program requiring private insurers to adjust both flood damage claims and wind damage claims to the properties covered by both types of policies. Because there has been full disclosure of the potential for a conflict of interests to occur, and because the United States elected to proceed in light of that disclosure, I find that allowing Favre to testify concerning the existence of this conflict of interest carries a great risk of confusion of the issues in this action. The key issue is not whether State Farm was operating in circumstances that could give rise to a conflict of interests, that is a given; the key issue is whether, in these circumstances, State Farm discharged its responsibility to adjust flood claims fairly and honestly, i.e. to make a good faith effort to pay full compensation for existing flood damage and no more. The undisputed fact that State Farm was acting in circumstances that give rise to a potential conflict of interest sheds no substantial light on whether State Farm acted properly, and any minimal light that fact may shed on this issue if far outweighed by the risk that the jury will infer that State Farm acted improperly because it was operating in a situation that gives rise to a potential conflict of interest. For this reason, I will not permit Favre to testify concerning this conflict of interest.

An appropriate order will be entered.

Decided this 17th day of November, 2010.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE