UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
*EX REL.* **CORI RIGSBY and KERRI RIGSBY**                           **RELATORS**

**V.**                                                  **CIVIL ACTION NO.1:06CV433 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY,** *ET AL.*       **DEFENDANTS**

### MEMORANDUM OPINION ON STATE FARM FIRE AND CASUALTY'S MOTION [778] TO EXCLUDE THE REPORT OF BRIAN FORD AND RELATED DOCUMENTS

The Court has before it the motion [778] of State Farm Fire and Casualty Company (State Farm) seeking to exclude from evidence the report prepared by Brian Ford (Ford) after his inspection of the McIntosh property. State Farm also seeks the exclusion of all other documents related to that report. For the reasons set out below, this motion will be granted in part and denied in part.

Ford is an engineer. In October, 2005, Ford was employed by Forensic Analysis and Engineering Corporation (Forensic). State Farm hired Forensic to perform engineering services to evaluate policyholders' claims for storm damage. Forensic assigned Ford to inspect the McIntosh property and to prepare an engineering report for the use of State Farm.

Ford inspected the McIntosh property on October 7, 2005, and, five days later, he prepared the report that is now being challenged. At the time this report was prepared, the McIntosh flood damage claim had been paid, and the McIntosh wind damage claim was still open.

State Farm's employee Alexis King (King), a claims supervisor whose responsibilities included resolution of the McIntosh claim, read Ford's report and was dissatisfied with Ford's and thus with Forensic's conclusion found on page 3 of the report: "It is [Forensic's] opinion that the interior damage of the structure is primarily the result of the failure of the windows, walls, and doors due to wind." King's response to receiving this report lies near the heart of this controversy.

Upon reading the Ford report, King became angry, and she placed a telephone call to Forensic. Speaking with one of Ford's supervisors, Mr. Sammis, King stated: "I told him that it appeared Mr. Ford could not tell the difference between wind and water." During this call, King also spoke directly with Ford concerning his report. (Deposition of Alexis King)

King also affixed a handwritten note to the Ford report:

*Put in Wind*
*file - Do Not Pay Bill*
*Do Not discuss*

King also made a decision not to engage the services of Forensic to make future engineering studies of policyholders' damages.  Forensic later persuaded her to allow Forensic to reinspect the McIntosh property using a different engineer, Jack Kelly (Kelly).  Kelly's report is quite similar to Ford's report as far as wind damage is concerned, but Kelly's report is more expansive in discussing damage to the McIntosh property caused by storm surge flooding.

State Farm contends that the Ford report is inadmissible hearsay and that it contains a statement that is double hearsay .  Relators argue that the report is admissible as a business record.

Ford identified his report during his deposition testimony, and he stood by the opinions he expressed in the report.  According to Ford, at the time he prepared his report, he was under instructions to determine only the "predominant" cause of the damage to the property.  This was a change from his earlier instructions.  Ford testified: " . . . when I first started doing the assessments, I was asked to do - - to state what damage was done by wind and what damage was done by rising water.  Shortly after those reports started going in, I was asked to put a percentage on each, to change our process to put a percent of damage by water and percent of damage by wind.  Shortly after that, I was asked to only state a predominant cause of damage." (Ford deposition, Document 793, Exhibit 1, page 36, lines 4-15).

If the Relators intend to introduce Ford's report as part of his deposition testimony, I do not believe State Farm's hearsay objection would be valid.  Ford's having identified his report and having vouched for its accuracy and truthfulness while under oath takes it out of the hearsay category.

Standing alone, I agree with the Relators that the report qualifies as a business record, even though State Farm correctly points out that it contains a statement that is itself hearsay.  The report reflects, under the sub-heading Site Observations: "According to Mr. McIntosh, a neighbor–Mr. Mike Church–reported that houses were blown apart and debris was thrown into the McIntosh house at approximately 8 AM and the floodwater [sic] began rising at 11 AM."  Mr. Church denies having made this statement to Mr. McIntosh. (Affidavit of Mike Church, Document 778, Exhibit 5).

In these circumstances, I will allow a copy of the Ford report to be introduced, but only with the hearsay statement concerning Mr. Church redacted.  An appropriate order will be entered.

**SO ORDERED** this 23rd day of November, 2010.


         s/ <u>L. T. Senter, Jr.</u>
         L. T. SENTER, JR.
         SENIOR JUDGE