IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CORI RIGSBY and KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE NO. 1:06cv433-LTS-RHW |
| STATE FARM FIRE AND CASUALTY CO. | DEFENDANT/COUNTER-PLAINTIFF |
| and | |
| HAAG ENGINEERING CO. | DEFENDANTS |

**STATE FARM'S RESPONSE MEMORANDUM IN OPPOSITION TO
[880] THE RIGSBYS' MOTION TO COMPEL**

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)
Amanda B. Barbour (MSB # 99119)

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

OF COUNSEL:

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

## TABLE OF CONTENTS

Page

**TABLE OF CONTENTS** ..................................................................................................... I

**INTRODUCTION** ................................................................................................................ 1

    I. SUMMARY OF ARGUMENT ............................................................................................. 1

    II. THE GENESIS OF THIS DISPUTE .................................................................................... 1

**ARGUMENT** ........................................................................................................................ 7

    I. PURSUANT TO THE PARTIES' AGREEMENT, ALL BUT TWO OF THE LITIGATION FILE DOCUMENTS NEED NOT BE LOGGED OR PRODUCED ............................ 7

    II. STATE FARM DID NOT WAIVE PRIVILEGE ON THE TWO IN-HOUSE LEGAL MEMORANDA ................................................................................................................................ 8

    III. STATE FARM HAS NO DUTY TO RE-PRODUCE DUPLICATIVE DOCUMENTS ................. 10

**CONCLUSION** .................................................................................................................. 11

**CERTIFICATE OF SERVICE** ........................................................................................... 13

**INTRODUCTION**

I.  **SUMMARY OF ARGUMENT**

In mid-December 2010, during the course of reviewing a number of documents as part of the defense of this case, State Farm's counsel discovered three boxes of Zone Litigation Files related to the prior *McIntosh* homeowners' suit. State Farm disclosed the documents to the Rigsbys and provided them two separate privilege logs. Thereafter, apparently seeking to paint State Farm in an unjustified poor light during the pendency of the remaining dispositive motions, the Rigsbys have filed an unwarranted motion – seeking unwarranted relief.

The Rigsbys agreed long ago that State Farm need not log *McIntosh*-related privileged materials created on or after October 23, 2006 – the date the *McIntosh* homeowners' suit was filed. These boxes contain post-October 23, 2006 litigation materials that are attorney/client privileged and/or Rule 26(b)(3) protected materials, as well as two in-house counsel memoranda that predate the *McIntosh* suit – both of which have been properly privilege-logged. ([881-5] & [881-13].)  *The boxes do not contain any non-privileged materials that have not previously been produced to the Rigsbys.*

In fact, due to the Parties' agreement regarding privileged *McIntosh*-related materials dated from October 23, 2006 forward, State Farm had no obligation to even disclose the existence of the three boxes, except for the two specific memoranda from in-house counsel that predate the *McIntosh* suit. State Farm having done so in good faith, the Rigsbys' response was to file this motion seeking to force the production of privileged documents to which the Rigsbys have no legal right.

II.  **THE GENESIS OF THIS DISPUTE**

In their Memorandum, the Rigsbys concede that State Farm committed to produce documents responsive to Request for Production No. 1 "subject to certain limited objections…."

([881] at 1.)  Tellingly, the Rigsbys do not mention the substance of their prior agreement with State Farm regarding the scope of Request No. 1 – an agreement critical to understanding the current dispute.

As this Court is aware, the McIntosh property at issue in this Action was previously the subject of a policyholder lawsuit brought by the McIntoshes on October 23, 2006.[1]  As a result, following receipt of the Rigsbys' First Set of Requests for Production of Documents, State Farm's counsel wrote the Rigsbys' counsel, stating:

> A number of Relators' Discovery Requests appear to seek materials that are clearly protected by the attorney-client privilege and/or the attorney work-product doctrine.  For example, Document Request No. [1][2] seeks '[a]ll documents related to the McIntosh home and the damage it sustained as a result of Hurricane Katrina.'  Read literally, this would extend to communications between State Farm and its counsel, including communications concerning the litigation filed by the McIntoshes against State Farm on October 23, 2006.

(12-31-2009 Letter from R. Galloway to C. Maison Heidelberg, Resp. at Ex. A.)

Recognizing the circumstances created by this procedural fact, the Rigsbys' counsel proposed in reply that:

> As a compromise, **we suggest that communications between the parties and their outside counsel need not be produced or logged, but that responsive communications from in-house attorneys made on or before October 23, 2006, [the date the McIntoshes filed suit] will be logged, or produced if for any reason they are not privileged.**

(01-07-2010  Letter from A. Matteis, Jr. to R. Galloway, Resp. at Ex. B.) (emphasis added).

State Farm promptly accepted this compromise and communicated its understanding that "Relators are not seeking, and thus there is no necessity for making a privilege log of, any communications with outside counsel or for communications between in-house counsel and our

---

[1] *Thomas C. McIntosh and Pamela McIntosh v. State Farm Fire & Casualty Co.*; 1:06cv1080-LTS-RHW (S.D. Miss.); https://ecf.mssd.uscourts.gov/cgi-bin/DktRpt.pl?698094374092676-L_452_1-1

[2] The letter inadvertently referenced "Request No. 2."  This was a typographical error.  The request quoted was, in fact, Request No. 1, which is the request at issue in this motion.

2

client on or after October 23, 2006, when the McIntosh lawsuit was filed." (01-08-2010 Letter from R. Galloway to A. Matteis, Jr., Resp. at Ex. C.)

Thereafter, when it formally replied to the Rigsbys' Requests for Production, State Farm reiterated the Parties' agreement by stating:

> **Response No. 1:**
>
> State Farm objects to this request because it is unlimited in scope as to time and, for example, seeks discovery of information concerning events well after State Farm paid the McIntosh flood claim on October 2, 2005. State Farm also objects to the extent that this request calls for the production of information protected by the attorney-client privilege and/or the attorney work-product doctrine. **With respect to objections based on the attorney client privilege and/or the attorney work-product doctrine, State Farm incorporates herein its January 8, 2010 agreement with counsel for Relators that Relators are not seeking any communications at any time with State Farm's outside counsel, nor do they seek communications on or after October 23, 2006 involving State Farm's in-house counsel**. Subject to these objections, State Farm has produced the McIntosh flood claim file, number 24-Z494-638 bearing Bates Numbers SJ0000001-SJ000075, SJ000867-SJ001373, the McIntosh homeowners claim file, number 24-Z178-602 bearing Bates Numbers SJ000224-SJ000366, and the expert reports of State Farm previously served in this action on April 20, 2009. See also the additional documents that have been or will be produced by State Farm. Any privileged or protected documents will be listed on a privilege log.

(01-11-2010 State Farm Responses and Objections to Relators' First Set of Requests for Production of Documents, [881-2] at 2-3) (emphasis added).

As noted above, the McIntoshes filed their policyholder suit on October 23, 2006 – over three years before the Rigsbys' November 23, 2009 document requests.  When the McIntoshes filed suit in 2006, State Farm sent its homeowner claim file to its outside counsel who, after Bates-numbering the file, returned a copy to the State Farm Litigation Team Manager assigned to the lawsuit. (Montgomery Decl. at ¶4, Resp. at Ex. E.)

Litigation files were maintained by the Litigation Team at the Special Handling Unit in Hattiesburg, Mississippi, by the Section Manager for Mississippi (Terry Blalock in Jackson, Mississippi), and by the Claim Consultant assigned to the Zone and the lawsuit (Mike Tucker in

Bloomington, Illinois).  (*Id.* at ¶5.)  After the *McIntosh* homeowner suit settled and there were no further outstanding issues for the Claim Consultant and Section Manager to address, their litigation files were sent to the State Farm Litigation Team in Hattiesburg for consolidation, and subsequently forwarded with the Litigation Team File to records storage in Birmingham, Alabama.[3]  (*Id.*)

Under the terms of the agreement between State Farm and the Rigsbys' counsel, the documents in these post-suit *McIntosh* litigation files would not be a source of responsive documents.  Indeed, litigants routinely enter into similar agreements exempting post-litigation files precisely so that litigation-related documents do not have to be searched and logged.  Yet it is these post-*McIntosh* suit litigation files that the Rigsbys now move to compel the production of.

In December 2010, these litigation files – which fit within three banker's boxes – were sent to Bloomington, Illinois as part of a response to certain requests for information made by the Corporate Law Department as part of the defense of this case.[4]  (Barbour Decl. at ¶3, Resp. at

---

[3] The Rigsbys state that these documents were discovered in the office of Terry Blalock.  ([881] at 2.)  The Rigsbys cite the February 7, 2011 letter from State Farm counsel Amanda Barbour as support for this contention; however, the letter simply states that the local zone identified these boxes.  ([881-9] at 2.)

[4] The fact that there were three boxes of documents is not surprising.  The *McIntosh* action had a staggering number of filings and documents.   *See* (*McIntosh* [446] at 1, n.1, Resp. at Ex. H) ("This lawsuit was filed October 23, 2006.  The Court notes that as of September 7, 2007, the docket reflects 445 filings"); (*McIntosh* [671] at 2, n.1, Resp. at Ex. I) ("The Court has previously ruled upon a staggering number of motions in this case .... The motion presently under review is document [571].  This case is not yet a year old, and filings now number well over 650, and that number does not reflect the countless text orders which the Court has entered").

By the time the Judgment of Dismissal [1316] was entered in *McIntosh* on September 15, 2008, the filings on the docket numbered over 1,300 in this Court alone and did not, of course, include the docket entries from the miscellaneous proceedings commenced in connection with subpoenas in the Eastern District of Arkansas (4:07-mc-00022-SWW), the Eastern District of Tennessee (4:07-mc-00002), the Western District of Louisiana (5:07-mc-00035-MLH), and the Middle District of Georgia (3:07-MC-03 (CDL)).

Ex. D & Montgomery Decl. at ¶6, Resp. at Ex. E.)  In the course of their review of the requested information, State Farm's counsel came across the three banker's boxes and realized that they included certain litigation files for the *McIntosh* homeowner suit.  (Barbour Decl. at ¶3, Resp. at Ex. D.)

The files at issue are the Litigation Team File, compiled and maintained at the Special Handling Unit in Hattiesburg, Mississippi, the Claim Consultant Litigation File, compiled and maintained by the Claim Consultant supervising this litigation which is titled as "Claim Consultant's File Not To Be Commingled", and the Zone Section Manager Litigation File, which is similarly titled "Section Manager's File Not To Be Commingled." (Barbour Decl. at ¶4, Resp. at Ex. E.)  These files contain such items as pleadings and communications from outside counsel regarding the *McIntosh* homeowner lawsuit.  (Barbour Decl. at ¶4, Resp. at Ex. D.)

Despite the fact that these litigation files are privileged and/or Rule 26(b)(3)-protected – as well as nonresponsive to the Rigsbys' production requests, pursuant to the limitation agreement regarding October 23, 2006 forward materials – State Farm informed the Rigsbys of the existence of these three banker's boxes and sent them a general privilege log of their contents. ([881-5] at 2.)  On January 21, 2011, following receipt of this log, the Rigsbys' Mississippi counsel Maison Heidelberg discussed the contents of the boxes by phone with State Farm Mississippi counsel Amanda Barbour and Barney Robinson.  (Barbour Decl. at ¶5, Resp. at Ex. D.)

In that call, Mrs. Barbour explained the general nature of these documents and that they are Zone Litigation Files, compiled after the filing of the *McIntosh* suit.  (Barbour Decl. at ¶6, Resp. at Ex. D.)  At the conclusion of that call, State Farm thought the matter was closed, as Mr. Heidelberg appeared satisfied with State Farm's explanation.  (Barbour Decl. at ¶6, Resp. at Ex.

5

D.)

On January 25, 2011, however, the Rigsbys' Washington, D.C. counsel e-mailed a letter to State Farm's counsel demanding that *all* of these documents be produced. ([881-6] at 2-3.) On February 1, 2011, State Farm wrote to D.C. counsel and provided them copies of the letters memorializing the agreement limiting the need to log certain privileged and/or Rule 26(b)(3) protected-documents – specifically, attorney communications after *McIntosh* was filed. (02-01-2011 Letter from A. Barbour to A. Matteis, Jr., Resp. at Ex. F.)

In a subsequent letter, State Farm's counsel attempted to allay the Rigsbys' concerns by further describing the content of these boxes. *See* (02-07-2011 Letter from A. Barbour to L. Martinez, Resp. at Ex. G) (Setting forth types of documents in three boxes such as communications from outside counsel, communications from in-house counsel post-October 23, 2006, documents related to other properties owned by McIntoshes, correspondence from opposing counsel in *McIntosh* suit, deposition in *McIntosh* suit).  State Farm's counsel further personally reviewed the entire contents of the three boxes to ensure there are no materials enclosed that are within the scope of the Rigsbys' production requests, are not privileged and have not been previously produced. (Barbour Decl. at ¶7, Resp. at Ex. D.) The boxes contain no such materials. (Barbour Decl. at ¶7, Resp. at Ex. D.)

In addition, State Farm sent the Rigsbys a more detailed privilege log identifying two pre-October 23, 2006, documents – both memoranda drafted by in-house counsel at the request of another in-house lawyer just prior to the filing of the *McIntosh* lawsuit. ([881-13] at 2.) While the Rigsbys contend this privilege log contradicts the earlier January 14, 2011 log, this is incorrect, as it merely logs in detail the only two privileged documents in the boxes that were outside the October 23, 2006 forward time-limiting agreement between the Parties. (Barbour

6

Decl. at ¶8, Resp. at Ex. D.)

## ARGUMENT

The Rigsbys argue that State Farm has waived all applicable privileges because it supposedly did not timely or properly produce its privilege log. This argument fails for multiple reasons:

- **First**, under the Parties' agreement, all but two of the privileged documents did not need to be logged *at all*.
- **Second**, the two privileged documents that were created before October 23, 2006 were properly logged shortly after their discovery by counsel.
- **Finally**, to the extent that some documents in the litigation files are not privileged, State Farm has already produced *all of them* to the Rigsbys, has submitted evidence substantiating same – and should not be compelled to do so yet again.

For all these reasons, the Rigsbys' motion to compel should be denied.

## I. PURSUANT TO THE PARTIES' AGREEMENT, ALL BUT TWO OF THE LITIGATION FILE DOCUMENTS NEED NOT BE LOGGED OR PRODUCED

The Rigsbys' counsel expressly stipulated that there was no need to produce or log: (i) any privileged communication with outside counsel; or (ii) any privileged communication with in-house counsel made on or after October 23, 2006. As the agreement stated:

> [C]ommunications between the parties and their outside counsel need not be produced or logged, but that responsive communications from in-house attorneys made on or before October 23, 2006, [the date the McIntoshes filed suit] will be logged, or produced if for any reason they are not privileged.

(01-07-2010   Letter from A. Matteis, Jr. to R. Galloway, Ex. B to Resp.)

In light of this agreement, the Rigsbys' waiver argument defies both logic and law. Except for two legal memoranda by in-house counsel, discussed below, ***all*** of the privileged documents pertain to communications that occurred *after October 23, 2006*, *i.e.*, documents that need not be "produced or logged." (*Id.*)  State Farm could not waive privilege for 8,000 litigation file documents by inadequately logging – or for that matter, not logging at all – documents that there was no duty to log or produce in the first instance.

7

## II. STATE FARM DID NOT WAIVE PRIVILEGE ON THE TWO IN-HOUSE LEGAL MEMORANDA

Only two of the documents in the litigation file did not fall under the Parties' agreement: two legal memoranda, dated August 23, 2006, and September 1, 2006, that were prepared by one of State Farm's in-house counsel at the request of another in-house counsel shortly before *McIntosh* was filed.[5]  Once it was determined that these two memoranda fell outside of the agreement, State Farm properly logged them and produced a supplemental privilege log to the Rigsbys' counsel.  ([881-13].)

The Rigsbys do not contend that these legal memoranda are not privileged.  Nor can they.  As this Court has previously recognized, the fact that these memoranda were written prior to the *McIntosh* lawsuit is irrelevant to the privilege analysis.  Indeed, in *McIntosh*, this Court expressly rejected the argument that no privilege attaches to pre-litigation communications:

> The McIntoshes had not filed suit at the time [State Farm's counsel] spoke with them, but it is a matter of public record that substantial litigation was underway against State Farm over Katrina insurance claims, as well as a state grand jury investigation into claims handling practices.  Plaintiffs offer no authority which would require threatened or actual litigation *by the McIntoshes* to legitimate claims of attorney-client, work product and anticipation of litigation privileges.

(*McIntosh* [923] at 2, n.3 (denying the McIntoshes' motion to compel the production of documents from State Farm's counsel) (emphasis in original), Ex. J to Resp.)

In any case, the Rigsbys' demand that the Court compel State Farm "to produce all 8,000 pages of Documents" as a sanction for ostensibly not producing an adequate privilege log for these two documents – or any other document – is contrary to law.  *See* ([881] at 5.)  It is well-settled that "[b]lanket waiver is not a favored remedy for technical inadequacies in a privilege log."  *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir.

---

[5] These documents were created close in time to the Rigsbys' ABC 20/20 nationally televised story closely focusing on the McIntosh property.  *E.g.*, ([739-5] at 6-29.)

8

2009). "[T]he court generally does not deem a party to have waived a privilege because it did not provide an adequate privilege log." *TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 718 F. Supp. 2d 90, 97 (D.D.C. 2010)); *Welch v. Eli Lilly & Co.*, 2009 WL 700199, No. 1:06cv0641-RLY-JMS, at *14-15 (S.D. Ind. Mar. 16, 2009) (noting that waiver is serious sanction and declining to find privilege waived despite defendant's inadequate privilege log).

The Draconian sanction of waiver is appropriate "only if the party that authored the log has displayed willfulness, bad faith or fault." *Muro*, 250 F.R.D. at 365. Contrary to the Rigsbys' demand for production of thousands of privileged documents, "the majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363-C-M2, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009).

The cases cited by the Rigsbys illustrate this point perfectly. For example, in *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38, 43 (S.D.N.Y. 2009), defendants did not produce a timely privilege log. After the Court gave them several opportunities to correct their noncompliance, they still produced a log that was "woefully deficient." *Id.* at 42-43. In addition, this failure to produce a privilege log was part of a much larger pattern of discovery abuses. The court held that a finding of waiver was appropriate under these extreme circumstances.[6]

---

[6] The other waiver cases that the Rigsbys cite similarly deal with extreme discovery abuse. For example, in *Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.*, No. CIV.A. 99-1332, 2000 WL 1201385, at *2-*3 (E.D. Pa. Aug. 8, 2000), the court found waiver where the "the record indicate[d] a history of lack of cooperation by the plaintiff" and where plaintiff counsel's excuse for repeatedly failing to meet the court's deadlines to produce a privilege log was that he simply forgot to prepare it. *See also Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, No. 3:08cv0227-ECR (VPC), 2010 WL 2985496, at *6, 10 (D. Nev. July 23, 2010) (finding waiver where defendant completely "abdicated its discovery obligations").

In stark contrast, here, there is a complete absence of bad faith. State Farm had no duty to produce, log, or even identify the vast majority of the documents in the litigation file. Yet upon discovery of them, State Farm's counsel informed the Rigsbys' counsel of their existence, sent them a general privilege log for their contents, and discussed the contents and general nature of the documents with them both over the phone and in writing. Further, upon discovering the two pre-October 23, 2006 in-house counsel legal memoranda, State Farm promptly and properly served a supplemental privilege log describing the documents, their author, recipients, dates, privileges, and responsiveness. ([881-13].) Under these facts, the Rigsbys' contention that State Farm has broadly waived any or all applicable privileges fails as a matter of fact and law.

### III. STATE FARM HAS NO DUTY TO RE-PRODUCE DUPLICATIVE DOCUMENTS

The litigation files at issue contain items pertaining to the *McIntosh* homeowner lawsuit, such as pleadings and communications from outside counsel regarding the lawsuit. To the extent that the Rigsbys are contending that certain documents contained in the litigation files are not privileged, State Farm still has no obligation to produce them because they are merely duplicates of previously produced documents. (Barbour Decl. at ¶7, Resp. at Ex. D.)

It is well settled that a litigant is "not required to produce duplicate copies of any document." *Moore v. Radian Group, Inc.*, No. Civ.2:01cv023 (TJW), 2002 WL 31738795, at *5 (E.D. Tex. Feb. 1, 2002), *aff'd*, 297 F. App'x 553 (5th Cir. 2003). Thus, "[t]he Defendants are not required to produce duplicate copies of documents, and may appropriately respond to Plaintiff by pointing out that the documents he requested have already been produced to him." *Griggs v. Norris*, No. 5:04cv442 WRW/JFF, 2006 WL 1094561, at *1 (E.D. Ark. Apr. 24, 2006).

Here, the files do ***not*** contain any non-privileged materials that have not previously been produced to the Rigsbys. (Barbour Decl. at ¶7, Resp. at Ex. D.) There is no cognizable legal

basis to compel the re-production of these previously produced documents. The Rigsbys' motion should thus be denied.

## CONCLUSION

As stated at the outset, apparently seeking to paint State Farm in an unjustified poor light during the pendency of the remaining dispositive motions, the Rigsbys have filed an unwarranted motion – seeking unwarranted relief. State Farm respectfully submits that the Rigsbys' [880] motion should be denied.

This, the 7th day of March, 2011.

>Respectfully submitted,
>
>STATE FARM FIRE AND CASUALTY COMPANY
>
>By: /s/ *E. Barney Robinson III* (MSB # 09432)
>E. Barney Robinson III (MSB # 09432)
>Robert C. Galloway (MSB # 4388)
>Jeffrey A. Walker (MSB # 6879)
>Benjamin M. Watson (MSB # 100078)
>Amanda B. Barbour (MSB # 99119)
>
>ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P)(228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

**CERTIFICATE OF SERVICE**

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via e-mail and First Class United States Mail:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT OSHINSKY LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
2510 14th Street
Suite 910
Gulfport, MS 39501
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

This, the 7th day of March, 2011.

/s/ *E. Barney Robinson III* (MSB # 09432)
E. Barney Robinson III (MSB # 09432)