IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CORI RIGSBY and KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE NO. 1:06cv433-LTS-RHW |
| STATE FARM FIRE AND CASUALTY CO. | DEFENDANT/COUNTER-PLAINTIFF |
| and | |
| HAAG ENGINEERING CO. | DEFENDANT |

**STATE FARM'S REBUTTAL IN SUPPORT OF ITS
SUPPLEMENTAL MEMORANDUM REGARDING:  [738] THE RIGSBYS' MOTION
FOR RECONSIDERATION OF SCOPE OF PROCEEDINGS; [734] STATE FARM'S
MOTION FOR SUMMARY JUDGMENT; AND [736] STATE FARM'S MOTION FOR
<u>SUMMARY JUDGMENT ON THE CLAIMS OF CORI RIGSBY</u>**

Robert C. Galloway (MSB # 4388)
Jeffrey A. Walker (MSB # 6879)
E. Barney Robinson III (MSB # 09432)
Benjamin M. Watson (MSB # 100078)
Amanda B. Barbour (MSB # 99119)

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

OF COUNSEL:

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
250 Commerce Street, Suite 100 (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

**PRELIMINARY STATEMENT**

To date, the Rigsbys have advanced their flawed theory – that they can proceed with this False Claims Act ("FCA") case even if the McIntosh flood claim is not false – in over half a dozen briefs. Yet they still cannot cite a single case where a relator was permitted to proceed without identifying a false claim. Now, they are trying to garner support for their "fraudulent scheme" theory from *Branch* and the cases it cites. But the Rigsbys ignore the fact that ***all*** of these cases – including *Branch* – ***dismissed*** the relators' claims for failure to establish they were original sources with respect to a false claim. The Rigsbys go to great lengths in distorting the actual holdings of these cases in an effort to buttress their false narrative. Their efforts only underscore the fact that – if the McIntosh flood claim is not false – their case must be dismissed. ([261] at 3 (explaining that if the McIntosh flood claim is justified, the Rigsbys' case must be dismissed).)

**ARGUMENT**

**I.  *BRANCH* PROVES THAT THE RIGSBYS' LEGAL THEORY IS UNTENABLE**

The Rigsbys contend that *Branch* "was dismissed because the relator in that case had no direct and independent knowledge of a fraudulent scheme." ([883] at 1.) But the actual opinion states that the court dismissed one of the ten defendants "[b]ecause ***none*** of Branch's purported ***examples actually supports its loss-shifting claim***." *Branch*, slip op. at 56 (emphasis added). In fact, *Branch* expressly rejected the Rigsbys' position that original source status can be predicated solely on allegations of a scheme: "A relator's 'mere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does ***not*** carry his burden of proving that he is entitled to original source status.'" *Id.* (quoting *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 353 (4th Cir. 2009)) (emphasis added).

Judge Vance relied on *Vuyyuru* – and it is directly on point.  As State Farm previously noted, the relator, Dr. Vuyyuru, described a detailed Medicare and Medicaid overbilling scheme that he witnessed and investigated at the hospital where he worked.  ([877-1] at 3-4.)  Despite his direct and independent knowledge of a fraudulent overbilling scheme, the Fourth Circuit affirmed the dismissal of his case because the single exemplar claim he identified was not actually a false claim.  *See Vuyyuru*, 555 F.3d at 353.  Unable to avoid the consequences of this holding, the Rigsbys try to distinguish themselves from that relator by describing him as a newspaper publisher, suggesting that he had no real insider knowledge.  ([883] at 8.)  This stratagem is disingenuous.  Though the relator later went on to publish a newspaper that reported the alleged fraud, the record makes plain that for several years, he worked in the defendant hospital alongside the defendant physician and witnessed the alleged fraud firsthand.  *See Vuyyuru*, 555 F.3d at 345, 353.  He is every bit the "insider" that the Rigsbys claim to be.

Despite the clear language in *Branch* and its reliance on *Vuyyuru*, the Rigsbys contend that *Branch* nevertheless supports their "fraudulent scheme" theory, arguing that "[i]f State Farm's interpretation were correct, the *Branch* Decision would have been much simpler."  ([883] at 4.)  It is true that *Branch* was not a simple case.  It involved ten different defendants that were dismissed on different legal bases, including the FCA's first-to-file rule, the FCA's pre-filing disclosure requirement, and the FCA's direct and independent knowledge requirement.

Yet Judge Vance's order dismissing the claim against two defendants, Fidelity and American Reliable, could not have been simpler.  Fidelity was dismissed in just seven pages because of the relator's lack of knowledge of a single bona fide false claim made by the insurer.  *See Branch*, slip op. at 50-58. American Reliable was effectively dispatched in a single sentence:

2

"As it does with Fidelity, Branch admits that American Reliable did not insure any of the exemplar properties against wind damage." *Id.* at 58.

The Rigsbys do not address Judge Vance's holdings as to Fidelity and American Reliable. Instead, they cling to language at the end of the opinion, from a separate section addressing ANPAC, in which Judge Vance described an earlier opinion in *Branch* as holding that the relator was not "required to have knowledge of the actual fraudulent claims the defendants allegedly made to the government." *Id.* at 65. In contrast to the sections on Fidelity and American Reliable, the analysis as to ANPAC is rather complex. This is because the relator sued the wrong entities but nevertheless sought to maintain its suit against ANPAC based on several poorly defined legal theories. In discussing the many reasons why the relator could not maintain its claim against ANPAC, Judge Vance stated, in an afterthought not even rising to the level of *dicta*, that any speculation that ANPAC and two non-party entities all "conspire[d] or collude[d]" to "shift[] losses on the exemplar properties from wind damage to flood damage" was not based on direct and independent knowledge. *Id.* at 64-66. The Rigsbys do not and cannot explain how this idiosyncratic situation is in any way analogous to the one before this Court. Nor, as State Farm explained in its prior papers, does the out-of-context quotation mean that they can proceed with their case even if the McIntosh flood claim is not false. (*See* [877-1] at 5-6.)

In their reinterpretation of the *Branch* holding, the Rigsbys assert that, despite the relator's effective admission that its exemplar properties could not constitute "false claims" as a matter of law, "the court did not treat this admission as dispositive" and supposedly "went on to assess whether, even without the exemplar properties, Branch still qualified as an original source based on its direct and independent knowledge of the broader scheme it alleged." ([883] at 4-5.)

3

This assertion is demonstrably false. Judge Vance made clear that the relator's admissions *were* dispositive, and cut off its attempt to obtain discovery based on its "scheme" allegations:

- "Because Branch admits that Fidelity did not issue both wind and flood policies for any of the exemplar properties, the loss shifting claim with regard to these properties is *fatally flawed*." *Branch*, slip op. at 53 (emphasis added).

- "Without the exemplar properties, Branch *cannot* be considered *an original source of the loss-shifting scheme* alleged in the original complaint." *Id.* (emphasis added).

- "Because none of Branch's purported examples actually supports its loss-shifting claim, it *cannot* be considered *an original source as to that claim*." *Id.* at 56 (emphasis added).

- "Branch's argument that it requires *more discovery on the broader loss-shifting scheme is also unavailing*. . . . [T]he facts supporting Branch's purported original source status should be within its own control and *should not require discovery*." *Id.* at 57 (emphasis added).

Because the relator admitted it did not have knowledge of an actual false claim by Fidelity or American Reliable, its claims against those two defendants were dismissed. So, too, here: If the evidence shows that the McIntosh flood claim was not false, then the Rigsbys' case must be dismissed.

## II.  SUPPOSED KNOWLEDGE OF A "SCHEME" IS NOT "CORE INFORMATION"

The Rigsbys also argue that "a relator under the False Claims Act need only be an original source of the 'core information' in its complaint." ([883] at 5.) But merely calling a "fraudulent scheme" allegation "core information" does not make it so. The cases that the Rigsbys cite – all of which *dismiss* relators' claims for lack of core information – establish that their alleged knowledge of a fraudulent "scheme" is insufficient to be core information.

In *United States v. New York Medical College*, 252 F.3d 118 (2d Cir. 2001) ("*New York II*"), *aff'g United States v. New York City Health & Hosp. Corp.*, No. 95-Civ.-7649, 2000 WL 1610802 (S.D.N.Y. Oct. 27, 2000) ("*New York I*"), the relators were hospital executives. They saw firsthand that a hospital services vendor, New York Medical College ("NYMC"), was

4

overbilling Medicare and Medicaid by not providing the hospital with services commensurate with its charges.  When one of the relators confronted NYMC's dean, the dean effectively confirmed the fraud.  *See New York I*, 2000 WL 1610802, at *1.  A subsequent audit confirmed and quantified the fraud.  *See id.* at *2.  Despite the fact that the relators saw the fraud with their own eyes, the district court found – and the Second Circuit affirmed – that the relators' firsthand knowledge of the fraudulent overbilling scheme was not "core information" that would permit them to proceed as relators.  *New York II*, 252 F.3d at 121.

The same scenario occurred in *United States ex rel. Smith v. Yale University*, 415 F. Supp. 2d 58 (D. Conn. 2006).  The relator, Dr. Smith, was a physician who taught and practiced medicine at Yale-New Haven Hospital for nine years.  During that time, he learned that the hospital was billing Medicare and Medicaid for radiology services that were performed by unsupervised residents and fellows, but were nevertheless "signed" using an "Autosign" computer program "to reflect a fictitious qualified 'Responsible Radiologist' of record for the purpose of finalizing radiology reports [that] were never reviewed, approved, edited or certified by [a] Teaching Physician as required pursuant to the Medicare laws."  *Id.* at 63-65.  After his complaints were ignored, Dr. Smith "undertook a 'comprehensive review' of radiological records" and "discovered that 'thousands' of reports . . . had been finalized by Autosign or by physicians who had never reviewed the films and who had not supervised the Resident or Fellow when the Studies were interpreted."  *Id.* at 65.

Yet Dr. Smith's knowledge of the fraudulent scheme was not enough to support his FCA claim, the court held, because "it is ***false or fraudulent billing***," *i.e.*, an actual false claim, "which is the *sine qua non* of an FCA violation."  *Id.* at 78 (emphasis added).  "Since there is no

5

[FCA] violation without false or fraudulent billing," Dr. Smith's failure to identify firsthand knowledge of actual false claims resulting from this scheme was fatal to his FCA claim. *Id.*

*New York I*, *New York II*, and *Smith* all demonstrate that knowledge of a "scheme" does not transform a witness into a relator. Without direct and independent knowledge of an actual false claim, the Rigsbys cannot provide the "core information" contemplated by these cases.

**III.   WITHOUT MCINTOSH, THIS CASE MUST BE DISMISSED**

Despite the Rigsbys' vigorous efforts to muddy otherwise clear waters, *Branch*, *Vuyyuru*, *New York I*, *New York II*, and *Smith* all arrive at the same conclusion. Without firsthand knowledge regarding an actual false claim, a relator cannot maintain an FCA action with only supposed direct and independent knowledge of a "false scheme." And, as Judge Vance held in *Branch*, "[a] relator's 'mere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does ***not*** carry his burden of proving that he is entitled to original source status.'" *Branch*, slip op. at 56 (quoting *Vuyyuru*, 555 F.3d at 353) (emphasis added).

The Rigsbys contend that they "did not *suspect* that State Farm *may* have defrauded the government" – they "know" that it did, "because they were instructed to adjust flood claims following Hurricane Katrina in a way that shifted losses to the federal government." ([883] at 10.) This assertion is no different from the allegations of all of the failed relators discussed above. Dr. Vuyyuru was equally sure that he *knew* that a physician with whom he worked closely was overbilling Medicare and Medicaid for incomplete medical procedures. Dr. Smith *knew* that Yale was falsely billing Medicare and Medicaid for improperly supervised radiology procedures. And the *New York* relators *knew* that NYMC was overcharging Medicare and Medicaid for services that were not being provided because the person committing the fraud told them so. What all of these relators have in common is that they did ***not*** have direct and independent knowledge of any actual false claims. The Rigsbys' supposed "knowledge" of a

6

generalized fraud scheme does not make up for their lack of knowledge as to actual false claims. As the Tenth Circuit explained in *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156 (10th Cir. 1999) – another case cited by the Rigsbys – "[a] mere assertion of knowledge, without adequate basis in fact and unsupported by competent proof is ***insufficient to establish***" direct and independent knowledge. *Id.* at 1163 (emphasis added). The Rigsbys' firm conviction – even if heartfelt – "'that there must be a false or fraudulent claim lurking around somewhere simply does ***not*** carry [their] burden of proving that [they are] entitled to original source status.'" *Branch*, slip op. at 56 (citation omitted).

Further, notwithstanding their superficial attempt to dissociate their "scheme" from the McIntosh flood claim for the purposes of obtaining additional discovery, their brief makes clear that McIntosh and their "scheme" are one and the same. The Rigsbys maintain that "McIntosh is a ***quintessential example of a fraudulent adjustment*** for which each and every aspect of the fraudulent scheme was implemented." ([883] at 3 (emphasis added).)  Indeed, as State Farm explained in its supplemental papers, the Rigsbys' "scheme" theory was born out of their interpretation of the McIntosh flood claim. (*See* [877-1] at 9-10.)  If the Court or a jury determines that the McIntosh property sustained $250,000 in flood damage, the rejection of the Rigsbys' "quintessential example" of federal flood insurance fraud would demonstrate that their "scheme" is vacuous and illusory.

## CONCLUSION

For all of these reasons, and for the reasons in its previous briefing on this issue, if the McIntosh flood claim is not a false claim, then the Rigsbys' case must be dismissed. Since the Rigsbys' entire motion for expanded discovery is based on the exact opposite proposition – that their case can proceed regardless of whether the McIntosh flood claim is valid or false – it should be denied as a matter of logic and law.

7

This the 7th day of March, 2011.

                              Respectfully submitted,

                              STATE FARM FIRE AND CASUALTY COMPANY

By:    */s/ E. Barney Robinson III* (MSB # 09432)
        E. Barney Robinson III (MSB # 09432)
        Robert C. Galloway (MSB # 4388)
        Jeffrey A. Walker (MSB # 6879)
        Benjamin M. Watson (MSB # 100078)
        Amanda B. Barbour (MSB # 99119)

                              ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3019
(E) bob.galloway@butlersnow.com

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) jeff.walker@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Michael B. Beers (ASB-4992-S80M), PHV
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
Post Office Box 1988
Suite 100
250 Commerce Street (36104)
Montgomery, AL  36102
(P) (334) 834-5311
(F) (334) 834-5362
(E) mbeers@beersanderson.com

*PRO HAC VICE*

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the CM/ECF system:

C. Maison Heidelberg
Ginny Y. Kennedy
MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, MS 39157
(P) (601) 351-3333
(F) (601) 956-2090
(E) maison@heidlebergpa.com

August J. Matteis, Jr.
Craig J. Litherland
Benjamin R. Davidson
GILBERT LLP
11 New York Avenue, NW
Suite 700
Washington, DC 20005
(E) matteisa@gotofirm.com
(E) litherlandc@gotofirm.com
(E) davidsonb@gotofirm.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(P) (202) 307-0264
(F) (202) 514-0280

Alfred B. Jernigan, Jr.
Felicia C. Adams
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
Suite 500
188 East Capitol Street
Jackson, MS 39201
(P) (601) 965-4480
(F) (601) 965-4409

ATTORNEYS FOR THE UNITED STATES

Larry G. Canada
Kathryn Breard Platt
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
2510 14th Street
Suite 910
Gulfport, MS 39501
lcanada@gjtbs.com
kplatt@gjtbs.com

ATTORNEYS FOR HAAG ENGINEERING CO.

This the 7th day of March, 2011.

/s/ *E. Barney Robinson III* (MSB # 09432)
E. Barney Robinson III (MSB # 09432)