1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
2                    SOUTHERN DIVISION

3

4    UNITED STATES OF AMERICA ex rel.   RELATORS/COUNTER-DEFENDANTS
     CORI RIGSBY AND KERRI RIGSBY
5
     V.                       CIVIL ACTION NO: 1:06CV433-HSO-RHW
6
     STATE FARM FIRE & CASUALTY       DEFENDANT/COUNTER-PLAINTIFF
7    COMPANY

8

9

10              **TRANSCRIPT OF JURY TRIAL**
                       **VOLUME 1**
11                   **PAGES 1 - 155**

12

13

14          BEFORE HONORABLE HALIL S. OZERDEN
             UNITED STATES DISTRICT JUDGE
15

16

17                  MARCH 25, 2013
                 GULFPORT, MISSISSIPPI
18

19

20

21   COURT REPORTER:

22   TERI B. NORTON, RMR, FCRR, RDR
     2012 15TH STREET, SUITE 403
23   GULFPORT, MISSISSIPPI  39501
     (228) 563-1748
24

25

1    APPEARANCES:

2    REPRESENTING THE RELATORS/COUNTER-DEFENDANTS:

3        C. MAISON HEIDELBERG, ESQUIRE
         HEIDELBERG HARMON, PLLC
4        795 WOODLANDS PARKWAY, SUITE 220
         RIDGELAND, MISSISSIPPI  39157
5
         AUGUST J. MATTEIS, JR., ESQUIRE
6        DEREK Y. SUGIMURA, ESQUIRE
         TIMOTHY BELKNAP, ESQUIRE
7        WEISBROD, MATTEIS & COPLEY, PLLC
         1900 M STREET NW, SUITE 850
8        WASHINGTON, DC  20036

9
     REPRESENTING THE DEFENDANT/COUNTER-PLAINTIFF, STATE FARM FIRE &
10   CASUALTY COMPANY:

11       ROBERT C. GALLOWAY, ESQUIRE
         JEFFREY A. WALKER, ESQUIRE
12       PHILLIP B. ABERNETHY, ESQUIRE
         JOHN HENEGAN, ESQUIRE
13       E. BARNEY ROBINSON, ESQUIRE
         J. KENNEDY TURNER, III, ESQUIRE
14       AMANDA B. BARBOUR, ESQUIRE
         BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
15       POST OFFICE DRAWER 4248
         GULFPORT, MISSISSIPPI  39502
16
         MICHAEL B. BEERS, ESQUIRE
17       BUTLER, SNOW, O'MARA, STEVENS & CANNADA
         250 COMMERCE STREET, SUITE 203
18       MONTGOMERY, ALABAMA  36104

19
     ALSO PRESENT:  TERRY BLALOCK, STATE FARM REPRESENTATIVE
20

21

22

23

24

25

```
 1                          INDEX                    PAGE

 2     JURY VOIR DIRE                                  6
       JURY SELECTION/MOTIONS                         134
 3     OPENING STATEMENT - RELATORS                   159
       OPENING STATEMENT - DEFENDANT                  177
 4     WITNESSES CALLED ON BEHALF OF RELATORS:
                          DIRECT  CROSS  REDIRECT  RECROSS
 5     KERRI RIGSBY        204    245    364
       LINDA MUCHA         370    395    416
 6     ALEXIS KING (BY DEPO)- PAGE 422
       ROBERT KOCHAN (BY DEPO)- PAGE 437
 7     DR. KEITH BLACKWELL  441   462    483
       MICHAEL CHURCH      490    515    525
 8     DR. RALPH SINNO     528    571    652
       BRIAN FORD (BY DEPO) - PAGE 673
 9     LOUIS FEY           684    709    741
       TIM MARSHALL (BY DEPO) - PAGE 755
10     DAVE RANDEL (PERSONAL DEPO) - PAGE 757
       DAVE RANDEL (30(B)(6) DEPO) - PAGE 760
11     MARK DRAIN (BY DEPO) - PAGE 761
       STEPHAN HINKLE (BY DEPO) - PAGE 761
12
       RELATORS RESTS ---- PAGE 770
13     RULE 50 MOTION ---- PAGE 771

14     WITNESSES CALLED ON BEHALF OF DEFENDANT:
                          DIRECT  CROSS  REDIRECT  RECROSS
15     JAYME WOODY         844    891    913
       RACHEL FISHER       919    941
16     CODY PERRY          942    1013   1075
       JOHN CONSER         1077   1105   1119
17     DAVID MAURSTAD      1121   1144   1161
       JIM SHORTLEY (BY DEPO) - PAGE 1165
18     KACIE DENNY         1166   1195   1211
       ALEXIS KING         1221   1278   1326
19     ELIZABETH JONES (BY DEPO) - PAGE 1328
       JACK KELLY          1329   1383   1446
20     ROBERT DEAN (BY DEPO) - PAGE 1463
       ROBERT MCVADON      1464   1513   1543
21     DR. KURT GURLEY     1549   1605   1626
       JODY PRINCE (BY DEPO) - PAGE 1634
22     MARK WATSON         1635   1667   1709

23     DEFENDANT RESTS ---- PAGE 1713

24     REBUTTAL WITNESSES CALLED ON BEHALF OF RELATORS:

25     GERALD WAYTOWICH (BY DEPO) - PAGE 1717
```

```
1    RELATORS RESTS FINALLY ---- PAGE 1735

2    RULE 50 MOTION ---- PAGE 1737

3    JURY CHARGE CONFERENCE ---- PAGE 1797
     JURY INSTRUCTIONS ---- PAGE 1821
4    CLOSING ARGUMENT - RELATORS ---- PAGE 1840
     CLOSING ARGUMENT - DEFENDANT ---- PAGE 1871
5    CLOSING ARGUMENT REBUTTAL - RELATORS ---- PAGE 1909
     VERDICT ---- PAGE 1924
6    CERTIFICATE OF COURT REPORTER ---- PAGE 1931

7                        EXHIBIT INDEX

8    RELATORS EXHIBITS:                        I.D.  EVIDENCE
     P8, P9, P53, P54, P61, P62, P183, P185,         154
9    P222, P223, P224, P231, P233, P283, P292,       154
     P293, P294, P296, P297, P298, P301, P302,       154
10   P303, P305-P407, P408-P410, P411-P413,          154
     P417, P418, P420, P422-P425, P427-P429,         154
11   P432-P440, P442-P444, P447-P453, P455-P491,     154
     P499, P518, P525-P526, P528, P529, P532-P534    154
12   P539-P544, P566-P570, P572, P573, P576,         154
     P581, P582, P584, P585, P600, P609, P611,       154
13   P618, P619, P628-P645, P650-P652, P654,         154
     P672-P681, P690, P694, P697-P719, P728-P774,    154
14   P776, P778-P780                                 154
     P1                                              223
15   P2                                              228
     P201                                            238
16   P259                                            366
     P488 (WITHDRAWN)                                390
17   P001, P002, P051, P083, P236, P238, P243,       426
     P244                                            426
18   P237, P239                                      427
     P241                                            428
19   P242                                            429
     P003, P004, P040, P041, P042, P043, P049, P050  436
20   P781, P782, P783                           489
     P784                                       570
21   P785                                       785
     P61, P62, P72, P76, P78                         754
22   P786, P787, P788, P789, P790               766
     P791                                      1221
23   P193                                           1295
     P253                                           1297
24   P792                                      1328
     P793                                      1414
25   P228                                           1446
     P794                                           1496
```

```
 1   P503, P524                                           1537
     P84                                                  1620
 2   P254                                                 1716

 3   DEFENSE EXHIBITS:                          I.D.   EVIDENCE

 4   DS1-DS228, DS230-DS294, DS300, DS302-DS305,          154
     DS307, DS309-DS310, DS312-DS329, DS332-DS333,        154
 5   DS336-DS339, DS341-DS343, DS346-DS353,               154
     DS359-DS360, DS363-DS365, DS414, DS448, DS500,       154
 6   DS533,DS534, DS561, DS563, DS565, DS570-DS575,       154
     DS603-DS605, DS607, DS609-DS612, DS615-DS618,        154
 7   DS622-DS631, DS633-DS635, DS639, DS641-DS643         154
     DS655, DS658-DS659, DS662-DS665                      154
 8   DS229                                                292
     DS667                                       490
 9   DS295, DS296, DS297                                  517
     DS668                                       570
10   DS588                                       680
     DS571, DS572, DS573, DS574, DS575, DS577, DS578,     681
11   DS579, DS581, DS582, DS583, DS584, DS585, DS586,     681
     DS587, DS589, DS591, DS592, DS593, DS594, DS595,     681
12   DS597, DS598, DS599, and DS600                       681
     DS669                                       751
13   DS670, DS671, DS672                         766
     DS638                                               1133
14   DS609, DS614, DS615, DS616, DS618, DS657            1165
     DS673                                      1184
15   DS674                                      1213
     DS358                                      1241
16   DS675                                      1414
     DS676                                      1496
17   DS361                                               1682
     DS677, DS678                               1685
18   DS679                                               1685
     DS680                                      1735
19   DS681                                      1821

20   HAAG'S EXHIBITS:                           I.D.   EVIDENCE

21   DH3, DH7-DH8, DH15-DH22, DH24, DH25,                 154
     DH28-DH31, DH33, DH34, DH36-DH38, DH40-DH46,         154
22   DH52, DH53, DH61, DH71, DH72                         154

23   COURT EXHIBITS:                            I.D.   EVIDENCE
     C1                                          154
24   C2                                         1218

25
```

```
 1              THE COURT:  Please be seated everyone.

 2         We are here this morning in civil matter 1:06cr433, the

 3    United States on the relation of Cori and Kerri Rigsby versus

 4    State Farm Insurance Company.  Would counsel please make their

 5    appearances for the record.

 6              MR. HEIDELBERG:  Good morning, Your Honor.  Maison

 7    Heidelberg for the relators, Kerri and Cori Rigsby.

 8              MR. MATTEIS:  Good morning, Your Honor.  Auggie

 9    Matteis for the relators, Cori and Kerri Rigsby.

10              MR. SUGIMURA:  Good morning, Your Honor.  Derek

11    Sugimura for the relators, Kerri and Cori Rigsby.

12              MR. BELKNAP:  Good morning, Your Honor.  Timothy

13    Belknap for the relators, Kerri and Cori Rigsby.

14              THE COURT:  Are the relators ready to proceed?

15              MR. HEIDELBERG:  The relators, Cori and Kerri Rigsby,

16    are here with us and ready to proceed.

17              THE COURT:  Let me hear from the defendant.

18              MR. GALLOWAY:  Good morning, Your Honor.  Robert

19    Galloway for State Farm.

20              MS. BARBOUR:  Good morning, Your Honor.  Amanda

21    Barbour for State Farm.

22              MR. ABERNETHY:  Your Honor, Phil Abernethy for State

23    Farm.

24              MR. BEERS:  Your Honor, Michael Beers for State Farm.

25    With us is Mr. Terry Blalock representing State Farm.
```

1              **THE COURT:**  Is the defendant ready to proceed?

2              **MR. GALLOWAY:**  We are, Your Honor.

3              **THE COURT:**  Good morning, ladies and gentlemen.  I

4    want to welcome all of you to the United States District Court

5    for the Southern District of Mississippi, the Southern

6    District, Southern Division, which is housed here in this

7    courthouse, the Dan M. Russell building.  I want to welcome you

8    to this United States Courthouse, your United States Courthouse

9    as citizens and taxpayers of this great nation of ours.

10         My name is Sul Ozerden.  I am the judge who will be

11   presiding over this trial for which you have been summoned to

12   serve as potential jurors.  Assisting me this morning and

13   throughout the trial are my courtroom deputy, Anne, whom you've

14   met already; my staff attorney, Emily; our court reporter,

15   Teri, she will be typing down everything that is said as part

16   of this trial; and Charles, our court security officer who will

17   be assisting me as well.

18         I want to begin by thanking all of you for your time,

19   attention and attendance this morning.  What you are doing here

20   is an important and critical public service.  I'm sure we all

21   have opinions about our legal system and how it works in our

22   country, but rest assured, it is the best and greatest legal

23   system in the world.  I can tell you that we routinely requests

24   from judges and lawyers in other countries to come here and

25   study our system to see how it works.  It is not perfect, but

1    it is the best in the world.  It cannot function without

2    individuals such as yourselves who are willing to serve as

3    jurors to resolve disputes between private parties in civil

4    cases or to resolve questions of guilt or innocence in a

5    criminal cases.

6        This is a civil case.  So we will not be asking anyone who

7    is picked on this jury to decide questions of guilt or

8    innocence.  It is a dispute between private parties.

9        Before we get into the questioning, I do want to explain

10   to you that I'm very sensitive to the fact that being called to

11   serve on a jury is an imposition on your time.  You are being

12   called away from your jobs, your lives, to sit and listen to

13   the case for a period of time and then make a decision, but

14   it's one of the few things that our country asks and requires

15   of you to do.  I hope you take it and I know you take it very

16   seriously.  I understand it is inconvenient.  I have been

17   summoned for jury duty, and I have sat exactly where you are

18   sitting for half a day or longer sometimes.  Unfortunately, I

19   never get picked.  I would love to serve on a jury, but for

20   some reason they don't want to pick me.  I don't know why.

21       I also want you to keep in mind as we go through this

22   process that as we sit here today, inconvenient though this may

23   seem to us, there are American sons and daughters risking their

24   lives in far-flung corners of the world, and many of them lay

25   down their lives or are mortally wounded so that we have the

1    privilege of living in the country that we live in today, that

2    we have the privilege of sitting in this very comfortable

3    courtroom compared to the conditions that they are enduring.

4    Keep that in mind as we go through the questioning here today.

5        What we are going to do today is ask a series of questions

6    of you.  You are going to be answering those questions to help

7    us decide which of you would be the best eight -- we will pick

8    eight of you -- to serve as the jury on this case.  And the key

9    question, of course, is to try and find a fair and impartial

10   jury, a jury that will be fair to both sides, will listen to

11   all the evidence and will follow the law as I will give it to

12   the jury and then render a fair and impartial verdict to both

13   sides.

14       Now, I have no doubt that all of you are fair and

15   impartial individuals, but sometimes, because of experiences we

16   have had in life or people that we may know or have business or

17   family relations with, some jurors are better suited for

18   certain cases than others.  So what we are trying to do is find

19   which eight of you are the best suited to sit and hear and

20   resolve this dispute between the private parties.  We will tell

21   you a little bit more about the case as we get into this.

22       But as I ask the questions and you answer them, your

23   answers will be under oath.  So the first thing I have to do is

24   ask that you all stand, raise your right hand and be sworn in

25   as the panel in this matter.  Please stand and raise your right

1    hand.

2         **(JURY VENIRE SWORN)**.

3         **THE COURT:**   Thank you.   Please be seated.

4         Now, the first thing I have to do this morning is

5    establish that all of you are qualified to serve as jurors.

6    You have answered these questions once before on the jury

7    questionnaire, but I do have to go through them with you again

8    just to make sure there is no one on here who does not meet the

9    basic qualifications to serve on a jury.

10         So I'm going to read these qualifications off, and if for

11    some reason someone here does not meet one of those

12    qualifications, I will ask you to raise your hand and let me

13    know.

14         In order to serve as a juror in this case, you must be a

15    citizen of the United States, you must be at least 18 years

16    old, and you must have resided in this district for a period of

17    one year.   You must be able to read, write and understand the

18    English language with a degree of proficiency sufficient to

19    fill out the jury qualification form.   You must be able to

20    speak the English language.   You must not be incapable by

21    reason of some mental or physical infirmity to render

22    satisfactory jury service.   And you must not have a charge

23    pending against you for the commission of or been convicted of

24    in a state or federal court of a crime punishable by

25    imprisonment for more than one year.

1      Is there anyone here who does not meet these

2    qualifications?  If so, please raise your hand.  All right.  I

3    see no hands.

4      Now, that last question I asked, I want to stop for a

5    moment here about whether someone has been convicted of a

6    crime.  The purpose of this process is not to embarrass anyone

7    or make anyone feel uncomfortable.  So if at any point this

8    morning I ask a question or the attorneys ask a question and

9    you would prefer not to answer in front of everybody here in

10   this room, just raise your hand and let me know that you would

11   like to approach the bench, and I will be more than happy to

12   have you come over here to side bar with myself, the attorneys

13   and the court reporter, and you can answer that question

14   privately.  So please remember that as we go through this

15   process.  We are not here to embarrass anyone or make anyone

16   feel uncomfortable.

17     Now, there are certain individuals who are exempt from

18   jury service.  If you wish to claim the exemption, you would be

19   exempt from service.  So please listen to these.

20     Anyone who is a member in active service in the Armed

21   Forces of the United States, anyone who is a member of the fire

22   or police department of any state, district, territory or

23   subdivision of the country, and then a public officer in the

24   executive, legislative or judicial branches of state, local or

25   federal government who are actively engaged in the performance

 1    of their official duties.  Is there anyone here who qualifies

 2    for any of these exemption?  Please raise your hand.  I see no

 3    hands.

 4        Now, there's another question that was sent out that all

 5    of you answered or should have answered no, but I need to ask

 6    it again to make sure that we didn't have anyone who slipped

 7    through the cracks.  This case involves a claim made after

 8    Hurricane Katrina for insurance benefits.  Do you or any member

 9    of your family have a pending lawsuit for Hurricane Katrina

10    damages, or have you had such a lawsuit in the past?  If so,

11    please raise your hand.  I see no hands.

12        I'm sorry.  What I'm going to ask is, each time you answer

13    a question, please stand, state your juror number, and then

14    your name before you answer.  Sir?  What is your number?

15            **PROSPECTIVE JUROR:**  23.

16            **THE COURT:**  23.  And you are Mr. ███████████?

17            **PROSPECTIVE JUROR:**  Yes, sir, I am.

18            **THE COURT:**  All right.  Go ahead.

19            **PROSPECTIVE JUROR:**  We had a past lawsuit for

20    Hurricane Katrina in Louisiana that was just settled within the

21    last year.

22            **THE COURT:**  That was an actual lawsuit that was filed

23    in the court system?

24            **PROSPECTIVE JUROR:**  Yes, sir.

25            **THE COURT:**  And were you the named party in that

1   case?  You were the one suing?

2          **PROSPECTIVE JUROR:**  It was a class-action suit

3   through attorney Sidney Torres, St. Bernard, Louisiana.

4          **THE COURT:**  What was the nature of the lawsuit?  What

5   was the class action about?

6          **PROSPECTIVE JUROR:**  It was against Allstate for

7   damages.

8          **THE COURT:**  Okay.  And it was a claim -- what was the

9   claim?  What were you claiming that they owed you money for?

10  What had they done wrong?

11         **PROSPECTIVE JUROR:**  I'm not sure of the details.  We

12  just got a letter in the mail and asked if we wanted to be part

13  of the class-action suit because of the area we were in, and we

14  felt Allstate had not paid us sufficiently according to the

15  policy, and that was settled.

16         **THE COURT:**  It was settled.  Now, when you say

17  according to the policy, what did you have with them?  A flood

18  insurance policy or homeowners?

19         **PROSPECTIVE JUROR:**  Well, it was a homeowner's

20  policy, and there was damage that was determined later by the

21  insurance company not to be flood damage.  It was wind damage.

22         **THE COURT:**  Thank you, sir.  Please be seated.

23  Anyone else?  I see a hand here in the front row.  If you

24  would, sir, please state your juror number and your name.

25         **PROSPECTIVE JUROR:**  Number 13.  My name is ███████

1    ████.  I actually didn't have a claim, Your Honor.  I was an

2    attorney involved in some actions against some insurance

3    companies during Katrina.

4           **THE COURT:**  When you say actions, what kind of cases

5    were they?

6           **PROSPECTIVE JUROR:**  Coverage issues.

7           **THE COURT:**  So a homeowner claiming they were not

8    paid under their policy?

9           **PROSPECTIVE JUROR:**  That's right.

10          **THE COURT:**  You were suing them to recover under

11   their policy?

12          **PROSPECTIVE JUROR:**  Yes, sir.

13          **THE COURT:**  Who were some of the insurance companies

14   that you had lawsuits against?

15          **PROSPECTIVE JUROR:**  Allstate.  I can't recall if

16   there were any others.

17          **THE COURT:**  All right.  Thank you, sir.  Anybody

18   else?  All right.  I see no other hands.

19       All right.  Now, the next thing we are going to do is what

20   we sometimes refer to, or as I call it, the audience

21   participation part of the selection process.  Charles is going

22   to hand you the microphone and a sheet of paper with a series

23   of questions on it.  What I want you to do is stand, state your

24   number and your name, and then answer each of the questions on

25   that sheet.  Then pass the sheet and the microphone to the

 1    person next to you.

 2        The questions are very basic.  We are just asking for your

 3    name, your address, all we need is the city where you live,

 4    where you are employed, if you are employed, your marital

 5    status, and if you are married, your spouse's occupation, and

 6    then whether you have ever served on a jury before.  All right?

 7        So we will begin with juror number one.  Is that

 8    Mr. █████?

 9            **PROSPECTIVE JUROR:**  Yes, sir.

10            **THE COURT:**  Go ahead, sir.

11            **PROSPECTIVE JUROR:**  My name is ██████████.  I live

12    in Biloxi, Mississippi.  My occupation is a teacher and

13    softball coach at St. Martin High School.  I am married.  My

14    wife also teaches at St. Martin High School.  And I have never

15    served on a jury before.

16            **THE COURT:**  Thank you, sir.

17            **PROSPECTIVE JUROR:**  I'm juror number 2.  My name is

18    ██████████.  I live in Lucedale, Mississippi.  I'm a crane

19    operator at Ingalls.  I am married.  My wife is a substitute

20    teacher in the George County School System.  And I've never

21    served on a jury before.

22            **THE COURT:**  Thank you, sir.

23            **PROSPECTIVE JUROR:**  Juror number 3, ██████████.  I

24    reside in Gulfport, Mississippi.  Occupation is retired.  I am

25    married.  My wife is also retired.  I have not served on a jury

1    before.

2              **THE COURT:**  All right.  Thank you, sir.

3              **PROSPECTIVE JUROR:**  Juror number 4, ████████

4    ████.  I'm retired.  I'm single.  I have served on a jury

5    before.  I live in Pass Christian, Mississippi.

6              **THE COURT:**  All right.  Let me ask a little about the

7    jury service.  How long ago was that that you served on a jury,

8    sir?

9              **PROSPECTIVE JUROR:**  Time gets away.  Five to ten

10   years ago.

11             **THE COURT:**  Okay.  And was that a -- do you recall if

12   it was a civil case or --

13             **PROSPECTIVE JUROR:**  Civil case.

14             **THE COURT:**  Was that state court or federal court?

15             **PROSPECTIVE JUROR:**  County.

16             **THE COURT:**  So the county courthouse right over here

17   in downtown?

18             **PROSPECTIVE JUROR:**  Yes, Your Honor.

19             **THE COURT:**  When you served on that jury, did the

20   jury retire to deliberate in that case?

21             **PROSPECTIVE JUROR:**  No, Your Honor.  We were in

22   recess, and the parties settled out of court.

23             **THE COURT:**  Case settled out of court.  Okay.  What

24   kind of case was it?

25             **PROSPECTIVE JUROR:**  It was a deal between private

1     landowners and Mississippi Power.

2              **THE COURT:**  So some sort of a contract or land

3     dispute?

4              **PROSPECTIVE JUROR:**  Yes, sir.

5              **THE COURT:**  Is there anything about your experience

6     serving on that jury that would in any way affect your ability

7     to sit in this courtroom, listen to the evidence presented by

8     the parties and the law as I will give it to you and render a

9     verdict that would be fair and impartial to both sides?

10             **PROSPECTIVE JUROR:**  No, Your Honor.

11             **THE COURT:**  Thank you, sir.

12             **PROSPECTIVE JUROR:**  I'm juror number 5.  My name is

13    ██████████████████.  I live in Wiggins, Mississippi, and I'm a

14    cashier at Walmart.  Yes, I'm married, and my husband works for

15    Coca-Cola.  And I've never served on a jury before.

16             **THE COURT:**  Thank you, ma'am.

17             **PROSPECTIVE JUROR:**  I'm juror number 6.  My name is

18    ██████████.  I live in Lumberton, Mississippi.  I stay at home,

19    and my husband is deceased.  And I've served on a grand jury

20    before.

21             **THE COURT:**  Okay.  Any other jury service besides

22    that?

23             **PROSPECTIVE JUROR:**  No, sir.

24             **THE COURT:**  Now, the grand jury, you understand, is

25    of course a criminal type matter.  This is not a criminal case.

1    You understand that; is that right?

2              **PROSPECTIVE JUROR:**  (Nodding affirmatively).

3              **THE COURT:**  I need you to say yes or no.

4              **PROSPECTIVE JUROR:**  Yes.

5              **THE COURT:**  That's something I should have explained.

6              **PROSPECTIVE JUROR:**  I served nine months.

7              **THE COURT:**  Okay.  The court reporter here has to

8    type down everything that is being said, so she can't record

9    when someone shakes or nods their head.  So that's one thing I

10   have to insist, that people say yes or no.

11        When we get into the trial, you'll see that one of the

12   things I have to do is tell people not to talk over each other.

13   Sometimes we have a tendency to anticipate the rest of the

14   question and then start answering it before it is all the way

15   out.  The court reporter can't type two people talking at once.

16   So we have to let one person finish before the next person

17   starts.

18        So let me return to you, ma'am.  The grand jury service,

19   is there anything about your experience serving on that grand

20   jury that would affect your ability to sit in this courtroom,

21   listen to the evidence presented by both sides and the law as I

22   will give it to you and then render a verdict that would be

23   fair and impartial to both sides?

24             **PROSPECTIVE JUROR:**  No.

25             **THE COURT:**  Thank you, ma'am.

```
1              PROSPECTIVE JUROR:  I'm juror number 7.  My name is
2  ██████████████.  I've live in Carriere, Mississippi.  I do
3  construction work.  I'm married.  My wife works for her father
4  at his sawmill.  And I've never served on a jury.
5              THE COURT:  Thank you, sir.
6              PROSPECTIVE JUROR:  I'm juror number 8.  My name is
7  ████████████.  I live in Lucedale, Mississippi.  I'm a welder
8  at Magnolia Trailer.  I'm married.  My spouse is a stay-at-home
9  mom.  And I've never been on a jury before.
10             THE COURT:  Thank you, sir.
11             PROSPECTIVE JUROR:  I'm ████████████.  I live in
12 Gulfport, Mississippi.  I'm an art teacher at West Harrison
13 High School.  Yes, I'm married, and my spouse's occupation, he
14 is retired right now.  And I've never served on a jury before.
15             THE COURT:  And for the record, you are juror number
16 9, ma'am?
17             PROSPECTIVE JUROR:  Yes.
18             THE COURT:  Thank you.
19             PROSPECTIVE JUROR:  Juror number 10, ████████████
20 ██████.  I live in Biloxi.  I'm retired.  I am married.  My
21 spouse is an electronic technician for AT&T.  I've never served
22 on a jury.
23             THE COURT:  Thank you, sir.
24             PROSPECTIVE JUROR:  I'm juror number 11.  My name is
25 ██████████.  I live in Ocean Springs, Mississippi.  I'm a
```

1    licensed massage therapist at IP and a food server at the Beau

2    Rivage.  I'm a widow.  And I've never served on a jury before.

3           **THE COURT:**  Thank you very much, ma'am.

4           **PROSPECTIVE JUROR:**  I'm juror number 12.  My name is

5    ███████████.  I live in Gulfport, Mississippi.  I am married --

6    or my occupation first.  Sorry.  I'm a supervisory

7    oceanographer at the Naval Oceanographic Office.  I am married.

8    My husband works for the Beau Rivage as a hotel manager.  I

9    have served on the Harrison County Grand Jury before, two years

10   ago.

11          **THE COURT:**  Is there anything about serving on that

12   Grand Jury that would affect your ability to sit on this case,

13   which is a civil case, listen to the evidence presented by both

14   sides and the law as I will give it to you, and then render a

15   verdict that would be fair and impartial to both sides?

16          **PROSPECTIVE JUROR:**  No.

17          **THE COURT:**  Thank you, ma'am.

18          **PROSPECTIVE JUROR:**  I'm juror number 13.  My name is

19   ████████████.  I live in Ocean Springs, Mississippi.  I'm an

20   attorney, self-employed.  I'm not married.  And I have never

21   served on a jury before.

22          **THE COURT:**  Thank you, sir.

23          **PROSPECTIVE JUROR:**  Your Honor, I'm juror number 14.

24   My name is ███████████.  I live in Gulfport.  I'm retired,

25   divorced.  And I never served on a jury before.

1          **THE COURT:**  Thank you, sir.

2          **PROSPECTIVE JUROR:**  Juror number 15.  ███

3 ███.  I live in Gulfport.  I'm in electrical sales.  I am

4 married.  My wife is a school secretary.  I've never served on

5 a jury before.

6          **THE COURT:**  Thank you very much, sir.

7          **PROSPECTIVE JUROR:**  I'm juror number 16.  My name is

8 ███.  I live in Gautier, Mississippi.  I'm a systems

9 engineer.  I'm married.  My wife is a student.  And I've never

10 served on a jury.

11          **THE COURT:**  Thank you, sir.

12          **PROSPECTIVE JUROR:**  I'm juror number 17, ███

13 ███.  I live in Hurley, Mississippi.  I work at Singing

14 River Health Systems as the director of IT.  I'm married.  My

15 spouse is self-employed.  And I have never served on a jury

16 before.

17          **THE COURT:**  Thank you, ma'am.  Ma'am, when you say he

18 is self-employed, what kind of work does he do?

19          **PROSPECTIVE JUROR:**  Floor installation.

20          **THE COURT:**  Okay.  Thank you.

21          **PROSPECTIVE JUROR:**  I'm juror number 18.  My name is

22 ███.  I live in Ocean Springs, Mississippi.

23 Mechanical engineer for Gryphon Technologies.  No, I'm not

24 married.

25          **THE COURT:**  Have you ever served on a jury before?

1        **PROSPECTIVE JUROR:**  No, sir, I have not.

2        **PROSPECTIVE JUROR:**  My name is ███████████.  I

3   live in Carriere, Mississippi.  And my occupation is a sales

4   merchandiser for Drive Line Retail.  Yes, I'm married, and my

5   spouse is retired.  Have you ever served on a jury?  No.

6        **THE COURT:**  Thank you, ma'am.

7        **PROSPECTIVE JUROR:**  My name is ██████████ from

8   Gulfport.  I'm a cook for Red Lobster.  I'm married.  My wife

9   is a teacher.  No, I've never served on a jury.

10       **THE COURT:**  Thank you, sir.

11       **PROSPECTIVE JUROR:**  Juror number 21.  My name is

12  ███████.  I'm unemployed, married.  My husband is disabled.

13  And I've never served on a jury.

14       **THE COURT:**  Thank you, ma'am.

15       **PROSPECTIVE JUROR:**  I'm juror number 22.  My name is

16  ██████████, Pass Christian.  I'm retired.  I am married.

17  My wife is retired.  And I've never served on a jury before.

18       **THE COURT:**  Thank you, sir.

19       **PROSPECTIVE JUROR:**  My name is ████████████,

20  juror number 23, from Carriere, Mississippi.  I'm retired.  I'm

21  married.  My spouse is also retired.  And I've never served on

22  a jury before.

23       **THE COURT:**  Thank you, sir.

24       **PROSPECTIVE JUROR:**  Juror number 24.  My name is

25  ████████.  I live in Gulfport, Mississippi.  I'm an

1    insurance agent with Lemon Mohler.  I am not married.  And I've

2    never served before.

3                    THE COURT:  Thank you, ma'am.

4                    PROSPECTIVE JUROR:  I'm number 25.  My name is ████

5    ████.  I live in Ocean Springs.  I'm retired.  I am married.

6    My husband is retired.  And I have served on a jury before.

7                    THE COURT:  All right, ma'am.  How long ago was that?

8                    PROSPECTIVE JUROR:  About 20 years.

9                    THE COURT:  Was that a civil or criminal case?

10                   PROSPECTIVE JUROR:  Criminal.

11                   THE COURT:  And where was that; in state court or

12   federal court.

13                   PROSPECTIVE JUROR:  County court.

14                   THE COURT:  County court.  In Jackson County?

15                   PROSPECTIVE JUROR:  Jackson County.

16                   THE COURT:  In that case, did the jury retire to

17   deliberate in that case?

18                   PROSPECTIVE JUROR:  Yes.

19                   THE COURT:  Did it reach a verdict?

20                   PROSPECTIVE JUROR:  Yes.

21                   THE COURT:  Thank you, ma'am.  Let me ask one

22   follow-up.  Is there anything about your experience serving on

23   that jury that would affect your ability to sit as a juror in

24   this case, listen to the evidence presented by both sides and

25   the law as the Court will give it to you, and then render a

1    verdict that will be fair and impartial to both sides?

2    Anything that would prevent you from doing that?

3             PROSPECTIVE JUROR:  I'm sorry?

4             THE COURT:  Anything about your experience on that

5    criminal jury that would prevent you --

6             PROSPECTIVE JUROR:  It was fine.

7             THE COURT:  You would be able to do that?

8             PROSPECTIVE JUROR:  Yes, I would.

9             THE COURT:  Thank you.

10            PROSPECTIVE JUROR:  I'm juror number 26.  My name is

11   ████████████, Ocean Springs, Mississippi.  I am a maintenance

12   technician.  I'm married.  My spouse's occupation is a teacher

13   assistant.  And I have served on a jury before.

14            THE COURT:  All right.  And how long ago was that,

15   sir?

16            PROSPECTIVE JUROR:  Probably six or seven years.

17            THE COURT:  Was that a civil case or a criminal case?

18            PROSPECTIVE JUROR:  Criminal case.

19            THE COURT:  And was that in Jackson County Circuit

20   Court?

21            PROSPECTIVE JUROR:  Yes, sir.

22            THE COURT:  And in that case, did the jury retire to

23   deliberate?

24            PROSPECTIVE JUROR:  Yes.

25            THE COURT:  Did you reach a verdict?

 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  Is there anything about your experience

 3    serving on that jury that would prevent you from sitting as a

 4    juror in this case, listening to the evidence presented by both

 5    sides, as well as the law as I will give it to you, and then

 6    render a verdict that would be fair and impartial to both

 7    sides?

 8              PROSPECTIVE JUROR:  Yes, sir.

 9              THE COURT:  There is something?

10              PROSPECTIVE JUROR:  No, sir.

11              THE COURT:  You would be able to do that?

12              PROSPECTIVE JUROR:  Not a problem.

13              THE COURT:  Not a problem.  All right.  Thank you,

14    sir.  I know that's a long, long question.

15              PROSPECTIVE JUROR:  I'm 27.  My name is ███████.

16    I live in Picayune.  I'm a homemaker.  I am married.  My

17    husband is retired.  And I've never served before.

18              THE COURT:  Thank you, ma'am.

19              PROSPECTIVE JUROR:  I'm juror number 28, ███████

20    from Carriere, Mississippi.  I'm an office administrator for

21    Reich, Album & Plunkett, a mid-size law firm in Metairie,

22    Louisiana.  I'm married.  My husband is a truck driver for

23    Contract Haulers in Picayune, Mississippi.  And I have never

24    served on a jury.

25              PROSPECTIVE JUROR:  Juror number 29, ███████.

1    I live in Long Beach, Mississippi.  I'm a manager of a

2    third-party administrative company.  My wife is a high school

3    teacher in Long Beach.  And I've never served on a jury before.

4            **PROSPECTIVE JUROR:**  Number 30, ███████.  Long

5    Beach, Mississippi.  I'm a maintenance electrician, married.

6    My wife is a bus driver for Long Beach School System.  And I've

7    served on a jury before.

8            **THE COURT:**  Sir, how long ago was that?

9            **PROSPECTIVE JUROR:**  About two months.

10           **THE COURT:**  Was that a civil case or a criminal case?

11           **PROSPECTIVE JUROR:**  Civil.

12           **THE COURT:**  Was that state court or federal court?

13           **PROSPECTIVE JUROR:**  County.

14           **THE COURT:**  Harrison County Circuit Court?

15           **PROSPECTIVE JUROR:**  Yes, sir.

16           **THE COURT:**  In that case, did the jury retire to

17   deliberate?

18           **PROSPECTIVE JUROR:**  No, sir.

19           **THE COURT:**  What happened?

20           **PROSPECTIVE JUROR:**  It was dismissed.

21           **THE COURT:**  It was dismissed?  Okay.

22       Anything about your experience serving on that jury that

23   would affect your ability to sit here and listen to the

24   evidence presented by both sides, as well as the law as I will

25   give it to you, and then render a verdict that would be fair

1     and impartial to both sides?

2              **PROSPECTIVE JUROR:**  Other than I didn't like it, but

3     no, sir.

4              **THE COURT:**  You didn't care for the experience?

5              **PROSPECTIVE JUROR:**  No, sir.

6              **THE COURT:**  I understand it is inconvenient, but

7     other than the inconvenience of it, is there anything that

8     would prevent you from doing that?

9              **PROSPECTIVE JUROR:**  No, sir.

10             **THE COURT:**  Thank you.

11             **PROSPECTIVE JUROR:**  I am number 31.  My name is ███

12    ███.  I am from Lucedale, Mississippi.  I'm a bookkeeper for

13    a nonprofit organization.  I am married.  My husband is

14    employed at Mississippi Gulf Coast Community College.  And no,

15    I've never served before.

16             **THE COURT:**  Thank you, ma'am.

17             **PROSPECTIVE JUROR:**  I'm juror number 32.  My name is

18    ████████.  I live in Ocean Springs, Mississippi.  I'm

19    retired.  I am married.  My spouse is retired.  And I've never

20    served on a jury before.

21             **THE COURT:**  Thank you, sir.

22             **PROSPECTIVE JUROR:**  I'm juror number 33.  I live in

23    Long Beach, Mississippi.  My occupation is a hostess cashier at

24    Golden Nugget Casino.  I am not married.  I never served on a

25    jury before.

```
 1              THE COURT:  Thank you, ma'am.

 2              PROSPECTIVE JUROR:  I'm 34, ███████████ from

 3     Gulfport, Mississippi.  I'm in sales in the gaming industry.  I

 4     am married.  My wife is a teacher, and I've never served

 5     before.

 6              THE COURT:  Thank you, sir.

 7              PROSPECTIVE JUROR:  Juror number 35.  My name is

 8     ██████████████.  I'm retired.  My wife is retired.  No, I have

 9     not served on a jury previously.

10              THE COURT:  Thank you, sir.

11              PROSPECTIVE JUROR:  Number 36, █████████████,

12     Gulfport, Mississippi.  I work for a dental office.  I'm

13     married.  My husband is retired.  I served on a grand jury at

14     the Harrison County Courthouse last year from March through

15     September.

16              THE COURT:  All right.  And let me ask you, is there

17     anything about that experience, serving on the grand jury, that

18     would affect your ability to sit as a juror in this case, which

19     is a civil case?

20              PROSPECTIVE JUROR:  No, there is not.

21              THE COURT:  You would be able to listen to evidence

22     from both sides and the law as I give it to you and then render

23     a verdict that is fair and impartial?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Thank you.
```

1          **PROSPECTIVE JUROR:**  You're welcome.

2          **PROSPECTIVE JUROR:**  Juror number 37, ███████████.

3    I'm from Lumberton, Mississippi.  I am a business manager for

4    the *Picayune Item* newspaper.  I am married.  My husband is a

5    welder.  And I've never served on a jury before.

6          **THE COURT:**  Thank you, ma'am.

7          **PROSPECTIVE JUROR:**  I'm juror number 38.  My name is

8    ████████████.  I live in Gulfport, Mississippi.  Occupation

9    is a manager of a furniture store.  I am married.  My spouse is

10   a nurse, and I've never served on a jury before.

11         **THE COURT:**  Thank you, sir.

12         **PROSPECTIVE JUROR:**  I'm juror number 39.  My name is

13   ████████████.  I'm from Poplarville, Mississippi.  I'm a

14   self-employed massage therapist.  I'm married.  My husband is a

15   self-employed taxidermist.  And I've never served on a jury

16   before.

17         **THE COURT:**  Thank you, ma'am.

18         **PROSPECTIVE JUROR:**  Juror number 40.  My name is

19   ██████████.  I live in Long Beach, Mississippi.  Occupation

20   is retired.  I am married.  My spouse is a housewife, I guess

21   you would call it.  I've served on jury duty twice before.

22         **THE COURT:**  Let me ask you about both of those, if I

23   could, please, sir.  How long ago was the first jury service

24   that you served?  The first jury you served on, how long ago

25   was that?

1          **PROSPECTIVE JUROR:**  Probably about 15 years ago.

2          **THE COURT:**  What kind of case was that; civil?

3          **PROSPECTIVE JUROR:**  It was a misdemeanor.

4          **THE COURT:**  It was a criminal case?

5          **PROSPECTIVE JUROR:**  Yes, sir.

6          **THE COURT:**  Okay.  And so a misdemeanor, would that

7    have been in state court over here in Harrison County?

8          **PROSPECTIVE JUROR:**  Yes, sir.

9          **THE COURT:**  And did the jury retire to deliberate in

10   that case?

11         **PROSPECTIVE JUROR:**  Yes, sir.

12         **THE COURT:**  Did it reach a verdict?

13         **PROSPECTIVE JUROR:**  Yes, sir.

14         **THE COURT:**  How about the other jury you served on?

15   How long ago was that?

16         **PROSPECTIVE JUROR:**  It was probably about nine years

17   ago.

18         **THE COURT:**  Was that a criminal or a civil case?

19         **PROSPECTIVE JUROR:**  It was a criminal case.

20         **THE COURT:**  Was that also in state court over here?

21         **PROSPECTIVE JUROR:**  Yes, sir.

22         **THE COURT:**  Did the jury retire to deliberate in that

23   case?

24         **PROSPECTIVE JUROR:**  Yes, sir.

25         **THE COURT:**  Did it reach a verdict?

1                    **PROSPECTIVE JUROR:**  No, sir, it did not.

2                    **THE COURT:**  What happened in that case?

3                    **PROSPECTIVE JUROR:**  It was what they call a hung

4      jury, I reckon.

5                    **THE COURT:**  Hung jury in that case.  Okay.  Is there

6      anything about your experience serving on either one of those

7      juries that would affect your ability to sit as a juror in this

8      case, which is a civil case, listen to the evidence presented

9      by both sides and the law as I will give it to you and then

10     render a verdict that would be fair and impartial to both

11     parties?

12                   **PROSPECTIVE JUROR:**  No, sir.

13                   **THE COURT:**  Thank you, sir.

14                   **PROSPECTIVE JUROR:**  I'm juror number 41.  My name is

15     ███████████████.  I work for Harrison County School District.

16     I'm married.  My husband is disabled.  And I've never served

17     before.

18                   **THE COURT:**  Thank you, ma'am.

19                   **PROSPECTIVE JUROR:**  Juror number 42, ██████████.  I

20     live in Perkinston, Mississippi.  My occupation is computer lab

21     assistant.  I am married.  My spouse's occupation is

22     maintenance supervisor.  And I have served on grand jury in

23     Stone County before.

24                   **THE COURT:**  Would that experience serving on a grand

25     jury in any way affect your ability to sit in this courtroom,

1    listen to the evidence presented by both sides and the law as I

2    will give it to you and then render a verdict that will be fair

3    and impartial to both sides?

4            **PROSPECTIVE JUROR:**  No.

5            **THE COURT:**  Thank you, ma'am.

6            **PROSPECTIVE JUROR:**  I'm juror number 43.  My name is

7    ████████████, Moss Point, Mississippi.  My occupation is

8    U.P.S.  Yes, I'm married.  My spouse works for a nursing home,

9    River Chase.  And I never served on a jury before.

10           **THE COURT:**  Thank you, sir.

11           **PROSPECTIVE JUROR:**  My number is 44.  My name is

12   ████████████.  I live in Lumberton, Mississippi.  I'm a

13   teacher.  I'm married.  My husband is a teacher, a coach and a

14   youth pastor.  I have served on a jury in Portsmouth, Virginia.

15           **THE COURT:**  How long ago was that, ma'am?

16           **PROSPECTIVE JUROR:**  About 17 years ago.

17           **THE COURT:**  Was that a civil case or a criminal case?

18           **PROSPECTIVE JUROR:**  I think it was civil.

19           **THE COURT:**  Was it a situation where you had two

20   private parties or was it a case where you had a prosecutor?

21           **PROSPECTIVE JUROR:**  Two private parties.  It was a

22   domestic case.

23           **THE COURT:**  A domestic issue?

24           **PROSPECTIVE JUROR:**  Yes.

25           **THE COURT:**  Family relations type thing?

1          PROSPECTIVE JUROR:  Yes, sir.

2          THE COURT:  Did the jury in that case retire to

3     deliberate?

4          PROSPECTIVE JUROR:  We did.

5          THE COURT:  Did it reach a verdict in that case?

6          PROSPECTIVE JUROR:  Yes, we did.

7          THE COURT:  Was there anything about your experience

8     serving on that jury that would affect your ability to sit as

9     juror in this case, listen to the evidence presented by both

10    sides, as well as the law as I will give it to you, and then

11    render a verdict that will be fair and impartial to both sides?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Thank you.

14         PROSPECTIVE JUROR:  I am juror number 45.  My name is

15    ████████.  I live in Carriere, Mississippi.  I am retired.  I

16    am married.  And my husband is also retired.  And no, I've

17    never served on a jury.

18         THE COURT:  Thank you, ma'am.

19         PROSPECTIVE JUROR:  Number 46, ████████████, Ocean

20    Springs, Mississippi, maintenance supervisor at Chevron

21    Corporation.  Yes, I'm married.  My husband is a carpenter.

22    And no, I've never served on a jury before.

23         THE COURT:  Thank you, ma'am.

24         PROSPECTIVE JUROR:  ████████████, number 47.  I work

25    for Compton Engineering as an engineering inspection manager

1    and FEMA specialist.  I have my own company, Greenscapes

2    Property Management.  And I'm a certified arborist.  My wife

3    works next door here in the probation and pretrial division.

4    And I've never served on a jury before.

5            **THE COURT:**  Thank you, sir.

6            **PROSPECTIVE JUROR:**  Number 48, ███████████ from

7    Waveland, Mississippi.  I'm an environmental manager, single.

8    And I've never served on a jury before.

9            **THE COURT:**  Thank you, ma'am.  All right.

10       Thank you all very much for that.  I do want to go back

11   real quick to a few of you and just ask a follow-up question.

12   What I want to do is go through those of you who are retired

13   and just ask what you did before you retired.  All right?  And

14   if I skip anyone, I will ask if I skipped anyone, but I will

15   start with juror number 3, Mr. ████.  Can you tell us what

16   your occupation was, sir, before you retired?

17           **PROSPECTIVE JUROR:**  General manager for Cable One.

18           **THE COURT:**  Okay.  Thank you, sir.  Next I think is

19   number 4, Mr. ████.  Is that right?

20           **PROSPECTIVE JUROR:**  Yes, Your Honor.  I was retired

21   Air Force, 24-plus years, and I also retired in the building

22   and assembly industry.

23           **THE COURT:**  Thank you for your service, sir.

24           **PROSPECTIVE JUROR:**  Thank you, sir.

25           **THE COURT:**  Next I have -- I'm showing number 10,

1    Mr. ████.

2              **PROSPECTIVE JUROR:** ████. I retired from

3    Bell South as a testing technician and also was executive

4    vice-president of my local union, Communications Workers of

5    America.

6              **THE COURT:** Thank you, sir. I think next is number

7    14, Mr. ████.

8              **PROSPECTIVE JUROR:** I retired from the City of San

9    Jose, California. I was plant maintenance.

10             **THE COURT:** That's a beautiful area out there. I

11   used to live out there at one time. Very nice area.

12        I think next is number 23, Mr. ████.

13             **PROSPECTIVE JUROR:** I retired from Bell South as an

14   electronics technician.

15             **THE COURT:** Thank you, sir. Then next was 25,

16   Ms. ████. Am I pronouncing that correctly?

17             **PROSPECTIVE JUROR:** Yes. I retired as a travel

18   agent.

19             **THE COURT:** Okay. Thank you. I think the next one I

20   showed was Mr. ████, number 32.

21             **PROSPECTIVE JUROR:** I retired from a local government

22   administrator at city and county level.

23             **THE COURT:** Thank you, sir. Next I think was juror

24   number 35, Mr. ████. Is that correct?

25             **PROSPECTIVE JUROR:** Yes, sir. I retired from medical

1    surgical sales.

2            THE COURT:  Thank you.  Next I'm showing number 40,

3    Mr. ███.

4            PROSPECTIVE JUROR:  Yes, sir.  I had 38 years at

5    Mississippi Power Company as a lead lineman.

6            THE COURT:  Thank you, sir.  Next was number 45,

7    Ms. ███.

8            PROSPECTIVE JUROR:  I was an oceanographer with the

9    Naval Oceanography Program.

10           THE COURT:  Thank you.  Did I miss anyone else who is

11   retired?  Raise your hand.  Yes, sir?

12           PROSPECTIVE JUROR:  Juror number 22.  I retired as a

13   self-employed service station operator.

14           THE COURT:  Okay.  I'm sorry.  I missed that one.

15   Thank you, sir.  Anybody else I missed who is retired?  Okay.

16       The next question I want to ask, then -- I will indicate

17   to you that this case is probably going to take about three

18   weeks to try.  You will not be sequestered, which means that at

19   the end of every day, you will be able to go home.  The daily

20   schedule we will follow is, you will start here about 9:00

21   each morning.  We will take a short break in the mid morning,

22   maybe 10 or 15 minutes around 10:30 or so.  You will be able to

23   go back in the jury room.  We will have refreshments and

24   restrooms for you.  Then we will take a lunch break for an hour

25   to an hour and a half each day so you can go have lunch.  And

1    then we will break each day around 5:00.

2        Is there anyone for whom this schedule would present a

3    problem or beyond just being merely an inconvenience?  Any kind

4    of a serious problem that kind of schedule would pose?

5        Let's start here.  First is Mr. ███, number 3.

6            PROSPECTIVE JUROR:  May I approach, sir?

7            THE COURT:  Yes, you may.

8        **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 3**

9    **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 1).**

10           THE COURT:  Any other hands?  This would be Mr.

11   ███, number 4?

12           PROSPECTIVE JUROR:  Yes, Your Honor.  I have a

13   medical issue, probably needing surgery.  I have to schedule

14   with a surgeon Wednesday.

15           THE COURT:  You have an appointment scheduled or a

16   surgery scheduled?

17           PROSPECTIVE JUROR:  Appointment.

18           THE COURT:  Is this for a consultation?

19           PROSPECTIVE JUROR:  I have a hernia I need to get

20   taken care of.

21           THE COURT:  Is this something you could reschedule,

22   or is it something you need --

23           PROSPECTIVE JUROR:  Oh, I can reschedule it, I guess.

24           THE COURT:  If you had to reschedule it, would that

25   cause any kind of major problem for you?

1            PROSPECTIVE JUROR:  Not unless it gets worse.

2            THE COURT:  Thank you, sir.  Let me get back to you

3     again, Mr. ███.  Let me ask you a question, follow up on

4     that, if I could.  If for some reason you were picked to serve

5     as a juror in this case and you had to reschedule your

6     appointment, would that in any way affect your ability to sit

7     here on this jury for three weeks, serve, listen to all the

8     evidence and the law as I will give it to you and then be fair

9     and impartial to both sides?

10            PROSPECTIVE JUROR:  Yes, I could be fair.

11            THE COURT:  That wouldn't be weighing on your mind?

12            PROSPECTIVE JUROR:  No.

13            THE COURT:  In any way, shape or form?  No?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  Is there anybody else in the back row?

16     Let's make sure we have got the back row first.  Anybody here

17     in the front row?

18            PROSPECTIVE JUROR:  Number 11.

19            THE COURT:  Is it ███?

20            PROSPECTIVE JUROR:  Yes, sir.

21            THE COURT:  Go ahead.

22            PROSPECTIVE JUROR:  I'm a single mom.  And my mom,

23     she is going through her citizenship on the eighth of next

24     month, so I'm trying to study her as much as I can.  And my son

25     is graduating May 12th from Duke University, and I'm trying to

1    work as hard as I can so I can -- it is a little expensive.  I

2    cannot afford to miss a day of work.

3            **THE COURT:**  Okay.  You said your mother is studying

4    for her citizenship exam?

5            **PROSPECTIVE JUROR:**  She is going to get her

6    citizenship interview on the eighth of April.

7            **THE COURT:**  The exam is on the eighth of April?

8            **PROSPECTIVE JUROR:**  Yes, sir.

9            **THE COURT:**  Where is she taking the exam; do you

10    know?

11            **PROSPECTIVE JUROR:**  In Metairie, Louisiana.  Yes,

12    Your Honor.

13            **THE COURT:**  Are you study -- when you study with her,

14    when are you typically doing that?  In the evenings?

15            **PROSPECTIVE JUROR:**  I work two jobs.  Mostly in the

16    morning before I go to work and after work also.

17            **THE COURT:**  What time do you usually go to work?

18            **PROSPECTIVE JUROR:**  I work from 9 in the morning to

19    12:00.

20            **THE COURT:**  Midnight?

21            **PROSPECTIVE JUROR:**  Yes, sir.

22            **THE COURT:**  And you mentioned your son, is it, that's

23    graduating?

24            **PROSPECTIVE JUROR:**  He's graduating from Duke

25    University.

1          **THE COURT:**  Congratulations.  That's a very good

2     school.

3          **PROSPECTIVE JUROR:**  Thank you.

4          **THE COURT:**  So you are trying to earn -- I'm sorry.

5     I didn't quite catch -- you are trying to earn money to be able

6     to travel up there?

7          **PROSPECTIVE JUROR:**  Yes, sir.  It is expensive.

8     Going there this coming May.

9          **THE COURT:**  Let me ask you, if you were picked to

10    serve on this jury, would you be able to put those things out

11    of your mind and listen to the evidence presented by both

12    sides, as well as the law as I will give it to you, and then

13    render a verdict that would be fair and impartial to both

14    sides?

15         **PROSPECTIVE JUROR:**  Not this time, Your Honor.

16         **THE COURT:**  Thank you.  Anyone else on the front row?

17    Mr. ███████?

18         **PROSPECTIVE JUROR:**  Number 13.  I have no problem

19    serving, but I'm scheduled to travel outside the country on

20    April 11th.

21         **THE COURT:**  Okay.  And have you already got plane

22    tickets and reservations?

23         **PROSPECTIVE JUROR:**  Yes, sir.

24         **THE COURT:**  Without me getting too personal, what is

25    the nature of that?  Is that for business or pleasure?

```
 1              PROSPECTIVE JUROR:  Pleasure.

 2              THE COURT:  Is it something you could reschedule if

 3    you had to?

 4              PROSPECTIVE JUROR:  It's a group.

 5              THE COURT:  It's a group travel?

 6              PROSPECTIVE JUROR:  Yes, Your Honor.

 7              THE COURT:  Okay.  Thank you.  Anyone else in the

 8    front row here?  Let's start with the gallery back here.

 9    Anyone back here have a hand?

10              PROSPECTIVE JUROR:  I have a vacation --

11              THE COURT:  Wait a minute, ma'am.  Your number and

12    name, please?

13              PROSPECTIVE JUROR:  17, ████████.  I have a

14    vacation already reserved for the week of April the 9th, that

15    Thursday and Friday.

16              THE COURT:  Thursday and Friday.  Okay.

17              PROSPECTIVE JUROR:  I also have -- my daughter is

18    getting married the first week of May.  That is after the three

19    weeks, but I didn't know if the holiday plays into this and it

20    could run longer than three weeks.  It would be getting close

21    to that time.

22              THE COURT:  This thing will not run longer than three

23    weeks.  I will not permit it to run longer than three weeks.  I

24    have made that very clear.  It will end.  And we may finish

25    sooner.  I'm trying to give you the longest that it will take.
```

1    It may wrap up sooner than that.

2                PROSPECTIVE JUROR:  Okay.

3                THE COURT:  But no, it will not take longer than

4    three weeks.  As to the vacation you have reserved, is that a

5    driving vacation, flying vacation?

6                PROSPECTIVE JUROR:  It is driving over to Gulf

7    Shores, and the house is already reserved, and the deposit is

8    paid.

9                THE COURT:  Okay.  All right.

10                PROSPECTIVE JUROR:  It is only that Thursday and

11    Friday, not that full week, but that Thursday and Friday.

12                THE COURT:  Thank you.

13                PROSPECTIVE JUROR:  Um-hm.

14                THE COURT:  Anybody else back here in this part of

15    the gallery?

16                PROSPECTIVE JUROR:  19, ███████████.  Can I come

17    up there?

18                THE COURT:  You sure may.

19          **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 19**

20    **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 2).**

21                THE COURT:  Any other hands back there?  I think I

22    see someone.  I think that's in the back row.

23                PROSPECTIVE JUROR:  34, ██████████.

24                THE COURT:  Yes, sir?

25                PROSPECTIVE JUROR:  I've got meetings scheduled --

1  I'm in sales all over the southeast, so I have meetings and

2  travel plans scheduled for the next three weeks.  They can be

3  changed.  However, it is pretty critical to our company that

4  I'm there.

5         THE COURT:  All right.  And are these meetings -- you

6  say these meetings could be rescheduled if they had to be?

7         PROSPECTIVE JUROR:  Yeah, they could be if they had

8  to be.

9         THE COURT:  Is there anyone who could fill in for

10  you?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  If for some reason you were picked to

13  serve on this jury, would the fact that you had to reschedule

14  those meetings affect you in any way in terms of your ability

15  to listen to the evidence from both sides and the law as I give

16  it to you and then render a verdict that would be fair and

17  impartial to both sides?

18         PROSPECTIVE JUROR:  I can be fair.

19         THE COURT:  Thank you, sir.  Anyone else on that side

20  of the courtroom back there?

21         PROSPECTIVE JUROR:  Juror number 41.

22         THE COURT:  41, Ms. ██████.

23         PROSPECTIVE JUROR:  My husband and my son got into a

24  fight, and my husband called the law on my son, and April 7th

25  he has a court date for I guess you would call it domestic

1    violence.

2            **THE COURT:**  Okay.

3            **PROSPECTIVE JUROR:**  If it was going to be done where

4    I could be there for my son, it would be fine.  I just have to

5    be there for my son when we go to court.

6            **THE COURT:**  Where will that be, ma'am?

7            **PROSPECTIVE JUROR:**  I guess right over here in

8    Harrison County.

9            **THE COURT:**  Okay.  April 7th, I'm showing that to be

10   a Sunday, April 7th.

11           **PROSPECTIVE JUROR:**  Well, maybe -- maybe it's the

12   6th.  It's right there at the first of April.

13           **THE COURT:**  Okay.  You said it's right over here in

14   Harrison County?

15           **PROSPECTIVE JUROR:**  Yes, sir.

16           **THE COURT:**  What time is it scheduled for?

17           **PROSPECTIVE JUROR:**  I'm not really sure.  I don't

18   remember.  I think it was 9:00.

19           **THE COURT:**  All right.  If we were able to

20   accommodate you, if you were picked on this jury and for some

21   reason we got to that point and we could take a break and let

22   you go tend to that and let you come back when it is over

23   with --

24           **PROSPECTIVE JUROR:**  That would be fine.

25           **THE COURT:**  -- would that resolve the problem for

1    you?

2            **PROSPECTIVE JUROR:**  No, sir.

3            **THE COURT:**  I know it wouldn't resolve the problem he

4    has, but in terms of as far as you are concerned, you would be

5    able to serve on this jury if we did it that way?

6            **PROSPECTIVE JUROR:**  Yes, sir.

7            **THE COURT:**  If we made that accommodation, would you

8    be able to sit and listen to the evidence presented by both

9    sides and the law as I will give it to you and then render a

10   verdict that would be fair and impartial to both sides?

11           **PROSPECTIVE JUROR:**  Yes, sir.

12           **THE COURT:**  That wouldn't be bothering you or

13   weighing on your mind at all as long as you were able to go

14   over and attend?

15           **PROSPECTIVE JUROR:**  Yes, sir.

16           **THE COURT:**  It wouldn't be bothering you one bit?

17           **PROSPECTIVE JUROR:**  No, sir.

18           **THE COURT:**  Thank you.  Yes, sir?

19           **PROSPECTIVE JUROR:**  I'm juror number 38.

20           **THE COURT:**  Okay.

21           **PROSPECTIVE JUROR:**  ███████████.  The next two

22   days, I was in the process of moving, and I have to be out by

23   tomorrow.

24           **THE COURT:**  You are moving out of your house?

25           **PROSPECTIVE JUROR:**  Yes, sir.

1          THE COURT:  When you say out by tomorrow, you have to

2    be out by the first thing in the morning or the end of the day

3    tomorrow?

4          PROSPECTIVE JUROR:  Probably the end of the day, sir.

5    I have all day.

6          THE COURT:  Okay.  Is this -- were you renting,

7    leasing?  Did you own the house?

8          PROSPECTIVE JUROR:  I owned the house.

9          THE COURT:  You owned it and you sold it?

10         PROSPECTIVE JUROR:  Yep.

11         THE COURT:  Is there anybody who could help you with

12   moving?

13         PROSPECTIVE JUROR:  No, sir.  It is me and my dad.

14         THE COURT:  Just your dad?

15         PROSPECTIVE JUROR:  Yes, sir.

16         THE COURT:  Okay.  How much time do you think it is

17   going to take you to get all the moving done?

18         PROSPECTIVE JUROR:  I think I will be done by -- if I

19   would have today, I will be done by tomorrow.

20         THE COURT:  I guess what I'm asking you is, do you

21   think it is going to take an hour, three hours, four hours?

22         PROSPECTIVE JUROR:  About four hours.

23         THE COURT:  To finish what you have to do?

24         PROSPECTIVE JUROR:  Yes, sir.

25         THE COURT:  If you were picked to serve on this jury,

1    is that something you could get finished this evening after

2    business hours if you had to?

3              **PROSPECTIVE JUROR:**  Yes, sir.

4              **THE COURT:**  If you got that done and got it all

5    finished, would you still be able to sit here and listen to the

6    parties' evidence and the law as I give it to you and then be

7    fair to both sides?

8              **PROSPECTIVE JUROR:**  Yes, sir.

9              **THE COURT:**  And perhaps we could even finish a little

10   early today if you got picked, and I could let you go so you

11   could take care of that.  Would that work for you?

12             **PROSPECTIVE JUROR:**  Yes, sir.

13             **THE COURT:**  Thank you, sir.  Anyone else on that side

14   of the courtroom?  I don't see any other hands.  How about the

15   other side over here?  Wait, wait.  There's one more.

16   Ms. ████ again.  Do you have something else, ma'am?

17             **PROSPECTIVE JUROR:**  Yes.  I just dug and found his

18   card.  The court date ain't until the 24th at 9:00 a.m.

19             **THE COURT:**  April 24th?

20             **PROSPECTIVE JUROR:**  Yes.

21             **THE COURT:**  So that solves that problem for you?

22             **PROSPECTIVE JUROR:**  Yes.  I was thinking it was the

23   first of April.

24             **THE COURT:**  All right.  So you don't have a problem,

25   then, as far as the three-week schedule?

1          **PROSPECTIVE JUROR:**  No, sir.

2          **THE COURT:**  Anyone on this side of the courtroom?

3          **PROSPECTIVE JUROR:**  Juror number 42, ███████.  On

4     April 5th, I'm scheduled to take the graduate exam in

5     Hattiesburg.

6          **THE COURT:**  Is that the GRE?

7          **PROSPECTIVE JUROR:**  Yes, sir, it is.

8          **THE COURT:**  How long does that take?

9          **PROSPECTIVE JUROR:**  It's a four-hour exam.  I have to

10    be in Hattiesburg before eight, and it's not scheduled to be

11    over with until 12:30.

12         **THE COURT:**  So it's about half the day that day?

13         **PROSPECTIVE JUROR:**  Yes, sir.

14         **THE COURT:**  Would that be something you could

15    reschedule if you had to?

16         **PROSPECTIVE JUROR:**  No, sir, I checked because I

17    wanted to do a vacation that week, and I could not reschedule

18    it.

19         **THE COURT:**  You already paid some money for it?

20         **PROSPECTIVE JUROR:**  It costs $185 for the exam.  And

21    I checked, and there are no other dates until after May, and

22    that's when I'm starting graduate school, in May.

23         **THE COURT:**  If we were able to accommodate your

24    schedule, perhaps make it a short day or take that day off,

25    would that fix the problem for you?

```
 1            PROSPECTIVE JUROR:  If I could be excused that day,
 2     it would be okay to serve.
 3            THE COURT:  If we did that, would you still be able,
 4     then, to listen to the evidence from both sides and the law as
 5     I will give it to you and render a verdict that would be fair
 6     and impartial to both sides?
 7            PROSPECTIVE JUROR:  Yes.
 8            THE COURT:  Thank you.  Any other hands on that side?
 9     All right.
10            PROSPECTIVE JUROR:  Can I approach, Your Honor?
11            THE COURT:  You may.  For the record, you are
12     Mr. ███████, number 47.
13            PROSPECTIVE JUROR:  Yes.
14        (TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 47
15     FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 3).
16            THE COURT:  Any other hands?  I think we have one
17     more.
18            PROSPECTIVE JUROR:  Number 48, ████████████.  May I
19     approach?
20            THE COURT:  You may.
21        (TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 48
22     FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 4).
23            THE COURT:  Okay.  I don't think I saw any more
24     answers to that question, so I will move on to the next one.
25            Now, we asked a question earlier, or you answered a
```

1    question earlier about whether you had ever served on a jury

2    before.  This is a somewhat related question, and again, if

3    someone wishes to approach and answer it privately, you may

4    certainly do so.  Have you or anyone in your immediate family

5    ever participated in a lawsuit, whether as a party, a witness,

6    or in any other capacity?  Please raise your hand.  Okay.  I

7    don't see any hands in the back row.  Let's start in the front

8    row.  Mr. ███, number --

9            PROSPECTIVE JUROR:  13, Your Honor.

10           THE COURT:  Is that anything beyond what you've

11   already told us?

12           PROSPECTIVE JUROR:  No, Your Honor.

13           THE COURT:  So nothing new there?

14           PROSPECTIVE JUROR:  No, Your Honor.

15           THE COURT:  Is the fact that you have had that

16   experience representing clients in these cases, would that in

17   any way affect your ability to sit and listen to the evidence

18   presented by both sides, as well as the law as I will give it

19   to you, and then render a verdict that would be fair and

20   impartial?

21           PROSPECTIVE JUROR:  Not at all.

22           THE COURT:  Thank you.  We had one other hand in the

23   front row.

24           PROSPECTIVE JUROR:  Juror number 16, ███████.

25           THE COURT:  Mr. ███.  Yes, sir.

1      **PROSPECTIVE JUROR:**  In 1998, I was in a car accident,

2  and we had to sue the insurance company because they wouldn't

3  pay for the car.

4      **THE COURT:**  Okay.  Was an actual lawsuit filed?

5      **PROSPECTIVE JUROR:**  Um-hm.

6      **THE COURT:**  Did that case go to trial?

7      **PROSPECTIVE JUROR:**  They settled the day before

8  court.

9      **THE COURT:**  And is there anything -- you understand

10  that this case, although there is an insurance company

11  involved, it is a different kind of case.  It is not a car

12  accident case, not a personal injury case.  Do you understand

13  that?

14      **PROSPECTIVE JUROR:**  Um-hm.

15      **THE COURT:**  Is there anything about the experience

16  you had in that case that would affect your ability to be fair

17  to both sides in this case?

18      **PROSPECTIVE JUROR:**  I could be fair.

19      **THE COURT:**  And you could follow the law as I give it

20  to you?

21      **PROSPECTIVE JUROR:**  Absolutely.

22      **THE COURT:**  I think we have one more hand down here

23  at the front of the row.

24      **PROSPECTIVE JUROR:**  (████████████)  Could you

25  restate the question again?

1          **THE COURT:**  Sure.  The question was:  Have you or

2     anyone in your immediate family ever participated in a lawsuit

3     whether as a party or as a witness or in some other capacity?

4     Did you file a lawsuit, or did someone sue you, or did you

5     testify as a witness, perhaps, in a case, something like that?

6     And if you are going to answer, I need you to say your name and

7     number, ma'am.

8          **PROSPECTIVE JUROR:**  I'm number 9, and my name is

9     ███████████.  My husband was a defendant with his company.

10         **THE COURT:**  Okay.  Was that a civil case then?

11    Somebody sued him?  Is that what happened?

12         **PROSPECTIVE JUROR:**  They sued the company, but they

13    named him as the defendant because he was the overseer of the

14    job.

15         **THE COURT:**  So he was sued in his capacity as an

16    employee of that company, basically?

17         **PROSPECTIVE JUROR:**  Right.

18         **THE COURT:**  And you mentioned I think that he was

19    retired.

20         **PROSPECTIVE JUROR:**  He's retired now.

21         **THE COURT:**  What did he do?

22         **PROSPECTIVE JUROR:**  He used to work for Mississippi

23    Power.

24         **THE COURT:**  Okay.  Do you know how that lawsuit

25    resolved?  Was there a settlement?  Was it resolved out of

1    court, or did it go to trial?

2           **PROSPECTIVE JUROR:**  I'm pretty sure it went to trial.

3           **THE COURT:**  Okay.

4           **PROSPECTIVE JUROR:**  I remember the stress.

5           **THE COURT:**  Let me ask this question, then.  Is there

6    anything about the experience you had or he had that would

7    affect your ability to sit as a juror in this case and listen

8    to the evidence both sides present, as well as the law as I

9    will give it to you and then be fair and impartial to both

10    sides?  Could you still do that?

11           **PROSPECTIVE JUROR:**  I think so.

12           **THE COURT:**  There's nothing about his experience that

13    would weigh on your mind and prevent you from doing that, is

14    there?

15           **PROSPECTIVE JUROR:**  Other than remembering the stress

16    he was under because I think he was -- what's that witness that

17    they --

18           **THE COURT:**  An adverse witness?

19           **PROSPECTIVE JUROR:**  Yeah, like they --

20           **THE COURT:**  They called him and he had to testify?

21           **PROSPECTIVE JUROR:**  Yeah.

22           **THE COURT:**  Well, do you understand that as a juror,

23    part of your job is not to worry about other people's stress

24    involved in the lawsuit?  You are supposed to listen to the

25    evidence and then make a decision that is fair and impartial

1    based on the law as I will give it to you.  And in fact, one of

2    the instructions that I will give you is that sympathy cannot

3    play any role in your decision, that though you may understand

4    someone is under stress, that cannot have anything to do with

5    your decision.  It has to be based strictly on the evidence and

6    the law.  Would you have any problem doing that?

7            **PROSPECTIVE JUROR:**  I've never done this before, but

8    I can say I don't think so.

9            **THE COURT:**  There's nothing about the experience your

10   husband had that suggests to you that you could not do that in

11   this case?  Is that right?

12           **PROSPECTIVE JUROR:**  Right.

13           **THE COURT:**  Thank you.  We have a hand in the back.

14   Mr. ████, number 3.

15           **PROSPECTIVE JUROR:**  Number 3, ████.  In my

16   capacity as city manager, I was named in a suit when I removed

17   the police chief.  It did go to trial, and it was a jury trial,

18   and I think the insurance company -- there was a settlement at

19   some point, but by then I was kind of removed from the case.

20           **THE COURT:**  Okay.  Is there anything about the

21   experience you had in that that would prevent you from

22   listening to the evidence from both sides and the law as I will

23   give it to you and then being fair and impartial?

24           **PROSPECTIVE JUROR:**  No.

25           **THE COURT:**  Thank you.  Anyone else up here in the

1    jury box?  I don't see any other hands.  Let's move to the

2    gallery back here, front row.  Yes, sir?

3              **PROSPECTIVE JUROR:**  ████████, number 20.  I'm not

4    sure if this falls into this category, but my wife had a lawyer

5    involved in a car accident that she was in on a couple of

6    different occasions, and it never went to court -- never went

7    to court or anything.  I was just bringing it up because I

8    wasn't sure if it was pertinent to the question.

9              **THE COURT:**  You said on a couple of different

10   occasions.  Did this happen more than once --

11             **PROSPECTIVE JUROR:**  Two different accidents.

12             **THE COURT:**  Two different accidents.  She had a

13   lawyer both times?

14             **PROSPECTIVE JUROR:**  Yes, sir.

15             **THE COURT:**  But you don't know whether that actually

16   ended up in a lawsuit or not?

17             **PROSPECTIVE JUROR:**  I know she had to go down there a

18   couple of times for a deposition maybe, and he was more or less

19   handling that for us because we weren't really sure.

20             **THE COURT:**  Of course, you understand that that

21   again, as I mentioned earlier, is kind of a personal injury

22   type case?

23             **PROSPECTIVE JUROR:**  Yes, sir.

24             **THE COURT:**  And though an insurance company may have

25   been involved, this is a totally different type of case.  You

1     understand that?

2           **PROSPECTIVE JUROR:** Yes, sir. I just wanted to make

3     sure I got it out there.

4           **THE COURT:** I appreciate that. That's what you

5     should do. Is there anything about that experience that you

6     and your wife had that would prevent you from being fair and

7     impartial to both sides in this case?

8           **PROSPECTIVE JUROR:** No, Your Honor.

9           **THE COURT:** All right. Another hand, I think, in the

10    back -- a couple of hands back in the gallery.

11          **PROSPECTIVE JUROR:** Yes, sir. Your Honor, number 32,

12    ███████████. I was involved as a witness on a -- a

13    character witness in a divorce case maybe 20 years ago, and as

14    a capacity -- in my capacity as the city manager, I was

15    involved in several lawsuit kind of things, annexation cases

16    where I was a witness, and in representing the city in that

17    respect. And also, my wife had a case in Georgia of which I

18    was a witness, and it was a slip-and-fall liability/disability

19    claim, and it did go to the jury, and we won the case.

20          **THE COURT:** Okay. Of course, again, you understand

21    all of those cases you described to me are completely different

22    from the type of case we are going to have here. Do you

23    understand that?

24          **PROSPECTIVE JUROR:** Yes, sir.

25          **THE COURT:** And do you understand -- I guess the

1    question is, is there anything about you or your wife's

2    experience in any of those cases that would affect your ability

3    to listen to the evidence in this case and the law as I give it

4    to you and then be fair and impartial?

5            **PROSPECTIVE JUROR:**  No, sir, not from those lawsuits.

6            **THE COURT:**  Okay.  Thank you.

7            **PROSPECTIVE JUROR:**  Juror number 28, ███████.  I

8    was a witness for my law firm, my present law firm when there

9    was a split between the original three partners.  It was about

10   six years ago, actually, 2006.

11           **THE COURT:**  About 2006, you said?

12           **PROSPECTIVE JUROR:**  2006, yes.

13           **THE COURT:**  Okay.  And did you testify at trial or in

14   a deposition?

15           **PROSPECTIVE JUROR:**  I testified at trial.

16           **THE COURT:**  Anything about that experience that would

17   affect your ability to sit in this courtroom, listen to the

18   evidence both sides present and then render a verdict that

19   would be fair and impartial to both sides based on the law?

20           **PROSPECTIVE JUROR:**  No, sir.

21           **THE COURT:**  Thank you.  Yes, sir.

22           **PROSPECTIVE JUROR:**  Number 29, ████████.

23   Earlier in my career, I was a claims adjuster and had to

24   testify in trials a few times.

25           **THE COURT:**  Claims adjuster.  Were you working for an

```
 1   insurance company at the time?

 2              PROSPECTIVE JUROR:  Travelers and then a couple of

 3   companies since then.

 4              THE COURT:  What kind of cases were those you

 5   typically --

 6              PROSPECTIVE JUROR:  Workers' Comp.

 7              THE COURT:  Okay.  Was there anything about the

 8   experience you had either working in that capacity or

 9   testifying in those cases that would affect your ability to

10   listen to the evidence both sides present in this case and the

11   law as I give it to you and then be fair and impartial to both

12   sides?

13              PROSPECTIVE JUROR:  I could be fair.

14              THE COURT:  Thank you.  All right.  Anyone else in

15   the gallery back there on that side?  No?  How about the other

16   side of the gallery?  I see one hand, two hands.

17              PROSPECTIVE JUROR:  Number 44, ███████████.  I was a

18   witness in a case between two sisters, and it was thrown out

19   because of lack of evidence.

20              THE COURT:  Okay.  What kind of a case was it?  Was

21   it a domestic case or --

22              PROSPECTIVE JUROR:  One sister was suing the other

23   sister for damages.

24              THE COURT:  An injury or a contract or --

25              PROSPECTIVE JUROR:  There was no jury there.  It was
```

1    just a judge.

2          **THE COURT:**  Okay.  All right.  And you were a witness

3    in that case?

4          **PROSPECTIVE JUROR:**  I was a witness.

5          **THE COURT:**  Again, you understand this is a very

6    different kind of case we are here on today.  Is there anything

7    about your experience in that proceeding that would affect your

8    ability to listen to the evidence presented by both sides and

9    the law as I will give it to you and then render a verdict that

10   would be fair and impartial to both sides?

11         **PROSPECTIVE JUROR:**  No.

12         **THE COURT:**  Thank you.

13         **PROSPECTIVE JUROR:**  Number 45, ███████.  My

14   daughter has a lawsuit, and it comes to trial in May.  She got

15   fired from her job because she had a seizure.

16         **THE COURT:**  Okay.

17         **PROSPECTIVE JUROR:**  And I had to give a deposition.

18         **THE COURT:**  So it's kind of an employment dispute,

19   basically, has to do with her work?

20         **PROSPECTIVE JUROR:**  Yes.

21         **THE COURT:**  You understand, again, this is a very

22   different kind of case from that.  Do you understand that?

23         **PROSPECTIVE JUROR:**  Yes.

24         **THE COURT:**  It has nothing to do with employment law.

25   Is there anything about your experience in that matter that

1    would affect your ability to listen to the evidence presented

2    by both sides and the law as I will give it to you and then

3    render a verdict that would be fair and impartial to both

4    sides?

5                **PROSPECTIVE JUROR:**  No, sir.

6                **THE COURT:**  Thank you.  Anybody else?  Okay.

7        Now, again, this is a question I've kind of asked a few

8    times, but I'm going to ask it again just to make sure that

9    everybody understands it.  Now, if you are selected to serve as

10   the jury in this case, as the jurors you will be the judges of

11   the facts.  You will be asked to resolve any disputes or

12   disagreements between the parties about the facts of this case.

13       As the judge, I will instruct you on the law, and you will

14   be required to follow the law as I give it to you, whether you

15   agree with it or not or whether it makes sense or not.  Is

16   there anyone here who would not be able to follow the law as I

17   give it to you regardless of your beliefs or opinions about the

18   law or the legal system?  Is there anyone here who could not do

19   that?  Please raise your hand.  All right.  I see no hands.

20       If you are selected to serve as a juror, would you be able

21   to render a verdict based solely on the evidence presented in

22   this courtroom and based on the law as I give it to you,

23   disregarding any other personal beliefs or notions you may have

24   about the law or the parties or the evidence?  Is there anyone

25   who could not disregard all of those personal beliefs and

1    render your verdict based solely on the evidence and the law?

2    Anyone who could not do that?  Raise your hand.  Mr. ████

3    ████, number --

4            **PROSPECTIVE JUROR:**  Number 32, Your Honor.  I've just

5    followed the case as it was going on --

6            **THE COURT:**  Stop.  Stop.  Stop.  We are not to that

7    yet.  I'm just asking a general question right now about your

8    ability to set aside whatever your personal beliefs would be.

9    Is that something you would have a problem doing?

10           **PROSPECTIVE JUROR:**  I would have problems doing it,

11   yes, sir.

12           **THE COURT:**  We will talk about that in a little bit.

13   Why don't you go ahead and come forward at this time, Mr. ████

14   ████.

15       **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 32**

16   **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 5).**

17           **THE COURT:**  Were there any other hands in response to

18   that question?  I don't think I saw any others.  How is

19   everybody doing?  Does anybody need a break at this point?

20   Raise your hand anybody.

21       Why don't we take about a ten-minute bathroom break, and

22   then when we finish, I'm going to ask you to come back in the

23   courtroom and sit exactly where you are sitting right now.

24   Don't move.  Sit in the exact same spot.

25       When you are outside the courtroom, I must give you some

```
 1   instructions you have to follow.  You are not to discuss the
 2   case amongst yourselves or with anyone else.  Do not have any
 3   discussions whatsoever with anyone else on the panel about it.
 4   If you see any of the lawyers or the parties wandering about,
 5   they are under instructions from me to ignore you and not to
 6   speak to you because those are the rules we must follow.  Court
 7   staff have to follow similar rules too.  So if you see them, do
 8   not speak to them, do not try to talk with them.  They are not
 9   going to talk to you.  Do not take that as them being rude.
10   They are following my instructions.
11        If for any reason anyone does try to talk to you or
12   discuss this case with you, when we return into this courtroom,
13   you are to advise me of that immediately.  Is there anybody who
14   does not understand those instructions?  Raise your hand.
15        Thank you.  At this time we will stand in recess for ten
16   minutes.  Please come back to your exact same spot you are
17   finished.
18        **(JURY VENIRE OUT AT 11:05 A.M.)**
19        **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 6**
20   **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 6).**
21        **(RECESS TAKEN AT 11:06 A.M. UNTIL 11:21 A.M.).**
22        **THE COURT:**  Ladies and gentlemen, welcome back.  We
23   are going to continue with some of the questions I have for
24   you, and we will move this along as quickly as we can.  I
25   recognize we have been here awhile.  I appreciate your
```

1    patience, but trust me, we are moving as quickly as we can with

2    this.

3        The next thing I need to do is tell you a little about

4    this case, and the question then is going to be whether any of

5    you have heard anything about the case or know anything about

6    it.  What I'm going to ask you after I've told you about the

7    case is if you have heard anything about it or know anything

8    about it, is simply to raise your hand, and then what I will

9    ask is for you to come forward, and we will talk with you about

10   it at side bar.

11       This is a civil case.  A civil case is typically initiated

12   by the filing of a complaint, and the complaint in most civil

13   cases is filed by a plaintiff.  When they file that lawsuit,

14   they are suing a defendant.  The defendant will then file what

15   is called an answer.  And the complaint and the answer are

16   simply both sides' version of what they say happen.  They are

17   not evidence of anything whatsoever.  They are simply the

18   allegations that each side is making against the other.  All

19   right?

20       So what I'm going to tell you is based strictly on the

21   complaint.  This is what each side is claiming, but neither of

22   these documents constitute any evidence.

23       Now, in this case the relators, you have heard me call

24   them, are Cori and Kerri Rigsby.  They have filed a lawsuit

25   against the defendant, State Farm Fire & Casualty Company,

1    under what is called the False Claims Act.  It is a federal

2    law.  This federal law permits a private citizen who is called

3    a relator -- that is why they are referred to as relators and

4    not plaintiffs -- to bring a lawsuit against a party whom he or

5    she believes has presented or caused to be presented knowingly

6    to an officer or employee of the United States Government a

7    false or fraudulent claim for payment or approval, or who has

8    knowingly made or caused to be made or used a false record or

9    statement which was material to a false claim or who has

10   conspired to defraud the government by getting a false or

11   fraudulent claim allowed or paid.

12       So this type of case, then, is called a False Claims Act

13   case.  Sometimes you may hear it referred to as a *qui-tam* case.

14   The relators in this case, the Rigsbys, claim that after

15   Hurricane Katrina, as an insurance company that participated in

16   the National Flood Insurance Program, referred to sometimes as

17   the NFIP, State Farm was responsible for adjusting insurance

18   claims that were brought under State Farm homeowner wind

19   policies and NFIP flood policies.

20       The relators allege that after Hurricane Katrina, State

21   Farm submitted a false claim by paying the limits of coverage

22   under a flood policy which insured the home of Thomas and

23   Pamela McIntosh, which was located at 2558 South Shore Drive in

24   Biloxi, Mississippi, and then by submitting the claim for

25   reimbursement to the United States Government which the United

 1    States honored.

 2        Now, in this case the amount of coverage which was paid

 3    was the limits of the flood policy on the McIntosh home,

 4    $250,000.

 5        The relators also claim that State Farm conspired with

 6    others to submit false claims on this particular property, and

 7    that State Farm and their co-conspirators acted with the intent

 8    to deceive or defraud the United States Government by pushing

 9    off the responsibility for paying hurricane wind claims on the

10    U.S. Government through the NFIP flood program.

11        Again, as I mentioned, the alleged false claim at issue in

12    this case is the 250,000-dollar flood claim that was made on

13    the McIntosh home.

14        Now, State Farm denies the relators' allegations, and it

15    contends that because of the devastation caused by Hurricane

16    Katrina, FEMA encouraged it and other insurance companies to

17    expedite the adjustment of flood claims.  State Farm maintains

18    that after inspecting the McIntosh house, the relator, Kerri

19    Rigsby, and the adjuster at that property, Cody Perry, who were

20    assigned to this particular flood claim, determined that due to

21    the extent of the damage, the resident was a loss, total loss,

22    meaning that the flood damage clearly exceeded $250,000.  State

23    Farm claims that there is no evidence that it presented a false

24    claim to the United States or any of those government agencies

25    in connection with the adjustment and payment of the McIntosh

1    claim, nor is there any evidence that State Farm had reason to

2    believe that the McIntosh house suffered less than $250,000 in

3    flood damage.  State Farm also maintains that there is no

4    evidence that it conspired with anyone to submit a false claim

5    to the United States or any of its agencies with respect to the

6    McIntosh house.

7        Now, again, as I mentioned, all of this comes from the

8    complaint and the answer.  They are not evidence.  They are

9    simply each parties' version of what did or did not happen.  So

10   the question I have for you is whether anyone on the panel has

11   heard or read anything about this case or knows anything about

12   it.  If so, please raise your hand.  I see one hand in the

13   front row, Mr. ████, and you are number 13.  Why don't you

14   come forward, please, sir.

15       **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 13**

16   **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 7).**

17       **THE COURT:**  Anyone else?  There is no one else here

18   in the jury box?  How about in the gallery?  We have a hand

19   back there in the gallery.  The first one there, that is --

20   what is your name and number, sir?

21       **PROSPECTIVE JUROR:**  I'm number 29, ████████.

22       **THE COURT:**  Sir, would you please come forward?

23       **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 29**

24   **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 8).**

25       **THE COURT:**  I think I saw another hand back there in

1    the gallery.  Your name and number, please?

2              PROSPECTIVE JUROR:  36, ███████████████.

3              THE COURT:  Please come forward.

4         (TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 36

5    FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 9).

6              THE COURT:  Any other hands in response to that

7    question?  We have one here.  That is Mr. --

8              PROSPECTIVE JUROR:  ███████████, number 47.

9              THE COURT:  Please come forward, sir.

10        (TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 47

11   FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 10).

12             THE COURT:  Any other hands?  Any other hands?  Okay.

13   I have one more.

14             PROSPECTIVE JUROR:  I just have a question.

15             THE COURT:  Why don't you come forward, ma'am.  You

16   are number 48, Ms. ███████████.

17        (TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 48

18   FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 11).

19             THE COURT:  Any other hands?  Any other hands in

20   response to that question?  I do not see any other hands.  All

21   right.  Thank you.

22        At this time, what I want to do is ask the attorneys for

23   the parties to please stand, introduce themselves and any

24   lawyers that are working with them, and introduce their

25   party -- party representatives as well.  What I then want to do

1    is ask you if any of you have ever been represented by any of

2    these lawyers or ever had any personal, business or other

3    relationship with them or their clients.

4          **MR. HEIDELBERG:**  Maison Heidelberg representing Kerri

5    Rigsby, Cori Rigsby.  And then with us, Auggie Matteis, Derek

6    Sugimura, Macie Sledge and Tim Belknap.  I think that is it.

7          **MR. GALLOWAY:**  I'm Robert Galloway.  With me are

8    Amanda Barbour, Phil Abernethy and Mike Beers.  The State Farm

9    company representative is Terry Blalock.

10          **THE COURT:**  Why don't you also state the names of

11    your firms as well.

12          **MR. GALLOWAY:**  We are all with the Butler Snow Law

13    Firm.  The full name is Butler, Snow, O'Mara, Stevens &

14    Cannada.

15          **THE COURT:**  Mr. Heidelberg?

16          **MR. HEIDELBERG:**  We are with Heidelberg Harmon Law

17    Firm, and the other group is with the Weisbrod, Matteis &

18    Copley Law Firm.

19          **THE COURT:**  Is there anybody here who has ever been

20    represented by any of these attorneys or their firms or has

21    ever had any type of business or personal dealings or

22    relationship with any of them or with their clients, the Rigsby

23    sisters or Mr. Blalock or State Farm, ever worked for State

24    Farm?  Mr. ██████, number 13.

25          **PROSPECTIVE JUROR:**  Number 13, Your Honor.  I've had

1    business relations with some of the attorneys involved.

2            **THE COURT:**  In terms of having cases with them or --

3            **PROSPECTIVE JUROR:**  Against.  They represent clients

4    that my client was suing.

5            **THE COURT:**  Which attorneys have you had cases with?

6            **PROSPECTIVE JUROR:**  Mr. Heidelberg.

7            **THE COURT:**  Would that experience in any way affect

8    your ability to be fair and impartial in this case?

9            **PROSPECTIVE JUROR:**  Not at all.

10           **THE COURT:**  Thank you.  Anybody else?  I see

11    Mr. █████, number 3.

12           **PROSPECTIVE JUROR:**  Yes, sir.  We used the firm of

13    Butler Snow in some matters involving some tire leases.  I'm

14    trying to think of the attorney.  None of them are here.

15           **THE COURT:**  So you used their firm, but none of these

16    particular attorneys?

17           **PROSPECTIVE JUROR:**  Right.

18           **THE COURT:**  Is there anything about the experience

19    you had dealing with them that would affect your ability to be

20    fair and impartial to both sides?

21           **PROSPECTIVE JUROR:**  No, sir.

22           **THE COURT:**  Thank you.  Anyone else?  We had a hand

23    way back here in the back.

24           **PROSPECTIVE JUROR:**  Number 37, ███████████.  Butler

25    Snow is a customer of the paper that I work for.

1          THE COURT:  You work for the newspaper in Picayune,

2     ma'am; is that right?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  When you say a customer, advertising or

5     what --

6          PROSPECTIVE JUROR:  They file legals that we run in

7     the newspaper.  Normally legals are run three times, but that

8     shouldn't have any impact on my ability to make a decision in

9     this.

10         THE COURT:  It wouldn't affect your ability in any

11    way, the fact that the newspaper has that relationship with

12    them?  You would still be able to be fair and impartial to both

13    sides?

14         PROSPECTIVE JUROR:  I think I could be fair and

15    impartial to both sides.

16         THE COURT:  Thank you.  Anyone else?  I don't see any

17    other hands.

18        The next thing I want to do is ask another question that

19    pertains to some lawyers.  Now, when this case was initially

20    filed, the relators, the Rigsby sisters, were originally

21    represented by Richard "Dickie" Scruggs, Zach Scruggs, Sid

22    Backstrom and the Scruggs Katrina Litigation Group.  What I

23    need to know is whether any of you have ever had, either you or

24    an immediate family member, was ever represented by any of

25    those individuals, whether you had any kind of business or

1   personal relationships with any of them.  Anyone here?  Okay.

2   All right.  I'm sorry.  Ma'am, stand, please.  Tell me your

3   name and number.

4                   **PROSPECTIVE JUROR:**  Number 46, ███████████.  My

5   husband is a carpenter and used to work for Dickie Scruggs in

6   Pascagoula, purely business.

7                   **THE COURT:**  He did carpentry work for him?

8                   **PROSPECTIVE JUROR:**  Yes, sir.

9                   **THE COURT:**  Did you ever meet Mr. Scruggs yourself?

10                  **PROSPECTIVE JUROR:**  No, sir.

11                  **THE COURT:**  Anything about the fact that your husband

12  did that kind of work for him that would affect your ability to

13  be fair and impartial to both sides in this case?

14                  **PROSPECTIVE JUROR:**  It would not affect my ability.

15                  **THE COURT:**  Thank you very much.  Now, understand, of

16  course, they are no longer involved in this lawsuit.  The

17  current counsel are the ones you see sitting right here.  There

18  is no kind of relationship between them and the group that I

19  just mentioned.

20      At this time I also want the lawyers to please stand and

21  introduce for me or identify for me all of the witnesses who

22  may be testifying in this trial.  I want you to listen again

23  because the question is going to be whether you know any of

24  these people, have any dealings with them or know anything

25  about them.

1        Let me also tell you that when you are listening to these

2  lists, it may sound like a long list of names, but that doesn't

3  necessarily mean that every single one of these people will

4  testify.  These are all the people who might possibly testify,

5  so I need to make sure you don't know them, or if you do, find

6  out what your relationship with them might be.  Mr. Heidelberg?

7  Yes, sir?

8        **PROSPECTIVE JUROR:**  (Mr. ███) Could the speakers be

9  on so we can hear them?

10       **THE COURT:**  Yes, sir.  Make sure your microphones are

11 on.  If you want to come to the podium, you can do that.

12       **MR. HEIDELBERG:**  Is that good?

13       **THE COURT:**  Can everybody hear?

14       **MR. HEIDELBERG:**  Okay.  The witnesses that we may

15 call in this case, Dr. Ralph Sinno, Dr. Patrick Fitzpatrick.

16 Do you want addresses or just names at this point?

17       **THE COURT:**  Just names.

18       **MR. HEIDELBERG:**  Dr. Keith Blackwell, David Favre,

19 Lou Fey, Kerri Rigsby, Cori Rigsby, Thomas McIntosh, Pamela

20 McIntosh, Linda Mucha, Michael Church, Jo Ann Church, Mendy

21 Briscoe, Michael Cavanaugh, Shannon Cavanaugh.  Then the next

22 ones would be -- on our list would be Juan Guevara, Alexis

23 King, John Kelly, Owen McPeek, Shirley McPeek, Michael Barnes,

24 Robert McVadon, maybe some record custodian employees for State

25 Farm Fire & Casualty Company or Haag Engineering Company.

1          **THE COURT:**  All right.  Mr. Galloway?

2          **MR. GALLOWAY:**  Some of these witnesses are the same

3     witnesses, but I'm going to give you all the names.  Michael

4     Barnes, Eugene Batia, Robert Beamer, Terry Blalock, Mendy

5     Briscoe, Toni Briscoe, Pat Carrell, Dru Carroll, Dan Carrigan,

6     Michael Church, John Conser, Gary Dailey, Dr. Robert Dean,

7     Kacie Denny, Michael Ferrier, Rachel Fisher, Brian Ford,

8     Dr. Kurtis Gurley, Juan Guevara, Tammy Hardison, Lee Harrell,

9     Elizabeth Jones, John Kelly, Alexis King, Robert Kochan, Dana

10    Lee, Pat Lobrano, Dennis Marler, Timothy Marshall, David

11    Maurstad, Pamela McIntosh, Thomas McIntosh -- Thomas McIntosh

12    goes also by Chris McIntosh -- Robert McVadon, Paul O'Connor,

13    Cody Perry, Jody Prince, Dave Randel, Dave Runge, Richard

14    "Dickie" Scruggs, James Shortley, Robert Simon, and a company

15    called SLF, Incorporated.

16         **MR. HEIDELBERG:**  Judge, I did not look at the video

17    deposition list, so I did not name some that we may call, but

18    Mr. Galloway named all of them.  Did we miss anybody?  Was Bob

19    Kochan named?  Robert Kochan from Forensic Engineering may be

20    the only one that was not mentioned.

21         **MR. GALLOWAY:**  I'm sorry.  Ms. Barbour tells me to

22    turn to page three.  It's a short page.  Mark Watson, Gerald

23    Waytowich and Jayme Woody.

24         **THE COURT:**  Anybody else that we didn't mention,

25    counsel?  Ladies and gentlemen, having heard all of those

1  names, do any of you have any type of personal relationship

2  with, or are you related to or had any business dealings with,

3  or are you currently or formerly employed by or had any other

4  type of business relationship or personal relationship with any

5  of those witnesses?  We have Mr. -- let's start with Mr. █████,

6  number 3.  Yes, sir?

7          **PROSPECTIVE JUROR:**  John Kelly via leadership of Gulf

8  Coast.

9          **THE COURT:**  Let me ask.  Mr. John Kelly who is listed

10  as a witness, where is -- are you representing it's the John

11  Kelly who is the chief administrative officer for the City of

12  Gulfport?  Is that the same one or a different one?

13          **MR. HEIDELBERG:**  Different John Kelly, Your Honor.

14          **MR. GALLOWAY:**  He goes by Jack Kelly more than John.

15  More people know him by Jack Kelly probably.

16          **THE COURT:**  Mr. █████, number 13?

17          **PROSPECTIVE JUROR:**  Yes, sir.  I apologize for taking

18  up so much of the Court's time today.

19          **THE COURT:**  No apology necessary.

20          **PROSPECTIVE JUROR:**  I know Mendy Briscoe and Toni

21  Briscoe, and I also know Kacie Denny and Mr. Scruggs.

22          **THE COURT:**  How do you know those individuals?

23          **PROSPECTIVE JUROR:**  Toni and Mendy are relatives of

24  an ex-girlfriend, and Kacie is their daughter, and she's a

25  friend.  Excuse me -- their ex-daughter-in-law.  And then

1    Scruggs through business.

2             **THE COURT:**  Just through the legal circles?

3             **PROSPECTIVE JUROR:**  Right.

4             **THE COURT:**  Anything about your relationship with any

5    of those individuals that would prevent you from being fair and

6    impartial to both sides in this case?

7             **PROSPECTIVE JUROR:**  Not at all.

8             **THE COURT:**  Anybody else in the jury box here?  I see

9    some hands in the gallery.  It looks like Mr. ███████,

10   number --

11            **PROSPECTIVE JUROR:**  Number 32, ██████████.  I

12   know Toni and Mendy Briscoe and Mike and Shannon Cavanaugh.  I

13   have known Toni and Mendy since high school, have known and

14   maintained our friendship since then.  And then Michael

15   Cavanaugh was the attorney for the Port of D'Iberville when I

16   was city manager, and so we had a working relationship in that

17   respect, and he has done some personal law work for me.

18            **THE COURT:**  Anything about your relationship or

19   dealings with those individuals that would prevent you from

20   being fair and impartial to both sides in this case?

21            **PROSPECTIVE JUROR:**  No, sir.

22            **THE COURT:**  Thank you.  Anyone else in the gallery

23   back there?  No.  How about on the other side of the gallery?

24   No.  I see no other hands.

25            Now, does anyone on this jury panel have any type of

1    ownership interest or own any kind of stock in State Farm or

2    any of its State Farm companies?  Anybody?  I see one hand in

3    the back.  Yes, ma'am?  You are number --

4              **PROSPECTIVE JUROR:**  36, ██████████.  My employer

5    has a mutual fund account set up for me with State Farm.

6              **THE COURT:**  All right.  Is that in the nature of some

7    type of retirement account or an IRA?

8              **PROSPECTIVE JUROR:**  It's a retirement.

9              **THE COURT:**  When you say it is set up with State

10   Farm, what do you mean?

11             **PROSPECTIVE JUROR:**  I'm sorry.

12             **THE COURT:**  It's set up with State Farm.  What do you

13   mean by that?  Are they --

14             **PROSPECTIVE JUROR:**  When I originally went to work

15   there and became vested, she had an account with State Farm, so

16   she held my retirement through them.  It's a mutual fund.  The

17   money is still in it, but it is inactive.  Nobody has

18   contributed to it in over four years.

19             **THE COURT:**  Well, the next question I'm going to ask

20   you, and if you want to tell me up here privately, you are

21   welcome to do so, but what is the value of that account?

22             **PROSPECTIVE JUROR:**  Because it is inactive, it's

23   about nine thousand.

24             **THE COURT:**  About $9,000?

25             **PROSPECTIVE JUROR:**  Um-hm.

 1          **THE COURT:**  Anything about that financial interest

 2    you may have that would affect your ability in any way, shape

 3    or form to be fair and impartial to both sides in this case?

 4          **PROSPECTIVE JUROR:**  No, it would not.

 5          **THE COURT:**  You wouldn't tend to tilt in State Farm's

 6    favor simply because you own that account?

 7          **PROSPECTIVE JUROR:**  No, none whatsoever.

 8          **THE COURT:**  Anybody else?  All right.  Let me see

 9    counsel up here at side bar very briefly.

10        **(THE FOLLOWING BENCH CONFERENCE WAS HELD OUTSIDE THE**

11        **HEARING OF THE JURY:)**

12          **THE COURT:**  I'm almost done with my questions.  I've

13    just got a couple of general ones:  Does anybody have any type

14    of infirmity that would prevent you from serving, anything you

15    have heard today that would prevent you from being fair and

16    impartial, and then I will turn it over to y'all after that.  I

17    think probably when I'm done, I will let them go to lunch and

18    come back after lunch for y'all's questioning.  Is there

19    anything else you can think of that I need to cover as far

20    as -- anything about Dickie Scruggs you want me to ask that I

21    haven't asked?  No?  Is that a no?

22          **MR. HEIDELBERG:**  That's a no.

23          **MR. GALLOWAY:**  No, Your Honor.

24          **THE COURT:**  I'm going to ask those two kind of

25    general questions, see what kind of follow-up we get, and then

1    I will let them go to lunch.  Before we leave, y'all let me

2    know if 45 minutes is enough.

3                **MR. HEIDELBERG:**  I think it would be plenty for us.

4                **MR. GALLOWAY:**  Yes, sir, you have covered a good bit.

5                **THE COURT:**  I will do that, and then we will break

6    for lunch.

7            **(END OF BENCH CONFERENCE)**

8                **THE COURT:**  Ladies and gentlemen, I just have a

9    couple of general follow-up questions I'm going to ask, and

10   then what we will do is take a lunch break after that.  When we

11   come back from lunch, the lawyers will have a few questions to

12   ask you, and then we will actually pick the jury at that point.

13       I want to thank you.  You have been very patient, and I

14   know this is a lengthy process, but we are actually moving very

15   quickly, a lot faster than I, frankly, thought we would.  So I

16   appreciate your time, your attention and your dedication to

17   this.

18       Is there any member of the panel who has any kind of

19   special disability or problem that we have not already talked

20   about that would make serving as a member of this jury

21   difficult or impossible?  Anything that we have not already

22   talked about?  If you have already brought something up to me,

23   you don't need to repeat it.  I see no hands.

24       Now, having heard the questions that I have put to you

25   this morning, is there any other reason to suggest itself to

1    you as to why you couldn't sit on this jury and render a

2    verdict that would be fair and impartial to both sides based on

3    the evidence that's presented to you in this courtroom and in

4    the context of the Court's instructions to you on the law?  Any

5    other reason that presents itself to you, after everything you

6    have heard this morning, that would suggest to you that you

7    could not be fair and impartial?  Anything at all?

8        Do all of you pledge that you could sit in this courtroom

9    and, based strictly on the evidence you hear in this courtroom

10   and the law as I will give it to you, render a verdict that

11   would be fair and impartial to both sides?  Anybody who could

12   not do that, raise your hand.  Okay.

13       All right, ladies and gentlemen.  It is almost noon, so

14   that concludes my questions for you.  We are going to take a

15   lunch break.  I'm going to ask you to return at 1:15.  That

16   gives you a little bit of time to get out of the building.

17   It's not the easiest building to get in and out of, I

18   understand.  Please come back for 1:15.  And when you do come

19   back, again, sit exactly where you are sitting right now, and

20   then the lawyers for both sides will have an opportunity to ask

21   some questions.  They are not going to be as long-winded as I

22   am.  They will be briefer than I have been.

23       But again, remember my instructions to you.  You are not

24   to discuss this case amongst yourselves or with anybody else.

25   You are not to talk to the lawyers.  They are not supposed to

1    talk to you.  If anyone approaches you and tries to discuss

2    this case with you, you are to report that to me immediately.

3    Anybody not understand that?  Thank you very much for your time

4    and attention this morning.  We will stand in recess until

5    1:15.

6        **(JURY OUT AT 12:03 P.M.)**

7            **THE COURT:**  Anything we need to take up before we

8    break for lunch?

9            **MR. GALLOWAY:**  No, Your Honor.

10           **MR. MATTEIS:**  No, Your Honor.

11           **THE COURT:**  Forty-five minutes a side when we return.

12   Remember my earlier instructions.  I don't want any

13   hypotheticals.  I don't want anyone singled out for an

14   individual question unless what you are doing is a follow-up to

15   some answer they've already given.  Please remain at the podium

16   while you are conducting your questions.  Any questions?

17           **MR. GALLOWAY:**  I assume we can follow up to juror

18   information on the form?

19           **THE COURT:**  Yes.  If you have a follow-up to an

20   answer they gave on their form, certainly that is legitimate as

21   well.  Anything else?  All right.  We will see you at 1:15.

22       **(NOON RECESS FROM 12:03 P.M. UNTIL 1:22 P.M.)**

23           **THE COURT:**  Before we bring in the panel, one quick

24   thing I wanted to take up on the record.  At the lunch break I

25   was made aware of a request by media to have access to the

81

1    pretrial order, which is filed as a restricted document

2    pursuant to judiciary policies to protect personal identifying

3    information, medical information or proprietary information,

4    that sort of thing.

5        In this particular case, I'm not aware that really, other

6    than personal contact information, addresses, phone numbers of

7    personal or individual witnesses, aside from that information,

8    that we have really anything else that's of a confidential

9    nature.  So it is my intention to prepare a redacted version of

10   the pretrial order that redacts the addresses, phone numbers,

11   contact information for individual witnesses and then otherwise

12   to make the order available to the public.  Does anybody have

13   any comment or objection on that?

14           **MR. HEIDELBERG:**  No objection from the relators.

15           **MR. GALLOWAY:**  No objection by the defendant.

16           **THE COURT:**  We will proceed in that fashion then.

17   Are we ready to bring the panel in?  Anything else we need to

18   do?  Let's bring the panel in.

19       **(JURY IN AT 1:23 P.M.)**

20           **THE COURT:**  Welcome back, ladies and gentlemen.  I

21   hope you had an opportunity to get some lunch.  We are going to

22   resume with the jury selection process.  Again, I want to thank

23   you for your time and attention and your patience here today.

24   We have reached the point in the process where the attorneys

25   for both parties are permitted to ask some questions of you.

```
 1        Again, remember the rules from earlier.  We need to let
 2   each person finish talking before we answer, and if there is
 3   any question that's asked where you are uncomfortable answering
 4   in front of everyone, simply raise your hand and ask to
 5   approach, and we will take the question up here at side bar.
 6   So at this time I will call on counsel for the relators.
 7        MR. HEIDELBERG:  May it please the Court.
 8        THE COURT:  Yes, sir.
 9        MR. HEIDELBERG:  Ladies and gentlemen, my name is
10   Maison Heidelberg.  We had introduced ourselves a little bit
11   earlier, and I know you are all wondering how there could
12   possibly be any more questions, but just wait, there are plenty
13   more questions to be asked.  I will move along as swiftly as I
14   can, and Judge Ozerden has covered a lot of the areas that I
15   had.
16        But the first area I would like to ask you about, it
17   entails the concept of making a decision.  Some people will get
18   into a jury situation, and it's a different type of thing than
19   you've ever done before.  You are called upon to make a
20   decision, to decide a case.  Some people like listening, some
21   people like following the news, but you never have to really be
22   active in that process.  My question to you is, is there
23   anything in your disposition that you are sitting here going,
24   I'm just not sure I'm going to be able to make a decision and
25   tell somebody that they are right and somebody else that they
```

1    are wrong.  Does that ring with anybody?

2        Is there anybody here who thinks that if the evidence

3    proves the case against State Farm, that you could not say, we

4    are going to render a verdict against State Farm, or vice

5    versa?

6        Let me take that one step further.  This has been alluded

7    to as a case that's different than any other jury case that you

8    served on.  There were many of you who raised your hands and

9    said that you had served on various juries.  This is not a case

10   about mere negligence.  It's not a case about where somebody

11   left some water on a floor, and they weren't sure whether it

12   was there and somebody slipped and fell.  This is a case about

13   fraud.  And our clients, Kerri and Cori Rigsby, and our lawyers

14   are making allegations that State Farm committed fraud.

15       So my question to you is, are you suited for that sort of

16   case?  Is there anything about a case that gets testy or a case

17   that those sort of serious accusations are made where you

18   think, I can't go there.  I can do a who-ran-the-red-light

19   case, I am fine with a mere negligence or a mistake type of

20   case, but if you are telling me that you are going to sit up

21   here and talk about intentional fraudulent actions, that is

22   higher than where I want to go?

23       Some people just have a discomfort with that.  There is

24   nothing wrong with that.  Like I said, different people have

25   different propensities and are better for different juries.

1    Does anybody have a problem hearing a case like that?

2         Moving along, then.  The next part of a case, and I think

3    being a juror, is not only being decisive, but it also requires

4    that you are even.  You have to start in a place that is even.

5    A lot of people have different experiences.  Some people have

6    walked up and made comments about some of those experiences to

7    the side bar over here.  People have different views.  They

8    grow up in different ways, different parents.  Being a juror is

9    not really your opportunity to express yourself like you would

10   in a political election.  Giving a vote, being a juror is

11   starting from a neutral position, no matter what your

12   experiences have been in the past, whether they be with an

13   insurance company, or whether they be something you have heard

14   or read somewhere.  Is there anybody here who has a concern

15   about their ability to start from a neutral position based on

16   anything you have heard so far?  All right.

17        I think there have been some examples in here that I might

18   just give you a couple more.  Let's just say that some of you

19   talked about being involved in a lawsuit before.  Let's say

20   that you have been a defendant in a lawsuit before, you got

21   sued, and you lost, and it did not go well for you.  And take

22   this broader.  Maybe you were a plaintiff in a lawsuit, and you

23   lost and it didn't go well for you.  And you are sitting there

24   thinking, I'm never voting for a defendant ever in a case

25   because I got the short end of that stick one time.

85

1    And again, these are broad questions, but we have got to

2   ferret out people and jurors who are suited for this type of

3   case.  Does anybody have any qualms or issues with that at this

4   point in time?

5    Let me take it now to a little more personal practical

6   type of question, now that some of the big picture stuff is out

7   of the way.  Let's talk about your personal experiences with

8   Hurricane Katrina.  For those of you who were here on the Gulf

9   Coast during Hurricane Katrina and rode out the storm, would

10  you please raise your hand?

11    I think I'm going to do numbers just to read them into the

12  record, and I hate calling everybody by your number, not by

13  your name.  Let's start on the first row.  Juror number 1 was

14  here during Hurricane Katrina, juror number 3, juror number 4,

15  juror number 8.  Second row, 9 was here, 11 was here, 13.

16  Thank you.  15 and 16.  Thank you very much.  Let's go to this

17  back section.  Juror number 17, 18.  Anybody else on that front

18  row?  Second row, please.  25, 26, 27, 29, 31, 32, 33, 34, 35.

19    **PROSPECTIVE JUROR:**  Let me ask a question.  When you

20  say rode out the storm, do you mean actually stayed on the

21  coast through the storm or evacuated during the storm?

22    **MR. HEIDELBERG:**  Well, I was referring to staying on

23  the coast during the storm.

24    **PROSPECTIVE JUROR:**  Okay.

25    **MR. HEIDELBERG:**  Does that change anybody's answer?

```
 1              THE COURT:  Let's do this.  Mr. Heidelberg, why don't

 2     you reask the question and let's start over.

 3              MR. HEIDELBERG:  My question was, did you ride out

 4     the hurricane here on the Gulf Coast, meaning that you stayed

 5     all the way through the storm?  Does that change the answer for

 6     anybody on row one or two?

 7              PROSPECTIVE JUROR:  16.  I stayed.

 8              MR. HEIDELBERG:  So your answer stays the same.

 9              THE COURT:  What number are you?

10              PROSPECTIVE JUROR:  16.

11              MR. HEIDELBERG:  Well, hold on.  Maybe I will just

12     start all of this over.

13              THE COURT:  Yeah, let's just start over.

14              MR. HEIDELBERG:  See, I thought that was a good

15     question.

16              PROSPECTIVE JUROR:  I have a question.

17              THE COURT:  State your name and number, please.

18              PROSPECTIVE JUROR:  Number 31.  When you say the Gulf

19     Coast, are you referring to, like, strictly the coastal

20     counties?  I mean, I'm one county up, so -- we had a lot of

21     damage, but I was not here on this coast.

22              MR. HEIDELBERG:  So you live one county north?

23              PROSPECTIVE JUROR:  Right.

24              MR. HEIDELBERG:  Let me just say it this way.  No

25     matter where you live, if you stayed here during the storm, all
```

1    the way through the storm, would you raise your hand?

2        Well, you know what?  Maybe it's easier to go with who did

3    not.  So almost everybody stayed here through Hurricane Katrina

4    and rode out the storm.  Let me do it that way, then.  If you

5    did not stay here during the storm -- and I guess that means

6    you evacuated and went somewhere else is what I mean by that.

7    If you evacuated and went somewhere else and were not here when

8    the storm hit and you are in the jury box, would you please

9    raise your hand.  Juror number 10, 12, 14.  Thank you.

10        Let's go to the back section.  The question remains, you

11    were not here during Hurricane Katrina.  Could y'all just call

12    out your numbers, starting with the front row, please?

13            **PROSPECTIVE JUROR:**  20.

14            **PROSPECTIVE JUROR:**  21.

15            **PROSPECTIVE JUROR:**  22.

16            **PROSPECTIVE JUROR:**  23.

17            **PROSPECTIVE JUROR:**  24.

18        **MR. HEIDELBERG:**  Next row, please?

19            **PROSPECTIVE JUROR:**  27.

20            **PROSPECTIVE JUROR:**  30.

21            **PROSPECTIVE JUROR:**  35.

22            **PROSPECTIVE JUROR:**  36 .

23        **MR. HEIDELBERG:**  All right.  This row over here,

24    please.

25            **PROSPECTIVE JUROR:**  47.

```
 1            PROSPECTIVE JUROR:  48.

 2            PROSPECTIVE JUROR:  45.

 3            PROSPECTIVE JUROR:  43.

 4         MR. HEIDELBERG:  Did I get everybody?  When I

 5    assume -- out of everybody who was here during the storm, did

 6    you ride out the storm at your house or in the vicinity of your

 7    house, maybe a neighbor's house, even if it got bad and you

 8    went across the street?  Is there anybody who rode out the

 9    storm, say, a mile further away from the house where you lived

10    at that time but did stay here?

11       All right.  Let's start right here.  This is juror number

12    11?

13            PROSPECTIVE JUROR:  11.

14         MR. HEIDELBERG:  And you rode out the storm but not

15    at your house?

16            PROSPECTIVE JUROR:  Yes, sir.

17         MR. HEIDELBERG:  Where did you go?

18            PROSPECTIVE JUROR:  The next one.

19         MR. HEIDELBERG:  The next house?

20            PROSPECTIVE JUROR:  The next house.

21         THE COURT:  Number 13 next?

22            PROSPECTIVE JUROR:  13.  I lived in Biloxi at the

23    time, and I rode the storm out at a house in Ocean Springs.

24         MR. HEIDELBERG:  All right.  Thank you.

25         THE COURT:  Anyone else in the jury box?  No.  First
```

1    row of the gallery.

2              **PROSPECTIVE JUROR:**  Number 17.  I had to work at the

3    hospital, so I rode the storm out there.

4              **MR. HEIDELBERG:**  Singing River?

5              **PROSPECTIVE JUROR:**  Singing River Hospital in

6    Pascagoula.

7              **MR. HEIDELBERG:**  Any other hands in that back

8    section?

9              **PROSPECTIVE JUROR:**  I rode out the storm at my

10   stepdaughter's house about a mile away in Ocean Springs.

11             **MR. HEIDELBERG:**  Thank you.

12             **PROSPECTIVE JUROR:**  Juror 29.  I lived in Long Beach

13   but rode the storm out in Hattiesburg.

14             **MR. HEIDELBERG:**  In Hattiesburg.  All right.  Thank

15   you.

16             **PROSPECTIVE JUROR:**  Juror number 32.  I lived in

17   Biloxi at the time and rode out the storm in Woolmarket, about

18   five miles north of the interstate.

19             **MR. HEIDELBERG:**  Okay.  Thank you.

20             **PROSPECTIVE JUROR:**  Number 37.  I lived in Nicholson

21   and rode the storm out in Lumberton.

22             **MR. HEIDELBERG:**  All right.  Thank you.

23             **PROSPECTIVE JUROR:**  Number 41.  I stayed at my own

24   house, and I live 12 miles north of the interstate.

25             **MR. HEIDELBERG:**  Thank you.  Anybody on that row over

1    there --

2              **THE COURT:**  Other side of the gallery.

3              **MR. HEIDELBERG:**  I think that covers that section.

4    Thank you very much.

5         I have another question I think is a simple question.  It

6    might be that most people -- it might be better to ask who

7    doesn't.  My question goes to homeownership.  Would you raise

8    your hand if you presently own a home?

9         All right.  I think that's almost everybody with the

10   exception of just a handful of people.  Out of the people who

11   didn't raise your hand, is there anybody who did own a home at

12   one time but does not own a home at this time?  All right.  I

13   have number 13.  And what's your number --

14             **PROSPECTIVE JUROR:**  37.

15             **MR. HEIDELBERG:**  Thank you.  All right.

16        My next question is, and this can be a show of hands here.

17   If we go to people who did not ride out Hurricane Katrina, but

18   you've lived on the coast and you rode out another hurricane on

19   the coast.  All right.  Is there anybody who wasn't here during

20   Katrina but you were here during another hurricane?  Juror

21   number 14?

22             **PROSPECTIVE JUROR:**  Yes.

23             **MR. HEIDELBERG:**  Juror number 12.  Is that right?

24             **PROSPECTIVE JUROR:**  Yes.

25             **MR. HEIDELBERG:**  And juror number 20 and 21.

1           **PROSPECTIVE JUROR:**  27.

2           **MR. HEIDELBERG:**  27, 24, 36.  Anybody else in that

3    section?  All right.  And then juror number 47 and 48.  Is that

4    correct?  Thank you.

5           Well, obviously, one of the reasons that those questions

6    are asked is because, you know, being a juror in a case like

7    this, especially living on the Gulf Coast, it is important for

8    you to separate your own experiences from the evidence in this

9    case.  Obviously, you cannot separate who you are or what

10   you've been through and that sort of thing, but what I'm

11   getting at is, if you were here during Hurricane Katrina and

12   you are sitting here and you hear a witness testify that, *Oh,*

13   *the wind was awful at a certain time of the day at my house,*

14   and you are sitting there thinking, *It wasn't even blowing at*

15   *my house, so I don't believe a word you are saying*.

16          So my question goes to this:  Can you separate your

17   experience, listen to the evidence in the case and not let your

18   experience solely dictate what you believe from the witnesses?

19   Does anybody have a problem with that concept?  Is anybody so

20   tied to your own experience in any hurricane that you just

21   think, whatever happened at my house happened at everybody

22   else's house and I'm not listening to that?  It doesn't mean

23   you have to believe the witness, but it just means you can't

24   take your experience and place it in the experience of that

25   witness.  And that can be difficult.  So raise your hand if you

1    think you have a problem doing that.

2        Same type question that goes to the emotions of the storm.

3    I mean, I live in Jackson, and I did not -- I was not here, and

4    I've never ridden out a hurricane.  I understand from talking

5    to witnesses in the case that it can be horrible and very

6    traumatic and very emotional.  You may hear some witnesses

7    testify like that in this case.

8        Is there anything about your experience in the hurricane

9    or any hurricane that is so traumatic, so difficult that you

10   just think, I cannot listen to this stuff?  I'm not going to do

11   it.  I can't do it well.  I'll be distracted.  Is everybody

12   okay with that concept?

13       And you are okay listening to witnesses who may have seen

14   some traumatic things?  You can bear with somebody who may be

15   emotional?  Does anybody have a problem doing something like

16   that in this case?

17       Let me switch gears now and ask you some questions about

18   your work experience.  I don't think this will apply to a lot

19   of people based upon what I have read in the cards, but

20   obviously, we are bringing a lawsuit against an insurance

21   company.  So my question to you is, do you work for an

22   insurance company?  Please raise your hand if you do.

23       All right.  I think we have heard from at least one.  Can

24   I get a microphone, please?  Juror number, please?

25           **PROSPECTIVE JUROR:**  24.

1        **MR. HEIDELBERG:**  What do you do?  Give me your name,

2   please.

3        **PROSPECTIVE JUROR:**  ███████.

4        **MR. HEIDELBERG:**  What do you do, Ms. ██████?

5        **PROSPECTIVE JUROR:**  I'm an insurance agent for an

6   independent agency out of Ocean Springs, Lemon Mohler.

7        **MR. HEIDELBERG:**  Being an independent agent, does

8   that mean that you sell insurance through a lot of different

9   carriers?

10       **PROSPECTIVE JUROR:**  I'm the agent.  We have producers

11  who do that.

12       **MR. HEIDELBERG:**  Does your agency sell State Farm

13  products?

14       **PROSPECTIVE JUROR:**  No, sir.

15       **MR. HEIDELBERG:**  Have you ever done that?

16       **PROSPECTIVE JUROR:**  No, sir.

17       **MR. HEIDELBERG:**  If I may just ask one more thing.

18  Being in the insurance industry and being an agent and having

19  ties to that industry -- and I mean just a little bit.  I'm not

20  wanting to ask you to do something super human or beyond, but

21  we are all tied to the things we do and who we are.  Being an

22  insurance agent, have you had the thought this morning at any

23  time of, you know, that's going to be tough to decide a case

24  that an insurance company is involved in.  Would it make you

25  lean even a little bit toward the insurance side of the case?

1      **PROSPECTIVE JUROR:**  No, sir, it will not.

2      **MR. HEIDELBERG:**  Do you feel like you can be straight

3  up fair?

4      **PROSPECTIVE JUROR:**  Yes, I do.

5      **MR. HEIDELBERG:**  Thank you very much for that.  Next

6  hand in the back.  What number are you?

7      **PROSPECTIVE JUROR:**  29.

8      **MR. HEIDELBERG:**  Stand up, please.  Give me your name

9  again.

10      **PROSPECTIVE JUROR:**  ███████████.

11      **MR. HEIDELBERG:**  Mr. ███████, you had a job at a

12  third-party claims administrator?

13      **PROSPECTIVE JUROR:**  I'm a manager now doing that.

14      **MR. HEIDELBERG:**  Did you do adjusting work before

15  that?

16      **PROSPECTIVE JUROR:**  Yes, one time I did.

17      **MR. HEIDELBERG:**  Did you do any adjusting work for

18  State Farm?

19      **PROSPECTIVE JUROR:**  No.

20      **MR. HEIDELBERG:**  Have you ever done any kind of work

21  for State Farm?

22      **PROSPECTIVE JUROR:**  No.

23      **MR. HEIDELBERG:**  Same question that I just asked Ms.

24  ███████.  Do you feel like your ties to the insurance industry

25  are such that you just think, my bread is buttered here; if

1    it's a close call, I have to go with the insurance industry?

2              **PROSPECTIVE JUROR:**  I wouldn't feel that way.

3              **MR. HEIDELBERG:**  Thank you.  That's very good.  Does

4    anybody else have any ties to the insurance industry work, work

5    in the insurance industry?  I don't know all the terms.  I mean

6    underwriting, adjusting, agent, selling, buying.  No, I know

7    everybody buys insurance.

8         But that actually goes to my next question.  If you own

9    insurance -- and I bet almost everybody in this room, if not

10    everybody, owns some type of insurance.  Can you assure me that

11    you will read into the evidence of the case and look at this

12    case and make the decision on the evidence?  I want to know if

13    somebody in here thinks, you know what, if I find against an

14    insurance company, that's coming back to me somehow, some way

15    on my premiums, and if that's going to be the case, why should

16    I even find against them in the first place.  There could be a

17    hundred variations of this, but I'm just saying, as the owner

18    of insurance, and where we all are in that industry to that

19    extent, does anybody have any hesitation at all about finding

20    against an insurance company if that's what the evidence shows?

21    Raise your hand if you have that issue, please.

22         I have a similar question that goes to the issue of taking

23    on an insurance company.  Some people just don't like taking on

24    big companies.  They just think, you know, there's no up side

25    on that.  If my vote is against a big company, particularly in

```
 1    a case that might generate some profile or higher profile maybe
 2    than the normal case, you think I don't want to be mixed up in
 3    the middle of that because if I take on a company and I render
 4    a vote against a big company, then somehow that could come back
 5    negatively on me, or somebody might come question me about my
 6    verdict.  And, of course, I'm not suggesting anybody has a
 7    right to do that.  Obviously, the judge will instruct or
 8    protect anybody in that situation if it were to come up, but do
 9    you have a concern about taking on a big company?  Because
10    that's what my clients have done, and some people just don't
11    want people to do that.  They like the status quo.
12         Y'all must have had a big lunch.  Nobody is talking very
13    much.  I asked you questions about the insurance industry, if
14    you work there.  The same question goes to do you have a
15    friend, close friend or a family member who works in the
16    insurance industry, spouse, sister, brother, somebody close.
17    I'm not talking about third cousin here.  Yes, sir.  Juror
18    number 14.
19         PROSPECTIVE JUROR:  Yeah, I have a niece that works
20    as an adjuster.
21         MR. HEIDELBERG:  Which company does your niece work
22    for?
23         PROSPECTIVE JUROR:  I have no idea.  She is in
24    California.
25         MR. HEIDELBERG:  Do you know whether she does any
```

1    work for State Farm?

2            **PROSPECTIVE JUROR:**  I have no idea.

3            **MR. HEIDELBERG:**  I take from all that that you are

4    not too worried about that your vote may or may not affect your

5    niece?

6            **PROSPECTIVE JUROR:**  No, not at all.

7            **MR. HEIDELBERG:**  You can be fair in the case.  Thank

8    you, sir.  Does anybody here work for a government agency, a

9    government agency?

10           **PROSPECTIVE JUROR:**  Juror 12.  I work for the U.S.

11   Navy.

12           **MR. HEIDELBERG:**  You work for the U.S. Navy.  What

13   kind of work do you do?

14           **PROSPECTIVE JUROR:**  I'm an oceanographer.

15           **MR. HEIDELBERG:**  If there are witnesses called in

16   this case from the government, because you work for the

17   government, would you be more inclined to listen more closely

18   to what they say or believe more what they say since you do

19   work for the government, or do you feel like you could separate

20   your job and be even about it?

21           **PROSPECTIVE JUROR:**  I could be fair.

22           **MR. HEIDELBERG:**  Thank you.  Anybody else have a job

23   for a government agency?

24           **PROSPECTIVE JUROR:**  Juror 16.  Does that include

25   contractors to government or just government?

1          **MR. HEIDELBERG:**  You anticipated my next question.

2    Let's go ahead and get there.  You work for a company that does

3    contract work for the government?

4          **PROSPECTIVE JUROR:**  Yes, for the Navy.

5          **MR. HEIDELBERG:**  What kind of work do you do?

6          **PROSPECTIVE JUROR:**  It's shipbuilding.

7          **MR. HEIDELBERG:**  Is there anything about your work

8    for the government doing shipbuilding -- are you at Ingalls?

9          **PROSPECTIVE JUROR:**  Yes.

10          **MR. HEIDELBERG:**  Is there anything about that type of

11    work that you think, well, my job is tied to the government,

12    I'm going to listen to what the government says, the government

13    is usually more right than wrong anyway?

14          **PROSPECTIVE JUROR:**  No.

15          **MR. HEIDELBERG:**  Nothing about that.  Thank you.

16      Is there anybody else who does work for the government

17    either directly or contract-type work?  I think we will go to

18    juror number 2.  We will get to you guys in a minute.

19          **PROSPECTIVE JUROR:**  I work for Ingalls as well.

20          **MR. HEIDELBERG:**  All right.  And are you employed by

21    Ingalls or by a contractor at Ingalls?

22          **PROSPECTIVE JUROR:**  Ingalls.

23          **MR. HEIDELBERG:**  You have government contracts?

24          **PROSPECTIVE JUROR:**  Right.

25          **MR. HEIDELBERG:**  Anything about that experience that

1    you think would lead you to lean more heavily weighted to I'm

2    going to believe what the government says a lot more so than

3    not what the government says?

4              PROSPECTIVE JUROR:  Absolutely not.

5              MR. HEIDELBERG:  The next one we have in this back

6    row --

7              PROSPECTIVE JUROR:  Juror 18.

8              MR. HEIDELBERG:  Yes, sir.  Your job, please?

9              PROSPECTIVE JUROR:  I'm a mechanical engineer for

10   Gryphon Technologies, and we have a contract with the Navy.

11             MR. HEIDELBERG:  Where is that located?

12             PROSPECTIVE JUROR:  It's in Pascagoula.

13             MR. HEIDELBERG:  You have heard previous questions.

14   Would your answer be the same?

15             PROSPECTIVE JUROR:  Yes, I have heard previous

16   questions.  I would not lean one way or the other.

17             MR. HEIDELBERG:  Thank you.  Anyone else?  I think we

18   have one more.  Juror number 48.

19             PROSPECTIVE JUROR:  My employer is a contractor to

20   NASA at Stennis.

21             MR. HEIDELBERG:  So you work for a contractor that

22   does NASA work.  You have heard the other questions.  Without

23   belaboring, is your answer the same?  You would not lean one

24   way or the other?

25             PROSPECTIVE JUROR:  Same answer.

```
 1        MR. HEIDELBERG:  Anybody else?  I don't have a whole

 2   lot more here, so bear with me.  Even if you didn't work for

 3   the government, if there are witnesses who come in from FEMA to

 4   testify in this case, would you tend to give FEMA witnesses a

 5   special stature because they are FEMA or because they had

 6   certain responsibilities in the aftermath of Katrina that you

 7   just go, You know, what these guys say, I've got to go with

 8   because they were the guys in charge, or could you set aside

 9   whatever you think about FEMA and its role, whether it be

10   positive or negative, and just go, I'm just going to look at

11   this straight down the middle on the criteria of what is being

12   said here, and I'm not going to rubber stamp anything against a

13   FEMA witness or for a FEMA witness in this case?

14        And I know people may have some feelings about FEMA,

15   strong or negative, so if you feel like that's an issue for you

16   in the case, let me know, but I don't see any hands.  Does

17   anybody want to speak to that issue?

18        I know there were a few people in this panel, or these

19   panels that do work in the field of engineering.  I saw at

20   least two or three.  Are there any people who are in the

21   engineering business, whether you are an engineer or you work

22   with an engineering company, who provide engineering services

23   for insurance companies, reports, investigations, anything of

24   that nature?

25        Are there any people who are employed in an industry
```

1    that -- or have specialized training in structures, structural

2    engineering, residential structures, the forces that it takes

3    to damage a residential structure by water or by wind?  Does

4    anybody have special training in that area that you think --

5    all right.  I've got one.  Number 47.

6          **PROSPECTIVE JUROR:**  Yeah, I work for Compton

7    Engineering, and I do structural inspections and stuff like

8    that.

9          **MR. HEIDELBERG:**  Who do you do your structural

10   inspections for?

11         **PROSPECTIVE JUROR:**  Whoever the client is.  I mean,

12   we do residences, we do commercial, we do a lot for Hancock

13   County.

14         **MR. HEIDELBERG:**  So you have a broad array of

15   clients.  Have you ever done one for an insurance company, or

16   has your firm ever done one for an insurance company?

17         **PROSPECTIVE JUROR:**  I think they probably have, but I

18   just go wherever they tell me to.

19         **MR. HEIDELBERG:**  Let me ask the question this way:

20   If your firm has done, and I know you don't know for sure, but

21   assuming that perhaps your firm has been employed by an

22   insurance company to do an engineering report or assessment, if

23   you were to get on the jury in this case and you concluded that

24   the case should go against State Farm, would you have a little

25   bit of a concern that, you know what, if I vote against State

1    Farm, my firm might lose business from the insurance industry?

2    Would that affect or weigh your analysis just a little bit such

3    that you might not be the right kind of juror for this case?

4        **PROSPECTIVE JUROR:**  All I can do is, I do what I feel

5    is right.  I wouldn't say I would go one way or the other

6    unless I knew that was what I thought was right.

7        **MR. HEIDELBERG:**  What I'm hearing is, you would think

8    it would be right to listen to the evidence in this case and

9    make a decision on the evidence in this case.  Is that fair?

10       **PROSPECTIVE JUROR:**  Yes, but I'm skeptical of

11   evidence too unless --

12       **MR. HEIDELBERG:**  I think you had made mention

13   something about that.  I think we've got that information.

14       **PROSPECTIVE JUROR:**  Yeah.

15       **MR. HEIDELBERG:**  Thank you.  Is there anybody else

16   who works for an engineering firm or in that industry that has

17   done some work for an insurance company?

18       Is there anyone here -- I think we may have one -- who has

19   expertise or training in the effects of wind, the

20   characteristics and the nature of wind, when it can damage a

21   home, when it can damage something else?  I know everybody

22   almost here has been through a hurricane, so I think you all

23   know something about wind, but I mean special training or

24   expertise.

25       The same question as to water.  Is anyone specially

1    qualified here or employed or trained in the areas of the

2    forces of water, the effects of water, how they may affect

3    structures in different situations?  Anyone?

4              **THE COURT:**  One hand in the back there.

5              **MR. HEIDELBERG:**  Juror number 47.  You're a jack of

6    all trades.

7              **PROSPECTIVE JUROR:**  I've been trained in uplift

8    pressures, hydraulic forces.

9              **MR. HEIDELBERG:**  So that's more wind oriented or

10   water?

11             **PROSPECTIVE JUROR:**  The uplift would be wind

12   oriented.  Hydraulic forces would be water.

13             **MR. HEIDELBERG:**  Same question to you.  If you sit in

14   this trial and hear a bunch of engineers talk in this case

15   about uplift or suction or the force of a wave, you will be

16   able to listen to that and weigh that evidence, or do you think

17   your experience and your know-how and knowledge would be

18   more --

19             **PROSPECTIVE JUROR:**  Oh, no, I would listen to

20   anybody.

21             **MR. HEIDELBERG:**  You think you could be fair?

22             **PROSPECTIVE JUROR:**  Yeah.

23             **MR. HEIDELBERG:**  Thank you.  Anybody else feel like

24   they have special training in the areas of water or waves or

25   force of waves that may impact your view of this case?

1       Does anyone here have any -- I've sort of asked this --

2   just have any problem with listening to the evidence of weather

3   in a case?  You have ridden out a hurricane, and you don't want

4   to recreate that experience, you don't want to go through it

5   again?  Can you listen to evidence or experiences about that?

6       Does anybody here have just a great set opinion about

7   Hurricane Katrina?  You might think, that's the windiest storm

8   I've ever seen come through, or you might think there was no

9   wind at all, this was a water storm only, and that's all

10  Katrina was about.  Does anybody have a set mind frame right

11  now about the characteristics of Katrina that you don't think

12  you could budge from such that you couldn't look at what

13  happened at 2558 South Shore Drive on the morning of August 29,

14  2005?  Anyone?

15      Sometimes when you get into a trial that goes on awhile,

16  some people just have a real problem with short-term memory

17  types of issues.  And I'm talking about more than just the way

18  that we all tend to forget things.  But we will put witnesses

19  on beginning as early as this afternoon or maybe tomorrow

20  morning, and our clients may get on the stand, and you may not

21  hear from our clients until two, two and a half weeks later.

22      Is there anybody that feels like the way your mind works

23  is, I'm not going to be able to remember that far back?  If

24  there are a bunch of other things said in between, or if State

25  Farm's case takes twice as long, or maybe it will take half as

1    long, I don't know, but can you assure me that within the realm

2    of your abilities that you can sit and listen and weigh all the

3    evidence, not the evidence you just heard a day ago but the

4    evidence you will hear at the very beginning of the trial?

5                **PROSPECTIVE JUROR:**  May I approach?

6                **THE COURT:**  What's your number and your name?

7                **PROSPECTIVE JUROR:**  Twenty, ███████.

8          **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 20**

9    **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 12).**

10               **COURT SECURITY OFFICER:**  39 would like to approach.

11         **(TRANSCRIPT OF SEALED BENCH CONFERENCE WITH JUROR NO. 39**

12   **FOUND IN VOLUME 1-A, BENCH CONFERENCE NO. 13).**

13               **MR. HEIDELBERG:**  This is my last question, believe it

14   or not.  I know there have been some statements about applying

15   the law, and the Court will give you the law at the end of the

16   case.  I just want you to know, finally, that we are going to

17   be talking about extraordinary things, extraordinary events,

18   like no other sort of event.  Some of you may think that when

19   you are living in extraordinary circumstances and extraordinary

20   things are happening, that that can just justify bending of the

21   rules, that can justify laxity of standards, that can justify

22   behavior that otherwise would not be justifiable.

23        Again, the Court is going to give you the law, but my

24   question to you is, can you apply that law and not some other

25   standard that you may have in your mind that goes, *Well, that's*

1      *just tough, tough days, and tough things happen during tough*

2      *days.  That's my rule and that's my law.*  Can y'all assure me

3      that you will apply the law that the Court provides for you at

4      the end of the case?

5             Nothing further, Your Honor.  Thank you.

6                  **THE COURT:**  Thank you.  At this time I will call on

7      counsel for the defendant.  Mr. Heidelberg, would you pass the

8      lapel mike over to Mr. Galloway, please?  Whenever you are

9      ready, sir.

10                 **MR. GALLOWAY:**  Thank you, Your Honor.

11            Good afternoon, ladies and gentlemen.  I'm Bob Galloway.

12     I introduced myself a little earlier today.  I will try not to

13     repeat what you've already been asked, but I do have questions

14     for you.  As Mr. Heidelberg said, almost everybody here would

15     be a good juror in some cases, and our interest today is in

16     finding out whether you would be the best juror for this case.

17     So we have some direct questions, as Mr. Heidelberg did, and

18     you are not going to hurt my feelings if you hold up your hand

19     and say something that you might think my client doesn't want

20     to hear or I don't want to hear.  I have been doing this for a

21     long time, and I know that there may well be some persons here

22     who think they cannot be completely fair to both sides in this

23     case.  And, of course, that's what everybody is interested in,

24     starting with people who are fair and have no prejudices that

25     might affect the way they would vote in this case.

```
 1          So who of you, without having heard any evidence, already

 2   knows or strongly suspects that you would have a hard time

 3   being completely fair to an insurance company that is being

 4   accused of wrongdoing?  We have Mr. ████████ in the back and

 5   Mr. ██████ over here on the left.  I think we have already

 6   heard from both of you.  Is there anyone else who feels that

 7   way?

 8          So Mr. ████████, for whatever reason, and we don't need

 9   to enunciate the reasons again, but you know now that you would

10   have a hard time being completely fair to State Farm in this

11   case because State Farm is an insurance company?

12               PROSPECTIVE JUROR:  Yes, sir.

13               MR. GALLOWAY:  Your answer is?

14               PROSPECTIVE JUROR:  I would have a hard time being

15   fair.

16               MR. GALLOWAY:  And Mr. ██████, likewise, for

17   whatever reason you have already told the Court, you know now

18   that you would have a hard time being fair to State Farm in

19   this case because State Farm is an insurance company?

20               PROSPECTIVE JUROR:  Yes, sir.  I would like to say

21   otherwise, but I definitely --

22               THE COURT:  Mr. ██████, that is all we need to know.

23               MR. GALLOWAY:  Thank you for your candor.  You have

24   heard something about what this case is about and what it's not

25   about.  This is a case about damage to the McIntosh house,
```

1    which is at the end of a cul-de-sac -- it's actually a little

2    peninsula that sticks out into Back Bay right where it joins

3    Big Lake, and the Tchoutacabouffa River comes in, if any of

4    y'all have fished up there or know where that area is.  Anybody

5    familiar with the geography of that particular area of Biloxi?

6        Mr. ████████?  Okay.  Anybody else familiar with South

7    Shore Drive?  Yes, sir.  You are juror number 14?

8                    **PROSPECTIVE JUROR:**  14.

9                    **MR. GALLOWAY:**  What is your familiarity with that

10   particular area?

11                   **PROSPECTIVE JUROR:**  I have fished in that area.

12                   **MR. GALLOWAY:**  Do you know anybody who lives on South

13   Shore Drive?

14                   **PROSPECTIVE JUROR:**  No.

15                   **MR. GALLOWAY:**  Thank you very much.  This is not a

16   case about whether the McIntoshes get or should get any more

17   money for their claims.  You will hear something about their

18   claims in a little bit and about the amount of damages, and the

19   question here is about the amount of flood damage to their

20   house.  But they are not parties to the case.  The only parties

21   to the case are Cori and Kerri Rigsby and State Farm.  So it's

22   not about the McIntoshes, although you may hear from them.

23   They are on the witness list.

24        The case is about whether State Farm paid too much money

25   to Mr. and Mrs. McIntosh for their flood claim, not only about

1    whether they paid too much money but whether they did it

2    intentionally, knowing that they were overpaying the flood

3    claim so as to defraud the federal government.  So that's what

4    the case is about.  It's not about somebody making a mistake.

5    It's not somebody being negligent.  The case that the Rigsbys

6    have brought and the case they have to prove is that State Farm

7    knowingly sent a false flood claim on the McIntosh house to the

8    federal government.

9         Anybody not understand that at all?  Anybody just drawing

10   a complete blank on what we are talking about here as far as

11   what this case is about?  Thank you.

12        Obviously, we don't believe there is any evidence to

13   support that claim, but that's their claim, and that's why we

14   have juries.  That's the way we do it.  We don't dual anymore,

15   and we don't stone people anymore like they do in certain parts

16   of the world.  We have juries to resolve those issues, and so

17   we are going to pick the best eight to do that today.

18        Do all of you understand that this case is styled United

19   States ex rel, which means through the Rigsbys, that the

20   federal government is not a party to this case, and these

21   lawyers over here do not represent the federal government?

22   Everybody here understand that?

23        Now, there were an awful lot of hands, as one would

24   expect, by people who either had a personal experience with

25   Hurricane Katrina or lived through and experienced another

1    hurricane.  Who has not had the personal experience of being in

2    a hurricane in South Mississippi?  Who has missed that

3    altogether?  Just one hand out of 48?  That's amazing.  Yes,

4    sir.  You are juror number --

5             **PROSPECTIVE JUROR:**  10.

6             **MR. GALLOWAY:**  10.  Mr. --

7             **PROSPECTIVE JUROR:**  ██████.

8             **MR. GALLOWAY:**  ████████.  Did you just move here

9    recently?

10            **PROSPECTIVE JUROR:**  Seven years ago.  I was in

11   Chicago actually at the time Katrina hit.  I lived in Jackson,

12   Mississippi.  My wife and I moved down here the next year after

13   Katrina.

14            **MR. GALLOWAY:**  Were you here for Hurricane Isaac last

15   year?

16            **PROSPECTIVE JUROR:**  I lived here, but I --

17            **MR. GALLOWAY:**  It didn't affect you much?  Remind me

18   where you live, please, sir?

19            **PROSPECTIVE JUROR:**  In Biloxi, right off the Back

20   Bay.

21            **MR. GALLOWAY:**  Who of you suffered damage to your

22   property that you would consider significant damage in

23   Hurricane Katrina?

24            **PROSPECTIVE JUROR:**  (Juror 4)  Question:  What do you

25   consider significant?

 1              **MR. GALLOWAY:**  Well, I will have to leave that to

 2    your judgment.  I will ask you a question about it.  From wind

 3    or water or both, it doesn't make any difference what the cause

 4    was, Katrina came, and afterwards your property had significant

 5    damage to it.  On the front row?

 6              **PROSPECTIVE JUROR:**  I lost my house in the hurricane.

 7              **THE COURT:**  What number?

 8              **PROSPECTIVE JUROR:**  Number 11.

 9              **MR. GALLOWAY:**  Juror number 11, and you lost your

10    house completely?

11              **PROSPECTIVE JUROR:**  Yes, sir.

12              **THE COURT:**  Mr. ███████?  We will take the front row.

13              **PROSPECTIVE JUROR:**  Number 13.  I had a tree split my

14    house into and had flooding in Biloxi.

15              **MR. GALLOWAY:**  Mr. ███████ is it, on the back row,

16    number 3?

17              **PROSPECTIVE JUROR:**  I had -- the shingles went off

18    and the rain all came in and ruined the inside of the house.

19              **MR. GALLOWAY:**  Where do you live, please, sir?

20              **PROSPECTIVE JUROR:**  I live off of Lorrain-Cowan Road

21    in Gulfport.

22              **MR. GALLOWAY:**  Thank you.

23              **PROSPECTIVE JUROR:**  Number 4, ███████████.  I had

24    about $15,000, which was all wind and rain, no flood.

25              **MR. GALLOWAY:**  $15,000 is significant.  I count that.

1    Anybody else in the jury box here who had significant damage

2    from Katrina?  On the first row back here on the right side.

3              **PROSPECTIVE JUROR:**  Number 20, ███████.  I

4    just -- much like him, I had shingles blow off, water got into

5    the house and completely ruined the inside of the house, mold

6    and everything like that.

7              **MR. GALLOWAY:**  Thank you.

8              **PROSPECTIVE JUROR:**  I live in Pass Christian.  We had

9    a hundred percent destruction.

10             **THE COURT:**  Your number, sir?

11             **PROSPECTIVE JUROR:**  22.  I'm sorry.

12             **MR. GALLOWAY:**  Where did you live in the Pass?

13             **PROSPECTIVE JUROR:**  Pass Christian Isles.

14             **MR. GALLOWAY:**  Thank you.

15             **PROSPECTIVE JUROR:**  Number 23.  I lost everything in

16   Katrina in St. Bernard Parish, Louisiana.  I had eight-foot of

17   water and then wind damage.

18             **MR. GALLOWAY:**  Thank you, sir.  And on the second

19   row?

20             **PROSPECTIVE JUROR:**  Number 27, and we had some damage

21   in Long Beach, so the house was totaled.

22             **MR. GALLOWAY:**  The house was what?

23             **PROSPECTIVE JUROR:**  Totaled.

24             **MR. GALLOWAY:**  It was totaled, damaged beyond repair?

25             **PROSPECTIVE JUROR:**  Oh, yeah.

1            **MR. GALLOWAY:**  But it wasn't a slab or anything like

2    that?

3            **PROSPECTIVE JUROR:**  Well, there would have been a

4    slab, but it was raised.  So there is nothing there now.  It is

5    301 East 3rd Street.  It is gone.

6            **PROSPECTIVE JUROR:**  Number 25.  I had water damage on

7    one side, the south side of my house, and damage to my garage,

8    about 13- or 14,000.

9            **MR. GALLOWAY:**  When you say water damage, you mean

10   rain or storm surge?

11           **PROSPECTIVE JUROR:**  Rain and wind.

12           **MR. GALLOWAY:**  Thank you.

13           **PROSPECTIVE JUROR:**  Number 32, I lost two and a half

14   sides of my house, all the contents of the house, slabbed up,

15   about a 10,000 square-foot storage business with the hurricane.

16           **MR. GALLOWAY:**  Thank you, sir.

17           **PROSPECTIVE JUROR:**  Juror number 28, ███████.  We

18   didn't lose our house, but we lost all of our outbuildings, 112

19   trees and fencing, and outside of Picayune, Mississippi in

20   Henley Field.  We had a tornado come through.

21           **PROSPECTIVE JUROR:**  Number 35.  We were building a

22   house.  Frame came down.

23           **MR. GALLOWAY:**  Thank you, sir.

24           **PROSPECTIVE JUROR:**  Number 36.  We had roof damage

25   from wind.  It caused the whole inside of our house to flood

1   with water, where the water came in through the roof.  We had

2   to replace all of that.  We also had a rental house, and it was

3   severely damaged.  The roof came off of it.  All of the

4   contents, you know, all of the stuff from the top fell in onto

5   the furniture of the renters, so we had significant damage from

6   that, but we did end up selling that property.

7        **MR. GALLOWAY:**  Where was that, ma'am?

8        **PROSPECTIVE JUROR:**  Both of those homes were just

9   north of I-10 off Highway 49, north in Gulfport.

10        **MR. GALLOWAY:**  Is it in Lyman/Saucier area?

11        **PROSPECTIVE JUROR:**  No.  It's just north of the

12   interstate, by Crossroads Mall, up in that area.

13        **PROSPECTIVE JUROR:**  Number 39.  ███████████.  We

14   had $35,000 worth of damage, lost half the roof, had water

15   damage inside, lost five outhouses.  It was pretty rough.

16        **MR. GALLOWAY:**  Thank you.  Is that everybody on this

17   side over here?  Okay.

18        **PROSPECTIVE JUROR:**  I had about $50,000 worth of

19   damage, water from rain, water from flood, a lot of landscape

20   damage, two outbuildings were gone, a big oak tree in the front

21   yard fell down, a little bit of everything.

22        **MR. GALLOWAY:**  And you are number 47?

23        **PROSPECTIVE JUROR:**  47.

24        **PROSPECTIVE JUROR:**  Number 48.  We lived close to the

25   beach in Waveland, so we came home to a slab.

1          **MR. GALLOWAY:**  Thank you.  Anybody else?  Did I catch

2     everybody?  Okay.  Thank you.

3        Those of you who had flood claims and had flood insurance,

4     how many of those of you who had both flood claim and flood

5     insurance had trouble collecting on the flood claim?  Either it

6     took a long time or it was a big hassle about it, one way or

7     the other.  I don't see any hands.  Nobody?  Okay.  Thank you.

8        Did anybody have a close personal friend or a family

9     member who had a flood insurance claim and who had trouble

10    getting paid either because of delay or whoever was adjusting

11    it didn't want to pay it or anything like that?

12          **THE COURT:**  There's one hand in the gallery.  I

13    believe there was a hand.  Ms. ██████, did you have your hand

14    up?

15          **PROSPECTIVE JUROR:**  Yes.  We had several friends from

16    St. Bernard who lost their homes to the flood, and they are now

17    living in Picayune, and two of them have never cleared their

18    claim for flood.

19          **MR. GALLOWAY:**  This is in St. Bernard Parish, south

20    of New Orleans?

21          **PROSPECTIVE JUROR:**  Yes.

22          **THE COURT:**  Your number, ma'am?

23          **PROSPECTIVE JUROR:**  28.

24          **THE COURT:**  Thank you, ma'am.

25          **MR. GALLOWAY:**  Anybody else who had a family member

1    or close friend who had trouble with their flood claim?

2        I think the judge asked who had filed a lawsuit for

3    Hurricane Katrina insurance recovery.  Who did not actually go

4    to the extent of filing a lawsuit but feels like they had major

5    trouble collecting on their insurance as a result of damage

6    from Hurricane Katrina?  Mr. ███████, I think we know about

7    your situation.  Mr. █████, what was your experience?

8        PROSPECTIVE JUROR:  Just bickering with the insurance

9    company on value.

10        MR. GALLOWAY:  Do you think -- did that experience

11    leave you with a strong feeling such that you would have a hard

12    time being fair to an insurance company in a lawsuit?

13        PROSPECTIVE JUROR:  I think I could be impartial.

14        MR. GALLOWAY:  Thank you.  Anybody else have what

15    they considered significant trouble collecting their insurance

16    other than those who filed suit and the two gentlemen who have

17    just held their hands up?  Okay.  Thank you, Mr. ██████.

18    Juror number 48?  Yes, ma'am.

19        PROSPECTIVE JUROR:  Number 48.  Yes, it just took an

20    awful long time to resolve everything.

21        MR. GALLOWAY:  Was it ultimately resolved more or

22    less to your satisfaction?

23        PROSPECTIVE JUROR:  More or less.

24        MR. GALLOWAY:  Do you hold any hard feelings against

25    whoever your insurer was at that time that would affect the way

1   you would look at this case?

2             **PROSPECTIVE JUROR:**  No.

3             **MR. GALLOWAY:**  Was your insurer State Farm?

4             **PROSPECTIVE JUROR:**  Yes.

5             **MR. GALLOWAY:**  But you have gotten over that?  You

6   don't think you would go into this case looking at State Farm

7   sideways and not accept the evidence they present as much as

8   you would accept the evidence from the other side?

9             **PROSPECTIVE JUROR:**  No.

10            **MR. GALLOWAY:**  So you think you could be fair?

11            **PROSPECTIVE JUROR:**  I think I could be impartial.

12            **MR. GALLOWAY:**  Thank you very much.

13        Do any of you feel like the National Flood Insurance

14  Program -- this is the federal program, which if you had flood

15  insurance, that's what you had.  Whether it was written through

16  a private agent or not, it was the federal flood insurance

17  program.  Do you feel like they treated you unfairly or treated

18  a family member or close friend unfairly, just did such a poor

19  job generally that you now have a bad taste in your mouth about

20  the National Flood Insurance Program?  Anybody?  Thank you.

21        Who here was insured by State Farm at the time of

22  Hurricane Katrina?  Okay.  Nobody on the back row.

23  Ms. ███████?

24            **PROSPECTIVE JUROR:**  Um-hm.

25            **THE COURT:**  Number 9?

 1          PROSPECTIVE JUROR:  Number 9.

 2          MR. GALLOWAY:  And did you have homeowners or

 3    automobile or what?

 4          PROSPECTIVE JUROR:  Homeowners, automobile, life

 5    insurance.

 6          MR. GALLOWAY:  Is there anything about your

 7    experience as a result of Hurricane Katrina and dealing with

 8    State Farm -- I assume you had probably automobile and

 9    homeowner claims; is that right?

10          PROSPECTIVE JUROR:  I felt like we came out fine.

11          MR. GALLOWAY:  Thank you very much.  And the next one

12    was Ms. ███?  Did you have your hand up?  No.  Somebody else

13    on the front row?

14          PROSPECTIVE JUROR:  Number 14.  I have homeowners and

15    automobile.

16          MR. GALLOWAY:  And you had it at the time of

17    Hurricane Katrina?

18          PROSPECTIVE JUROR:  Yes.

19          MR. GALLOWAY:  Was there anything about your

20    experience --

21          PROSPECTIVE JUROR:  It was fine.  I had minimal

22    damage, so it was fine.

23          MR. GALLOWAY:  So no serious problems?

24          PROSPECTIVE JUROR:  No.

25          MR. GALLOWAY:  Thank you, sir.  What about on the

1 front row?  Anybody have State Farm Insurance at the time of

2 Hurricane Katrina on the front row?

3     **PROSPECTIVE JUROR:**  Yes, sir, I did.

4     **THE COURT:**  Sir, your number is --

5     **PROSPECTIVE JUROR:**  I'm 18.  I'm sorry.

6     **MR. GALLOWAY:**  And was it homeowners or automobile or

7 what?

8     **PROSPECTIVE JUROR:**  It was homeowners.

9     **MR. GALLOWAY:**  Homeowners.  And did you have any

10 difficulty with State Farm with regard to your homeowners

11 claim?

12     **PROSPECTIVE JUROR:**  I had a bit of a problem with

13 them.

14     **MR. GALLOWAY:**  Did it ultimately get resolved pretty

15 much to your satisfaction?

16     **PROSPECTIVE JUROR:**  After about a year or so.

17     **MR. GALLOWAY:**  Is there anything about that

18 experience, that it took you a long time to get your claim

19 settled, that as you are here today would, as I asked somebody

20 on the other side, have you looking sideways at State Farm and

21 tend to favor the plaintiff going into this case without having

22 heard any of the evidence?

23     **PROSPECTIVE JUROR:**  No, I wouldn't look at it

24 sideways.  I would try to give you my best opinion on it.

25     **MR. GALLOWAY:**  You think you can judge it fairly and

1   be fair to both sides?

2          **PROSPECTIVE JUROR:**  I think I can.

3          **MR. GALLOWAY:**  Thank you.  Second row?

4          **PROSPECTIVE JUROR:**  25.  Homeowners.

5          **MR. GALLOWAY:**  And did you have a significant claim?

6   Did you have trouble collecting or anything like that?

7          **PROSPECTIVE JUROR:**  No, no trouble.

8          **MR. GALLOWAY:**  Thank you, ma'am.

9          **PROSPECTIVE JUROR:**  Homeowners and auto.  No

10  problems.

11         **THE COURT:**  You are number --

12         **PROSPECTIVE JUROR:**  I'm sorry.  Juror 26.

13         **MR. GALLOWAY:**  All right, sir.  Thank you.

14         **PROSPECTIVE JUROR:**  28.  Homeowners, life,

15  automobile, no problems.

16         **MR. GALLOWAY:**  Thank you, ma'am.  Let's see one more

17  on that row.

18         **PROSPECTIVE JUROR:**  31.  I had homeowners and had no

19  problems.

20         **MR. GALLOWAY:**  Thank you, ma'am.  We have one or two

21  on the back row.  I see hands.  We have already heard from

22  Mr. ███████.  Thank you, sir.

23         **PROSPECTIVE JUROR:**  35, homeowners, automobile, no

24  problem.

25         **MR. GALLOWAY:**  Thank you, sir.  Is that everybody on

1    this side?

2              PROSPECTIVE JUROR:  Number 40.  I have homeowners,

3    car insurance, no problem.

4              MR. GALLOWAY:  And your number is 40?

5              PROSPECTIVE JUROR:  Yes, sir, number 40.

6              MR. GALLOWAY:  Thank you.  And over here on this left

7    side?  Anybody have State Farm other than juror 48?  We have

8    already talked to her.  Okay.  Thank you.

9         Is there anybody who used to have State Farm Insurance but

10   no longer has State Farm Insurance?  Automobile or homeowners?

11   We will start here in the jury box.  Mr. ████████, number 10.

12             PROSPECTIVE JUROR:  Number 10.  I had State Farm

13   Insurance, automobile and homeowner policies, motorcycle back

14   in the late '70s, early '80s, and they dropped me for no reason

15   at all because they said they could do it randomly.

16             MR. GALLOWAY:  Was that in Chicago?

17             PROSPECTIVE JUROR:  Jackson, Mississippi.  Yes.  For

18   no reason.

19             MR. GALLOWAY:  Luck of the draw or something?

20             PROSPECTIVE JUROR:  I was told by my agent that they

21   could do that because -- randomly, because I had not had a

22   claim in so long that they randomly chose people out because I

23   would be due a claim probably.  I had been with them since I

24   got my driver's license at 15 years of age.  So anyway...

25             MR. GALLOWAY:  Is there anything about that

1    experience from the 1970s or 1980s that would lead you not to

2    view State Farm fairly in this case?

3              **PROSPECTIVE JUROR:**  No, sir.  I'm of the belief that

4    I base decisions based on evidence alone.  I had really

5    forgotten about it until you brought that up.

6              **MR. GALLOWAY:**  Maybe I shouldn't have asked that

7    question.

8              **PROSPECTIVE JUROR:**  I had State Farm auto -- number

9    4.  It was about 40 years ago, and I moved to a part of the

10   world where they didn't cover.

11             **MR. GALLOWAY:**  You moved to another part of the

12   world?

13             **PROSPECTIVE JUROR:**  Yes.

14             **MR. GALLOWAY:**  Where State Farm didn't offer that?

15             **PROSPECTIVE JUROR:**  Didn't offer it.

16             **MR. GALLOWAY:**  Thank you.  Front row, Mr. ███, I

17   believe.  Number 20?  Is that right?

18             **PROSPECTIVE JUROR:**  Yes, sir.  Yeah, number 20.  I

19   used to have automobile insurance through State Farm in the

20   '90s, I believe, early '90s.

21             **MR. GALLOWAY:**  And you -- what caused you not to have

22   State Farm now?

23             **PROSPECTIVE JUROR:**  It was in Florida and I moved,

24   and just monetary, got a cheaper company.

25             **MR. GALLOWAY:**  Better quote somewhere else?

1              PROSPECTIVE JUROR:  Yes.

2              MR. GALLOWAY:  Anybody else on the front row?  Second

3    row over here on the end?

4              PROSPECTIVE JUROR:  Number 31.  I had State Farm

5    homeowners up until either '09 or 2010.  I don't recall.

6              MR. GALLOWAY:  And what caused you to change to some

7    other company?

8              PROSPECTIVE JUROR:  I needed a better payment plan.

9              MR. GALLOWAY:  More convenient payment plan.  That's

10   fine.  Thank you.  Anybody on the back row that used to have

11   State Farm Insurance and does not have it now?  How about over

12   here on the left side?  Number 48.

13             PROSPECTIVE JUROR:  I had homeowners and auto with

14   State Farm at the time of the storm.

15             MR. GALLOWAY:  But you don't have it anymore?

16             PROSPECTIVE JUROR:  No.  About a year and a half

17   after the storm, they dropped me.

18             MR. GALLOWAY:  Do you live in Waveland?  Is that

19   right?

20             PROSPECTIVE JUROR:  (Nodding).

21             MR. GALLOWAY:  South of the railroad track?

22             PROSPECTIVE JUROR:  Yes.

23             MR. GALLOWAY:  Anybody I missed?

24             THE COURT:  One hand back here, Mr. Galloway.  Would

25   that be number 17?

 1              PROSPECTIVE JUROR:  Yes, sir.  Sorry.  I did have

 2      State Farm, probably dropped it in the late '90s.  I had

 3      homeowners and auto.

 4              MR. GALLOWAY:  And you dropped it or they dropped

 5      you?

 6              PROSPECTIVE JUROR:  I actually dropped it.  They

 7      raised my rates about $2,000 a year.  I had two incidents on my

 8      house in one year, in one calendar year, so they raised the

 9      rates, so I found another policy.

10              MR. GALLOWAY:  It didn't have anything to do with the

11      hurricane?

12              PROSPECTIVE JUROR:  No, it wasn't.

13              MR. GALLOWAY:  Thank you, ma'am.  We've talked about

14      having insurance and not having insurance and that kind of

15      thing.  Is there any other reason that we have not discussed

16      where anybody here has had some experience -- and if you would

17      like to say it privately, we can talk privately -- that's

18      resulted in you, as you sit here today, have negative feelings

19      about or a bad opinion of State Farm Insurance?

20          Is there anybody here who just does not trust insurance

21      companies generally?  If it's an insurance company, you don't

22      trust them.  Mr. ███████.  Okay.  And Mr. ███████ is

23      sticking a hand up back there.  Anybody else who just does not

24      trust insurance companies as a general principle?  All right.

25          You are going to hear from people, who you might have

 1   heard some of the titles called out as doctor so and so.  These

 2   are not medical doctors.  These are Ph.D. type doctors who are

 3   going to testify and will be allowed to give opinion testimony

 4   as opposed to factual testimony.  They can give you their

 5   opinions, and they are called experts in a court of law.  The

 6   Court will instruct you at the end of the case that you don't

 7   have to believe an expert just because he is an expert.  That

 8   is up to you as to which witnesses to believe or how much faith

 9   to put in a witness's testimony.  But you will hear that later

10   in the court.

11       Is there anyone here who feels like just because someone

12   has been designated as an expert and allowed to testify as an

13   expert, that, you know, you have to believe that, you have to

14   take that?  For example, if you went to a new doctor and the

15   doctor gave you a diagnosis that sounded silly to you, is there

16   anybody who thinks it would be wrong to get a second opinion?

17   Anybody who thinks that, oh, boy, it's a Ph.D., so that person

18   must know what he or she is talking about?  Thank you.

19       We have talked a little bit about insurance companies, and

20   we've talked a little bit about claims.  I want to just ask a

21   couple more questions about that.  Everybody -- almost

22   everybody on the jury has had an experience with an insurance

23   claim and even a Hurricane Katrina claim.  Is there anybody who

24   believes, who has a strong feeling that when it comes to

25   evaluating and paying claims, most insurance companies will go

1     to great lengths to avoid paying valid claims?

2          We have one there, and I see one over here smiling.  Other

3     than those two gentlemen, anybody here who thinks that, just

4     believes that, that insurance companies always or almost always

5     just go out of their way not to pay a claim that they know they

6     should pay?

7          **THE COURT:**  For the record, you were referring to

8     Mr. ██████████ and Mr. ████████?

9          **MR. GALLOWAY:**  I am.  Thank you, Your Honor.

10         As you know, when there's a big storm, especially, there

11    are a lot of adjusters who come from wherever to evaluate

12    damage claims.  Does anyone feel that claims adjusters who work

13    for insurance companies unfairly favor the insurance company

14    and are not fair to the policyholder?  Anybody think that that

15    happens all the time, almost always happens, the insurance

16    adjuster is not going to be fair to the policyholder?

17         Now, we've talked about the federal government and who

18    works for the federal government.  Is there anybody here who

19    seriously distrusts the federal government?  It's tax time and

20    nobody wants to pay taxes, but I'm not talking about taxes.

21    Yes, sir, Mr. August, juror number 14.  You just don't trust

22    the federal government?  Why is that?

23         **PROSPECTIVE JUROR:**  Because they are doing a crappy

24    job running it.  That's why.

25         **MR. GALLOWAY:**  Those folks in Washington have got a

1    mess.  Is that right?  Any other reason?

2             **PROSPECTIVE JUROR:**  No, that's the only one.

3             **THE COURT:**  Sir, let me ask a follow-up on that.  Is

4    there anything about that opinion -- would you be able to set

5    that opinion aside and listen to what you hear in this

6    courtroom and be fair and impartial?

7             **PROSPECTIVE JUROR:**  Yes, I would.

8             **THE COURT:**  This case isn't about how the government

9    is run.  It's about whether or not there was a false claim

10   submitted to the government.  Do you understand that?

11            **MR. GALLOWAY:**  We are dealing with an National Flood

12   Insurance Program, which is kind of a subagency of the United

13   States Government.  Anybody else who doesn't trust the federal

14   government no matter what?

15       Mr. Heidelberg's question was, who here has worked for the

16   government.  I think he meant, and I gather that the jury

17   meant -- understood him to mean the federal government.  Who

18   here has worked for a state government?  Or for the --

19   Mr. ███████.

20            **THE COURT:**  Ms. ██████?

21            **MR. GALLOWAY:**  Give your number, please.

22            **PROSPECTIVE JUROR:**  41.

23            **MR. GALLOWAY:**  And what state agency did you work

24   for?

25            **PROSPECTIVE JUROR:**  I work for Harrison County School

1    District.

2            **MR. GALLOWAY:**  Thank you.  I know there are some

3    school teachers here, and right now I am excluding school

4    teachers.  We will get to that in a minute.  Anybody work for a

5    state agency in Mississippi or anywhere else?  Mr. ██████?

6            **PROSPECTIVE JUROR:**  13.  I sometimes do special

7    prosecution for the city of D'Iberville.

8            **MR. GALLOWAY:**  Okay.  Serve as special prosecutor?

9            **PROSPECTIVE JUROR:**  Every now and again.

10           **MR. GALLOWAY:**  Thank you.  And number, I think, 42?

11           **PROSPECTIVE JUROR:**  Yes, 42.  ██████████.  I work for

12    Mississippi Gulf Coast Community College, which is considered a

13    state government agency.

14           **MR. GALLOWAY:**  What do you do at Mississippi Gulf

15    Coast?

16           **PROSPECTIVE JUROR:**  I'm computer lab assistant for

17    our department.

18           **MR. GALLOWAY:**  Computer lab.  Anybody else?

19       Speaking of teachers, one of the witnesses in this case

20    whose name was called who may testify is a lady who lives out

21    there on South Shore Drive close to the McIntosh house.  Her

22    name is Linda Mucha.  She grew up in Gulfport.  Her maiden name

23    was Linda Gannon, G-A-N-N-O-N.  She comes from a long

24    distinguished family of teachers.  Her sister-in-law is

25    Patricia Gannon, who is retired from the Harrison County School

1    District.  Her daughter-in-law is Sicily Cummings, who is a

2    teacher at the Bayou View Middle School.  Another sister-in-law

3    is Charlotte Gannon, who teaches at the West Harrison County

4    High School.  Someone here is an art teacher at the West

5    Harrison County High School.  Do you know Charlotte Gannon?

6            **PROSPECTIVE JUROR:**  She is my neighbor at the school.

7            **THE COURT:**  That is number 9?

8            **PROSPECTIVE JUROR:**  Number 9.

9            **MR. GALLOWAY:**  You say she is your neighbor, meaning

10    next classroom over?

11            **PROSPECTIVE JUROR:**  We share a storage closet, and I

12    talk to her all the time.

13            **MR. GALLOWAY:**  And obviously, you think well of

14    Charlotte Gannon, I assume?

15            **PROSPECTIVE JUROR:**  We get along fine.

16            **MR. GALLOWAY:**  Is the fact that you know Charlotte

17    Gannon, would that tend to make you believe her sister-in-law,

18    Linda Mucha, more than any other witness?

19            **PROSPECTIVE JUROR:**  No.  But I also have met Linda

20    Mucha.  She taught my children at Woolmarket Elementary.  I

21    haven't seen her in years, but the name is familiar.

22            **MR. GALLOWAY:**  Would the fact that Linda Mucha taught

23    your children in elementary school have any effect on the way

24    you would view her testimony?

25            **PROSPECTIVE JUROR:**  I don't believe it would.

```
 1            MR. GALLOWAY:  Thank you, ma'am.  Linda Mucha's

 2   daughter is Mary Margaret Mucha, a teacher at Reeves Elementary

 3   in Long Beach.  Her son, Michael Mucha, is a teacher at Long

 4   Beach High School.  I think that's about it.  Anybody else know

 5   any of these people, Linda Mucha or her in-laws or

 6   sister-in-law or children who teach at the various schools

 7   in -- I think they are all in Harrison County.  Yes, sir?

 8   Mr. ████████?

 9            THE COURT:  Number 1, Mr. ███████.

10            PROSPECTIVE JUROR:  Yes, sir.  I taught with her son

11   at St. Martin High School for over one year, I believe.

12            MR. GALLOWAY:  You taught with Michael at St. Martin?

13            PROSPECTIVE JUROR:  Yes, sir.

14            MR. GALLOWAY:  Is the fact that you know Michael or

15   you knew Michael -- how long ago was that?  Several years?

16            PROSPECTIVE JUROR:  Yes, sir.

17            MR. GALLOWAY:  Would the fact that you taught for a

18   year with Michael, would that have any effect on the way you

19   view Ms. Mucha's testimony, or would that tend to make you

20   believe what she said more than any other witness?

21            PROSPECTIVE JUROR:  No, sir.

22            MR. GALLOWAY:  There's Patricia Gannon, who is

23   retired from the Harrison County School District.  She is

24   married to Joe Gannon.  Then there's Charlotte Gannon, who is a

25   current teacher at West Harrison High School, and she is
```

1    married to David Gannon.  Joe would be 72 or thereabouts, and

2    David would be younger, I believe, 65, maybe.  Sixty.

3              **PROSPECTIVE JUROR:**  13.  I'm unsure, Your Honor, but

4    at some point in time we represented some Gannons during

5    Katrina lawsuits, and I'm not sure if it was them or not.

6              **THE COURT:**  That is Mr. ████ for the record.

7              **MR. GALLOWAY:**  There are some other Gannons.  Not

8    everyone with the Gannon is kin to that immediate family.

9    Thank you very much.

10        Anybody else have any relationship with the Gannon family

11    or the Mucha family?  Thank you.  How am I doing on time,

12    Judge?

13              **THE COURT:**  You have about eight minutes to go,

14    Mr. Galloway.

15              **MR. GALLOWAY:**  Thank you.  We talked a little bit

16    about the plaintiff having the burden of proof in the case.  We

17    expect the Court to instruct you on that at the end of the

18    case, that the plaintiff does have the burden of proof and that

19    State Farm -- it's not up to State Farm, and State Farm does

20    not have the burden to disprove the allegations; in other

21    words, to prove that they did not do anything wrong.  Does

22    anybody here have a problem with that principle?  Does anybody

23    think that just because State Farm has been sued that they have

24    a burden to disprove what the Rigsbys sisters claim?

25        Does anybody think that when somebody sues an insurance

```
1    company, the insurance company must have done something wrong

2    or they wouldn't have gotten sued?  Does anybody think that?

3        I assume everybody understands that these days in the

4    United States anybody can file a lawsuit.  All you have to

5    have, depending on where you file it, is somewhere between

6    about $125 and $450 and you can file a lawsuit.

7        So as I understand it, you tell me if I'm wrong, nobody

8    thinks that just because they filed a lawsuit and it's gone on

9    for a while and we are here in court having to defend it, that

10   State Farm must have done something wrong just because we are

11   all here today about this claim?

12       I guess just one final question.  The judge asked you this

13   question about what you had heard so far, and Mr. Heidelberg

14   asked you about what you have heard so far, and I want to make

15   one final offer to you to get anything off your mind that's

16   bothering you.  Having heard all of the questions that

17   everybody has asked, all of you I think understand that both

18   parties just want a jury that is going to be fair to their

19   client and fair to the system, fair to everybody.  So is there

20   anything that has come up from any of the questioning or any of

21   the responses that any of the witnesses -- I mean any of the --

22   any of you have made, any of the prospective jurors, that

23   causes you deep down a concern about whether or not you can be

24   fair to both sides in this case?  Last chance to raise your

25   hand and ease your mind.  Okay.  Thank you very much.
```

1              **THE COURT:**  Thank you, counsel.  All right, ladies

2    and gentlemen.  I know it's been a long day.  We have now

3    finished all of the questions we have for you.  I want to thank

4    all of you again on behalf of the Court and the parties for

5    your time and attention and candor in responding to the

6    questions.  That is all any of us can ask for from you, and

7    that's all we want.

8         At this time, it is time for the Court and the parties to

9    actually pick which eight of you will be the jurors in this

10   case.  In order to do that, I'm going to ask you to be excused

11   from the courtroom and wait outside until you are asked to come

12   back in, at which time we will announce who the jury is.

13        While you are outside, I want to remind you of my

14   instructions.  Do not talk amongst yourselves about the case.

15   Do not talk with anyone about the case.  If anyone approaches

16   you and tries to discuss the case with you, you should not do

17   so but should report that to me immediately.

18        At this time I will excuse you from the courtroom.  When

19   we call you back in, I will ask everybody to sit in the gallery

20   because I want to leave the jury box open so the eight people

21   who are called can come up and sit in the jury box.  Thank you

22   very much.

23        **(JURY OUT AT 2:49 P.M.)**

24             **THE COURT:**  We've been going about an hour and a

25   half.  Let's take a very short break, about five minutes.  Then

1    I'll come back and we will take up challenges for cause,

2    followed by peremptories.  Again, I want to remind everybody, I

3    know we have a lot of visitors in the gallery, and you are

4    welcome, but when I bring the panel back in, you are going to

5    have to move out and give them room until we have the jury

6    picked.

7              **MR. GALLOWAY:**  Is Your Honor going to announce people

8    that are going to be excused for personal reasons?

9              **THE COURT:**  Yes.  I'll tell you what, let me do that

10   now, and that way you will have the benefit of that while you

11   are looking at your challenges for cause.

12       First of all, I'm going to excuse number 3, Mr. ███, for

13   medical reasons.  His wife has to be in Birmingham this week

14   for a medical procedure and may be beyond that, involving a

15   heart valve issue.  He has some medical issues that I think

16   warrant him being excused.  So number 3, Mr. ███, is excused.

17       Number 11, Ms. ███, has some issues as far as her work,

18   and I think it would present an undue financial hardship on

19   her, given the circumstances she is in, for her to serve for

20   this length of time.  I'm going to excuse her.

21       Mr. ███, number 13, has a preplanned trip for which he

22   has already made commitments, and I believe, if I'm not

23   mistaken, it was an out-of-the-country trip.  I'm not going to

24   make him change his travel plans.

25       Next was number 17, Ms. ███, also has the same issue,

```
1    has already made a deposit on a trip she has planned, so I'm

2    not going to put her in the position of having to forfeit that,

3    that deposit.

4         Number 19, Ms. ██████, has a husband at home who

5    suffers from dementia, and she has to be available to take care

6    of him, and she was obviously very concerned about him being on

7    his own or in the care of a friend just for the time she was

8    here, and she needs to be available to tend to him if something

9    comes up.  So I will excuse number 19.

10        Number 42, Ms. ███, is committed to take the GRE, does

11   not have another shot at it until later and is trying to get

12   into graduate school in the fall.  It is a half-day commitment,

13   and I don't know if we realistically can accommodate her

14   schedule.  So under the circumstances, I'm going to excuse her.

15        And then Ms. ████, number 48, with her medical issues,

16   we don't know what the results are going to be, but if there

17   are results that are of a serious nature, then we may be in a

18   situation where she has to be excused from the jury if she gets

19   picked, and I'd rather not run that risk.  So because of the

20   medical issues she's looking at, and also she has a minor

21   grandson she is responsible for picking up from school every

22   day, and we would have to stop the proceedings at 4:45 every

23   day in order to accommodate that, and I think we would lose too

24   much time if we do that, so I'm going to excuse her, number 48.

25   Any others you think I've missed?
```

 1          **MR. GALLOWAY:**  I assume we are starting at the top,

 2    one, two, three, four, five?

 3          **THE COURT:**  Yes.  What we will do, we will start from

 4    the top, yes.  So we will start taking up challenges for cause.

 5    We'll from one down to the bottom.  Same thing on the

 6    peremptories.  You are going to exercise it from the top.  The

 7    first eight who are left, once we have gone through challenges

 8    for cause and peremptories, the first eight left will be the

 9    jury.  Anything else?  We will take about a five-minute recess.

10          **(RECESS TAKEN AT 2:55 P.M. UNTIL 3:05 P.M.).**

11          **THE COURT:**  At this time let me hear from counsel on

12    challenges for cause.  I want to hear the relators' challenges,

13    State Farm's response, and then I will hear State Farm's

14    challenges and the relators' response.  Mr. Heidelberg?

15          **MR. HEIDELBERG:**  No challenges for cause.

16          **THE COURT:**  Mr. Galloway?

17          **MR. GALLOWAY:**  We have two, Your Honor.  They are

18    down the list, and it might not make any difference, but we

19    thought we would go ahead and make them.

20          **THE COURT:**  Sure.

21          **MR. GALLOWAY:**  The first one is juror number 22, ████

22    ███████.  He made no bones about his dislike for insurance

23    companies, and he said in open court to a direct question that

24    he could not be fair to State Farm in this case.

25          The other one like it is the same situation, number 47,

1      ████████████, both at the side bar and in open court said that

2      he could not be fair to insurance companies because of his

3      previous experiences and could not keep an open mind.

4              **THE COURT:**  Any response?

5              **MR. HEIDELBERG:**  I think that is correct.  No

6      challenge to that.

7              **THE COURT:**  I agree in that respect.  As to number

8      32, Mr. ████████, and as to Mr. ████████, number 47, it was

9      evident to the Court and I so find that their answers were of

10     the sort that they clearly had preconceived opinions and biases

11     that they clearly indicated they could not set aside and they

12     could not render a verdict that would be fair and impartial.

13     So I think those challenges for cause are well taken, and I

14     will sustain those challenges for cause.  Any others?  Any

15     other challenges?

16             **MR. HEIDELBERG:**  No, sir.

17             **MR. GALLOWAY:**  No, Your Honor.

18             **THE COURT:**  Well, I will then have Anne submit the

19     list to you.  You will use your three peremptories, three per

20     side.  It will be blind strikes, so neither will see what the

21     other is doing.  Start from the top of the list.  Use your

22     three strikes.  When you are done, give your list back to Anne

23     and she will put it together.  The first eight left on the list

24     will be the jury.

25             **MR. GALLOWAY:**  Is there a preferred method of

1    indicating our strikes?

2         **THE COURT:**  No.  As long as it is clear who your

3    peremptory is.  We will be in recess.

4         **(RECESS TAKEN AT 3:08 P.M. UNTIL 3:36 P.M.).**

5         **THE COURT:**  We have the jury in this matter.  I'm

6    going to read off their names, and after I have done so, I will

7    hear if any of the parties have any challenges to the process

8    that they want to make.  At that time I will have the panel

9    come back in the courtroom.  We need to make sure we have

10   spaces for them in the gallery.  I will read off the names of

11   the jurors, have them seated, I will excuse the rest of panel,

12   swear in the jury, and then I will have some preliminary

13   instructions for the jury.

14        Given the hour of the day and the fact that each side has

15   requested 45 minutes for opening, I don't believe we will get

16   to openings today.  So after I give them some initial

17   instructions, I will let them go with instructions to return

18   tomorrow morning, and we will have openings first thing in the

19   morning.  And then after they leave, I will take up any other

20   issues we need to talk about outside the hearing of the jury.

21        At this time I am going to direct that the portions of the

22   transcript from the jury selection process which occurred at

23   side bar be sealed in the interest of personal privacy and

24   personal data that was disclosed.  Further, I will direct that

25   any names of jurors be redacted from any transcripts of the

1   proceedings this morning and this afternoon.

2       At this time the jury is as follows:  The first juror is

3   juror number 1, ███████████.  The second juror is juror

4   number 2, ███████████.  The third juror is juror number 6,

5   ███████████.  The fourth juror is juror number 8, ███████████.

6   The fifth juror is juror number 12, ███████████.  The sixth

7   juror is juror number 14, ███████████.  The seventh juror is

8   juror number 15, ███████████.  The eighth juror is

9   juror number 16, ███████████.  Does any party have any

10  objections to the selection process, the panel, the jury,

11  anything of that nature that they wish to bring before the

12  Court at this time?

13          **MR. HEIDELBERG:**  No objection from the relators.

14          **MR. GALLOWAY:**  None from State Farm, Your Honor.

15          **THE COURT:**  At this time I'm going to have the panel

16  reenter the courtroom, and I'm going to ask that everybody make

17  room for them in the gallery.  Yes, sir?

18          **MR. GALLOWAY:**  Are you going to go ahead and announce

19  the alternates?

20          **THE COURT:**  There are no alternates.  We have eight

21  jurors.

22          **MR. GALLOWAY:**  Oh, that is eight.

23          **THE COURT:**  Yes, eight jurors.  We can lose two if we

24  have to and still finish, but I don't pick alternates in civil

25  cases.

1          **(JURY IN AT 3:39 P.M.)**

2              **THE COURT:**  Ladies and gentlemen, I thank you again

3      for your time and your patience and your attention today.  It's

4      been a long day, I know, and a long process, but it is an

5      essential part of the process.  On behalf of the parties, I

6      want to thank you for your time and your attention today.  For

7      those of you who are not selected, please rest assured you have

8      served a very valuable and important purpose here today and

9      have performed a vital public service.  So even though you may

10     not have been selected, on behalf of the Court, I wish to thank

11     all of you for your time today and for your service to your

12     country and your community.

13         What I'm going to do now are read the names of the eight

14     of you who have been selected to serve as the jury in this

15     case.  As I call your name, I'm going to ask you to come

16     forward and be seated in the jury box.  I will ask that you sit

17     in the front row as I call you in order down towards the back.

18     Once we start the trial, you can sit anywhere you want, but for

19     purposes of getting you seated initially this afternoon, I

20     would like you to sit in the front row here right next to each

21     other all the way towards the back.  Once I have you all

22     seated, I will ask the parties to confirm that I have read off

23     the names of the jurors correctly, and then I will excuse

24     everyone else and you will be free to go.  At that time I will

25     swear in the jury, and I will have some initial instructions

1    for you, and then we will be finished for the day.  So at this

2    time, as I read your name, please come forward and have a seat

3    in the jury box.

4         The first juror is juror number 1, Mr. ██████████.

5    Sir, please come forward and have a seat here.  The second

6    juror is juror number 2, ████████████.  Mr. ████████, if you

7    will come forward, please, and have a seat next to Mr. ██████.

8    The third juror is juror number 6, ██████████.  The fourth juror

9    is juror number 8, ████████████.  The fifth juror is juror

10    number 12, ██████████.  The sixth juror is juror number 14,

11    ████████████.  The seventh juror is juror number 15, ██████████

12    ██████████.  And the eighth juror is ████████████, juror

13    number 16.  At this time I'm going to ask the parties to

14    confirm that I have read the names of the jurors correctly.

15              **MR. HEIDELBERG:**  They appear correct to me, Your

16    Honor.

17              **MR. GALLOWAY:**  That's correct, Your Honor.

18              **THE COURT:**  All right.  As for the rest of you,

19    again, I want to thank you very much for your time and

20    attention here today.  It has been a long day.  We thank you

21    very much for your participation in this process.  Rest

22    assured, we could not have done this today without your help.

23    And I want to thank you once again, but you are now excused.

24    You are free to go.  Thank you very much.

25         (JURY VENIRE EXCUSED).

1          THE COURT:  Please be seated.  All right, ladies and

2     gentlemen.  I want to thank you again for your time and

3     attention here today and for your willingness to serve.  We

4     appreciate your service to your country and to your community.

5          And I am now going to give you some initial instructions

6     about your role as the jury in this case and also a few

7     administrative details so you will have some idea about the

8     process and how the trial will work.  But before I do that, I

9     need to have you sworn in as the jury in this case.  So please,

10    if you would, stand, raise your right hand and take the oath.

11         (JURY SWORN).

12         THE COURT:  Please be seated.  All right, ladies and

13    gentlemen.  First a few administrative details.  What we will

14    do when we finish here with my initial instructions to you is,

15    I will excuse you for the day.  You will go with our court

16    security officer here who will take you back in the back.

17    There is a jury room back there.  That's where you will go on

18    your breaks and also when you begin your jury deliberations.

19    We have refreshments back there for you, coffee, sodas, water.

20    Also, there are restrooms back there for your use.  We will

21    make arrangements for you to be able to park in the back

22    parking lot each day so you won't have to park across the

23    street.  I will also be allowing you to take notes during the

24    trial.  I will give you some instructions about that.  We will

25    provide pencils and note pads for that purpose.  Please

1    remember, though, that any notes you may be taking must remain

2    in the jury room when you are not here in court.  You can bring

3    them into the courtroom with you, but when you leave, leave

4    them in the jury room.  They are not to leave the courthouse.

5        We will start each morning about 9:00.  We will break

6    sometime mid-morning, 10 to 10:30, something like that, to give

7    you a short ten-minute comfort break.  We will break again

8    around lunch for about an hour or so to let you go out and get

9    some lunch.  And then we will come back after lunch and then

10   take a mid-afternoon break, and then finish around 5:00 each

11   day, depending on how the trial is going.

12       So the first thing I want to do is go over with you some

13   preliminary instructions about your role in this case and some

14   instructions I need you to keep in mind throughout the case.

15       You have now been sworn as the jury to try this case.  As

16   the jury, you will decide the disputed questions of fact.  As

17   the judge, I will decide all questions of law and procedure.

18   From time to time during the trial and at the end of the trial,

19   I will instruct you on the rules of law that you must follow in

20   making your decision.

21       The first thing tomorrow morning, the lawyers for each of

22   the parties will make what is called an opening statement.

23   Opening statements are intended to assist you in understanding

24   the evidence.  However, what the lawyers say is not evidence.

25       After the opening statements, the relators will call

1    witnesses and present evidence.  Then the defendant will have

2    an opportunity to call witnesses and present evidence.  After

3    the parties' main case has been completed, the relators may

4    then have an opportunity to present rebuttal evidence.  After

5    all the evidence has been completed in the case, I will

6    instruct you on the applicable law that you must follow in

7    conducting your deliberations.  After that, the lawyers will

8    again address you to make their final or closing arguments.

9    Closing arguments are not evidence.  They are simply the

10   attorneys' arguments.  At that point you will then retire to

11   deliberate on a verdict.

12        Keep an open mind during the trial.  Do not decide any

13   fact until you have heard all of the evidence in the case, the

14   closing arguments, and my instructions to you on the law.  Pay

15   close attention to the testimony and the evidence.

16        If you would like to take notes during the trial, you may

17   do so.  If you do take notes, be careful not to get so involved

18   in note-taking that you become distracted and miss part of the

19   testimony.  Your notes are to be used only as aids to your

20   memory, and if your memory should later be different from your

21   notes, you should rely on your memory and not on your notes.

22   If you do not take notes, rely on your own independent memory

23   of the testimony.  Do not be unduly influenced by the notes of

24   other jurors.  A juror's notes are not entitled to any greater

25   weight than the recollection of each juror concerning the

1    testimony.

2         Even though the court reporter is making stenographic or

3    typewritten notes of everything that's being said here today

4    and during the court proceedings, a typewritten copy of this

5    testimony will not be available for your use during

6    deliberations.  On the other hand, any evidence or documents

7    that are admitted into evidence will be available for you to

8    use and refer to during your deliberations.

9         Until this trial is over, it is very important that you do

10   not discuss this case with anyone, and do not permit anyone to

11   discuss the case in your presence.  Do not discuss the case

12   even with the other jurors until all of the jurors are in the

13   jury room together actually deliberating at the end of the

14   case.

15        If anyone should attempt to discuss the case with you or

16   to approach you concerning the case, you should not do that.

17   You should inform the Court immediately.  You must hold

18   yourself completely apart from the people involved in this

19   case, the parties, the witnesses, the attorneys and any persons

20   associated with them.  It is important not only that you be

21   fair and impartial but that you also appear to be fair and

22   impartial.  So as I mentioned earlier today, while it is

23   customary in the South to be cordial and to greet people when

24   we see them, you must resist that temptation during this trial

25   when you see one of the lawyers or the parties or any of the

1    witnesses.  They are under instructions to do the same, and if

2    they do so and ignore you, they are not being rude.  They are

3    just following my instructions.  If, on the other hand, anyone,

4    including them, tries to talk to you about the case, you should

5    not do so, but you should report that to me immediately.

6        During the trial it may be necessary from time to time for

7    me to confer with the lawyers outside of your hearing or to

8    conduct a part of the trial outside of your presence.  I will

9    handle these matters as briefly and expeditiously and

10   conveniently for you as I can, but remember that they are a

11   necessary part of any trial.

12       Now, this is very important.  Do not make any independent

13   investigation of any fact or matter in this case.  You must be

14   guided solely by what you see or hear in this trial in this

15   courtroom.  Do not try to learn anything about the case from

16   any other source.  In particular, do not read any newspaper

17   accounts of this trial or listen to any radio or television

18   newscasts concerning it.  It is possible there will be some

19   media coverage of this trial.  You must not read about it or

20   listen to it on the radio or the T.V.  You, as jurors, must

21   decide this case based solely on the evidence presented here

22   within the four walls of the courtroom.  This means that during

23   the trial you must not conduct any independent research about

24   the case, the matters in the case, and the individuals or

25   companies involved in the case.  In other words, you should not

1    consult dictionaries or reference materials, search the

2    Internet, Web sites, blogs or use any other electronic tools to

3    obtain information about this case or to help you decide this

4    case.  Please do not try to find out any information from any

5    source about this case outside the confines of this courtroom.

6        Until you retire to deliberate, you may not discuss the

7    case with anyone, even your fellow jurors.  After you retire to

8    deliberate at the end of the case, you may begin discussing the

9    case with your fellow jurors, but you cannot discuss the case

10   with anyone else until you have returned a verdict and the case

11   is at an end.

12       Now, I know that many of you use cell phones,

13   Blackberries, the Internet and other tools of technology.  You

14   also must not talk to anyone at any time about this case or use

15   these tools to communicate electronically with anyone about the

16   case.  This includes your family and your friends.  You may not

17   communicate with anyone about the case on your cell phone,

18   through e-mail, on your Blackberry, iPhone, through text

19   messaging or on Twitter, through any blog or Web site,

20   including Facebook, Google, My Space, LinkedIn or YouTube.  You

21   may not use any similar technology or social media, even if I

22   have not specifically mentioned it here, to communicate with

23   anyone in any way about this case.  I also expect that you will

24   inform me immediately if you become aware of another juror's

25   violation of these instructions.

1          Now, I hope for all of you this case will be interesting

2     and noteworthy, but again, I must insist that you follow all of

3     these instructions as we continue throughout this trial.

4          If at any point during the course of the proceedings you

5     need to speak with me about anything, simply give a side note

6     to the court security officer.  He will give that note to me.

7     I may not respond to you right away.  I may need to talk with

8     the lawyers first before I do so, but I will either bring you

9     in the courtroom to address you or I will respond in writing,

10    but please remember, these are not questions about the case.

11    If you have questions about the case, we will need to wait

12    until after we have finished the evidence, but if something

13    comes up during the course of the trial, someone has tried to

14    speak with you or there's some other problem that you have

15    become aware of that you feel like you need to communicate to

16    me, please give a note to the court security officer, and he

17    will let me know.

18         Please keep those instructions in mind as we proceed

19    throughout this case.  I want to thank you again for your time

20    and attention.  It is a little before 4:00, and I know that

21    some of you may have come here today not expecting to be

22    selected, so I will give you the rest of the day to tend to any

23    personal business you may need to resolve before we begin the

24    presentation of the testimony.  So I will go ahead and excuse

25    you for the day.  Please return at 9:00 tomorrow morning, and

1    we will begin with the opening statements.  Thank you once

2    again for your time and attention and service, and we will see

3    you tomorrow morning.

4         **(JURY OUT AT 3:57 P.M.)**

5              **THE COURT:**  All right.  At this time, consider the

6    rule invoked.  If there are any fact witnesses, they need to

7    remain outside the courtroom until they are called.  I will

8    rely on the parties to advise me if they see anyone in the

9    courtroom who is a fact witness who should not be sitting in

10   the courtroom.  And I believe the parties have requested 45

11   minutes a piece for openings.  Is that correct?

12             **MR. HEIDELBERG:**  That's correct.

13             **THE COURT:**  You will have 45 minutes each.  I will

14   give you a five-minute warning and a one-minute warning.  As I

15   said earlier, I'm not going to cut you off in mid-sentence, but

16   that will be your signal to go ahead and wrap things up.  Once

17   we finish openings, we will begin presentation of the evidence.

18        I think we have had some discussions earlier.  I would

19   like the parties to keep each other and the Court informed of

20   the witnesses they believe will be coming to testify the next

21   day.  Also, at this point, let me see if we have any exhibits

22   that are stipulated or agreed to that we can go ahead and get

23   admitted.

24             **MR. HEIDELBERG:**  Your Honor, we have no objection to

25   preadmission of the exhibits that are -- I think we have got

1    lists.  I do have an objection to going ahead and doing it

2    before opening statement in the sense that I think the evidence

3    ought to come in in the case and not have every single thing

4    there for opening.  I don't mind going through it now and just

5    deeming it admitted at opening, and I think I have been

6    consistent on this point.  If I have said something else at

7    some other time, I will be held to whatever that was.  But I

8    think that's the position we took on the preadmission.

9            **THE COURT:**  All right.  That's fine.

10           **MR. ROBINSON:**  Your Honor, Barney Robinson for State

11   Farm.  We have sent your court administrator a list that the

12   parties agree these are the ones to which no objection was

13   stated.  The pretrial order -- well, I guess it was actually

14   the second amended pretrial order, but it was in all

15   versions -- explicitly says something to the effect of, the

16   following exhibits are stipulated to unless an objection is

17   stated and/or admitted.  I've never been involved in -- here is

18   the actual language.  I'm reading from page 16 of the second

19   amended pretrial order.  "The authenticity and admissibility in

20   evidence of the preceding exhibits are stipulated.  If the

21   authenticity or admissibility of any of the preceding exhibits

22   is objected to, the exhibit must be identified below, together

23   with a statement of the specific evidentiary grounds for the

24   objections."  And this list, which was submitted to your court

25   administrator at the request, I think on Friday and then

1    corrected on Saturday because it was one error that the parties

2    caught, nobody submitted any objections to any of these, and,

3    you know, I've never been in a trial where the parties were

4    prohibited from using in opening exhibits that have been

5    stipulated into evidence, and that's what these are.

6         And, you know, we would like to use a very small number,

7    we are only talking about a handful or so, of exhibits in

8    opening to which there has been no objection stated.  I would

9    ask the Court to allow us to follow what, in my practice, has

10   been an uninterrupted tradition of allowing unobjected to

11   exhibits to be used in opening.  Thank you, Your Honor.

12        **MR. HEIDELBERG:**  Very briefly.  None of that said

13   anything about timing.  My whole issue is with timing.  I think

14   everything he said is in the pretrial order.  The problem that

15   we have with it is, it's similar in my view to the deposition

16   testimony where we really did not object to a whole lot, or at

17   least we don't feel like we objected to a ton in the

18   depositions.  We don't feel like we objected to a ton of

19   exhibits in the pretrial order.

20        State Farm, on the other hand, you know, uniformly

21   objected to virtually everything.  So by following a

22   preadmission practice before opening statement, what it

23   accomplishes is that State Farm can use anything that it wants

24   to in opening, and we can't use anything because they have

25   objected to everything.

 1          That's the sole reasoning for why we are here.  I usually

 2    do preadmit things after opening statement in trials.  I don't

 3    have any problem looking at some of the things that they want

 4    to use and having an agreement to use it as a demonstrative.

 5    If it's not ten or 15 different things, but a handful of

 6    things, I would try to work on that with the parties.  But I

 7    wanted the Court to know the reasoning of why the timing is

 8    important to us.

 9          **MR. ROBINSON:**  May I very briefly respond?

10          **THE COURT:**  Very briefly.

11          **MR. ROBINSON:**  First of all, of the handful or so of

12    exhibits we want to use, all but maybe a couple or so are

13    photos, and they are photos of the property or the surrounding

14    conditions at the time of the storm.  The overwhelming majority

15    of exhibits listed by either party in this case are

16    photographs.  My best recollection, and I know Maison will

17    correct me if I'm wrong, is that out of the totality of the

18    photographs we listed, they objected to one.  I think that's

19    right.  And then I believe you withdrew that objection in

20    return for us permitting the late admission of two additional

21    exhibits by them without objection.

22          And I think it is also correct to state, in addition to

23    that, that the overwhelming majority of the photos we

24    designated, they also designated.  So a lot of these may very

25    well be plaintiffs' exhibits but also our exhibits we are

1    talking about using.  And you know, I don't think this out of

2    order concern -- which I understand what Mr. Heidelberg is

3    saying, but, for example, and I am fictionalizing it, but if in

4    opening we had a picture of the house as the waves came in, and

5    that's part of the narrative of what we want to tell the jury

6    we are going to prove and show them at trial, I don't see how

7    that does any prejudice, let alone undue prejudice, and it is

8    something I have seen so commonly done before, I am a little

9    taken aback that there is an objection to it.  Thank you, Your

10   Honor.

11        **MR. HEIDELBERG:**  The opening statements are not

12   evidence.  The evidence comes in during the trial, and that is

13   our position.

14        **THE COURT:**  Here is what we are going to do.  Let's

15   get them preadmitted now.  That way we won't have to waste time

16   doing that tomorrow.  And we are not going to use any exhibits

17   in opening statement.  If the parties can't agree on it, then

18   we are not going to do it.  Opening statements are supposed to

19   be what you think the evidence will show.  You are certainly

20   free to argue that.  And then once the evidence is in, then you

21   can show whatever you want to show.  We are not going to waste

22   any more time on this.

23        Let me hear whatever exhibits are stipulated to.

24        **MR. HEIDELBERG:**  Do you want me to just admit this

25   list?

1        **MR. ROBINSON:**  You can or I can, or if the Court

2  permits, we can just mark it and tender the list, whatever the

3  Court would prefer.

4        **THE COURT:**  Wait a moment.  Go ahead.

5        **MR. HEIDELBERG:**  We have a list that we can mark, or

6  we can read them into the record.

7        **MR. ROBINSON:**  It doesn't matter.

8        **THE COURT:**  It might be faster if you have the list

9  that you can just mark.  Get with the courtroom deputy and have

10 that marked, and those exhibits will be deemed admitted.

11       **MR. ROBINSON:**  Do you want me to approach now, mark

12 it, and then have us read into the record that we both agree

13 that Exhibit 1 or A or whatever we want to call it is, in fact,

14 a stipulated list of unobjected-to exhibits?

15       **THE COURT:**  That is fine.

16       **MR. ROBINSON:**  May I approach?

17       **THE COURT:**  You may approach.

18       **(EXHIBIT C1 MARKED FOR IDENTIFICATION ONLY.)**

19       **MR. ROBINSON:**  Your Honor, Barney Robinson for State

20 Farm.  I have just had marked for identification a list that

21 has been marked as Exhibit C1, which I am going to represent,

22 and then I'm going to ask Mr. Heidelberg, the relators'

23 counsel, whether he concurs with this representation, that this

24 is an accurate list of the relators'/plaintiffs' exhibits, or P

25 exhibits, State Farm's exhibits, which are denominated as DS

1   for defendant State Farm, and then a very small number of Haag

2   exhibits, which are denominated as DH or Defendant Haag

3   exhibits, to which no party still in the suit stated any

4   objection in the pretrial order and which are stipulated by the

5   parties to be admissible into evidence, and in fact are now

6   offered into evidence.  Is that accurate, Mr. Heidelberg?

7           **MR. HEIDELBERG:**  That is correct.

8           **THE COURT:**  Those documents or items will be deemed

9   admitted.  They will not be used in opening, but they will be

10  admitted.  Once the trial commences, no further foundation need

11  be laid.  They are in evidence and can be used.  Is there

12  anything else that we need to take up before we recess for the

13  day?

14          **MR. HEIDELBERG:**  Nothing from the relators, Your

15  Honor.

16          **MR. ROBINSON:**  Nothing from State Farm, Your Honor.

17          **THE COURT:**  All right.  If there is nothing further,

18  then we will stand in recess until 9:00 tomorrow morning.

19  **(COURT RECESSED FOR THE EVENING UNTIL 9:00 A.M. THE FOLLOWING**

20  **MORNING, MARCH 26, 2013.)**

21

22

23

24

25