IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| CORI RIGSBY and KERRI RIGSBY | § | RELATORS |
| | § | |
| | § | |
| v. | § | Civil No. 1:06CV433-HSO-RHW |
| | § | |
| STATE FARM FIRE AND | § | |
| CASUALTY CO., *et al.* | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART RELATORS' MOTION TO INITIATE DISCOVERY, IMPOSE MAXIMUM PENALTY, AWARD MAXIMUM RELATORS' SHARE, AND AWARD RELATORS THEIR ATTORNEYS' FEES, EXPENSES, AND COSTS

BEFORE THE COURT is the Motion to Initiate Discovery, Impose Maximum Penalty, Award Maximum Relators' Share, and Award Relators Their Attorneys' Fees, Expenses, and Costs [1104], filed by Relators Cori Rigsby and Kerri Rigsby. Both the United States of America[1] and Defendant State Farm Fire and Casualty Company ["State Farm"] have filed Responses [1106], [1107] to the Motion [1104], and Relators have filed a Reply [1112]. After consideration of the Motion, the related pleadings, the record in this case, and relevant legal authorities, and for the reasons that follow, the Court finds that Relators' Motion [1104] should be granted in part and denied in part. Relators' request to award the maximum Relators' share will be granted, their request to initiate expanded discovery will be denied, and their requests for an award of the maximum civil penalty and for attorneys' fees,

---

[1]The Government responded only to that portion of Relators' Motion [1104] addressing the share of the recovery. Govt.'s Resp. [1106] at 1. The Government takes no position on the remainder of Relators' Motion. *Id.* at 1 n.1.

expenses, and costs will be granted in part and denied in part. In accordance with

31 U.S.C. § 3729(a), the United States Government will be awarded treble damages

in the amount of $750,000.00, plus a civil penalty in the amount of $8,250.00, for a

total sum of $758,250.00. Relators will be awarded 30 percent of this amount

pursuant to 31 U.S.C. § 3730(d)(2), with 15 percent being awarded to each Relator.

Relators are also entitled to recover reasonable attorneys' fees in the amount of

$2,610,149.80 and expenses in the amount of $303,078.89, for a total award of

$2,913,228.69 in fees and expenses, as well as their costs upon submission of an

appropriate bill of costs.

## I.  BACKGROUND

Relators Cori Rigsby and Kerri Rigsby filed their initial Complaint [2] in this

case on April 26, 2006, *in camera* and under seal, pursuant to the False Claims Act

["FCA"], 31 U.S.C. §§ 3729, *et seq.*  Relators filed an Amended Complaint [16] on

May 22, 2007, which remains the operative pleading.  Relators allege that State

Farm attempted to shift its responsibility for Hurricane Katrina wind damage at

residential properties covered by both a homeowner's insurance policy and a flood

insurance policy by classifying wind damage as storm surge damage, thereby

recasting State Farm's liability for wind losses on such properties as flood losses

which the Government would be responsible to pay under the National Flood

Insurance Program ["NFIP"].  At the conclusion of a trial in this case, the jury

determined that State Farm had submitted to the Government a false claim and a

false record material to a false claim in connection with damage to the home of

Thomas and Pamela McIntosh located in Biloxi, Mississippi.  A more detailed

procedural history of this case can be found in the Court's Order [1127] denying

State Farm's Motions for Judgment as a Matter of Law [1101] and for a New Trial

[1102].

Relators have charged that State Farm engaged in a scheme to defraud the

Government and have sought expansive discovery into flood claims made at

residential properties other than the McIntoshes'.  It is undisputed that Relators

did not have firsthand knowledge of these other alleged claims.  This Court has

previously determined that

> [t]he McIntosh claim is the only instance of State Farm's having
> submitted an allegedly false claim of which the Relator Kerri Rigsby has
> first hand knowledge, i.e. direct and independent knowledge sufficient to
> support the Court's subject matter jurisdiction, in light of the decision of
> the United States not to intervene.

Mem. Op. [343], at 10.  For this reason, earlier in this litigation the Court limited

Relators' request for discovery, stating that "[i]n the event the Relators prevail on

the merits of their allegations concerning the McIntosh claim, [the Court] will then

consider whether additional discovery and further proceedings are warranted."  *Id.*

On April 8, 2013, the jury reached its unanimous verdict on Relators'

remaining two claims.  Specifically, the jury found that State Farm knowingly

presented, or caused to be presented, to an officer or employee of the United States

Government, a false or fraudulent claim for payment or approval in connection with

the McIntosh flood claim, in violation of 31 U.S.C. § 3729(a)(1) (1994), and that

State Farm knowingly made, used, or caused to be made or used, a false record or

statement material to a false or fraudulent claim in connection with the McIntosh flood claim, in violation of 31 U.S.C. § 3729(a)(1)(B) (2009). Special Verdict Form [1092] at 2–3. The jury determined that the Government suffered damages in connection with the McIntosh flood claim in the amount of $250,000.00. *Id.* at 3.

In light of the jury's verdict, Relators now ask the Court to permit them to initiate expanded discovery into claims on other properties insured by State Farm, to impose the maximum civil penalty and award the maximum Relators' share allowable for FCA claims, and to award Relators their attorneys' fees, expenses, and costs.

## II. DISCUSSION

A.    Relators' Request for Expanded Discovery

1.    The Parties' Positions

Relators assert that they "have earned the right to take discovery regarding the full scope of State Farm's now indisputable fraud." Relators' Mem. in Supp. of Mot. [1105] at 11. Relators contend that they have alleged a fraudulent scheme in their Amended Complaint with sufficient particularity to obtain discovery not limited to the specific examples of that fraud identified in the Amended Complaint. *Id.* at 14.

State Farm responds that Relators are attempting to "claim smuggle" and that the Court has no jurisdiction in this case over any other potential claims under 31 U.S.C. § 3730(e)(4). Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 8. State Farm argues that the jury did not determine State Farm engaged in any "scheme"

to defraud the Government and that Relators are not entitled to additional

discovery based upon any such alleged fraudulent scheme.  *Id.* at 10–12.  In support

of its position, State Farm points out that Relators' conspiracy claim was dismissed

at trial for insufficiency of evidence.  *Id.* at 18.

   State Farm also maintains that Relators have not pleaded which additional

false claims State Farm submitted with particularity sufficient to provide a reliable

indicia that State Farm engaged in a scheme to shift Hurricane Katrina wind

damage to the Government through the NFIP.  *Id.* at 12–16.  State Farm contends

that Relators' conduct in connection with the allegations "should have enabled

Relators to come forward long before now and allege specific facts sufficient under

Rule 9(b) to support additional alleged FCA violations, if there were such facts."

*Id.* at 17.  According to State Farm, Relators cannot now "'discover' their way into

'original source' status."  *Id.*

   In an earlier Memorandum Opinion [343] entered on August 10, 2009, the

Court considered ten substantive Motions, including State Farm's Motion to

Dismiss [98] pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  At that

time, the Court found that Relators had stated their FCA claim as to the McIntosh

property with sufficient particularity to satisfy the requirements of Rule 9(b).  Mem.

Op. [343] at 9.  Because the McIntosh claim was the only instance of State Farm's

having submitted an allegedly false claim of which either Relator had firsthand

knowledge, the Court "limit[ed] the presentation of evidence in this action to facts

relevant to the McIntosh claim."  *Id.* at 10.  "In the event the Relators prevail on the

merits of their allegations concerning the McIntosh claim," the Court stated that it would "then consider whether additional discovery and further proceedings are warranted." *Id.* The Court did not state or indicate that expanded discovery would automatically result from a favorable jury verdict on the McIntosh claim.

2.    Legal Standard

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[C]laims brought under the FCA must comply with the particularity requirements of Rule 9(b) for claims of fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013) (quotation omitted).

With respect to the scope of discovery generally,

[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  "A district court has broad discretion in all discovery matters . . . ." *Moore v. CITGO Refining and Chemicals Co.*, 735 F.3d 309, 315 (5th Cir. 2013) (quotation omitted).  "Discovery rulings are committed to the sound

discretion of the trial court." *McCreary v. Richardson*, 738 F.3d 651, 654 (5th Cir. 2013) (quotation omitted).

In *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), a False Claims Act case in which doctors and a hospital allegedly billed Medicare and Medicaid for services not performed, the United States Court of Appeals for the Fifth Circuit considered the level of detail required by Rule 9(b) in a False Claims Act case.

> [T]o plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

*Grubbs*, 565 F.3d at 190. The Fifth Circuit explained that the details which would lead to a "strong inference" that false claims were "actually submitted" would include items "such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into . . . ." *Id.* at 190–91. In this context, however, Rule 9(b) "prevents . . . the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *Id.* at 191. Finding that the relator in that case, Dr. Grubbs, had alleged sufficient detail to satisfy Rule 9(b), the Fifth Circuit "emphasize[d] that we decide only that the allegations are sufficient to gain Dr. Grubbs access to the discovery process. We leave to the able district court to manage this access-discovery targeted to the claims alleged, *avoiding a search for new claims*." *Id.* at 195 (emphasis added).

3.   <u>Analysis</u>

In their briefing on the present Motion and in their Amended Complaint [16], Relators rely upon their theory about State Farm's alleged scheme to shift its responsibility to pay claims for wind damage under State Farm homeowner's insurance policies to the United States Government through the NFIP as a justification for the expansion of discovery.  Even assuming Relators have pleaded sufficient details regarding the existence of a scheme, as to any claims other than the McIntosh claim, the Amended Complaint [16] lacks sufficient details that lead to a "strong inference" that any additional claims were "actually submitted" to the Government, as required by *Grubbs*.[2]  In other words, the Relators attempt to rely upon the existence of a scheme and the single false McIntosh claim to open the door to additional discovery into other suspected false claims, for which few if any details at all have been pleaded.  *Grubbs* requires more than simply adequately pleading the existence of a scheme and one specific claim; information which would support the strong inference that other claims were actually submitted is also necessary. *Grubbs* teaches that under the circumstances of this case, the expansion of discovery beyond the McIntosh claim would amount to, as *Grubbs* described it, a "fishing expedition" for new claims.  *See Grubbs*, 565 F.3d at 190–91.

---

[2]Relators did reference one other specific claim in their Amended Complaint [16], the Mullins claim.  Am. Compl. [16] at 20.  However, the Court has previously determined that Relators' allegations regarding this property have "been shown to be invalid."  Mem. Op. [343] at 3.

Armed with knowledge of a purported scheme and evidence related to the single McIntosh claim, Relators seek far-reaching, unfettered discovery in order to search for new claims beyond the McIntosh claim, the only false claim of which they have firsthand knowledge. *Grubbs* states that even if a complaint survives a Rule 9(b) challenge, discovery should be tailored to the claims alleged, so as to avoid a search for new claims. *Id.* at 195. To allow expanded discovery in the fashion Relators seek would permit improper smuggling of additional claims beyond the single claim of which Relators have personal knowledge.

Had Relators pleaded sufficient facts to create a strong inference that State Farm had submitted any other claims to the Government in conjunction with the alleged scheme, the Court could "limit[] any 'fishing' to a small pond that is either stocked or dead." *Id.* at 191. However, Relators have not pleaded sufficient details regarding any other claims to survive a Rule 9(b) challenge. Were the Court to grant Relators' request, discovery would necessarily be overly broad because the Amended Complaint lacks enough detail to permit the Court to craft reasonable discovery parameters. Beyond the McIntosh claim, the Relators' conclusory allegations in the Amended Complaint [16] as to the existence of other specific FCA violations do not satisfy the particularity requirements of Rule 9(b), and expanded discovery would lead to an inappropriate fishing expedition for new claims. *See Grubbs*, 565 F.3d at 190–91. Relators' request for additional discovery should be denied.

Relators have not sought leave to amend the pleadings to allege any additional details about other claims.  Relators have attached to their Reply [1112] in support of the present Motion a list of "Revised Engineering Reports" supplied by Forensic Analysis & Engineering Corporation.  The list appears to reflect eighteen (18) engineering reports performed on properties in addition to the McIntoshes'.  Relators assert that "State Farm coerced the results of an engineering analysis" on these properties.  Reply [1112] at 7.  Even if this list attached to a Reply brief could somehow be construed as a request by Relators to amend the pleadings, for the reasons that follow Relators' conclusory statements as to the import of these reports would be insufficient to survive a Rule 9(b) challenge.

Relators obtained the list during discovery from former Defendant Forensic, in response to an interrogatory that asked Forensic to "[i]dentify each engineering report related to damage caused by Hurricane Katrina that was reviewed, updated, changed, or altered in any way after such report was provided to State Farm."  Forensic's Resps. [992-2] at 4.  The Fifth Circuit has held that the requirement for particularity in pleading fraud "must be laid out *before* access to the discovery process is granted," and that courts are required to apply Rule 9(b) "with force, without apology."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (emphasis in original).  Other district courts in the Fifth Circuit have rejected attempts to amend a fraud complaint based upon facts learned during discovery. *See, e.g., In re Gulf States Long Term Acute Care of Covington, LLC*, Nos. 11-1659 & 13-508, 2014 WL 107870, at *2 (E.D. La. Jan. 9, 2014) (citing *United States for the*

-10-

*Use and Benefit of Siemens Bldg. Techs., Inc. v. Grot, Inc.*, No. 4:05CV77, 2005 WL
2012263, at **2–3 (E.D. Tex. Aug. 19, 2005)).

The central issue in this case has been State Farm's adjustment of flood
claims under the NFIP.  Relators have maintained throughout this litigation that
State Farm ordered engineering reports only in instances where it was adjusting
wind claims, and that the reports were contained in State Farm homeowners' wind
claim files, not in flood claim files.  The list attached to Relators' Reply provides, at
most, reliable indicia that the owners of these eighteen (18) properties more likely
than not had a homeowners' policy with State Farm, that those insured individuals
submitted a homeowners' claim to State Farm for wind damage sustained during
Hurricane Katrina, and that the engineering reports in the homeowners' claim files
were "reviewed, updated, changed, or altered in any way after such report was
provided to State Farm."  Forensic's Resps. [992-2] at 4.  It is unclear from Relators'
discovery request and the list itself what changes were made to the reports and
whether such changes had anything to do with flood damage, if any, sustained at
that particular property.  State Farm's conduct with respect to the adjustment of
homeowners' claims, in and of itself, is insufficient to state a claim that State Farm
violated the FCA with respect to a particular flood claim.

For instance, Relators have not alleged that any of these eighteen (18)
properties were even covered by an SFIP, let alone an SFIP issued and adjusted by
State Farm.  Even assuming all eighteen (18) properties were covered by a State
Farm issued SFIP, Relators have not offered sufficient detail to provide reliable

indicia that would lead to a strong inference that any flood claims were actually submitted on any of these eighteen (18) properties. *See Grubbs*, 565 F.3d at 190.[3] Even if State Farm somehow coerced Forensic to manipulate the engineering reports for homeowners' wind claim files, as Relators allege, this fact alone would not necessarily mean that these properties were also covered by a State Farm issued SFIP or that any claims, false or otherwise, were made on a particular SFIP. The Court therefore finds that the inclusion of this list in a Second Amended Complaint would not add sufficiently detailed factual allegations to overcome a motion to dismiss.  For these reasons as well, Relators' request to expand discovery should be denied.

B.   <u>Relators' Request for the Court to Impose Maximum Civil Penalty</u>

Relators assert that "[i]n light of the magnitude of State Farm's intentional fraud upon the federal government, the Court should assess the maximum civil penalty of $11,000 against State Farm."  Relators' Mem. in Supp. of Mot. [1105] at 17.  Relators contend that "State Farm knowingly employed a systematic fraud in the wake of a devastating natural disaster to enrich itself at the Government's expense."  *Id.* at 18.

---

[3]The Court notes that one of the properties on the Forensic list was Terri Mullins' property, which has already "been shown to be invalid." Mem. Op. [343] at 3.  The Mullins' property identified in the Amended Complaint was located at 6057 Pine Tree Drive, Kiln, Mississippi.  Am. Compl. [16] at 20.  In support of an earlier Motion to Dismiss [91], State Farm supplied discovery responses from Terri and William Mullins' lawsuit against State Farm where the Mullins stated that they "never applied for or obtained flood insurance with the National Flood Insurance Program for the property located at 6057 Pine Tree Drive, Kiln, Mississippi."  Discovery Resps. [91-13] at 10–11.

State Farm responds that "[a] jury's finding of a single putative false claim cannot be characterized as 'systematic' in any sense." Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 24. State Farm maintains that there is no basis in the record for imposition of the maximum penalty and that imposition of the minimum civil penalty of $5,500.00 is appropriate. *Id.* at 23–24.

31 U.S.C. § 3729(a) provides that any person who violates § 3729(a)(1) "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . ." 31 U.S.C. § 3729(a) (2009); *see* Federal Civil Penalties Inflation and Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990). Pursuant to the adjustment, the civil penalty presently ranges from $5,500.00 to $11,000.00. 28 C.F.R. § 85.3(a)(9). The parties do not dispute that this is the appropriate range for the Court to consider. *See, e.g.,* Relators' Mem. in Supp. of Mot. [1105] at 6; Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 23.

"Congress . . . afforded the federal trial courts considerable discretion in calculating damages and ascertaining the amount of the civil penalty component, within the statutory range." *Morse Diesel Intern., Inc. v. United States*, 79 Fed. Cl. 116, 124 (2007) (citing 31 U.S.C. § 3729). While the FCA "does not set any specific formula for imposing civil penalties, [the Act] authorizes federal trial courts to award monetary relief that will afford the Government a base civil penalty amount that can be adjusted, in the court's discretion, up to the statutory ceiling." *Id.* (citing 31 U.S.C. § 3729(a)(1), (b)(1)). Considering the totality of the circumstances

surrounding this case, including the evidence and testimony adduced at trial, the Court is of the opinion that Relators' request for the maximum civil penalty should be granted in part and denied in part, and that a penalty in the middle of the range is most appropriate.  The Court will therefore assess a civil penalty against State Farm in the amount of $8,250.00.

C.    <u>Relators' Request for the Court to Award Maximum Relators' Share</u>

Relators contend that they "are entitled to the maximum FCA relator fee of 30 percent in light of the burdens that they have carried, the substantial contributions they have made with no assistance from the government, and the sacrifices they have endured for seven years."  Relators' Mem. in Supp. of Mot. [1105] at 18.  According to Relators, "[t]he ponderous docket in this case is a testament to the Relators' contribution and the oppressiveness of the burdens they have endured."  *Id.* at 20.

The Government has responded to this portion of Relators' Motion [1104] and takes the position that Relators' request for a share of the recovery should be denied without prejudice as premature.  Govt.'s Resp. [1106] at 1.  According to the Government, in most cases the United States Department of Justice is able to negotiate an agreement with a relator's counsel without the need for involvement from the court, and this issue is not yet ripe for determination because State Farm's liability has not been adjudged with finality in light of the pendency of State Farm's post-trial Motions.  *Id.* at 2.  The Government also states that in the event the scope

of proceedings are expanded, Relators might obtain a significantly larger recovery. *Id.* at 3.

State Farm maintains that "[t]he Court should pretermit this issue altogether." Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 24. State Farm asserts that the Department of Justice and Relators should first determine any Relators' share, such that this matter is not ripe for judicial review and adjudication. *Id.*

State Farm's post-trial Motions and Relators' request to expand the scope of these proceedings have now been resolved. The Government has had ample time to negotiate a resolution with Relators. The Government has cited no authority, and the Court has found none, which requires the Court to give the Government any additional time beyond what it has already had to negotiate a settlement. While the Court appreciates the Government's position, in the current procedural posture of this case the Court finds that a stay pending such negotiation is not warranted. The Court sees no just reason to delay resolution of the question of Relators' share.

The Government has elected not intervene in this case. *See, e.g.,* Notice [56] at 1. If the Government does not proceed with an action under the FCA,

> the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

31 U.S.C. § 3730(d)(2).

This matter has been pending for nearly eight (8) years, and Relators' current counsel has litigated this case for over five and a half (5 ½) years, responding to numerous dispositive motions and voluminous pleadings.  Relators have shouldered the entire burden of prosecuting this matter and bringing the McIntosh claim to verdict.  Given the extensive amount of time and effort expended and the significant expenses incurred by Relators, without any involvement by the Government, the Court finds that the maximum 30 percent share is an appropriate award for Relators.  *See* 31 U.S.C. § 3730(d)(2).  The Court will divide this share equally between the two Relators in this case, 15 percent to Cori Rigsby and 15 percent to Kerri Rigsby.  Relators' request for the Court to award the maximum share will be granted.

D.    Relators' Request for the Court to Award Attorneys' Fees, Expenses, and Costs

1.    The Parties' Positions

Relators assert that they are entitled to an award against State Farm of their attorneys' fees, costs, and expenses incurred to obtain the verdict against State Farm.  Relators' Mem. in Supp. of Mot. [1105] at 23.  Relators seek fees, costs, and expenses for work performed by the two law firms that currently represent them, Weisbrod Matteis & Copley, PLLC ["WMC"] and Heidelberg Harmon PLLC ["HH"], in the amounts of $1,232,735.06, and $287,346.34, respectively.  *Id.* at 23–26.  Relators have also submitted a request for the fees, costs, and expenses of a law firm that previously represented them, Gilbert LLP ["Gilbert"], in the amount of $5,225,303.67.  *Id.*  Relators have supplied declarations and affidavits supporting

-16-

the billings by WMC and HH; however, they have submitted only spreadsheets of fees and costs reported by Gilbert.  Relators "invited Gilbert to provide an affidavit or declaration as to the reasonableness of the fees and expenses reflected on those spreadsheets, and Gilbert has declined to do so at this time." *Id.* at 24 n.59.

State Farm responds that Relators have failed to show any entitlement to an award of legal fees and expenses and have failed to establish the reasonableness of their litigation expense reimbursement requests.  Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 25 (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006)).  State Farm agrees that the lodestar analysis is appropriate in this case, but argues that the hourly rates claimed for Gilbert attorneys are "patently unreasonable for this jurisdiction" and that "the failure of Gilbert or anyone else to provide proper support for the rates requested forfeits the opportunity to submit any further evidence by affidavit or otherwise on the issue." *Id.* at 27 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1999)).  State Farm complains that the documentation submitted does not identify the Gilbert attorneys by name or experience. *Id.* at 27 n.7.  State Farm also argues that the rates for WMC are unreasonable in this district and are based upon rates within the District of Columbia, and that HH "apparently already has been paid by either the Gilbert firm or WMC . . . ." *Id.* at 28.

With respect to the number of hours expended by Relators' counsel, State Farm contends that the descriptions of work performed by Gilbert employees is too vague to determine the nature of the work billed or whether the work was

performed by an attorney or paralegal. *Id.* at 29.  State Farm also complains that
Relators have submitted bills related to all claims, regardless of whether Relators
prevailed on them.  State Farm argues that a significant downward adjustment of
at least one-third of the requested amounts should be made due to the number of
unsuccessful claims, including Relators' claims for retaliatory discharge, reverse
false claim, and conspiracy, and due to the number of original Defendants, eleven
(11), who were voluntarily dismissed by Relators without the benefit of a
settlement. *Id.* at 29–30 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714
(5th Cir. 1974)).  State Farm further suggests that an additional downward
adjustment from the lodestar calculation is warranted because "Relators have
refused to document their attorneys' and fee [sic] requests with copies of their fee
agreements with their attorneys notwithstanding that the agreements were
requested by State Farm during discovery and ordered produced by this Court."
*Id.* at 30.

State Farm posits that Relators' retention of counsel from Washington, D.C.,
was unnecessary and unreasonably drove up the hourly rates, that the billing
records reflect purported "inefficiencies and duplication of effort," and that "a
significant portion of the fees and expenses sought was unnecessarily incurred" as a
result of issues with Relators' former counsel, whom this Court disqualified from
representing Relators. *Id.* at 32.  Finally, State Farm argues that the out-of-state
travel expenses being sought were unnecessary because Mississippi counsel was
available, and other charges including in-office meals for Relators' counsel, office air

conditioning charges, and reimbursement for Kerri Rigsby's credit card, are

unauthorized and are "classic examples of double dipping since they are already a

component of the attorneys' hourly rates." *Id.* at 32–33.

2.    Analysis

If the Government does not proceed with an action under the FCA, the person

bringing the action

> shall also receive an amount for reasonable expenses which the court
> finds to have been necessarily incurred, plus reasonable attorneys' fees
> and costs.  All such expenses, fees, and costs shall be awarded against the
> defendant.

31 U.S.C. § 3730(d)(2).

a.    Attorneys' Fees

(1)    *Legal Standard*

Relators and State Farm ask the Court to apply the lodestar method in

determining the amount of attorneys' fees Relators should be awarded.  Relators'

Mem. in Supp. of Mot. [1105] at 24; Def.'s Mem. in Opp'n to Relators' Mot. [1108] at

26.  While neither side has cited the Court to any binding authority holding that the

lodestar method should be utilized in an FCA case, other Circuit Courts of Appeals

have approved use of this method in FCA cases.  *See, e.g., United States ex rel.*

*Vuyyuru v. Jadhav*, 555 F.3d 337, 356–57 (4th Cir. 2009); *Gonter v. Hunt Valve Co.*,

510 F.3d 610, 616–17 (6th Cir. 2007).  The Court finds this authority persuasive and

will employ the lodestar method to calculate the appropriate attorneys' fee award in

this case.

In the first step of this method, the Court determines the lodestar, which "is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citation omitted). The resulting figure provides an objective basis upon which to make an initial assessment of the value of a lawyer's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A plaintiff bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Id.* at 436; *Black*, 732 F.3d at 502. The Court should exclude from this initial fee calculation hours which were not "reasonably expended." *Hensley*, 461 U.S. at 434. The United States Supreme Court has explained that:

> [c]ases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Id.*

"[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)]." *Black*, 732 F.3d at 502 (quotation omitted).

> The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

-20-

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 502 n.7 (citing *Johnson*, 488 F.2d at 717–19).

The Supreme Court has cautioned, however, that the lodestar method yields a fee that is presumptively sufficient to achieve the objective of providing a reasonable fee, and this presumption is a "strong one." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010). Many of the *Johnson* "factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensely*, 461 U.S. at 434 n.9. The Fifth Circuit has likewise held that "[t]here is a strong presumption of the reasonableness of the lodestar amount," and has instructed that "[t]he lodestar may not be adjusted to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citation omitted); *see also Saizan*, 448 F.3d at 800.

### (2)    The Amount of Attorneys' Fees Sought By Relators

The following charts summarize by law firm the requested hourly rate, billed hours, and lodestar for each billing attorney and paralegal for whom Relators seek an award of fees.

| Gilbert, LLP | | | |
|---|---|---|---|
| Timekeeper, Position | Requested Hourly Rate | Requested Hours | Requested Lodestar |
| August J. Matteis, Attorney[4] | $525.00 | 2,441.2 | $1,281,630.00 |
| August J. Matteis, Attorney | $600.00 | 260.8 | $156,480.00 |
| Derek Y. Sugimura, Attorney | $400.00 | 1,531.6 | $612,640.00 |
| Derek Y. Sugimura, Attorney | $425.00 | 75.9 | $32,257.50 |
| Unknown Timekeepers (ADW, AEJ, AS, BD, BW, CJB, CJL, CMS, CS, CW, DLK, DNW, ED, FD, GL, JAH, JCR, JG, JKP, JSR, KJH, KTS, LAS, LCL, LCM, MAP, MEJ, ML, MP, MTC, MMB, NB, PC, TK, SDG, SV) | various rates | 6,916.95 | $2,492,452.50 |
| TOTAL | | 11,226.45 | $4,575,460.00 |

| Weisbrod Matteis & Copley PLLC | | | |
|---|---|---|---|
| Timekeeper, Position | Requested Hourly Rate | Requested Hours | Requested Lodestar |
| August J. Matteis, Attorney | $505.00 | 1,146.6 | $579,033.00 |
| Derek Y. Sugimura, Attorney | $355.00 | 642.4 | $228,052.00 |
| William E. Copley, Attorney | $445.00 | 370.1 | $164,694.50 |
| Pamira S. Matteis, Attorney | $290.00 | 133.7 | $38,773.00 |
| Timothy M. Belknap, Attorney | $245.00 | 402.4 | $98,588.00 |
| TOTAL | | 2,695.20 | $1,109,140.50 |

---

[4]During the course of their work on this case while employed at Gilbert, LLP, attorney August J. Matteis' rate apparently increased from $525.00 to $600.00 per hour, and attorney Derek Y. Sugimura's rate increased from $400.00 to $425.00 per hour. Gilbert Billing [1104-15] at 120.  The Court has separated the hours expended by these two attorneys at each of these hourly rates.

| Heidelberg Harmon PLLC | | | |
|---|---|---|---|
| **Timekeeper, Position** | **Requested Hourly Rate** | **Requested Hours** | **Requested Lodestar** |
| **C. Maison Heidelberg, Attorney** | $375.00 | 616.6 | $231,225.00 |
| **Laura K. Barbour, Attorney** | $275.00 | 23.2 | $6,380.00 |
| **Macie E. Sledge, Paralegal** | $165.00 | 266.7 | $44,005.50 |
| **TOTAL** | | 906.5 | $281,610.50 |

### (3)     Discussion

The Gilbert and WMC firms are based in Washington, D.C.  Relators seek
attorneys' fees for these firms at hourly rates customarily charged by attorneys in
the Washington, D.C., area, but Relators' counsel states that he has reduced the
customary billing rates for the attorneys at WMC by approximately ten (10) to
twenty-five (25) percent.  Decl. of August J. Matteis, Jr. [1104-8] at 7.  State Farm
argues that these rates remain unreasonable because they are derived from
Washington, D.C., data, and that the Court should look only to rates charged in the
Southern District of Mississippi.  Def.'s Mem. in Opp'n to Relators' Mot. [1108] at
27–28.

In determining the lodestar, typically "'reasonable' hourly rates 'are to be
calculated according to the prevailing market rates in the relevant community.'"
*McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum
v. Stenson*, 465 U.S. 886, 895 (1984)); *see also Black*, 732 F.3d at 502.  The Fifth
Circuit has carved out an exception to this general rule when "abundant and
uncontradicted evidence proved the necessity of [the plaintiff's] turning to

out-of-district counsel . . . ."  *Id.* at 382.  In that instance, counsel's "'home' rates should be considered as a starting point for calculating the lodestar amount."  *Id.*

In this case, Relators have submitted the Declaration of Zachary A. Kitts, who graduated from law school in 2001 and practices *qui tam* litigation in the Washington, D.C., area.  Mr. Kitts states that there is only one other Jackson, Mississippi, metropolitan area firm known to him that was qualified to handle this case. According to Mr. Kitts, this particular firm was unavailable to take this case because of its workload at the time.  Decl. of Zachary A. Kitts [1104-14] at 3–5, 9. Relators also present the Declaration of Kerri Rigsby in which she avers that Relators "had a difficult time finding substitute counsel" after the Court disqualified her prior counsel.  Decl. of Kerri Rigsby [1104-7] at 2.  Kerri Rigsby states that one local law firm declined representation and that Relators met with "several out-of-state firms" which did not agree to represent Relators.  *Id.* at 2–3.

In contrast, State Farm has presented evidence that "retention of Washington, D.C., counsel was not required" because "[n]umerous Mississippi lawyers are capable of handling this type of case . . . ."  Decl. of David W. Mockbee [1107-2] at 15–16.  Mr. Mockbee, who graduated from law school in 1974 and practices in Jackson, Mississippi, identifies by name some of the Mississippi attorneys who could handle a complex case of this nature.  *Id.* at 17–18.

The Court notes that Mr. Kitts' Declaration focuses only on attorneys he knows in the Jackson, Mississippi, metropolitan area who he believes are qualified to handle this type of litigation.  Decl. of Zachary A. Kitts [1104-14] at 3–5, 9.  His

Declaration does not encompass Gulfport, Mississippi, where this Court sits.  The Court does not find Mr. Kitts' Declaration persuasive on the unavailability of local counsel, as there is no indication that Mr. Kitts has ever practiced in Mississippi or is otherwise familiar with any Mississippi law firms beyond the one he references.

Likewise, Kerri Rigsby's Declaration mentions speaking with only one local law firm about representing Relators.  Decl. of Kerri Rigsby [1104-7] at 2.  There is no evidence that Relators sought representation in the Gulfport, Mississippi, area.  Nor is there any indication that Relators contacted more than one Mississippi law firm regarding representation.

Relators have not persuaded the Court by a preponderance of the evidence, much less the "abundant and uncontradicted evidence" referenced by the Fifth Circuit in *McClain*, that it was necessary for them to turn to out-of-district counsel to prosecute this case.  *McClain*, 649 F.3d at 382.  Accordingly, the Court finds no reason to deviate from the general rule that counsel's reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community, which is the Southern District of Mississippi.  *Id.* at 381.

With respect to State Farm's argument that any recovery of attorneys' fees should be reduced because Relators were not successful on all of their claims, the Court must consider whether Relators failed to prevail on claims which were unrelated to the claims on which they succeeded, and whether Relators achieved a level of success that makes the hours expended a satisfactory basis for making a fee award.  *Hensley*, 461 U.S. at 434; *see also United States ex rel. Longhi v. Lithium*

*Power Techs.*, 575 F.3d 458, 475–76 (5th Cir. 2009).  When distinctly different claims for relief based upon different facts and legal theories are brought in the same suit against the same defendant, counsel's work on one claim will be unrelated to his work on another claim.  *Hensley*, 461 U.S. at 434.  Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, and no fee may be awarded for services on the unsuccessful claim.  *Id.*

Conversely, when a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  *Id.* at 435.  The Supreme Court has explained that "[s]uch a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.*  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Id.* at 436–37.

In this case, the claims asserted against State Farm derived from the same flood policy, the "same actors, and the same illegal intent to defraud the government of money in violation of the FCA."  *Longhi*, 575 F.3d at 476.  The Court finds that the level of success achieved by Relators on the two claims which were presented to the jury is sufficient to merit entitlement to a full attorneys' fee award.  *See id.*  The

-26-

Court has also reviewed the billing records and has found no easily separable, duplicative efforts or unnecessary work hours with respect to unsuccessful claims. *See id.* Based on the circumstances of this case, no reduction of hours is warranted based upon which claims were successful and which were not. *See id.*

As for State Farm's argument regarding attorneys' fees expended on Relators' claims against settling Defendants, the Fifth Circuit has held in a Clayton Act case that a plaintiff's settlement with one defendant did not bar recovery of costs and attorneys' fees to which the plaintiff may be entitled from the remaining defendants. *Funeral Consumers Alliance, Inc. v. Service Corp. Int'l*, 695 F.3d 330, 336 (5th Cir. 2012).[5] Under the facts of this case, the Court finds this reasoning persuasive. Moreover, Relators' counsel avers in his declaration that he has "removed all time that related only to the pursuit of Relators' claims against former defendants." Decl. of August J. Matteis, Jr. [1104-8] at 6. Finally, several Defendants were dismissed from this action prior to July 15, 2008, the earliest billing entry submitted to the Court. *See* Order [192] (entered June 20, 2008, dismissing Defendants USAA Insurance Company, Allstate Insurance Company, and Nationwide Insurance Company). A reduction in the requested attorneys' fees is not warranted on this basis.

---

[5]The relevant provision of the Clayton Act provided that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee." *Funeral Consumers Alliance*, 695 F.3d at 336 (quoting 15 U.S.C. § 15(a)).

The Court is also unpersuaded by State Farm's argument that a "significant portion" of Relators' requested fees were unreasonably expended due to the disqualification of Relators' counsel.  Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 32.  The Court notes that a significant portion of this litigation occurred prior to the retention of Relators' current counsel.  Relators initiated this action on April 26, 2006, and the first billing entry for Relators' current counsel while employed at Gilbert does not appear until July 15, 2008.[6]  Relators do not seek attorneys' fees for this nearly twenty-seven month period at the outset of the case.

With respect to State Farm's argument that the attorneys' fees billed by HH have already been paid by Gilbert, Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 28, the spreadsheet of expenses supplied by Relators from Gilbert reflects that Gilbert paid HH a "Professional Services Fee" as local counsel in this case each month from about August 4, 2008, through October 31, 2011.  Gilbert Expenses [1104-16] *passim*.  The first entry on the bills submitted for attorneys' fees in this case from HH is not until November 10, 2011, after the last payment was made by Gilbert.  HH Bills [1104-6] at 2.  Based on the foregoing, the Court will not reduce the attorneys' fees awarded to Relators on this basis.  The Court will address Gilbert's claimed expenses, including its payments to HH, when it addresses Relators' request for expenses.

---

[6]Relators' current counsel made their initial appearance in this case on July 30, 2008.

Based on the foregoing, and having reviewed and considered the parties' arguments, the evidence presented, and relevant legal authorities, the Court finds that the number of hours reasonably expended by, and the reasonable hourly rates for, each attorney and paralegal are as follows.

(a)    *Unknown Timekeepers at Gilbert LLP*

Relators seek attorneys' fees in the amount of $5,225,303.67 for work performed by the Gilbert law firm and have submitted spreadsheets of fees billed by Gilbert. The timekeepers are identified only by their initials. From the documentation provided, the Court cannot ascertain the identity, position, or experience level of any of the timekeepers, with the exception of attorneys August J. Matteis and Derek Y. Sugimura, who remain counsel of record for Relators. Nor have any of the timekeepers from Gilbert, other than Mr. Matteis and Mr. Sugimura, submitted any type of declaration or affidavit supporting the hourly rate or the number of hours billed. Without this information, the Court is unable to ascertain whether the hourly rates listed or the amount of time expended is reasonable for these unknown timekeepers. Relators have not properly supported the fee request of these unidentified individuals, and the Court will disallow all time entries from the unknown timekeepers at Gilbert. The Court will address the entries of Mr. Matteis and Mr. Sugimura separately.

(b)    *Attorney August J. Matteis*

During his employment at Gilbert and while this case was pending, Mr. Matteis' billing rate apparently increased from $575.00 per hour to $600.00 per

-29-

hour.  With respect to work Mr. Matteis performed at WMC, his current firm,

Relators request a rate of $505.00 per hour.  Mr. Matteis has practiced law for over

twenty (20) years in Washington, D.C., and is a partner at his firm.  Decl. of August

J. Matteis, Jr. [1104-8] at 2–3.  Mr. Matteis' "customary billing rate for commercial

litigation is currently $630/hour."  *Id.*  Relators have also submitted an affidavit

from an attorney practicing in this district who opines that "customary and

reasonable rates currently charged by litigation partners in Mississippi firms and/or

regional firms with offices in Mississippi are in the $400–$500 range."  Aff. of John

G. Corlew [1104-13] at 2.

The rates charged by Relators' local counsel, C. Maison Heidelberg, who

practices in the Jackson, Mississippi, area are instructive.  The Mississippi Bar

Association's online Lawyer Directory reflects that Mr. Heidelberg has comparable

legal experience to Mr. Matteis.  Mr. Heidelberg was admitted to practice law in

Mississippi in 1993.  Miss. Bar Lawyer Directory, http://msbar.org/lawyer-directory-

search.aspx?searchTerm=Heidelberg&SearchField=memberLastName (last visited

Feb. 11, 2014).  Mr. Heidelberg states in his declaration that his "billing rate for

commercial litigation ranges from $250/hour to $450/hour, depending on a variety of

circumstances that include the client's ability to pay."  Decl. of C. Maison Heidelberg

[1104-9] at 2.  Mr. Heidelberg billed his time in this case at an hourly rate of

$375.00.  *Id.*

After reviewing the evidence presented and the record as a whole, including

Mr. Matteis' and Mr. Heidelberg's declarations and Mr. Corlew's affidavit, the Court

is of the opinion that Mr. Matteis' requested hourly rates should be reduced to $400.00 per hour.  The Court finds that $400.00 is a reasonable hourly rate in this legal community for an attorney of Mr. Matteis' experience, given the complexities of this case.  This figure borders on the range Mr. Corlew articulated and falls within the range of hourly rates Mr. Heidelberg, an attorney of comparable experience, normally charges in Mississippi.  Aff. of John G. Corlew [1104-13] at 2; Decl. of C. Maison Heidelberg [1104-9] at 2.  In fixing Mr. Matteis' rate, the Court is cognizant of the fact that "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'" *Hopwood v. State of Tex.*, 236 F.3d 256, 281 (5th Cir. 2000) (quoting *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990)).  The $400.00 per hour rate is also relatively close to the $358.00 hourly rate State Farm says is the average for senior partners in complex commercial litigation cases in Mississippi.  Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 31–32 (citing Aff. of David W. Mockbee [1107-2] at 7).

Having thoroughly reviewed the billing records provided in their entirety, the Court finds that Relators have shown that all of Mr. Matteis' hours billed at both Gilbert (2,702 total hours) and at WMC (1,146.6 hours) were reasonably expended in this litigation.  Multiplying these figures by a reasonable hourly rate of $400.00, results in a lodestar for Mr. Matteis of $1,080,800.00 at Gilbert and $458,640.00 at WMC, for a total lodestar for Mr. Matteis of $1,539,440.00.

*(c)      Attorney Derek Y. Sugimura*

Mr. Sugimura graduated from law school in 2004.  Following two (2) years as a federal law clerk, he began his active practice of law in 2006.  Decl. of Derek Y. Sugimura [1104-12] at 2.  In determining Mr. Sugimura's lodestar, Relators ask the Court to employ the hourly rate of $355.00 charged at his current firm, WMC. Relators present evidence that Mr. Sugimura's customary billing rate for commercial litigation at WMC is $470.00 per hour.  *Id.*  The billing spreadsheet from Gilbert indicates that Mr. Sugimura's hourly rate increased from $400.00 to $425.00 during the time he worked on this case at that firm.

Relators do not offer any evidence of a reasonable rate in this community for Mr. Sugimura, who appears from the record to have been an associate during the majority of this litigation.  State Farm has submitted evidence that the average rates in this community are $262.00 for a junior partner and  $208.00 for an average associate.  Aff. of David W. Mockbee [1107-2] at 13.  Based on the foregoing, and given the absence of evidence on this point from Relators, the Court concludes that a reasonable hourly rate for Mr. Sugimura would be $262.00 per hour given Mr. Sugimura's experience and expertise and the complexities of this case.

The Court further finds that Relators have demonstrated that all of Mr. Sugimura's hours billed were reasonably expended in this litigation, except for one time entry at WMC totaling 0.5 hours and one time entry at Gilbert for 0.1 hours. The time entry at WMC appears on February 26, 2013, and was for "[r]eview lodgings for trial," WMC Billings [1104-4] at 17, while the entry at Gilbert on July

12, 2010, was for "[c]ommunicate with Hyatt hotels re extra bill," Gilbert Billing
[1104-15] at 92.  These charges are not recoverable.  Deleting these two entries from
Relators' submitted hours for Mr. Sugimura results in a total of 641.9 hours
reasonably expended in this litigation while at WMC, and 1,607.4 hours reasonably
expended while at Gilbert.  Multiplying these figures by a reasonable hourly rate of
$262.00 results in a lodestar for Mr. Sugimura of $168,177.80 at WMC and
$421,138.80 at Gilbert, for a total lodestar of $589,316.60.

*(d)    Attorney William E. Copley*

Mr. Copley has actively engaged in the practice of law for nearly 15 years and
is a partner at his law firm.  Decl. of William E. Copley [1104-10] at 2–3.  Mr.
Copley's customary billing rate for commercial litigation is $595.00, but Relators ask
the Court to employ a reduced rate of $445.00 per hour for Mr. Copley.  Relators
have supplied an affidavit of an attorney practicing in this district who opines that
"customary and reasonable rates currently charged by litigation partners in
Mississippi firms and/or regional firms with offices in Mississippi are in the
$400–$500 range."  Aff. of John G. Corlew [1104-13] at 2.  The Court notes that Mr.
Copley has not practiced law for as long as Mr. Heidelberg, who billed his time at a
rate of $375.00 in this case.  Decl. of C. Maison Heidelberg [1104-9] at 2.  State Farm
has presented evidence that the average hourly rates in this community in complex
commercial litigation cases are $262.00 for junior partners and $358.00 for senior
partners.  Aff. of David W. Mockbee [1107-2] at 13.  Based on the foregoing, the

Court finds $358.00 to be a reasonable hourly rate for Mr. Copley and is commensurate with his experience and the complexities of this *qui tam* case.

Having thoroughly reviewed the bills supplied to the Court, the Court finds the 370.1 hours billed by Mr. Copley to have been reasonably expended in this case. Multiplying this figure by a reasonable hourly rate of $358.00 results in a lodestar for Mr. Copley of $132,495.80.

### (e)    Attorney Pamira S. Matteis

Ms. Matteis graduated from law school in 1993, but had engaged in the active practice of law for only seven (7) years at the time she submitted her declaration in this case in 2013.  Decl. of Pamira S. Matteis [1104-11] at 2.  Ms. Matteis' customary billing rate for commercial litigation is $325.00 per hour.  Relators request a $290.00 per hour rate for Ms. Matteis.  Relators do not offer any evidence of a reasonable rate in this community for an attorney with the experience of Ms. Matteis.  Based upon her Declaration, Ms. Matteis' experience would appear to be comparable to that of Mr. Sugimura.  For the reasons stated above with respect to Mr. Sugimura, the Court finds that a reasonable rate in this legal community for Ms. Matteis would also be $262.00 per hour.

The Court finds that all of Ms. Matteis' 133.7 hours billed in this litigation were reasonably expended.  Multiplying Ms. Matteis' $262.00 hourly rate by the 133.7 hours reasonably expended results in a lodestar of $35,029.40.

-34-

(f)     Attorney Timothy Belknap

Mr. Belknap began his legal career in 2012.  Decl. of Timothy M. Belknap

[1104-2] at 2.  Mr. Belknap's customary billing rate for commercial litigation is

$275.00 per hour, but Relators ask the Court to apply a reduced rate of $245.00 per

hour.  Again, Relators do not offer any evidence of a reasonable rate in this

community for an attorney of Mr. Belknap's experience.  State Farm has presented

evidence that the average rates in this community in complex commercial litigation

cases are $208.00 for associates and $124.00 for paralegals.  Aff. of David W.

Mockbee [1107-2] at 13.  Based upon the descriptions in the time entries provided to

the Court, the work for which Mr. Belknap billed appears to resemble paralegal

work.  Much of it involved preparing exhibits and working with vendors preparing

the same for trial.  The Court will therefore reduce the rate charged for Mr.

Belknap's work to $124.00 an hour, which it finds to be a reasonable hourly rate for

the type of work Mr. Belknap was primarily asked to perform in this particular

case.[7]

Relators have demonstrated that all of Mr. Belknap's hours billed were

reasonably expended in this litigation, except for five (5) time entries totaling 45.7

hours.  Relators have not shown that Mr. Belknap's March 22, 25, 26, 27, and 28,

2013, time entries during trial for "Deposition witness preparation" for video

depositions are reasonable, and this time will be excluded from the Court's

_____

[7]This reduction is not intended in any way to reflect negatively upon Mr. Belknap
but is due to the nature of the tasks Mr. Belknap was apparently asked to perform in this
case.

calculations.  The Court therefore determines that Mr. Belknap reasonably

expended 356.7 hours in this litigation at a $124.00 hourly rate, resulting in a total

lodestar of $44,230.80.

### (g)   Attorney C. Maison Heidelberg

Mr. Heidelberg was admitted to practice law in Mississippi in 1993.  Miss.

Bar Lawyer Directory, http://msbar.org/lawyer-directory-search.aspx?searchTerm=

Heidelberg&SearchField=memberLastName (last visited Feb. 11, 2014).  Mr.

Heidelberg practices in the Jackson, Mississippi, area and billed his time in this case

at a rate of $375.00 per hour.  Decl. of C. Maison Heidelberg [1104-9] at 2.  Relators

supplied the affidavit of an attorney also practicing in the Jackson, Mississippi, area

who opined that "customary and reasonable rates currently charged by litigation

partners in Mississippi firms and/or regional firms with offices in Mississippi are in

the $400–$500 range."  Aff. of John G. Corlew [1104-13] at 2.  Based on the

circumstances of this case, the Court finds Relators' requested $375.00 hourly rate

for Mr. Heidelberg to be reasonable.

The Court further finds that Relators have shown that all of Mr. Heidelberg's

hours billed were reasonably expended in this litigation except for two entries

totaling 1.8 hours.  These time entries appear on January 25, 2013, for "Deposition

of Plaintiff Burchfield," and on March 7, 2013, for "Summarize for adjuster as

requested the investigation and information with respect to the peanut company

CONNIE CASE."  HH Bills [1104-6] at 15, 19.  Neither entry appears related to this

case.  Deleting these 1.8 hours from Relators' bills from Mr. Heidelberg results in

614.8 hours reasonably expended by him in this litigation.  Mr. Heidelberg's lodestar therefore is $230,550.00.

### (h)    Attorney Laura K. Barbour

Ms. Barbour was admitted to practice law in Mississippi in 2000, even though she is presently inactive with the Bar Association.  Miss. Bar Lawyer Directory, http://msbar.org/lawyer-directory-search.aspx?searchTerm=Barbour&SearchField= memberLastName (last visited Feb. 12, 2014).  Having reviewed the evidence presented by both sides, which the Court has previously discussed, the Court finds that Ms. Barbour's requested rate of $275.00 is excessive for contract work given that State Farm presented evidence that the average rate in this community for a junior partner is $262.00.  Aff. of David W. Mockbee [1107-2] at 13.  The Court will therefore reduce Ms. Barbour's hourly rate to $262.00 per hour which is commensurate with her experience and is reasonable under the circumstances of this particular case.  Relators have demonstrated that all of Ms. Barbour's hours billed were reasonably expended in this litigation.  The Court therefore determines that Ms. Barbour reasonably expended 23.2 hours in this litigation at a rate of $262.00 per hour, for a total lodestar of $6,078.40.

### (i)    Paralegal Macie E. Sledge

Relators request fees at a rate of $165.00 per hour for Ms. Sledge, a paralegal at HH.  Relators have not submitted any evidence, beyond the Affidavit of Mr. Heidelberg [1104-9] in which he declares that Ms. Sledge's customary billing rate for complex commercial litigation is $165 per hour, to support whether this is a

reasonable rate in this community.  State Farm has presented evidence that a reasonable paralegal rate in this area is $124.00 per hour.  Decl. of David W. Mockbee [1107-2] at 7, 13.  Based upon the record before it, the Court finds that a rate of $124.00 would be a reasonable rate for a paralegal of Ms. Sledge's experience and education.

Relators submitted bills for Ms. Sledge's work totaling 266.7 hours.  The Fifth Circuit has held that paralegal work can be recovered as attorneys' fees if the work is legal in nature, rather than clerical.  *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).  The Court finds that all of Ms. Sledge's time entries represent time reasonably expended on legal work in this litigation, except for one entry for 0.5 hours on March 14, 2013, for "Filing Tim's Pro Hac documents and preparing correspondence to clerk concerning same."  HH Bills [1104-6] at 19.  This entry reflects work which appears to be more clerical in nature and thus is not recoverable as attorneys' fees.  *See Vela*, 276 F.3d at 681.  At least one district court in this Circuit has held that time spent seeking admission *pro hac vice* is not recoverable as costs or fees.  *Davis v. Perry*, No. SA-11-CA-788-OLG-JES-XR, - - - F. Supp. 2d, 2014 WL 106990, *24 (W.D. Tex. Jan. 8, 2014).  Deleting this 0.5 hours results in 266.2 hours of legal work reasonably expended by Ms. Sledge in this litigation.  Multiplying a reasonable hourly rate of $124.00 by the total hours expended results in a lodestar for Ms. Sledge of $33,008.80.

*(j)      Summary of Legal Fees*

In sum, the Court finds that the total number of hours reasonably expended in this matter by Relators' attorneys and paralegals was 7,862.6 hours. After excluding all time that is excessive, duplicative, or inadequately documented, and after taking into consideration all appropriate reductions, the Court calculates the total lodestar for Relators' recoverable attorneys' fees in this matter as $2,610,149.80. The Court has reviewed the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), in determining the reasonableness of attorneys' fees, and finds that no further adjustments are warranted. The Court therefore finds that Relators are entitled to recover reasonable attorneys' fees in the total amount of $2,610,149.80. The following charts summarize the Court's conclusions.

| Gilbert, LLP | | | |
|---|---|---|---|
| **Timekeeper, Position** | **Reasonable Hourly Rate** | **Hours Reasonably Expended** | **Lodestar** |
| **August J. Matteis, Attorney** | $400.00 | 2,702.0 | $1,080,800.00 |
| **Derek Y. Sugimura, Attorney** | $262.00 | 1,607.4 | $421,138.80 |
| **Unknown Timekeepers** | $0 | 0 | $0 |
| **TOTAL** | | 4,309.4 | $1,501,938.80 |

| Weisbrod Matteis & Copley PLLC | | | |
|---|---|---|---|
| Timekeeper, Position | Reasonable Hourly Rate | Hours Reasonably Expended | Lodestar |
| August J. Matteis, Attorney | $400.00 | 1,146.6 | $458,640.00 |
| Derek Y. Sugimura, Attorney | $262.00 | 641.9 | $168,177.80 |
| William E. Copley, Attorney | $358.00 | 370.1 | $132,495.80 |
| Pamira S. Matteis, Attorney | $262.00 | 133.7 | $35,029.40 |
| Timothy M. Belknap, Attorney | $124.00 | 356.7 | $44,230.80 |
| TOTAL | | 2,649.0 | $838,573.80 |

| Heidelberg Harmon PLLC | | | |
|---|---|---|---|
| Timekeeper, Position | Reasonable Hourly Rate | Hours Reasonably Expended | Lodestar |
| C. Maison Heidelberg, Attorney | $375.00 | 614.8 | $230,550.00 |
| Laura K. Barbour, Attorney | $262.00 | 23.2 | $6,078.40 |
| Macie E. Sledge, Paralegal | $124.00 | 266.2 | $33,008.80 |
| TOTAL | | 906.5 | $269,637.20 |

The Court is cognizant of the fact that the total award of attorneys' fees in this case, $2,610,149.80, exceeds the Government's award of $750,000.00 treble damages[8] and the $8,250.00 civil penalty assessed against State Farm. However,

---

[8]The jury determined that the Government suffered damages under the FCA in connection with the McIntosh flood claim in the amount of $250,000.00. Special Verdict Form [1092] at 3. Pursuant to 31 U.S.C. § 3729(a), a person who violates that statute is liable to the United States Government for a civil penalty "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). Based on the jury verdict, the Court will treble the Government's $250,000.00 damages in accordance with this statute. *See id.*; *see also Morse Diesel Intern., Inc. v. United States*, 79 Fed. Cl. 116, 126 (2007) (holding that Congress has "mandated the imposition of treble damages" under the FCA).

this fact alone does not render the award excessive.  *See, e.g., Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 354–55 (5th Cir. 2001) (applying Texas law and holding that the disproportion alone of an attorneys' fee award, which was more than three times the treble damages award and more than nine times the actual damages, does not render the award of attorneys' fees excessive).  This matter has been pending for nearly eight (8) years, and Relators' current counsel have litigated this case for over five and a half (5 ½) years.  During that time, counsel have responded to numerous dispositive motions and voluminous pleadings and spent eleven (11) days trying the case to verdict.  Under the circumstances of this case, and for the reasons stated earlier, the Court is persuaded that an attorneys' fee award for Relators in the amount of $2,610,149.80 is reasonable.

        b.   <u>Expenses</u>

Relators seek to recover a total of $779,174.07 in litigation expenses incurred by the attorneys who have represented them since July 2008.  Relators have submitted documentation of their expenses.  They request $649,843.67 in expenses incurred by Gilbert; $123,594.56 incurred by WMC; and $5,735.84 incurred by HH.

State Farm responds that Relators' requested expenses are "excessive and inadequately supported."  Def.'s Mem. in Opp'n to Relators' Mot. [1108] at 25.  State Farm argues that most of the out-of-state travel expenses were unnecessary because Mississippi counsel was available to Relators.  *Id.* at 32.  State Farm also maintains that some of the expenses for which Relators seek reimbursement "are

classic examples of double dipping since they are already a component of the attorneys' hourly rates or they are plainly unauthorized." *Id.* at 33.  State Farm cites as examples in-office meals for Relators' counsel, office air conditioning charges, and reimbursement of fees for Kerri Rigsby's credit card.  *Id.*

### (1)   Legal Standard

The parties have not directed the Court to any binding Fifth Circuit precedent regarding the standard to employ in awarding a relator expenses under the FCA.  In an FCA case where expenses were awarded pursuant to 31 U.S.C.A. § 3730(d)(4), the United States District Court for the Eastern District of New York explained that expenses which are not recoverable as taxable costs

> are shifted to the losing party in a case such as this where a statute provides for the shifting of attorneys' fees, as long as these costs are identifiable, out-of-pocket expenses, as opposed to non-recoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate.

*Pugach v. M&T Mortg. Corp.*, 564 F. Supp. 2d 153, 165 (E.D.N.Y. 2008) (citation omitted).

The Court finds this reasoning persuasive and will exclude "routine office overhead" from Relators' expense award.  *Id.*

### (2)   Discussion

The Court has reviewed the expense reports submitted by each law firm and will address the expenses incurred by each firm in turn.

### (a)   Gilbert LLP

Relators request reimbursement of expenses incurred by Gilbert in the amount of $649,843.67 and have submitted a spreadsheet of expenses for Gilbert.

Gilbert Expenses [1104-16] *passim*.  Due to the sparse detail contained in the Gilbert expenses spreadsheet, the Court finds that the majority of the expenses sought lack adequate support and should be excluded.  Many of the descriptions are insufficient to inform the Court whether some of the expenses were reasonable or even related to this case.  The Court cannot discern from Gilbert's submission the nature of some of the expenses claimed and is unable to conclude that they were reasonably and necessarily incurred.

As stated earlier, the Court also excludes all overhead expenses which are normally absorbed into the attorney's hourly rate.  *See Pugach*, 564 F. Supp. 2d at 165.  These include in-office or other "business" meals and local transportation or parking charges which appear to have been incurred while the attorneys were not traveling, as well as office air conditioning costs.  The spreadsheet additionally details payments made for messenger and delivery services to law firms who represented other Defendants in this case who were dismissed before trial.  Those charges will not be assessed against State Farm.

The Gilbert spreadsheet also includes fees for some expert witnesses who were not called as witnesses at trial or even listed on the witness list in the Second Amended Pretrial Order [1071].  At least one of these experts was excluded from testifying by the Court. *See* Order [823] (excluding the testimony of John A. Fowler).  Relators have not adequately supported these requests or explained why they would be recoverable, and the expert witness fees and related expenses for these experts will be excluded.

As for the professional service fees paid by Gilbert to HH for serving as local counsel, the Court has not been provided the billing records supporting HH's charges to Gilbert. The Court would apply the same standard to such a reimbursement request as it would apply to a request for attorneys' fees. Without more detail regarding these fees, including what tasks were performed, for how long, and by whom, the Court cannot ascertain whether the requested fee reimbursements are reasonable. Thus, the Court will exclude Gilbert's requests for reimbursement of HH professional service fees.

Subject to the foregoing, and having thoroughly reviewed Gilbert's spreadsheet of expenses, the Court finds that the following expenses from Gilbert are recoverable.

| Accounting Date[9] | Cost Code Descr [sic] | Payee[10] | Description[11] | Amount |
|---|---|---|---|---|
| 01-10-2011 | Messenger & Delivery | | AUGUST J. MATTEIS, J - COURTYARD BY MARRIOTT | $59.44 |
| 01-10-2011 | Messenger & Delivery | | AUGUST J. MATTEIS, J - COURTYARD BY MARRIOTT | $5.33 |
| 01-19-2010 | Messenger & Delivery | | Gilbert LLP to August Matteis (Torrington CT) - 12.23.09 | $14.99 |
| 01-22-2010 | Messenger & Delivery | United Parcel Service | Gilbert LLP to Mr. Louis G. Fey, Jr. - 1.14.09 | $18.60 |

---

[9]Gilbert's expense spreadsheet [1104-16] is not arranged in chronological order, but rather is organized by month, day, and year. For ease of reference, the Court will employ the same ordering method used by Gilbert.

[10]A blank for the payee indicates that this column was also left blank on Gilbert's spreadsheet [1104-16].

[11]The Court has quoted verbatim each of the descriptions from Gilbert's expense submission [1104-16].

| 01-22-2010 | Witness Fees | Insurance Expert Network | Expert: Louis Fey Jr. | $3,000.00 |
|---|---|---|---|---|
| 01-26-2011 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $516.50 |
| 01-26-2011 | Travel - Car Rental | Derek Sugimura | Travel - Car Rental - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $387.38 |
| 01-26-2011 | Travel - Lodging | Derek Sugimura | Travel - Lodging - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $133.28 |
| 01-26-2011 | Travel - Meals | Derek Sugimura | Travel - Meals - Dinner with A. Matteis, B. Davidson, and M. Martinez - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $164.00 |
| 01-26-2011 | Travel - Meals | Derek Sugimura | Travel - Meals - Lunch with B. Davidson and M. Martinez -Derek Sugimura - Gulfport MS -Attend Hearing - 1.11-12.11 | $97.38 |
| 01-26-2011 | Travel - Meals | Derek Sugimura | Travel - Meals - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $124.05 |
| 01-26-2011 | Travel - Miscellan-eous | Derek Sugimura | Travel - Miscellaneous - Gas - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $15.02 |
| 01-26-2011 | Travel - Parking | Derek Sugimura | Travel - Parking - Derek Sugimura - Gulfport MS - Attend Hearing - 1.11-12.11 | $24.00 |
| 01-28-2010 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Gulfport MS - Meeting with experts and witnesses - 1.13-16.10 | $99.68 |
| 01-28-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - Dinner with M. Heidelberg (Local Counsel) and J. Fowler (Expert) - August Matteis - Gulfport MS - Meeting with experts and witnesses - 1.13-16.10 | $206.94 |

| 01-28-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Gulfport MS - Meeting with experts and witnesses - 1.13-16.10 | $48.33 |
|---|---|---|---|---|
| 01-28-2010 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Gulfport MS - Meeting with experts and witnesses - 1.13-16.10 | $600.00[12] |
| 01-28-2011 | Profession-al Service Fees | Butler, Snow, O'Mara, Stevens, & Cannada, PLLC | CD of Photographs re McPeeks pursuant to subpoena and affidavit | $12.00 |
| 01-28-2011 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - Gulfport MS/ New Orleans LA - Hearing and Meeting - 1.10-14.11 | $204.30 |
| 01-28-2011 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - Gulfport MS/ New Orleans LA - Hearing and Meeting - 1.10-14.11 | $42.20 |
| 01-28-2011 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - Gulfport MS/ New Orleans LA - Hearing and Meeting - 1.10-14.11 | $600.00[13] |
| 02-24-2010 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - Hotel local taxes; room was compted [sic] - August Matteis - Gulfport MS - Meeting with experts and witnesses - 1.13-16.10 | $37.44 |
| 02-25-2011 | Depositions/ Transcripts | Kati M. Vogt, RMR, CRR | Transcript: Hearing 1.12.11 | $108.00 |
| 02-26-2010 | Duplicating | Merlin Law Group, P.A. | Copy of Documents produced by McIntoshes to State Farm | $497.02 |
| 02-26-2010 | Professional Service Fee | R. Ralph Sinno, Ph.D. | Professional Services: 12.12.09-1.30.10 - Expert Fees | $4,650.00 |

[12]Relators request mileage reimbursement for Mr. Matteis, presumably from Washington, D.C., to Gulfport, Mississippi, in the amount of $1,150.00. The Court does not find this request reasonable in that airfare requested by other attorneys in this case for the same route is roughly half this amount. The Court will therefore reduce Relators' requested mileage reimbursement for Mr. Matteis to $600.00, which is comparable to the expenses submitted by other of Relators' counsel for airfare to, and ground transportation in, Gulfport, Mississippi.

[13]The Court again reduces the requested milage reimbursement for Mr. Matteis, from $1,255.11 to $600.00.

| | | | | |
|---|---|---|---|---|
| 03-04-2011 | Travel - Lodging | Business Card | Travel - Lodging - August Matteis - Gulfport MS - 1.1-12.11 | $356.16 |
| 03-04-2011 | Witness Fees | Insurance Expert Network | Expert Witness: Louis G. Fey, Jr.: 1.22-2.21.11 - Review depositions and finalize review of deposition testimony | $4,875.00 |
| 03-10-2010 | Messenger & Delivery | | Robert C. Galloway - Butler Snow O'Mara et al | $15.85 |
| 03-15-2011 | Messenger & Delivery | | Mr. Louis Fey Jr. | $9.45 |
| 03-31-2009 | Depositions/ Transcripts | Dusty Burdine, CSR | Transcript: Pamela McIntosh | $568.00 |
| 03-31-2009 | Depositions/ Transcripts | Dusty Burdine, CSR | Deposition: Thomas McIntosh | $980.00 |
| 04-09-2009 | Messenger & Delivery | FedEx | Gilbert LLP to Maison Heidelberg - 4.6.10 | $71.53 |
| 04-16-2010 | Depositions/ Transcripts | Amy Massey & Associates | Timothy Marshall & Paul O'Connor: 4.4-5.10 | $269.40 |
| 04-19-2010 | Messenger & Delivery | | Paralegal - Macie Sledge | $57.67 |
| 04-22-2010 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Bloomington IL - Take depositions of J. Guevara and D. Carrigan - 4.13-15.10 | $173.59 |
| 04-22-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Bloomington IL - Take depositions of J. Guevara and D. Carrigan - 4.13-15.10 | $26.78 |
| 04-22-2010 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Bloomington IL - Take depositions of J. Guevara and D. Carrigan - 4.13-15.10 | $600.00[14] |
| 04-28-2010 | Depositions/ Transcripts | Advantage Reporting Service | Deposition of Dan Carrigan and Video depositon [sic] of Juan Lopez Guevara | $2,101.00 |

---

[14]While the destination of this trip is Bloomington, Illinois, for the reasons stated earlier, the Court reduces Relators' requested mileage reimbursement for Mr. Matteis from $773.86 to $600.00.

| 04-30-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - Butler Snow O'Mara Stevens Cannada - 4.20.09 | $5.14 |
|---|---|---|---|---|
| 04-30-2010 | Messenger & Delivery | Capitol Process Service, Inc. | Courier Service / Service of Process | $105.00 |
| 05-08-2009 | Professional Service Fees | R. Ralph Sinno, Ph.D. | Professional Service Fees - 3.15-4.15.09 | $7,987.00 |
| 05-13-2009 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Jackson MS/ Laurel MS -Depositions (King/Kelly) - 5.4-7.09 | $397.42 |
| 05-13-2009 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Jackson MS/ Laurel MS - Depositions (King/Kelly) - 5.4-7.09 | $600.00[15] |
| 05-13-2009 | Travel - Parking | August J. Matteis Jr. | Travel - Parking - August Matteis - Jackson MS/ Laurel MS - Depositions (King/Kelly) - 5.4-7.09 | $16.50 |
| 05-13-2009 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Jackson MS - Depositions - 4.25-29.10 | $548.91 |
| 05-13-2009 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Jackson MS - Depositions - 4.25-29.10 | $97.77 |
| 05-13-2009 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Jackson MS - Depositions - 4.25-29.10 | $600.00[16] |
| 05-14-2010 | Depositions/ Transcripts | Conner Reporting | Perry & Blalock [sic] Depositon [sic] | $1,770.00 |
| 05-15-2009 | Depositions/ Transcripts | Video South | Depositions/Transcripts - Video of A. King / J. Kelly | $410.00 |
| 05-15-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - GO to Kerri Rigsby - 5.1.09 | $38.65 |
| 05-15-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - GO to Dr. Pat Fitzpatrick -5.4.09 | $26.05 |

---

[15]The Court reduces the requested reimbursement for mileage from $989.80 to $600.00.

[16]The Court reduces the requested reimbursement for mileage from $1,050.15 to $600.00.

| 05-15-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - GO to Office of Dr. Ralph Sinno - 5.4.09 | $26.05 |
|---|---|---|---|---|
| 05-15-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - GO to Cori Rigsby - 5.4.09 | $60.90 |
| 05-15-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - UPS - GO to Maison Heidelberg P.A. - 5.4.09 | $103.25 |
| 05-15-2009 | Supplies | Summit Computers | Supplies - Equipment for hearing in MS | $120.50 |
| 05-17-2010 | Depositions/ Transcripts | Advantage Reporting Service | Depositions of Jim Damm taken on 5.6.2010 | $767.00 |
| 05-20-2010 | Travel - Car Rental | August J. Matteis Jr. | Travel - Car Rental - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $502.17 |
| 05-20-2010 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $318.00 |
| 05-20-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $386.98 |
| 05-20-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - Dinner with clients (Rigsby) - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $353.88 |
| 05-20-2010 | Travel - Parking | August J. Matteis Jr. | Travel - Parking - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $95.00 |
| 05-20-2010 | Travel - Telephone | August J. Matteis Jr. | Travel - Telephone at Hotel - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $19.34 |
| 05-20-2010 | Travel - Train Fare | August J. Matteis Jr. | Travel - Train Fare - August Matteis - Gulfport MS - Depositions - 5.2-7.10 | $400.00 |
| 05-21-2010 | Messenger & Delivery | Interstate Express | Gilbert LLP to Fed Emergency Management - 5.4.10 | $6.50 |
| 05-22-2009 | Depositions/ Transcripts | Lori R. Migues, SRC | Depositions/Transcripts - John Kelly | $1,536.60 |
| 05-24-2010 | Messenger & Delivery | | August J. Matteis, J - The Island View Casino Resort | $36.28 |
| 05-26-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Depositon [sic] of Cody Perry (4/27/10 and Terry Blalock (4/28/10) | $2,115.95 |

| 05-26-2010 | Depositions/ Transcripts | Advantage Reporting Service | Deposition/Transcript of Mark Wilcox | $785.50 |
|---|---|---|---|---|
| 05-26-2011 | Conference Call | | Conference call moderated by August Matteis | $32.61 |
| 05-29-2009 | Depositions/ Transcripts | Elizabeth Bost Simpson, RDR, CRR | Depositions/Transcripts - Alexis King | $2,145.95 |
| 05-29-2009 | Professional Service Fees | R. Ralph Sinno, Ph.D. | Professional Service Fees 4.16-5.10.09 | $12,900.00 |
| 06-03-2009 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Gulfport MS - Attend Rigsby hearing - 5.18-23.09 | $405.90 |
| 06-03-2009 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Memphis TN - Interview Dr. R. Sinno - 5.13-14.09 | $1,164.70 |
| 06-03-2009 | Travel - Car Rental | Derek Sugimura | Travel - Car Rental - Derek Sugimura - Gulfport MS - Attend Rigsby hearing - 5.18-23.09 | $22.95 |
| 06-03-2009 | Travel - Internet | August J. Matteis Jr. | Travel - Internet - August Matteis - Gulfport MS - Attend prehearing conference (5/13) and hearing (5/20-22) - 5.12-23.09 | $14.95 |
| 06-03-2009 | Travel - Internet | Derek Sugimura | Travel - Internet - Derek Sugimura - Memphis TN - Interview Dr. R. Sinno - 5.13-14.09 | $3.95 |
| 06-03-2009 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Gulfport MS - Attend prehearing conference (5/13) and hearing (5/20-22) - 5.12-23.09 | $124.26 |
| 06-03-2009 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Gulfport MS - Attend prehearing conference (5/13) and hearing (5/20-22) - 5.12-23.09 | $87.08 |
| 06-03-2009 | Travel - Meals | Derek Sugimura | Travel - Meals - Dinner with B. Davidson - Derek Sugimura - Gulfport MS - Attend Rigsby hearing - 5.18-23.09 | $66.06 |

| 06-03-2009 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Gulfport MS - Attend prehearing conference (5/13) and hearing (5/20-22) - 5.12-23.09 | $600.00[17] |
| 06-03-2009 | Travel - Miscellaneous | Derek Sugimura | Travel - Miscellaneous - Gas - Derek Sugimura - Gulfport MS - Attend Rigsby hearing - 5.18-23.09 | $7.88 |
| 06-03-2009 | Travel - Taxi Fare | Derek Sugimura | Travel - Taxi Fare - Derek Sugimura - Gulfport MS - Attend Rigsby hearing - 5.18-23.09 | $32.00 |
| 06-03-2009 | Travel - Taxi Fare | Derek Sugimura | Travel - Taxi Fare - Derek Sugimura - Memphis TN - Interview Dr. R. Sinno - 5.13-14.09 | $32.00 |
| 06-04-2010 | Witness Fees | Insurance Expert Network | Expert Witness: Louis G. Fey, Jr. | $2,400.00 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to USDC, S. District of MS - 5.26.09 | $43.45 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to US District Court - 5.13.09 | $96.55 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Kerri Rigsby - 5.8.09 | $22.20 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Courtyard Marriott at Gulfport - 5.14.09 | $181.00 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Courtyard Marriott at Gulfport - 5.14.09 | $98.15 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Courtyard Marriott at Gulfport - 5.14.09 | $98.15 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Courtyard Marriott at Gulfport - 5.12.09 | $162.75 |
| 06-11-2009 | Messenger & Delivery | United Parcel Service | GO to Courtyard Marriott at Gulfport - 5.12.09 | $156.65 |
| 06-11-2009 | Professional Service Fees | R. Ralph Sinno, Ph.D. | Professional Srv.: 5.10-24.09 | $24,870.00 |
| 06-11-2010 | Messenger & Delivery | | Rena White - USDC, S. Dist of Mississippi | $16.15 |

[17]The Court reduces Relators' request for mileage reimbursement for Mr. Matteis from $1,065.84 to $600.00.

| 06-11-2010 | Messenger & Delivery | | Amanda B. Barbour, E - Butler Snow O'Mara Stevens Cannada | $15.06 |
|---|---|---|---|---|
| 06-11-2010 | Messenger & Delivery | Trans Time Express | Gilbert LLP to US District Court - 5.28.10 | $45.47 |
| 06-11-2010 | Messenger & Delivery | Trans Time Express | Gilbert LLP to FIMA [sic] - 5.28.10 | $24.32 |
| 06-11-2010 | Travel | Insurance Expert Network | Travel Fees re Expert Witness: Louis G. Fey, Jr. - 6.3-4.10 | $5,147.11 |
| 06-12-2009 | Professional Service Fees | Dr. Keith G. Blackwell | Meteorological Expert - 3.23-5.22.09 | $11,417.27 |
| 06-18-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Video Deposition: Linda Mucha | $624.55 |
| 06-18-2010 | Depositions/ Transcripts | CDSC Video Productions | Video Deposition: Juan Guevara | $1,039.17 |
| 06-18-2010 | Messenger & Delivery | Interstate Express | Gilbert LLP to District Court (DC) - 6.11.10 | $14.00 |
| 06-18-2010 | Process Servers | Same Day Process Service, Inc. | Process Server: Brian Ford | $75.00 |
| 06-18-2010 | Professional Service Fees | David J. Favre Sr. | Expert Fees: 5.22-6.2.10 | $7,026.57 |
| 06-19-2009 | Depositions/ Transcripts | Dusty Burdine, CSR | Depositions/Transcripts - McIntosh, Marion, and Renfroe Cases | $5,074.00 |
| 06-19-2009 | Depositions/ Transcripts | Video South | Depositions/Transcripts - Video Deposition: Alexis King | $250.00 |
| 06-19-2009 | Messenger & Delivery | United Parcel Service | GO to Dave Favre, Sr. - 4.28.09 | $26.05 |
| 06-24-2010 | Messenger & Delivery | | Jeffrey S. Bucholtz - United States Department of Justice | $11.12 |
| 06-24-2010 | Messenger & Delivery | | Jeffery A. Walker - Butler Snow | $16.13 |
| 06-24-2010 | Messenger & Delivery | | Michael B. Beers, Es - Beers, Anderson PC | $16.13 |
| 06-24-2010 | Messenger & Delivery | | C. Maison Heidelberg - MAISON HEIDLEBERG PA | $16.13 |

| 06-24-2010 | Messenger & Delivery | | Robert Galloway - Butler Snow | $16.13 |
|---|---|---|---|---|
| 06-24-2010 | Messenger & Delivery | | Don Burkhalter, Esq. - United States Attorney for Mississi [sic] | $16.13 |
| 06-24-2010 | Messenger & Delivery | | Gues: [sic] Derek Sugimura - The Hotel Minneapolis | $128.04 |
| 06-24-2010 | Messenger & Delivery | | Brian Ford - Brian Ford | $21.06 |
| 06-24-2010 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Jackson MS - Defend depositions - 5.31-6.3.10 | $679.80 |
| 06-24-2010 | Travel - Car Rental | Derek Sugimura | Travel - Car Rental - Derek Sugimura - Jackson MS - Defend depositions - 5.31-6.3.10 | $283.95 |
| 06-24-2010 | Travel - Lodging | Derek Sugimura | Travel - Lodging - Derek Sugimura - Jackson MS - Defend depositions - 5.31-6.3.10 | $470.88 |
| 06-24-2010 | Travel - Meals | Derek Sugimura | Travel - Meals - Derek Sugimura - Jackson MS - Defend depositions - 5.31-6.3.10 | $129.71 |
| 06-24-2010 | Travel - Taxi Fare | Derek Sugimura | Travel - Taxi Fare - Derek Sugimura - Jackson MS - Defend depositions - 5.31-6.3.10 | $40.00 |
| 06-25-2010 | Messenger & Delivery | | Cori Rigsby - Cori Rigsby | $18.88 |
| 06-25-2010 | Messenger & Delivery | | Kerri Rigsby - KERRI RIGSBY | $18.88 |
| 06-25-2010 | Messenger & Delivery | | Michael B. Beers, Es - Beers, Anderson PC | $16.13 |
| 06-25-2010 | Messenger & Delivery | | Joyce R. Branda, Esq - United States Department of Justice | $11.12 |
| 06-25-2010 | Messenger & Delivery | | Don Burkhalter, Esq. - United States Attorney for Mississi [sic] | $16.13 |
| 06-25-2010 | Messenger & Delivery | | Gilbert LLP to FEMA - 6.1.10 | $12.16 |
| 06-25-2010 | Messenger & Delivery | | Gilbert LLP to FEMA - 6.1.10 | $34.10 |
| 06-25-2010 | Messenger & Delivery | | Gilbert LLP to US District Court (Alex) - 6.7.10 | $56.26 |

| 06-25-2010 | Process Servers | MLQ Attorney Services | Serve Subpoena: Brian Ford | $501.74 |
|---|---|---|---|---|
| 06-26-2009 | Process Servers | One Legal LLC | Process Servers - State Farm Fire & Cas. Co. | $959.00 |
| 06-26-2009 | Witness Fees | Pat Fitzpatrick | Witness Fees - Pat Fitzpatrick - Expert | $1,200.00 |
| 06-30-2010 | Conference Call | Soundpath Conferencing | Conference Call - Derek Sugimura - 4.29.10 | $9.29 |
| 06-30-2010 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Minneapolis MN - Attend Deposition - 6.15-18.10 | $1,165.40 |
| 06-30-2010 | Travel - Lodging | Derek Sugimura | Travel - Lodging - Derek Sugimura - Minneapolis MN - Attend Deposition - 6.15-18.10 | $677.01 |
| 06-30-2010 | Travel - Meals | Derek Sugimura | Travel - Meals - Dinner with B. Davidson - Derek Sugimura - Minneapolis MN - Attend Deposition - 6.15-18.10 | $121.25 |
| 06-30-2010 | Travel - Meals | Derek Sugimura | Travel - Meals -Derek Sugimura - Minneapolis MN - Attend Deposition - 6.15-18.10 | $117.54 |
| 06-30-2010 | Travel - Taxi Fare | Derek Sugimura | Travel - Taxi Fare - Derek Sugimura - Minneapolis MN - Attend Deposition - 6.15-18.10 | $143.00 |
| 07-02-2010 | Depositions/ Transcripts | Paradigm Digital Videography | Video Deposition of Jody Prince and Michael Ferier | $1,113.75 |
| 07-02-2010 | Depositions/ Transcripts | Paradigm Digital Videography | Video Deposition of Lisa Wachter and John Conser | $1,186.25 |
| 07-02-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Louis G. Fey, Jr. | $938.86 |
| 07-02-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of David J. Favre, Sr. | $1,224.89 |
| 07-02-2010 | Messenger & Delivery | | Cheryl Ross - Heidelberg Harmon PLLC | $16.13 |
| 07-14-2010 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $258.40 |

| 07-14-2010 | Travel - Car Rental | Derek Sugimura | Travel - Car Rental - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $78.06 |
|---|---|---|---|---|
| 07-14-2010 | Travel - Lodging | Derek Sugimura | Travel - Lodging - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $104.39 |
| 07-14-2010 | Travel - Meals | Derek Sugimura | Travel - Meals - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $34.00 |
| 07-14-2010 | Travel - Miscellan-eous | Derek Sugimura | Travel - Miscellaneous - Inflight Internet Charges - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $9.90 |
| 07-14-2010 | Travel - Taxi Fare | Derek Sugimura | Travel - Taxi Fare - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $135.00 |
| 07-14-2010 | Travel - Taxi Fare | Derek Sugimura | Travel - Train Fare - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $19.00 |
| 07-14-2010 | Travel - Train Fare | Derek Sugimura | Travel - Train Fare - Metro - Derek Sugimura - Huntsville AL - Deposition of David Haddock - 6.29-30.10 | $1.60 |
| 07-15-2009 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Gulfport MS - Attend prehearing conference (5/13) and hearing (5/20-22) - 5.12-23.09 | $39.30 |
| 07-16-2010 | Depositions/ Transcripts | Elizabeth Bost Simpson, RDR, CRR | Video Deposition of David Randel | $1,049.50 |
| 07-23-2010 | Depositions/ Transcripts | Pritchard Production's Video Visions, Inc. | Deposition of David L. Haddock: 6.30.10 | $556.25 |
| 07-23-2010 | Depositions/ Transcripts | Conner Reporting | Videotaped Deposition of Mark Watson | $305.00 |
| 07-23-2010 | Depositions/ Transcripts | Elizabeth Bost Simpson, RDR, CRR | Deposition of Stephan Hinkle | $950.65 |

| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Deposition of David Maurstad | $2,423.10 |
|---|---|---|---|---|
| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Videotaped Deposition of David Maurstad | $650.00 |
| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Deposition of James Shortley | $1,721.20 |
| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Videotaped Deposition of James Shortley | $400.00 |
| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Videotaped Deposition of Gerald Waytowich | $1,672.30 |
| 07-23-2010 | Depositions/ Transcripts | TSG Reporting | Deposition of Gerald Waytowich | $400.00 |
| 07-23-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Kerri Rigsby: 6.24.10 | $2,153.25 |
| 07-23-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Robert Kochan: 6.30.10 | $1,394.95 |
| 07-23-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Elizabeth Jones | $1,384.35 |
| 07-23-2010 | Depositions/ Transcripts | Elizabeth Gallo Court Reporting | Transcript of Jesse Brian Ford | $2,059.66 |
| 07-23-2010 | Depositions/ Transcripts | Elizabeth Bost Simpson, RDR, CRR | Videotaped Deposition of Kurtis Gurley: 6.9.10 | $1,176.40 |
| 07-23-2010 | Depositions/ Transcripts | Elizabeth Bost Simpson, RDR, CRR | Videotaped Deposition of Charlene Bosarge: 6.25.10 | $520.30 |
| 07-28-2010 | Depositions/ Transcripts | Cleeton Davis Court Reporters, LLC | Transcript of Mark Drain | $770.13 |
| 07-28-2010 | Depositions/ Transcripts | Derek Sugimura | Transcript of David Randel | $506.32 |
| 07-28-2010 | Depositions/ Transcripts | Derek Sugimura | Deposition of David Randel - 7.8.10 | $200.00 |
| 07-30-2010 | Conference Call | Soundpath Conferencing | Conference Call - Derek Sugimura - 6.11.10 | $18.18 |

| 08-05-2008 | Conference Call | AT&T TeleConference Services | Telephone - Conference Call - AT&T TeleConference Services - August Matteis | $85.12 |
|---|---|---|---|---|
| 08-06-2010 | Conference Call | Soundpath Conferencing | Conference Call - Derek Sugimura - 7.12.10 | $11.75 |
| 08-06-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Transcript of Thomas McIntosh deposition | $634.20 |
| 08-06-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Deposition of Gary Dailey | $1,008.30 |
| 08-06-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Deposition of Robert Dean | $443.35 |
| 08-06-2010 | Court Reporter | Elizabeth Bost Simpson, RDR, CRR | Deposition of Mark Watson | $429.05 |
| 08-06-2010 | Depositions/ Transcripts | Advantage Reporting Service | Transcript of Jimm Damm Depositon - 5.6.2010 | $797.00 |
| 08-13-2009 | Professional Service Fees | David J. Favre Sr. | Professional Srv: March-May 2009 | $13,650.00 |
| 08-13-2009 | Professional Service Fees | Dr. Keith G. Blackwell | Professional Service Fees - Expert | $1,035.12 |
| 08-15-2008 | Conference Call | AT&T TeleConference Services | Telephone - Conference Call - AT&T TeleConference Services - August Matteis | $169.27 |
| 08-15-2008 | Conference Call | AT&T TeleConference Services | Telephone - Conference Call - AT&T TeleConference Services - Derek Sugimura | $68.46 |
| 08-20-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Rex Deloach | $725.85 |
| 08-20-2010 | Depositions/ Transcripts | National Court Reporters, Inc. | Deposition of Juan Guevara | $882.32 |
| 08-27-2008 | Travel - Airfare | August J. Matteis Jr. | Travel - Airfare - August J. Matteis Jr. - Fee from Washington DC to Mississippi for deposition - Flight was cancelled due to hurricane - 8.27.08 | $812.01 |

| 08-27-2010 | Messenger & Delivery | | Kerri Rigsby Cambre - Kerri Rigsby Cambre | $11.00 |
|---|---|---|---|---|
| 09-01-2010 | Travel - Lodging | August J. Matteis Jr. | Travel - Lodging - August Matteis - Nashville TN / Ridgeland MS - Depositions - 6.21-26.10 | $783.53 |
| 09-01-2010 | Travel - Meals | August J. Matteis Jr. | Travel - Meals - August Matteis - Nashville TN / Ridgeland MS - Depositions - 6.21-26.10 | $366.97 |
| 09-01-2010 | Travel - Mileage | August J. Matteis Jr. | Travel - Mileage - August Matteis - Nashville TN / Ridgeland MS - Depositions - 6.21-26.10 | $600.00[18] |
| 09-15-2010 | Travel - Airfare | Derek Sugimura | Travel - Airfare - Derek Sugimura - Canceled Airfare re Trip to Gulfport MS - 9.9.10 | $231.90 |
| 10-15-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Thomas McIntosh (5/5/10) and Pamela McIntosh (5/6/10) | $1,373.17 |
| 10-29-2010 | Messenger & Delivery | | Amanda Barbour - Butler Snow | $14.61 |
| 11-19-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of Thomas McIntosh: 5/5/10 and Pamela McIntosh: 5/6/10 | $627.94 |
| 11-19-2010 | Depositions/ Transcripts | One Stop Depositions LLC | Deposition of John A Fowler: 6.3.2010 | $247.94 |
| 11-19-2010 | Messenger & Delivery | | Honorable J.T. Nobli [sic] - United States District Court | $15.91 |
| 11-19-2010 | Messenger & Delivery | | Honorable Robert H. [sic] - United States District Court | $15.91 |
| 11-20-2009 | Depositions/ Transcripts | Teri Norton, RMR, FCRR | Trail [sic] transcript: Bossier v. State Farm - 11.2-12.09 | $1,106.50 |
| 12-10-2009 | Conference Call | AT&T TeleConference Services | Conference Call - August Matteis - 10.29.09 | $223.11 |
| 12-16-2010 | Messenger & Delivery | | Macie Sledge - Heidelberg Harmon PLLC | $37.95 |
| 12-18-2009 | Messenger & Delivery | United Parcel Service | Messenger & Delivery - Gilbert LLP to Fowler Engineers - 12.4.09 | $7.84 |

[18]The Court reduces the mileage reimbursement request from $1,115.86 to $600.00.

| 12-21-2010 | Messenger & Delivery | | Augie [sic] Matteis | $20.91 |
|---|---|---|---|---|
| 12-28-2010 | Travel - Airfare | Business Card | Travel - Airfare - August Matteis - 11.30.10 | $481.40 |
| 12-29-2010 | Messenger & Delivery | | Macie Sledge - Heidelberg Harmon PLLC | $8.76 |
| 12-30-2009 | Professional Service Fees | The Tasa Group | Review of Storm data/Property inspection | $2,864.90 |
| TOTAL | | | | $180,756.78 |

In sum, based upon the evidence submitted, Relators have shown that $180,756.78 of the expenses submitted by Gilbert were reasonably and necessarily incurred. The Court will award expenses to Relators from Gilbert totaling $180,756.78.

### (b)    *Weisbrod Matteis & Copley PLLC*

Relators request reimbursement for $123,594.56 in expenses incurred by WMC. While the Court finds the majority of these expenses were reasonably and necessarily incurred, some should be excluded for the same reasons the Court denied similar expenses submitted by Gilbert. For some requests, only limited descriptions are provided, and the Court is unable to ascertain from the record whether they are recoverable. Accordingly, the Court will exclude those expenses.

The Court also finds that some the requested expenses should be excluded because they constitute overhead which is normally absorbed into the attorney's hourly rate. *See Pugach*, 564 F. Supp. 2d at 165. The requests for reimbursement for office and other supplies, even though these may have been used during trial, are

overhead expenses.  *See id.*  The same is true for in-office meals, particularly a breakfast meeting held on April 19, 2013, after the trial had concluded.  *See id.*

The requests for mileage reimbursement from Washington, D.C., to Gulfport, Mississippi, are not reasonable as submitted.  The billing records are insufficient to inform the Court which attorney or attorneys incurred these expenses.  However, it is apparent from the WMC expense report that other attorneys from the firm incurred airfare during the same time periods and for the same purposes.  The Court will therefore reduce the mileage reimbursement requests to $600.00, which is reasonable and consistent with the cost of airfare and ground transportation for one attorney, as the Court did with respect to Gilbert's requests.  The Court will also disallow requests for reimbursement for gasoline while traveling to Gulfport, Mississippi, as such requests are duplicative of the requests for mileage rate reimbursement.

Based on the foregoing, and having thoroughly reviewed the expense records submitted by Relators for WMC, the Court finds that the following WMC expenses are recoverable.

| Date | Payee[19] | Description[20] | Amount |
|------|-----------|-----------------|--------|
| 1/4/2013 | FedEx Corporation | Courier Charges; Express overnight | $24.94 |
| 2/27/2013 | Sequential, Inc. | Outside Duplicating; PDF for 1 blowback, all black and white | $649.04 |

[19]A blank for the payee indicates that this column was also left blank on WMC's expense report [1104-5].

[20]The Court has quoted verbatim each of the descriptions from WMC's expense report [1104-5].

| 2/27/2013 | Timothy Belknap - Weisbrod Mat [sic] | Travel Expenses - Lodging at the Beau Rivage Resort & Casino | $131.71 |
|---|---|---|---|
| 2/27/2013 | Timothy Belknap - Weisbrod Mat [sic] | Travel Expenses - Air Fare on Delta | $253.80 |
| 3/4/2013 | FedEx Corporation | Courier Charges; Express overnight | $26.20 |
| 3/7/2013 | Capitol Copy & Imaging | Outside Duplicating by CCI in Jackson, MS | $9,404.43 |
| 3/11/2013 | FedEx Corporation | Courier Charges; Express overnight | $16.97 |
| 3/11/2013 | Sequential, Inc. | Outside Duplicating | $2,490.15 |
| 3/12/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - Mileage | $600.00[21] |
| 3/12/2013 | Weisbrod Matteis & Copley PLL [sic] | Meals while on travel for Pre-trial conference | $125.75 |
| 3/12/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses Lodging while on travel for pre-trial conference on behalf of T. Belknap and D. Sugimura | $698.08 |
| 3/12/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - Lodging at Beau Rivage Resort | $131.71 |
| 3/12/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - One way air fare on Delta to Trial | $253.80 |
| 3/12/2013 | FedEx Corporation | Courier Charges; Express overnight | $26.20 |
| 3/18/2013 | Video South | Litigation Support; trial preparation and presentations | $7,500.00 |
| 3/22/2013 | Teri Norton, RMR/FCRR/RDR | Court Reporting | $175.00 |
| 4/1/2013 | Video South | Litigation Support; Trial preparation and presentations | $2,920.07 |
| 4/1/2013 | Video South | Litigation Support; Trial preparation and presentations | $21,187.50 |
| 4/2/2013 | Insurance Expert Network, LLC | Expert Witness Fee - Lou G. Fey, Jr. | $14,812.03 |
| 4/8/2013 | Teri Norton, RMR/FCRR/RDR | Court Reporting | $2,347.20 |

---

[21]For the reasons stated earlier, the Court reduces the request for $1,327.75 in mileage to $600.00.

| 4/9/2013 | Teri Norton, RMR/FCRR/RDR | Court Reporting | $1,902.00 |
|---|---|---|---|
| 4/11/2013 | Teri Norton, RMR/FCRR/RDR | Court Reporting | $160.80 |
| 4/17/2013 | Weisbrod Matteis & Copley PLL [sic] | Meals while on travel for trial in Gulfport, MS | $1,466.92 |
| 4/17/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - Budget Car Rental for traveling to trial in Gulfport, MS | $758.70 |
| 4/24/2013 | R. Ralph Sinno, PH.D. [sic] | Expert Witness Fee - R. Ralph Sinno, PH.D. [sic] | $33,810.00 |
| 4/30/2013 | David J. Favre, Sr. | Expert Witness Fee; David J. Favre Sr | $7,500.00 |
| 4/30/2013 | Weisbrod Matteis & Copley PLL [sic] | Meals while on travel for trial in Gulfport, MS | $844.11 |
| 4/30/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - Mileage of 2, 745 [sic] while on travel for trial in Gulfport, MS | $600.00[22] |
| 4/30/2013 | Weisbrod Matteis & Copley PLL [sic] | Meals while on travel during trial | $556.76 |
| 4/30/2013 | Weisbrod Matteis & Copley PLL [sic] | Travel Expenses - Baggage handling for flight to Gulfport, MS | $60.00 |
| 4/30/2013 | Dr. Keith G. Blackwell | Expert Witness Fee - Dr. Keith G. Blackwell | $5,637.51 |
| TOTAL | | | $117,071.38 |

The Court will reduce Relators' requested reimbursement of expenses from WMC by a total $6,523.18. Relators have shown that the remaining entries from WMC were reasonably and necessarily incurred. The Court will award expenses to Relators incurred by WMC totaling $117,071.38.

### (c)     Heidelberg Harmon PLLC

Relators request reimbursement in the amount of $5,735.84 for expenses incurred by HH. Having reviewed the records submitted, Relators have shown that

---

[22]The Court reduces the mileage reimbursement request of $1,523.47 to $600.00.

all of the expense report [1104-6] entries from HH represent expenses that were

reasonably and necessarily incurred, with the exception of "Meals with counsel and

Scruggs in Gulfport and Oxford" in the amount of $485.11.  HH Expenses [1104-6] at

23.  This description is insufficient for the Court to ascertain whether this expense is

recoverable, particularly in light of the fact that it appears to constitute charges for

meals with Relators' former counsel, who withdrew from this case in March 2008.

The Court will award expenses to Relators from HH totaling $5,250.73, reduced

from the $5,735.84 requested.

### (d)    Summary of Expenses

In sum, the Court concludes that some of Relators' expenses cannot be

allowed.  Relators will be awarded a total of $180,756.78 in expenses incurred by

Gilbert, $117,071.38 incurred by WMC, and $5,250.73 incurred by HH, for a total

award of expenses in the amount of $303,078.89.[23]

### c.    Costs

The Court will order that costs be taxed against State Farm in accordance

with 31 U.S.C. § 3730(d)(2) and 28 U.S.C. § 1920.  Within fourteen (14) days of the

date of entry of Final Judgment on Relators' claims pursuant to Federal Rules of

Civil Procedure 54(b) and 58, Relators shall file any bill of costs in the form required

---

[23]The Court notes that some of these expenses requested by and awarded to Relators may also fit within the definition of "costs" under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  In the event Relators file a bill of costs, Relators are reminded not to include as costs any item awarded here as expenses.

by the Clerk of this Court and in accordance with Federal Rule of Civil Procedure

54(d)(1) and Local Uniform Civil Rule 54(c).

E.   Rule 54(b) Final Judgment

Federal Rule of Civil Procedure 54(b) provides that

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  Before a district court can enter a Rule 54(b) certification,

"the court must determine that the judgment is final in the sense that it is an

ultimate disposition of an individual claim." *Gabarick v. Laurin Maritime*

*(America), Inc.*, 650 F.3d 545, 552 (5th Cir. 2011) (quotations omitted).

This Memorandum Opinion and Order resolves all outstanding claims

asserted by Relators in this case.  All Defendants other than State Farm have been

dismissed, and the trial concluded with a jury verdict against State Farm.  State

Farm's Counterclaim [355], which the Court has bifurcated from Relators' claim,

Order [363] at 2, remains pending, but the Counterclaim is separate and distinct,

and not dependent upon, Relators' claims.

While Relators' Amended Complaint [16] alleges violations of the FCA

against all Defendants, State Farm's Counterclaim against Relators alleges

-64-

violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2), (4), (5), and state law claims for trespass to chattels, conversion, common law fraud, breach of contract, civil conspiracy, vicarious liability, and violation of the Mississippi Trade Secrets Act, Mississippi Code § 75-26-3.  State Farm's Counterclaim is dependent upon facts and legal theories wholly distinct from those upon which Relators' claims relied.  Having considered the entire record before it, and in light of judicial administrative interests and the equities involved, the Court makes the express determination that there is no just reason for delay of entry of final judgment on Relators' claims.  Pursuant to Federal Rules of Civil Procedure 54(b) and 58, the Court will therefore enter a final judgment on Relators' claims asserted against all Defendants in this action, while State Farm's bifurcated Counterclaim will remain pending in this Court.  The parties are directed to contact the Magistrate Judge within fourteen (14) days of entry of this Memorandum Opinion and Order for purposes of scheduling a Case Management Conference on State Farm's Counterclaim.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Relators' Motion [1104] should be granted in part and denied in part.  To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Relators Cori Rigsby and Kerri Rigsby's Motion to Initiate Discovery, Impose Maximum Penalty,

Award Maximum Relators' Share, and Award Relators Their Attorneys' Fees, Expenses, and Costs [1104] is **GRANTED IN PART and DENIED IN PART.**

Pursuant to 31 U.S.C. § 3729(a), the United States Government will be awarded treble damages in the amount of $750,000.00, plus a civil penalty in the amount of $8,250.00, for a total sum of $758,250.00.  Relators will be awarded 30 percent of the foregoing amount in accordance with 31 U.S.C. § 3730(d)(2), with 15 percent awarded to Relator Cori Rigsby and 15 percent awarded to Relator Kerri Rigsby. Relators are also entitled to recover reasonable attorneys' fees in the amount of $2,610,149.80 and expenses in the amount of $303,078.89, for a total award of $2,913,228.69 in fees and expenses, as well as their costs upon submission of an appropriate bill of costs.

　　　　**SO ORDERED AND ADJUDGED** this 21st day of February, 2014.

　　　　　　　　　　　　　　　*s/ Halil Suleyman Ozerden*
　　　　　　　　　　　　　　　HALIL SULEYMAN OZERDEN
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE