IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel*. | § | RELATORS/ |
| CORI RIGSBY and KERRI RIGSBY | § | COUNTER-DEFENDANTS |
| | § | |
| v. | § | Civil No. 1:06CV433-HSO-RHW |
| | § | |
| STATE FARM FIRE AND | § | DEFENDANT/ |
| CASUALTY CO. | § | COUNTER-CLAIMANT |

## MEMORANDUM OPINION AND ORDER DENYING RELATORS' [1242] MOTION TO DISMISS AND FOR RECONSIDERATION

BEFORE THE COURT is the Motion to Dismiss and for Reconsideration [1242] filed by Relators Cori Rigsby and Kerri Rigsby.  Relators ask the Court to dismiss Defendant State Farm Fire and Casualty Company's Third Amended Counterclaim [1232] with prejudice.  After consideration of the Motion, related pleadings, the record in this case, and relevant legal authority, the Court finds that Relators' Motion [1242] should be denied.  State Farm Fire and Casualty Company's Third Amended Counterclaim [1232] will proceed.

## I.  BACKGROUND

### A.  Factual Background

Relators Cori Rigsby and Kerri Rigsby ("Relators" or the "Rigsbys") worked for E.A. Renfroe & Company, Inc. ("Renfroe"), "a company that provides claim adjusting and related services to insurers," including State Farm Fire and Casualty Company ("State Farm").  3d Am. Countercl. [1232] at 3.  "In the immediate aftermath of Hurricane Katrina, the Rigsbys worked for Renfroe which State Farm had retained in order to adjust claims by its policyholders."  *Id.*  According to State

Farm, "[u]nder the employment agreement the Rigsbys signed with Renfroe, they promised not to disclose or misappropriate any confidential information of Renfroe or State Farm for their own use or for the use of any partnership or firm unless authorized by Renfroe." *Id.* at 3-4; *see also id.* at 7-8 (quoting language from Renfroe employment agreement signed by Cori Rigsby on or about August 13, 2004).

State Farm claims that Relators signed a State Farm Network Access Agreement in which Relators "promised to maintain the strict confidentiality of any and all State Farm information, and which precluded them from using any such information for their own benefit or the benefit of any person other than State Farm." *Id.* at 4; *see also id.* at 9 (January 20, 2006, State Farm Network Access Agreement signed by Cori Rigsby). In light of Relators' execution of the Network Access Agreement, State Farm issued each Relator a laptop computer and a password which enabled them to access various State Farm databases, including State Farm's Claim Service Record ("CSR"). *Id.* at 14. According to State Farm, the CSR "contained claim files that contained trade secrets of State Farm, and other confidential, private or proprietary information maintained by State Farm." *Id.* State Farm asserts that its trade secrets, other confidential documents, and electronically store information ("ESI")

> derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and was the subject of efforts that were reasonable under the circumstances to maintain its secrecy.

*Id.*

> State Farm alleges that
>
> [t]he Rigsbys have admitted under oath that they surreptitiously broke their promises by accessing State Farm's computer system for purposes of providing information to lawyers whom they knew to be engaged in litigation against State Farm.  The confidential information stored on these computers included private, non-public information concerning State Farm policyholders and policyholders' insurance claims.

*Id.* at 4; *see also, e.g., id.* at 10, 11 (quoting Kerri Rigsby's deposition taken on June 20, 2007, in *Marion v. State Farm Fire and Cas. Co.*, 1:06cv969-LTS-RHW (S.D. Miss.), and Cori Rigsby's deposition taken on May 1, 2007, in *McIntosh v. State Farm Fire and Cas. Co.*, 1:06cv1080-LTS-RHW (S.D. Miss)).

According to State Farm, "[t]he Rigsbys provided Scruggs with State Farm information and documents to use in his policyholder lawsuits against State Farm. Scruggs eventually paid each of the Rigsbys $150,000 per year as sham consultants."  *Id.* at 4; *see also id.* at 34.[1]  This scheme purportedly included a "data dump" or data-mining operation conducted during the weekend of June 2 through 5, 2006, on behalf of attorney Richard "Dickie" Scruggs and other conspirators, "in furtherance of the unlawful objectives of their conspiracy."  *Id.* at 30.  State Farm contends that "Dickie Scruggs and the other Conspirators were aware of and

---

[1]  State Farm alleges that the Rigsbys each received twice monthly payments of $6,250.00 from no later than July 2006 through at least December 2007.  3d Am. Countercl. [1232] at 34-35.  "As part of their compensation package, Dickie Scruggs also provided the Rigsbys with reimbursement of expenses, payment of their attorneys' fees, costs and expenses from at least three different law firms, and personal indemnification by Dickie Scruggs."  *Id.* at 35.

directly participated in the Rigsbys' violations of their obligations to Renfroe and State Farm in order to gather information relating to civil policyholder lawsuits that were pending or under consideration, and to find bases to initiate additional lawsuits which could generate fees for them." *Id.* at 4-5.

B.   Procedural History

Relators filed a *qui tam* Complaint [2] against State Farm on April 26, 2006, *in camera* and under seal, pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.* An Amended Complaint [16] followed on May 22, 2007. Relators alleged that State Farm attempted to shift its responsibility for Hurricane Katrina wind damage at residential properties covered by both a homeowner's insurance policy and a flood insurance policy by classifying wind damage as storm surge damage, thereby recasting State Farm's liability for wind losses on such properties as flood losses which the United States Government would be responsible to pay under the National Flood Insurance Program ("NFIP").

On April 8, 2008, State Farm filed its Answer and Counterclaim [95] against Relators. State Farm filed a First Amended Answer and Counterclaim [338] on June 18, 2009, and a Second Amended Answer and Counterclaim [355] on August 24, 2009. On September 24, 2009, the Court bifurcated Relators' claims from State Farm's Counterclaims and determined that a scheduling order would be entered as to the Counterclaims after the Relators' claims were tried on their merits. Order [363] at 2.

A jury trial on the merits of Relators' claims was held from March 25, 2013,

-4-

to April 8, 2013.  The jury found that State Farm had submitted a false claim and a false record material to a false claim to the Government in connection with damage to the home of Thomas and Pamela McIntosh located in Biloxi, Mississippi.  On February 21, 2014, the Court entered a Federal Rule of Civil Procedure 54(b) Final Judgment [1129] on Relators' claims.  Relators and State Farm both appealed. Notice [1131]; Notice [1143].  A panel of the Fifth Circuit entered an opinion on July 13, 2015, which reversed the Court's decision to deny Relators additional discovery beyond the McIntosh claim, but otherwise affirmed the Court's decisions and remanded the case for further proceedings.  State Farm  filed a petition for a writ of certiorari in the United States Supreme Court, which remains pending.

In the meantime, Relators filed a Motion for Summary Judgment [1183] and a Motion for Judgment on the Pleadings [1185] on State Farm's Second Amended Counterclaim [355].  In a Memorandum Opinion and Order [1217] entered on August 6, 2015, the Court denied Relators' Motion for Summary Judgment [1183] and granted in part and denied without prejudice in part Relators' Motion for Judgment on the Pleadings [1185].  Order [1217] at 46.  The Court dismissed without prejudice State Farm's Counterclaims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"), violations of the Mississippi Uniform Trade Secrets Act, Mississippi Code §§ 75-26-1, *et seq.* ("MUTSA"), and for trespass to chattels, conversion, and common law fraud.  *Id.*  State Farm's remaining Counterclaims were for breach of contract and civil conspiracy.  *Id.* at 46-47.  However, the Court granted State Farm leave to filed a Third Amended

Counterclaim.  *Id.*

On October 29, 2015, State Farm filed its Third Amended Counterclaim [1232].  The Third Amended Counterclaim advances claims for violations of the CFAA, specifically 18 U.S.C. §§ 1030(a)(2) and 1030(a)(4); common law fraud; violation of the MUTSA; breach of contract; breach of the duty of loyalty; and civil conspiracy.  3d Am. Countercl. [1232] at 38-66.  State Farm asserts that Relators "are each vicariously liable for all their respective wrongful acts and omissions alleged herein, including those of the other Conspirators, under the doctrines of: respondeat superior; conspiracy; aiding and abetting; agency; joint venture; co-adventure; and/or joint tortfeasor."  *Id.* at 66.  State Farm seeks judgment from and against Relators, jointly and severally, for:

(1)     All such damages recoverable under 18 U.S.C. § 1030, including but not limited to the $39,376.75 paid to forensic expert A.J. Garretson and $11,110.44 in costs incurred for equipment necessary to investigate the extent of the Rigsbys' malfeasance;

(2)     All such damages and other remedies, including but not limited to disgorgement, recoverable under the Mississippi Trade Secrets Act, Miss. Code Ann. § 75-26-1 *et seq.*, including those authorized by Miss. Code Ann. § 75-26-7 (1972);

(3)     All attorneys' fees, costs and expenses State Farm has incurred and will incur in the defense of Count V of the Rigsbys' Complaint and in the prosecution of State Farm's Counterclaim;

(4)     Such other actual damages as to which State Farm may be justly entitled;

(5)     Such punitive and exemplary damages, sanctions, penalties or other relief as may be appropriate in the premises;

(6)     A permanent injunction ordering the Rigsbys to return all chattels and ESI of State Farm in their possession, custody and/or control, whether in physical and/or electronic media and prohibiting them from further using or disclosing in any manner whatsoever, any documents, ESI, media or information concerning State Farm

which they garnered via wrongful acts, including prohibiting their use in this Action;

(7) The imposition of a constructive trust on the Rigsbys' ill-gotten gains, as well as an award and order of disgorgement, in an amount not less than $2,198,000.95, which represents consulting fees and reimbursements paid to the Rigsbys, legal fees paid on behalf of the Rigsbys, and a non-assignment payment;

(8) Pre and post-judgment interest as allowed by applicable law; and

(9) Such further, supplemental or alternative relief as may be appropriate at law or in equity.

*Id.* at 67.

On November 23, 2015, Relators filed the present Motion to Dismiss and for Reconsideration [1242] on State Farm's Third Amended Counterclaim [1232].

## II. <u>DISCUSSION</u>

### A.  <u>Relevant legal standards</u>

Relators seek dismissal under Federal Rule of Civil 12(b)(6) and for reconsideration pursuant to Rule 54(b).  Mot. [1242] at 1-3.  To the extent Relators seek reconsideration of the Court's prior Order [1217], the Fifth Circuit has held that "[a] trial court [is] free to reconsider and reverse [interlocutory orders] for any reason it deems sufficient, even in the absence of new evidence or an intervening change or in clarification of the new law."  *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727-78 (5th Cir. 2012) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)).

"In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "While we accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' do not establish facial plausibility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of public records under Federal Rule of Evidence 201, without converting the motion to one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

In support of their Motion [1242], Relators have submitted a document entitled a "Statement of Interest of the United States in Response to Impact Science & Technology's Revised Memorandum in Support of Its Omnibus Motion for Sanctions" [1242-1], which was apparently filed on April 27, 2010, in an FCA case

in the United States District Court for the District of Maryland.  Relators have also attached the "United States' Motion to Strike Affirmative Defense and to Dismiss Defendants' Counterclaims" and supporting Memorandum [1242-2] filed in another FCA case in the United States District Court for the District of Columbia.  These documents are apparently contained in public court records of which this Court can take judicial notice.  *See Funk*, 631 F.3d at 783; *see also* Fed. R. Evid. 201.  Based on the foregoing, the Court sees no reason to exclude these exhibits or to treat Relators' Motion as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).

B.    <u>Analysis</u>

1.    <u>State Farm's counterclaims for violations of the CFAA contained in Counts I and II should not be dismissed pursuant to Rule 12(b)(6).</u>

Relators argue that the FCA conflicts with the CFAA, such that dismissal of State Farm's CFAA claims is warranted.  Mot. [1242] at 1; Mem. [1243] at 2, 18-19.  Relators raised this same argument in their earlier Motion for Summary Judgment [1183], *see* Mem. [1184] at 19, which this Court rejected, *see* Order [1217] at 15-17.  The Court sees no reason to revisit that decision.  For the same reasons stated in its prior Order [1217], the Court is not persuaded that the FCA and the CFAA conflict in this particular case.  *See* Order [1217] at 15-17.

Relators further assert that "State Farm's damages under the CFAA should be limited to less than $50,486.79, the amount it claims it incurred to investigate all of the documents the Rigsbys' [sic] downloaded and copied, including those documents related to their FCA case."  Mem. [1243] at 2.  Relators state that "[i]n

its most recent CFAA claims, though its claim for damages is vague, State Farm appears to be seeking a total of $50,486.79 in compensatory damages." *Id.* at 18. "To the extent that State Farm claims additional damages, the Rigsbys reserve their right to respond." *Id.* at 19.

It does not appear that Relators are seeking dismissal of State Farm's CFAA Counterclaims based upon the amount of damages sought by State Farm. The Third Amended Counterclaim alleges losses in excess of $5,000.00. *See* 3d Am. Countercl. [1232] at 42-44, 50-52; *see also, e.g.,* 18 U.S.C. § 1030(c)(4)(A)(i).

To the extent Relators suggest that the Court should limit State Farm's CFAA damages based upon the sums listed in the Third Amended Counterclaim, the Court is not persuaded that this issue is properly before the Court at this juncture of the proceedings, as more factual development of the record seems needed. Even if this issue were ripe, the Court does not necessarily read State Farm's Third Amended Counterclaim as purporting to limit State Farm's damages under the CFAA. *See, e.g.,* 3d Am. Countercl. [1232] at 44 (providing "a partial list reflecting the cost of some of the equipment and software that State Farm acquired in order to conduct the forensic evaluation" of the Rigsbys' laptop computers.).

Relators also contend, in a footnote, that the CFAA is unconstitutionally vague to the extent it "imputes criminal liability to any employee who is authorized to use her employee's computer, but accesses the computer in a manner that exceeds her employer's computer use restrictions . . . ." Mem. [1243] at 19 n.9

(citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *United States v. Nosal*, 676
F.3d 854, 859-63 (9th Cir. 2012)).  According to Relators, "[t]he CFAA is also
unconstitutional to the extent it criminalizes employee behavior that exceeds
employer use restrictions because it impermissibly delegates a governmental
function to a private entity in violation of the private non-delegation doctrine." *Id.*
(citing *Dep't of Transp. v. Ass'n of Am. Railroads*, 135 S. Ct. 1225, 1252 (2015)
(Thomas, J., Concurring); *Sante Fe Nat. Tobacco Co. v. Judge*, 963 F. Supp. 437, 440
(M.D. Pa. 1997)).  In another footnote in their Reply [1254], Relators again suggest
that "the broad interpretation of the CFAA advanced is unconstitutionally vague."
Reply [1254] at 4 n.5.

The Court is not persuaded that Relators' passing references in footnotes
attacking the constitutionality of the CFAA are sufficient for the Court to render an
opinion on this issue.  Moreover, Relators have not filed a notice of the
constitutional question, and the Court has not certified to the Attorney General that
the CFAA has been questioned.  *See* 28 U.S.C. § 2403(a); Fed. R. Civ. P. 5.1; *see
also, e.g., In re Carter*, 553 F.3d 979, 983 (6th Cir. 2009) (noting that the district
court had notified the U.S. Department of Housing and Urban Development and the
Attorney General that the case involved an as-applied constitutional challenge to a
federal statute, and that the government had intervened and filed a brief); *Pleasant-
El v. Oil Recovery Co.*, 148 F.3d 1300, 1302 (11th Cir. 1998) (remanding for district
court to give proper notice to Attorney General and to rule on the constitutional

challenges).[2]

To the extent it is Relators' position that the CFAA is unconstitutional, this portion of their Motion will be denied without prejudice. If it is their intention to challenge the constitutionality of the CFAA in this case, Relators shall reurge their constitutionality argument in an early motion for summary judgment and simultaneously file and properly serve a separate notice of the constitutional question pursuant to Rule 5.1(a). Relators shall file any such motion for partial summary judgment as to the CFAA claims, based only upon constitutional grounds, within 30 days of entry of this Order. At that time, Relators shall file and properly serve the appropriate notice in accordance with Rule 5.1(a).

In all other respects, Relators' Motion will be denied as to Counts I and II.

---

[2] Section 2403(a) and Rule 5.1 apply only to actions in which the United States is not a party. 28 U.S.C. § 2403(a); Fed. R. Civ. P. 5.1(a)(1)(A). While the United States is a real party in interest in this FCA case, it declined to intervene and is not a party to the Counterclaim. There does not appear to be any controlling authority addressing whether notice is required after the United States declines to intervene in an FCA case and the constitutionality of a federal statute is later questioned in that same action, albeit with respect to a non-FCA counterclaim. In a different context, the Supreme Court has held that "[a]lthough the United States is aware of and minimally involved in every FCA action, we hold that it is not a 'party' to an FCA action for purposes of the appellate filing deadline unless it has exercised its right to intervene in the case." *United States ex rel. Eisentein v. City of New York, New York,* 556 U.S. 928, 931 (2009); *see also United States ex rel. Stevens v. State of Vt. Agency of Natural Resources,* 162 F.3d 195, 199 (2d Cir. 1998), *rev'd on other grounds* 529 U.S. 765 (2000) (noting that the United States had declined to intervene in FCA action, but intervened in the appeal pursuant to 28 U.S.C. §§ 517 and 2403(a)). Based upon these authorities, it is at least arguable that the United States is not a "party" to this action, such that notice under § 2403(a) and Rule 5.1 would be required if Relators are in fact challenging the constitutionality of the CFAA.

2.    <u>State Farm has sufficiently pleaded fraud in Count III.</u>

Relators argue that State Farm's fraud Counterclaim is "inextricably based on [their] failure to admit they were leaking documents to their attorney in contemplation of an FCA case and should, therefore, be dismissed." Mem. [1243] at 20.  According to Relators, State Farm has identified no harm it has suffered and is not entitled to punitive damages because it "alleges no facts that would evidence that the Rigsbys [sic] actions were malicious or grossly negligent." *Id.* at 21.  State Farm counters that Relators do not enjoy blanket immunity under the FCA for independent acts of fraud and are liable for compensatory and punitive damages. Mem. [1252] at 9-11.[3]

> Under Mississippi law, the elements of fraud are:
>
> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Robinson v. Trustmark Nat. Bank*, 179 So. 3d 1146, 1150 (Miss. Ct. App. 2015) (quotation omitted).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010)

---

[3] State Farm also maintains that Relators are "collaterally estopped from relitigating whether the FCA immunizes their wrongdoing." Mem. [1252] at 10.  Because the Court finds dismissal of the fraud claim is not warranted under Rule 12(b)(6), the Court need not address the collateral estoppel argument at this time.

(citation omitted).  Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan*, 600 F.3d at 551 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 382 (5th Cir. 2014) (quotation omitted).

The Third Amended Counterclaim contains allegations of fraud committed by Relators which are arguably independent of the FCA action.  For example, State Farm alleges that its Network Access Agreement contained a clause which stated that signature on the Agreement confirmed the signer's intended compliance with the Agreement's terms and conditions.  3d Am. Countercl. [1232] at 54.  By signing this Agreement after Relators had "already begun [their] unauthorized and illegal activities to access and search State Farm's computer system," State Farm asserts that Relators made a knowing misrepresentation to State Farm, upon which they knew State Farm intended to rely.  *Id.*

The Third Amended Counterclaim also asserts that on or about April 1, 2006, Relator Cori Rigsby told a State Farm Catastrophe Services Claim Representative

-14-

that she thought that the individual "leaking information to Dickie Scruggs and others" could be another State Farm employee, Lecky King.  *Id.* at 55.  In April 2006, Relator Kerri Rigsby allegedly told a State Farm Catastrophe Flood Trainer that she thought that the insider who was providing State Farm's confidential and proprietary information to Dickie Scruggs and other conspirators "must be a disgruntled State Farm staffer," even though she knew this statement was false. *Id.* at 55-56.  Assuming all well-pleaded facts are true, as the Court must when faced with a motion pursuant to Rule 12(b)(6), the Third Amended Counterclaim contains sufficient factual allegations to state a plausible fraud claim against Relators.  *See New Orleans City*, 815 F.3d at 200.  To the extent Relators seek dismissal of State Farm's fraud claim in Count III, their Motion will be denied.

3.   State Farm's counterclaim for violation of the MUTSA contained in Count IV should not be dismissed.

Relators take the position that "[t]his is not a trade secrets case," and that State Farm has failed to sufficiently plead the existence of protected trade secrets. Mem. [1243] at 13.  "Any misappropriation of State Farm's alleged trade secrets was . . . incidental and inconsequential" to Relators' alleged access and copying of State Farm's documents.  *Id.*  According to Relators, "State Farm alleges no damages proximately caused by the Rigsbys' alleged misappropriation of trade secrets."  *Id.*  State Farm responds that it "has detailed numerous examples of trade secrets misappropriated by the Rigsbys," including State Farm's customer lists, engineering firm rosters, catastrophe induction manuals, component fee schedules

for adjuster services, and claim files containing policyholders' names and coverage information.  Mem. [1252] at 11-12.

The MUTSA provides for the recovery of damages for the misappropriation of a trade secret.  Miss. Code § 75-26-7.  The MUTSA defines "trade secret" as

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
> (i)  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> (ii)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code § 75-26-3(d).  The Mississippi Supreme Court has recognized that a protected customer list can qualify as a trade secret under the MUTSA.  *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 911 (Miss. 1998).

The Third Amended Counterclaim contains sufficient allegations to state a claim under the MUTSA.  State Farm has identified at least one protected trade secret which Relators allegedly misappropriated.  State Farm's allegations are sufficient to state a plausible cause of action under the MUTSA.  This portion of Relators' Motion will be denied.

4.   <u>State Farm has adequately stated a claim for breach of contract in Count V.</u>

Relators request that the Court reconsider its earlier denial of their Motion for Summary Judgment as to State Farm's breach of contract claim.  Mem. [1243] at 22.  Relators appear to reference their conflict preemption argument from their

previous Motion for Summary Judgment [1183].  Relators argued that the FCA preempts State Farm's state law claims because they "obstruct the federal law's express purpose."  Mot. for Summ. J. [1183] at 2.  "State Farm seeks to hold Relators liable under state law for doing exactly what the FCA requires, and its state law Counterclaims clearly would frustrate the FCA's purpose." Mem. in Supp. of Mot. for Summ. J. [1184] at 24.

In its earlier Order [1217], the Court thoroughly considered and analyzed Relators' arguments on the question of conflict preemption and rejected them.  As the Court stated, "nothing in the FCA necessarily requires a relator to engage in some of the types of activities alleged in the Counterclaim."  Order [1217] at 15. While only the McIntosh claim was before the Court at the time, the Court is not persuaded that the Fifth Circuit's Opinion allowing Relators to conduct "additional limited discovery," changes this result.  *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 469 (5th Cir. 2015) ("stress[ing] that we make no judgments about the actual existence of other potential false claims or records"). At the present time, it is unclear what, if any, additional FCA claims may be identified or proceed to trial.  Nor is it clear whether any unauthorized use of the State Farm network or breach of the Network Access Agreements resulted in the Relators' obtaining any information they will use, or have used, to pursue any false claims against State Farm in this case.  Relators' request for reconsideration on this issue is not well taken and will be denied.

5.     State Farm's claim for breach of the duty of loyalty in Count VI should not be dismissed.

Relators assert that State Farm's claim for breach of the duty of loyalty should be dismissed because it was not pleaded in State Farm's prior Counterclaims.  Mem. [1243] at 7.  According to Relators, "State Farm was not granted leave to add new causes of action."  *Id.*  Alternatively, Relators contend that the claim should be dismissed because "it is not evident from State Farm's allegations that the Rigsbys owed State Farm a fiduciary duty."  *Id.* at 8.[4] "[P]enalizing the Rigsbys in this case would conflict with the purpose of the FCA to encourage, protect, and require whistleblowers to come forward and disclose inside evidence of fraud to the government."  *Id.* (citations omitted).  Relators maintain that, to the extent this claim relates to confidential information, it is preempted by MUTSA.  *Id.* at 8-9.

State Farm responds that there is no prohibition on it pleading a breach of

---

[4]  Relators cite a previous decision of this Court for the proposition that "as a matter of Mississippi law, a company that acted as an adjuster to State Farm (like Renfroe) did not owe State Farm a fiduciary duty."  Mem. [1243] at 8 (citing *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06CV489-HSO-RHW, 2008 WL 783759, at *3 (S.D. Miss. Mar. 20, 2008)).  This is not an accurate characterization of the Court's holding.  The overarching question presented in *Fowler* was whether the adjuster defendant Haag Engineering owed a fiduciary duty to State Farm's insureds, the plaintiffs in that case, as opposed to State Farm.  *Fowler*, 2008 WL 783759, at *3.  To the extent that the plaintiffs argued that they had some ownership interest in State Farm which created a different relationship with Haag, the Court found that "there [was] insufficient evidence to support the conclusion that the commercial transaction between Haag and State Farm would rise to the level sufficient to impose a fiduciary relationship between Haag and State Farm."  *Id.* *Fowler* was decided at the summary judgment stage based upon competent summary judgment evidence before the Court in that case.  The Motion presently before the Court is one to dismiss pursuant to Rule 12(b)(6).

the duty of loyalty claim.  Mem. [1252] at 29.  State Farm argues that it has

pleaded sufficient factual detail to state a claim for breach of the duty of loyalty,

and that neither the FCA nor the MUTSA preempts this claim.  *Id.* at 18-27.  State

Farm maintains that Relators cannot invoke the doctrine of unclean hands to defeat

this claim because any wrongdoing by State Farm with respect to the McIntosh

FCA claim does not directly relate to the subject matter of the breach of the duty of

loyalty claim.  *Id.* at 27-28.

The Court is not persuaded that State Farm's claim for breach of the duty of

loyalty should be dismissed on the basis that the Court did not explicitly give State

Farm permission to file a new claim when it granted State Farm leave to amend its

Counterclaim.  According to the Fifth Circuit, Rule 15 "evinces a bias in favor of

granting leave to amend."  *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d

420, 425 (5th Cir. 2004) (quotation omitted).  "A court must have a substantial

reason to deny a party's request for leave to amend."  *Stem v. Gomez*, 813 F.3d 205,

215 (5th Cir. 2016) (quotation omitted).  In light of Rule 15's liberal approach to

amendments, Relators' request to dismiss State Farm's breach of the duty of loyalty

claim will be denied.

As for Relators' arguments about State Farm's failure to state a claim, the

parties have cited no controlling authority detailing the elements of a breach of the

duty of loyalty claim under Mississippi law.[5]  According to State Farm,

---

[5] Most Mississippi cases offering a substantive discussion of breach of the duty of
loyalty claims appear in the context of legal-malpractice claims.  *See, e.g., Estate of St.*

> [a]s a general matter, all agents owe their principals a duty "not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent . . . on his own account or on behalf of another."

Mem. [1252] at 18 (quoting Restatement (Second) of Agency § 395) (alteration in original). "Agents in fiduciary and confidential relationships also owe to their principals a duty of loyalty, which requires the agent to protect the principal's property." *Id.* (citing *Omnibank of Mantee v. United S, Bank*, 607 So. 2d 76, 90-91 (Miss. 1992)). State Farm alleges that Relators were its agents and owed a duty of loyalty and fidelity to State Farm, as their principal. 3d Am. Countercl. [1232] at 61.

The Mississippi Supreme Court has recognized that there are "three types of situations in which a party principal may seek to have someone else perform some service for him: (1) principal and agent, (2) master and servant, and (3) independent contractor." *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 147 (Miss. 1994). "A principal-agent relationship is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *O.W.O. Invs., Inc. v. Stone Inv. Co.*, 32 So. 3d 439, 447 (Miss. 2010).

In general, "[a] party can be both an independent contractor and an agent as the two roles are not mutually exclusive." *Aladdin Constr. Co. v. John Hancock Life*

---

*Martin v. Hixson*, 145 So. 3d 1124, 1129 (Miss. 2014).

*Ins. Co.*, 914 So. 2d 169, 172 (Miss. 2005).  However,

> not all independent contractors are agents.  Thus, one who contracts for
> a stipulated price to build a house for another who reserves no direction
> over the conduct of the work is an independent contractor; but he is not
> an agent since he is not a fiduciary, has no power to make the one
> employing him a party to a transaction, and is subject to no control as to
> his conduct.

*Id.* at 172 n.7 (quoting Comment to the Restatement (Second) of Agency § 2 (1958)).

"[A] person may be an independent contractor as to certain work and a mere agent

as to other work for the same employer."  *Id.* at 177 (quotation omitted).

"[T]he line between an agent and an independent contractor . . . inevitably

revolv[es] around the idea of control."  *Id.* at 175 (quotation omitted).  "[W]hether an

agency has in fact been created is to be determined by the relations of the parties as

they exist under their agreements or acts, with the question being ultimately one of

intention."  *Id.* at 176-77 (quotation omitted).

"An agent has a fiduciary duty to act loyally for the principal's benefit in all

matters connected with the agency relationship."  Restatement (Third) of Agency §

8.01 (Am. Law Inst. 2006).  "An agent has a duty not to acquire a material benefit

from a third party in connection with transactions conducted or other actions taken

on behalf of the principal or otherwise through the agent's use of the agent's

position."  *Id.* at § 8.02.

> The primary obligation imposed on an agent by the fiduciary duty of
> loyalty is to avoid self-dealing with regard to the business of the
> principal.  Accordingly, an agent may not take part in any transaction
> adverse to the interests of the principal without obtaining the principal's
> permission, after full disclosure of all facts that might affect the

principal's decision.  An agent is not permitted to occupy a position that would allow him or her to profit personally as a result of that agency relationship.  The fiduciary duty of loyalty is not limited to cases of blatant self-dealing, but also requires a fiduciary to avoid any position where his or her own interests or those of any other person whom he or she has undertaken to represent may conflict with interests of the principal.

19 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 54:28 (4th ed. 2001) (citations omitted).

Taking the allegations contained in the Third Amended Counterclaim as true, State Farm has pleaded enough facts to state a plausible claim to relief for breach of the duty of loyalty.[6]  *See New Orleans City*, 815 F.3d at 200.  Nor is the Court persuaded that Relators' other arguments warrant dismissal of this claim. Relators' Motion to Dismiss will be denied as to State Farm's breach of the duty of loyalty claim.

6. <u>State Farm's claim for civil conspiracy contained in Count VII should not be dismissed.</u>

Relators maintain that "[s]ince the tort claims should be dismissed, the conspiracy claims must fail as well" because they must be predicated on an

---

[6]  Whether State Farm exhibited sufficient control over Relators such that Relators were in fact agents of State Farm and owed a duty of loyalty appears to be a fact-intensive inquiry.  The Third Amended Counterclaim asserts that Relators were agents of State Farm and that they owed a duty of loyalty and fidelity to State Farm as "their principal under their contract and at common law."  3d Am. Countercl. [1232] at 61.  State Farm did not attach a copy of any contract to the Third Amended Counterclaim.  The Court recognizes that whether State Farm has alleged enough facts to state a claim for breach of the duty of loyalty is a close question, but at this stage of the proceedings, the Court finds that the Third Amended Counterclaim contains sufficient factual detail to survive a Rule 12(b)(6) challenge.  If raised at summary judgment stage, the Court will have to address this question based upon the competent summary judgment evidence before it at that time.

underlying tort.  Mem. [23] at 23 (citations omitted).  Relators further assert that "an employee cannot conspire with her own employer, and a client cannot conspire with her lawyer," such that to the extent State Farm is alleging Relators conspired with members of The Scruggs Law Firm, P.A., this claim should be dismissed.  *Id.* (citations omitted).

State Farm responds that it "has not limited its civil conspiracy allegations to its 'tort claims,' as mistakenly argued by the Rigsbys."  Mem. [1252] at 30.  "[T]he Rigsbys' invocation of the intracorporate conspiracy doctrine fails" because the Third Amended Counterclaim asserts that the conspiracy "began when the Rigsbys were still employed by *Renfroe*, not Scruggs."  *Id.* (emphasis in original).  According to State Farm, even after Relators left Renfroe, "they only acted as consultants – not employees – of Scruggs, and were never 'employed' by the other members of the conspiracy."  *Id.* at 31.

State Farm also argues that Relators have pointed to "no Mississippi case that supports extending the intracorporate conspiracy doctrine to relations between an attorney and his or her flesh-and-blood client."  *Id.* (citation omitted).  Alternatively, State Farm takes the position that such immunity applies only where the lawyer and client act within the scope of their lawyer-client relationship.  *Id.*  "If the lawyer or client acts outside of their respective roles, then 'the attorney and the client, as individuals, could form a conspiracy.'" *Id.* (quoting *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).

"Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)).  The elements of a civil conspiracy are: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. 2013) (citations and footnote omitted).  The agreement "need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct." *Id.* (citation omitted).

Having considered the allegations in the Third Amended Counterclaim, the Court finds that State Farm has pleaded enough factual detail to survive a Rule 12(b)(6) motion on its claim for civil conspiracy.  This portion of Relators' Motion will be denied.

7.   <u>State Farm's allegations of vicarious liability survive Relators' Rule 12(b)(6) challenge.</u>

The Third Amended Counterclaim alleges that

[t]he Rigsbys are each vicariously liable for all of their respective wrongful acts and omissions alleged herein, including those of the other Conspirators, under the doctrines of:  respondeat superior; conspiracy; aiding and abetting; agency; joint venture; co-adventure; and/or joint tortfeasor.

3d Am. Countercl. [1232] at 66.

Relators argue that these "doctrines that State Farm lists as bases for its vicarious liability claim are inapplicable to the Rigsbys." Mem. [1243] at 23. Relators assert that respondeat superior has no application because it applies only to an employer-employee relationship. *Id.* at 23-24. According to Relators, only two employer-employee relationships are alleged in the Third Amended Counterclaim, and "the Rigsbys were the employees, not the employers." *Id.* Relators further contend that the doctrines of joint venture and co-adventure are inapplicable because the Third Amended Counterclaim

> allege[s] no facts by which the Court could reasonably infer that the Rigsbys (1) were engaged in a business enterprise; (2) had an agreement to share in the profits or losses of the enterprise, [sic] and (2) [sic] had an agreement to have a voice in the management of the enterprise.

*Id.* at 24.

State Farm responds that Relators have only "attack[ed] two of the six other bases for vicarious liability pled by State Farm in its counterclaim . . . ." Mem. [1252] at 32. As for its respondeat superior allegations, State Farm maintains that such liability "arises in principal-agent relationships, regardless of whether the principal was the agent's 'employer.'" *Id.* at 33. Here, Relators allegedly enlisted the service of third parties as their agents during the "data dump" weekend "to assist them with their unlawful pilferage of State Farm files." *Id.* (citing *Turner v. Williams*, 257 So. 2d 525, 527 (Miss. 1972)). For this reason, State Farm posits that the Third Amended Counterclaim includes sufficient factual detail to state a claim for vicarious liability under a joint adventure or co-adventure theory. *Id.* at 34.

Alternatively, State Farm argues that, even if respondeat superior and joint venture liability are inapplicable, "the Rigsbys would still face vicarious liability under the doctrines of joint tortfeasor and civil conspiracy." *Id.*

The Court is persuaded that State Farm has set forth sufficient factual allegations, if taken as true, to establish at least one plausible basis for asserting vicarious liability against Relators, specifically through its civil conspiracy claim. *See, e.g., Blades v. Countrywide Home Loans, Inc.*, No. 1:06CV1000-LG-JMR, 2007 WL 2746678, at *3 n.2 (S.D. Miss. Sept. 18, 2007) (recognizing that "co-conspirators are held liable for the acts of other co-conspirators under Mississippi law") (citing *S. Bus Lines, Inc. v. Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am.*, 38 So. 2d 765, 769 (Miss. 1949)).  Relators' Motion to Dismiss will be denied in this respect.

### III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  Relators' Motion to Dismiss and for Reconsideration [1242] will be denied, and Relators shall file their responsive pleading to State Farm's Third Amended Counterclaim within 14 days of entry of this Order, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).  Relators shall file any motion for partial summary judgment raising any constitutional challenge they may be asserting as to State Farm's claims for violations of the CFAA within 30 days of entry of this Order.  At that time, Relators

shall also file and properly serve the appropriate notice in accordance with Federal Rule of Civil Procedure 5.1(a).

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Dismiss and for Reconsideration [1242] filed by Relators Cori Rigsby and Kerri Rigsby is **DENIED WITHOUT PREJUDICE**, as to any constitutional challenge to the CFAA, and is **DENIED** in all other respects.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Relators Cori Rigsby and Kerri Rigsby shall file their responsive pleading to State Farm's Third Amended Counterclaim within **14 days** of entry of this Order, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, if Relators Cori Rigsby and Kerri Rigsby intend to challenge the constitutionality of the CFAA in this case, they shall file any motion for partial summary judgment challenging State Farm's claims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, on such constitutional grounds within **30 days** of entry of this Order. At that time, Relators shall also file and properly serve the appropriate notice in accordance with Federal Rule of Civil Procedure 5.1(a).

**SO ORDERED AND ADJUDGED** this the 27th day of May, 2016.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE