# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel*. | § | |
| **CORI RIGSBY and KERRI RIGSBY** | § | **RELATORS** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:06CV433-HSO-RHW** |
| | § | |
| **STATE FARM FIRE AND** | § | |
| **CASUALTY CO.,** *et al.* | § | **DEFENDANTS** |

---

**MEMORANDUM OPINION AND ORDER GRANTING RELATORS'
[1299] MOTION TO EXTINGUISH GILBERT LLP'S LIEN, DENYING
GILBERT LLP'S [1311] COUNTER-MOTION TO SET VALUE OF LIEN, AND
EXTINGUISHING GILBERT LLP'S [991] LIEN**

BEFORE THE COURT are the Motion [1299] to Extinguish Gilbert LLP's

Lien filed by Relators Cori Rigsby and Kerri Rigsby, and the Counter-Motion [1311]

to Set Value of Lien filed by Gilbert LLP ("Gilbert").  Both Motions are fully briefed.

The Court has also received supplemental briefing [1327], [1329], [1330], [1331].

After consideration of the Motions, the related pleadings, the record in this case,

and relevant legal authority, the Court finds that Relators' Motion [1299] should be

granted, that Gilbert's Counter-Motion [1311] should be denied, and that Gilbert's

lien [991] should be extinguished.

## I.  BACKGROUND

Relators/Counter-Defendants Cori Rigsby and Kerri Rigsby initiated this

action by filing a Complaint [2] on April 26, 2006, *in camera* and under seal,

pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*  Relators

named as a Defendant, among others, State Farm Fire and Casualty Company

("State Farm"). Compl. [2] at 1. State Farm filed a Counterclaim against Relators. On October 29, 2015, State Farm filed its Third Amended Counterclaim [1232], which remains pending.

A. Relators' counsel

At the time Relators filed their original Complaint [2], they were represented by counsel from the Scruggs Law Firm of Oxford, Mississippi; Bartimus, Frickleton, Robertson & Gorny, P.C. of Jefferson City, Missouri; and Bartle, Marcus & Graves, PC of Kansas City, Missouri. Compl. [2] at 32-33. Attorneys from the Scruggs Law Firm were permitted to withdraw by Text Order entered on March 20, 2008. On May 19, 2008, the Court granted State Farm's Motion [103] to Disqualify and disqualified Relators' remaining counsel from further participation in this case. Mem. Op. [177] at 5; Order [178] at 1. On June 19, 2008, the Court denied a Motion for Reconsideration [184] of the disqualification Order [178]. Order [190] at 5.

On July 30, 2008, local counsel C. Maison Heidelberg and Ginny Y. Kennedy of Maison Heidelberg P.A. in Ridgeland, Mississippi, entered appearances on behalf of Relators. Notice [197] at 1; Notice [198] at 1. Thereafter, counsel from Gilbert sought and obtained pro hac vice ("PHV") admission for attorneys including August J. Matteis, Jr., Craig J. Litherland, Benjamin R. Davidson, Scott D. Gilbert, Derek Yoshio Sugimura, and Lucian C. Martinez, Jr., to represent Relators. These attorneys were all with the Gilbert law firm when they sought admittance PHV. Over time the name of the firm changed from Gilbert Randolph, LLP to Gilbert

Oshinsky LLP on October 17, 2008, *see* Notice [245] at 1, and ultimately to Gilbert LLP on August 4, 2009, *see* Notice [354] at 1.

B.    Gilbert's engagement letters with Relators

Gilbert LLP has submitted a copy of an engagement letter [1311-2] between Gilbert Randolph LLP and Relators dated August 14, 2008 (the "August 2008 Engagement Letter"). Though the letter contains blanks for Relators' signatures, the copy provided to the Court is not executed. *See* Aug. 2008 Engagement Letter [1311-2] at 2.

Gilbert LLP has also presented copies of December 1, 2008, engagement letters [1311-3], [1311-4] between Gilbert Oshinsky LLP and Relators, which were executed by Matteis on behalf of the firm and by each Relator (the "December 2008 Engagement Letters"). These letters provide in relevant part that

**Costs, Expenses, and Attorneys' Fees**

This is a contingent fee agreement. Accordingly, you will not be required to pay any amount to [Gilbert Oshinsky LLP] unless you receive a monetary payment through settlement and/or judgment.

*Costs and Expenses*

[Gilbert Oshinsky LLP] will advance all costs and expenses related to this matter. If you prevail in this matter and receive payment as a result of a judgment or settlement, you will reimburse the Firm for all costs and expenses related to this claim from the net amount received by you, *not to exceed 7.5% of the net amount . . . .*

If you recover nothing from the *qui tam* action, you will not be charged for any costs or expenses. *You and [Gilbert Oshinsky LLP] also agree to seek recovery of all costs and expenses from the defendants and/or the government, to the extent that such a recovery is permitted under applicable law. If [Gilbert Oshinsky LLP] recovers all costs and expenses*

-3-

*from defendants or the government, then [Gilbert Oshinsky LLP] will not seek recovery of such costs and expenses from you.* However, if [Gilbert Oshinsky LLP] does not recover all of its costs and expenses from the defendants, you will reimburse [Gilbert Oshinsky LLP] for costs and expenses up to 7.5% of your total net recovery as provided above.

*Attorneys' Fees*

If you recover money through judgment, settlement or other means as the result of the *qui tam* action, then, in addition to reimbursing the Firm for costs and expenses as described above, *you will pay the Firm a contingency fee of forty percent (40%) of the gross amount of any sum that you recover* (calculated prior to the deduction of any costs and expenses enumerated above).

\* \* \*

**Termination**

\* \* \*

*In the event that this representation is terminated prior to the conclusion of this matter, you agree to reimburse [Gilbert Oshinsky LLP] for costs and expenses as provided above*, in the section "Costs, Expenses, and Attorneys' Fees." In addition, [Gilbert Oshinsky LLP] will be entitled to receive payment of its attorneys' fees out of any ultimate award or settlement that you receive for the services it rendered, from the initiation of this representation to the date on which [Gilbert Oshinsky LLP] withdrew or was terminated from the representation. *Such payment will be made on the basis of its customary hourly rates rather than on a contingency-fee basis.* However, if [Gilbert Oshinsky LLP's] representation is terminated by you, and you eventually recover proceeds from the *qui tam* action through an award or settlement, [Gilbert Oshinsky LLP] reserves the right to seek a partial contingency fee award from the court, if appropriate.

Dec. 2008 Engagement Letters [1311-3], [1311-4] at 2, 4 (footnote as to customary rates omitted) (emphasis added).

C.    Relators' termination of Gilbert

"In or around October 2011, Matteis and Sugimura withdrew from Gilbert after Matteis formed Weisbrod Matteis & Copely [sic] PLLC ('WMC'). Sugimura joined Matteis at WMC." Decl. of Craig J. Litherland [1311-1] at 2. "After Matteis

formed WMC, Gilbert offered to continue representing the Relators, but, ultimately, the Relators chose to engage WMC and continue with Matteis as their lead counsel." *Id.* On March 30, 2012, Relators' local counsel filed a Motion [941] for an Order authorizing Gilbert LLP and its attorneys Gilbert, Litherland, and Davidson to withdraw as counsel, which the Court granted by Text Order on April 2, 2012.

On January 25, 2013, Gilbert LLP filed a Notice of Former Counsel's Lien [991]. This Notice provided as follows:

> Please take notice that the firm GILBERT LLP ("Gilbert"), former counsel to Relators Cory Rigsby and Kerri Rigsby ("Relators") in the above captioned case, holds a lien upon any funds or other assets that Relators may recover based upon the causes of action asserted by Relators herein. Such lien is security for the fees and expenses owed to Gilbert in connection with its services rendered in relation to the causes of action asserted herein. The lienholder, Gilbert, may be contacted at:
> GILBERT LLP
> c/o Craig J. Litherland
> 1100 New York Avenue, NW
> Suite 700
> Washington, D.C. 20005

Notice [991] at 1.

D.  <u>The Court's award of attorneys' fees and expenses to Relators</u>

The merits of Relators' *qui tam* claims as to the McIntosh property proceeded to trial from March 25, 2013, to April 8, 2013. The jury found that State Farm had submitted a false claim and a false record material to a false claim to the Government in connection with damage to the home of Thomas and Pamela McIntosh located in Biloxi, Mississippi.

"In or around April 2013, after prevailing against State Farm in a jury trial, the Relators' current counsel contacted Gilbert and requested that Gilbert submit a fee petition in connection with separate fee petitions the Relators were making through their present counsel." Decl. of Craig J. Litherland [1311-1] at 3. According to Litherland, Gilbert declined this request because it no longer represented Relators and believed that the "FCA's fee-shifting provision did not permit Gilbert to make such a request." *Id.* "Relators' counsel then requested that Gilbert provide versions of its fee and expense invoices with such edits as Gilbert would apply if Gilbert was submitting its own fee request." *Id.* Gilbert also declined to do this, as it "believed that Relators' decision as to which fees and expenses to seek from State Farm was a strategy decision for Relators and their counsel." *Id.*

Copies of e-mails dated May 2 and 3, 2013, reflect that there was more discussion between Relators' current counsel at WMC and former counsel at Gilbert as to whether Gilbert would submit a declaration, affidavit, or any other support for an award of Gilbert's fees and expenses. *See* E-Mails [1299-1] at 2-5. In the last e-mail, a Gilbert attorney informed Relators' counsel that he would be sending an updated spreadsheet, but "[w]e will not be submitting an affidavit regarding our fees and expenses." *Id.* at 2. In connection with the present Motions, Litherland now informs the Court that

> [a]s a means of cooperating with the Relators, Gilbert did provide the Relators with spreadsheets containing a listing of Gilbert's attorneys' fees and expenses incurred during the course of Gilbert's representation of the Relators. These largely unedited materials were ultimately submitted as

> part of the Relators' fee petition, but without any explanatory
> documentation or any declarations from Mr. Matteis (who supervised the
> work giving rise to these fees and expenses) attesting to their
> reasonableness.

Decl. of Craig J. Litherland [1311-1] at 3. What authority or obligation Mr. Matteis

would have had to attest to the reasonableness of Gilbert's fees, other than his own,

is unclear.

On May 6, 2013, Relators filed a Motion to Initiate Discovery, Impose

Maximum Penalty, Award Maximum Relators' Share, and Award Relators Their

Attorneys' Fees, Expenses, and Costs [1104]. Pursuant to 31 U.S.C. § 3730(d)(2),

Relators sought compensation for work performed by the two law firms that

currently represent them, Weisbrod Matteis & Copley, PLLC ("WMC") and

Heidelberg Harmon PLLC ("HH"), specifically attorneys' fees in the amount of

$1,232,735.0 and costs and expenses in the amount of $287,346.34. Relators also

submitted a request for the fees, costs, and expenses of Gilbert LLP in the amount

of $5,225,303.67. Relators supplied declarations and affidavits supporting the

billings by WMC and HH, but submitted only the spreadsheets of fees and costs

Gilbert had supplied.

On February 21, 2014, the Court entered an Order [1128] granting in part

and denying in part Relators' Motion [1104]. As for Gilbert's attorneys' fees, the

Court awarded Relators $1,080,800.00 for work performed by Matteis while at

Gilbert and $421,138.80 for work performed by Sugimura at Gilbert, for a total of

$1,501,938.80. Order [1128] at 39. The Court found that Relators sought

"attorneys' fees in the amount of $5,225,303.67 for work performed by the Gilbert law firm and have submitted spreadsheets of fees billed by Gilbert. The timekeepers [were] identified only by their initials." *Id.* at 29. Because the Court was "unable to ascertain whether the hourly rates listed or the amount of time expended is reasonable for these unknown timekeepers," other than Matteis and Sugimura, the Court disallowed these time entries. *Id.*

With respect to Gilbert's expense request of $649,843.67, "[d]ue to the sparse detail contained in the Gilbert expense spreadsheet, the Court [found] that the majority of the expenses sought lack[ed] adequate support and should be excluded." *Id.* at 43. The Court also excluded all overhead expenses normally absorbed into the attorney's hourly rate and fees for expert witnesses who were not called as witnesses at trial or even listed on the witness list in the Second Amended Pretrial Order [1071], including one who was excluded from testifying by the Court. *Id.* Professional service fees paid by Gilbert to HH for serving as local counsel were also declined, as the Court had not been "provided the billing records supporting HH's charges to Gilbert." *Id.* at 44. The Court ultimately found that expenses totaling $180,756.78 from Gilbert were recoverable from State Farm. *Id.* at 44-59.

The Court awarded the United States Government

> treble damages in the amount of $750,000.00, plus a civil penalty in the amount of $8,250.00, for a total sum of $758,250.00. Relators will be awarded 30 percent of the foregoing amount in accordance with 31 U.S.C. § 3730(d)(2), with 15 percent awarded to Relator Cori Rigsby and 15 percent awarded to Relator Kerri Rigsby. Relators are also entitled to recover reasonable attorneys' fees in the amount of $2,610,149.80 and

expenses in the amount of $303,078.89, for a total award of $2,913,228.69 in fees and expenses, as well as their costs upon submission of an appropriate bill of costs.

*Id.* at 66.

On February 21, 2014, the Court entered a Federal Rule of Civil Procedure 54(b) Final Judgment [1129] as to Relators' claims. Relators and State Farm both appealed. Notice [1131]; Notice [1143]. A panel of the Fifth Circuit entered an opinion on July 13, 2015, which reversed the Court's decision to deny Relators additional discovery beyond the McIntosh claim, but in all other respects affirmed the Court's decisions and remanded the case for further proceedings. On December 6, 2016, the Supreme Court affirmed the Fifth Circuit's judgment. *See* J. [1290-1] at 3.

E.    Gilbert's demands for fees and expenses from Relators

On January 2, 2017, Gilbert forwarded correspondence to Relators' counsel at WMC which stated in relevant part as follows:

> I write in connection with the above-referenced litigation and your recent e-mail communications to my colleagues regarding Gilbert LLP's entitlement to attorneys' fees and expenses that were incurred during the time Gilbert represented Cori and Kerry Rigsby (the "Rigsbys").

> We are aware of the recent decision in the United States Supreme Court, and of the United States District Court for the Southern District of Mississippi's February 21, 2014 opinion and order (the "February 21 Opinion"), which ordered State Farm Fire and Casualty Company ("State Farm") to pay a portion of the attorneys' fees and expenses incurred by the Rigsbys' attorneys, including Gilbert, during the course of the litigation.

Based on our review of the February 21 Opinion, the Court has awarded the Rigsbys, to date, $227,475.00 pursuant to 31 U.S.C. §3730(d)(2) plus $2,913,228.69 in attorneys' fees and expenses, pursuant to the fee-shifting provisions of the False Claims Act.

Contrary to your apparent position, the February 21 Opinion is not a determination of Gilbert's rights in the Rigsbys' recovery under the January 25, 2013 lien asserted by Gilbert against any recovery the Rigsbys have obtained, or may obtain in the future, in connection with this litigation. The lien is not limited to amounts awarded to the Rigsbys under a fee-shifting statute. The lien is security for all fees and expenses owed to Gilbert in connection with the services it rendered in relation to the litigation against State Farm. Gilbert is entitled to $4,575,460.00 in attorneys' fees incurred during its representation of the Rigsbys. Additionally, Gilbert is entitled to $649,843.67 in costs expended during its representation of the Rigsbys. This amount includes nearly $250,000.00 in local counsel fees that Gilbert paid directly to Heidelberg Harmon PLLC and its predecessor.

We trust that neither you nor the Rigsbys will take any steps that would divert monies subject to Gilbert's lien.

Jan. 2, 2017, Letter [1299-2] at 2-3.

In a follow-up letter dated January 30, 2017, counsel for Gilbert wrote:

Gilbert LLP recognizes that the Rigsbys' present recovery is insufficient to fully satisfy Gilbert LLP's lien, but understands that proceedings in the litigation against State Farm continue and will potentially result in additional awards to the Rigsbys ("Future Recoveries"). It is Gilbert LLP's position that it is entitled to portions of any Future Recoveries until its lien is fully satisfied. Gilbert LLP also assumes that the Rigsbys have obligations to other counsel for representation in connection with this continuing matter, although Gilbert LLP does not know the nature of those other obligations.

\* \* \*

*Please be advised that if we are unable to resolve this issue by February 15, 2017, we intend to file a lawsuit on that date against the Rigsbys.* If we are compelled to initiate a suit for collection of our fees and costs, we would appreciate knowing if you will be representing the Rigsbys in such a suit and if you would be willing to agree to accept service on their behalf.

Jan. 30, 2017, Letter [1299-3] at 2-3 (emphasis added).

On February 2, 2017, "Relators' counsel provided Gilbert with a check in the amount of $1,688,449.52." Decl. of Craig J. Litherland [1311-1] at 4. Gilbert takes the position that this payment does not fully satisfy its lien. *Id.*

F.    Relators' and Gilbert's Motions

On February 2, 2017, Relators filed their present Motion [1299] to Extinguish Gilbert LLP's Lien. Relators represented that they had forwarded to Gilbert State Farm's payment of $1,682,695.58 for fees and expenses which the Court found reasonable as to Gilbert, plus the applicable post-judgment interest paid by State Farm on that amount. Mot. [1299] at 1. Relators' Motion asks that "this Court enter an order finding that payment of the $1,688,449.52 previously ordered by this Court satisfies Gilbert's lien and that the Court declare that lien exhausted." *Id.* at 2.

Gilbert's Counter-Motion [1311] to Set Value of Lien states that

determining the value of the lien in accordance with the standards routinely applied to determine quantum merit awards in Mississippi will determine to what extent the amounts already paid by the Relators reduce the value of the lien, and consequently how much of any other recoveries by Relators that Gilbert is potentially entitled to.

Counter-Mot. [1311] at 2. In its Memorandum [1312], Gilbert argues that the reasonable value of its outstanding attorneys' fees is no less than $1,467,464.00. Mem. [1312] at 17. "Gilbert requests that the Court establish the value of the

portion of Gilbert's lien related to Gilbert's expenses at $434,504.53." *Id.* at 22; *see also* Decl. of Craig J. Litherland [1311-1] at 4.

Relators counter that Gilbert cannot effectively penalize them for Gilbert's own purportedly "unethical conduct" in refusing to provide a declaration or evidence to support Relators' earlier request for Gilbert's fees and expenses from State Farm. Mem. [1315] at 8. Relators maintain that Gilbert violated Mississippi Rule of Professional Conduct 1.16(d) by failing to take reasonable steps to mitigate the consequences to a former client after discharge and thus "hamstrung the Rigsbys' ability to recover Gilbert's fees from State Farm," such that Gilbert should now be precluded "from recovering those fees from the Rigsbys." *Id.* at 9. According to Relators, Gilbert has "unclean hands" and seeks "equitable relief against the very people whom it injured." *Id.* at 1.

On July 24, 2017, the Court ordered additional briefing on the clean-hands issue. The parties have now filed their supplemental briefs [1327], [1329], [1330], [1331].

## II. DISCUSSION

### A. Jurisdiction

Relators invoked this Court's federal question jurisdiction when they filed their Complaint under the FCA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over this fee dispute. *See Freeman v. Clarke Cty.*, 620 F. App'x 223, 226 (5th Cir. 2015) (citing 28 U.S.C. § 1367(a)).

B.    Relevant legal authority

    1.    The parties' positions

31 U.S.C. § 3730(d)(2) provides that

> [i]f the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages.  The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.  *Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs shall be awarded against the defendant.*

31 U.S.C. § 3730(d)(2) (emphasis added).

The parties do not dispute that Mississippi substantive law governs this dispute.  *See* Mem. [1300] at 10-11; Mem. [1312] at 16-17.  The parties also do not appear to dispute that while Relators entered into a contingent-fee agreement with Gilbert, because Gilbert was terminated and did not represent Relators through trial or entry of the Federal Rule of Civil Procedure 54(b) Final Judgment [1129] on Relators' claims and the resulting appeal, Gilbert is entitled to a recovery in quantum meruit for reasonable fees and costs.  *See* Mem. [1300] at 10-11; Mem. [1312] at 10, 16-17.  Gilbert is not seeking a contingent fee from Relators, but instead maintains it continues to have an attorney's lien for the reasonable value of its outstanding fees and remaining expenses.  *See, e.g.,* Mem. [1312] at 17, 22. Relators posit that Gilbert's lien was extinguished upon payment to Gilbert of the

funds received by Relators from State Farm by virtue of the Court's February 21, 2014, Order [1128].

2. Mississippi contract law

Mississippi courts apply the three-tiered approach for analyzing issues of contract construction and interpretation to contingent-fee contracts. *See Denham Law Firm, PLLC v. Simmons*, 207 So. 3d 670, 678 (Miss. Ct. App. 2017). A court first applies the "four corners" test, "wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Id.* The contract must be read as a whole, so as to give effect to all of its clauses. *Id.* If the contract is unclear or ambiguous, the court may go beyond the text and apply the discretionary "canons" of contract construction at the second tier. *Id.* "Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Id.* The parties in this case have not argued that Gilbert's engagement letters [1311-3], [1311-4], with Relators were unclear or ambiguous.

3. Recovery of a reasonable attorneys' fee after termination of attorney-client relationship

Mississippi law "recognizes a law firm's right to 'recover the reasonable value of its services upon termination of its employment under [a] contingent[-]fee contract . . . .'" *Denham Law Firm, PLLC*, 207 So. 3d at 677 (quoting *Poole v. Gwin, Lewis & Punches LLP*, 792 So. 2d 987, 990 (Miss. 2001)). "Where the recovery is based in quantum meruit, the amount of recovery is limited to the monetary

equivalent of the reasonable value of the services rendered . . . for which payment has not been tendered." *Poole*, 792 So. 2d at 991 (quotation omitted).

> The "essential elements of recovery under a quantum meruit claim" are as follows:
> (1)     valuable services were rendered or materials furnished;
> (2)     for the person sought to be charged;
> (3)     which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
> (4)     under such circumstances as reasonably notified [the] person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

*In re Wilhite*, 121 So. 3d 301, 305 (Miss. Ct. App. 2013) (quoting *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 514-15 (Miss. 2007)). Quantum meruit recovery is a contract remedy which can be grounded either in express or implied contract. *Id.* "[A] prerequisite to establishing grounds for quantum meruit recovery is [the] claimant's reasonable expectation of compensation." *Id.* (quoting *Tupelo Redevelopment Agency*, 972 So. 2d at 514).

Mississippi Rule of Professional Conduct 1.5 provides that "[a] lawyer's fee shall be reasonable." Miss. Rules of Prof'l Conduct R. 1.5(a). To determine reasonableness, Mississippi courts use "as a starting point the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate . . . ." *Tupelo Redevelopment Agency*, 972 So. 2d at 522. "[T]he issue of attorneys' fees must then be appropriately considered in light of Miss. R. Prof. Conduct 1.5(a) and the *McKee* factors." *Id.*

Rule 1.5(a) provides that

[t]he factors to be considered in determining the reasonableness of a fee include the following:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    whether the fee is fixed or contingent.

Miss. R. of Prof'l Conduct 1.5(a). The *McKee* factors are "strikingly similar" to the Rule 1.5(a) factors and include

the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*Tupelo Redevelopment Agency*, 972 So. 2d at 521 (quoting *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982)).

4.    <u>Attorneys' liens</u>

"Mississippi has long recognized an attorney's right to have a lien on judgments and decrees procured through an attorney's efforts on behalf of his client." *Bar-Til, Inc. v. Superior Asphalt, Inc.*, No. 2015-CA-01412-COA, 2017 WL 1910050, at *2 (Miss. Ct. App. May 9, 2017). According to Mississippi courts, "[a]n

attorney has a 'paramount lien on the money decree which he [has] obtained.'" *Id.*
(quoting *Collins v. Schneider*, 192 So. 20, 23 (1939)).

The attorney's lien on judgments and decrees obtained for fees on account of
the attorney's services rendered "belongs to the family of implied common law liens,
and is firmly engrafted on the common law." *Id.* A charging lien attaches once the
attorney successfully pursues the lawsuit to conclusion and obtains a final
judgment from which there is no appeal. *Id.* The attorney's special or charging
"lien cannot attach until a judgment is handed down." *Tyson v. Moore*, 613 So. 2d
817, 826 (Miss. 1992). The attorney's entitlement to a fee also vests at that point
and is first in priority. *Bar-Til, Inc.*, 2017 WL 1910050, at *2, *3. The long-
recognized principle at common law is that "attorneys deserve payment for their
successful services." *Id.* at *3. "But a lien is of no value, except to secure payment
to which the attorney is lawfully entitled." *Pickering v. Hood*, 95 So. 3d 611, 619
(Miss. 2012).

5.  Whether the amount of attorneys' fees owed under 31 U.S.C. §
    3730(d)(2) necessarily controls the amount of attorneys' fees owed by a
    client to her attorneys

The United States Supreme Court has considered whether another fee-
shifting statute, 42 U.S.C. § 1988, invalidates contingent-fee contracts that would
require a prevailing civil rights plaintiff to pay his attorney more than the statutory
fee awarded against the defendant. *Venegas v. Mitchell*, 495 U.S. 82, 84-85 (1990).
Section 1988(b) provides that in any action to enforce a provision of section 1983,

"the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

The Supreme Court has explained that the aim of § 1988 is "to enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail." *Venegas*, 495 U.S. at 86. However, "there is nothing in the section to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win." *Id.* at 86-87. The Supreme Court held that "§ 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id.* at 90. "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Id.*

6.   The clean-hands doctrine

The parties agree that Gilbert LLP seeks equitable relief from Relators. *See* Relators' Mem. [1315] at 1 (asserting that Gilbert LLP "ask[s] for equitable relief"); Gilbert's Rebuttal [1316] at 8 ("Relators are correct that the relief sought by Gilbert is equitable in nature."). The parties dispute whether the clean-hands doctrine bars Gilbert's claim for remaining fees and expenses.

Under Mississippi law, the clean-hands doctrine prevents a complaining party from obtaining equitable relief in court if the party is guilty of willful misconduct in the transaction at issue. *Scruggs v. Wyatt*, 60 So. 3d 758, 772 (Miss. 2011). "[U]nder the clean hands doctrine, anyone that comes before a court of equity . . . must do equity as a condition of recovery." *Dill v. Dill*, 908 So. 2d 198,

202 (Miss. Ct. App. 2005) (quotation omitted).  "[H]e who comes into equity must come with clean hands.  He who seeks equity must do equity." *Kilpatrick v. White Hall on MS River, LLC*, 207 So. 3d 1241, 1247 (Miss. 2016).

In order to invoke the clean-hands doctrine, "it is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character." *Collins v. Collins*, 625 So. 2d 786, 789 (Miss. 1993) (quotation omitted).  "Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim." *Id.*

> [W]henever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.

*Shelton v. Shelton*, 477 So. 2d 1357, 1359 (Miss. 1985) (quotation omitted).

C.     Relators' Motion should be granted, and Gilbert's lien should be extinguished.

1.     *Venegas* does not necessarily control the outcome here.

For purposes of resolving these Motions, the Court accepts Gilbert's position that, generally speaking, the question of fees owed under a fee-shifting statute and the value of an attorney's lien constitute separate inquiries.  However, the Court is not persuaded that, under Mississippi law and the facts of this case, the two inquiries are completely unrelated.

While *Venegas* may stand for the general proposition that the Court's fee award under 31 U.S.C. § 3730(d)(2) for Gilbert's services does not necessarily

constitute a ceiling for its recovery from Relators, this does not necessarily mean that *Venegas* requires that Gilbert receive any specific amount from Relators. In *Venegas,* the Supreme Court noted that it had "never held that § 1988 constrains the freedom of the civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff." *Venegas*, 495 U.S. at 87. While *Venegas* distinguished between a prevailing civil rights plaintiff's award of attorneys' fees under 42 U.S.C. § 1988 and fees owed by a plaintiff to his or her attorney under a contingent fee agreement, this case is factually distinguishable. *Id.* at 83-84.

Counsel in *Venegas* had represented the plaintiff through final judgment and the award of attorneys' fees under the fee-shifting statute in the district court. *Id.* at 85. The attorney only withdrew after negotiations regarding representation on appeal had broken down. *Id.* There was no allegation that the former attorney failed to adequately represent the plaintiff's interest or comply with applicable ethical rules in supporting the plaintiff's request for attorneys' fees under § 1988. *Venegas* did not involve questions of whether counsel came before the court with clean hands or fulfilled ethical obligations to a former client.

2.   <u>Gilbert does not come to this dispute with clean hands.</u>

a.   *Gilbert submitted incomplete and misleading documentation, knowing it would be supplied to the Court, and sat on its rights.*

Gilbert filed the Notice [991] of its lien on January 25, 2013.  After the jury verdict on the McIntosh claim, Relators' current counsel inquired of Gilbert about submitting time records and documentation to support a fee request.  In a May 2, 2013, e-mail, Gilbert responded that its billing staff was "performing clerical clean-up of [its] time and expense records" and would be forwarding "those cleaned-up records" to Relators' current counsel by the next day.  May 2, 2013, E-Mails [1299-1] at 4-5.  That same day, current counsel suggested that Gilbert submit a fee petition or a declaration if its counsel believed it was entitled to fees.  *Id.* at 4.  Gilbert's counsel provided Relators with a "spreadsheet reflecting [Gilbert's] reasonable fees and expenses" which in his view "reflect[ed] adjustments based on a normal billing process review."  *Id.* at 3.

On May 3, 2013, Relators' current counsel noted entries which may have been from a different matter and inquired whether Gilbert intended to submit a declaration or any other support to determine the reasonableness of its fees.  May 3, 2013, E-Mails [12911] at 2.  Gilbert's counsel replied that they were "taking another look," and stated that "if there are any additional adjustments, we will send you an updated spreadsheet."  *Id.*  According to Gilbert's counsel, "[w]e will not be submitting an affidavit regarding our fees and expenses."  *Id.*

In support of Relators' Motion [1104] filed on May 6, 2013, Relators submitted a 143-page fee spreadsheet and a 35-page expense spreadsheet that was supplied by Gilbert. Fee Spreadsheet [1104-15] at 2-144; Expense Spreadsheet [1104-16] at 2-36. The parties do not dispute that Gilbert forwarded these spreadsheets to Relators' current counsel with full knowledge that they would be submitted to and relied upon by the Court in resolving Relators' claim for fees and expenses under 31 U.S.C. § 3730(d)(2).

Gilbert accepted Relators' current counsel's invitation to submit documentation to support a request for fees and expenses from State Farm under the fee-shifting statute and thereby intentionally placed the question of the reasonableness of Gilbert's fees and expenses before this Court. Gilbert provided no indication to the Court at that time that it was reserving any rights or would request a second ruling on the reasonableness of its fees at a later date. Nor did Gilbert make any distinction to the Court between its lien and its request for attorneys' fees through Relators' Motion under the fee-shifting statute.

Regardless of the theory of liability for fees, the central focus of the Court's analysis in resolving Relators' Motion under the fee-shifting statute, and in resolving Gilbert's present request to establish the value of its lien, is the question of the reasonableness of Gilbert's attorneys' fee request. Gilbert asks the Court to repeat the same exercise again, through a different vehicle, now that Gilbert has edited its spreadsheets and submitted additional evidence supporting its request for fees and expenses, evidence which it was invited to submit and could easily have

provided to Relators' counsel and the Court at the time the Court was considering the issue of fees and expenses. *See, e.g.,* Gilbert's Mot. [1311] at 2 ("As set forth more fully in its accompanying papers, the attorneys' fees and expenses incurred by Gilbert during its representation of the Relators are reasonable and fully supported.").

Gilbert made a knowing and willful election not to provide such documentation to Relators when they were preparing their Motion for attorneys' fees and expenses under the fee-shifting statute. This is in contravention to Gilbert's contract with Relators. The unambiguous language of the December 2008 Engagement Letters provided that Relators and Gilbert "agree to seek recovery of *all costs and expenses from the defendants and/or the government,* to the extent that such a recovery is permitted under applicable law." Dec. 2008 Engagement Letters [1311-3], [1311-4] at 2 (emphasis added). Gilbert's counsel was, or should have been, fully aware that without the necessary documentation, which Gilbert represents it has now provided to the Court, Relators would not be able to recover "all costs and expenses from [State Farm]." *Id.* The Court is not persuaded that the Termination section contained in the Engagement Letters completely obviated Gilbert's duty under its agreement to seek full recovery of costs and expenses from Defendants when the opportunity arose.

The Court finds that Gilbert sat on its rights while the Court parsed through Gilbert's voluminous fee and expense records and decided the Motion. Gilbert neither sought reconsideration of nor appealed the Court's ruling. In the Court's

view, Gilbert has not adequately explained its inaction, and "[i]t is a well-established maxim that equity aids the vigilant, not those who slumber on their rights." *Osborne v. Vince*, 240 Miss. 807, 813 (1961).

Even if Gilbert's position can be reconciled with the terms of its contract with Relators, Gilbert arguably did not fully comply with Mississippi Rule of Professional Conduct 1.16(d). While Gilbert took one step to mitigate the consequences to its former clients after discharge by providing the fee and expense spreadsheets to Relators' counsel, the Court cannot say that Gilbert took all reasonable steps to mitigate the consequences to its former clients. *See* Miss. R. Prof'l Conduct 1.16(d). By making a deliberate election to withhold the material Relators' counsel solicited and that Gilbert has now belatedly submitted, Gilbert drastically impacted the amount of attorneys' fees and expenses Relators could have potentially recovered from State Farm for Gilbert's work on the case. To compound the problem, after now editing the spreadsheets and submitting supporting documentation, something Gilbert could easily have done much earlier, Gilbert threatens to seek the balance of these fees and expenses from Relators individually. *See* Jan. 30, 2017, Letter [1299-3] at 2-3. For all intents and purposes, Gilbert has shifted the burden of paying its fees and expenses from State Farm to Gilbert's former clients, a scenario it could very easily have avoided.

  b. *Gilbert arguably caused Relators to make misrepresentations to the Court with respect to their fee requests.*

  Gilbert has also arguably caused misrepresentations to be made to the Court, or induced Relators to make misrepresentations to the Court.  Gilbert's fee spreadsheet, which it supplied to Relators' counsel in May 2013 for submission to the Court in conjunction with the fee application at that time, contained a column for "Attorney," which ostensibly included each Gilbert attorney's timekeeper number and initials.  *See* Fee Spreadsheet [1104-15] at 2-144.  No other identifying information was revealed about these timekeepers.  Gilbert has now resubmitted a claim for additional fees and expenses in which, for the first time, Gilbert has

> deleted all timekeeping entries for several attorneys and support professionals who were minimally involved in this case.  Gilbert has also deleted approximately 200 hours incurred by summer associates who assisted with this litigation.  Similarly, Gilbert has deleted all hours incurred by the firm's IT department support personnel.

Gilbert's Mot. [1312] at 18.

  It is troubling that Gilbert would not have performed such editing prior to the original submission of these bills to Relators, as Gilbert knew that this spreadsheet would be submitted to the Court with Relators' fee request.  Inclusion of such hours in a chart, without further explanation, constituted a representation by Gilbert that "support professionals" and "IT department support personnel," whose time was apparently included in this spreadsheet, *see* Gilbert's Mot. [1312] at 18, were actually attorneys performing reimbursable legal work on this case, *see* Fee Spreadsheet [1104-15] at 2-144.  Gilbert arguably induced Relators to submit,

and asked the Court to rely upon, a fee request which contained misrepresentations as to the identity of those who performed work on this case. *See* Miss. R. Prof'l Conduct 8.4(c) (prohibiting a lawyer from engaging in conduct involving misrepresentation).

Based upon the wide range of rates claimed on the fee spreadsheet, ranging from about $125.00 to $850.00 per hour, and the lack of information disclosed, the Court disallowed any fees for these unknown timekeepers. Order [1128] at 29. By providing a copy of this unedited spreadsheet, Gilbert ostensibly requested via Relators' Motion [1104] that the Court award it some $2,492,452.50 in attorneys' fees for these unknown timekeepers, some of whom were not attorneys. *See id.* at 22 (summarizing Gilbert's fee spreadsheet).

The Court is not persuaded by Gilbert's argument that it cannot be held accountable for failing to edit its spreadsheets or submit additional documentation because it was not required to exercise any professional skill and judgment on behalf of Relators. *See* Gilbert's Suppl. Reply [1331] at 2. While Gilbert determined the fee request had to be submitted by Relators, Gilbert's work in preparing the request would have been for its own benefit, not for that of Relators. Its failure to perform such work, however, has worked to the detriment of Relators.

Gilbert in essence requested that Relators' counsel perform legal work potentially detrimental to the interest of their clients by suggesting that Relators' counsel create documentation to support Gilbert's request for fees and expenses. This despite the fact that Gilbert had filed a lien and thus had an interest likely

adverse to that of Relators in the event Relators were not able to recover all of Gilbert's requested fees and expenses from State Farm.  *See* Miss. R. Prof'l Conduct 8.4(a).

In addition, Gilbert's Notice [991] of Former Counsel's Lien did not state a definite dollar amount, only that it held "a lien upon any funds or other assets Relators may recover based upon the causes of action asserted by Relators herein." Notice [991] at 1.  The Gilbert spreadsheets [1104-15], [1104-16] supplied to Relators' counsel and filed with the Court in May 2013 sought $4,575,460.00 in attorneys' fees and $649,843.67 in expenses.  Gilbert's January 2, 2017, letter to Relators' counsel maintained that it was "entitled to $4,575,460.00 in attorneys' fees incurred during its representation of the Rigsbys" and "$649,843.67 in costs expended during its representation of the Rigsbys."  Jan. 2, 2017, Letter [1299-2] at 2-3.  In making its demand from its former clients, Gilbert apparently did not attempt to edit its bills, just as it had not edited the spreadsheets it caused to be submitted to the Court.

Gilbert now admits that the fee total included "support professionals" and "IT department support personnel," *see* Gilbert's Mot. [1312] at 18, even though Gilbert apparently recognizes that such expenses are not recoverable as attorneys' fees. Gilbert asks the Court to set the remaining value of its lien at $1,467,464.00 for attorneys' fees and at $434,504.53 for unpaid expenses, which would amount to a total award of $2,969,402.80 in attorneys' fees and $615,261.31 in expenses for its

representation of Relators.[1]  It appears to the Court that from Gilbert's perspective, the value of the lien has been a moving target.

Based upon the foregoing, the Court concludes that Gilbert has engaged in inequitable conduct such that the clean-hands doctrine should preclude Gilbert from obtaining the equitable relief it now seeks.  *See Scruggs*, 60 So. 3d at 772.  Nor did Gilbert "do equity" with respect to its pursuit of fees and expenses from Relators.  *See Dill*, 908 So. 2d at 202; *Kilpatrick*, 207 So. 3d at 1247.  Gilbert has already received $1,688,449.52 in fees and expenses from Relators.  *See* Decl. of Craig J. Litherland [1299] at 4.  Based upon Gilbert's prior conduct in this case, the

_____

[1]  Gilbert has not represented Relators since some time prior to March 30, 2012, *see* Mot. to Withdraw [941] at 1-2, over five years ago and about one year before the jury trial on the McIntosh property commenced on March 25, 2013. At this point in this case, excluding attorneys' fees, expenses, costs, and interest, each Relator has been awarded a $113,737.50 share of the Government's statutory treble damages and civil penalty for the McIntosh claim.  In lieu of 40 percent of Relators' gross recovery as a contingent fee, which Gilbert had originally expected to receive as compensation for its services, Gilbert now asks the Court to set the remaining value of its lien for attorneys' fees at $1,467,464.00, which would result in a total award of $2,969,402.80 in attorneys' fees for Gilbert's representation of Relators.  Gilbert further seeks $434,504.53 in unpaid expenses from Relators, in addition to the $180,756.78 previously awarded by the Court, for a total of $615,261.31. The executed contracts submitted by Gilbert reflect that Relators agreed to reimburse Gilbert for all costs and expenses, not to exceed 7.5% of the net amount received by Relators.  Dec. 1, 2008, Engagement Letters [1311-3], [1311-4] at 2.
Counting Relators' share of the Government's recovery as well as all attorneys' fees and expenses awarded to Relators through the appeal of the McIntosh claim, the total recovery in this case is $4,485,699.43.  *See* Order [1297] at 1-2 (awarding Relators a total of $688,480.30 in attorneys' fees and $13,366.14 for costs for litigation before the Supreme Court); Order [1258] at 15 (awarding Relators attorneys' fees in the amount of $643,149.30 for their attorneys' post-trial briefing and appeal); Order [1128] at 66 (awarding Relators post-trial a 30% share of the Government's $758,250.00 award and fees and expenses totaling $2,913,228.69 for the McIntosh false claim).  Gilbert's request for $2,969,402.80 in total attorneys' fees represents over 66% of the gross recovery to date, and including its request for $615,261.31 in expenses, would constitute over 70% of the total recovery thus far.

Court will refuse to award Gilbert any additional equitable remedy.  *See Shelton*,

477 So. 2d at 1359.  Relators' Motion to extinguish Gilbert's lien should be granted,

and Gilbert's Motion to establish the value of its lien will be denied.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it

has considered them and determined that they would not alter the result.  The

Court concludes that Relators' Motion [1299] to Extinguish Gilbert LLP's Lien

should be granted, and that Gilbert's Counter-Motion [1311] to Set Value of Lien

should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion

[1299] to Extinguish Gilbert LLP's Lien filed by Relators Cori Rigsby and Kerri

Rigsby is **GRANTED**, and Gilbert LLP's Lien [991] is **EXTINGUISHED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Counter-

Motion [1311] to Set Value of Lien filed by Gilbert LLP is **DENIED**.

**SO ORDERED AND ADJUDGED** this 27th day of September, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE