## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
    CORI RIGSBY and KERRI RIGSBY,           RELATORS/COUNTER-DEFENDANTS

        v.                               CASE NO. 1:06-cv-433-HSO-RHW

STATE FARM FIRE & CASUALTY           DEFENDANTS/COUNTER-PLAINTIFFS
    COMPANY, et al.

### RELATORS' MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Relators Cori Rigsby and Kerri Rigsby (the "Rigsbys") move for partial summary judgment against Defendant State Farm Fire & Casualty Co. ("State Farm") for violating the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A), on a single instance of false billing regarding ███████████████ Hurricane Katrina ("Katrina") flood insurance claim.  The Rigsbys seek summary judgment on this single instance to illustrate concretely and as simply as possible how, under controlling law, already-proven facts establish State Farm's FCA liability.  Specifically, facts that the McIntosh jury necessarily decided, combined with facts that State Farm admitted when it compiled the list of properties Judge Senter ordered (the "List," attached as Exhibit A), are sufficient to establish FCA liability for implied false certification under *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

This motion is founded upon four unassailable legal principles.  First, the Supreme Court of the United States established the implied false certification theory of FCA liability as valid in this Circuit for the first time in *Escobar*.  Second, the Seventh Amendment's Reexamination Clause forecloses re-litigation of any issue that the McIntosh jury necessarily decided.  Third, when State Farm submitted the List of every NFIP flood claim that met Judge Senter's three criteria, it admitted that each claim it listed met all three criteria.  Fourth, the Mandate Rule

precludes this Court from reconsidering any issue that the Fifth Circuit decided in *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457 (5th Cir. 2015), *aff'd*, 127 S. Ct. 436 (2016) ("*Rigsby*").  These legal principles, when applied to the circumstances of this case, inescapably establish State Farm's liability under § 3729(a)(1)(A) for implied false certification.

Before *Escobar*, the Fifth Circuit repeatedly had refused to recognize the implied false certification theory of FCA liability, and thus the theory was not available to the Rigsbys when the parties litigated the McIntosh bellwether claim.  In *Escobar*, the Supreme Court held that a defendant is liable for violating § 3729(a)(1)(A) under the implied false certification theory at least where: (i) the defendant makes specific representations in presenting a claim for payment; and (ii) the defendant's failure to disclose noncompliance with a material requirement makes those representations misleading half-truths.  136 S. Ct. at 2001.  It then applied that test to hold that a health care clinic violated the False Claims Act by billing the government for services without disclosing that the employees who provided those services were not properly licensed. Even though the provider did not make an express false statement to the government, the Court held that its bill for services was misleading in context because someone reviewing the bill "would probably—but wrongly—conclude that the clinic had" provided the services through qualified personnel.  *Id.* at 2000.  In this case, the McIntosh jury, State Farm's admissions in the List, and the Fifth Circuit's decision in *Rigsby* establish both parts of the Supreme Court's test for implied false certification in *Escobar*, and liability is warranted for the same reasons.

Every fact that the McIntosh jury necessarily decided to reach its verdict is binding for the remainder of this litigation under the Seventh Amendment's Reexamination Clause.  The Fifth Circuit in the prior appeal held that the McIntosh jury necessarily decided two facts (among others)—neither specific to McIntosh—that are particularly important for purposes of

establishing State Farm's liability under *Escobar*.  First, the Fifth Circuit held that Federal

Emergency Management Agency ("FEMA") directive W-5054 required a line-by-line

assessment of flood damage for every property that was not a slab or in standing floodwater for

an extended period of time.  *Rigsby*, 794 F.3d at 464, 469.  Second, it held that State Farm lacked

generalized permission to deviate from this requirement.  *Id.* at 469.  Under the Seventh

Amendment's Reexamination Clause, State Farm cannot re-litigate either issue.

      The McIntosh jury's findings are significant under *Escobar* because State Farm also has

admitted that: (i) the ███████ property was not one of the types of property exempt from W-

5054's line-by-line adjustment requirement; (ii) State Farm did not perform a line-by-line

adjustment; and (iii) State Farm paid the limits of the ██████ NFIP flood policy with

government money anyway.  State Farm admitted these facts when it placed the ██████ flood

claim on the List, in which Judge Senter ordered State Farm to identify all properties that met

those three criteria.  Mem. Op. at 11 (Aug. 10, 2009) [ECF No. 343] (the "August 2009 Order").

      The facts that the McIntosh jury necessarily found, combined with the facts that State

Farm has admitted, establish most of what the Supreme Court required in *Escobar* for implied

false certification liability.  State Farm made a specific representation to support its claim on the

government's fisc—that the ██████ property incurred at least $200,000 in covered flood

damage.  That representation was misleading in context for the same reason as the

misrepresentation in *Escobar*.  State Farm was required to ascertain the amount of flood damage

by performing a line-by-line adjustment; State Farm did not do so; and any person at FEMA

reviewing the NFIP flood payment "would probably—but wrongly—conclude that" State Farm

had performed the requisite line-by-line adjustment.  *Escobar*, 136 S. Ct. at 2000.

Under *Escobar*, the only remaining question for liability is whether State Farm's failure to perform a line-by-line adjustment was material. *Id.* at 2001. It is well established that materiality is a mixed question of law and fact that a court, rather than a jury, decides. The Mandate Rule precludes this Court from reconsidering any issue that the Fifth Circuit decided in *Rigsby*. In that appeal, State Farm specifically argued that the Rigsbys were required to prove that its violation of W-5054 was material to the payment of the McIntosh claim and that the Rigsbys had failed to establish materiality. *Rigsby*, 794 F.3d at 478 n.14. The Fifth Circuit unequivocally decided that issue against State Farm, finding that W-5054's requirement for a line-by-line adjustment was not merely material, but an actual "prerequisite for payment." *Id.* As a result, State Farm has no viable defense to materiality, as well.

State Farm ignores *Escobar* when it argues that the Rigsbys can only establish FCA liability if they prove that State Farm knowingly overpaid for flood damage based on "an individual analysis of each [] property at issue." SF Rebuttal Supp. Mot. Severance at 7 (Mar. 12, 2018) [ECF No. 1371] ("SF Rebuttal re Severance"). The Rigsbys *could* establish State Farm's liability, as they did in McIntosh, by proving that the amount of stated flood damage was false. *Escobar* makes clear, however, that they also can establish FCA liability by demonstrating a different falsity—that State Farm falsely certified (implicitly or explicitly) that it complied with a material requirement, in this case that it had performed the requisite line-by-line adjustment. *Escobar*, 136 S. Ct. at 1999. That false certification independently triggers FCA liability regardless of whether the amount that State Farm stated for flood damage also was false.

This Court also should hold that State Farm owes three times the amount the government paid in damages, plus a civil penalty and attorney's fees, for the false claim it submitted for the ▮▮▮▮▮ property. *United States ex rel. Longhi v. Lithium Power Technologies*, 575 F.3d 458,

463 (5th Cir. 2009), establishes that where, as here, the government receives no direct benefit in return for a payment made pursuant to a false claim, the defendant is liable for three times the entire amount that the government paid.  Accordingly, this Court should enter judgment against State Farm for $600,000 on the ████ claim (three times what the government paid) plus the maximum civil penalty of $11,000 and attorney's fees.

Finally, the same legal principles that render State Farm liable under the FCA for the ████ flood insurance claim apply similarly to establish State Farm's liability for every other claim that State Farm identified on the List.  Once the Court applies the controlling law to find State Farm liable for the exemplar ████ claim, the parties and Court should be able to resolve State Farm's remaining liability for the other claims on the List *en masse*, as well as addressing in discovery the other similar claims that State Farm did not disclose on the List.

### STATEMENT OF UNDISPUTED AND PREVIOUSLY ADJUDICATED FACTS

**I.      State Farm Issued the ████ Homeowner and NFIP Flood Policies and Adjusted Their Katrina Losses.**

████████████████ owned the house at ████████████ in Long Beach, Mississippi, at the time of Katrina.  *See, e.g.*, ████ Flood Claim Service Record at 6 (USA RIGSBY PROD 2 – 00284637) (attached as Exhibit B).[1]  State Farm issued a homeowner insurance policy (No. 24-67-2171-4) and an NFIP flood insurance policy (No. 24-RB-1186-7) on the ████ home, both of which were in force at the time of Katrina.  *See id.*; ████ Homeowner Claim Service Record at 11 (USA RIGSBY PROD 2 – 00369153) (attached as Exhibit C).  The ████ homeowner insurance policy covered up to $222,489 in damage to their house and excluded coverage for flood damage.  *See* Ex. C at 11; Letter from Mark Drain,

---

[1] State Farm scanned both sides of single-sided documents in its claim files when producing them to the Rigsbys.  As a result, every other page is blank throughout much of the production.  The Rigsbys have omitted those blank pages when appending claim file documents as exhibits to this motion.

Team Leader, State Farm, to █████████████ (Mar. 29, 2006) (USA RIGSBY PROD 2 –

00369299 to 301) (attached as Exhibit D).  Their flood insurance policy covered up to $200,000

in damage to the building caused only by flooding.  *See* Ex. B at 6, 11 (USA RIGSBY PROD 2 –

00284637 and 284647); 44 C.F.R. Pt. 61, App'x A(1), Art. I (2005).

      Hurricane Katrina damaged the █████ house.  The █████ filed claims on both their

homeowner (claim no. 24-Z207-472) and flood (claim no. 24-Z454-236) insurance policies.  *See*

Ex. B at 6 (USA RIGSBY PROD 2 – 00284637); Ex. C at 11 (USA RIGSBY PROD 2 –

369153).  State Farm hired S&S Claims Service ("S&S") to investigate those claims, and S&S

assigned claims adjuster Pat Carrell to inspect the property.  *See, e.g.*, S&S Invoice Nos. 27579

(Sept. 26, 2005) (USA RIGSBY PROD 2 – 00284595) and 27268 (Oct. 5, 2005) (USA RIGSBY

PROD 2 – 369141) (attached as Exhibit E).  State Farm also retained JADE Engineering &

Inspection, Inc., to "determine the extent of structural damage to the house … and ascertain the

cause of the damages."  JADE Eng'g & Inspection, Inc., Report Re: █████████████

Residence at 4 (Jan. 19, 2006) (USA RIGSBY PROD 2 – 00369385) (attached as Exhibit F).

## II.     State Farm Misrepresented Its Adjustment of the █████ Flood Loss.

      The evidence in its claim files confirms State Farm's admission that it did not perform

the required line-by-line adjustment of flood damage to the █████ house; that it instead used

XacTotal merely to obtain an estimated value of that flood damage; and that it nevertheless

presented a specific value of the █████ home's flood damage to the government for payment.

### A.     FEMA Required State Farm to Conduct a Line-by-Line Adjustment of the ████ Flood Loss as a Precondition to Paying the Claim.

      The Fifth Circuit held in this case that "FEMA directive W5054[] required line-by-line

estimate[s]" of all Katrina flood claims except for "1) claims in which a home 'had standing

water in [it] for an extended period of time' and 2) claims in which the home was 'washed off its

foundation by flood water.'" *Rigsby*, 794 F.3d at 463.  The Fifth Circuit also confirmed that the McIntosh jury found that State Farm knew about the requirement, holding that there was sufficient evidence to support the jury's finding "that State Farm knowingly violated W5054." *Id.* at 479.  The Fifth Circuit cited as "just one example" an e-mail by "State Farm's principal FEMA contact, Juan Guevara … [to FEMA NFIP claims director James Shortley, noting] that the directive required a line-by-line estimate for a building like the McIntosh home." *Id.* at 480. Mr. Guevara said in that e-mail that he read W-5054 to require State Farm "*to write a complete line-by-line estimate* even if the repairs will exceed the policy limits."  Trial Ex. P296 (USARIGSBY00015870-71) (emphasis added) (attached as Exhibit G).  The Fifth Circuit explained further that the McIntosh jury's verdict "necessarily entailed a finding" that State Farm had no generalized permission to deviate from W-5054 even if a flood loss appeared to exceed coverage limits. *Rigsby*, 794 F.3d at 469.  Such a determination would be meaningless had the jury not first concluded that W-5054 actually required line-by-line adjustments.

The Fifth Circuit further held as a matter of law that the line-by-line adjustments that W-5054 required were a prerequisite to payment of NFIP claims. *Id.* at 478 n.14.  The Fifth Circuit said that "FEMA regulations emphasize that WYO insurers 'shall comply with written standards, procedures, and guidance issued by FEMA.'" *Id.* (quoting 44 C.F.R. Pt. 62, App'x A(1), Art. II(G)(1)).  The court explained further that "directive W5054 itself states that the 'NFIP's general adjusters will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing this process,' signifying that FEMA took compliance seriously." *Id.* (quoting FEMA, Bulletin W-05054, Hurricane Katrina – Flood Claim Handling Standards at 2 (Sept. 21, 2005), *available at* https://nfip-iservice.com/pdf/bulletin/w-05054.pdf).  In addition, the Fifth Circuit emphasized that "FEMA officials testified that line-by-line estimates were in

fact a prerequisite to payment under the NFIP." *Id.*; *see also* Trial Ex. P791 at 128:10-24, 131:11-22 (Shortley Dep. excerpts) (attached as Exhibit H); Trial Ex. P796 at 63:10-23, 117:17-20 (Waytowich Dep. excerpts) (attached as Exhibit I).

    **B.**    **State Farm Did Not Conduct a Line-by-Line Adjustment of the ████ Flood Loss.**

State Farm's own admissions establish that it did not perform a required line-by-line adjustment of the Katrina flood damage to the ████ property. Judge Senter previously ordered State Farm to identify "all SFIP claims that meet the following criteria:"

    A) The insured property did not fall within any of the three categories of storm damage for which FEMA approved payment of SFIP limits, *i.e.* insured dwellings that were not left as slabs, pilings, or empty shells; and

    B) For which SFIP limits were paid on the grounds the property was a constructive total loss; and

    C) For which no "stick built" or Exactimate estimation of the flood damage was made before the SFIP limits were paid.

Aug. 2009 Order at 11. This Court later ordered State Farm to produce the resulting List to the Rigsbys. Order Granting Mot. Reconsid. at 3 (May 3, 2016) [ECF No. 1276].

State Farm's List includes the ████ Katrina flood claim. Ex. A at 5. By including the ████ claim on its List, State Farm has admitted pursuant to Judge Senter's August 2009 Order that "no 'stick built' or Exactimate [*i.e.*, line-by-line] estimation was made before the SFIP limits were paid" on that claim. Aug. 2009 Order at 11. State Farm likewise has admitted that the ████ claim met neither exception to W-5054's line-by-line requirement, as the List includes only properties "that did *not* fall within any of the … categories of storm damage for which FEMA approved payment of SFIP limits." *Id.* (emphasis added).

The evidence contained in its claim files for the ████ property confirms these judicial admissions. Although State Farm prepared a line-by-line adjustment of *wind* damage to the

████ property and put that document in its homeowner insurance claim file after it already had

paid the NFIP flood claim, it conducted no line-by-line adjustment of the *flood* damage to the

house as W-5054 required. The flood file contains instead a so-called long-form XacTotal

report, which the Fifth Circuit noted "closely resembled [but is not] a line-by-line estimate" of a

property's flood damage. *Rigsby*, 794 F.3d at 480; *accord* XacTotal Long-Form Report (Sept.

26, 2005) (USA RIGSBY PROD 2 – 00284603 to 623) (attached as Exhibit J). Despite the

facial resemblance, the XacTotal report is in fact based on a fake house and contains mere

estimates derived from assumptions about what a purportedly typical house of that size in that

location might look like. It is not, as FEMA required, based on actual damage to the ████

actual house. The XacTotal report for the ████ house is, in all relevant respects,

indistinguishable from the XacTotal report that the jury found to be a false record in the

McIntosh trial. *Rigsby*, 794 F.3d at 480.

The State Farm adjuster's contemporaneous notes on the scope of the ████ flood loss

likewise include little more than the property's square footage, the primary input for an XacTotal

calculation. Those notes contain no meaningful information about the nature and extent of the

flood damage to particular items or rooms. P. Carrell Scope Notes (USA RIGSBY PROD 2 –

00284697 to 701) (attached as Exhibit K).

State Farm's activity log for the flood claim confirms that State Farm did not determine

the cause of the hurricane damage to the ████ house before it paid policy limits on their flood

claim. A log entry dated September 26, 2005, at 3:51 p.m. indicates that an adjuster "explained

[to the ████ son-in-law] that an investigation process to determine wind vs flood and

concurrent cause is underway." Ex. B at 4 (USA RIGSBY PROD 2 – 00284633. Yet *one*

*minute later* the same person entered the next log entry that marked the "[f]ile ready to 'close'

and submitted … for review." *Id.*  State Farm's homeowner claim file activity log further indicates that the same adjuster contacted the ████ son-in-law again on October 3, 2005, three days *after* paying policy limits on their flood claim, and "explained that an engineer will be requested to investigate wind vs. flood and concurrent cause."  Ex. C at 7 (USA RIGSBY PROD 2 – 00369148).  Four minutes later the adjuster documented that he had "[r]equested [an] engineer to inspect [the] property …."  *Id.*  That engineer did not inspect the ████ property until October 17, 2005, more than two weeks after State Farm paid policy limits on the ████ NFIP flood claim.  Ex. F at 4 (USA RIGSBY PROD 2 – 00369385).

**C.  State Farm Reported and Paid Policy Limits on the ████ Flood Loss Despite Failing to Perform a Line-by-Line Adjustment.**

State Farm ultimately paid $38,492.35 on the ████ homeowner insurance claim for wind damage and policy limits of $200,000 for damage to the home caused by floodwater.  Check Nos. 1 09 224924 (Sept. 30, 2005) (USA RIGSBY PROD 2 – 00284571), 1 09 361352 J (Mar. 30, 2006) (USA RIGSBY PROD 2 – 00369119), and 1 09 081033 J (Oct. 7, 2005) (USA RIGSBY PROD 2 – 00369137) (attached as Exhibit L).  As this Court has concluded already— and State Farm did not challenge on appeal—State Farm's payment of an NFIP claim with government funds is sufficient proof that the claim was presented within the meaning of the FCA.  Mem Op. at 24-25 (Feb. 21, 2014) [ECF No. 1127].  State Farm never disclosed to FEMA its failure to comply with W-5054; nor did it obtain permission to forego that requirement.  *Rigsby*, 794 F.3d at 469.  State Farm instead placed in its NFIP file a document purporting to show the precise repair cost of each item of damage to the ████ house (*e.g.*, foundation, rough framing, windows, electrical, appliances).  *See generally* Ex. J.  Indeed, the Fifth Circuit affirmed the McIntosh jury's finding that a similar document "was placed in the [McIntosh] file to mislead FEMA in violation of § 3729(a)(1)(B)."  *Rigsby*, 794 F.3d at 480.

10

## DISCUSSION

"[S]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, … 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Blakely v. State Farm Mut. Auto. Ins.*, 406 F.3d 747, 750-51 (5th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  A party may move for summary judgment at any time.  Fed. R. Civ. P. 56(b).  The moving party has the initial burden of showing that there is no genuine issue of material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), but once it has done so, the nonmoving party must do more than merely show that there is some metaphysical doubt as to the material facts, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-movant must set forth specific facts showing a genuine issue for trial.  *Anderson*, 477 U.S. at 248, 256.

**I.      Undisputed or Previously Adjudicated Facts Establish State Farm's Liability for Violating the FCA Through Implied False Certification on the ███ Property.**

The Supreme Court in *Escobar* established the legal theory of implied false certification, under which a defendant may be held liable for false claims predicated on misleading or half-true representations about compliance with material regulations or requirements.  The NFIP-wide facts that the McIntosh jury necessarily found in the Rigsbys' favor—which cannot be re-litigated under the Seventh Amendment—together with the conclusions of law made by the Fifth Circuit and the property-specific admissions that State Farm made when it included the ███ claim on the List, conclusively establish State Farm's FCA liability under *Escobar*.

**A.      *Escobar* Recognized the Previously Unestablished Legal Theory of Implied False Certification.**

*Escobar* established the doctrine of implied false certification as an avenue of FCA liability for the first time in this Circuit.  136 S. Ct. at 1999.  The Fifth Circuit repeatedly had refused to adopt the doctrine prior to *Escobar*, and so it was unavailable to the Rigsbys both at

trial and on appeal.  *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010); *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 389 (5th Cir. 2008). The Supreme Court specified in *Escobar* two conditions that are sufficient—but not necessarily required—to establish FCA liability under an implied certification theory: "First, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."  136 S. Ct. at 2001.  The Supreme Court based that holding on the fundamental premise that a misleading half-truth is no better than an outright lie: "A statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue."  *Id.* at 2001 n.4.

Escobar applied this principle to hold that a healthcare provider violated the FCA by "submitting claims for payment using payment codes that corresponded to specific counseling services," by which it "represented that it had provided" the indicated treatments.  *Id.* at 2000. Yet the provider failed to disclose that its employees were not qualified to provide those services. The Supreme Court held that "these representations were clearly misleading in context."  *Id.*

> Anyone informed that a social worker at a Massachusetts mental health clinic provided a teenage patient with individual counseling services would probably—but wrongly—conclude that the clinic had complied with core Massachusetts Medicaid requirements (1) that a counselor 'treating children [is] required to have specialized training and experience in children's services' and also (2) that, at a minimum, the social worker possesses the prescribed qualifications for the job.  By using payment and other codes that conveyed this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations.

*Id.* at 2000-2001.  Here, too, facts found by the McIntosh jury together with admissions in the List conclusively establish that State Farm made a similarly misleading representation.  It

submitted a specific flood damage amount for payment under the ███████ NFIP flood policy,

and failed to disclose that it had not performed the requisite line-by-line adjustment to ascertain

that amount.  *See* discussion *infra*, Part I.D.

**B.    The Seventh Amendment Prohibits a Subsequent Jury from Reexamining any Fact that the McIntosh Jury Necessarily Found to Reach Its Verdict.**

The Seventh Amendment's Reexamination Clause precludes parties from re-litigating

factual issues decided by a prior jury in the same case.  This preclusive effect is not limited to the

jury's ultimate determination of liability on a claim, but more broadly includes all issues and

facts that the first jury resolved.  Courts have held that the Reexamination Clause guarantees "the

general right of a litigant to have only one jury pass on a *common issue of fact*."  *McDaniel v.*

*Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (emphasis added); *see also In re Rhone-*

*Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (holding that Seventh Amendment

interests include "a right to have juriable issues determined by the first jury impaneled to hear

them … and not reexamined by another finder of fact.").  The relevant question is whether

"successive juries would pass on *issues* decided by prior ones."  *Allison v. Citgo Petrol. Corp.*,

151 F.3d 402, 420 (5th Cir. 1998) (emphasis added).

The Reexamination Clause gives preclusive effect to all predicate findings that the jury

necessarily made in reaching its verdict.  As one circuit court has held, "we 'must consider what

findings are explicit *or necessarily implied* by the verdict.'"  *Bangert Bros. Constr. Co. v. Kiewit*

*W. Co.*, 310 F.3d 1278, 1299 (10th Cir. 2002) (emphasis added); *see also SEC v. Goldstone*, 233

F. Supp. 3d 1169, 1210 n.18 (D.N.M. 2017) ("[T]he … 're-examination' Clause entails that

those factual findings that are necessarily implicit in the jury's verdict bind a finder of fact at a

subsequent trial.").[2]  Thus, the preclusive effect of the McIntosh verdict under the

---

[2] *See also E.E.O.C. v. DCP Medstream, L.P.*, 608 F. Supp. 2d 107, 108 n.1 (D. Me. 2009); *Williams v.*

Reexamination Clause is not, as State Farm wrongly yet repeatedly has suggested, limited to specific statements on a verdict form.  *See, e.g.*, State Farm's Opp. to Relators' Br. Re Severance (Feb. 26, 2018) [ECF No. 1365] at 15-18; State Farm's Resp. to Relators' Pr. Post-Appeal Br. Re Scope of Discovery (Feb. 29, 2016) [ECF No. 1262] at 8-11.  As a result, State Farm cannot re-litigate whether W-5054 required a line-by-line estimate or whether State Farm had permission from FEMA to ignore that requirement.[3]

### C.   The Mandate Rule Bars Relitigation of Whether Compliance with W-5054's Requirement for a Line-by-Line Adjustment Is Material.

The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Fuhrman v. Dretke*, 442 F.3d 893, 897 (5th Cir. 2006).  Materiality in an FCA action is a mixed question of law and fact for the Court to decide.  *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 914 n.4 (4th Cir. 2003); *United States ex rel. American Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l*, 600 F. App'x 969, 973 (6th Cir. 2015); *United States v. Southland Mgm't Corp.*, 95 F. Supp. 2d 629, 637 (S.D. Miss. 2000), *aff'd*, 326 F.3d 669

---

*Bridgeport Music, Inc.*, No. LA CV13-06004 JAK (AGRx), 2015 WL 4479500, at *27 (C.D. Cal. July 14, 2015); *In re City of Phila. Litig.*, 938 F. Supp. 1278, 1290 n.12 (E.D. Pa. 1996), *aff'd*, 158 F.3d 711 (3d Cir. 1998), and *aff'd*, 158 F.3d 723 (3d Cir. 1998).  Courts also often look to collateral estoppel principles for guidance in applying the Reexamination Clause's preclusive effect.  *See, e.g.*, *Bangert Bros.*, 310 F.3d at 1299; *Goldstone*, 233 F. Supp. 3d at 1210 n.18.  Courts in that context likewise hold that "the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *see also Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312 (5th Cir. 1999) ("[F]or the federal doctrine of collateral estoppel to apply … the disposition of those issues must have been 'necessary to the outcome' of the prior … litigation.") (citing *Parklane*, 439 U.S. at 326 n.5).

[3] State Farm previously has sought to mislead the Court by conflating the Seventh Amendment's preclusive effect with the extrapolation of prior findings to entirely new circumstances, which the Rigsbys do not seek in this motion.  *See, e.g.*, ECF No. 1365 at 16-17; ECF No. 1262 at 9-10.  The Rigsbys do not ask this Court to divine facts about the ▮▮▮▮ property by extrapolating from facts decided about the McIntosh property.  They simply assert their constitutional right to prevent State Farm from re-litigating facts that the McIntosh jury decided about what FEMA required for *all* Katrina flood claims.  Jury findings concerning the applicability, requirements, and materiality of W-5054 involve no extrapolation because they do not change from one property to the next.

(5th Cir. 2003); *United States v. Intervest Corp.*, 67 F. Supp. 2d 637, 647 (S.D. Miss. 1999). The Fifth Circuit resolved the materiality of W-5054's line-by-line requirement in the Rigsbys' favor on appeal. The parties disputed on appeal whether compliance with W-5054 had to be a prerequisite to payment in order to provide an alternate basis for upholding the McIntosh jury's verdict. *Rigsby*, 794 F.3d at 478 n.14. The Fifth Circuit determined that the question was moot, however, because compliance with W-5054 was not only material, but a prerequisite to payment. *Id.* The Fifth Circuit explained that FEMA regulations required compliance with FEMA guidelines and procedures, that W-5054 itself indicated "that FEMA took compliance seriously," and that "FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP." *Id.*; *see also* discussion *supra* at 7-8.

> **D.   Issues Decided by the McIntosh Jury and the Fifth Circuit Together with Admissions Made by State Farm Establish Under *Escobar* that State Farm Submitted a False Claim on the ███ Property.**

The McIntosh jury, the Fifth Circuit, and State Farm itself have resolved questions of fact and law sufficient to establish State Farm's FCA liability under *Escobar*. The Fifth Circuit confirmed that the McIntosh jury necessarily decided that State Farm knew that W-5054 required line-by-line damage assessments of Katrina flood claims and that State Farm lacked any generalized permission to deviate from that requirement. *Rigsby*, 794 F.3d at 463, 469. The Fifth Circuit likewise determined as a matter of law that compliance with the line-by-line requirement was a prerequisite to payment under the NFIP. *Id.* at 478 n.14. The Seventh Amendment and the mandate rule preclude State Farm from re-litigating these issues. *See* discussion *supra*, Parts I.B and C.

State Farm previously has insisted that the Rigsbys only can establish liability by demonstrating that it overpaid for flood damage based on "an individual analysis of each unique property at issue." SF Rebuttal re Severance at 7. State Farm's argument ignores *Escobar*,

which unambiguously establishes that the Rigsbys also can establish liability by showing that

State Farm implicitly and falsely certified that it had performed the required line-by-line

adjustment, and that the requirement was material.  136 S. Ct. at 2001.  No further proceedings

are necessary to establish State Farm's liability for implied false certification because the

necessary facts have been established either by the McIntosh Jury or State Farm's admissions in

the List.  By putting the ████ home on the List, State Farm admitted that "no 'stick built' or

Exactimate estimation of the flood damage was made before the SFIP limits were paid" and that

"[t]he property did not fall within any of the … categories of storm damage for which FEMA

approved payment of SFIP limits."  Aug. 2009 Order at 11.[4]

  Accordingly, State Farm either has admitted or cannot dispute that:

- It knew that W-5054 required it to perform line-by-line adjustments for the ████ property;

- The government required compliance with W-5054 as a prerequisite to payment on the ████ flood claim;

- State Farm did not perform a line-by-line adjustment on the ████ property; and

- State Farm nevertheless submitted and paid the limits of the ████ property without disclosing its noncompliance with W-5054.

These facts prove State Farm's FCA liability for the ████ property under *Escobar*.

  The defendant in *Escobar* made specific representations concerning the treatments it had

provided and for which it sought payment.[5]  136 S. Ct. at 2000-2001.  The Supreme Court held

---

[4] Judicial admissions are "conclusive," "binding on the party making them," and "ha[ve] the effect of withdrawing a fact from contention."  *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) (internal quotation marks omitted).  "'A party cannot attack issues of fact established in admissions by resisting a motion for summary judgment.'"  *Wilson v. Stachura*, No. 1:10CV66-RHW, 2012 WL 4602756, at *4 (S.D. Miss. Oct. 1, 2012) (quoting *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)).

[5] The Supreme Court did not resolve whether "all claims for payment implicitly represent that the billing party is legally entitled to payment," though at least two circuit courts have held mere submission of a

that "these representations were clearly misleading in context" because they failed to disclose that the relevant employees were not qualified to provide those services.  *Id.* at 2000.  State Farm likewise made a "specific representation" in this case that the government owed $200,000 on the ███ flood claim, a determination that could only permissibly be derived through a line-by-line damage adjustment.  State Farm's representation was similarly "misleading in context" because State Farm "fail[ed] to disclose noncompliance with material statutory, regulatory, or contractual requirements."  *Id.* at 2001.  Specifically, State Farm failed to disclose that it had not performed the line-by-line adjustment that FEMA required and in fact concealed that noncompliance by placing a misleading XacTotal report in its claim file.  Just like anyone reviewing the defendant's submissions in *Escobar* would reasonably but wrongly conclude that the clinic had complied with core Medicaid requirements, anyone reviewing State Farm's submission of the ███ flood claim would reasonably, but wrongly, conclude that State Farm had performed the required line-by-line assessment.

Other courts applying *Escobar* have found analogous facts sufficient to support implied false certification claims.  In *Triple Canopy*, for example, the plaintiffs alleged that, despite a contractual requirement that all guards regularly qualify with specified firearms, Triple Canopy hired guards who "were unable to meet th[e] marksmanship requirement."  857 F.3d at 175.  Then, "[r]ather than inform the Government of this deficiency," Triple Canopy submitted monthly invoices for those unqualified guards.  *Id.*  The defendant argued that "it merely submitted invoices listing the number of guards and hours worked and these invoices contained

---

claim is sufficient.  136 S. Ct. at 2000; *accord United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 n.3 (4th Cir. 2017), *cert. dismissed*, 138 S. Ct. 370 (2017); *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1269 (D.C. Cir. 2010).  State Farm, however did not merely present a claim for payment but rather made affirmative misleading representations about its compliance with W-5054.

no falsities on their face." *Id.* at 178.  Applying *Escobar*, the Fourth Circuit rejected the

defendant's argument and reversed the district court's order dismissing the case:

> [A]lthough Triple Canopy knew its "guards" had failed to meet a
> responsibility in the contract, it nonetheless requested payment each month
> from the Government for those "guards."  Just as in [*Escobar*], anyone
> reviewing Triple Canopy's invoices "would probably—but wrongly—
> conclude that [Triple Canopy] had complied with core [contract]
> requirements."

*Id.* (quoting *Escobar*, 136 S. Ct. at 2000) (third and fourth alterations in original).  Similarly, in

*United States ex rel. Beauchamp v. Academi Training Center*, 220 F. Supp. 3d 676, 678 (E.D.

Va. 2016), the relators pled that "rather than properly administering [required] firearms

requalification tests, defendant's … instructors simply fabricated scores for the tests and

recorded those scores on official government scorecards."  *Id.* at 678-79.  The court noted that

the similarities between these misrepresentations and *Escobar* "are striking" and ruled that they

were sufficient to state an implied false certification claim because, as in *Escobar*, the invoices'

failure to disclose the personnel's lack of qualifications was misleading in context.  *Id.* at 681.[6]

Just as the instructors in *Beauchamp* failed to actually score its personnel's hits with firearms on

a prescribed target by counting hole-by-hole, State Farm failed to assess the extent of covered

flood damage line-by-line.  This Court should apply *Escobar* similarly to these analogous facts.

---

[6] Numerous courts have applied *Escobar* to hold that Relators pled or proved FCA liability for implied false certification based on similar facts.  *See also United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 197-98 (D.D.C. 2017) (failure to disclose performance-enhancing drug use); *United States v. Anderson*, 271 F. Supp. 3d 950, 957 (M.D. Tenn. 2017) (drugs dispensed without a valid prescription); *Jacobs v. Bank of Am. Corp.*, No. 1:15-CV-24585-UU, 2017 WL 2361943, at *13 (S.D. Fla. Mar. 21, 2017), *on reconsideration*, 2017 WL 2361944 (S.D. Fla. Apr. 27, 2017); *United States ex rel. Laporte v. Premiere Educ. Grp., L.P.*, No. CV 11-3523 (RBK/AMD), 2017 WL 3471163, at *3 (D.N.J. Aug. 11, 2017); *United States v. Visiting Nurse Serv. of New York*, No. 14-CV-5739 (AJN), 2017 WL 5515860, at *8 (S.D.N.Y. Sept. 26, 2017) (failure to disclose that billed-for health care services were not provided in accordance with the required Plan of Care); *United States ex rel. Scollick v. Narula*, No. 14-CV-01339-RCL, 2017 WL 3268857, at *11 (D.D.C. July 31, 2017) (failure to disclose that its management was not controlled by a service-disabled veteran).

**II.     The Government is Entitled to Treble the Total Amount Paid on the ▮▮▮▮ NFIP Claim Plus a Statutory Penalty.**

    **A.     State Farm is Liable for Every Dollar the Government Paid Because the Government Received no Direct Benefit.**

Forty years of controlling Fifth Circuit precedent holds that where the government received no direct benefit in return for payments induced by an FCA defendant's false claims, the defendant is liable for treble damages on every dollar that the government paid.  Here, State Farm must pay $600,000, treble the amount of government money it paid to the ▮▮▮▮, plus a civil penalty and attorney's fees.  Even if the Court declines to follow this precedent, however, it still should grant summary judgment on the existence of State Farm's liability for the reasons discussed in the preceding section so that the parties and the Court can streamline further proceedings to facilitate the calculation of the government's damages.

In *United States ex rel. Longhi v. Lithium Power Technologies*, 575 F.3d 458, 462-63 (5th Cir. 2009), the government paid $1,657,455 in research grants due to the defendants' false statements in their grant applications.  The defendants argued that the government had suffered no injury, and therefore was entitled to no damages, because the grant agreement did not require the defendants to deliver any good or service in exchange for the grant.  *Id.* at 472.  The Fifth Circuit acknowledged that "[t]he contracts entered into between the government and the Defendants did not produce a tangible benefit to the [government].  These were not, for example, standard procurement contracts where the government ordered a specific product or good."  *Id.* at 473.  The Fifth Circuit concluded, however, that defendants must pay more, not less, in FCA damages for such transactions.  The court held that "where there is no tangible benefit to the government and the intangible benefit is impossible to calculate, *it is appropriate to value damages in the amount the government actually paid to the Defendants*."  *Id.* (emphasis added).

The Fifth Circuit applied this same principle to determine the government's damages in an earlier FCA case involving Medicare, which aside from the NFIP is the only FCA context in which the government acts as an insurer for third parties. In *Peterson v. Weinberger*, 508 F.2d 45, 47-48 (5th Cir. 1975), the defendant healthcare providers sought Medicare payments for physical therapy services that had not been administered by certified practitioners. The defendants argued that because "the … services were performed by qualified [but not certified] people, [and] the patients receiving these services were entitled to them under Medicare, there was no financial loss to the Government." *Id.* at 52. The Fifth Circuit rejected that argument as "unsound," holding that "the services billed were plainly not 'covered' services" because they were not "personally rendered … or under [the] personal direction" of a certified provider. *Id.* The Fifth Circuit affirmed a judgment awarding the government the full amount paid on those false claims. *Id.* at 55. The district court in *Longhi* explained that *Peterson* stands for the proposition that "[t]he benefit of the government's bargain was medical services provided by *eligible* doctors. Even though fully qualified staff may have performed the physical therapy, the claims for payment were false. Therefore, the court found that the government had been damaged for the full amount." *United States ex rel. Longhi v. Lithium Power Techs.*, 530 F. Supp. 2d 888, 896 (S.D. Tex. 2008), *aff'd*, 575 F.3d 458 (5th Cir. 2009) (emphasis in original); *cf.* S. Rep. No. 99-345 at 9-10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274-75 (citing *Peterson* as example of proper application of FCA in Medicare context).

Other circuits also have held that the government is entitled to recover the full amount paid on a false claim when it received no direct benefit for its payment, particularly in the analogous Medicare insurance context. In *United States v. Rogan*, 517 F.3d 449, 451-52 (7th Cir. 2008), the defendant managed a medical center that paid illegal kickbacks to physicians.

20

Although the government alleged that the defendant had overbilled or wrongly billed some services, the Seventh Circuit held that those facts were inconsequential because the government had derived no benefit from the payments, which were made for the benefit of Medicare recipients, not the government.  "Nor do we think it important that most of the patients for which claims were submitted received some medical care—perhaps all the care reflected in the claim forms. … *Edgewater did not furnish any medical service to the United States*."  *Id.* at 453 (emphasis added).  The court concluded that where the government's payments were preconditioned on the defendant's false statement and the government derived no benefit for that payment, the government was entitled to recover every dollar it paid.  The court made clear that it did not matter whether the defendant had actually rendered a valuable service to the Medicare patients or that the government might have paid for that service under other circumstances.

> The government offers a subsidy (from the patients' perspective, a form of insurance), with conditions.  When the conditions are not satisfied, nothing is due.  Thus the entire amount that Edgewater received on these 1,812 claims must be paid back.  Now it may be that, if the patients had gone elsewhere, the United States would have paid for their care.  Or perhaps the patients, or a private insurer, would have paid for care at Edgewater had it refrained from billing the United States.  *But neither possibility allows Rogan to keep money obtained from the Treasury by false pretenses, or avoid the penalty for deceit.*

*Id.* at 453 (emphasis added).

The Ninth Circuit applied similar reasoning in *United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003).  As in *Rogan*, the court reasoned that where the government received no direct benefit from the Medicare payments, it was entitled to recover the full amount of those payments from the defendant.  *See id.* at 1018.  The court said, "[t]he fact that Mackby's clinic actually performed the physical therapy for which he claimed reimbursement does not eliminate the government's injury.  *Damages under the FCA flow from the false statement.*"  *Id.* at 1018 (emphasis added).  The court explained further that "Congress specifically rejected a 'no harm,

no foul' argument in the FCA's legislative history." *Id.* (citing S. Rep. No. 99-345 at 9 (1986),

*reprinted in* 1986 U.S.C.C.A.N. 5266, 5275); *see also Longhi*, 530 F. Supp. 2d at 896 ("[T]he

Fifth Circuit has expressly rejected this 'no harm, no foul' argument."). Other circuits likewise

have applied the same reasoning to reach the same result.[7]

       This case falls squarely into the category of FCA actions described by *Longhi*, *Peterson*,

*Rogan*, *Mackby*, and their kin. The government paid $200,000 on the ▮▮▮▮ flood claim as a

result of State Farm's false statement that it had complied with FEMA's requirement for a line-

by-line adjustment of that loss. Yet the ▮▮▮▮, not the government, received the benefit of that

payment. Because State Farm "fraudulently sought payments for participating in programs

designed to benefit third-parties rather than the government itself, the government can easily

establish that it received nothing of value from the defendant and that all payments made are

therefore recoverable as damages." *Science Applications Int'l Corp.*, 626 F.3d at 1279 (citing

*Longhi*, 575 F.3d at 473, *United States v. TDC Mgm't Corp.*, 288 F.3d 421, 428 (D.C. Cir. 2002),

and *Rogan*, 517 F.3d at 453). As in *Longhi*, *Peterson*, *Rogan*, and *Mackby*, it does not matter

that the defendant may have delivered a service of some lesser value. State Farm did not provide

the service for which the government bargained and therefore is liable for treble damages on

every dollar that it fraudulently induced the government to pay.

---

[7] *See, e.g.*, *United States v. Anghaie*, 633 F. App'x 514, 519 (11th Cir. 2015) ("'[W]here the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages.'"); *United States ex rel. Feldman v. Van Gorp*, 697 F.3d 78, 88 (2d Cir. 2012) (holding damages equal to full amount government paid "where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself … [because] *the government receives nothing of measurable value*") (emphasis added); *Science Applications Int'l Corp.*, 626 F.3d at 1279; *United States ex rel. Liotine v. CDW Gov't, Inc.*, No. 05-33-DRH, 2012 WL 2807040, at *11 (S.D. Ill. July 10, 2012).

**B.      This Court Should Impose the Maximum Penalty for State Farm's Fraud.**

This Court also should impose the maximum civil penalty of $11,000 for State Farm's

conduct on the █████ claim.  *See* 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9).  In exercising its

discretion to award a penalty within the applicable range that Congress has prescribed, courts

consider the seriousness of the defendant's misconduct, the level of scienter, and the damage to

the United States.  *See United States ex rel. Miller v. Bill Harbert Int'l Constr.*, 501 F. Supp. 2d

51, 56-57 (D.D.C. 2007); *Longhi*, 530 F. Supp. 2d at 901.  Here, State Farm's fraudulent

profiteering in the wake of a natural disaster more than warrants the maximum penalty.

## <u>CONCLUSION</u>

For the foregoing reasons, the Rigsbys respectfully request that this Court grant their

motion and enter an order finding State Farm liable for $611,000 for its FCA violation with

respect to the █████ flood insurance claim.

Respectfully submitted on this 23rd day of April, 2018.

                                         /s/August J. Matteis, Jr.

August J. Matteis, Jr. (admitted *pro hac vice*)        C. MAISON HEIDELBERG, MB #9559
amatteis@wmclaw.com                                      mheidelberg@whjpllc.com
William E. Copley (admitted *pro hac vice*)              GINNY Y. KENNEDY, MB #102199
wcopley@wmclaw.com                                       gkennedy@whjpllc.com
Pamira Shah Matteis (admitted *pro hac vice*)            WATSON HEIDELBERG JONES PLLC
pmatteis@wmclaw.com                                      2829 Lakeland Drive
Matthew S. Krauss (admitted *pro hac vice*)              Mirror Lake Plaza
mkrauss@wmclaw.com                                       Suite 1502
Derek Y. Sugimura (admitted *pro hac vice*)              Flowood, Mississippi 39232
dsugimura@wmclaw.com                                     Tel: (601) 939-8900
William E. Jacobs (admitted *pro hac vice*)
wjacobs@wmclaw.com
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave., N.W., Suite 600
Washington, D.C. 20036
Tel:  (202) 499-7900

*Attorneys for Cori Rigsby and Kerri Rigsby*

## <u>CERTIFICATE OF SERVICE</u>

I, August J. Matteis, Jr., attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this 23rd day of April, 2018, caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

/s/August J. Matteis, Jr.