IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
June 29, 2018
Lyle W. Cayce
Clerk

No. 17-60720

United States of America, ex rel, CORI RIGSBY; KERRI RIGSBY,

 Plaintiffs - Appellees

v.

STATE FARM FIRE & CASUALTY COMPANY; ET AL.

 Defendants

v.

GILBERT, L.L.P.,

 Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-433

Before SMITH, WIENER, and WILLETT, Circuit Judges.

WIENER, Circuit Judge:*

  Relator-Appellees Cori and Kerri Rigsby ("Relators") filed a False Claims Act action against State Farm. Appellant Gilbert LLP ("Gilbert"), a law firm,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 17-60720   Document: 00514565976   Page: 2   Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW   Document 1409   Filed 07/23/18   Page 2 of 11

No. 17-60720

had represented Relators before being replaced by a new firm co-founded by August Matteis, a former Gilbert attorney. Relators prevailed at trial and asked Gilbert to participate in their fee petition. Gilbert provided an unedited spreadsheet of its fees and expenses, but declined to attest to their reasonableness or to state whether it had exercised billing judgment. Relators submitted that spreadsheet to the district court, which awarded some, but not all, of the listed fees and expenses. After Relators' award was upheld on appeal four years later, they moved to extinguish Gilbert's attorney lien. Gilbert responded that Relators owed it nearly $2 million more than the district court had allocated, but significantly less than the remainder from the spreadsheet. This time, Gilbert exercised billing judgment and provided supporting details. The district court extinguished Gilbert's lien, and Gilbert appeals. We affirm.

I. FACTS AND PROCEEDINGS

In 2006, Relators filed this action against State Farm pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq*.[1] Their complaint alleged that State Farm "submitted false claims to the United States government for payment on flood policies arising out of damage caused by Hurricane Katrina."[2]

In 2008, Relators retained Gilbert as primary counsel and Heidelberg PA ("Heidelberg") as local counsel.[3] Gilbert's engagement letter with Relators provided for a contingent fee. That letter also contained the following termination provision:

> In the event that this representation is terminated prior to the conclusion of this matter, you agree to reimburse [Gilbert] for costs

---

[1] The suit also named other defendants, but appears to have proceeded only on claims against State Farm. *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 462 (5th Cir. 2015), *aff'd sub nom. State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436 (2016).

[2] *Rigsby*, 794 F.3d at 462.

[3] Gilbert and Heidelberg apparently underwent several name changes over the course of the litigation. For consistency and simplicity, we refer to them as "Gilbert" and "Heidelberg."

Case: 17-60720      Document: 00514565976     Page: 3     Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW   Document 1409   Filed 07/23/18   Page 3 of 11

No. 17-60720

and expenses as provided above . . . . In addition, [Gilbert] will be entitled to receive payment of its attorneys' fees out of any ultimate award or settlement that you receive . . . . Such payment will be made on the basis of its customary hourly rates rather than on a contingency-fee basis. However, if [Gilbert's] representation is terminated by you, and you eventually recover proceeds . . . , [Gilbert] reserves the right to seek a partial contingency fee award from the court, if appropriate.

In 2011, two of the Gilbert attorneys who represented Relators, including the lead attorney, Matteis, left Gilbert to co-found Weisbrod Matteis & Copley PLLC ("WMC"). Relators wanted to keep Matteis as their lead counsel, so they terminated Gilbert's representation and retained WMC. In January 2013, Gilbert filed a lien notice on Relators' potential recovery.

The district court limited discovery in the underlying litigation to two instances of alleged misconduct (known as the "McIntosh claim").[4] That claim went to trial a few months after Gilbert filed its lien, and Relators prevailed. Shortly thereafter, in April 2013, WMC requested that Gilbert submit a fee petition to the court in connection with Relators' own fee petition for WMC's fees. Gilbert responded that it had "concluded that it [would] not [be] appropriate" to do so, because the statute provided for only a relator, not a former attorney, to petition for fees. Gilbert did, however, offer to send Relators its "time and expense records" following a "clerical clean-up" of those records.

Matteis responded, "I think it would be a mistake not to put this in front of the Court at this time" because "I have no interest in seeing you waive your opportunity to request fees in this matter." But, Matteis added, "it is our view that the lien [Gilbert] filed establishes adversity between [Gilbert] and

---

[4] *See Rigsby*, 794 F.3d at 464–66 (explaining that the court sought to "strike a balance between the Relators' interest in identifying . . . other allegedly false claims and the defendants' interest in preventing a far ranging and expensive discovery process" (omission in original)).

Case: 17-60720 Document: 00514565976 Page: 4 Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW Document 1409 Filed 07/23/18 Page 4 of 11

No. 17-60720

[Relators]." Matteis then explained to Gilbert that he would submit that firm's billing information, but would give no opinion whether that information was reasonable.[5] He did suggest to Gilbert that it submit a declaration attesting to the reasonableness of its own fees.

Gilbert sent Matteis a spreadsheet "reflecting [Gilbert's] reasonable fees and expenses," but did not send a reasonableness declaration.[6] Several days later, in May 2013, Relators filed a motion for an award of fees and expenses for work performed by WMC, Heidelberg, and Gilbert. Relators submitted invoices and attested to the reasonableness of the fees and expenses for Heidelberg and WMC, and included Gilbert's spreadsheet.[7] Relators requested $1,232,735.06 in fees and expenses for WMC, and $287,346.34 for Heidelberg. Relators added:

> Relators' former counsel, Gilbert LLP, has presented a fee petition in the amount of $4,575,460.00 in fees, and $649,843.67 in expenses and costs, which is included here. In light of the adversity between Gilbert LLP and Relators, as evidenced by the lien that Gilbert LLP filed . . . , Relators ask the Court to award all fees and expenses for Gilbert LLP that the Court deems reasonable after affording Gilbert LLP an opportunity to be heard regarding the reasonableness of Gilbert's proffered fees and costs.

In its February 2014 ruling on that motion, the district court found several problems with Gilbert's spreadsheet. It identified timekeepers by initials only, so the court could not determine the positions or level of

---

[5] A Relator may only recover reasonable fees. *See* 31 U.S.C. § 3730(d)(2).

[6] On receipt, Matteis wrote to Gilbert, noting "[a]t first glance, I noticed that the first page has some entries from another matter," and asking Gilbert to "take another look." It is unclear whether Gilbert sent an updated spreadsheet.

[7] Before Gilbert's representation was terminated, it had paid Heidelberg's fees directly. As a result, Heidelberg's fees from the time before Gilbert was terminated were included in the spreadsheet as part of Gilbert's expenses. Conversely, Relators supporting materials for Heidelberg's fees in the fee petition pertained only to the period after Gilbert's representation was terminated.

4

Case: 17-60720 Document: 00514565976 Page: 5 Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW Document 1409 Filed 07/23/18 Page 5 of 11

No. 17-60720

experience of the billing attorneys, except for Matteis and the other attorney who had transferred from Gilbert to WMC. The court thus was unable to determine the reasonableness of Gilbert's fees, so it did not award fees for any entries except those of Matteis and the other attorney who had moved from Gilbert to WMC. The court also reduced the hourly rates claimed for those two attorneys.[8] The court awarded Relators $1,501,938.80 for Gilbert's fees, $838,573.80 for WHC's fees, and $269,637.20 for Heidelberg's fees.

As for expenses, the court stated that Gilbert's spreadsheet contained "sparse detail," which was "insufficient to inform the Court whether some of the expenses were reasonable or even related to this case." The court awarded Relators $180,756.78 for Gilbert's expenses, $117,071.38 for WMC's expenses, and $5,250.73 for Heidelberg's expenses. The court also awarded $758,250 to the United States Government, and 30% of that amount to Relators, pursuant to 31 U.S.C. § 3730(d)(2).

State Farm appealed the verdict, and we affirmed.[9] We did, however, reverse the district court's refusal to permit post-trial discovery on the allegations of additional false claims beyond the McIntosh claim.[10] The litigation on the broader scheme thus remains ongoing.

The Supreme Court affirmed this court's ruling in December 2016.[11] State Farm then tendered payment of Relators' award.

One month after the Supreme Court's decision, in January 2017, Gilbert wrote to Matteis, stating that the district court's 2014 fee award order "is not

---

[8] The court also removed one time entry.
[9] *Rigsby*, 794 F.3d at 481.
[10] *See id.* at 465–70.
[11] *See State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 445 (2016). The Supreme Court granted certiorari on an issue unrelated to this appeal. *See id.* at 439–40.

5

Case: 17-60720 Document: 00514565976 Page: 6 Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW Document 1409 Filed 07/23/18 Page 6 of 11

No. 17-60720

a determination of Gilbert's rights in [Relators'] recovery under the [lien]." Gilbert claimed that Relators owed Gilbert $5,225,303.67, the entire amount from its spreadsheet.[12] Gilbert acknowledged that Relators' total award, including all fees and expenses, was $3,140,703.69[13] and wrote "[w]e trust that neither [WMC] nor [Relators] will take any steps that would divert monies subject to Gilbert's lien." Later that month, Gilbert offered to accept payment of $1,688,449.52, the amount that the court had allocated to Gilbert in its award,[14] as partial satisfaction of the lien, and to accept the balance from any future recovery in the ongoing litigation. Gilbert added that if the parties could not resolve the issue, it would sue Relators.

Days later, Relators paid Gilbert $1,688,449.52, and moved to extinguish Gilbert's lien. Gilbert countered by moving to set the remaining value of its lien at $1,901,968.53, considerably less than the remainder that the court did not award from Gilbert's 2013 spreadsheet.[15] Gilbert explained that the 2014 spreadsheet was "largely unedited," but it had now applied billing discretion to remove several entries and reduce the billing rates.[16] The court extinguished the lien, ruling that Gilbert had unclean hands and had slept on its rights. Gilbert appealed.

---

[12] $4,575,460.00 for fees and $649,843.67 for expenses.
[13] $227,475.00 as 30% of the government's recovery plus $2,913,228.69 in total attorney fees and expenses.
[14] $1,682,695.58, plus post-judgment interest.
[15] Gilbert asserted that the remaining value of its lien related to fees was $1,467,464.00, and the value related to expenses was $434,504.53. In contrast, the amounts from the 2013 spreadsheet that the court declined to award in its fee petition order were $3,073,521.20 ($4,575,460.00 – $1,501,938.80) and $469,086.89 ($649,843.67 – $180,756.78), respectively.
[16] For example, Gilbert deleted entries that represented time incurred by summer associates and its IT department.

6

No. 17-60720

II. ANALYSIS

The parties agree that Gilbert's fee request is based on quantum meruit. "Where the recovery is based in quantum meruit, the amount of recovery is 'limited to the monetary equivalent of the reasonable value of the services . . .' for which payment has not been tendered."[17] The Mississippi Supreme Court has laid out factors for determining the amount of attorney fees that are reasonable in quantum meruit.[18]

But a quantum meruit claim is subject to equitable defenses, one of which provides that "equity aids the vigilant and not those who slumber on their rights."[19] If one party's delay causes "a serious injustice" to the other party, this maxim can prevent the delaying party's recovery.[20] Mississippi courts have applied it to bar a delaying party's recovery.[21] The district court found that Gilbert perpetrated such a delay, which had prevented the Relators from seeking Gilbert's fees from State Farm. The district court concluded that

---

[17] *Poole v. Gwin, Lewis & Punches, LLP*, 792 So. 2d 987, 991 (Miss. 2001) (quoting *In re Estate of Stewart*, 732 So. 2d 255, 259 (Miss. 1999)); *see also In re Estate of Gillies*, 830 So. 2d 640, 645–46 (Miss. 2002) (discussing quantum meruit attorney fee awards).

[18] *See Gillies*, 830 So. 2d at 645–46.

[19] *Reeves v. Meridian S. Ry., LLC*, 61 So. 3d 964, 967 (Miss. Ct. App. 2011) (quoting *In re Estate of Davis*, 510 So. 2d 798, 800 (Miss. 1987)); *cf. Poole*, 792 So. 2d at 991 (Under Mississippi law, "*quantum meruit* claims are equitable in nature[.]"). *But see Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 704 (5th Cir. 1999) ("Despite its equitable nature, however, quantum meruit is an action at law.") (applying Texas law).

[20] *Osborne v. Vince*, 129 So. 2d 345, 348 (Miss. 1961) (internal quotation marks and citation omitted); *see Nunnery v. Nunnery*, 195 So. 3d 747, 753 (Miss. 2016) (upholding the application of the maxim and noting "the deleterious effect [of the delay] on the parties").

[21] *See In re Last Will & Testament of Winding v. Estate of Winding*, 783 So. 2d 707, 711 (Miss. 2001) (applying the maxim when the party waited over three years to contest a will, despite knowing about the probate proceedings); *Davis*, 510 So. 2d at 800 (barring a party's attempt to contest a will when they had failed to file suit for nineteen months, despite knowing of the potential claim).

7

Case: 17-60720    Document: 00514565976    Page: 8    Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW   Document 1409   Filed 07/23/18   Page 8 of 11

No. 17-60720

Gilbert's decision to sleep on its rights barred its recovery.[22] We review application of this equitable defense for abuse of discretion.[23]

Gilbert characterizes this argument as a "Hail Mary," but does not dispute Relators' contention that Gilbert could have moved to value its lien at the time of the 2013 fee petition rather than waiting four years. Although the lien could not attach until the district court entered a judgment in favor of Relators against State Farm,[24] Gilbert had filed notice of the lien's existence long before there were proceeds to which the lien could attach.[25] Gilbert

---

[22] Gilbert disputes that the district court ruled that it slept on its rights as a basis for extinguishing the lien. But the district court clearly stated that Gilbert "sat on its rights," after noting that "Gilbert asks the Court to repeat the [fee petition] exercise again, through a different vehicle." It is, however, unclear whether the district court incorporated this issue into its unclean-hands finding or considered it a separate issue. Mississippi courts generally consider the maxim "equity aids the vigilant and not those who slumber on their rights" to be distinct from "he who comes into equity must come with clean hands." *See* JAMES W. SHELSON, MISSISSIPPI CHANCERY PRACTICE §§ 2:26, 2:27 (2018 ed.). Ultimately, either equitable defense will bar recovery when the party seeking recovery committed some wrong that harmed the other party. *See id.* Moreover, we may affirm on any grounds presented in the record. *See Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007).

[23] *See United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235–36 (5th Cir. 1977) (stating that district court did not abuse its discretion finding that party's action was untimely when party had "slept on its rights"); *Laitram Corp. v. Deepsouth Packing Co.*, 443 F.2d 928, 936 (5th Cir. 1971) (finding no abuse of discretion in court's rejection of equitable defense); *see also St. Paul Fire & Marine Ins. v. State Volunteer Mut. Ins. Co.*, 212 F.3d 595, at *3 (5th Cir. 2000) (unpublished) (reviewing application of waiver, estoppel, and laches for abuse of discretion).

[24] *See Bar-Til, Inc. v. Superior Asphalt, Inc.*, 219 So. 3d 553, 556 (Miss. Ct. App. 2017) (explaining that a charging lien attaches on a final judgment); *see also Estate of Stevens v. Wetzel*, No. 96-CA-00343COA, 1999 WL 58566, at ¶14 (Miss. Ct. App. Feb. 9, 1999), *aff'd in part, rev'd in part on other grounds*, 762 So. 2d 293 (Miss. 2000) (concluding that a former attorney may have a charging lien on a recovery). *But see Tyson v. Moore*, 613 So. 2d 817, 826 (Miss. 1992) ("[T]he charging lien only applies to funds already in the attorney's possession." (citations omitted)).

[25] That liens can exist before attachment is generally clear in jurisdictions where attorney liens are governed by statute. *See, e.g., Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 409 P.3d 795, 802 (Idaho 2017), *reh'g denied* (Feb. 2, 2018). *But cf. City of Oronoco v. Fitzpatrick Real Estate, LLC*, 869 N.W.2d 332, 337–38 (Minn. Ct. App. 2015), *aff'd*, 883 N.W.2d 592 (Minn. 2016) (stating that statute provides that lien attaches when cause of action commences). But Mississippi has no such statute. *Bar-Til*, 219 So. 3d at 557.

8

Case: 17-60720 Document: 00514565976 Page: 9 Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW Document 1409 Filed 07/23/18 Page 9 of 11

No. 17-60720

primarily contends that it could not have taken any action in 2013 because, as a non-party, it could not participate in the fee petition.[26] Yet Gilbert could have moved to value its lien without participating in the fee petition. Simply put, Gilbert delayed moving to value its lien for four years.[27] Had it done so in 2013, the district court could have determined the value of the lien, independent of the fee petition, and Relators could have includes that amount in their fee petition.

Gilbert presents no reason for its nearly four-year delay, and it is unlikely that it could do so: It had access to the same information during that entire time. Because Gilbert's representation of Relators was terminated, its fee was hourly and thus determinable independent of the amount of the judgment.[28] More importantly, Gilbert *knew* that Relators were seeking fees from State Farm at that time and that Relators wanted to include Gilbert's fees in that petition.

---

[26] Much of Gilbert's argument concerns the alleged inappropriateness of its participation in Relators' fee petition. For example, Gilbert contends that requiring it to participate in the 2013 fee petition would have been tantamount to requiring it to provide legal services to Relators because Gilbert would have had to exercise judgment on Relators' behalf. We need not reach this argument because Gilbert's deficiency was not that it should have participated in the fee petition, but that it should have moved to value its lien four years earlier. Gilbert could have avoided its four-year delay without actually participating in the fee petition. The fact that it is a client's responsibility to petition the court for fees does not remove the responsibility of the former attorney (or any type of service provider, for that matter) to present the client with a timely and accurate bill if failing to do so would cause a serious injustice to the client, as it did here.

[27] *Cf.* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. h (AM. LAW. INST. 2000) ("The lawyer [seeking to enforce a lien] must not unreasonably delay resolution of disputes concerning the lien and claimed fee. . . . [A] lawyer's inability to attend a prompt hearing on the fee . . . would be a circumstance in which the tribunal could release the lien.").

[28] *Cf. Denham Law Firm, PLLC v. Simmons*, 207 So. 3d 670, 673, 680 (Miss. Ct. App. 2017); *id.* at 682 (Griffis, P.J., specially concurring) (describing declaratory judgment action by former clients seeking to value former attorney's contractual attorney's lien, which provided for a contingent fee); *Tyson*, 613 So. 2d at 825–26 (noting that contingency fee had "ripened" after judgment, but amount of fee was not yet determined).

No. 17-60720

Filing the same motion four years earlier would have imposed no additional burden on Gilbert, but its failure to do so significantly harmed Relators. They were responsible for paying Gilbert's fees and expenses under the engagement letter, but they had a limited window to seek reimbursement of their attorney fees, including those owed to Gilbert, from State Farm.[29] Because of Gilbert's inexplicable delay, Relators were deprived of the information necessary to obtain Gilbert's fees from State Farm. This wrought "a serious injustice" on Relators.[30]

As we understand it, Gilbert contends that Relators were not harmed because there was effectively no delay: By giving Relators its spreadsheet in 2013, Gilbert had told Relators the amount that it believed it was owed. But this is belied by the fact that, four years later, Gilbert told the district court that it was owed $1.5 million less. Gilbert cannot escape the conclusion that the more than $5 million that it had claimed in 2013 via the spreadsheet was substantially less than accurate.[31]

Gilbert also contends that, even if it did sit on its rights, Relators could have avoided much of the resulting harm. Gilbert claims that Matteis and others at WMC could have provided further detail to the court on some of the time entries listed in Gilbert's spreadsheet and that Relators could have

---

[29] A prevailing plaintiff may move for attorney fees "no later than 14 days after the entry of judgment." FED. R. CIV. P. 54(d)(2)(B)(i). Relators moved for fees after the jury verdict but before the court had entered the judgment.

[30] *See Osborne*, 129 So. 2d at 348 (internal quotation marks omitted). We need not address whether Gilbert violated the Mississippi Rule of Professional Conduct, which requires a former attorney to take "reasonably practicable" steps to protect a former client's interest. *See* MISS. R. PROF'L CONDUCT 1.16(d). The scope of Gilbert's conduct falls into the equitable realm of sitting on rights and does not require us to examine the specific requirements of a former attorney.

[31] Gilbert told Relators that its spreadsheet reflected "reasonable" fees and expenses, even though it told the district court, four years later, that its significantly-reduced lien value also reflected "reasonable" fees and expenses.

Case: 17-60720 Document: 00514565976 Page: 11 Date Filed: 07/23/2018
Case 1:06-cv-00433-HSO-RHW Document 1409 Filed 07/23/18 Page 11 of 11

No. 17-60720

obtained the supporting materials for Heidelberg's fees (which were included in Gilbert's expenses) directly from Heidelberg. Perhaps Relators could have obtained *some* of this mitigating information, but clearly not all of it. Without access to Gilbert's billing system, Matteis and WMC had no personal knowledge that Gilbert's spreadsheet reflected the work actually performed years earlier.[32] We will not engage in a line-drawing exercise to attempt to say how much of Gilbert's delay Relators should be expected to compensate for, and how much effort they should expend in doing so. Neither can we say, given the deferential standard of review, that the district court abused its discretion in holding that Gilbert slept on its rights.

We AFFIRM the district court's extinguishment of Gilbert's lien for its fees and expenses.

---

[32] *Cf.* FED. R. EVID. 602 (requiring a witness to have personal knowledge). Although an expert on attorney fees may have been able to attest to the reasonableness of hourly rates, an expert also likely would not have this personal knowledge.