IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY            RELATORS/COUNTER-DEFENDANTS

v.                           CASE NO. 1:06cv433-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY    DEFENDANT/COUNTER-PLAINTIFF

### STATE FARM FIRE AND CASUALTY COMPANY'S REBUTTAL
### IN SUPPORT OF ITS [1394] MOTION FOR RULE 56(D) DISCOVERY

Defendant State Farm Fire and Casualty Company submits this Rebuttal in support of its [1394] motion for discovery pursuant to Fed. R. Civ. P. 56(d).

### INTRODUCTION

In its [1394] Motion for Rule 56(d) Discovery ("56(d) Motion") and [1395] supporting memorandum, State Farm established that, if the Court does not outright deny the Rigsbys' procedurally and substantively improper motion for partial summary judgment on the 236 Claim,[1] then State Farm must be afforded the opportunity to conduct discovery on the factual issues relevant (and particular) to the 236 Claim.  In their response, the Rigsbys contend that no 236 Claim discovery should be allowed.  Even as they acknowledge that their current 236 Claim summary judgment motion arises from a different property and flood claim, and is based on a new and different legal theory, the Rigsbys nevertheless argue that the McIntosh trial outcome pretermits State Farm's right to present procedural or substantive defenses to their motion.  This incredible proposition finds no support in the record or the law.

The general jury verdict with respect to the McIntosh property was obtained based on the Rigsbys' "wind versus flood" theory of wrongdoing on the McIntosh claim alone.  And that

---

[1] All abbreviations and defined terms have the same meaning as set forth in State Farm's 56(d) Motion, [1392] Motion to Strike Relators' Motion for Partial Summary Judgment as Procedurally Out-of-Order ("Motion to Strike"), and [1397] Memorandum in Opposition to Relators' Motion for Partial Summary Judgment ("Summary Judgment Opposition").

verdict depended heavily on expert testimony about the cause of the damage to the McIntosh

property.  As such, that verdict did not – as a matter of fact or law – irrefutably establish State

Farm's liability for any other property or claim, including the 236 Claim.  Moreover, the Rigsbys

are forced to admit that they are attempting to secure summary judgment on the 236 Claim based

on a False Claims Act ("FCA") liability theory that did not even exist in the Fifth Circuit at the

time of the McIntosh trial or at the time of the Fifth Circuit's decision:

> [T]he Supreme Court of the United States established the implied false
> certification theory of FCA liability as valid in this Circuit for the first time in
> [*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989
> (2016)]. … Before *Escobar*, the Fifth Circuit repeatedly had refused to recognize
> the implied false certification theory of FCA liability, and thus the theory was not
> available to the Rigsbys when the parties litigated the McIntosh bellwether claim.

([1381] at 1, 2); *see also* ([1404] at 1–2).  This admission fatally undermines the Rigsbys' [1407]

Response in Opposition to State Farm's 56(d) Motion ("56(d) Opposition"), particularly given

that Rule 56(d) motions "are broadly favored and should be liberally granted."  *Culwell v. City of

Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).  Since the implied false certification theory of

FCA liability was not at issue in the McIntosh trial and no aspect of the implied false

certification theory was decided by that jury or by the Fifth Circuit on review, State Farm never

has had an opportunity to take discovery on, let alone present evidence to defend against, such a

theory, whether with respect to the McIntosh claim, the 236 Claim, or any other claim.

Moreover, in striking contrast to the case alleged and tried with respect to the McIntosh

property, the Rigsbys are not even attempting to establish that the 236 Property sustained wind

damage, as opposed to flood damage, or that the flood damage was not a covered loss on a valid

flood insurance policy, or that the actual flood damage to the 236 Property did not exceed the

coverage limits and amount paid to the 236 Property homeowner.  Rather, in the Rigsbys' view,

it makes no difference to State Farm's FCA liability whether the government (the real party in

interest in this case) paid a flood claim for an eligible and fully insured property that was, indeed, damaged by flood. Thus, for the 236 Claim, unlike in the McIntosh proceeding, the Rigsbys essentially are pursuing a case based solely on alleged paperwork discrepancies in the file. Even if the Rigsbys' allegations were correct (which they are not), the supposed FCA violation does not go "to the very essence of the bargain," as required by *Escobar*, 136 S. Ct. at 2003 n.5, and in any event, State Farm must be afforded the opportunity for discovery to defend against them.

Respectfully, the Court should reject the Rigsbys' tactics and unsupported legal theories. The Rigsbys filed their partial summary judgment motion *after* the parties, at the Court's instance and direction, had briefed the propriety of severing the remaining claims in this action, by property, into separate actions. Severance would require the Rigsbys to specifically and separately plead their causes of action with respect to the 236 Claim (and any other property claim) such that State Farm would have notice of the allegations pertaining to each property and would be able to address its discovery and defenses on a property-by-property basis. This is something the Rigsbys obviously are seeking to avoid as they would actually have to prove their claims. The Rigsbys have made a procedural leap, filing their summary judgment motion in an effort to stave off the discovery the Fifth Circuit ordered and the individualized treatment – including the Rigsbys' burden of establishing jurisdiction, proving liability, and proving causal damages – that fundamental due process and fairness require.

In short, the Rigsbys want this Court to enter judgment: (1) on a property claim that never was at issue in the McIntosh trial or the Fifth Circuit appeal; (2) based on a previously nonexistent theory of FCA liability, one they previously disavowed and for which the elements were first defined by the Supreme Court *after* the McIntosh trial and appeal; and (3) for a "false" flood claim even though the property was, in fact, damaged by flood and the claim properly paid.

Nothing from the McIntosh property trial supports such a result, and the Rigsbys point to nothing in the past proceedings that indicates the parties or the Court knew, intended, and agreed that the McIntosh trial would have a legally preclusive impact on State Farm's defenses with respect to any other property or claim. *See, e.g.*, *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1200 (10th Cir. 2000) ("If the parties intended to bind subsequent litigation with the results of prior test trials, the record must clearly memorialize that agreement.").

Even if the Court were to deny State Farm's [1392] Motion to Strike, and even if the Court does not deny the Rigsbys' motion outright on the grounds set forth in State Farm's [1397] Summary Judgment Opposition, the Court should grant State Farm's 56(d) Motion to enable State Farm to develop the full range of evidence necessary to defend against the Rigsbys' new theories of liability and purported damages arising out of the 236 Claim.

### ARGUMENT

The Rigsbys mischaracterize State Farm's 56(d) Motion as "an improper attempt … to relitigate issues that the Fifth Circuit and the McIntosh Jury decided years ago," ([1408] at 1), all the while ignoring what the McIntosh trial verdict and the Fifth Circuit's decision upholding that trial verdict actually entailed. The McIntosh case was litigated on the basis of the Rigsbys' theory that State Farm submitted a factually false flood claim to the government for the McIntosh property when wind, not flood, caused the covered loss for that property and that State Farm supported that false claim with false statements as a way of covering up that wind damage. No such theory is at issue in the Rigsbys' pending motion, as the Rigsbys are not even attempting to prove that the 236 Property was not damaged by flood.

Under these circumstances, it is simply not true, as the Rigsbys claim, that "State Farm had ample opportunity before the McIntosh trial to conduct the discovery that it seeks now," ([1408] at 1). The Fifth Circuit made this very point in its decision on appeal, explaining that

4

"[t]he district court *focused discovery and the subsequent trial on the McIntosh claim*, rather than permitting the Rigsbys to seek out and attempt to prove other claims, in order to 'protect the interests of both parties.'" *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 464 (5th Cir. 2015) (emphasis added), *aff'd on other grounds*, 137 S. Ct. 436 (2016). Thus, State Farm is not seeking a discovery or trial "do-over." State Farm took no discovery on the 236 Property/Claim now at issue and would have had no reason to do so for purposes of preparing for trial on the McIntosh property. Nor did State Farm have any opportunity to develop evidence on the implied false certification theory of liability, which the Rigsbys admittedly are asserting for the first time and which, in any event, was not even available as a theory of liability in this jurisdiction at the time of the McIntosh trial. Accordingly, State Farm is entitled to full discovery in order to develop evidence as to falsity, materiality, scienter, damages, and jurisdiction so that State Farm can defend against the Rigsbys' partial summary judgment motion on the 236 Claim.

I.   **STATE FARM DID NOT TAKE DISCOVERY ON THE 236 CLAIM AND IS NOT USING RULE 56(D) AS AN END-RUN AROUND THE SEVENTH AMENDMENT**

Having fought so hard on appeal for the opportunity to take additional discovery after the McIntosh verdict, the Rigsbys now are in the awkward position of opposing additional discovery. The Rigsbys' objection to additional discovery in response to State Farm's 56(d) Motion is two-fold: First, they contend that State Farm had ample opportunity to take discovery on all of the properties that could have theoretically been at issue in their complaint – not just the McIntosh claim – and suggest that State Farm should have had the foresight to take all necessary discovery with respect to the elements of the implied false certification theory of liability, notwithstanding that the Rigsbys admittedly were not pursuing that theory and that theory was not recognized at the time in this Circuit. Second, and perhaps more jarringly, they assert that no

new discovery is necessary because all factual and legal issues for the 236 Claim already are decided by the McIntosh trial and the Fifth Circuit's decision. Neither contention has merit.

### A.    DISCOVERY TO DATE

The Rigsbys' main contention that State Farm's 56(d) Motion is the result of its lack of diligence in pursuing earlier discovery on these topics is easily refuted. The Rigsbys simply ignore the reality that: (a) prior discovery in this case was limited specifically to the McIntosh claim; and (b) there was no implied false certification claim in the McIntosh proceeding. In its August 10, 2009 Order *limiting* discovery, the Court held:

> Accordingly, I will *limit the presentation of evidence in this action to facts relevant to the McIntosh claim*. In light of the extensive discovery that has already been conducted *with respect to this claim*, I do not believe there will be much in the way of additional preparation necessary to bring this case to trial.

([343] at 10) (emphasis added); *see also Rigsby,* 794 F.3d at 464 ("The district court focused discovery and the subsequent trial on the McIntosh claim …."). And when the Court in that same order summarized the Rigsbys' allegations, it was clear that this limitation on discovery and evidence could not encompass evidence relevant to an implied false certification claim because FCA liability with respect to the McIntosh claim hinged on factual falsity:

> The Relators charge State Farm and other defendants entered into a conspiracy to *inflate or overstate the amount of flood damage that actually occurred* (at the McIntosh property and other unspecified properties) and to pay those inflated amounts under the property owners' flood policies. This was done, the Relators contend, in order to offset or reduce the property owners' claims for wind damage by mischaracterizing part of the wind damage as flood damage.

([343] at 3) (emphasis added). And, of course, the Supreme Court's decision in *Escobar*, which was decided well after both the McIntosh trial and the Fifth Circuit opinion, changed the legal landscape with respect to implied false certification claims and, thus, would open the door for additional discovery in this regard even if discovery on an implied false certification theory had already been taken. *Cf. Raby v. Livingston*, 600 F.3d 552, 561–62 (5th Cir. 2010) (analyzing

prior-Rule 56(f) motion in light of "the impact of [a controlling Supreme Court decision] on

future litigation"). State Farm cannot be faulted, let alone penalized as the Rigsbys would have

it, for not already amassing evidence and defending against a case and theory of liability that

previously did not exist in this action.[2]

When this Court lifted the stay and reopened this case following the Fifth Circuit remand,

it recognized that additional discovery would be necessary and that simply giving the Rigsbys

access to the 501 List[3] would not allow resolution of liability questions. This Court reached this

conclusion despite the Rigsbys having made clear in their briefing just prior to the Court's order

lifting the stay that they now intended to pursue an implied false certification theory under

*Escobar*. In particular, this Court explained:

> ***Each potential false claim*** will have to be considered on its merits at the
> appropriate time. Once discovery commences, the Magistrate Judge will be able
> to resolve any particularized discovery disputes that may arise ***as to specific
> potential claims*** on the List.

([1317] at 8) (emphasis added). Although the following point is self-evident, it is obscured by

the Rigsbys' current arguments and bears emphasis here: namely, the Fifth Circuit remanded

this case with instructions to permit certain additional discovery. If it were the case that the Fifth

---

[2] For this reason, the cases the Rigsbys cite for the proposition that a party should not be allowed
to supplement evidence already presented at trial, *see* ([1408] at 21), are inapposite, as each dealt with a
situation where additional discovery was not allowed precisely because the claim to which that discovery
pertained already was at issue at the time discovery had been taken. *See, e.g.*, *E. I. Du Pont de Nemours
& Co. v. Phillips Petro. Co.*, 711 F. Supp. 1205, 1212 (D. Del. 1989) (denying defendant's request "for
the record to be reopened so that it can introduce additional evidence on an issue squarely before the
Court at trial and addressed by [defendant] without restraint by the Court or [plaintiff]").

[3] The Rigsbys continually mischaracterize Judge Senter's August 10, 2009 [343] Order.
Nowhere did that Order "define when[] W-5054 required State Farm to conduct a line-by-line
adjustment," ([1408] at 2), nor was the stated purpose in ordering the 501 List "to identify when State
Farm violated W-5054," ([1408] at 5). The [343] Order nowhere mentions W-5054, and the Rigsbys
previously have argued that the [343] Order does not track W-5054. *See* ([1319] at 2, 10). Moreover, it
had not then been shown, and still has not been shown, that the lack of a line-by-line estimate was a
violation of W-5054 for any claim file missing it that did not evidence standing water in the home or that
had not been washed off its foundation. Instead, the 501 List was simply meant to define "the ***outer
limits*** of the ***potential*** claims involved." ([343] at 10) (emphasis added).

Circuit believed that the McIntosh trial result was sufficient to conclusively establish State Farm's FCA liability for any claim beyond McIntosh – including the 236 Claim – the Fifth Circuit would have said so, it would not have authorized additional discovery, and the mandate would have been limited to an accounting of the damages resulting from that established liability.  Hence, the Rigsbys' persistent mischaracterization of the Fifth Circuit's decision as defeating all State Farm defenses (and further discovery) is patently wrong.

### B.    SEVENTH AMENDMENT

In their 56(d) Opposition, the Rigsbys reiterate their flawed contention that the Seventh Amendment bars reexamination of issues that they assert were resolved by the McIntosh jury and the Fifth Circuit, erroneously claiming that "State Farm seeks discovery to do precisely that which [the Seventh Amendment and the Mandate Rule] prohibit: to ask a second jury and this Court to decide whether the McIntosh Jury and Fifth Circuit got those issues wrong."  ([1408] at 3–4.)  As State Farm has shown in its Summary Judgment Opposition, the McIntosh trial resolved issues pertaining *only* to the McIntosh claim.  The case was tried on that basis, and the jury was expressly told to make findings relating to the McIntosh claim alone.  *See* ([1397] at 24–26).  As the Fifth Circuit explained, the McIntosh trial was designed "to *isolate* the McIntosh claim for trial."  *Rigsby*, 794 F.3d at 469 (emphasis added).  Notably, the 236 Claim was never mentioned during the McIntosh trial.  Moreover, the McIntosh jury was never asked to consider the elements of the implied false certification theory that the Rigsbys now advance, nor were jury instructions given based on the Supreme Court's watershed decision in *Escobar*.  In sum, the McIntosh jury found State Farm liable with respect to a ***different*** property under a ***different*** theory of liability.  A different jury hearing the case as to the entirely separate 236 Claim would not be called upon to reconsider any of the findings of the McIntosh jury.  Accordingly, the Seventh Amendment's Reexamination Clause has no applicability here.

## II.   STATE FARM IS ENTITLED TO DISCOVERY ON FALSITY, MATERIALITY, SCIENTER, DAMAGES, AND JURISDICTION

If the Court does not strike or deny the Rigsbys' motion for partial summary judgment, the Court should grant State Farm's 56(d) Motion to enable State Farm to take full discovery on the elements of the Rigsbys' new implied false certification claim with respect to the 236 Property, as well as damages and jurisdiction.[4]

### A.   FALSITY DISCOVERY

In opposing discovery on falsity, the Rigsbys assert that the McIntosh trial established that W-5054 required a line-by-line estimate of damages for all so-called Process # 3 properties, that State Farm did not prepare a line-by-line estimate, and that, as a result, the 236 Claim was impliedly false.  But the Rigsbys' simplistic formulation is incorrect on the facts and the law.

As an initial matter, the Rigsbys erroneously proclaim that the McIntosh trial "proved that W-5054 required a line-by-line adjustment," ([1408] at 6).  The Rigsbys cannot cite to any McIntosh jury interrogatory on this question, and they cannot claim that the jury otherwise must have concluded that W-5054 required a line-by-line estimate in order to find State Farm liable on the Rigsbys' Section 3729(a)(1)(A) or (a)(1)(B) claims.[5]  Instead, the Rigsbys' (a)(1)(A) theory regarding the McIntosh claim was based on *factual falsity* – that the McIntosh property did not sustain covered flood damage to the limits of the McIntosh's NFIP policy.  And the Rigsbys' (a)(1)(B) count was based on this same underlying falsity (that the covered loss was caused by

---

[4] The Court has a further option of severing the remaining claims by property on the grounds stated in State Farm's severance briefing and as the Court indicated it was inclined to do.  Following severance, the Rigsbys can file a complaint specific to the 236 Claim, and the parties can pursue normal motions practice and discovery on the basis of that pleading.  This would be the most efficient way to proceed, particularly since, assuming they do not prevail on the implied false certification theory, the Rigsbys may then seek to impose FCA liability on State Farm for the 236 Property on other grounds.  As such, it makes little sense to undertake piecemeal discovery on this claim.  The Rigsbys should plead all of their causes of action arising out of the 236 Claim in a single pleading, and the parties should take discovery on whatever causes of action, if any, survive a motion to dismiss.

[5] The Rigsbys strategically never asked the jury to make such a specific finding in order to establish liability.

wind not flood), with the Rigsbys presenting multiple theories for how McIntosh claim file documentation could be "false."

Contrary to the Rigsbys' current contention that "[t]hey proved" at trial and "the Fifth Circuit affirmed" that there was a "sham" or "fake" line-by-line estimate generated for the McIntosh claim file, ([1408] at 6), the Fifth Circuit explained that the Rigsbys' evidence in support of their (a)(1)(B) false statement theory consisted of multiple prongs, including "that State Farm knowingly violated W5054, concealed evidence of wind damage, and strong-armed an engineering firm to change its reports." *Rigsby*, 794 F.3d at 479. The Rigsbys also argued to the jury that the omission of one of two engineering reports from the claim file triggered (a)(1)(B) liability, 794 F.3d at 480 n.16, and even presented evidence at trial that the Xactotal print-out "reflected a house with a garage and a garage door, which was not an accurate description of the McIntosh home," ([1127] at 15). In other words, the Rigsbys presented the jury with a range of alleged false statements for purposes of (a)(1)(B), which covers false statements material to a false claim. The Rigsbys did not ask the jury to specify which one they believed to be false. Accordingly, the Rigsbys cannot say – and in any event the Fifth Circuit did not say[6] – that the jury found that W-5054 required a line-by-line estimate either for the McIntosh claim, the 236 Claim, or any other claim.

In addition, the Rigsbys' assertion that "[h]ow FEMA viewed W-5054 is not a property-specific issue," ([1408] at 21), demonstrates the Rigsbys' fundamental misunderstanding of W-5054 (and of the testimony on it to date). As State Farm explained in its Summary Judgment

---

[6] The Fifth Circuit's statement that the McIntosh "jury's verdict necessarily entailed a finding" that State Farm did not have "generalized permission to deviate from FEMA directive W5054 if the loss appeared to exceed the coverage limit," *Rigsby*, 794 F.3d at 469, does not establish what W-5054 actually required (especially for any property other than the McIntosh property) or whether a deviation would have been permitted in the particularized factual circumstances of other properties. Moreover, the Fifth Circuit's statement was made only as part of its analysis as to whether the Rigsbys had "edged the door ajar" for additional discovery, *id.*, which is exactly what State Farm seeks here.

Opposition, the actual text of W-5054 does **not** require a line-by-line estimate.  It merely states

that, for Process # 3 claims, a WYO carrier should adjust the loss "using the company's normal

claim procedures."  ([1396-3], W-5054, Attachment A at 4.)  For State Farm, those "normal

claim procedures" in the immediate aftermath of Hurricane Katrina included using an Xactotal

adjustment methodology when a site visit confirmed that a property suffered damage resulting in

a constructive total loss – a process which was under way prior to the issuance of W-5054 on

September 21, 2005.  Thus, the "normal claim procedures" contemplated by W-5054 do

precisely turn on a property-specific question.[7]

     Likewise, there already is significant evidence in the record – and State Farm is entitled

to develop more – that W-5054 did not require a line-by-line estimate on a claim like the 236

Claim because it was a permissive policy and thus did not require anything.  In particular

FEMA's NFIP Administrator, David Maurstad, testified:

> [T]his new policy that is [W-5054] -- I think it's important to understand that the
> Write Your Own companies didn't have to use this. … They could use the normal
> claims handling processes that were already in place that they were already
> familiar with, and so they could use this if they wanted to and the policyholder
> wanted to.  If they didn't, they could go about it in the normal claims handling
> process that was in place for the Florida hurricanes and, you know, before
> Katrina.

(Rebuttal Ex. A, Maurstad Dep. at 80:10–22); *see also id.* at 183:18–21 ("[WYOs] had the

ability to not utilize [W-5054] if they didn't want to.  So if they didn't like the policy, it really

---

[7] In disputing this point, the Rigsbys mischaracterize witness testimony.  NFIP Claims Director James Shortley did not testify that W-5054's "requirements applied universally, and that there were no such side deals or separate deals for any insurer" as a way of asserting that a "company's normal claim procedures" were the same for every company and included a line-by-line estimate, ([1408] at 22 n.5 (citing Shortley Dep. at 151:14–18, 156:19–157:3)).  Instead, Mr. Shortley explained that if one WYO insurer were allowed to take a claims approach, then other WYO insurers would not be prevented from implementing that same type of approach.  (Rebuttal Ex. C, Shortley Dep. at 156:24–157:3, 165:25–166:3 ("You mean did we make a deal with one company and didn't make it with another? … No.  Why would we do that? … [W]e would not have said to State Farm, now, don't tell anybody you're the only ones that can do this.").)  Mr. Shortley also explained that W-5054 did not revoke or undermine any previous permission or understanding whereby State Farm used Xactotal adjustment methodology on certain types of claims.  (Rebuttal Ex. C, Shortley Dep. at 47:9–47:25.)

didn't change anything for them."); Rebuttal Ex. B, Tr. Test. Vol. 7, at 1157:10–13 ("Category 3 doesn't preclude companies from handling claims the way they handled them prior to Katrina. This wasn't a document that said all claims are going to be handled based on 5054.").  Mr. Maurstad also recognized the property-specific component of loss adjustment procedures, testifying that "when it's clear in the situation that we were presented with in Katrina that *the damage to the property* was going to far exceed policy limits, the line-by-line was seen to be bureaucratic."  (Rebuttal Ex. A, Maurstad Dep. at 226:18–226:22 (emphasis added).)  Thus, notwithstanding the Rigsbys' protestations otherwise, State Farm also must be permitted to take discovery specific to the 236 Property and Claim.

Moreover, even if the McIntosh jury had been asked to make a finding that W-5054 required line-by-line estimates, the analysis for summary judgment and discovery would not end there.  The Rigsbys' 56(d) Opposition displays a lack of recognition of what the post-*Escobar* law requires in order to establish falsity in a "false claim" case based on an implied false certification theory.  As State Farm explained in its Summary Judgment Opposition, to establish implied false certification liability, the Rigsbys must prove that the 236 Claim – the actual request for insurance proceeds from FEMA – included a "specific representation" about the flood adjustment that was "misleading *in context*."  *Escobar*, 136 S. Ct. at 2000, 2001 (emphasis added).  The Rigsbys have not pointed to anything in the 236 Claim that makes any reference to W-5054 compliance in general or that could be considered misleading in context due to the lack of a line-by-line estimate, especially where W-5054 itself was an optional policy.  Whether or not State Farm adjusted the loss using a line-by-line estimate has no bearing on the truth or falsity of the claim that the 236 Property actually sustained $200,000 in covered flood losses. *See also* ([1397] at 12–14).  Thus, it would be a defense to the Rigsbys' implied false

certification claim for State Farm to demonstrate that the 236 Property did in fact sustain covered flood losses in the amount State Farm claimed.

The Rigsbys appear to make a failed attempt to comply with *Escobar*'s specific representation requirement by conjuring a comparison to widgets in their Rebuttal in Support of their Motion for Partial Summary Judgment. *See* ([1404] at 3 n.3). Their analogy is unavailing. It may indeed be true that, where a contractor invoices the government for $300 in widgets but only supplies 75 $3 widgets (instead of 100 $3 widgets), the contractor has made a factually false representation about the amount of money due. But that scenario is not remotely analogous to the facts here, where the Rigsbys make no attempt to establish that the $200,000 flood claim for the 236 Property was false. To make the widget example relevant here, the contractor would have submitted a $300 invoice for 100 $3 widgets but would have calculated the total by using multiplication instead of using addition, which the plaintiff alleged to be the contractually specified calculation method (even though the contract language referred to "normal calculation methods"). While that possibly could be construed as a technical contract breach, the use of a different calculation method does not make the $300 representation in the invoice false or misleading in terms of what was provided (100 widgets) or how much they cost ($3 each). *See Escobar*, 136 S. Ct. at 1995 ("Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach ***if the omission renders those representations misleading***." (emphasis added)). And any such misrepresentation surely does not go to the "very essence of the bargain" as *Escobar* demands. *Id.* at 2003 n.5.[8]

---

[8] In *United States ex rel. Smith v. Wallace*, the Fifth Circuit affirmed summary judgment for defendants on an implied false certification claim. 723 F. App'x 254, 256 (5th Cir. 2018). The Court

In order to further assess implied false certification *falsity* with respect to the 236 Claim and to firmly establish that there could not be anything misleading in context about it – because the 236 Property was damaged by at least $200,000 in flood damage – State Farm must be permitted to take that discovery specific to the 236 Claim that it has never before been afforded the opportunity to take: the testimony of FEMA witnesses regarding the specific applicability of W-5054 to the 236 Claim; the testimony of the 236 Property homeowners, homeowners of neighboring properties, and others who witnessed the flood damage firsthand; and available storm-related data and visual evidence from the area in proximity to the 236 Property.

### B.    MATERIALITY DISCOVERY

Likewise, the Rigsbys are wrong to assert that the Fifth Circuit "already [] resolved the question of materiality," ([1408] at 13), for an implied false certification claim based on compliance with W-5054.  To the contrary, the Fifth Circuit made clear that the Rigsbys had disavowed the implied false certification theory prior to the McIntosh trial – such that this theory did not need to be addressed on appeal.  Accordingly, the Fifth Circuit did not and could not have resolved this question, as it was not before that court.  Moreover, the Rigsbys also are wrong to claim that any "prerequisite to payment" determination by the Fifth Circuit with respect to W-5054 compliance is more than sufficient to establish materiality, ([1408] at 14).  Any such assertion is directly contradicted by *Escobar*.  As such, the materiality element of the Rigsbys' 236 Claim is not established by the McIntosh proceedings, and State Farm is entitled to full discovery to defeat this essential component of the claim.

---

held that the relator did not satisfy a "necessary element of his cause of action" when he failed to "provide evidence that would support a finding that the claims included 'specific representations' that were 'misleading half-truths' in light of the alleged misstatements in the original applications," which simply indicated that defendants failed to abide by the terms of the government food services program, such as using generally accepted accounting procedures and retaining records, yet did not show that they were not billing the government for the correct food actually provided.  *Id.* (quoting *Escobar*, 136 S. Ct. at 2001).

## 1.  THE FIFTH CIRCUIT DID NOT DECIDE IMPLIED FALSE CERTIFICATION MATERIALITY IN THE MCINTOSH TRIAL

The Fifth Circuit did not decide that a violation of W-5054's "normal claim procedures" language is material for purposes of implied false certification liability.  As State Farm made clear in its Summary Judgment Opposition, footnote 14 of the Fifth Circuit's opinion is *dicta* and does not even address the element of materiality.  *See* ([1397] at 10–11).

The Fifth Circuit defines *obiter dictum* as a statement that "could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it."  *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)).  While it is true that alternative holdings are not *dicta* in the Fifth Circuit, *see Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991), it is *dictum* where a court comments on an issue that is not actually before it.  *See, e.g.*, *Valdez v. Cockrell*, 274 F.3d 941, 952 (5th Cir. 2001) (explaining that references by other panels of the Fifth Circuit to what a "full and fair" hearing requires were *dicta* because those panels were not confronted in those cases with claims that petitioners had been denied full and fair hearings).  Here, because the Fifth Circuit confirmed that the Rigsbys did not pursue an implied false certification theory at the McIntosh trial, any comment by the Fifth Circuit on the propriety of an implied false certification theory based on W-5054 indisputably is *dictum* and cannot be an "alternative holding" as the Rigsbys would have it, ([1408] at 15).

The full text confirms that footnote 14 is *dicta* and that it says nothing about materiality:

> The parties dispute whether State Farm's alleged violation of FEMA directive W5054 can independently support the jury's verdict.  State Farm contends that compliance with W5054 was not an express condition or prerequisite for payment of the claim.  *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) ("Not every breach of a federal contract is an FCA problem.  We have thus repeatedly upheld the dismissal of false-certification claims (implied or

express) when a contractor's compliance with federal statutes, regulations, or contract provisions was not a 'condition' or 'prerequisite' for payment under a contract."). ***The Rigsbys contend that this is not a false certification case that would require concluding that compliance with W5054 was a prerequisite for payment of a claim.*** Even were we to agree with State Farm that compliance with W5054 must be a prerequisite for payment in this context, FEMA regulations emphasize that WYO insurers "shall comply with written standards, procedures, and guidance issued by FEMA." 44 C.F.R. pt. 62, app. A, art. II(G)(1); *see also* 44 C.F.R. pt. 62, app. A, art. II(A)(2) ("Companies will also be required to comply with . . . guidance authorized by . . . [FEMA]."). Additionally, directive W5054 itself states that the "NFIP's general adjusters will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing this process," signifying that FEMA took compliance seriously. Finally, FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP.

*Rigsby*, 794 F.3d at 478 n.14 (emphasis added). There is no mention of materiality in this footnote. Instead, the comment is about "prerequisite for payment." Prior to *Escobar*, courts that used the "prerequisite for payment" standard to test the validity of implied false certification claims recognized that the prerequisite for payment inquiry and materiality were separate and distinct. *See, e.g.*, *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 269 (5th Cir. 2010) (explaining, pre-*Escobar*, that "prerequisite for payment" ultimately is tied to falsity, not materiality); *United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001) (explaining, pre-*Escobar*, that "although materiality is a related concept," the condition of payment inquiry is distinct and tied to falsity). Not surprisingly, footnote 14 is located in the "Falsity of the McIntosh Claims" section of the Fifth Circuit opinion. The Fifth Circuit addressed materiality later in its opinion with respect to the distinct (a)(1)(B) claim, where "materiality" is a statutory requirement to causally link a false statement to a separate false claim. *See Rigsby*, 794 F.3d at 480. Materiality for one purpose – an (a)(1)(B) claim – does not automatically prove materiality for another purpose – an (a)(1)(A) claim. *See, e.g.*, *United States ex rel. Lemon v. Nurses To Go, Inc.*, No. H-16-1775, 2018 WL 1898559, at *2 (S.D. Tex. Apr. 20, 2018) ("For each theory, what was false must be material.").

More importantly, *Escobar* changed the implied false certification landscape, doing away with the "prerequisite to payment" test for falsity, confirming that the materiality standard is demanding and does not reach garden-variety violations, and expounding on what evidence can be used to support or undermine materiality. That subsequent Supreme Court precedent necessarily affords State Farm the opportunity to take discovery pertaining to materiality.[9]

### 2.   *ESCOBAR* EXPANDED AND CLARIFIED THE RELEVANCE OF CERTAIN EVIDENCE TO THE QUESTION OF MATERIALITY

The Rigsbys seek to block "materiality" discovery by characterizing the Fifth Circuit's "prerequisite to payment" reference as being "more than material" for purposes of establishing materiality. ([1408] at 10.) But *Escobar* said the opposite; a "prerequisite to payment" is ***less than material*** and not sufficient to prove materiality for an implied false certification claim or otherwise:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. … [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive.

*Escobar*, 136 S. Ct. at 2003. The Fifth Circuit recognized these aspects of *Escobar*'s effect on the law of materiality in *Abbott v. BP Exploration & Production, Inc.*, explaining that *Escobar* "debunked the notion that a Governmental designation of compliance as a condition of payment by itself is sufficient to prove materiality" and that the Court instead "concluded that it is not 'sufficient for a finding of materiality that the Government would have the option to decline to

---

[9] *Cf. Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) ("Supreme Court decisions apply retroactively and prospectively to all cases on direct appeal whenever applied to the litigants before the Court. When law changes in unanticipated ways during an appeal, however, this court will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard. The motivation of this rule is fairness ….") (citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993))); *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008) (explaining that "[g]enerally, we would remand to provide [relator] with a chance to plead the facts relevant to [intervening Supreme Court clarifications on what is required under the FCA]").

pay if it knew of the defendant's noncompliance.'"  851 F.3d 384, 387 (5th Cir. 2017) (quoting *Escobar*, 136 S. Ct. at 2003).  *See also Waldmann v. Fulp*, 259 F. Supp. 3d 579, 600 (S.D. Tex. 2016) (describing "the Supreme Court's explicit rejection of lower courts' over-reliance on the phrases 'condition of payment' and 'condition of participation'").

The Rigsbys cite to *United States ex rel. Harman v. Trinity Industries*, 872 F.3d 645 (5th Cir. 2017), for the proposition that materiality has not changed in the Fifth Circuit since *Escobar*, ([1408] at 17).  But, in *Trinity*, the Fifth Circuit recognized that *Escobar* explained, clarified, and "hammered home the 'rigorous' nature of materiality" and expanded the evidence to be considered in determining materiality, including the "strong evidence" of continued government payment.  872 F.3d at 662, 665.  The Rigsbys even admit in their briefing, as they must, that designation as a condition of payment – the only thing on which the Fifth Circuit commented in footnote 14 – is not "automatically sufficient to establish FCA materiality."  ([1408] at 17.)

### 3.     STATE FARM IS ENTITLED TO ADDITIONAL EVIDENCE TO ESTABLISH THAT FAILURE TO INCLUDE A LINE-BY-LINE ESTIMATE IS NOT MATERIAL

In addition to specifying that a "prerequisite to payment" designation is not sufficient evidence of materiality, *Escobar* also made clear the expansive nature of the evidence that could be relevant to materiality on an implied false certification claim.  For instance, evidence that the government pays or refuses to pay claims "in the mine run of cases based on noncompliance" with a particular requirement is directly probative of materiality.  136 S. Ct. at 2003.  Because it never had the opportunity or need to discover such evidence, State Farm did not seek to prove at the McIntosh trial how FEMA continued to pay in the mine run of so-called Process # 3 claims that did not include a line-by-line estimate.  That is among the discovery State Farm seeks in its 56(d) Motion, which *Escobar* makes relevant.  *See* 136 S. Ct. at 2004 (noting that continued government payment is "very strong evidence that those requirements are not material").

18

The Rigsbys dispute the import of Mr. Maurstad's official FEMA confirmation that a line-by-line estimate was not material.[10]  *See* ([1408] at 19–20).  Of course, the disputed issue of fact as to the materiality of the alleged false certification is enough to defeat summary judgment for the Rigsbys on the 236 Claim and, at a minimum, points to the need for additional discovery.  As the Fifth Circuit in *Trinity* noted, "no single element is dispositive" of materiality, 872 F.3d at 661, and evidence of FEMA's position regarding the materiality of a line-by-line estimate to a claim for payment of a factually true flood claim has yet to be adduced.  The specific evidence of materiality State Farm outlined in its 56(d) Motion, including FEMA's payment record with respect to other WYO carriers, will be strong evidence as to whether any supposed non-compliance with the ambiguous "normal claim procedures" language in W-5054 was or was not material to FEMA's decision to pay flood claims for actual flood damage.

---

[10] At the same time, the Rigsbys accuse State Farm of mischaracterizing Mr. Maurstad's testimony.  In the portion of his deposition the Rigsbys cite, ([1408] at 19 (citing Maurstad Dep. at 155:21–157:14), however, Mr. Maurstad never testified that Process # 3 properties required the use of line-by-line estimates.  Instead, Mr. Maurstad testified that W-5054 "doesn't say line-by-line.  It says [their] normal claim processes," which was "not necessarily" line-by-line because "companies are to conduct their flood operation in a similar manner that they conduct their other lines of business." (Rebuttal Ex. A, Maurstad Dep. at 156:5–17.)  And the trial testimony the Rigsbys cite, ([1408] at 20 (citing Trial Tr. at 1159:4–8)), actually was the reading of one line of Mr. Maurstad's deposition testimony which was quickly followed by the explanation, "[I]t's clear, you know, in many cases that the amount of the flood loss is less than the policy limits, so it's important to do that [line-by-line estimating].  When it's clear in the situation that we were presented with in Katrina that the damage to the property was going to far exceed policy limits, the line-by-line was seen to be bureaucratic."  (Rebuttal Ex. A, Maurstad Dep. at 226:14–22.)

Nor has State Farm argued that "FEMA's desire to have valid claims paid out quickly" was somehow "a license to pay invalid claims," ([1408] at 11 (quoting *Rigsby*, 794 F.3d at 480)).  The Fifth Circuit made this "invalid claims" observation in its discussion of scienter, simply noting that there was not sufficient evidence that "any FEMA official had particularized knowledge of the McIntosh claim." *Rigsby*, 794 F.3d at 480.  The Fifth Circuit did not consider or opine on whether the FEMA policy decision to pay out claims quickly in the aftermath of Katrina, rather than to demand compliance with bureaucratic strict file documentation, was relevant to the question of materiality under an implied false certification theory.  The Supreme Court in *Escobar* and the Fifth Circuit in *Trinity* since have made clear that this is very relevant.

There also is no merit to the Rigsbys' contention that the Fifth Circuit's footnote commentary is a judicial finding that FEMA deemed compliance with W-5054's Process # 3 language to be material in the mine run of cases, ([1408] at 18).  Again, in footnote 14, the Fifth Circuit merely observed, in *dicta*, that "FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP." *Rigsby*, 794 F.3d at 478 n.14.  But, this reference is to the same testimony of Mr. Maurstad's subordinates that the Rigsbys trumpet in their 56(d) Opposition.  At most, this testimony, contrasted with Mr. Maurstad's, creates a disputed issue of material fact which would preclude summary judgment.  But even that would overstate the Shortley and Waytowich testimony, since neither witness provided any testimony about how FEMA actually acted in terms of payment in the mine run of cases among State Farm and other WYO carriers where no line-by-line estimate was performed.[11]  In fact, this further illustrates why additional discovery is warranted.  State Farm did not cross-examine these or other witnesses on these points because there was no implied false certification claim at issue, and even if there had been, the elements of such a claim have since been defined for the first time

---

[11] Nor does the testimony cited by the Rigsbys foreclose what State Farm pointed out in its Summary Judgment Opposition: that W-5054's directive to use "normal claim procedures" does not actually require a line-by-line estimate and is at best ambiguous and thus open to reasonable interpretation.  The Rigsbys' assertion that Mr. Waytowich "confirmed" that Process # 3 properties "had to [have] a line item estimate," ([1408] at 8 (quoting Waytowich Dep. at 117:17–20)), ignores that preceding that testimony, Mr. Waytowich states that it was an option to do a line-by-line estimate for Process # 3 properties and that he earlier testified that the Xactotal adjustment methodology could be used where it was clear a loss exceeded policy limits.  (Rebuttal Ex. D, Waytowich Dep. at 31:20–35:24, 117:9–16.)  The Rigsbys similarly obfuscate Mr. Shortley's testimony by quoting their own prior briefing rather than the actual words of Mr. Shortley in context.  Mr. Shortley did not testify "that W-5054's reference to 'normal claim procedures' meant a 'line-by-line estimate.'" ([1408] at 8 (quoting [1111] at 32).)  Instead, Mr. Shortley responded to the question of whether line-by-line estimates were normal, "Pretty much so, yeah" and "For the most part, yeah."  (Rebuttal Ex. C, Shortley Dep. at 80:24, 87:20.)  Mr. Shortley also testified that a line-by-line estimate was not the only way to prove damages and that "an adjuster who documented the scope really well could probably … prove to you that there was damage in excess [of limits]" without a line-by-line estimate.  (Rebuttal Ex. C, Shortley Dep. at 131:24–132:14.)  In any event, even if Mr. Shortley thought that **he** knew what W-5054 meant, that does not mean that the operative language of W-5054 is not objectively ambiguous, given that it does not provide any temporal or even company-specific standard by which the "normal claim procedures" phrase can be construed, let alone enforced.

by the Supreme Court in *Escobar*.  136 S. Ct. at 2001–04.  The prior record simply does not suffice with respect to the Rigsbys' current case.

Finally, the Rigsbys assert that State Farm is not entitled to further discovery because "State Farm [] has identified no basis to believe that such discovery would produce evidence that FEMA 'regularly pays [such claims] despite actual knowledge that certain requirements were violated.'"  ([1408] at 21 (quoting *Escobar*, 136 S. Ct. at 2003–04).)  Again, not so.  Contrary to the Rigsbys' assertion, State Farm's proffer of materiality evidence included more than one instance of FEMA having knowledge of and taking no action to remedy a so-called Process # 3 claim that lacked a line-by-line estimate.  The Moore Declaration describes *eight* claims on the 501 List[12] where FEMA (a) conducted a targeted reinspection of that property and claim file, (b) learned that the claim files did not include a line-by-line estimate, and (c) approved the flood claim without noting any such deficiency.[13]  ([1396-4], Moore Decl. ¶¶ 7, 12–13.)  This contemporaneous FEMA conduct fatally undermines the Rigsbys' (incorrect) characterization of "the consistent testimony by FEMA witnesses that FEMA required line-by-line adjustments as a precondition to payment," ([1408] at 21–22.  As explained in its 56(d) Motion, State Farm must be permitted to expand this discovery beyond these eight specifically identified instances in order to find other contemporaneous evidence of how FEMA treated a line-by-line estimate or lack thereof following Hurricane Katrina, including following the issuance of W-5054 on September 21, 2005, for State Farm and other WYO carriers, as well as any relevant internal and

---

[12] One of the criteria for inclusion on the 501 List is the lack of a line-by-line estimate.  *See* ([343] at 10–11 (ordering list that contains "all SFIP claims that meet the following criteria: … (C) For which no 'stick built' or Exactimate estimation of the flood damage was made before the SFIP limits were paid.")).

[13] State Farm focused on one of these instances simply to demonstrate that the FEMA reinspector had full knowledge that the claim file did not contain a line-by-line estimate, as he noted that an "expedited method was used" while also noting that "[t]he adjuster handling meets NFIP Standards." ([1396-4], Moore Decl. ¶¶ 11–12.)

external communications by FEMA on this critical subject.  At a minimum, these *eight* known reinspections provide "a plausible basis for believing that specified facts" (the existence of additional FEMA reinspections of claims that may fit within Process # 3), "susceptible of collection within a reasonable time frame" (discovery from FEMA), "probably exist and … if adduced, will influence the outcome of the pending summary judgment motion."  *Raby*, 600 F.3d at 561 (quoting *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

C.    SCIENTER DISCOVERY

Next, the Rigsbys assert that State Farm is not entitled to further scienter discovery relevant to the 236 Claim because State Farm "already litigated" scienter with respect to the McIntosh verdict in its post-trial motions.  But, of course, State Farm never litigated scienter with respect to implied false certification liability on the 236 Claim, and the McIntosh verdict does not support some generalized State Farm scienter that can be applied to all State Farm claims on any theory of liability.  Nowhere did the Fifth Circuit say that the question of scienter at the McIntosh trial extended beyond the McIntosh claim, as the Rigsbys proclaim, ([1408] at 24).  Instead, the Fifth Circuit's statement about "[t]hese general allegations, extending beyond the McIntosh claim," 794 F.3d at 469, viewed in its proper context, was not related to its scienter analysis or even to whether the jury verdict should be upheld, but rather pertained to its determination that further *discovery*, beyond McIntosh, would be warranted on remand.  Here again, if the Fifth Circuit had believed or intended that the McIntosh trial verdict conclusively established State Farm's FCA liability on non-McIntosh claims, including the 236 Claim, the contours of the mandate and remand would have been far simpler and more direct.  There would have been no need for any discovery by any party, and the only remaining task would have been a math exercise to assess damages.  Nothing in the Fifth Circuit's disposition suggests that this case was remanded to proceed directly to imposing liability and calculating damages.

Moreover, since the Fifth Circuit in *Rigsby* did not decide materiality for purposes of an implied false certification claim, it certainly could not have decided that State Farm had the requisite scienter – *i.e.*, "knowledge of materiality" – that the Supreme Court in *Escobar* specified as being an essential element of an implied false certification claim.  *See United States ex rel. Ruckh v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1261 (M.D. Fla. 2018) ("Of course, with no evidence that the government[] regarded the disputed practices as material, establishing the defendants' knowledge of materiality seems at least impractical, if not impossible (after all, until one proves, say, that the moon is green cheese, one cannot prove that someone else knows that the moon is green cheese).").  Nothing in the Fifth Circuit's opinion indicates that this question of knowledge of materiality was "fervently litigated during the trial" or litigated at all. Quite to the contrary, the email from State Farm employee Juan Guevara asking for clarification from FEMA on W-5054's requirements was never considered in this light.[14]  But the fact that Mr. Guevara sent this email twice and each time received no response from FEMA, *see* ([1408] at 8–9), would not lead a reasonable person to think that using a line-by-line estimate was material to FEMA.  Moreover, the recipient of the email, Mr. Shortley, admitted that he "wouldn't have objected to" State Farm's use of Xactotal adjustment methodology without a

---

[14] The Rigsbys rely heavily on the Guevara email, characterizing it as an admission that W-5054 required line-by-line estimates.  But the actual email does not support that description.  Instead, Mr. Guevara presented a reasonable interpretation to FEMA of the ambiguous language of W-5054, observing that "[i]t would not make sense to … require a line by line estimate if a field inspection is done on a loss that is above policy limits."  (Rebuttal Ex. E at 2.)  The fact that FEMA never responded to Mr. Guevara's email, even informally, demonstrates that State Farm never received any sort of warning away from this reasonable interpretation, undermining scienter on the 236 Claim.  *See United States ex rel. Hixson v. Health Mgmt. Sys.*, 613 F.3d 1186, 1190 (8th Cir. 2010) ("[A] statement that a defendant makes based on a reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute."); *see also Trinity*, 872 F.3d at 657–60 (citing 8th Circuit case law in analysis that there was a "strong argument that a reasonable jury could not have found that Trinity, acting in reliance on [an engineering assessment that changes were not significant], possessed the requisite scienter in certifying compliance with Report 350, particularly in light of the Report 350's ambiguity").  Neither the Fifth Circuit nor this Court in its order upholding the McIntosh jury verdict ever reached this particular question.

line-by-line estimate to adjust flood claims following Hurricane Katrina.  (Rebuttal Ex. C, Shortley Dep. at 178:04–179:07.)

The Rigsbys also mischaracterize the type of scienter evidence State Farm identified in its 56(d) Motion, incorrectly labeling it as an "internal investigation" that should have been conducted before, ([1408] at 23).  But before the Rigsbys filed their partial summary judgment motion, State Farm had no reason or occasion to take testimony on this question, either with respect to the McIntosh claim or the 236 Claim.  Many relevant witnesses are now former employees or contractors from whom State Farm will need to take formal discovery.

### D.    DAMAGES DISCOVERY

The Rigsbys' position on State Farm's 56(d) Motion with respect to damages is curious. Even though their pending partial summary judgment motion seeks judgment on both liability and damages, ([1380] at 3), they now contend that damages discovery is irrelevant, ([1408] at 4). Putting aside this inherent conflict in their positions, the Rigsbys' damages analysis is wrong. The Rigsbys want to ignore any damages inquiry into whether the 236 Claim, in whole or in part, was for covered losses.  In the Rigsbys' world, even if all experts agreed and the jury found that the 236 Property sustained at least $200,000 in flood losses covered by the homeowner's NFIP policy, the government nevertheless could recover the entire $200,000 it paid out on the claim (trebled) simply because State Farm used an unapproved loss adjustment methodology.  That makes no sense and is not the law.  State Farm is entitled to damages discovery in order to establish that the government did not sustain the alleged amount of loss on the 236 Property.

As State Farm explained extensively in its Summary Judgment Opposition, the principal case on which the Rigsbys rely, *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458 (5th Cir. 2009), is a fraud-in-the-inducement case that bears no resemblance to the factual scenario here.  The Rigsbys make no claim that State Farm fraudulently induced FEMA

to provide the flood insurance guaranty on the 236 Property.  There is no claim that the 236

Property was ineligible for coverage, or that the premiums were unpaid, or that the appraisals

were flawed, or that the homeowners were ineligible, or that State Farm was not an eligible

WYO carrier.  Hence, *Longhi* has no application here.

The Rigsbys fare no better with their reliance on *Rogan*, *Mackby*, and *Peterson* because,

as State Farm noted in its Summary Judgment Opposition, these cases also involve forms of

fraudulent inducement: illegal kickbacks inducing the provision of services or government

program participants who were ineligible to participate from the inception.  *See United States v.*

*Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (services incentivized at the outset by payments in

violation of the Anti-Kickback Statute and Stark Act); *United States v. Mackby*, 339 F.3d 1013,

1017 (9th Cir. 2003) (physical therapy clinic "not eligible to receive any Medicare funds" and

using false provider number); *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975) (company

submitting claims not a certified provider under Medicare).

Here, State Farm is entitled to discovery in order to obtain evidence that FEMA received

exactly what it bargained for with the 236 Claim:  Among other benefits, in exchange for

insurance premiums paid by the homeowner-insured, a flood insurance claim was paid to an

eligible insured for a covered loss, allowing the homeowner to have some financial resources to

rebuild or relocate while also offsetting the amount of government spending on emergency aid in

catastrophes.  Under the FCA, the government is entitled to recover the damages sustained by the

government due to the violation.  31 U.S.C. § 3729(a)(1).  Under the law, those damages would

be measured by the difference in value between what the Rigsbys allege the government

bargained for (a payment to eligible insureds for covered flood damage supported by a line-by-

line estimate), and what the government received (a payment to eligible insureds for covered

flood damage supported by an Xactotal adjustment methodology and extensive file documentation of photographs, sketches, and notes but without a line-by-line estimate). The Rigsbys may seek to establish that such damages are $200,000, but State Farm is entitled to establish, through evidence adduced in discovery and expert evidence, that any causal damages are far less or zero. That evidence would include evidence of the actual flood damage to the 236 Property and would overlap in some ways with evidence related to falsity.

In addition, State Farm is entitled to take evidence from FEMA tracing what particular NFIP funds were actually used to pay the 236 Claim to determine what portion, if any, was attributable to the U.S. Treasury as opposed to homeowner premiums. The Rigsbys misunderstand the thrust of this legal argument by claiming that State Farm already argued post-trial that the Rigsbys had not shown that the McIntosh claim was ever presented and paid, ([1408] at 30). But State Farm is not seeking discovery at this time on presentment. And the question of whether federal funds were used to pay the 236 Claim is not dictated by whether there was sufficient evidence to show that federal funds were used to pay the McIntosh claim.[15]

### E.   ORIGINAL SOURCE DISCOVERY

In an attempt to avoid "original source" discovery with respect to the 236 Claim, the Rigsbys incorrectly posit that "[t]he Fifth Circuit already has held that the Rigsbys are original sources as to all instances of false billing within State Farm's fraudulent scheme," ([1408] at 33). Rather, the Fifth Circuit actually stated that "[i]t is plausible that § 3730(e)(4) might come into

---

[15] With respect to McIntosh, this Court simply found that the existence of the McIntosh check "appears to be sufficient to permit a jury to infer that the claim was presented to the Government and then paid using federal funds." ([1127] at 24–25.) That comment on the sufficiency of the evidence offered at trial, which was not contradicted by any evidence on source of funds offered by State Farm, only demonstrates that it is possible for the Rigsbys to meet their burden of proof on source of funds with a check where nothing to the contrary is presented. It does not also mean that State Farm is now precluded from seeking out evidence on source of funds for a completely separate claim check, evidence which would at the very least create a genuine issue of material fact. *See* ([1397] at 31–32 n.15.)

play again as the district court proceeds with this litigation. … [I]f the district court on remand should find a public disclosure touching on any possible claims, the Rigsbys would not necessarily be barred from pursuing those claims *if they remain qualified as original sources* under § 3730(e)(4)(B)." *Rigsby*, 794 F.3d at 476 (emphasis added). Thus, the Fifth Circuit tied its original source analysis specifically to the McIntosh claim. *Id.* at 474–76 (noting, *inter alia*, that "the Rigsbys' personal, first-hand experiences filled in much of the detail, particularly as it related to the McIntosh claim"). And even where the Fifth Circuit spoke more broadly about the Rigsbys' knowledge of an alleged fraudulent scheme, it described it as "fraudulently misclassif[ying] wind damage as flood damage," as on the McIntosh property, *id.* at 475, not a scheme to avoid compliance with an alleged W-5054 requirement to use line-by-line estimates to adjust certain flood loss claims.

The Rigsbys similarly mischaracterize the Fifth Circuit's decision with respect to public disclosure. The Court did not, as the Rigsbys state, ([1408] at 11), find that there had been no public disclosure. The Fifth Circuit expressly declined to make a finding and resolved the issue on original source grounds alone. *Rigsby*, 794 F.3d at 474 ("Assuming *arguendo* that these were public disclosures …."). Thus, public disclosure remains an open question, and State Farm is entitled to discovery on this topic.

## CONCLUSION

For the foregoing reasons and those in State Farm's [1395] Memorandum of Authorities in Support of Its Motion for Rule 56(d) Discovery, State Farm respectfully requests that, if the Court does not strike or deny outright the Rigsbys' motion for partial summary judgment, the Court deny the Rigsbys' motion without prejudice as premature and permit State Farm time to take discovery, including document discovery and testimony from relevant witnesses.

This 27th day of July 2018.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:   s/ *E. Barney Robinson III* (MB # 09432)
Michael B. Beers, *PHV* (ASB-4992-S80M)
Phil B. Abernethy (MB # 1023)
E. Barney Robinson III (MB # 09432)
Amanda B. Barbour (MB # 99119)
Michael C. McCabe, Jr. (MB # 101548)

ITS ATTORNEYS

OF COUNSEL:

BUTLER SNOW LLP
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3025
(E) michael.mccabe@butlersnow.com

BUTLER SNOW LLP
250 Commerce Street, Suite 203
Montgomery, AL  36104
(P) (334) 832-2900
(F) (334) 832-2901
(E) michael.beers@butlersnow.com

BUTLER SNOW LLP
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) phil.abernethy@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Ginny Y. Kennedy
WATSON HEIDELBERG PLLC
2829 Lakeland Drive, Suite 1502
Flowood, Mississippi 39232
P.O. Box 23546
Jackson, Mississippi 39225-3546
(P) 601-503-1935
(F) 601-932-4400
mheidelberg@whjpllc.com
gkennedy@whjpllc.com

August J. Matteis Jr.
William E. Copley
Derek Y. Sugimura
Timothy M. Belknap
WEISBROD, MATTEIS & COPLEY, PLLC
1200 New Hampshire Avenue, NW, Suite 600
Washington, DC  20036
amatteis@wmclaw.com
wcopley@wmclaw.com
dsugimura@wmclaw.com
tbelknap@wmclaw.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jeffrey S. Bucholtz
Joyce R. Branda
Patricia R. Davis
Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
(P) (202) 307-0264
(F) (202) 514-0280

Lynn Murray
AUSA
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
501 East Court Street, Suite 4.430
Jackson, MS  39201
(P) (601) 965-2835
lynn.murray@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

This the 27th day of July, 2018.

By:    s/ *E. Barney Robinson III* (MB # 09432)
            E. Barney Robinson III (MB # 09432)