UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS


VERSUS                                          CIVIL ACTION NO. 1:06CV433-HSO-RHW


STATE FARM FIRE AND CASUALTY COMPANY  DEFENDANT/COUNTER-CLAIMANT

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO COMPEL

Before the Court is Relators' motion to compel discovery and State Farm Fire and

Casualty Company's (State Farm) motion for leave to file a sur-reply.  Doc. [1348] & [1375].

Relators' *qui tam* action, filed pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq*., alleges

that in the aftermath of Hurricane Katrina, State Farm submitted false claims to the United States

government for payment on flood policies.  According to Relators, State Farm unlawfully shifted

its responsibility to pay wind damage claims on homeowner's insurance policies to the

government by classifying damage as flood damage instead of wind damage.  The alleged

scheme involved State Farm using Xactotal software rather than Xactimate software to adjust

flood claims under National Flood Insurance Program (NFIP) policies, in violation of NFIP

adjusting requirements.  In furtherance of the scheme, State Farm instructed adjusters to

manipulate totals in Xactotal to ensure that flood policy limits were reached.  Relators further

allege that Lecky King, a State Farm employee, appropriated engineering reports coming into the

Gulfport office to make sure all the reports conformed to State Farm's scheme to categorize all

losses as caused by flooding rather than wind.

On August 10, 2009, United States District Judge L.T. Senter, who then presided over the case, ordered State Farm to create a list (the List) of insured properties meeting certain enumerated criteria. Doc. [344]. State Farm first produced the List to the Court *in camera*. On May 17, 2016, at the Court's direction, State Farm produced the List to Relators. Doc. [1276] at 3 & [1278]. By order dated June 22, 2017, the Court directed State Farm to produce copies of claim files, both wind and flood, for properties included on the List. Doc. [1324]. The claim-file production was intended as a first step in the process to determine which other State Farm insured properties fit within the fraudulent scheme outlined in Relators' complaint. *See* Doc. [1276] at 2 ("The Court's directives were intended as the first step in what could prove to be a lengthy and complex litigation process" "the undersigned addressed the *in camera* list as the first order of discovery business.").

The undersigned conducted three telephone conferences addressing various issues and disputes regarding production of the claim files. *See* Doc. [1346]. On December 14, 2017, the Court issued an order directing State Farm to complete production of the claim files. *Id.* The Court further directed Relators to file motions to compel relating to production of these claim files. *Id.* The Court also instructed Plaintiffs to file any motion to expand the scope of discovery as it relates to other properties not contained on the List. *Id.* The Court set a deadline of February 1, 2018, to complete these actions.

As instructed, Relators filed on February 1, 2018, a motion to compel discovery related to the claim file production. Doc. [1348]. In their motion, Relators also seek to expand the geographic scope of the List to include properties in other counties that might meet the criteria established in the order of August 10, 2009. To that end, Relators request an opportunity to conduct discovery into how State Farm compiled the List. On March 12, 2018, the parties

completed briefing on the motion to compel. However, on April 2, 2018, State Farm filed a motion for leave to file a sur-reply. Doc. [1375]. As will be discussed below, State Farm's motion is denied.

**Geographic Scope of Discovery**

In their motion to compel, Relators argue that State Farm has produced only a subset of the claim files required by Judge Senter's order of August 10, 2009. Specifically, Relators argue that State Farm's production is limited to the three coastal counties: Hancock, Harrison, and Jackson. Rather than limiting production arbitrarily to these three counties, Relators assert that State Farm should be directed to amend the List to include any claims adjusted through its Gulfport Field Office, regardless of the county where the property was located. Relators also request an opportunity to conduct discovery regarding how State Farm compiled the List.

In response, State Farm admits that the properties on the List are only from the three coastal counties of Hancock, Harrison, and Jackson. However, State Farm's counsel subsequently analyzed Hurricane Katrina claim files from other counties adjusted through State Farm's Gulfport Field Office. *See* Doc. [1362-1]. This analysis failed to identify any additional insured properties from other counties that meet the criteria on the List. *Id.* at 2. The Court's order of June 22, 2017, required State Farm to produce claim files for properties included on the List. There is no indication that State Farm failed to produce claim files for the properties currently on the List. Therefore, it follows that State Farm's failure to include claim files for properties *not* included on the List does not constitute a deficiency in State Farm's compliance with this Court's order of June 22, 2017. Moreover, counsel for State Farm represents that a search of claim files from other counties adjusted through the Gulfport Field Office did not

reveal any additional properties that should have been included on the List.  Accordingly, Relators' request to expand the geographic scope is denied.

**Discovery on Compilation of List**

The Court also denies Relators' request to conduct discovery into how State Farm compiled the List.  The only specific basis fully developed by Relators in their motion to compel is whether State Farm should have expanded the geographic scope to include properties from other counties.  *See* Doc. [1349] at 6-10.  As discussed above, this is a non-issue.  Based on counsel's representations, there are no additional properties from other counties that should have been included on the List.  Doc. [1362-1] at 2.  Relators also suggest that discovery would aid in exploring inherent subjectivity of the List criteria.  As its sole example, Relators' point to the question of what constitutes a "cabana".  Doc. [1349] at 10.  Relators apparently wish to examine State Farm's state of mind and "application of judgment" when it responded to what was in effect a discovery order.  *See* Doc. [1369] at 3.  It is not the general practice of this Court to allow discovery about discovery.  Relators have not provided an adequate factual basis to justify such collateral discovery.  *See Commins v. NES Rentals Holdings, Inc.*, 2018 WL 3186983, at *9 (W.D.Ky. June 28, 2018); *Caitlin v. Wal-Mart Stores, Inc.*, 2016 WL 7974070, at *1 (D.Minn. Sept. 22, 2016).  Relators' generalized concerns and speculations about State Farm's interpretation of the August 10, 2009, order are not sufficient bases for allowing additional discovery with respect to the List.

**Privilege Log**

Relators argue that State Farm withheld discoverable evidence based on improper and unsubstantiated assertions of privilege.  State Farm counters that it has been ordered to produce

only the claim files for the insured properties on the List. It has not been ordered to produce litigation or mediation files for which the privileges have been asserted.

Given the nature of the allegations in Relators' complaint, it does not appear that litigation or mediation files would contain discoverable information or fit within the category of "claim files" for purposes of the Court's June 22, 2017, order. Judge Senter's August 10, 2009, order required State Farm to identify insured properties based on the category of damage (i.e. not "slabs, pilings, or empty shells"); whether NFIP limits were paid; and whether Xactimate estimates were used. Doc. [344] at 2. In other words, the List criteria focused on the initial adjustment and payment of claims for insured properties. It did not extend to later litigation or mediation of those claims. The order of June 22, 2017, directed State Farm to produce claim files for the properties on the List. The order did not require production of litigation or mediation files. Nor was it intended to include production of litigation or mediation files. While the content of litigation or mediation files conceivably could become relevant and discoverable at some future time or for some other purpose, presently State Farm is required to produce only the wind and flood claim files for each property on the List. To the extent Relators seek information or documents categorized as privileged by virtue of litigation or mediation, the motion to compel is denied.

Relators object to State Farm's bulk logging of withheld documents. State Farm's use of categorical logging relates primarily to litigation and mediation files. *See* Doc. [1363] at 6. Such categorical logging is acceptable because State Farm is under no present obligation to produce litigation or mediation files. Moreover, State Farm has supplemented certain categorical entries. *See* Doc. [1362-5].

**<u>Redactions</u>**

Relators argue that State Farm redacted text by whiting it out, making it impossible for them to distinguish redactions from empty space. Apparently, State Farm's counsel redacted using white cover-up tape in 2010. Relators request that State Farm reapply the redactions in such a manner to make the parameters of the redactions readily apparent. Relators' motion to compel is granted. State Farm is directed to reapply redactions using an alternative method that is mutually agreeable to the parties. The parties are directed to confer regarding which documents need to have redactions reapplied.

**<u>Insurance Examination Documents</u>**

Relators argue that Start Farm relies on inapplicable Mississippi law and unnecessary privacy protections to withhold discoverable information. State Farm argues that Miss. Code Ann. § 83-5-209 justifies redacting or withholding certain information. Relators contend that the statutory provision cited by State Farm applies only to the Mississippi Insurance Department's records.

The Court finds that Miss. Code Ann. § 83-5-209 provides a partial basis for State Farm to withhold certain documents or information. The purpose of the relevant statutory sequence, which contains § 83-5-209, "is to provide an effective and efficient system for examining the activities, operations, financial condition and affairs of all persons transacting the business of insurance" in Mississippi. Miss. Code Ann. § 83-5-201. The specific statutory provision in question, Miss. Code Ann. § 83-5-209(7)(a)(i), protects from disclosure "documents, materials or other information . . . created, produced or obtained by or disclosed to the commissioner or any other person in the course of an examination made under Sections 83-5-201 through 83-5-217, or

in the course of analysis by the commissioner of the financial condition or market conduct of a company".

State Farm fits within the category of "any other person". Thus, a plain reading of the statute indicates that documents, materials, or other information created, produced or obtained by or disclosed to State Farm as part of an insurance examination process under § 83-5-201 through § 83-5-217, or as part of a commissioner's analysis of the financial condition or market conduct of State Farm, would be deemed confidential, privileged, and not subject to discovery in a private civil action. To reiterate, State Farm has been directed to produce claim files. State Farm has not been ordered to produce documents created for purposes of an insurance examination process or commissioner's analysis of the financial condition or market conduct of State Farm. Presumably, State Farm gathered information and created documents about its policyholders for purposes of insuring them and/or adjusting their policy claims prior to or independent of any examination or analysis by the commissioner of insurance. The fact that State Farm provided the same information or documents to the commissioner during an examination or analysis does not necessarily preclude State Farm from producing in discovery the previously gathered information. The mere fortuity of later disclosure to the commissioner as part of an insurance examination process or analysis does not create a privilege where none previously would have existed. Nevertheless, State Farm need not produce information created, produced or obtained by or disclosed to State Farm specific to an insurance examination or commissioner's analysis of the financial condition or market conduct of State Farm.

The privacy concerns raised by State Farm regarding non-party policyholders' personal identifiers may be cured by a protective order as opposed to redacting or withholding the information from discovery. Relators' motion to compel is granted in part to the extent that State

Farm should produce documents or information withheld pursuant to Mississippi Department of Insurance Regulations, Miss. Code Ann. § 83-5-209, or because they contain "personal identifiers" of non-party policyholders, *except that* State Farm is not required to produce information, materials, or documents created, produced or obtained by or disclosed to State Farm specific to the insurance examination process under § 83-5-201 through § 83-5-217 or commissioner's analysis of State Farm's financial condition or market conduct. Although raised by Relators in their motion to compel, the court reserves ruling on what information should be subject to disclosure in public filings, because this question falls outside the scope of the motion to compel. The only question currently before the Court is what information should be produced in discovery.

**Electronic Metadata and Spoliation**

Relators argue that State Farm withheld or failed to preserve electronic metadata from its Claims Service Records (CSR) database and that State Farm did not produce the electronic information in the format originally maintained in the ordinary course of business. State Farm counters that the relevant data in the CSR database does not contain metadata. Moreover, State Farm migrated data from its CSR system to a new system (Electronic Claims System (ECS)) because the CSR system has been retired. State Farm produced to Relators printed reports from the retired CSR database. Relators contend that if State Farm cannot produce the CSR-based data in its electronic format, then State Farm should be sanctioned for spoliation with adverse inferences in Relators' favor.

In their reply, Relators also argue they should be given access to the electronic data in the ECS database. Doc. [1369] at 9-10. This is a new argument introduced for the first time in Relators' reply. The original basis of Relators motion to compel was simply to gain access to

metadata in the CSR database, and in the alternative, for a spoliation sanction. *See* Doc. [1349] at 20-24. Although fully aware that State Farm migrated data to the ECS database, Relators did not request access to the ECS database in the opening brief to their motion to compel. To the contrary, Relators' arguments in the opening brief suggest that the ECS database does not contain the desired metadata and therefore is not an adequate substitute. *See* Doc. [1349] at 22-23. For example, Relators cite to State Farm's conferral letter of December 13, 2017, advising "'there is no way to have ECS export that data in a manner replicating how it was maintained in the ordinary course of business at the time of creation'". Doc. [1349] at 2, Doc. [1348-9] at 2. Relators then assert that "State Farm's retirement of its CSR database in 2012 apparently prevents any attempt to cure this deficiency." Doc. [1349] at 23. They further assert that "State Farm apparently has *not* maintained copies of the electronic metadata associated with the CSR database for its flood files." *Id.* (emphasis in original). Relators justify their initial failure to request access to data in the ECS system by arguing that they did not know State Farm "retained relevant metadata from CSR in its ECS system until it filed its opposition brief." Doc. [1369] at 2, 10. This simply misstates State Farm's position. To the contrary, State Farm argues there is no relevant metadata in either the CSR or ECS system. *See* Doc. [1363] at 11-13, 19.

Christopher Blair, a systems analyst with State Farm, explained that claim representatives using CSR did not have the ability to revise or delete existing activity log entries. Doc. [1362-6] at 3. Rather, activity log entries became a permanent unchangeable part of the claim's CSR data. *Id.* Any changes or corrections were cumulative and retained going forward. *Id.* Around 2012, State Farm switched from CSR to ECS, because Hewlett Packard discontinued its support of the CSR software. *Id.* Accordingly, State Farm migrated every field necessary for claims administration from the old to the new system. *Id.* at 4. According to Blair, "ECS is similar to

the CSR in that it is a relational database comprised of a user interface and an underlying database." *Id.* Charles A. Cipone, a purported expert in information technology, defined "metadata" as information such as creation date, last modified date, and author. Doc. [1362-7] at 5. According to Cipone, State Farm's CSR system is a structured relational database as opposed to unstructured data. Cipone explained that "[m]etadata is a term associated with unstructured computer files". *Id.* He further explained that "[t]he concept of metadata is not applicable to structured data" such as contained in the CSR system. *Id.* Based on the declarations of Blair and Cipone, it appears that there is no relevant metadata to obtain from either the CSR or ECS database.

In support of their rebuttal, Relators offer the declaration of Hunter W. McMahon, a purported expert in electronic discovery and litigation technology. Doc. [1369-1]. McMahon asserts that State Farm continues to have access to electronic data associated with the claim files through ECS. However, McMahon focuses his opinion primarily on the functionality and context of the printed format versus the electronic format of the claim file information. McMahon suggests that State Farm's ECS database contains metadata, but he does not identify specific relevant metadata contained on the ECS platform that would aid Relators' initial review process of the claim files.

The Court finds that Relators' motion to compel should be denied with respect to this issue. In its order of June 22, 2017, the Court intended for State Farm to produce the claim files for the insured properties on the List so that Relators could begin reviewing these files to determine which properties they wish to include as part of their FCA claim. It was not the Court's intention to get into technical disputes and battles between experts about what constitutes metadata. It is the Court's understanding that State Farm has produced the claim files as well as

the CSR-based data in printed format related to those claim files. Whether Relators are entitled to a spoliation sanction is a matter for the trial judge to resolve at future date.

State Farm filed a motion for leave to file a sur-reply regarding the issue of metadata and electronically stored information. State Farm argues that in their reply brief, Relators abandoned original allegations of spoliation and instead submitted new evidence and arguments supporting their need for metadata in State Farm's electronic claims data. As alternative relief, Relators also requested for the first time an opportunity to meet and confer with State Farm's IT personnel.

Neither the federal rules nor the local rules makes provision for filing a sur-reply. This Court disfavors the use of a sur-reply or sur-rebuttal. *See Lacher v. West*, 147 F.Supp.2d 538, 539 (N.D.Tex. 2001) (sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter"); *Warrior Energy Servs. v. ATP Titan M/V*, 551 Fed. App'x 749, 751 n.2 (5th Cir. 2014). However, a sur-reply may be appropriate when the reply raises new legal theories or attempts to introduce new evidence. *16 Front Street LLC v. Mississippi Silicon, LLC* , 162 F.Supp.3d 558, 560 (N.D.Miss. 2016).

Relators did offer a new theory (access to the ECS database) and introduced new evidence (McMahon's declaration) in their reply. However, in addressing the instant motion to compel, the Court focuses solely on the issue of State Farm's production of the claim files and Relators' perceived deficiencies of State Farm's discovery response. The Court is concerned with the sufficiency of State Farm's production of discovery as it relates to the order of June 22, 2017, and offers no opinion on whether State Farm's IT personnel should be involved in locating information responsive to Relators' discovery requests. State Farm's request to file a sur-rebuttal is denied.

**Illegible Documents and Black & White Photographs**

Relators contend that State Farm produced many documents that are illegible. Relators provide several examples of illegible documents but they do not provide a comprehensive list. In response State Farm offers to determine whether higher quality versions of any particular documents are available and, if so, to produce them to Relators. In light of State Farm's offer to cure this problem, the motion to compel is denied. It is incumbent upon Relators to identify which specific documents or images they consider illegible.

Relators also question whether State Farm has provided replacement photographs in color for all photographs that it originally produced in black and white. State Farm advises that on November 16, 2017, it provided all available color photographs. Doc. [1362-1] at 2. This issue is therefore moot.

IT IS THEREFORE ORDERED AND ADJUDGED that Relators' [1348] Motion to Compel is GRANTED in part and DENIED in part. To the extent additional discovery responses are required by operation of this Order, State Farm shall have until **October 30, 2018**, to serve supplemental discovery responses.

IT IS FURTHER ORDERED that State Farm's [1375] Motion for Leave to File a Sur-Rebuttal is DENIED.

SO ORDERED AND ADJUDGED, this the 18th day of September, 2018.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE