IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY                    RELATORS/COUNTER-DEFENDANTS

v.                                              CASE NO. 1:06cv433-HSO-RHW

STATE FARM FIRE AND CASUALTY COMPANY   DEFENDANT/COUNTER-PLAINTIFF

### STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS RELATORS' [1623] SECOND AMENDED COMPLAINT

Pursuant to Rules 8(a), 9(b), 10(b), and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant State Farm Fire and Casualty Company ("State Farm") submits this memorandum of

law in support of its Motion to Dismiss the [1623] Second Amended Complaint, including on

grounds that it is barred by the statute of limitations; it fails to plead a false certification, a

specific representation, materiality, knowledge of materiality, and scienter with plausibility or

particularity; and it violates the pleading requirements of the Federal Rules.

### INTRODUCTION

Taking advantage of this Court's authorization to amend their 2007 [16] First Amended

Complaint ("2007 Complaint") to attempt to plead the facts that would support the elements of a

false certification claim under the False Claims Act ("FCA"), Relators Cori and Kerri Rigsby

(the "Rigsbys") have used the occasion to effect wholesale change to the nature and scope of

their *qui tam* allegations.  Indeed, the Rigsbys' Second Amended Complaint ("SAC") bears only

passing resemblance to the prior pleading.  As the Court will recall, the prior complaint – the

operative pleading in this litigation for nearly thirteen years – alleged a scheme and conspiracy

among State Farm and more than a dozen entities and individuals, including several independent

insurance companies, to shift insurance coverage liability for Hurricane Katrina losses to the

federal National Flood Insurance Program ("NFIP") and the Federal Emergency Management

Agency ("FEMA") by falsely classifying wind damage as flood damage.  ([16] at 1 & ¶¶ 13-26) (identifying parties).  That is what this case was about.

Notably, in their latest complaint, the Rigsbys refer to "the scheme that the Rigsbys proved at trial in 2013," ¶ 74,[1] but the Fifth Circuit's opinion – referenced repeatedly as support for the SAC allegations – explained that the only alleged scheme at the McIntosh trial was "State Farm's scheme to categorize all losses as caused by flooding rather than wind."  *United States ex rel. Rigsby v. State Farm Fire & Casualty Co.*, 794 F.3d 457, 468 (5th Cir. 2015), *aff'd on other grounds*, 137 S. Ct. 436 (2016).  In the SAC, that scheme and the claims at issue have morphed into something entirely different.  In the new complaint, after years of discovery, the Rigsbys fail to come up with even one additional example beyond McIntosh of wind-vs-flood shifting, and the wind-vs-flood allegations take a distant backseat to two new allegations.

*First*, the SAC alleges that, when adjusting losses on a certain category of properties damaged during Hurricane Katrina, State Farm violated a supposed FEMA requirement to use a "line-by-line" adjustment methodology.  This FEMA "line-by-line" requirement purportedly is set forth in a guidance document, FEMA Bulletin W-5054 ("W-5054"), which FEMA released weeks after Hurricane Katrina struck the Gulf Coast.  The W-5054 guidance allowed WYO carriers like State Farm to use expedited phone adjustment procedures for certain categories of properties and as an alternative to each carrier's "normal claim procedures."  According to the SAC, State Farm falsely certified that it had used the allegedly "normal" line-by-line methodology whenever it used the so-called "XacTotal" valuation program in adjusting certain losses, and, as a result, State Farm was not entitled to *any* reimbursement from FEMA for the claims it paid to homeowners *even on flood-damaged homes*.  These allegations of non-

---

[1] All ¶ references are to paragraphs of the SAC, unless otherwise specified.

compliance with W-5054 appear nowhere in the 2007 Complaint.  Indeed, these allegations are about what adjustment methodology and paperwork State Farm used, not about whether the property ***actually*** was damaged by wind instead of flood.

*Second*, the SAC alleges that State Farm violated another supposed FEMA requirement set forth in W-5054 by overcharging FEMA for adjustment fees on properties that were adjusted using XacTotal.  According to the new complaint, W-5054 only authorized the higher, regular fee schedule for adjustments performed using a line-by-line methodology.  As with the first W-5054 allegation, the Rigsbys contend that this conduct results in false certification liability, a theory that was not advanced with respect to any conduct in the 2007 Complaint.  Indeed, this allegation also is completely independent of the wind-vs-flood scheme, since it purports to impose liability even when the insured property actually sustained flood damage.

Thus, the Rigsbys have recast this case, borrowing only a handful of sentences from the prior pleading and adding two never-before-pled sets of allegations (W-5054 procedures compliance and adjustment fee compliance) under two never-before-pled theories of FCA liability (express and implied false certification).  In addition, the Rigsbys now seek to use these two new sets of allegations to impose liability well beyond the properties on the 501 List, even though this Court previously described that List as the "outer limits" of the potential claims.[2]

As set forth below, the SAC must be dismissed in its entirety.  The new false certification allegations should be dismissed because the claims are barred by the statute of limitations and

---

[2] The "501 List" refers to the list of properties identified by State Farm pursuant to this Court's [343] order, initially submitted *in camera* to the Court but later produced to the Rigsbys following the reopening of the case in 2016.  As this Court stated with respect to the prior complaint's wind-vs-flood allegations, the 501 List comprises the "outer limits of the potential claims involved in this action." ([343] at 10.)  State Farm thus views the references in the SAC to potential liability beyond the 501 List properties to be limited to the two new schemes.  If the Rigsbys contend that they are seeking to impose wind-vs-flood scheme liability beyond the properties on the 501 List, State Farm reserves the right to file an appropriate motion.

because the Rigsbys fail to plead the necessary elements of the claims, much less with particularity.  The Rigsbys also appear to contend that the new allegations somehow fall within the same scheme as the wind-vs-flood claims.  In so doing, the Rigsbys fundamentally have changed the nature of the allegations that previously passed muster with respect to the McIntosh claim under Rule 9(b), making this new alleged "scheme" one that never has been analyzed by any court.  Because the new and fatally-flawed claims are central to the omnibus "scheme" the Rigsbys now seem to be attempting to allege, the entire complaint fails.

<u>ARGUMENT</u>

First, the new claims and theories of liability are untimely.  The FCA provides that a "civil action under section 3730 may not be brought— (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last."  31 U.S.C. § 3731(b).  As described below, because new claims stemming from activity well over a decade ago are alleged for the first time in the SAC, they are barred.

Second, FCA complaints, including amended complaints, "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Rule 9(b)'s particularity requirement is supplemental to Rule 8(a), which first requires, in order to survive a motion to dismiss, that a complaint must contain "enough facts [taken as true] to state a claim to relief that is plausible on its face."  *Grubbs*, 565 F.3d at 185 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, the court must accept only well-pleaded facts as true, meaning that "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" even under Rule 8(a), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that, if "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls," *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).  As described below, the SAC fails to meet these pleading requirements, including because its allegations are contradicted by the very documents it incorporates.

Third, the SAC fails to state any claim for false certification liability.  In *Universal Health Servs. v. United States ex rel. Escobar*, which recognized the viability of the implied false certification theory, the Supreme Court emphasized the mandatory pleading requirements applicable to all false certification claims: (1) the submission of a false certification; (2) material to the Government's payment decision; (3) that the defendant knew was material to the Government's payment decision.  136 S. Ct. 1989, 1995-96 (2016); *see also United States ex rel. Harman v. Trinity Indus.*, 872 F.3d 645, 653-54 (5th Cir. 2017); *United States ex rel. Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 107 (2d Cir. 2017) (per curiam) (requiring application of *Escobar*'s materiality requirements to an express false certification claim).  The SAC does not adequately allege these essential elements.  *See Escobar*, 136 S. Ct. at 2004 n.6 (confirming the propriety of granting motions to dismiss for failure to plead false certification elements with plausibility and particularity).

Fourth, if the requirements allegedly violated "were thoroughly unclear, as a matter of law, the FCA's knowledge and falsity requirements have not been met."  *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 340 n.12 (5th Cir. 2008) (citing *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 684 (5th Cir. 2003) (E. Jones, J., concurring) ("Where there are legitimate grounds for disagreement over the scope of a contractual or regulatory

provision, and the claimant's actions are in good faith, the claimant cannot be said to have knowingly presented a false claim.")).  As described below, the Rigsbys have not adequately alleged the requisite scienter to support their false certification "schemes" given the ambiguity surrounding whether W-5054 was meant to be a mandate to WYO carriers, and, if so, what that mandate entailed given its ambiguous language.

Finally, the SAC violates the pleading requirements of the Federal Rules, which require, "[i]f doing so would promote clarity," that "each claim founded on a separate transaction or occurrence … ***must*** be stated in a separate count …."  Fed. R. Civ. P. 10(b) (emphasis added).[3] Complaints, like the SAC, that fail to comply with the Federal Rules "impose unfair burdens on litigants and judges."  *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996); *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 367 (11th Cir. 1996).

## I.   THE NEW ALLEGATIONS ARE BARRED BY THE STATUTE OF LIMITATIONS

The relevant conduct for measuring the running of the statute of limitations under the FCA is the submission of the allegedly false claim for payment.  *See Smith v. United States*, 287 F.2d 299, 304 (5th Cir. 1961).  The claims at issue here involve the payment of NFIP flood claims in the immediate aftermath of Hurricane Katrina.  The Mississippi flood claims potentially at issue were paid in 2005 and 2006, *see* ¶ 64 (referencing 2006 report for the number of claims paid).  Thus, these allegedly false claims for payment were submitted and paid nearly fifteen years ago.  By any calculation, the false certification theories of liability alleged for the first time in the SAC are untimely.  31 U.S.C. § 3731(b).

The Rigsbys cannot salvage their new allegations by arguing that they "relate back" to

---

[3] In addition, the Rigsbys' attempt to wholesale "incorporate by reference all of their allegations from the Pretrial Order," ([1623] at 8 n.3), violates the Fed. R. Civ. P. 10(c) incorporation privilege.  *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).

their earlier complaint because "relation back is not allowed" where "a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994).  In other words, "[a] new pleading cannot relate back if the effect of the new pleading is to fault [the defendants] for conduct different from that identified in the original complaint, even if the new pleading shares some elements and some facts in common with the original claim." *Full Life Hospice*, *LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (internal quotation marks omitted).  "In determining if an amended complaint relates back, this Court regards as 'critical' whether the opposing party was put on notice regarding the claim raised therein."  *Holmes v. Greyhound Lines, Inc*., 757 F.2d 1563, 1566 (5th Cir. 1985); *see also Conner*, 20 F.3d at 1386 (allowing relation back because plaintiffs simply added new loans approved using the same pattern of conduct).

For example, in *United States ex rel. Bledsoe v. Community. Health Systems, Inc.*, FCA allegations of improper billing under the same billing code alleged in the original complaint nevertheless were found ***not*** to relate back because they involved different conduct – call back charges instead of emergency room use and resuscitation services rather than supplies – that would not have alerted defendants that those new charges or services were involved in the case. 501 F.3d 493, 518-19 (6th Cir. 2007) (also holding that allegations of fraudulent billing for equipment and supplies did not relate back to allegations of upcoding and miscoding).  Like *Bledsoe*, the new allegations in the SAC – that State Farm violated W-5054's "normal claim procedures" language and adjustment fee schedule – involve new facts and theories of liability (express and implied false certification, which require different and additional elements and

attendant conduct) found nowhere in any prior complaint.[4]  The earlier complaints never even reference W-5054 or "normal claim procedures."  *See, e.g.*, *Stephens v. John Bean Technologies Corp.*, 2018 WL 7288584, at *3 (W.D. Tex. Dec. 12, 2018) (rejecting relation back for a "new and separate theory of negligence," even though it involved the same underlying product).

## II.   COUNT ONE MUST BE DISMISSED UNDER RULES 8(a), 9(b), AND 12(b)(6)

Fourteen years after commencing this case, the Rigsbys fail to identify even a single claim for payment itself.  Instead, the Rigsbys only vaguely allege that "claims were paid by the United States government, through withdrawals of funds held by the United States Treasury, consistent with the procedure set up under the NFIP," ¶ 136, without detailing this procedure or documentation and without providing even one supposed example.  Given that the claim for payment itself is the "*sine qua non*" of FCA liability, *Grubbs*, 565 F.3d at 188, the failure to identify any in the SAC should not be overlooked.

Moreover, as described below, this failure also shines a light on the Rigsbys' inability to identify a certification – either express or implied – for their new false certification claims.  And, independently, the Rigsbys' fail to adequately allege the other essential elements of materiality, State Farm's knowledge of materiality, and scienter.

### A.   THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A FALSE CERTIFICATION
#### 1.   THE RIGSBYS FAIL TO IDENTIFY AN EXPRESS CERTIFICATION

Although the words "express false certification" are used in the SAC, no such cause of action is pled for the principal reason that the SAC never identifies a single express certification.  The law on this point is clear.  An essential element of an ***express*** false ***certification*** claim under

---

[4] The Rigsbys never previously advanced any false certification theory of liability – express or implied.  Instead, as the Fifth Circuit acknowledged, "[t]he Rigsbys contend[ed] that this is not a false certification case[.]"  *Rigsby*, 794 F.3d at 478 n.14.  The Rigsbys' disavowal of any false certification theory also gives rise to an estoppel defense to these claims.

the False *Claims* Act is – to state the obvious – an express certification on the claim for payment:

> [A]n express certification claim arises when "a party affirmatively and explicitly certifies compliance with a statute or regulation and the certification is a condition to receiving the government benefit."  It is not enough that a certification of compliance with a statute or regulation is false.  The defendant must make the certification to the government.  The *submission* of a false claim is the "sine qua non of a False Claims Act violation."

*United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, 2019 WL 1305069, at *11 (N.D. Miss. Mar. 21, 2019) (emphasis in original) (quoting *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 766 (S.D. Tex. 2010) & *United States ex rel. Jamison v. McKesson Corp.*, 784 F. Supp. 2d 664, 675 (N.D. Miss. 2011)).  *See also Riley*, 355 F.3d at 376 n.6 (5th Cir. 2004) ("[A]n express false certification on a claim form submitted to the Government for payment is actionable under the FCA[.]"); *United States ex rel. Campbell v. KIC Dev., LLC*, 2019 WL 6884485, at *7 (W.D. Tex. Dec. 10, 2019) ("[A]n express false certification theory of FCA liability is predicated upon outright misrepresentations made to the Government on an invoice or other claim for payment[.]").  The SAC never identifies a supposedly false express certification **on the claim for payment**.  *Cf. Riley*, 355 F.3d at 376 n.6 ("Physician claim Form HCFA–1500 carries an express certification 'that the services shown on this form were medically indicated and necessary for the health of the patient.'").

Instead, the SAC contends that every "XacTotal report that State Farm placed in a flood file" is "a false certification of compliance with W-5054."  ¶ 129.  To the extent that this assertion is meant to demonstrate express false certification liability, it fails for two reasons: First, XacTotal is an adjustment tool that generates a report containing no express certification of compliance with anything, let alone compliance with W-5054, and the SAC does not identify any supposed express certification in the XacTotal reports.  Second, the SAC does not allege – nor

could it – that an XacTotal report printout is either a claim for payment or that it accompanies the claim for payment. The act of placing a report in a file likewise is neither an express certification nor a claim for payment. The Rigsbys have not, and cannot, allege that anything requires that the claim file – or any portion thereof – be submitted to FEMA in order for a WYO carrier to be reimbursed the amount paid to a policyholder. Alleging that an XacTotal form is in a *file* is no substitute for identifying an express certification within a claim for payment.

The same analysis applies to the new adjustment fee liability claim. The SAC does not identify (a) any express certification by State Farm (pertaining to compliance with W-5054 or otherwise) with respect to adjustment fees, (b) a claim for payment of those fees, or (c) the two being submitted to FEMA together. Therefore, the SAC fails to allege mandatory elements of FCA liability based on an express false certification with respect to this claim as well.[5]

## 2. THE RIGSBYS FAIL TO PLEAD THE SPECIFIC REPRESENTATION NECESSARY FOR AN IMPLIED CERTIFICATION

The implied false certification claim in the SAC also is based on supposed non-compliance with W-5054. According to the Rigsbys, when State Farm sought payment from FEMA, it impliedly certified that it had complied with W-5054's "normal claim procedures" directive – which they contend means a line-by-line methodology – when in fact State Farm had used XacTotal to adjust the claim. ¶¶ 75, 124.

For purposes of implied false certification liability, the failure to identify a specific representation accompanying the claim is fatal. In *United States ex rel. Smith v. Wallace*, the Fifth Circuit affirmed summary judgment for defendants where the relator did not satisfy a

---

[5] The adjustment fee allegations suffer from other Rule 9(b) deficiencies. For example, the SAC does not identify any State Farm personnel who had the requisite scienter with respect to fees. Rule 9(b) requires more, including "at a minimum, that a plaintiff plead the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017).

"necessary element of his cause of action" when he failed to "provide evidence that would

support a finding that the claims included 'specific representations' that were 'misleading half-

truths' in light of the alleged misstatements in the original applications."  723 F. App'x 254, 256

(5th Cir. 2018).  *See also, e.g.*, *United States ex rel. Rose v. Stephens Institute*, 909 F.3d 1012,

1018 (9th Cir. 2018); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332 (9th Cir.

2017); *United States v. Eastwick Coll.*, 657 F. App'x 89, 94 (3d Cir. 2016); *United States v.

Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016); *United States ex rel. Smith v. Sanders*,

2017 WL 4536005, at *7 n.11 (N.D. Tex. Sep. 15, 2017); *United States ex rel. Curtin v. Barton

Malow Co.*, 2017 WL 2453032, at *6 (W.D. La. June 6, 2017).

> As another district court in the Fifth Circuit explained:

>> Because liability under the implied certification theory can only arise out of
>> claims that "make[] specific representations about the goods and services
>> provided," there must be some facts that indicate how medical services were
>> recorded and ultimately submitted.  There are no allegations as to what
>> entries [defendant] made into billing records ….  Nor are there any facts
>> indicating how [defendant] integrates those records into a bill.  Thus, the
>> Court cannot infer that [defendant] made any specific representations about
>> what services it provided on any particular claim.

*Sibley*, 2019 WL 1305069, at *14 (quoting *Escobar*, 136 S. Ct. at 1989).  The Rigsbys'

allegations fail in these same two respects:  They fail to allege a claim and a specific

representation in that claim.  Moreover, the Rigsbys cannot resuscitate their allegations by

pointing to any representations contained in ***file*** documents because the specific representation

must be made ***on the claim for payment***.  *Escobar*, 136 S. Ct. at 1995.  *See, e.g.*, *United States

ex rel. Jamison v. Career Opportunities, Inc.*, 2020 WL 520590, at *6 (N.D. Tex. Jan. 31, 2020)

(holding that a "true and correct" information certification on reports could not satisfy specific

representation requirement because, even though the reports were used to generate the fees, there

was no allegation that defendant submitted the reports as a part of the claim for payment).

11

To be sure, the Rigsbys use the term "specific representation" in an attempt to satisfy this pleading element, but their so-called representation is merely a conclusory assertion that references the amount of the claim, not an actual representation made by State Farm. ¶ 125 ("State Farm made specific representations to support its claim on the government's fisc when it represented to FEMA that each property incurred flood damage equal to or exceeding the limits of their SFIP policies."). This is exactly the type of allegation that *Escobar* says is not enough. For example, in *Kelly v. Serco, Inc.*, the Ninth Circuit ruled that vouchers/payment documentation did not contain any specific representations implicating the defendant's alleged non-compliance with the industry standard for cost reporting. 846 F.3d at 332-33. This was so even though the documentation included much more than the Rigsbys allege here, such as the period of performance, the total costs incurred during that period, defendant's fee applicable to that work, the dollar amounts for defendant's costs for labor, travel, and materials, and detailed line-item descriptions of its services and total hours and costs. *Id. See also United States ex rel. Coffman v. City of Leavenworth, Kansas*, 303 F. Supp. 3d 1101, 1121 (D. Kan. 2018) (holding that bills that "did nothing more than demand payment for the federal agency's percentage of plant flow and the contracted percentage rates for annual operating and maintenance expenses" did not "neatly fit within *Escobar*'s framework," which, in contrast, alleged payment codes corresponding to specific services and numbers corresponding to specific job titles with attendant staff and licensing requirements), *aff'd*, 770 F. App'x 417 (10th Cir. 2019).

## B. THE SECOND AMENDED COMPLAINT FAILS TO ADEQUATELY PLEAD "MATERIALITY" AS REQUIRED BY THE SUPREME COURT IN *ESCOBAR*

The Rigsbys must comply with Rule 9(b) and plead facts supporting the "rigorous" and "demanding" element of materiality with particularity. *Escobar*, 136 S. Ct. at 1996, 2003. *See also Sibley*, 2019 WL 1305069, at *14 (dismissing claims where "[t]here are no facts here that

suggest that had the government known of [defendant's alleged] violations it would not have paid a specific claim").  The SAC's materiality allegations are limited to the assertions that (a) compliance with W-5054 was a "prerequisite for payment," ¶ 97, and (b) W-5054 states that FEMA "will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing" the W-5054 processes, ¶ 99.  The Rigsbys' effort to satisfy this pleading obligation falls short.

A "prerequisite for payment" label is not enough.  *Escobar* "debunked the notion that a Governmental designation of compliance as a condition of payment by itself is sufficient to prove materiality." *Abbott v. BP Exploration. & Prod. Inc.*, 851 F.3d 384, 387 (5th Cir. 2017) (citing *Escobar*, 136 S. Ct. at 1996 ("What matters is not the label the government attaches to a requirement ....")).  *See also Kelly*, 846 F.3d at 333-34 ("[T]he possibility that the government would be entitled to refuse payment if it were aware of Serco's alleged violations is insufficient by itself to support a finding of materiality.").  The Rigsbys' second "materiality" allegation – that FEMA stated it would monitor W-5054 compliance – says nothing about whether FEMA actually did monitor compliance, nothing about whether that monitoring was with respect to the alleged requirement to use line-by-line estimates as opposed to the other aspects of W-5054 that are not at issue here (such as the use of telephone adjusting), and nothing about whether this monitoring had any impact on claim reimbursement.  This does not come close to satisfying the "rigorous" materiality pleading standard described by the Supreme Court.

Notably missing from the SAC are any allegations that FEMA actually or routinely refused to pay in instances where State Farm used XacTotal rather than line-by-line estimating.  Indeed, almost fifteen years after the events at issue and with widespread agency and Congressional scrutiny over the practices at issue, the Rigsbys have not been able to allege ***even***

*one* instance in which FEMA demanded reimbursement from State Farm because a claim was not adjusted using a line-by-line estimating methodology.  *Escobar*'s "high standard" for materiality is not met where a complaint contains no factual allegations showing that the government would not have reimbursed claims or consistently refused to pay similar claims. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017).  *See also United States ex rel. Porter v. Centene Corp.*, 2018 WL 9866507, at *6 (S.D. Miss. Sept. 27, 2018) (dismissing FCA allegations where "the Amended Complaint does not assert that claims for capitated payments for these positions are routinely denied"), *aff'd sub nom. United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 2020 WL 1887791 (5th Cir. Apr. 15, 2020); *United States ex rel. Ruckh v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1264 (M.D. Fla. 2018) ("The record suffers an entire absence of evidence of the kind a disinterested observer, fully informed and fairly guided by *Escobar*, would confidently expect on the question of materiality: evidence of how government has behaved in comparable circumstances.").[6]

Moreover, the "rigorous" and "demanding" element of materiality precludes an FCA claim based on "minor or insubstantial" or "garden-variety" breaches of contract or regulatory violations.  *Escobar*, 136 S. Ct. at 2003.  Here, State Farm's alleged failure to use a line-by-line adjustment methodology does not go to the "very essence of the bargain" of the NFIP Arrangement.  FEMA issued W-5054, entitled "Hurricane Katrina - Flood Claim Handling Standards," in an effort to *expedite* the payment of claims to NFIP policyholders, particularly those whose homes had been destroyed or were a constructive total loss.  (W-5054, Ex. A to

---

[6] Nor could the Rigsbys plausibly add such an allegation. *See* ([1396-4] ¶¶ 6-14) (identifying properties on the 501 List that FEMA reinspected and for which it did not note any deficiencies attributable to the lack of a line-by-line estimate and did not request or demand that State Farm reimburse FEMA).

Mtn.)[7]  In W-5054, FEMA confirmed that "[t]he numbers and severity of Katrina flood losses are unprecedented in the history of the" NFIP and that "[t]he situation requires innovative claim handling that will assist our policyholders to quickly recover from these losses …."  *Id.* at 1.

W-5054's focus was on easing the loss adjustment process by encouraging WYO carriers to conduct telephone adjustments for certain types of properties – Process #1 and Process #2 claims.  For Process #3 claims,[8] in the absence of telephone adjustments, the carrier would conduct a site visit and adjust the claim pursuant to its "normal claim procedures." *Id.*, Attach. A at 4.  And, consistent with its stated purpose of fostering innovative claim handling procedures, W-5054 promised that "FEMA will not seek reimbursement from the [WYO carrier] when a subsequent review identifies overpayments resulting from the [carrier's] proper use of the FEMA depth data *and a reasonable method of developing square foot value in concluding claims*." *Id.* at 2 (emphasis added).  The key to W-5054 was expedited claims processing and telephone adjusting.  W-5054 never once mentions "line-by-line" estimating and instead leaves it to WYO carriers to apply "the company's normal claim procedures" (varied as they may be from company to company) to the Process #3 claims at issue here. *Id.* at 1.  Thus, a supposed "line-by-line" requirement is not at the heart of W-5054.

Further, the open-ended language of W-5054 – "normal claim procedures" – provides

---

[7] In deciding a motion to dismiss under Rule 12(b)(6), (1) the "court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); (2)  the "court may consider documents … that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim,'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)); and (3) "a court may permissibly refer to matters of public record," *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Each of the documents attached as exhibits to the Motion falls into one or more of these categories.

[8] The SAC refers to these as "Category 3" homes, *see, e.g.*, ¶ 49, but W-5054 uses the terminology "process # 3."

further proof that the type of adjustment methodology used on Process #3 claims did not go to the essence of the bargain (even assuming that a guidance document that imposes no new mandates creates any bargain at all).  These types of "follow all procedures" directives are too general to support an implied false certification claim.  *Porter*, 2020 WL 1887791, at *4 ("Here, the district court concluded that the contracts ... contain broad boilerplate language generally requiring a contractor to follow all laws, which is the same type of language *Escobar* found too general to support a FCA claim.  We agree." (internal quotation marks and citations omitted)); *United States ex rel. Stephenson v. Archer W. Contractors, L.L.C.*, 548 F. App'x 135, 138 (5th Cir. 2013) ("The contract contained boilerplate language stating that the company would follow the law.  Absent a more specific certification of compliance, for example with traffic or roadway regulations, the FCA would here become a general enforcement device for traffic infractions.").

Moreover, even if one assumed that W-5054 indeed required a line-by-line methodology for Process #3 properties, there is no basis to allege that FEMA's flood claim payment decision depended on the type of adjustment methodology used by the WYO carrier.[9]  "To use the [*Escobar*] Court's example, just because the government might require contractors to use American-made staplers does not mean that it would be a *material* misrepresentation under the FCA to knowingly use foreign-made ones."  *United States ex rel. Patel v. Catholic Health Initiatives*, 792 F. App'x 296, 301 (5th Cir. 2019) (emphasis in original) (citing *Escobar*, 136 S. Ct. at 2004).  *See also Kelly*, 846 F.3d at 333-34 (characterizing compliance with guidelines for

---

[9] The regulations applicable to WYO carriers identify core questions, which do not include methodology:  "It is important that the [WYO] Company's Claims Department verifies the correctness of the coverage interpretations and reasonableness of the payments recommended by the adjusters."  44 C.F.R. § 62.23(i)(2).  *See also* (DHS OIG, Report No. OIG-08-97, "Hurricane Katrina: Wind Versus Flood Issues" (Sept. 26, 2008), Ex. B to Mtn.) at 6 (audit "detected ***minor errors*** in 18 instances, such as poor documentation, payment for items not covered under the policy, ***wrong estimating method used***, etc. These errors did not relate to a determination of the cause of damage." (emphases added)).

the format of tracking costs as "minor" and finding that the implied false certification "theory of liability falters on these shoals"); *Ruckh*, 304 F. Supp. 3d at 1267 ("[A]ctually not qualified is decisively different from fully qualified but not in possession of a certificate.").[10]

W-5054 also specifically referenced adjuster fees.  For Process #3 claims, *i.e.*, ones for which a site visit, rather than telephone adjustment, occurred, W-5054 indicated that WYO carriers would "be paid based upon the existing NFIP fee schedule," whereas "[t]he existing NFIP fee schedule will be modified" to a reduced amount "for claims handled by processes #1 and #2," which did not require any site visit.  (W-5054, Ex. A to Mtn.) at 2.  So, once again, even assuming that W-5054 somehow altered fees based on the methodology used by State Farm on Process #3 claims, the focus of W-5054 was on telephone adjustments, which are not at issue here.

### C. THE SECOND AMENDED COMPLAINT FAILS TO PLEAD STATE FARM'S KNOWLEDGE OF MATERIALITY AS REQUIRED BY THE SUPREME COURT IN *ESCOBAR*

Even if the SAC had included sufficient allegations that the adjustment methodology was material to FEMA's payment decision, that still would not be enough to establish materiality for false certification purposes.  Under *Escobar*, the complaint also separately must allege that ***State Farm knew*** that it was material to FEMA – in other words, that State Farm knew at the time of claim submission that FEMA allegedly would not reimburse a Process #3 flood claim or certain adjustment fees under W-5054 if FEMA knew that State Farm had not adjusted the claim using a

---

[10] Moreover, the testimony from FEMA officials (referenced in the SAC) confirms that the question of whether a line-by-line estimate or XacTotal was used was not the focus of W-5054.  (Trial Test. Vol. 7, Ex. C to Mtn.) at 1140:8-11 ("And so my focus was, in those times when it was clear that policy -- policy limits were going to be exceeded by the amount of flood damage, to get those claims paid as quickly as possible, and that was my main focus."); *id.* at 1142:14-24 ("Q. So the unique feature about 5054 was that for the first time in the history of the program, the National Flood Insurance Program, they were allowing the WYO carriers to adjust total losses by phone if the losses fit into certain categories; is that correct? A. Without a site visit, and obviously over the phone. Q. And that's what was unique about 5054; is that correct? A. Yes. Q. It was not the fact that once they identified those and adjusted by phone or without a site visit, they used Xactotal? A. No.").

line-by-line estimating methodology.  *See Escobar*, 136 S. Ct. at 1996.  Again, no such

allegation appears in the SAC.[11]  Without such an allegation – alleged with particularity – the

cause of action fails.

This pleading omission is not an accident.  The Rigsbys cannot plausibly allege State

Farm's knowledge of materiality.  W-5054 was issued on September 21, 2005, without any

effective date, let alone any retroactive application date.  ¶ 48; (W-5054, Ex. A to Mtn.).  By

September 21, however, State Farm already had been actively engaged in loss adjustments in the

aftermath of the August 29, 2005 hurricane.  For example, the adjuster's site visit for the

McIntosh flood claim referenced in the SAC, ¶ 83, occurred on September 20, 2005, the day

***before*** W-5054 was issued.  (Claim No. -638 Activity Log, Ex. D to Mtn.),[12] at 00010261 ("appt

set for tues [Sept. 20] 10:00").  The adjuster's site visit for the -236 flood claim, ¶ 109, occurred

on September 22, 2005, just one day after W-5054 was issued.  (Claim No. -236 File History

Information, Ex. E to Mtn.),[13] at 00217121.[14]  Based on this timeline, it is not plausible that

State Farm could have known that compliance with W-5054's supposed "line-by-line"

adjustment provision with respect to Process #3 claims was material to FEMA's payment

decision.

---

[11] Because the Rigsbys have failed to sufficiently allege materiality, as detailed above, they also by definition fail to allege that State Farm knew that W-5054's supposed requirement of a line-by-line estimate was material to FEMA.  *See Ruckh*, 304 F. Supp. 3d at 1261 ("Of course, with no evidence that the governments regarded the disputed practices as material, establishing the defendants' knowledge of materiality seems at least impractical, if not impossible (after all, until one proves, say, that the moon is green cheese, one cannot prove that someone else knows that the moon is green cheese).").

[12] State Farm is filing a motion to submit Exhibit D into the record under seal.

[13] State Farm is filing a motion to submit Exhibit E into the record under seal.

[14] Moreover, the emails referenced in the SAC reveal that State Farm continued to ask FEMA questions about W-5054 even seven days after its issuance, and the SAC itself acknowledges that FEMA did not respond to these inquiries.  ¶ 53.

### D. The Second Amended Complaint Does Not Plausibly Allege Scienter

The SAC also fails to adequately plead the "rigorous" element of scienter required for the false certification claims. *Escobar*, 136 S. Ct. at 2002. The processes in W-5054 were not part of any federal law or regulation. W-5054 had no effective date and said nothing about its applicability to adjustments begun or completed in the weeks between Hurricane Katrina and its issuance. (W-5054, Ex. A to Mtn.) In addition, W-5054 does not define or specify what was meant by "normal claim procedures" and does not use the term "line-by-line" adjusting (or any similar term). *Id.* The SAC does not allege that FEMA "warned away" State Farm from the use of XacTotal in these circumstances – indeed, the SAC acknowledges that FEMA never responded to State Farm's stated interpretation of W-5054 that any line-by-line requirement "would not make sense." ¶ 53; (Sept. 29, 2005 Email from Juan Guevara to Jim Shortley, Ex. F to Mtn.) at 1-2. When a term lacks a clear meaning, and an agency or other controlling source that establishes relevant industry standards has not defined it, then the term is ambiguous for FCA purposes. *See United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 878 (8th Cir. 2016); *see also United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) (holding that the term "regular" was ambiguous).

Thus, it is not enough for the SAC merely to allege that "normal" means a line-by-line estimate, particularly since the materials cited and incorporated into the complaint for this point contradict the allegation.[15] *See, e.g.*, (Trial Test. Vol. 7, Ex. C to Mtn.) at 1142:25-1143:7 ("Q. I will ask you whether or not 5054 prohibited the WYO carriers and their adjusters from using valuation tools like Xactotal instead of a stick-build estimate on the constructive total losses that

---

[15] Where the allegations are contradicted by documents referenced and incorporated into the complaint, the Court need not consider those allegations as true for the purposes of a motion to dismiss. *See Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

were inspected with a site visit? A. No, it didn't prohibit it. The 5054 was just providing another tool in the tool kit of adjusters and the Write-Your-Own companies in how they could deal with particular claims circumstances.").  All of the above points confirm that W-5054 was at very least "thoroughly unclear" in terms of any line-by-line adjustment requirement, which undermines a showing of scienter.  *Farmer*, 523 F.3d at 340 n.12; *Southland Mgmt. Corp.*, 326 F.3d at 684 (E. Jones, J., concurring).[16]

### III.  COUNT TWO MUST BE DISMISSED

Count Two of the SAC also must be dismissed.  While it purports to impose liability for false statements under § 3729(a)(1)(B), no such FCA liability exists in the absence of a false claim.  *See Southland Mgmt. Corp.*, 326 F.3d at 675 ("There is no liability under this Act for a false statement unless it is used to get [a] false claim paid."); *United States ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1314 (D. Utah 2018) ("Relators' approach would read the 'false or fraudulent claim' requirement out of § 3729(a)(1)(B). … But § 3729(a)(1)(B) requires that the false record or statement be material to a '*false or fraudulent* claim.'" (emphasis in original)).  Thus a false statement claim is wholly derivative and dependent on the success of a § 3729(a)(1)(A) claim.  Each § 3729(a)(1)(B) claim fails because Count One fails, as explained in detail above.[17]

---

[16] While the Fifth Circuit has not yet explicitly adopted the *Purcell* test in order to make this evaluation, other circuits and district courts within the Fifth Circuit have applied *Purcell* to dismiss FCA claims based on ambiguous provisions, including at the pleading stage.  *See Donegan*, 833 F.3d at 879; *United States v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018); *United States ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 636 (N.D. Tex. 2018).

[17] The SAC confusingly alleges that the "bill … sent to the federal government seeking payment" and "false invoices" also are false statements in support of false claims.  ¶¶ 140, 142(d), 142(g).  Apart from the fact that the SAC does not actually identify any claim for payment – let alone any "invoice" – there is a clear distinction under the statutory language of the FCA between a claim for payment and a false statement in support of a claim for payment.  The same document cannot serve both purposes for FCA liability.

## IV.   THE SECOND AMENDED COMPLAINT'S ATTEMPT TO PLEAD CLAIMS BEYOND THE 501 LIST IS SPECULATIVE AND IMPLAUSIBLE FOR ADDITIONAL REASONS

It appears that the Rigsbys are attempting to reach beyond the properties in the 501 List, which, by Court order, includes only those properties that were deemed constructive total losses (such that flood policy limits were paid).  *See* ([343], at 10-11.)  For instance, the SAC now seeks to impose liability for non-compliance with the supposed W-5054 line-by-line estimating obligation on properties that were not deemed constructive total losses.  The SAC asserts that "[i]t is entirely ***possible*** that State Farm failed to conduct a line-by-line estimate of a Category 3 home yet still did not pay the flood insurance policy limits on that claim (*e.g.*, where a home's insured value far exceeded its replacement cost)."  ¶ 76 (emphasis added).  This type of speculative pleading is impermissible.  Rule 8(a) requires plausibility to survive a motion to dismiss, not just possibility.  *Ashcroft*, 556 U.S. at 678 ("The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully.").  Similarly deficient is the SAC's one-paragraph allegation, unsupported by any other facts much less an example, that "where State Farm prepared real line-by-line estimates, State Farm overstated in those estimates the amount of damage that was caused by flooding."  ¶ 78.  These types of vague, speculative, and conclusory allegations in no way satisfy Rule 9(b)'s particularity requirements.

## V.   THE SECOND AMENDED COMPLAINT VIOLATES THE PLEADING REQUIREMENTS OF THE FEDERAL RULES

Finally, the Rigsbys' aggregation of each of its disparate sets of allegations (factually false wind-vs-flood shifting, W-5054 procedures non-compliance, W-5054 adjustment fees mis-charging) together into just Count One (false claim) and Count Two (false statement) warrants dismissal of the entire SAC under Fed. R. Civ. P. 10(b).  *See Three D Dep'ts, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) (ordering dismissal of complaint in its entirety where plaintiff stated a claim for relief on two theories presented together in one count).  "This is

more than a mere technicality in this case.  Because each of [relator's FCA] claims has different elements, it does not appear that all facts regarding the entire scheme are relevant to each claim." *United States v. Klausner Lumber One, LLC*, 2016 WL 7366891, at *3 (M.D. Fla. Dec. 2, 2016), *report and recommendation adopted*, 2016 WL 7338442 (M.D. Fla. Dec. 19, 2016).  The SAC's aggregated allegations do not allow State Farm "to assess its liability, to prepare a proper defense, or even to frame an appropriate answer," and the complaint "fails to perform the basic function of a pleading."  *United States ex rel. Mateski v. Raytheon Co.*, 2017 WL 1954942, at *7 (C.D. Cal. Feb. 10, 2017) (internal citations omitted).[18]

## CONCLUSION

For the foregoing reasons, State Farm respectfully submits that this Court should grant State Farm's Motion to Dismiss the Rigsbys' SAC with prejudice.

This the 1st day of June, 2020.

Respectfully submitted,

STATE FARM FIRE AND CASUALTY COMPANY

By:   s/ *E. Barney Robinson III* (MB # 09432)
 Michael B. Beers, *PHV* (ASB-4992-S80M)
 Phil B. Abernethy (MB # 1023)
 E. Barney Robinson III (MB # 09432)
 Amanda B. Barbour (MB # 99119)
 Michael C. McCabe, Jr. (MB # 101548)
 Douglas W. Baruch, *PHV* (DC Bar # 414354)
 Jennifer M. Wollenberg, *PHV* (DC Bar # 494895)

ITS ATTORNEYS

---

[18] To the extent that the SAC is not fully dismissed under Rules 8(a), 9(b), 10(b), and 12(b)(6), State Farm has moved in the alternative that the Rigsbys be required to file a more definite statement, setting forth in detail which numbered factual allegations are pled in support of any remaining claim, and striking the remainder.  *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (affirming district court's dismissal of complaint after opportunity to provide a more definite statement through amendment).

OF COUNSEL:

BUTLER SNOW LLP
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3025
(E) michael.mccabe@butlersnow.com

BUTLER SNOW LLP
250 Commerce Street, Suite 203
Montgomery, AL  36104
(P) (334) 832-2900
(F) (334) 832-2901
(E) michael.beers@butlersnow.com

BUTLER SNOW LLP
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) phil.abernethy@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C.  20004
(P) (202) 739-3000
(F) (202) 739-3001
(E) douglas.baruch@morganlewis.com
(E) jennifer.wollenberg@morganlewis.com

## CERTIFICATE OF SERVICE

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company,

do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to

be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Chadwick M. Welch
WATSON HEIDELBERG PLLC
2829 Lakeland Drive, Suite 1502
Flowood, Mississippi 39232
P.O. Box 23546
Jackson, Mississippi 39225-3546
(P) 601-503-1935
(F) 601-932-4400
mheidelberg@whjpllc.com
gkennedy@whjpllc.com

August J. Matteis Jr.
William E. Copley
Derek Y. Sugimura
Timothy M. Belknap
WEISBROD, MATTEIS & COPLEY, PLLC
1200 New Hampshire Avenue, NW, Suite 600
Washington, DC  20036
amatteis@wmclaw.com
wcopley@wmclaw.com
dsugimura@wmclaw.com
tbelknap@wmclaw.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
(P) (202) 307-0264
(F) (202) 514-0280

Lynn Murray
AUSA
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
501 East Court Street, Suite 4.430
Jackson, MS  39201
(P) (601) 965-2835
lynn.murray@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

THIS the 1st day of June, 2020

By:      s/*E. Barney Robinson III* (MB # 09432)
         E. Barney Robinson III (MB # 09432)

53206539.v1