# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA *ex rel.*
   CORI RIGSBY and KERRI RIGSBY,      RELATORS/COUNTER-DEFENDANTS

       v.                          CASE NO. 1:06-cv-433-HSO-RHW

STATE FARM FIRE & CASUALTY      DEFENDANTS/COUNTER-PLAINTIFFS
   COMPANY,

## RELATORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## OPPOSITION TO STATE FARM'S MOTION TO DISMISS

State Farm Fire & Casualty Co.'s ("State Farm") Motion to Dismiss the Rigsbys' Second

Amended Complaint [ECF No. 1632] is a meritless attempt to avoid liability for the full scope of

its proven fraud on the federal government. This Court and the Fifth Circuit already have

rejected many of State Farm's arguments. The few new arguments it raises are equally

groundless and are doomed by controlling case law, including many of State Farm's own cases.

State Farm's motion primarily attacks Cori Rigsby's and Kerri Rigsby's (the "Rigsbys")

allegations that it falsely certified compliance with FEMA's requirement for line-by-line damage

estimates of so-called Category 3 Hurricane Katrina National Flood Insurance Program ("NFIP")

claims. State Farm argues first that the Rigsbys' false certification allegations are untimely and

do not relate back to their original pleading. Mem. Supp. Mot. Dismiss ("SF Br.") at 6-8 (June 1,

2020) [ECF No. 1633]. Yet that argument depends on the mistaken belief that State Farm has

not had prior notice of the relevant facts, a fiction that State Farm tries to sustain by insisting that

the Rigsbys' Second Amended Complaint ("SAC") [ECF No. 1623] "effect[ed a] wholesale

change to the nature and scope of their *qui tam* allegations." *Id.* at 1. On the contrary, the SAC

merely consolidated allegations and facts that have long been part of the record in this case and

applied additional legal theories to the same scheme that they proved at trial. *See United States*

*ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 468 n.7 (5th Cir. 2015), *aff'd*, 137 S. Ct. 436 (2016). State Farm itself admitted nearly a decade ago that its scheme to violate FEMA directive W-5054 by using XacTotal rather than line-by-line estimates on Category 3 claims was "the same 'scheme' that [the Rigsbys] alleged in their pleadings years ago." SF Opp. to Relators' Mot. Reconsid. ("SF Opp. to 2010 Scope Br.") at 5 (Sept. 17, 2010) [ECF No. 766].

State Farm argues next that the Rigsbys do not adequately plead its false certifications of compliance with FEMA's line-by-line requirement because the Rigsbys have not alleged that State Farm's lies were repeated in its invoices themselves and because the lies were not (in State Farm's mind) sufficiently explicit. *See* SF Br. at 8-12. The Fifth Circuit and courts throughout the country have held, however, that defendants cannot avoid False Claims Act ("FCA") liability merely by lying in one document and billing the government in another. The Rigsbys also have alleged how State Farm misrepresented its compliance with FEMA's line-by-line requirement both by submitting fake line-by-line damage estimates and by billing the government under a higher pay scale applicable only to the actual line-by-line damage estimates that State Farm failed to do. Even if this Court finds that those false statements did not amount to express false certifications of compliance with the line-by-line requirement, they undoubtedly have satisfied the requirements that the Supreme Court held sufficient to establish impliedly false certifications in *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

State Farm also argues that FEMA's line-by-line requirement was not material to the government's payment of Katrina NFIP claims and that State Farm lacked the required scienter in violating that requirement. SF Br. at 20. Yet this Court and the Fifth Circuit have rejected these same arguments repeatedly in post-trial and appellate rulings, and the mandate rule and the Reexamination Clause of the Seventh Amendment prohibit State Farm from relitigating those

issues now.  *See Rigsby*, 794 F.3d at 478 n.14; Mem. Op. & Order Den. SF Mot. for JMOL

("JMOL Order") at 17-18 (Feb. 21, 2014) [ECF No. 1127].  Even if State Farm could relitigate

these settled issues, it has offered this Court no reason to do so.  The Rigsbys have alleged

numerous facts, including testimony from State Farm's own witnesses, attesting to the

importance that FEMA placed on the line-by-line requirement, State Farm's knowledge of the

requirement, and its willful decision to disregard it.  Indeed, it is hard to imagine how the

Rigsbys could *not* have alleged those facts plausibly when a jury already has found that one of

State Farm's fake line-by-line estimates was a false record material to the false McIntosh claim.

State Farm argues finally that the SAC contains impermissibly speculative allegations

about the scope of State Farm's proven fraud and that the Rigsbys organized their pleading

improperly by failing to list each legal theory as a separate count.  SF Br. at 21-22.  These

ancillary points fare no better than State Farm's substantive arguments.  The Rigsbys have

explained repeatedly that the 500 claims on State Farm's *in camera* list ("the List") do not

encompass the full scope of its fraud and provided additional, specific details of the List's under-

inclusiveness in the SAC.  State Farm's desire to limit the scope of judicial inquiry into its fraud

does not render the Rigsbys' allegations speculative.  Likewise, nothing requires the Rigsbys to

plead a separate count for each theory of liability, as State Farm suggests.

Accordingly, this Court should deny State Farm's motion in its entirety.

## PROCEDURAL HISTORY

I.     **The Rigsbys Pled State Farm's Misuse of XacTotal Since the Inception of This Case.**

State Farm's misuse of XacTotal and its failure to do required line-by-line damage

estimates of Category 3 claims have been part of the Rigsbys' explanation for how State Farm

shifted liability for Katrina wind damage to the NFIP since the beginning of this case more than

fourteen years ago.  The Rigsbys alleged that State Farm mischaracterized wind damage to

Katrina victims' homes as flood damage.  *Rigsby*, 794 F.3d at 463-64.  As part of State Farm's scheme to shift liability for wind damage to the NFIP, "[t]he Rigsbys allege[d] in their original complaint that: 1) they were told to use the 'shortcut' Xactotal software even on claims that 'sustained moderate flood damage;' 2) they were told to manipulate the information entered into Xactotal if the initial analysis did not result in a full payout under the flood policy."  *Id.* at 474; *see also* Compl. ¶¶ 37-38 (Apr. 26, 2006) [ECF No. 2].

## II.   State Farm Itself Argued That Allegations About Its Misuse of XacTotal Are Part of the Scheme That the Rigsbys Have Alleged Since This Case's Inception.

Prior to the McIntosh bellwether trial, the Rigsbys twice moved to expand discovery to include the full scope of State Farm's fraud rather than requiring trial of an exemplar claim as a prerequisite to further discovery.  *See generally* Mem. Supp. Mot. Reconsid. Scope of Proceedings ("2010 Scope Br.") (Aug. 16, 2010) [ECF No. 740]; Mem. Supp. Mot. Expand Disc. ("2011 Scope Br.") (Dec. 21, 2011) [ECF No. 914].  In those motions, the Rigsbys argued that discovery had produced conclusive evidence confirming their allegations of State Farm's fraud sufficiently to warrant discovery beyond the McIntosh claim into the full breadth of State Farm's scheme.  The Rigsbys characterized that evidence as showing:

> After Hurricane Katrina, the NFIP issued expedited claims handling procedures in FEMA Memorandum 5054 that allowed adjusters to omit line-by-line estimates in two very narrow circumstances. … State Farm ignored FEMA's directive and instructed their adjusters to use Xact Total, a square-foot value estimator, rather than perform a line-by-line estimate on all homes with significant damage.

2010 Scope Br. at 3; *see also* 2011 Scope Br. at 11-12.  State Farm argued that such evidence could not warrant revisiting the scope of discovery because it was part of the same scheme that the Rigsbys had alleged since 2006: "[T]he Rigsbys' so-called newly discovered 'evidence' is neither 'new' nor 'evidence.' … It is the same 'scheme' that they allege in their pleadings years ago.  ([16] ¶¶ 56-64.)  In short, there is nothing 'new' here."  SF Opp. to 2010 Scope Br. at 5; *see*

4

*also* SF Opp. to Renewed Mot. Reconsid. at 8 ("SF Opp. to 2011 Scope Br.") (Jan. 20, 2012)

[ECF No. 923].

**III.    The Rigsbys Pled State Farm's Failure to Perform Required Line-by-Line Estimates in the Final Pretrial Order, to Which the Pleadings Were Conformed.**

The Rigsbys also alleged in the final Pretrial Order that State Farm violated W-5054,

which mandated line-by-line damage estimates for all but a select subset of Katrina flood claims.

The Rigsbys expressly designated for trial whether "State Farm's adjusting methods on the

McIntosh House complied with FEMA's rules and regulations, specifically Memorandum [W-

]5054." Second Am. Pre-Trial Order ("Pretrial Order") at 11 (Mar. 25, 2013) [ECF No. 1081].

They further alleged that "[t]he McIntosh flood claim is one of many examples of a false claim

submitted pursuant to State Farm's scheme to defraud the government.  It fits squarely within the

scheme in that: no line-by-line flood adjustment was performed, in derogation of NFIP rules."

*Id.* at 6; *see also id.* at 5.  This Court ruled that "[t]he pleadings are amended to conform to this

pretrial order."  *Id.* at 3; *see also Rigsby*, 794 F.3d at 468 n.7 ("In evaluating the Rigsbys'

allegations, we look to the final pretrial order … because the pleadings were amended to

conform to that order."); *cf. Rigsby*, 794 F.3d at 475 (confirming Rigsbys' status as original

sources in part because allegations in Pretrial Order "formed the basis of much of the trial and …

do not significantly diverge from the Rigsbys' original allegations").

**IV.    The Fifth Circuit Held That the Rigsbys Proved State Farm's Improper Use of XacTotal in Violation of W-5054 in the McIntosh Trial.**

The Rigsbys proved at trial that State Farm submitted a false NFIP claim in violation of

31 U.S.C. § 3729(a)(1) (1994) and a false record—its fake line-by-line estimate—in violation of

31 U.S.C. § 3729(a)(1)(B) (2009).  Contrary to State Farm's current assertion that its violations

of FEMA's line-by-line requirement are an entirely different scheme from the one that the

Rigsbys proved, the Fifth Circuit held that those facts were fervently litigated and proven at trial:

> Prior to Katrina, State Farm's general policy was to conduct line-by-line and item-by-item estimates of home damages using a program called Xactimate. In the wake of Katrina, … FEMA authorized WYO insurers—through FEMA directive W5054—to use an expedited procedure to pay two particular types of claims …. All other claims … required WYO insurers to follow their "normal claim procedures." The Rigsbys presented evidence at trial that State Farm failed to comply with that directive.

*Rigsby*, 794 F.3d at 463. State Farm itself insisted on appeal that the verdict could not stand because the Rigsbys had not proven State Farm's violation of FEMA's line-by-line requirement or that such a violation was material to FEMA's payment of Katrina NFIP claims. The Fifth Circuit disagreed, holding that even if a showing was required, the Rigsbys had proven it:

> Even were we to agree with State Farm that compliance with W5054 must be a prerequisite for payment in this context, FEMA regulations emphasize that WYO insurers "shall comply with written standards, procedures, and guidance issued by FEMA." Additionally, directive W5054 itself states that the "NFIP's general adjusters will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing this process," signifying that FEMA took compliance seriously. Finally, FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP.

*Id.* at 478 n.14 (internal citations omitted). The Fifth Circuit also confirmed the centrality and materiality of State Farm's violation of W5054 to the Rigsbys' false record claim:

> The Rigsbys argue that the Xactotal printout in the McIntosh flood claim file met this standard because it appeared deceptively to be a line-by-line estimate, when in fact it only estimated the value of the McIntosh home based on its square footage and construction quality. … We agree with the district court that evidence adduced at trial could lead a reasonable jury to believe that State Farm deliberately or recklessly did not comply with FEMA directive W5054. To cite just one example, State Farm's principal FEMA contact, Juan Guevara, wrote in an email shortly after W5054 was circulated that the directive required a line-by-line estimate for a building like the McIntosh home. And the Xactotal printout for the McIntosh claim so closely resembled a line-by-line estimate that former FEMA adjuster Gerald Waytowich—who testified on behalf of State Farm—confused it for one. The jury could reasonably have believed that the printout was material, and was placed in the file to mislead FEMA in violation of § 3729(a)(1)(B).

*Id.* at 480. Thus, the Rigsbys proved in the McIntosh trial that W-5054 required line-by-line

estimates, that State Farm knowingly violated that material requirement by using XacTotal instead, and that it used false records to deceive the government into believing that it had complied—precisely the allegations that State Farm wrongly contends are "new" in the SAC.

**V.    This Court Declined to Rule on State Farm's False Certifications Based on the Allegations in the Pretrial Order, the Trial Record, and the Fifth Circuit's Mandate.**

The Rigsbys sought partial summary judgment following remand from the Supreme Court, explaining that legal and factual determinations made irrevocably by the McIntosh jury, this Court, and the Fifth Circuit established State Farm's liability for implied false certifications of compliance with FEMA's line-by-line requirement on at least the 500 other NFIP claims on State Farm's List. *See* Relators' Mem. Supp. Mot. Partial Summ. J. at 1-5 (Apr. 23, 2018) [ECF No. 1381]. This Court denied that motion as premature, insisting that "it is incumbent upon Relators to identify in one pleading which specific properties they believe give rise to false claims and set forth the legal theories they are advancing to support them." Order Den. Mot. Partial Summ. J. at 6 (Mar. 25, 2019) [ECF No. 1455]. This Court revised that directive slightly on reconsideration, ruling that, "[i]f Relators wish to file a Second Amended Complaint and plead their claims, they may do so …. Otherwise, Relators' operative pleading will remain their [May 22, 2007,] Amended Complaint [16]," rather than the final Pretrial Order. Order Den. Mot. Reconsid. at 7-8 (Dec. 13, 2019) [ECF No. 1571].

The Court explained during a February 20 case management conference that the First Amended Complaint warranted further discovery on at least the 500 claims on State Farm's 2009 List and that the parties may begin discovery on those claims immediately. Feb. 20, 2020, Minute Entry. This Court declined to clarify, however, whether the Rigsbys could proceed on express and implied false certification theories of liability. Mem. Op. & Order Den. Mot. Clarify (Apr. 2, 2020) [ECF No. 1611]. Although abundant, controlling case law confirms that the

Rigsbys have no obligation to plead legal theories of falsity, they chose to file the SAC out of an

abundance of caution to moot the issue.

The SAC accordingly drew heavily on the Rigsbys' prior allegations and facts proven at

trial to describe State Farm's scheme.  The Rigsbys alleged in particular that State Farm:

- Falsely instructed its adjusters that Katrina was a "water storm" and that if a home was
  severely damaged by Katrina, it was caused by flooding, not wind.  SAC ¶¶ 4, 37-41.

- Falsely told its adjusters that Katrina's strongest storm surge preceded its strongest
  winds.  *Id.* ¶¶ 5, 40-41.

- Buried engineering reports that attributed damage to wind and coerced engineering firms
  to find flood rather than wind damage.  *Id.* ¶¶ 15, 84-96.

A critical element of the scheme was State Farm's improper use of the shortcut adjusting

program XacTotal to hide the fact that State Farm did not prepare line-by-line estimates of actual

damage and to manipulate data falsely to show excessive flood damage.  *Id.* ¶¶ 7, 42-60.

The SAC reiterated that FEMA always required State Farm to do line-by-line estimates

of NFIP claims before Katrina and that FEMA issued directive W-5054 after Katrina to allow for

expedited claims adjusting procedures only on two types of claims—houses washed off their

foundations (a.k.a. slabs) and those in standing water for a significant period—not at issue in this

case.  *Id.* ¶¶ 8, 10, 48-50.  FEMA confirmed in W-5054 that State Farm needed to continue using

its "normal claim procedures" (*i.e.*, line-by-line estimates) for all other claims.  *Id.*

The SAC described trial evidence showing that State Farm asked FEMA repeatedly for

permission to forego line-by-line estimates on additional categories of claims and that when

FEMA failed to agree, State Farm did so anyway.  *Id.* ¶¶ 11, 53-55.  To conceal its violation of

the line-by-line requirement, State Farm created sham line-by-line estimates that "closely

resembled" but were not real line-by-line estimates.  *Rigsby*, 794 F.3d at 480; *see also* SAC

¶¶ 13, 80.  The Rigsbys explained that despite failing to perform the required work, State Farm

charged FEMA the higher billing rate for line-by-line estimates rather than the discounted rate

FEMA established for the shortcut procedures State Farm actually used.  SAC ¶¶ 14, 52, 104-12.

**DISCUSSION**

**I.     The Rigsbys' False Certification Allegations Relate Back to the Original Complaint.**

State Farm's lead argument is that the Rigsbys' "false certification theories of liability …

are untimely."  SF Br. at 6; *see also id.* at 7-8.  In making this argument, State Farm fails its duty

of candor to acknowledge the wealth of controlling law directly to the contrary.  Under

controlling law, the Rigsbys' false certification "theories of liability" relate back because they

are just that, "legal theories."  The Rigsbys merely apply those "theories" to the same facts and

scheme that they alleged in their original Complaint and proved at trial.  State Farm undermines

its credibility when it plays dumb about the notice of these now-proven facts that it has received

during the past decade and a half of litigation.

State Farm's ostrich approach to this notice is fatal to its argument.  "'Notice is the

critical element involved in [relation back] determinations.'"  *Flores v. Cameron Cnty., Tex.*, 92

F.3d 258, 273 (5th Cir. 1996).  The Fifth Circuit has held that relation back is determined based

on the facts alleged, not the legal theories applied to those facts.  "[A] party who is notified of

litigation concerning a given transaction or occurrence is entitled to no more protection from

statutes of limitations than one who is informed of the precise legal description of the rights

sought to be enforced.'"  *Williams v. United States*, 405 F.2d 234, 236 (5th Cir. 1968).  The

Supreme Court and the Fifth Circuit also have held specifically that "relation back [is] ordinarily

allowed 'when the new claim is based on the same facts as the original pleading and only

changes the legal theory.'"  *Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005) (quoting 3 J. Moore, et

al., Moore's Federal Practice § 15.19[2], p. 15-82 (3d ed. 2004)); *see also F.D.I.C. v. Conner*, 20

F.3d 1376, 1386 (5th Cir. 1994) ("[I]f a plaintiff seeks to correct a technical difficulty, *state a*

*new legal theory of relief*, or amplify the facts alleged in the prior complaint, then relation back is allowed.") (emphasis added).

State Farm argues that it has not had notice of the facts underlying the Rigsbys' false certification theories of liability because they "involve new facts … found nowhere in any prior complaint."  SF Br. at 7-8.  Although State Farm correctly acknowledges its burden to identify new facts that fundamentally alter the nature of the Rigsbys' allegations, the facts it mislabels "new" have been part of this case since its inception.  The Rigsbys pled every fact necessary to establish State Farm's violations of W-5054 in paragraphs 37-38 of their original Complaint [ECF No. 2] when they alleged that State Farm improperly used the XacTotal "shortcut" rather than line-by-line estimates for houses that had only "sustained moderate flood damage."  *Rigsby*, 794 F.3d at 474.  Then, the Rigsbys alleged in the Pretrial Order,[1] to which this Court amended the pleadings to conform, the same facts they pled in the SAC.  Pretrial Order at 3.

Nor should this Court restrict its relation back analysis to the pleadings, as State Farm suggests.  State Farm's own principal case held that "restricting the [relation back] analysis strictly to the content of the original pleadings would exalt the form of notice over its substance, and would therefore run counter to the policies underpinning Rule 15."  *United States ex rel. Bledsoe v. Community Health Sys.*, 501 F.3d 493, 517-18 (6th Cir. 2007).  The Fifth Circuit adopted *Bledsoe*'s holding "that extrinsic evidence can be considered in determining whether a defendant was on notice of the plaintiff's claims for the purpose of Rule 15(c)(2)."  *Nobre ex rel. K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 442 n.21 (5th Cir. 2019) (citing *Bledsoe*, 501 F.3d at 516-18); *see also id.* ("[A]n amendment relate[s] back where '[t]he compendious record in this case justifies our conclusion that no one was litigating in darkness.'").  The Fifth Circuit held that a district court "was in error" to "confin[e] its analysis

---

[1] The Second Amended Complaint cites the Final Pretrial Order *twenty-four* times.  *See generally* SAC.

to the pleadings" and ignore other sources showing the defendant's notice of the relevant facts. *Id.* at 442.

The "compendious record in this case" confirms that State Farm has known about the facts giving rise to the Rigsbys' false certification theories of liability for years. Nor is that record limited to the Pretrial Order. In their August 13, 2009, Post-Hearing Brief on State Farm's dispositive motions [ECF No. 348], for example, the Rigsbys described State Farm's scheme in language almost identical to that used in the SAC:[2]

| August 13, 2009, Post-Hearing Brief | April 30, 2020, Second Amended Complaint |
| --- | --- |
| "To facilitate those instructions, State Farm introduced XACTOTAL …, a computer program that allowed adjusters to quickly and easily hit flood policy limits." Post-Hr'g Br. at 11 [ECF No. 348]. | "To induce the federal government into paying flood limits on claims that did not suffer extensive flood damage, State Farm also covertly used a prohibited shortcut computer adjusting program, XacTotal, to manipulate data so that it appeared that properties suffered flood damage well in excess of their flood limits." SAC ¶ 7. |
| "State Farm's use of the XACTOTAL program[] was *critical* to the fraudulent scheme. In the past, State Farm had always required adjusters to do an actual estimate of how much damage was caused by flooding to each home before a flood claim was submitted to the government. After Hurricane Katrina, State Farm adjusters did not even try to estimate actual flood damage. They simply estimated the total value of each home based on square footage." *Id.* at 4 (emphasis added). | "*Prior to Katrina*, when State Farm adjusted its own homeowner claims, it used line-by-line estimates which document, item-by-item, the components of a home that were damaged. FEMA has always required State Farm to perform the same line-by-line estimates to adjust its flood claims as well. … State Farm continued adjusting its own Katrina wind claims using line-by-line estimates. However, for flood damage covered by the government's flood policies, State Farm instructed its adjusters instead to use XacTotal, which merely estimated the damage based on a home's square footage and build quality." *Id.* ¶¶ 8-9. |
| "State Farm lacked authorization to use XACTOTAL" for Category 3 homes. *Id.* at 12. | "State Farm … covertly used a prohibited shortcut … program, XacTotal," to adjust Category 3 homes. *Id.* ¶ 7. |

---

[2] The parties' 2009 initial disclosures also confirm that each party understood the nature of the scheme that was at issue. The Rigsbys' disclosures identified numerous witnesses related to State Farm's improper "use of XACTOTAL in adjusting claims" and "FEMA Memo W-5054." Relators' Initial Disclosures (Nov. 13, 2009). State Farm similarly disclosed W-5054 as relevant to its claims or defenses. State Farm's Initial Disclosures (Nov. 13, 2009).

| August 13, 2009, Post-Hearing Brief | April 30, 2020, Second Amended Complaint |
|---|---|
| "[W-5054's] third category … required companies to use their 'normal claim procedures.'  Thus, by carving out two narrow categories of claims for which XACTOTAL was allowed, W-5054 clearly contemplates that insurers will provide a detailed damage estimate for all other cases." *Id.* at 13. | "For all other homes, … FEMA required WYO insurers like State Farm to follow 'normal claim procedures.'  State Farm's normal claim procedure was to perform line-by-line estimates." *Id.* ¶ 49. |

The Court also recognized a decade ago that "[t]he question of whether State Farm's use of the XacTotal program was consistent with FEMA's approved claims-adjustment practices is also in dispute."  Mem. Op. Den. SF Mot. Exclude Louis G. Fey, Jr. at 2 (Sept. 2, 2010) [ECF No. 759]; *see also* Mem. Op. re SF Mot. Summ. J. at 13-14 (Sept. 9, 2011) [ECF No. 898] ("[T]he parties dispute the propriety of State Farm's use of XactTotal in a loss situation like that of the McIntosh property.  Relators point to … 'FEMA Directive W-5054,' … [and]  … maintain that State Farm was required to use its normal claim handling procedures[] under Process #3.").

State Farm also admitted years ago that its noncompliance with W-5054's line-by-line requirement has long been at the heart of this case.  In 2010 and again in 2011, the Rigsbys moved to expand the scope of discovery and the upcoming trial to include "the full scope of State Farm's Fraud."  2011 Scope Br. at 18; *see also* 2010 Scope Br. at 18-21.  In both briefs, the Rigsbys again recited the elements of State Farm's fraudulent scheme in substantively-identical scope and language as they alleged in their Second Amended Complaint.[3]  After explaining the scope of State Farm's fraudulent scheme, the Rigsbys argued that holding a separate trial on the remainder of State Farm's scheme after the McIntosh trial "would impose largely duplicative burdens on the Court, witnesses, jurors, and the parties" because "both trials will involve the

---

[3] *See, e.g.*, 2011 Scope Br. at 7-8 ("When the government declined State Farm's request to forego actual line-by-line damage estimates in favor of an expedited adjustment process, 'Xact Total,' on a greatly expanded group of damaged houses, State Farm used the process on those houses anyway to the government's substantial detriment. Moreover, State Farm created fraudulent line-by-line estimates for houses it never actually investigated to determine the cause of loss.  It did so to conceal its illegal use of the 'Xact Total' estimate."); *id.* at 11-13; 2010 Scope Br. at 2-5.

same witnesses and evidence," including particularly State Farm's improper use of the Xact

Total estimate." 2011 Scope Br. at 2, 26; *accord* 2010 Scope Br. at 5. In response, State Farm

argued that it was too late for the Rigsbys to seek to expand the scope of discovery and trial to

the full scope of its fraud because its fraudulent "scheme" had been at issue for years:

> The "scheme" that the Rigsbys claim was "confirmed" in discovery is no
> different than the 'scheme' they claim is supported by the now-discredited
> Brian Ford report. It is the same "scheme" that the Rigsbys advanced at the
> *May 2009* evidentiary hearing and in their 40-page post-hearing brief.
> ([348] at 7-40.) It is the same "scheme" that they alleged in their *pleadings
> years ago*. (Am. Compl. [16] at ¶¶ 56-64.).

SF Opp. to 2011 Scope Br. at 8 (emphasis added); *accord* SF Opp. to 2010 Scope Br. at 5 ("In

short, there is nothing 'new' here").

State Farm's efforts to seek an inflated payment for conducting a line-by-line estimate

under FEMA's normal fee schedule when it in fact used an expedited procedure that was subject

to a lower fee schedule was a natural consequence of the scheme that has been the heart of this

case for well over a decade. *See* SAC ¶¶ 52, 56, 104-12. State Farm has been well aware of the

allegations in the Rigsbys' SAC. "'[T]he compendious record in this case'" shows that "'no one

was litigating in the darkness.'" *Nobre*, 935 F.3d at 442 n.21. The SAC therefore clearly relates

back to the Rigsbys' original pleading.[4] *See, e.g., id.* at 442 & n.21; *Bledsoe*, 501 F.3d at 516-

18.

## II.    The Rigsbys Have Alleged State Farm's False Certifications of Compliance with FEMA's Line-by-Line Requirement Adequately.

### A.    State Farm Need Not Lie in an Invoice to Incur FCA Liability.

---

[4] State Farm's scant citations to authority do not suggest otherwise. *Conner* allowed relation back because, like here, the amended complaint "seeks to identify additional sources of damages that were caused by the same pattern of conduct identified in the original complaint." 20 F.3d at 1386. State Farm's only other authorities disallowed relation back because—unlike here—the amended complaints involved "*facts* that differ in both 'time and type' from the original pleadings." *Full Life Hospice LLC v. Sebelius*, 709 F.3d 1012, 1019 (10th Cir. 2013) (emphasis added); *see also Stephens v. John Bean Techs. Corp.*, 2018 WL 7288584, at *3 (W.D. Tex. 2018) (same).

State Farm mistakenly believes that it cannot be held liable for its false certifications of compliance with FEMA's line-by-line requirement if it lied about its misconduct in one document and billed the government in another.  *See* SF Br. at 8-12.  The sole authority that State Farm cites for this false and unprecedented proposition is *Escobar*, which says no such thing.  There is no rule in the law that only misrepresentations in an invoice are actionable, and multiple courts, including those that have ruled since *Escobar*, have rejected that idea explicitly.[5]

"In an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent.  The False Claims Act, however, is not limited to such facially false or fraudulent claims for payment."  *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006).  Congress enacted the FCA with the "goals of detecting and deterring fraud on the government," and nothing in the statutory text or legislative history supports absolving defendants of liability for such fraud merely because they lie to the government in one document and bill it in another.  *United States v. Northrop Corp.*, 59 F.3d 953, 965 (9th Cir. 1995); *see also* S. REP. 99-345, 9, 1986 U.S.C.C.A.N. 5266, 5274 ("[A] false claim may take many forms.").  On the contrary, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'"  *Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003).

Courts including the Fifth Circuit have rejected the rule that State Farm advocates, which would insulate defendants from FCA liability as long as they make their lies and requests for

---

[5] State Farm also suggests in passing that the Rigsbys have not "detail[ed] th[e] procedure" through which it actually obtained funds from the Treasury.  SF Br. at 8.  This Court already rejected that argument in its post-trial order, ruling that "[i]n essence, '[t]he federal government pays flood insurance claims.'"  JMOL Order at 24.  "Evidence that a flood claim was paid thus appears to be sufficient to permit a jury to infer that the claim was presented to the Government and then paid using federal funds."  *Id.*

payment in separate documents.  In *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997), the defendants made false certifications in annual cost reports that were submitted separately from—and well after—its false claims for payment and insisted that those false certifications could not possibly give rise to FCA liability. The Fifth Circuit reversed the district court's dismissal and held that the false certifications in its cost reports could subject the defendant to FCA liability.  *Id.* at 902-03.

The Fourth Circuit rejected the same argument in *United States v. Triple Canopy, Inc.*, 857 F.3d 174 (4th Cir. 2017) (*Triple Canopy II*).  The plaintiffs there alleged that despite a contractual requirement that all guards regularly qualify with specified firearms, Triple Canopy hired guards who "were unable to meet th[e] marksmanship requirement."  *Id.* at 175.  Then, "[r]ather than inform the Government of this deficiency," Triple Canopy submitted monthly invoices for those unqualified guards.  *Id.*  Triple Canopy also created "false scorecard sheets … for the guards and placed [them] in their personnel files."  *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 (4th Cir. 2015) (*Triple Canopy I*), *cert. granted*, *judgment vacated*, 136 S. Ct. 2504 (2016), *opinion reinstated in part*, *Triple Canopy II*.  The "Government failed to specifically allege that the [government] reviewed" the files.  *Id.* at 639.  Like State Farm, Triple Canopy argued that "it merely submitted invoices listing the number of guards and hours worked and these invoices contained no falsities on their face," but instead any falsities were limited to personnel files that were not submitted to, or reviewed by, the government.  857 F.3d at 178; *see* SF Br. at 11 ("[The Rigsbys cannot] point[] to any representations contained in *file* documents because the specific representation must be made *on the claim for payment*.") (emphasis in original).  Applying *Escobar*, the Fourth Circuit rejected the defendant's argument and reversed the district court's order dismissing the case. It held that the format or location of a material misrepresentation does not matter, so long as it is material to a claim.  857 F.3d at 178; *see also United States ex rel. Main v. Oakland City Univ.*,

15

426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork").[6]

State Farm's suggestion that *Escobar* requires a defendant's lies to be in its invoice is completely divorced from the holding of and policies underlying that case.  *See* SF Br. at 11.  In *Escobar*, the Supreme Court condemned half-truths as no better than total lies and, by necessary extrapolation, explicitly validated the implied false certification theory for FCA liability.  136 S. Ct. at 1999-2001 & n.4.  When the Supreme Court held that "a statement that misleadingly omits critical facts" gives rise to FCA liability just like an express misrepresentation, it made clear that it is the existence of a fraud on the government, and not its form, that matters under the FCA.  *Id.* at 2001.  Viewed in context, *Escobar* cannot be used to insulate frauds on the government from FCA scrutiny merely because a contractor lied about material terms in one document and billed the government in another.[7]

---

[6] *See also Triple Canopy I*, 775 F.3d at 639-40 ("The false scorecards make the invoices appear legitimate because, in the event the [government] reviewed the guards' personnel files, the [government] would conclude that Triple Canopy had complied with the marksmanship requirement.…  The false scorecards were thus integral to the false statement and satisfy the materiality standard."); *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 918-19 (4th Cir. 2003) (rejecting argument that FCA liability could not attach where employee signing certification did not know it was false, even though others did because "[i]f we established such a rule, corporations would establish segregated 'certifying' offices that did nothing more than execute government contract certifications, thereby immunizing themselves against FCA liability").

[7] Nor do State Farm's other cases support its argument.  They hold only that false certifications on a claim for payment *are* actionable, not that false certifications elsewhere are not.  *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 n.6 (5th Cir. 2004); *United States ex rel. Campbell v. KIC Dev., LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *7 (W.D. Tex. Dec. 10, 2019); *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 417CV000053GHDRP, 2019 WL 1305069, at *2 (N.D. Miss. Mar. 21, 2019).  Indeed, *Sibley* notes that an actionable false certification must merely have "'caused the Government to pay out money or to forfeit moneys due (*i.e.* that involved a claim).'"  *Sibley*, 2019 WL 1305069, at *2 (quoting *United States ex rel. Jamison v. McKesson Corp.*, 784 F. Supp. 2d 664, 675 (N.D. Miss. 2011)).

**B.** **State Farm Expressly Represented That It Conducted Line-by-Line Estimates for Category 3 Homes.**

State Farm argues unconvincingly that it can avoid FCA liability for its fake line-by-line estimates and fraudulent up-billing for line-by-line estimates it did not perform because its submission to FEMA supposedly "contain[] no express certification of compliance with … W-5054." SF Br. at 9-10. As an initial matter, State Farm gives "the word 'certification' … paramount and talismanic significance, apparently believing that a palpably false statement does not bring with it False Claims liability, while a palpably false certification will. This facile distinction would make it all too easy for claimants to evade the law." *Hendow*, 461 F.3d at 1172; *see also* SF Br. at 8-10. On the contrary, "[s]o long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach." *Hendow*, 461 F.3d at 1172. State Farm therefore cannot avoid FCA liability merely because it false statements did not contain the words "I hereby certify."

State Farm's false statements of compliance with FEMA's line-by-line requirement were sufficiently explicit to constitute express false certifications. The Seventh Circuit explained the difference between *Escobar*'s implied false certifications and express false certifications:

> In [*Escobar*], the defendant allegedly billed Medicaid for the correct type of therapy but failed to note that the therapy was provided by an unqualified individual. Here, [defendants] allegedly billed Medicaid *for a completely different treatment*. The claim therefore does not involve a misrepresentation by omission [or a "misleading half-truth"]; it involves an express false statement. Ms. Presser's complaint sufficiently alleges that the defendants … falsely represented to the … government[] that a certain treatment was given by certain medical staff when in fact it was not.

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016) (internal citations omitted).

By the same token, State Farm "falsely represented to the … government[] that a certain

[task was performed, *i.e.*, mandatory line-by-line estimates] when in fact it was not." *Id.* State Farm used W-5054's expedited procedures to adjust thousands of Category 3 homes, but it billed the government for the higher rate payable for full line-by-line estimates that it did not do. SAC ¶¶ 104-112. State Farm also generated and submitted to FEMA sham line-by-line estimates that purported to be but were not real line-by-line estimates. *Id.* ¶¶ 79-83; *Rigsby*, 794 F.3d at 480. State Farm provided those fake reports to the government to conceal its noncompliance with the line-by-line requirement, and it necessarily represented to the government that State Farm had prepared a line-by-line estimate that it actually did not do. Indeed, a former FEMA official already has testified in this case that he believed one of State Farm's fake line-by-line estimates was a (required) real one, and a jury already found that fake report a false record material to FEMA's payment of the false McIntosh claim. SAC ¶ 82; *Rigsby*, 794 F.3d at 480.

The Rigsbys allege that State Farm sought payment for the approved line-by-line estimating method when an unapproved shortcut method, XacTotal, was actually used. Such fraud may be both legally and factually false. *See, e.g.*, *Catholic Health Initiatives*, 312 F. Supp. 3d at 603 ("[S]eeking reimbursement for approved drugs, when 'unapproved knock-offs' were actually used, is also an instance of factual falsity").[8] Similarly, State Farm's creation of fake line-by-line reports that "closely resembled," but were not, "line-by-line estimate[s]" also support implied false certification liability because they misleadingly suggested to the government that line-by-line estimates were prepared. *Rigsby*, 794 F.3d at 480; *see also* discussion *infra*, Part II.C. The Rigsbys had no obligation to plead the legal theories of falsity,

---

[8] It would not matter if State Farm's XacTotal adjustments produced accurate estimates of flood damage (and they did not). "The mere fact that the item supplied under contract is as good as the one contracted for does not relieve defendants of liability if it can be shown that they attempted to deceive the government agency." *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1007 (5th Cir. 1972). "[L]iability under the False Claims Act … attach[es] because of the deliberate misbranding," or, in this case—State Farm's deliberate misrepresentation that it conducted line-by-line estimates. *Id.* at 1008.

only facts giving rise to State Farm's liability.[9]  Any failure to propound all of the legal theories

under which State Farm is liable based on the facts alleged is not a reason to dismiss.

### C.    State Farm Made Specific Representations That Were Misleading in Context About Its Compliance with FEMA's Line-by-Line Requirement.

State Farm insists that its misrepresentations of compliance with FEMA's line-by-line

requirement for Category 3 homes were not sufficiently specific to give rise to FCA liability as

implied false certifications.  SF Br. at 10-12.  Yet State Farm's misrepresentations mirror those

that the Supreme Court found sufficient in *Escobar*.  A comparison between the two, which State

Farm pointedly avoids, confirms that the Rigsbys have sufficiently pled facts that give rise to

implied false certification liability.

*Escobar* identified two conditions that are sufficient—but not necessarily required—to

establish liability under an implied certification theory: "First, the claim does not merely request

payment, but also makes specific representations about the goods or services provided; and

second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or

contractual requirements makes those representations misleading half-truths."[10]  136 S. Ct. at

2001.  The Court based that holding on the fundamental premise that a misleading half-truth is

---

[9] The Federal Rules of Civil Procedure "'effectively abolish the restrictive theory of the pleadings doctrine, making it clear that *it is unnecessary to set out a legal theory for the plaintiff's claim for relief*." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (quoting 5 C. Wright & A Miller § 1219, pp. 277-78 (3d ed. 2002)) (emphasis added).  As long as the facts alleged give rise to liability, it does not even matter if the complaint sets forth the *wrong* legal theory.  *See, e.g.*, *Thrifty v. Estate of Hubbard*, 44 F.3d 348, 356 (5th Cir. 1995) ("[A] pleading, or pretrial order, need not specify in exact detail every possible theory of recovery—it must only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.").

[10] State Farm cites numerous cases for the proposition that these two conditions are *necessary* for implied false certification liability, although the Fifth Circuit has not so held in any precedential opinion.  *See* SF Br. at 10-11; *United States ex rel. Smith v. Wallace*, 723 F. App'x 254, 254 n.* (5th Cir. 2018) (*per curiam*) ("[T]he court has determined that this opinion should not be published and is not precedent.").  It does not matter whether *Escobar*'s conditions are necessary or merely sufficient, however, as the Rigsbys have alleged facts fulfilling them in any event.

no better than an outright lie.  *Id.* at 2001 n.4.  *Escobar* applied this principle to hold that a

healthcare provider violated the FCA by "submitting claims for payment using payment codes

that corresponded to specific counseling services," by which it "represented that it had provided"

the indicated treatments.  *Id.* at 2000.  Yet the provider failed to disclose that its employees were

not qualified to provide those services.  The Supreme Court held that "these representations were

clearly misleading in context:"

> Anyone informed that a social worker at a Massachusetts mental health
> clinic provided a teenage patient with individual counseling services would
> probably—but wrongly—conclude that the clinic had complied with core
> Massachusetts Medicaid requirements (1) that a counselor 'treating children
> [is] required to have specialized training and experience in children's
> services' and also (2) that, at a minimum, the social worker possesses the
> prescribed qualifications for the job.  By using payment and other codes that
> conveyed this information without disclosing Arbour's many violations of
> basic staff and licensing requirements for mental health facilities, Universal
> Health's claims constituted misrepresentations.

*Id.* at 2000-2001.

State Farm likewise made a "specific representation" in this case that the government

owed specific amounts on thousands of NFIP claims, determinations that could only permissibly

be derived through line-by-line damage estimates.  Those representations were similarly

"misleading in context" because State Farm "fail[ed] to disclose noncompliance with material

statutory, regulatory, or contractual requirements."  *Id.* at 2001.  Specifically, State Farm failed

to disclose that it had not performed the line-by-line estimates that FEMA required and in fact

concealed that noncompliance by placing misleading XacTotal reports in its claim files.  Just like

anyone reviewing the defendant's submissions in *Escobar* would reasonably but wrongly

conclude that the clinic had complied with core Medicaid requirements, anyone reviewing State

Farm's submissions of fake line-by-line estimates or requests for payment of the amounts owed

for performing line-by-line estimates would reasonably, but wrongly, conclude that State Farm

had actually done the required line-by-line estimates.

Other courts applying *Escobar* have found analogous facts sufficient to support implied false certification claims.  In *Triple Canopy II*, for example, the Fourth Circuit reversed the district court's order dismissing the case:

> [A]lthough Triple Canopy knew its "guards" had failed to meet a responsibility in the contract, it nonetheless requested payment each month from the Government for those "guards."  Just as in [*Escobar*], anyone reviewing Triple Canopy's invoices "would probably—but wrongly—conclude that [Triple Canopy] had complied with core [contract] requirements."

857 F.3d at 178 (quoting *Escobar*, 136 S. Ct. at 2000) (third and fourth alterations in original).[11]

State Farm cites no cases suggesting that representations as specific as the Rigsbys allege are insufficient.  In *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332 (9th Cir. 2017), for example, a contractor's vouchers provided numerous details about its work, including "the period of performance, total costs incurred during that period, … [its] fee applicable to that work," "the dollar amounts for [its] costs for labor, travel, and materials."  The relator, however, argued that the vouchers constituted implied false certifications because they did not comply with ANSI-748, an industry standard format for those types of reports.  *Id.* at 328.  There was "no evidence that [the contractor's] vouchers contained any false or inaccurate statements," and the dispute instead was "over the *format* that [the contractor] used to report costs incurred."  *Id.*

---

[11] *See also United States ex rel. Beauchamp v. Academi Training Ctr.*, 220 F. Supp. 3d 676, 678-81 (E.D. Va. 2016) (failure to administer firearms requalification tests); *United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 197-98 (D.D.C. 2017) (failure to disclose performance-enhancing drug use); *United States v. Anderson*, 271 F. Supp. 3d 950, 957 (M.D. Tenn. 2017) (drugs dispensed without valid prescription); *Jacobs v. Bank of Am. Corp.*, No. 1:15-CV-24585-UU, 2017 WL 2361943, at *13 (S.D. Fla. Mar. 21, 2017), *on reconsideration*, 2017 WL 2361944 (S.D. Fla. Apr. 27, 2017); *United States ex rel. Laporte v. Premiere Educ. Grp.*, No. CV 11-3523 (RBK/AMD), 2017 WL 3471163, at *3 (D.N.J. Aug. 11, 2017); *United States v. Visiting Nurse Serv. of N.Y.*, No. 14-CV-5739 (AJN), 2017 WL 5515860, at *8 (S.D.N.Y. Sept. 26, 2017) (failure to disclose that billed-for health care services were not provided in accordance with required Plan of Care); *United States ex rel. Scollick v. Narula*, No. 14-CV-01339-RCL, 2017 WL 3268857, at *11 (D.D.C. July 31, 2017) (failure to disclose that management was not controlled by service-disabled veteran).

at 333 (emphasis in original).  The Rigsbys, however, do not argue that State Farm presented its claims to the government in the wrong format.  They allege that State Farm lied to the government about its failure to do required work and requested payment based on the false representation that it had actually done that work.  *See* SAC ¶¶ 79-83, 125-26.

Nor is *United States ex rel. Coffman v. City of Leavenworth*, 303 F. Supp. 3d 1101 (D. Kan. 2018), *aff'd*, 770 F. App'x 417 (10th Cir. 2019), anything like this case.  *See* SF Br. at 12 (citing *Coffman*).  There, the court held that violations of the Clean Water Act ("CWA") were not material to a contract that merely required the contractor to operate "in conformity with applicable law, rules, and regulations," when there was no evidence that the government actually cared whether the contractor complied with the allegedly-violated provisions of the CWA.  *Id.* at 1120-21.  The Court accordingly noted that the defendant's bills, that "did nothing more than demand payment," did not specifically represent that the defendant had complied with those provisions of the CWA.  *Id.* at 1121.  State Farm made actual representations of its compliance with FEMA's line-by-line requirement here, and as the following discussion confirms, State Farm knew that FEMA cared about this requirement.

## III.     The Rigsbys Alleged and Proved the Materiality of FEMA's Line-by-Line Requirement for Category 3 Homes.

The Rigsbys have not just alleged but actually proven the materiality of State Farm's obligation to perform line-by-line estimates for Category 3 homes, as State Farm itself insisted they must do to prevail at trial seven years ago.  The Fifth Circuit confirmed the Rigsbys' materiality showing on appeal, which the mandate rule precludes State Farm or this Court from disturbing.  State Farm's latest attempt to re-litigate this issue would be unconvincing, however, even if the Fifth Circuit's holding did not place it beyond dispute.

### A.     The Second Amended Complaint Plausibly Alleges the Materiality of W-5054 Compliance to FEMA's Payment of Katrina NFIP Claims.

State Farm misrepresents the Rigsbys' materiality allegations as "limited to the assertions that (a) compliance with W-5054 was a 'prerequisite for payment,' ¶ 97, and (b) W-5054 states that FEMA 'will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing' the W-5054 processes, ¶ 99."  SF Br. at 13.  In fact, the Rigsbys have alleged many other facts showing that performing line-by-line estimates was not merely material but an actual prerequisite to FEMA's payment of Katrina NFIP claims.  *See, e.g.*, SAC ¶¶ 97-103.

The Rigsbys alleged that FEMA established "a revised adjusting fee schedule in W-5054 for Category 1 and 2 homes adjusted with expedited procedures that confirms that it expected line-by-line estimates … for Category 3 homes."  *Id.* ¶ 52.  By choosing to pay insurers less money for the less-involved estimating procedures that it permitted on Category 1 and 2 homes but continuing to pay its higher standard rates for Category 3 homes requiring more substantial line-by-line estimates, FEMA clearly indicated that it took that additional requirement seriously.

The Rigsbys also alleged that FEMA confirmed the materiality of its line-by-line requirement for Category 3 homes by refusing State Farm's repeated requests to waive that requirement.  *Id.* ¶ 53.  They alleged explicitly that "'FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP.'"[12]  *Id.* ¶ 101 (quoting *Rigsby*, 794 F.3d at 478 n.14).  The Rigsbys quoted the trial testimony of James Shortley, who said that "for FEMA to approve an NFIP flood claim, the line-by-line estimate 'would have to be in the file.'"  *Id.* ¶ 101 (quoting Shortley Dep. 130:13 (June 3, 2010) [ECF No. 767-17]).  The Rigsbys also quoted former FEMA official Gerald Waytowich, who testified *for* State Farm and admitted

---

[12] State Farm argues that "[a] 'prerequisite for payment' *label* is not enough."  SF Br. at 13 (emphasis added).  *Escobar* held that "[w]hat matters is not the label the government attaches to a requirement" but whether the government actually treated the requirement as material.  136 S. Ct. at 1996.  Proof that the government *enforced* a requirement as a necessary precondition to payment and did not just label it as such is more than sufficient to show that the requirement "ha[s] a natural tendency to influence … the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).

that "you had to do a line item estimate" for Category 3 homes." *Id.* ¶ 102 (quoting Waytowich

Dep. 117:17-20 [ECF No. 1261-9]).  Taking these allegations as true, there can be no doubt that

the Rigsbys have pled facts establishing the materiality of the line-by-line requirement.

These facts belie State Farm's efforts to analogize the line-by-line requirement to

*Escobar*'s example of a non-material obligation that government contractors use American-made

staplers.  SF Br. at 16.  Unlike that trivial "obligation," the line-by-line requirement went to the

heart of how FEMA expected State Farm to perform its work handling NFIP claims, merited a

greater payment than the shortcut methodology that State Farm actually used, was not waived

despite State Farm's repeated requests, and was taken seriously by FEMA officials, as evidenced

by their testimony.  Nor has State Farm cited any case in which a court found such substantial

materiality allegations insufficient to survive a motion to dismiss.[13]

## B.    The Rigsbys Proved the Line-by-Line Requirement's Materiality.

State Farm's attempt to deny the line-by-line requirement's materiality ignores not just

the Rigsbys' allegations in the SAC but also voluminous evidence in the record, a jury verdict,

and the Fifth Circuit's decision on appeal, which establishes materiality conclusively.

State Farm itself argued on appeal that the McIntosh jury verdict could not stand because

the Rigsbys had not established the materiality of FEMA's line-by-line requirement at trial:

> FCA liability attaches only where the relator can show **both** a contractual or
> regulatory violation **and** proof that the requirement was an express
> "'condition' or 'prerequisite' for payment under a contract." … "This

---

[13] *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) ("[Relator] concede[d] that [the government] would consistently reimburse … claims with full knowledge of the purported noncompliance."); *United States ex rel. Porter v. Centene Corp.*, No. 1:16CV75-HSO-JCG, 2018 WL 9866507, at *6 (S.D. Miss. Sept. 27, 2018) ("[I]t is apparently undisputed that the Government took no action to require that" the defendant cure the known violations and instead "subsequently chose to negotiate and enter into" additional contracts with the defendant"); *United States v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1264 (M.D. Fla. 2018) (involving deviations in "record-keeping practices that largely achieve the ends of … the prescribed record-keeping," unlike State Farm's effort to increase the government's financial liability by presuming flood damage and failing to conduct the required analysis).

> prerequisite requirement seeks to maintain a 'crucial distinction' between
> punitive FCA liability and ordinary breaches of contract."

Br. of Cross-Appellant ("SF App. Br.") at 57-59, *United States ex rel. Rigsby v. State Farm Fire &*

*Cas. Co.*, No. 14-60160 (5th Cir. filed Aug. 15, 2014) (citations omitted). State Farm also argued

that its use of the long-form XacTotal printout, which the jury found to be a false record, could

not give rise to liability under Section 3729(a)(1)(B) because it was not "material" to the

government's payment decision:

> [T]he Rigsbys did not present any evidence that the XactTotal printout was
> "material to" the Government's payment of the McIntosh flood claim. ...
> Nor could they. To be material, the false record must actually or potentially
> affect the Government's decision to pay the allegedly false claim.

*Id.* at 61. The Fifth Circuit held that "[e]ven were we to agree with State Farm that compliance

with W5054 must be a prerequisite for payment in this context," compliance was in fact material:

> FEMA regulations emphasize that WYO insurers "shall comply with
> written standards, procedures, and guidance issued by FEMA."
> Additionally, … W5054 itself states that the "NFIP's general adjusters will
> be involved in closely monitoring the performance and procedures of the
> WYO carriers utilizing this process," signifying that FEMA took
> compliance seriously. Finally, FEMA officials testified that line-by-line
> estimates were in fact a prerequisite to payment under the NFIP.

*Rigsby*, 794 F.3d at 478 n.14 (internal citations omitted). The mandate rule "compels

compliance on remand with the dictates of a superior court and forecloses relitigation of issues

expressly or impliedly decided by the appellate court." *Fuhrman v. Dretke*, 442 F.3d 893, 897

(5th Cir. 2006).

Subsequent proceedings have not abrogated the Fifth Circuit's holding. The Rigsbys

explained in prior briefing that the Supreme Court's intervening decision in *Escobar* did not

vitiate the Fifth Circuit's materiality determination, and they incorporate those arguments by

reference to avoid needless repetition. Relators' Mem. Opp. SF Mot. Rule 56(d) Disc. at 16-19

(July 13, 2018) [ECF No. 1408]. Nor does the Rigsbys' filing of a Second Amended Complaint

vitiate the effect of the Fifth Circuit's mandate on the line-by-line requirement's materiality.

**C.      State Farm's Mischaracterizations of the Record and of W-5054 Do Not Undermine the Materiality of the Line-by-Line Requirement.**

Even if this Court could disregard the Fifth Circuit's mandate, State Farm has offered no reason to doubt that the government deemed W-5054's requirement of line-by-line estimates to be material.  State Farm insists, for example, that the line-by-line requirement could not have been material because the Rigsbys have not alleged "that FEMA actually or routinely refused to pay in instances where State Farm used XacTotal rather than line-by-line estimating."  SF Br. at 13.  Yet the Rigsbys alleged that State Farm deceived FEMA about its use of XacTotal both by including fake line-by-line estimates in its flood claim files and by seeking reimbursement under the NFIP's normal fee structure for the performance of regular line-by-line estimates, rather than the reduced fee schedule for XacTotal-based estimates.  SAC ¶¶ 79-83, 104-112.  The fact that FEMA failed to withhold payment in those instances proves only that State Farm deceived FEMA successfully.[14]  If anything, the extraordinary steps that State Farm took to mislead FEMA about its compliance with the line-by-line requirement prove that State Farm knew that the issue was important to FEMA.

State Farm also argues that W-5054's focus was on "expedited claims processing and telephone adjusting" and so any line-by-line requirement was at best a triviality that "does not go to the 'very essence of the bargain'" between FEMA and State Farm.  SF Br. at 14.  Yet neither the context nor the plain language of W-5054 support State Farm's attempt to trivialize the line-by-line requirement.  As the Fifth Circuit held when it rejected the same argument: "State Farm's final allegation … is that … a desire to streamline the flood claim process [] precludes a finding

---

[14] State Farm's own expert, former FEMA official Gerald Waytowich, demonstrated the effectiveness of State Farm's deception when he failed to realize after reviewing one of State Farm's claim files for more than forty hours that the purported line-by-line estimate that it contained was a fake and did not correspond to the house in question.  *Id.* ¶ 82.

of guilty knowledge. … But FEMA's desire to have valid claims paid out quickly does not translate into a license to pay invalid claims." *Rigsby*, 794 F.3d at 480.

FEMA always required WYO insurers to do line-by-line estimates before Katrina. W-5054's purpose was to relax those requirements, but *only* for Category 1 and 2 claims. SAC ¶ 48. For all other (Category 3) claims, FEMA required WYO insurers to continue following their "normal claim procedures," *id.* ¶ 49, which "State Farm witnesses Lecky King, Jayme Woody, John Conser, and Mark Drain all have admitted" meant preparing line-by-line estimates, *id.* ¶ 100. The very fact that FEMA relaxed this requirement selectively confirms that it took the adjusting methodology seriously. State Farm's contention that W-5054 "never once mentions 'line-by-line' estimating" thus misses the point. SF Br. at 15.[15] That FEMA confirmed in W-5054 that it would not penalize WYO carriers for overpayments made pursuant to square footage-based damage estimates also does not change the fact that FEMA permitted such methodology *only* for Category 1 and 2 claims. *See* SF Br. at 15 (quoting W-5054 at 2). Nor does it diminish FEMA's continued commitment to line-by-line estimates for Category 3 claims.

State Farm's argument that it could not have *known* of the line-by-line requirement's materiality because it prepared many estimates (including McIntosh) before FEMA issued W-5054 fails for the same reason. SF Br. at 18. That argument misrepresents W-5054 as imposing a *new* line-by-line requirement for Category 3 claims rather than merely reaffirming a preexisting and longstanding one while relaxing that requirement (only) for Category 1 and 2 claims. If the timing of W-5054 precluded State Farm's knowledge of the materiality of the line-

---

[15] State Farm's argument that W-5054 merely used "open-ended" "follow all procedures" language is off-base for the same reason. SF Br. at 15-16. FEMA did not tell State Farm to use "normal claim procedures" for Category 3 claims in a vacuum. W-5054's order to use "normal claim procedures" told State Farm to *continue* using procedures it always had used for those claims, *i.e.*, line-by-line estimates. The cases State Farm cites for the proposition that boilerplate "follow all laws" terms are too general to support a claim therefore miss the mark. *See* SF Br. at 16 (citing *Porter*, 2020 WL 1887791, at *4; *United States ex rel. Stephenson v. Archer W. Contractors, LLC*, 548 F. App'x 135, 138 (5th Cir. 2013)).

by-line requirement, then by State Farm's own reasoning, the Rigsbys could not have proven the falsity of the McIntosh claim.  Indeed, State Farm made that very argument in its post-trial motions to this Court, which rejected them.  *See* JMOL Order at 17 n.2 ("State Farm argued at trial and in briefing in the present motion that the adjustment of the McIntosh flood claim occurred prior to the issuance of W-5054.").  Likewise, if State Farm did not know the requirement was material, it would not have asked FEMA to waive it or conceal its noncompliance with fake line-by-line estimates.  *See* SAC ¶ 53; *Aerodex*, 469 F.2d at 1008 ("If defendants … believed that the reworked … bearings were interchangeable with the … bearings that they had contracted to deliver, they could easily have requested permission … to deliver the substitute parts or … disclosed … the manner in which they thought they could comply with the contract.  The failure to do so indicates nothing less than an intention to deceive.").

State Farm tries to skirt the fact that FEMA established a lower pay scale for the less-involved methodology allowed only for Category 1 and 2 claims by arguing that the reduced fee stemmed not from the absence of line-by-line estimates but rather because those categories "did not require any site visit."  SF Br. at 17.  On the contrary, the Rigsbys alleged (and W-5054 confirms) that FEMA paid a reduced fee on Category 1 and 2 claims even if they required a site visit.  SAC ¶ 52 (quoting W-5054 at 2) (providing that adjusting fee for Categories 1 and 2 "will be $750 for each claim + $400 if a site visit is necessary at a later date.  Process # 3 will be paid based upon the existing NFIP fee schedule").  If the reduced fee for Categories 1 and 2 depended solely on the use of telephonic analysis, as State Farm claims, then FEMA would not need to stipulate an additional reduced fee for site visits on those claims.

State Farm also mischaracterizes the trial testimony of FEMA official David Maurstad, which it invoked in repeated unsuccessful past efforts to challenge materiality.  SF Br. at 17

28

n.10; *see also* SF Mem. Supp. JMOL Mot. at 13 (May 6, 2013) [ECF No. 1103]; SF App. Br. at

56.  Mr. Maurstad's testimony speaks for itself:

> **Q.** So do you think that prior to Hurricane Katrina the NFIP was okay with
> insurance companies foregoing line-by-line estimates when they adjusted
> claims?
>
> **A.** No, there was a requirement to do line-by-line adjustments.

Maurstad Dep. 155:21-157:14 (June 2, 2010) [ECF No. 1407-2].

## IV.    The Rigsbys Alleged and Proved State Farm's Scienter.

State Farm misrepresents the Rigsbys' allegations and the record in this case again when

it suggests that they have not alleged facts sufficient to establish State Farm's scienter in

violating FEMA's line-by-line requirement.  *See* SF Br. at 19-20.  The SAC, the McIntosh jury's

verdict, this Court's own post-trial Order, and the Fifth Circuit's mandate all show exactly the

opposite.  This Court and the Fifth Circuit have rejected State Farm's effort to overturn the

McIntosh jury's scienter finding, and the Reexamination Clause of the Seventh Amendment

prohibits State Farm from re-litigating those facts now.

The Rigsbys have more than satisfied their pleading obligation on scienter, perhaps

nowhere more clearly than in quoting the words of Juan Guevara, State Farm's own principal

contact with FEMA after Katrina.  Mr. Guevara wrote in an e-mail to FEMA on September 22,

2005, the day after FEMA issued W-5054, acknowledging that the document "required State

Farm to adjust Category 3 claims 'using the company's normal claim procedures,' which meant

'having to write a complete line by line estimate even if the repairs will exceed the policy

limits."  SAC ¶ 54 (quoting Trial Ex. P-294 at 3).  Mr. Guevara asked FEMA to reconsider that

requirement in both his September 22 e-mail and a subsequent September 29 e-mail, to no avail.

*Id.*  The Rigsbys also have alleged that other relevant State Farm employees understood W-

5054's reference to "normal claim procedures" to require line-by-line estimates.  *Id.* ¶ 100.

Furthermore, if State Farm did not understand FEMA to require line-by-line estimates for Category 3 homes as it now insists, it would have had no reason to conceal its noncompliance by creating fake line-by-line estimates. *Id.* ¶¶ 79-83.

The record in this case confirms the plausibility of the Rigsbys' allegations and, indeed, proves them conclusively. State Farm attempted to overturn the McIntosh verdict, arguing that W-5054 did not actually bar State Farm from using XacTotal on Category 3 homes. This Court rejected that argument. *See* JMOL Order at 17 (citing evidence that "State Farm recognized that homes falling into W-5054's third category … required performance of line-by-line estimates"). The Fifth Circuit rejected the same argument, "agree[ing] with [this] court that evidence adduced at trial could lead a reasonable jury to believe that State Farm deliberately or recklessly did not comply with FEMA directive W5054." *Rigsby*, 794 F.3d at 480. The Fifth Circuit also confirmed that, "[p]rior to Katrina, State Farm's general policy was to conduct line-by-line … estimates of home damages," belying State Farm's current argument to the contrary. *Id.* at 463.

The Reexamination Clause of the Seventh Amendment to the United States Constitution guarantees "the general right of a litigant to have only one jury pass on a common issue of fact" and bars State Farm from re-litigating these facts. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993). This rule applies across individual false claims like the McIntosh claim. *See, e.g.*, *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). The question is whether "successive juries would pass on *issues* decided by prior ones." *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) (emphasis added). Whether FEMA required a line-by-line estimate for Category 3 homes and whether State Farm knew it are not facts that change from one property to another. State Farm has not even tried to explain how a second jury could decide those facts without passing improperly on the McIntosh jury's findings.

State Farm cites several cases dismissing FCA suits based on a defendant's "reasonable but erroneous interpretations of a [its] legal obligations," yet none of those cases can justify State Farm's attempts to re-litigate its scienter here.  *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015); *accord* SF Br. at 20-21.  None of those cases involved W-5054 or FEMA's line-by-line requirement.  And in none of them could the relator point to specific written evidence and sworn testimony proving the defendant's understanding of the requirement, much less a jury verdict, post-trial ruling, and appellate holding confirming the defendant's guilty knowledge.[16] *Rigsby*, 794 F.3d at 468-69 ("[Such facts] present[] something exceptional that most (if not all) plaintiffs in FCA cases are unable to show when seeking discovery").

Even if this Court could ignore the McIntosh jury's findings on this issue, State Farm has offered no reason to question that determination or to suggest that its present interpretation of W-5054 was "reasonable but erroneous."  On the contrary, the record shows that State Farm knew the correct interpretation of W-5054 and simply chose to ignore it.  State Farm insists that the government never "warned [it] away" from its misinterpretation of W-5054, so its subsequent conduct was reasonable.  SF Br. at 19 (quoting *Purcel*, 807 F.3d at 290).  Yet Mr. Guevara's contemporaneous e-mails to FEMA confirm that State Farm interpreted W-5054 clearly and correctly at the time and that its present protestations of confusion are just a self-serving attempt to excuse its fraud.  Indeed, the government *did* warn State Farm away from its present misinterpretation of W-5054 when it declined Mr. Guevara's repeated requests for permission *not* to do line-by-line estimates for Category 3 homes.  State Farm's decision to arrogate that

---

[16] *See United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 879 (8th Cir. 2016) (United States admitted ambiguity of regulatory term in court filing); *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 341 (5th Cir. 2008) (government agreed there was no guidance on what constituted "reasonable cost"); *United States v. Southland Mgm't Corp.*, 326 F.3d 669, 684 (*en banc*) (E. Jones, J., concurring) (noting government's inability "to offer any coherent, non-tautological definition" of requirement); *United States ex rel. Hendrickson v. Bank of Am.*, 343 F. Supp. 3d 610, 636 (N.D. Tex. 2018) (regulations conflicted about whether defendant must return funds "immediately").

permission and to conceal its decision from the government cannot vitiate its knowing violation.

State Farm also argues that the Rigsbys' allegations, which are supported by a jury verdict upheld by this Court and the Fifth Circuit, nevertheless are belied by the record.  It cites only Mr. Maurstad's testimony, the same evidence on which State Farm relied for its repeated prior iterations of this argument.  *See* SF Br. at 19-20.  Yet Mr. Maurstad admitted in his deposition that W-5054's expedited claim procedures applied only to Category 1 and 2 homes, and that it required insurers to use line-by-line estimates for Category 3 homes.  The McIntosh jury evidently did not credit the testimony on which State Farm relies, and both this Court and the Fifth Circuit rejected State Farm's past efforts to mischaracterize Mr. Maurstad's statements.  JMOL Order at 18; *Rigsby*, 794 F.3d at 478 n.14.  This thrice-rejected argument cannot justify dismissing the Rigsbys' allegations under Rule 9(b), when this Court must accept them as true.

**V.      The Rigsbys Have Satisfied Their Pleading Obligation for Count II.**

State Farm seeks dismissal of the Rigsbys' false record cause of action solely on the basis that it cannot survive without a false claim under Count I.  *See* SF Br. at 20.  Yet the foregoing discussion shows that the Rigsbys have satisfied their pleading obligations for Count I.  Even if they had not, State Farm's preceding arguments do not challenge the sufficiency of the Rigsbys' factual falsity theory of liability on Count I, which this Court already has said can proceed to discovery.  Count I therefore will survive on that basis however this Court rules, defeating State Farm's argument for dismissing Count II.

**VI.     The Rigsbys' Claims About the Scope of State Farm's Fraud Are Appropriate.**

State Farm's continued effort to restrict the scope of this case to its self-identified List of 500 NFIP claims is inappropriate.  SF Br. at 3 n.2, 21.  The Rigsbys have alleged specific facts in the SAC showing that State Farm underreported, likely massively, the number of false claims responsive to Judge Senter's criteria for the list.  *See* SAC ¶¶ 61-78.  Further, the Rigsbys

explained repeatedly that Judge Senter's criteria for the List are subjective and under-inclusive, a reality State Farm has acknowledged through multiple revisions to its list.  *See* Mem. Supp. Mot. for Clarification at 9-11 (Apr. 26, 2017) [ECF No. 1319].[17]  Contrary to State Farm's suggestion, those allegations are not improperly "speculative."  SF Br. at 21.

The Rigsbys explained, for example, that State Farm adjusted approximately 9,000 Katrina NFIP claims in Mississippi.  SAC ¶¶ 65-66.  Yet State Farm paid policy limits on approximately 6,156 of its NFIP claims, of which no more than 1,200 could have been slabs.  *Id.* ¶¶ 64-67.  This leaves approximately 4,956 Category 3 claims for which, upon information and belief, State Farm did not perform the required line-by-line adjustment.  *Id.* ¶ 68.  These allegations are not improperly speculative, but rather based on straightforward analysis of numerous public documents cited by name in the SAC and the Rigsbys' own knowledge of State Farm's practices.  Indeed, the Rigsbys identified two specific examples "that should have been, but were not, included on State Farm's List."  *Id.* ¶¶ 69-73.  State Farm's vain hope to hide the massive scope of its fraud by preventing all discovery and substantive litigation regarding the subject does not render those allegations improperly speculative.

## VII.   The Second Amended Complaint Complies with Applicable Pleading Requirements.

State Farm misconstrues the applicable pleading requirements when it argues that "the Rigsbys' aggregation of each of its disparate sets of allegations (factually false wind-vs-flood shifting, W-5054 procedures non-compliance, W-5054 adjustment fees mis-charging) together into just Count One (false claim) and Count Two (false statement) warrants dismissal of the entire SAC under Fed. R. Civ. P. 10(b)."  SF Br. at 21.  The theories that State Farm labels

---

[17] The Rigsbys also have noted the unprecedented impropriety of allowing a proven fraudfeasor to set the scope of inquiry into its own misconduct without any judicial or adversarial oversight.  *See* Mem. Supp. Mot. Compel at 9-10 (Feb. 1, 2018) [ECF No. 1349]; Obj'ns to M.J. Order re Mot. Compel at 5-9 (Oct. 2, 2018) [ECF No. 1420].

"disparate" in fact are just explanations—grounded in precedent—for how the facts alleged

violated *the same statutory provision*.  Not surprisingly, State Farm could not cite a single case in

which any court ever has held that it is improper for a plaintiff to plead how the defendant's

alleged misconduct violated *a single statutory provision* in the same count.

Rule 10(b) requires in relevant part that "[i]f doing so would promote clarity, each claim

founded on a separate transaction or occurrence … must be stated in a separate count."  Fed. R.

Civ. P. 10(b).  Factual falsity, express false certification, and implied false certification are not

separate claims but rather legal theories for how the facts alleged violate the same statutory

provision: 31 U.S.C. § 3729(a)(1) (1994).  The Rigsbys have no obligation to plead different

theories of recovery under the same statutory provision as separate counts.[18]  "[I]ndeed, it is

axiomatic that plaintiffs need not plead legal theories at all."  *Zurbriggen v. Twin City*

*Acquisition Co.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018).

Separating the legal theories by which those NFIP claims were false would not promote

clarity, and courts have refused motions to dismiss or re-plead under Rule 10(b) where "the

Court finds the claim to be intelligible as drafted and that it provides adequate notice to

Defendants."  *Riles v. City of Chi.*, No. 14 C 2407, 2014 WL 5821474, at *5 (N.D. Ill. Nov. 10,

2014); *see also Fanguy v. Eastover Country Club*, No. Civ.A 01-3778, 2002 WL 1888901, at *4

(E.D. La. Aug. 16, 2002) (denying motion where complaint was "'sufficiently clear to apprize

---

[18] *See, e.g.*, *NAACP v. American Family Mut. Ins.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Putting each legal theory in a separate count is a throwback to code pleading, perhaps all the way back to the forms of action. …. One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."); *Orthodontic Ctrs. of Ill. v. Michaels*, 407 F. Supp. 2d 934, 935 (N.D. Ill 2005) ("[T]he concept of a separate count … does *not* properly encompass the statement of what is no more than a different theory of recovery on the same claim."); *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1352 (M.D. Fla. 2019) ("The Second Amended Complaint is not a shotgun complaint. It does not combine claims under different statutes into the same count."); 5A Fed. Prac. & Proc. Civ. § 1324 & n.6 (4th ed. Apr. 2020) ("[I]t seems reasonably clear that Rule 10(b) does not make it necessary to use separate counts to state different theories of recovery.") (gathering cases).

[the Defendants] of the claims against [them]") (alterations in original).  State Farm has not suggested that the Complaint is unintelligible, nor could it credibly do so given the substantial motions it has been able to prepare targeting each of the Rigsbys' theories of liability.  Even if State Farm could show a technical violation of Rule 10(b), it would not be cause for dismissal, or at least not dismissal with prejudice.[19]

Nor do the cases that State Farm cites suggest that the Rigsbys cannot aggregate their theories of how State Farm's alleged conduct violated 31 U.S.C. § 3729(a)(1) into one count.  In fact, *United States v. Klausner Lumber One, LLC*, No. 3:16-cv-203-J-32JBT, 2016 WL 7366891, at *2-3 (M.D. Fla. Dec. 2, 2016), *report and recommendation adopted*, 2016 WL 7338442 (M.D. Fla. Dec. 19, 2016), faults a relator for *failing* to group her counts based on the subsections of the FCA she contended the defendant violated, as the Rigsbys have done here.

State Farm's other *qui tam* case, *United States ex rel. Mateski v. Raytheon Co.*, No. 2:06-cv-03614-ODW(KSx), 2017 WL 1954942, at *6 (C.D. Cal. Feb. 10, 2017), inappositely addressed a relator's failure "to use paragraph numbers in violation of Rule 10(b)" and his use of "literally hundreds of obscure acronyms, engineering terms … [and] lengthy and ungrammatical sentences, making comprehension of the complex subject matter extremely arduous."[20]  The SAC contains no such flaw.  Requiring the Rigsbys to re-plead their Complaint with each legal theory of falsity as a separate count would not "promote clarity."  It would be simple make-work that "would elevate form over substance."  *Vertex Refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 16 CV 3498, 2017 WL 977000, at *7 (N.D. Ill. Mar. 14, 2017).

---

[19] *See, e.g.*, *Bautista v. L.A. Cnty.*, 216 F.3d 837, 841-42 (9th Cir. 2000) (reversing dismissal of complaint under Rule 10(b) as abuse of discretion); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 905 (N.D. Iowa 2001) (pleader should have leave to cure Rule 10(b) deficiencies).

[20] State Farm's non-FCA case, *Three D Dep'ts v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987), fares no better.  The court in that case faulted a plaintiff who consolidated its claims for violation of three separate contractual provisions into a single count.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny State Farm's motion in its entirety.

Respectfully submitted on this 15th day of July, 2020.

|  |  |
|---|---|
|  | /s/ August J. Matteis, Jr. |
| C. Maison Heidelberg, MB #9559 | August J. Matteis, Jr. (*pro hac vice*) |
| mheidelberg@hpwlawgroup.com | amatteis@wmclaw.com |
| Chadwick Welch, MB #105588 | William E. Copley (*pro hac vice*) |
| cwelch@hpwlawgroup.com | wcopley@wmclaw.com |
| HEIDELBERG PATTERSON WELCH PLLC | Janet L. Goetz (*pro hac vice*) |
| 207 W. Jackson Street, Suite 200 | jgoetz@wmclaw.com |
| Ridgeland, MS 39157 | Matthew S. Krauss (*pro hac vice*) |
| Tel: (601) 790-1583 | mkrauss@wmclaw.com |
|  | Derek Y. Sugimura (*pro hac vice*) |
|  | dsugimura@wmclaw.com |
|  | William E. Jacobs (*pro hac vice*) |
|  | wjacobs@wmclaw.com |
|  | Jonathan H. Silberman (*pro hac vice*) |
|  | jsilberman@wmclaw.com |
|  | WEISBROD MATTEIS & COPLEY PLLC |
|  | 1200 New Hampshire Ave., N.W., Suite 600 |
|  | Washington, D.C. 20036 |
|  | Tel:  (202) 499-7900 |

*Attorneys for Cori Rigsby and Kerri Rigsby*

## <u>CERTIFICATE OF SERVICE</u>

I, August J. Matteis, Jr., attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this 15th day of  July, 2020, caused the foregoing document to be filed with the Court's CM/ECF system, which will cause notice to be delivered to all counsel of record.

_____/s/August J. Matteis, Jr._____
August J. Matteis, Jr.
