IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel.
CORI RIGSBY and KERRI RIGSBY   RELATORS/COUNTER-DEFENDANTS

v.   CASE NO. 1:06cv433-HSO-RPM

STATE FARM FIRE AND CASUALTY COMPANY DEFENDANT/COUNTER-PLAINTIFF

**STATE FARM FIRE AND CASUALTY COMPANY'S REBUTTAL IN SUPPORT OF
[1634] MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant State Farm Fire and Casualty Company ("State Farm") submits this reply in support of its [1634] Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## INTRODUCTION

As the Fifth Circuit has explained:

> [W]hen the facts are publicly disclosed, a relator who is an original source may still bring something of value to the table …. In other cases, the government—for whom the public disclosure bar is not an impediment to suit—either has notice of the wrongdoing or gains nothing from a relator with indirect knowledge of the same facts. Allowing private individuals to sue in those situations would provide an unnecessary windfall.

*United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017). Here, with respect to their newly asserted FCA[1] claims, the Rigsbys are attempting to pursue an unwarranted windfall. Indeed, precisely because the new claims were publicly disclosed, and due to the fact that the Rigsbys do not qualify as "original sources" within the meaning of the FCA, this Court lacks jurisdiction over these new claims.

For the necessary jurisdictional evaluation of the false certification claims in the SAC, it is of little consequence that the Fifth Circuit held the Rigsbys to be "original sources" of the type of wind-vs-flood claim that they asserted with respect to the McIntosh property. Original source status for one claim does not transfer automatically to new claims. As the Fifth Circuit stated, its

---

[1] All abbreviations have the same meaning as in State Farm's [1635] Memorandum in Support.

original source assessment was limited and did not presuppose original source status for any claims beyond those raised in the McIntosh case.

The Rigsbys thus cannot escape facts that are dispositive for purposes of this issue:

- In both their original and 2007 Complaints – and, indeed, even throughout the McIntosh trial and appeals – the fundamental underpinning of the Rigsbys' allegations was that State Farm defrauded the Government by classifying Hurricane Katrina damage as caused by flooding, resulting in NFIP payouts, when State Farm supposedly knew that the damage was caused by wind for which State Farm was responsible (the "wind-vs-flood" theory).
- The prior Rigsby *qui tam* complaints do not even mention FEMA Bulletin W-5054 – the linchpin of the SAC – let alone do they include any allegation (factual or otherwise) that State Farm had violated any W-5054 adjustment or adjuster fee requirements.
- The prior Rigsby *qui tam* complaints do not use the terms "certify" or "certification," in contrast to the dozens of times those terms are now employed in the SAC.
- The Rigsbys admitted in sworn testimony that they had no knowledge that the use of XacTotal, in lieu of a line-by-line estimate, violated any FEMA adjustment requirement.
- The Rigsbys did not begin to mention potential non-compliance with W-5054 until after information about this subject was publicly disclosed.
- While express certification liability was a viable theory in the Fifth Circuit prior to and throughout the pendency of their action, the Rigsbys told the Fifth Circuit they were not pursuing *any* false certification theory in this case, and the Fifth Circuit accepted, relied on, and documented this affirmation in its opinion.
- In the SAC, the Rigsbys now seek to hold State Farm responsible for NFIP payouts under false certification theories of liability regardless of the amount of flood (or wind) damage (*i.e.*, liability arises from the mere use of XacTotal, even if the resulting claim to NFIP appropriately was for flood damage and even if the resulting claim amount was correct).

The Rigsbys latch on to the lone "XacTotal" reference in their original complaint, suggesting that the mere mention of this term matters in the current inquiry. It does not. The relevant question here is whether the Rigsbys alleged then (prior to public disclosure) – as they do now – that the use of XacTotal violates W-5054 and creates FCA liability independent of whether the damage was caused by wind or flood. The answer to that question is "No." Indeed,

2

the Rigsbys now concede that their prior descriptions of the earlier complaint allegations regarding the use of XacTotal only went to the "how" of the wind-vs-flood scheme, ([1655] at 4), which is fundamentally different than the use of XacTotal being an independent, standalone FCA violation because its use was prohibited by FEMA.  That latter allegation – the foundation of the false certification claims that permeate the SAC – was publicly disclosed, and the Rigsbys lack the direct and independent knowledge necessary to qualify as original sources.[2]

## ARGUMENT
### I. THE RIGSBYS CANNOT OVERCOME THE PUBLIC DISCLOSURE BAR THROUGH THEIR MANUFACTURED "ONE SCHEME" OR "MANDATE" ARGUMENTS

Having to concede that, under *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), courts evaluate public disclosures and a relator's original source status on a scheme-by-scheme basis, ([1655] at 13), the Rigsbys try to argue that the false certification claims in the SAC are not a separate scheme from the wind-vs-flood scheme.  But those claims do raise a new scheme, which now must be analyzed by this Court under the public disclosure test.

In *Rockwell*, the Supreme Court made clear that the FCA's public disclosure bar prevents a relator from pleading one theory of fraud "for which he had some direct and independent knowledge and later amend[ing] the complaint to include theories copied from the public domain or from materials in the Government's possession."  549 U.S. at 473.  To be an original source, a relator must know for each theory of fraud either that the "defect actually existed" or the cause that will later result in that defect.  *Id.* at 475.  Either way, the relator is required to know the defect in terms of what it is that makes the claim false.

In *Rockwell*, despite the relator's original source status for claims concerning the

---

[2] These circumstances should be dispositive.  But, in the event that there is a material factual dispute, the next step would be to take discovery and, if necessary, hold an evidentiary hearing to resolve this question.  Since the public disclosure bar is jurisdictional, any issues should be resolved now.

concealment of spray irrigation problems, the relator was not an original source for FCA claims based on allegations that insolid pondcrete leakage violated environmental regulations. For this legal falsity theory, the relator was required to know both the underlying environmental regulation and also either that insolid pondcrete actually existed or that a cause actually existed that would later lead to insolid pondcrete. *Id.* Thus, knowledge of a different cause that could have led to the same defect (in *Rockwell*, predicted insolid pondcrete potentially caused by piping machinery flaws instead of cement-to-sludge ratio) or of a different defect from the same known cause (in *Rockwell*, concealment of spray-irrigation problems instead of insolid pondcrete even though both caused by environmental performance evaluations) does not provide jurisdiction. *Id.* at 475-76. The FCA "does not permit such claim smuggling." *Id.* at 476.

      The Rigsbys are "claim smuggling" here, just as the Supreme Court prohibits. Originally, the Rigsbys pled a particular defect: wind damage not covered under the federal flood insurance policy. The Rigsbys claimed that they "knew" this defect existed on the McIntosh claim and predicted that this same type of wind damage defect existed on other claims because of a direction to use XacTotal to "hit the limits," the rejection of engineering reports, and a direction that "all major damage to homes was caused by flooding." *United States ex rel. Rigsby v. State Farm Fire & Casualty Co.*, 794 F.3d 457, 475 (5th Cir. 2015), *aff'd on other grounds*, 137 S. Ct. 436 (2016). Both the original and 2007 Complaint's false claim and false statement allegations were dependent on this alleged shifting of wind damage to flood damage, causing the claims for payment to be factually false in ***misstating the cause*** of the property damage. *See* ([343] at 3) ("The Relators charge … a conspiracy to inflate or overstate the amount of flood damage that actually occurred … in order to offset or reduce the property owners' claims for wind damage by mischaracterizing part of the wind damage as flood damage."). The Fifth

4

Circuit recognized this wind-flood linkage, describing the Rigsbys' 2007 Complaint and [1081] Pre-Trial Order allegations and the McIntosh trial evidence as relating to a "scheme to categorize all losses as caused by flooding rather than wind." *Rigsby*, 794 F.3d at 468.  The so-called "scope briefs" – to the extent they could somehow substitute for allegations – likewise only refer to a wind-vs-flood scheme.  *See, e.g.*, ([914] at 22) (McIntosh "is a typical and representative example of State Farm's scheme to submit false claims under the government's NFIP program to shift losses for legitimate claims for wind damage under State Farm's homeowner policies.").

Meanwhile, the Rigsbys did not plead or pursue at the McIntosh trial or before the Fifth Circuit the separate, independent defects that are now the subject of the SAC: (1) an adjustment methodology that did not comply with W-5054, *see* ¶¶ 75-76, 124, and (2) excessive adjustment fees, *see* ¶ 130.  Before, wind damage listed as flood damage was the defect and XacTotal (per the Rigsbys) was a "how," ([1655] at 4), but now use of XacTotal is the defect in and of itself.

The Rigsbys repeatedly point to the idea that they knew about State Farm's use of XacTotal and that their original and 2007 Complaints refer to XacTotal.  *See, e.g.*, ([1655] at 4.) But State Farm is not arguing, nor does it need to, that every single fact in the SAC is new.  The critical point here is that the Rigsbys' prior complaints never alleged that the use of XacTotal – by itself – violated any law, regulation, or FEMA Bulletin, giving rise to FCA liability independent of the wind-vs-flood factual falsity scheme.  Instead, they pointed to the use of XacTotal as a false statement in support of the factually false flood claims.  Far from the use of XacTotal being "central" to the allegations as the Rigsbys now claim, ([1655] at 4), the Rigsbys' "central" allegation was that State Farm caused the federal government to pay flood claims for damages that were caused by wind.  XacTotal was just one of many alleged false statements put forward, and the Rigsbys' scant one-paragraph reference to it related only to the wind-vs-flood

scheme.  *See* ([16] ¶ 62.)

The Rigsbys further contend that their original complaint "pled every fact necessary to establish State Farm's violations of W-5054," ([1655] at 4), ***even though their original and 2007 Complaints never mention W-5054 at all***.  Nor did Kerri Rigsby mention W-5054 in her testimony at the prior original source evidentiary hearing.  Thus, in the absence of even one prior reference to W-5054, let alone any claim of non-compliance with the adjustment methodology or fee amounts supposedly required by that FEMA bulletin, the Rigsbys' contrived arguments that these claims have been in the case from the outset carry no weight.

The Rigsbys even admit that the adjustment fees allegation is a "new allegation of fact that [they] alleged for the first time in their SAC," but then try to assert that it is "merely additional evidence and detail regarding the same scheme."  ([1655] at 14-15.)  The SAC does not allege that the adjustment fees are relevant only where a property was damaged by wind instead of flood, as would be necessary to be just "detail" in the wind-vs-flood scheme.  Instead, the Rigsbys allege a false claim for "***[e]very bill*** or statement … seeking payment for conducting a line-by-line estimate under FEMA's normal fee schedule when it in fact used an expedited procedure, *i.e.*, XacTotal," ¶ 130 (emphasis added).  Nor does it even apply to the "same transactions," ([1655] at 15), as different claims for payment are implicated.  *See* ¶ 56.

Moreover, the Rigsbys oft-repeated assertion that they do not have to plead legal theories does not explain why they previously disavowed to the Fifth Circuit pursuing a false certification theory of liability:  "The Rigsbys contend that this is not a false certification case …."  *Rigsby*, 794 F.3d at 478 n.14.  An ***express*** false certification theory has been available to the Rigsbys throughout this litigation, even before they filed their original complaint, *see* ([1635] at 6 n.4), but they did not even reference legal falsity, certifications, claims to FEMA that were defective

6

even though flooding damaged the property in the claimed amount, or the provision allegedly violated (W-5054) in their first two complaints.

Under *Rockwell*, an original source must know or at least predict the right defect, *i.e.*, the effect and not just the cause. Thus, "[e]ven if a prediction can qualify as direct and independent knowledge in some cases …, it assuredly does not do so when its premise of cause and effect is wrong." *Rockwell*, 549 U.S. at 475. Here, it is clear, and the Rigsbys' Opposition all but admits, that the Rigsbys are not original sources of the defect underlying the new false certification allegations: At most, they knew the "cause," XacTotal. But they did not know about W-5054, and they certainly did not know whether State Farm's use of XacTotal and fees complied with W-5054 or not. They only developed these independent "defects" following public disclosures.[3]

Notably, the Rigsbys' assertion that the Government agrees that the false certification allegations are part of the original wind-vs-flood scheme is misleading and wrong. The Justice Department letter they exhibit does not say that "the SAC contained no new allegations," as the Rigsbys proclaim, ([1655] at 23). Instead, the letter merely states that the Justice Department did not see the need for the SAC to be filed under seal in April 2020 (an argument that State Farm has not made). *See* ([1654-3].) The Rigsbys' mischaracterization has now been confirmed by the Justice Department's [1657] Statement of Interest, which makes clear that the Justice Department has not taken a position on whether the SAC contains new allegations. *See* ([1657] at 1) ("Relators suggest that this [1654-3] letter expresses a view by the United States that the SAC contains no new allegations, but the United States' April 27 correspondence takes no

---

[3] While still asserting only a wind-vs-flood factually false scheme, as noted above, the Pre-Trial Order and so-called "scope briefs," *see* ([1655] at 5-7), unlike the original and 2007 Complaints do mention W-5054 and assert that use of XacTotal violated it. But both the Pre-Trial Order and the "scope briefs" ***post-date*** the public disclosures here and thus do not evidence any direct and independent knowledge of the defect underlying the new false certification scheme allegations.

7

position on this issue." (internal citation omitted)).[4]

The Rigsbys' strained plea – that, per the mandate rule, the Fifth Circuit's determination that the Rigsbys are original sources precludes any re-litigation of that question now – is just simply wrong. The mandate rule has no application here, as it only could apply to "matters which were 'decided by *necessary* implication [or] explicitly.'" *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 252 (5th Cir. 2016) (emphasis in original) (quoting *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir. 1989)). It is not true that State Farm "already litigated and lost the flawed argument at the core of its current motion," ([1655] at 9). When it previously applied *Rockwell*, the Fifth Circuit was doing so to determine whether the public disclosure bar stripped the Court of jurisdiction over the Rigsbys' "'wracking' theory" for "how the McIntosh home was destroyed" by wind instead of flood, and the Fifth Circuit held that the bar did not apply because that wracking theory was consistent with the wind-vs-flood scheme and was not a new "theory of fraud." *Rigsby*, 794 F.3d at 475. That circumstance has no application here, where the Rigsbys are pursuing new theories of fraud that rely on a fundamentally different falsity (non-compliance with W-5054) than the wind-vs-flood falsity. The Fifth Circuit's prior characterization of the "scheme" – "State Farm fraudulently misclassified wind damage as flood damage through a variety of means," *id.* at 475 – is inapposite when compared to the SAC allegations, which state that "State Farm submitted a false claim *every time* it submitted a flood claim … for a W-5054 Category 3 home without performing the requisite line-by-line estimate." ¶ 75 (emphasis

---

[4] Of course, by claiming that the necessary elements of a false certification claim were disclosed to the Government no later than fourteen years ago, ([1654-1]), the Rigsbys also, by logical extension, suggest that (a) FEMA has been grossly negligent in its handling of WYO claims; (b) the use of XacTotal was not material to FEMA, *see* ([1633] at 12-16); and/or (c) the use of XacTotal was not prohibited. Because the Rigsbys' claims are legally deficient if either lack of materiality or lack of falsity is present, it is only if FEMA was grossly negligent in failing to act on these allegations that the Rigsbys' claims can survive.

added).

Further, the Fifth Circuit stated, "It is plausible that § 3730(e)(4) might come into play again as the district court proceeds with this litigation." *Rigsby*, 794 F.3d at 476. The Opposition fails even to acknowledge – let alone account for – this critical language that sharply limits the scope of that court's original source assessment and opens the door to the exact challenge presented here. Thus, this Court must assess whether the W-5054 non-compliance allegations in the SAC are foreclosed by the FCA's public disclosure bar.

## II. THE FALSE CERTIFICATION ALLEGATIONS WERE PUBLICLY DISCLOSED

The Rigsbys' attempts to avoid the public disclosures of their false certification allegations are unavailing. While a restatement of the law standing alone would not constitute a public disclosure, the *Times-Picayune* article and GAO report are far more than that. The critical elements that must be disclosed are judged by the *Springfield* test in the Fifth Circuit, *see* ([1635] at 10),[5] and these public disclosures reveal the X and Y in that they identify State Farm's use of XacTotal on Process #3 properties and receipt of full adjustment fees in connection with that use and also reveal the alleged non-compliance in referring to W-5054 by date and content. *Id.* at 10-13. It is notable that these disclosures – which the Rigsbys characterize as insufficient to put the Government on notice of the fraud – are far more detailed and direct than any W-5054 non-compliance claims in their original or 2007 Complaints, which they now contend "pled every fact necessary to establish State Farm's violations of W-5054," ([1655] at 4).

The Rigsbys assert that State Farm's reading of the *Times-Picayune* article is "not

---

[5] *United States ex rel. Little v. Shell Exploration & Production Co.*, which the Rigsbys cite for "as broad and as detailed," only used that language to refer to "specifics" at a high level in terms of "scope and breadth," such as identifying a particular time period. 602 F. App'x 959, 964 (5th Cir. 2015); 690 F.3d 282, 293 (5th Cir. 2012). Under the Rigsbys' formulation and contrary to the *Springfield* test, nothing would qualify as a public disclosure except another, nearly identical FCA complaint.

9

reasonable," ([1655] at 28), but the fault lies in their allegations of W-5054 non-compliance. In other words, the Rigsbys cannot escape the public disclosure bar by touting the fact that they are the only ones who have made ***fabricated*** allegations against State Farm. The Rigsbys allege that "FEMA never approved … any … WYO to use expedited procedures on Category 3 homes," which they characterize as anything other than a line-by-line estimate. ([1655] at 27-28.)[6] The *Times-Picayune* article – which discloses that State Farm (publicly identifiable as the largest WYO carrier in Mississippi and Louisiana, *see* ([1635] at 11-13)) was permissibly using XacTotal (its non-line-by-line method "to calculate damages by measuring the square footage of each room and characterizing the building materials as high-, medium-, or low-grade") on properties that were not Process #1 or #2[7] and charging the regular adjustment fee schedule for it – publicly discloses the allegedly "misrepresented" state of facts. *See* ([1634-1].) Meanwhile, the "true" state of facts (per the Rigsbys) that this was not permissible is disclosed by the document the *Times-Picayune* article references, W-5054. That qualifies as a public disclosure.[8]

Separate from the *Times-Picayune* article and GAO report, the evidence disclosed in this action amounts to sufficient public disclosure. And, while it does not matter whether the

---

[6] *But see, e.g.*, ([1632-3] (Maurstad Trial Test.) at 1142:25-1143:7 ("Q. I will ask you whether or not 5054 prohibited the WYO carriers and their adjusters from using valuation tools like Xactotal instead of a stick-build estimate on the constructive total losses that were inspected with a site visit? A. No, it didn't prohibit it. The 5054 was just providing another tool in the tool kit of adjusters and the Write-Your-Own companies in how they could deal with particular claims circumstances.").

[7] The Rigsbys try to discredit the *Times-Picayune* article by claiming that it does not reference Process #3. Yet, that article successively describes the three W-5054 process categories: first, "those procedures"; second, "also"; and third, "[i]n addition." ([1634-1] at 3-4.) The Rigsbys similarly misconstrue the GAO report. This report describes the two different aspects of W-5054: "without site visits" (Process #1 and #2) "or" – indicating an alternative – what necessarily must be situations with site visits (Process #3). ([1634-2] at 7.)

[8] Contrary to the Rigsbys' assertion, public disclosure can occur in a combination of more than one public source; in other words, one source need not disclose both the X and the Y of the *Springfield* test. *See United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 626 n.13 (N.D. Tex. 2018) ("To satisfy their burden, Defendants need not produce a single document, standing alone, that constitutes a disqualifying public disclosure."), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).

Rigsbys actually derived allegations from particular public disclosures, but whether they *could* have, *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 146 (5th Cir. 2017), the Rigsbys' first "scope brief" reveals that they did learn about the new allegations through discovery: "Discovery revealed that State Farm ignored the NFIP and Memorandum W-5054." ([740] at 14.) Under § 3730(e)(A)(4), deposition testimony, testimony given at hearings, and documentary evidence qualify as public disclosures. *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004). Disclosure of a different scheme within the same *qui tam* litigation or investigation is a public disclosure for which relators need to be original sources – that is exactly what occurred in *Rockwell*. 549 U.S. at 462 (noting that the FBI obtained a search warrant "based in part on information allegedly learned from [relator]," *i.e.*, piping machinery flaws, which then led to the public disclosure of the different defect cause, *i.e.*, cement-to-sludge ratio); *see also* ([1635] at 14 n.9).

Accordingly, State Farm has established multiple public disclosures of the information that underlies the false certification claims and, as shown below, the bar applies because the Rigsbys are not original sources of that information.

### III.   THE RIGSBYS HAVE NOT DEMONSTRATED ORIGINAL SOURCE STATUS

The Rigsbys cannot prove they are original sources of the false certification scheme allegations. To do so, they must prove they knew what was being violated to create the legal falsity. The Supreme Court made this clear in *Rockwell*, listing where the relator's "knowledge falls short" as including that "he did not know that pondcrete storage was even subject to RCRA [the particular environmental regulation at issue]." 549 U.S. at 475. The Rigsbys thus misconstrue the law when they assert that they need only know *some* fact that relates to the

11

scheme in question, ([1655] at 16).[9]  Rather, the relator must know the ***key*** facts.  *See, e.g.*, *Colquitt*, 858 F.3d at 374-75 (no original source status for fraudulent inducement scheme where relator knew inappropriate use of devices but did not have direct and independent knowledge about alleged misrepresentations to the FDA in the approval process).  A relator cannot simply "uncover[] some nuggets of new, *i.e.*, non-public, information."  *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008).

The original source discussion in *Springfield* does not rescue the Rigsbys' claims as they argue, ([1655] at 17-19).  First, the Fifth Circuit did not wholesale adopt the entirety of the *Springfield* opinion; instead, it adopted *Springfield* only for its "based upon" public disclosure analysis, not its original source commentary.  *See Solomon*, 878 F.3d at 144; *Colquitt*, 858 F.3d at 373.  Second, *Springfield*'s original source discussion was overtaken by the Supreme Court's later holding in *Rockwell*, which resolved the circuit split over the meaning of "information" in § 3730(e)(4)(A).  *See Rockwell*, 549 U.S. at 470-72.  Per *Rockwell*, the Rigsbys cannot be original sources of the false certification scheme allegations unless they had direct and independent knowledge that it was W-5054 that was (allegedly) being violated by State Farm's use of XacTotal.  The original and 2007 Complaints never mention W-5054.  In sworn testimony, the Rigsbys disavowed knowledge of W-5054 or that there was anything

---

[9] The Rigsbys cite to the Fifth Circuit's opinion, which merely quoted in passing *Reagan*, 384 F.3d at 179 ("some additional compelling fact"), when describing original source case law.  *See Rigsby*, 794 F.3d at 473.  The Supreme Court's explanation of what an original source must know in a false certification case post-dates *Reagan* (and the other circuit cases the Rigsbys cite, ([1655] at 20)).  Nor is it accurate that "[t]he Fifth Circuit held that the Rigsbys are original sources because 'they were told to use the shortcut Xactotal software even on claims that sustained moderate flood damage'" or based only on knowledge that pertained to "Y."  ([1655] at 15, 20.)  Use of XacTotal was just one on a list of items that all supported the wind-vs-flood scheme – a completely different type of scheme in that it involves factual, not legal, falsity – and it directly implicates that scheme with its reference to property only sustaining "moderate" damage rather than the limits of the flood policy as claimed.  *See Rigsby*, 794 F.3d at 474.

inappropriate in the use of XacTotal alone.[10]  Kerri Rigsby's new [1654-1] Declaration says nothing about her having any knowledge of W-5054 or how XacTotal supposedly would violate it, much less about how adjustment fees were being charged vis-à-vis W-5054.  Finally, the Rigsbys' "scope briefs" confirm that their knowledge of the false certification allegations actually was derived, post-public disclosure, directly from evidence given in this case (*i.e.*, a public disclosure).

## CONCLUSION

For the foregoing reasons and those in State Farm's [1635] Memorandum of Law in Support, State Farm respectfully submits that this Court should grant State Farm's Motion.

This the 5th day of August, 2020.

    Respectfully submitted,

    STATE FARM FIRE AND CASUALTY COMPANY

By:   s/ *E. Barney Robinson III* (MB # 09432)
    Michael B. Beers, *PHV* (ASB-4992-S80M)
    Phil B. Abernethy (MB # 1023)
    E. Barney Robinson III (MB # 09432)
    Amanda B. Barbour (MB # 99119)
    Michael C. McCabe, Jr. (MB # 101548)
    Douglas W. Baruch, *PHV* (DC Bar # 414354)
    Jennifer M. Wollenberg, *PHV* (DC Bar # 494895)

    ITS ATTORNEYS

---

[10] The Rigsbys attempt to avoid this testimony by quoting Kerri Rigsby's thoughts on whether a line-by-line estimate should have been used to adjust the McIntosh property.  ([1655] at 23.)  This testimony again says nothing about XacTotal violating W-5054.  In fact, that testimony does not tie a line-by-line estimate to claims for flood damaged homes because Ms. Rigsby was talking about the methodology to use on a home identified as wind damaged.  Ms. Rigsby testified that once an engineering report came back indicating that the McIntosh property suffered wind, not flood damage, then she "should have and didn't" perform a line-by-line estimate.  ([1464-14] (K. Rigsby Dep.) at 171:10-23.)

OF COUNSEL:

BUTLER SNOW LLP
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3025
(E) michael.mccabe@butlersnow.com

BUTLER SNOW LLP
250 Commerce Street, Suite 203
Montgomery, AL  36104
(P) (334) 832-2900
(F) (334) 832-2901
(E) michael.beers@butlersnow.com

BUTLER SNOW LLP
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) phil.abernethy@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C.  20004
(P) (202) 739-3000
(F) (202) 739-3001
(E) douglas.baruch@morganlewis.com
(E) jennifer.wollenberg@morganlewis.com

**CERTIFICATE OF SERVICE**

I, E. Barney Robinson III, one of the attorneys for State Farm Fire and Casualty Company, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following via the means directed by the Court's CM/ECF System:

C. Maison Heidelberg
Chadwick M. Welch
HEIDELBERG PATTERSON WELCH PLLC
207 West Jackson Street
Ridgeland, MS 39157
(P) 601-790-1588
(F) 601-932-4400
mheidelberg@hpwlawgroup.com
gkennedy@ hpwlawgroup.com

August J. Matteis Jr.
William E. Copley
Derek Y. Sugimura
Timothy M. Belknap
WEISBROD, MATTEIS & COPLEY, PLLC
1200 New Hampshire Avenue, NW, Suite 600
Washington, DC  20036
amatteis@wmclaw.com
wcopley@wmclaw.com
dsugimura@wmclaw.com
tbelknap@wmclaw.com

COUNSEL FOR CORI RIGSBY AND KERRI RIGSBY

Jay D. Majors
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
(P) (202) 307-0264
(F) (202) 514-0280

1

Lynn Murray
AUSA
UNITED STATES ATTORNEY'S OFFICE
Southern District of Mississippi
501 East Court Street, Suite 4.430
Jackson, MS  39201
(P) (601) 965-2835
lynn.murray@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

THIS the 5th day of August, 2020

                      By:    s/*E. Barney Robinson III* (MB # 09432)
                               E. Barney Robinson III (MB # 09432)

54127591.v1