IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* CORI RIGSBY and KERRI<br>RIGSBY | §<br>§<br>§<br>§ | RELATORS/<br>COUNTER-DEFENDANTS |
| v. | §<br>§ | Civil No. 1:06cv433-HSO-JCG |
| STATE FARM FIRE AND<br>CASUALTY COMPANY | §<br>§<br>§ | DEFENDANT/<br>COUNTER-CLAIMANT |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION [1634] TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND DENYING DEFENDANT'S MOTION [1632] TO DISMISS RELATORS CORI RIGSBY AND KERRI RIGSBY'S SECOND AMENDED COMPLAINT [1623]

BEFORE THE COURT are Defendant State Farm Fire and Casualty Company's Motion [1634] to Dismiss for Lack of Subject-Matter Jurisdiction and Motion [1632] to Dismiss Relators Cori Rigsby and Kerri Rigsby's Second Amended Complaint [1623], which are fully briefed.

After due consideration of the record, the Motions, the related pleadings, and relevant legal authority, the Court is of the opinion that State Farm's Motion [1634] to Dismiss for Lack of Subject-Matter Jurisdiction should be granted in part and denied in part, and that its Motion [1632] to Dismiss Relators' Second Amended Complaint [1623] should be denied. Relators' claim in Count One of the Second Amended Complaint [1623] that Defendant State Farm Fire and Casualty Company

submitted an express false certification by sending bills or statements of withdrawal seeking payment for adjusting fees for conducting line-by-line estimates when it had instead used an expedited procedure will be dismissed for lack of jurisdiction under 31 U.S.C. § 3730(e)(4) (2006).  Relators' remaining claims will proceed.

## I.   BACKGROUND

### A.   Relevant procedural history

Relators Cori Rigsby and Kerri Rigsby ("Relators") brought this qui tam suit under the False Claims Act, 31 U.S.C. § 3729, et al. ("FCA"), alleging that following Hurricane Katrina in 2005, Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm") submitted false claims to the United States of America ("United States" or "Government") for payments for flood damage under Standard Flood Insurance Policies ("SFIP") which insured homes on the Mississippi Gulf Coast.  A jury trial as to the one property (the "McIntosh property") specifically identified in Relators' Amended Complaint [16] was held in 2013.

The jury found in favor of Relators on their two claims that went to trial, namely that in connection with the McIntosh property State Farm had submitted a false claim in violation of 31 U.S.C. § 3729(a)(1) (1994) (Count I of the Amended Complaint [16]), and that it had submitted a false record material to a false claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2009) (Count II of the Amended Complaint [16]).[1]  After the Court resolved the parties' post-trial Motions [1101], [1102], [1104],

---

[1]  The Court dismissed Relators' claim in Count III of the Amended Complaint [16] for violation of 31 U.S.C. § 3729(a)(3) (1994) on State Farm's Motion for Judgment as a Matter

it entered a Final Judgment [1129] pursuant to Federal Rule of Civil Procedure 54(b),[2] and Relators and State Farm both appealed.  The United States Court of Appeals for the Fifth Circuit affirmed in part, reversed in part, and remanded the case.  *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 480 (5th Cir. 2015), *aff'd,* 137 S. Ct. 436 (2016).  The Fifth Circuit reversed that part of the Court's decision that denied Relators' request for additional discovery but affirmed in all other respects.  *Id.*

On remand, the Court indicated that, as the Fifth Circuit had suggested, the initial scope of discovery for Relators' FCA claims would be limited to the Hurricane Katrina insurance claims identified on a list of certain properties (the "List") for which State Farm had issued both a homeowner's policy covering wind damage and an SFIP covering flood damage, as described in the Court's Order [344] of August 10, 2009.  *Id.*; *see also* Order [1323] at 3.  On June 22, 2017, the Magistrate Judge entered an Order [1324] requiring State Farm to disclose to Relators its wind and flood claim files for the properties identified on the List, *see* Order [1324] at 1, and that production has occurred.

B.   Relators' Second Amended Complaint [1623]

With the Court's permission, on April 30, 2020, Relators filed a Second Amended Complaint [1623] against State Farm.  This pleading advances two FCA claims: (1) that State Farm violated 31 U.S.C. § 3279(a)(1) (1994) by knowingly

---

of Law.  *See* Order [1087] at 1-2.

[2] State Farm has filed a Counterclaim against Relators, which remains pending.  The present Motions do not implicate the Counterclaim.

presenting false claims for payment (Count One); and (2) that State Farm violated 31 U.S.C. § 3729(a)(1)(B) (2009) by knowingly making false records and statements material to false or fraudulent claims for payment (Count Two).  *See* Order [1611]; 2d Am. Compl. [1623] at 25-30.

The Second Amended Complaint [1623] refers to Directive W-5054, which was issued by the Federal Emergency Management Agency ("FEMA") following Hurricane Katrina.  *See, e.g., id.* at 10, 25; *see also* Ex. "4" [1634-4] (W-5054). According to Relators, FEMA had previously required insurers to perform line-by-line estimates when adjusting flood claims, but W-5054 permitted them to utilize an expedited procedure, such as State Farm's XacTotal software, to pay claims when a home: "(1) had standing water in it for an extended period of time (more than five days); or (2) was washed off its foundation by flood water."  2d Am. Compl. [1623] at 10 (quotations omitted).  Any other homes were placed in a catchall "Category 3," for which FEMA required insurers to use normal claim procedures.  *See id.* at 11.

Relators allege that, for Category 3 homes, State Farm was required to employ the line-by-line estimate procedure that it had always used for estimating hurricane damage.  *See id.*  Instead of complying with W-5054's line-by-line requirement, State Farm submitted flood claims on Category 3 homes for payment using its expedited procedure, XacTotal, without performing the required line-by-line estimate.  *See id.* at 16.  Relators assert that, in order to conceal its non-compliance, State Farm generated so-called "long-form" XacTotal reports that closely resembled a line-by-line estimate.  *See id.* at 17.

According to the Second Amended Complaint, W-5054 also set forth a lower fee schedule for the adjustment of flood claims with respect to homes in Categories 1 and 2, because the expedited procedures for adjusting claims in those categories required substantially less time and effort. *See id.* at 11. However, the existing fee schedule remained in place for the adjustment of Category 3 homes. *See id.* at 12. Relators claim that, on numerous occasions, State Farm billed for a line-by-line estimate for adjusting Category 1 and 2 homes, even though it had not performed line-by-line estimates for homes in Category 1 or 2. *See id.* at 22-23.

Based upon these factual allegations, Count One of the Second Amended Complaint [1623] charges that State Farm violated 31 U.S.C. § 3279(a)(1) (1994). *See* 2d Am. Compl. [1623] at 25-28. Specifically, Relators allege that State Farm:

(1)  submitted an implied false certification for at least every property on the List when it represented to FEMA that each property incurred flood damage equal to or exceeding the limits of the applicable SFIP because State Farm was required to perform line-by-line estimates for each, but did not;

(2)  submitted an express false certification for at least every property on the List by placing the long-form XacTotal report in the flood file when it did not perform a line-by-line estimate;

(3)  submitted an express false certification by sending bills or statements of withdrawal seeking payment for conducting line-by-line estimates under FEMA's normal fee schedule when in fact State Farm had used

an expedited procedure; and

(4)    submitted false or fraudulent claims by mischaracterizing wind

damage, which should have been covered by State Farm's homeowners'

policies, as flood damage, which was covered by the SFIP, in order to

foist losses caused by wind upon the federal government.

*See id.*  Count Two alleges that State Farm violated 31 U.S.C. § 3729(a)(1)(B) (2009)

by submitting false records and statements material to false or fraudulent claims.

*See* 2d Am. Compl. [1623] at 28-30.

State Farm has now filed two Motions [1632], [1634] to Dismiss, one of which

implicates the Court's jurisdiction.  The Court will consider the jurisdictional

Motion [1634] first.

## II.  <u>DISCUSSION</u>

A.    <u>State Farm's Motion [1634] to Dismiss for Lack of Subject-Matter
Jurisdiction</u>

1.    <u>The parties' arguments</u>

State Farm argues that the Court lacks jurisdiction over the first three "false

certification" claims in Count One based upon the FCA's public-disclosure bar, and

seeks dismissal of these claims under Federal Rule of Civil Procedure 12(b)(1).[3]  *See*

---

[3] Prior to the FCA's amendment in 2010, challenges based on the statute's public-disclosure bar were considered jurisdictional.  *See, e.g., United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 143 (5th Cir. 2017).  Since the amendment, courts no longer consider this provision a jurisdictional bar.  *See Abbot v. BP Expl. & Prod. Inc.*, 851 F.3d 384, 387 (5th Cir. 2017); *see also United States ex rel. Hendrickson v. Bank of Am., N.A.*, 779 F. App'x 250, 252 (5th Cir. 2019).  However, the amendment does not apply retroactively to cases that were pending when it became effective, or to claims concerning events prior to 2010, such as this civil action.  *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010); *Solomon*, 878 F.3d at 143.  Nor do the

Mot. [1634] at 1 (citing Fed. R. Civ. P. 12(b)(1)); Mem. [1635] at 1 (citing 31 U.S.C. § 3730(e)(4)(A) (2006)).  According State Farm, Relators' new pleading "emphasizes . . . two entirely new 'false certification' theories of liability that amount to, at most, purported regulatory non-compliance independent of any claim or finding that the underlying property damage was caused by wind instead of flood."  Mem. [1635] at 2.

State Farm maintains that Relators' new express and implied false certification claims are based upon its alleged non-compliance with W-5054, specifically by: (1) failing to comply with W-5054 "guidance" to use normal claims handling procedures for certain types of Hurricane Katrina flood claims by improperly using the expedited XacTotal adjusting program for certain properties when not permitted to do so; and (2) failing to comply with W-5054 by charging adjusting fees based on a percentage of the flood claim amount, rather than charging the lower fee that applied to expedited adjustments.  *Id.* at 2-3 (footnote omitted).  State Farm argues that, although Relators "lump[ ] the new claims into the same 'Count One' cause of action," their "artful pleading attempts cannot prevent application of the public disclosure bar," as these new claims differ from Relators' previous allegations.  *Id.* at 3.  State Farm contends that these new allegations were publicly disclosed and that Relators are not original sources of the information, such that the Court lacks subject-matter jurisdiction over the three "false certification" claims in Count One.  *See id.* at 3-4.

---

parties dispute that the 2006 version of the FCA's public-disclosure bar applies to this case.  *See* Mem. [1635] at 1 n.1; Mem. [1655] at 11.

Relators respond that their allegations do not relate to a fundamentally different fraudulent scheme. *See* Mem. [1655] at 1. Instead, they were a core part of their proof at the original McIntosh trial regarding how State Farm defrauded the Government. *See id.* at 1, 11. Relators point out that they have pled State Farm's improper use of XacTotal since the inception of this case, including that State Farm used XacTotal in violation of W-5054 and in order to cover up its fraud. *See id.* at 4-7. As for the public-disclosure bar, Relators contend that the Fifth Circuit has already held that they were original sources of the scheme proven at the McIntosh trial, particularly involving State Farm's improper use of XacTotal. *See id.* at 1-2, 7-24. Relators also state that they disclosed any new allegations to the Government prior to filing the Second Amended Complaint. *See id.* at 23-24. Finally, Relators argue that State Farm has failed to identify any public documents that plausibly reveal the allegations contained in their Second Amended Complaint. *See id.* at 3, 24-35.

In its Rebuttal [1658], State Farm takes the position that "it is of little consequence that the Fifth Circuit held the Relators to be 'original sources' of the type of wind-vs-flood claim that they asserted with respect to the McIntosh property," as their "[o]riginal source status for one claim does not transfer automatically to new claims." Rebuttal [1658] at 1. State Farm contends that Relators never alleged that the use of XacTotal violated W-5054 and created FCA liability independent of whether the damage was caused by wind or flood. *See id.* at 2. According to State Farm, Relators' prior allegations regarding the use of

8

XacTotal went to the "how" of its alleged scheme, which is "fundamentally different than the use of XacTotal being an independent, standalone FCA violation because its use was prohibited by FEMA." *Id.* at 3. State Farm maintains that Relators' new false certification claims were publicly disclosed prior to the filing of the Second Amended Complaint and that Relators lack the direct and independent knowledge necessary to qualify as original sources. *Id.* at 3.

2.   Relevant legal authority

The Fifth Circuit has held that "[a] challenge under the FCA jurisdictional bar is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (quotation omitted).[4] A court should grant summary judgment if, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

The 2006 version of the FCA's public-disclosure bar applies here, and provided that:

> (A)   No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional,

---

[4] State Farm filed this Motion [1634] pursuant to Rule 12(b)(1). Although Rule 12(d) requires a court to provide notice of its intention to treat certain motions as ones for summary judgment, the Rule refers to motions under Rule 12(b)(6) and 12(c). *See* Fed. R. Civ. P. 12(d). The notice requirement is therefore inapplicable here. However, even if the notice provision applied, no additional notice would be required. Relators recognized in their opposition to State Farm's Motion to Dismiss that "[a] 'challenge under the FCA jurisdictional bar is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment,'" Mem. [1655] at 25 (quoting *Rigsby*, 794 F.3d at 472), and they have presented evidence supporting their arguments.

administrative, or Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B)   For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006). According to the United States Supreme Court, "the jurisdictional nature of the original-source requirement is clear" from a plain reading of the statute. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 468 (2007).

The purpose of the jurisdictional bar "is both to promote private citizen involvement in fraud exposure while also preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 143 (5th Cir. 2017) (quotation omitted). "Together, the public disclosure bar and its original source exception calibrate the incentives for individuals to bring *qui tam* suits under the False Claims Act." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017).

The Fifth Circuit has distilled a three-part test for determining whether the 2006 version of the FCA's public-disclosure bar applies. *See Jamison*, 649 F.3d at 327. The test considers: (1) whether there has been a "public disclosure" of allegations or transactions; (2) whether the FCA action is "based upon" such publicly disclosed allegations; and (3) if so, whether the relator is the "original

source" of the information.  *Id.*  It can be useful to combine the first two steps

because this "allows the scope of the relator's action in step two to define the

'allegations or transactions' that must be publicly disclosed in step one."  *Id.*  For

the public-disclosure bar to apply, "the publicly disclosed allegations or transactions

need only be as broad and as detailed as those in the relator's complaint . . . ."  *Id.*

A defendant seeking summary judgment based upon the public-disclosure bar

"must first identify public documents that could plausibly contain allegations or

transactions upon which the relator's action is based."  *Little v. Shell Expl. & Prod.*

*Co.*, 690 F.3d 282, 292 (5th Cir. 2012) (quotation omitted).  If a defendant identifies

such items, the relator must then "put forth evidence sufficient to show that there is

a genuine issue of material fact as to whether his action was based on those public

disclosures."  *Id.* (quotation omitted).

In the earlier appeal of this case, the Fifth Circuit assumed for the sake of

argument that there had been a public disclosure of State Farm's misclassification

of wind damage as flood-related damaged in order to diminish its own wind losses,

but determined that Relators were nevertheless original sources.  *See Rigsby*, 794

F.3d at 476.  However, the Court of Appeals recognized that

> [i]t is plausible that § 3730(e)(4) might come into play again as the
> district court proceeds with this litigation.  *See Rockwell*, 549 U.S. at
> 473, 476, 127 S. Ct. 1397 (recognizing that subject matter jurisdiction
> can be questioned at any time and with respect to any claim).  We
> emphasize that there has been no finding of a public disclosure in this
> case under § 3730(e)(4)(A).  However, even if the district court on
> remand should find a public disclosure touching on any possible claims,
> the Rigsbys would not necessarily be barred from pursuing those claims
> if they remain qualified as original sources under § 3730(e)(4)(B).

*Id.*

Because Relators have now amended their pleading, the Court must look to the Second Amended Complaint to ascertain whether it has jurisdiction. *See Rockwell Int'l Corp.*, 549 U.S. at 473-74. "[N]ew allegations regarding a fundamentally different fraudulent scheme require reevaluation of the court's jurisdiction." *Id.* at 473. "Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim." *Id.* at 476. The Court must consider Relators' "original-source status . . . on a claim-by-claim basis." *United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*, 413 F. Supp. 3d 569, 577 (E.D. Tex. 2019), *reconsideration denied*, No. 4:16-CV-00395, 2020 WL 339403 (E.D. Tex. Jan. 21, 2020).

3.   Analysis

a.   Whether there was a "public disclosure" of Relators' allegations

State Farm argues that the public-disclosure bar applies to the following of Relators' false certification claims set forth in Count One of the Second Amended Complaint [1623]:  (1) implied and express false certification claims for State Farm's use of XacTotal for W-5054 Category 3 flood claims instead of performing line-by-line estimates according to its normal claims handling procedures; and (2) express false certification claims for State Farm's charging the regular adjusting fee for the adjustment of Category 3 flood claims, even though it did not perform a line-by-line adjustment and was due only the lower fee applicable for expedited adjustments. *See* Mem. [1635] at 2-3; *see also* 2d Am. Compl. [1623] at 25-28.

12

A court must compare the allegations contained in the pleadings with public disclosures available at the time the complaint was filed to determine whether a "public disclosure" occurred.  *Solomon*, 878 F.3d at 143.  Thus, the Court must compare Relators' allegations in Count One with the purported public disclosures identified by State Farm.  State Farm cites several potentially relevant public disclosures to support its position:  (1) FEMA's publicly-available administrative reports, including W-5054 itself and the NFIP Claims Manual; (2) a 2006 United States Government Accountability Office ("GAO") report; (3) a 2007 article from *The Times-Picayune* newspaper, "Hearing on Flood Claims Is Today, Adjusting Procedure Is One of the Issues" (June 12, 2007); and (4) testimony and exhibits from the McIntosh trial.  Mem. [1635] at 3-4, 7, 10-15.

According to State Farm, the section of the NFIP Adjuster Claims Manual applicable at the time of Hurricane Katrina stated in relevant part that "[p]ayment of the adjuster's service fee will be according to the NFIP fee schedule."  Ex. "E" [1634-5] at 12.  However, FEMA issued W-5054 on September 21, 2005, to address standards for handling flood claims and outlined three processes for adjusting claims based upon specific characteristics of the homes.  *See* Ex. "D" [1634-4] at 2.  According to that Memorandum,

> Process # 1 should be used to expedite the claims handling of structures that have or have had standing water in them for an extended period of time.  In order for your company to participate in this process, you must be able to acquire a reliable square foot measurement so that an accurate value can be developed.  Some companies have a homeowner policy base that largely matches the flood policy base and may develop the square foot measurement from that information.

> Process # 2 is to be used when it has been determined that the structure has been washed off its foundation by flood water and the square foot measurements are known.   The company should use the same settlement procedures as in process # 1.  All other claims require a site visit and will be handled using the company's normal claim procedures (process # 3).
>
> *   *   *
>
> The existing NFIP fee schedule will be modified for the claims handled by processes # 1 and # 2.  The fee will be $750.00 for each claim + $400.00 if a site visit is necessary at a later date.  Process # 3 will be paid based upon the existing NFIP fee schedule.   FEMA will not seek reimbursement from the company when a subsequent review identifies overpayments resulting from the company's proper use of the FEMA depth data and a reasonable method of developing square foot value in concluding claims.

*Id.* at 2-3.

State Farm also cites a December 2006 GAO report entitled "New Processes Aided Hurricane Katrina Claims, but FEMA's Oversight Should Be Improved."  Ex. "B" [1634-2] at 2.  The GAO report explained that, "[a]ccording to FEMA, about 95 percent of the NFIP policies in force are written by insurance agents who represent 88 private insurance companies that are paid fees for performing administrative services for the NFIP but do not have exposure for claims losses."  *Id.* at 19.  Write-your-own or "WYO" companies received an expense allowance from FEMA and also received a percentage fee from the NFIP, about 3.3% of the incurred loss, for adjusting and settling flood claims.  *See id.*  When a flood loss was reported, the WYO company assigned an adjuster to assess damages, and adjusters were paid for their services, either under the normal fee schedule or under a set fee for claims adjusted according to the expedited claims handling processes introduced after Hurricane Katrina.  *See id.* at 19-20.

The GAO found that, "[t]o help keep pace with the volume of claims filed, FEMA approved expedited methods of claims processing that were unique to Hurricanes Katrina and Rita." *Id.* at 3; *see id.* at 13-14. According to the report,

> [i]n some circumstances where data showed that flood losses exceed policy limits, FEMA authorized claims payments to policy limits without site visits by certified flood claims adjusters or allowed the use of models that paid claims based on the square footage of the home and general classification by adjusters of the quality of its building materials (i.e., flooring and doors). FEMA authorized payments to its private insurance company partners of $750 per expedited claim adjustment – a lower fee than would have been paid for a more time-consuming room-by-room, line-item-by-line-item visual assessment of flood damage.
>
> *   *   *
>
> FEMA authorized claims adjustments without site visits where structures were washed off their foundations by flood waters and square foot measurements of the dwellings were known. While FEMA authorized the use of these approaches, the write-your-own companies made the decision on whether they wished to use expedited processes to adjust claims. In addition, FEMA authorized the use of a square foot measurement methodology for homes that had been flooded off their slabs, pilings, or posts. In those instances, damages could be calculated by a certified flood adjuster based on measurements of room dimensions and classification of building materials as high, medium, or low level, rather than a room-by-room, item-by-item calculation of loss amounts. FEMA authorized payments to its private insurance company partners of $750 per expedited clam adjustment – a lower fee than would have been paid for more time-consuming room-by-room, line-item-by-line-item visual assessment of flood damage.

*Id.* at 14, 34-35. Ultimately, roughly 11% of all Hurricane Katrina flood claims were adjusted using the expedited procedure. *See id.* at 35.

The GAO further stated that two large WYO insurance companies had received approval from FEMA to use square-foot estimates for damages for some claims, but that

> [b]ecause usage of the square footage method by the two companies with approved models was not carefully tracked during Hurricanes Katrina

15

and Rita, FEMA paid the same fee for square foot adjustments as it did for regular line-item-by-line-item adjustments that took longer to perform and required more extensive documentation.

*Id.* at 36.

State Farm next relies upon a June 12, 2007, article from *The Times-Picayune* newspaper that discussed the NFIP's "radical steps to streamline its claims handling process" following Hurricane Katrina. Ex. "A" [1634-1] at 2. The article noted questions were mounting about whether insurance companies used the program to overpay flood claims and thereby shift costs they would have otherwise borne for wind damage onto taxpayers. *See id.* The expedited procedures had removed claim documentation and adjuster training requirements and allowed companies "to pay a flood policy's limits if the house was gone or sat in standing water for an extended period of time," and permitted "companies to settle flood claims without a site visit if satellite and aerial images showed that the home disappeared in areas that suffered storm surge, or if the home sat in floodwaters and the damage was likely to have exceeded the policy limits." *Id.* at 3.

According to the article, FEMA also waived its line-by-line adjusting requirement for "two large but unnamed insurance companies to calculate damages." *Id.* at 4.

> Rather than require room-by-room, item-by-item calculation of insured losses, FEMA allowed flood adjusters with two large but unnamed insurance companies to calculate damages by measuring the square footage of each room and characterizing the building materials as high-, medium-, or low-grade, according to the GAO report.
>
> Those two large insurance companies probably made money off of that procedure. While FEMA scaled back the fee that private companies

earned for adjusting claims if satellite photos and house measurements on file made it likely that the home was a total loss, FEMA paid the same fees to companies for the easier square-foot adjustments that it paid for the detailed line-by-line adjustments.

Companies earned $750 for claims that were expedited using satellite photos but collected the full fee – 3.3 percent of the total claim or the amount listed on a fee schedule – when conducting square-footage adjustments, according to the GAO.

*Id.*

While neither the GAO report nor the article named the two "large" insurance companies, State Farm argues that it "was the largest and most easily identifiable WYO carrier in both Louisiana and Mississippi at the time of Hurricane Katrina." Mem. [1635] at 3 (citing Ex. "C" [1634-3] at 7, 21). To support its position, Exhibit "C" to State Farm's Motion [1634] contains excerpted testimony of United States Representative Bobby Jindal from the State of Louisiana and Mississippi Attorney General Jim Hood from a 2007 congressional hearing held on the insurance claims payment process following the 2005 hurricanes. *See* Ex. "C" [1634-3]. Then-Representative Jindal testified that State Farm is "the largest residential insurer in Louisiana" and "has 32 percent of the market," *id.* at 7, while Attorney General Hood reported that "State Farm has one-third of the policies along our [Mississippi] coastal area," *id.* at 21.

The Court must compare each of Relators' new allegations in Count One to these purported public disclosures identified by State Farm.

> (i)    Whether the alleged improper use of XacTotal was publicly disclosed

In their original Complaint [2] filed on April 26, 2006, Relators asserted that

State Farm instructed adjusters who initially found that a property had less damage under flood coverage than the flood policy limit to go back through the claim a second time to "hit limits," and that adjusters used XacTotal "as a shortcut to determine the amount of damage for a claim" in order to make the determination that there had been a "total flood loss even in homes that sustained moderate flood damage." Compl. [2] at 11-12; *see* Am. Compl. [16] at 16-17 (same).

Count One of the current Second Amended Complaint [1623], which was filed on April 30, 2020, charges that State Farm violated 31 U.S.C. § 3279(a)(1) (1994) by, in relevant part, by representing to FEMA that each property on the List incurred flood damage equal to or exceeding the limits of their flood policies when it did not perform the line-by-line estimates it was required to perform for all Category 3 homes. *See* 2d Am. Compl. [1623] at 25. Count One also asserts that State Farm submitted an express false certification for at least every property on the List by placing the long-form XacTotal report in the flood file when it had not performed a line-by-line estimate. *See id.* at 26. Relators assert that State Farm improperly used the expedited claims handling procedure under circumstances not permitted by FEMA and placed the long-form XacTotal report in the flood file in order to falsely certify that it had complied with W-5054, which was a prerequisite to payment by the Government. *See id.* at 25-26.

Although W-5054 outlined the expedited claims handling procedure allowed by FEMA for two categories of properties and required that a WYO's normal claims handling procedure was required for other properties, W-5054 did not publicly

disclose the conduct that Relators are alleging, that State Farm in fact improperly used expedited procedures for the third, catchall category.  *See* Ex. "D" [1634-4] at 2.[5]  Similarly, although the GAO report revealed that two large WYO companies were permitted to use an expedited claims handling procedure, it did not state that this procedure had been improperly used by State Farm or any other company.  *See* Ex. "B" [1634-2] at 2.

*The Times-Picayune* article, which appeared in 2007, discussed the GAO report and related that two large WYO companies were permitted to use expedited claims handling procedures, but it did not report that either company had in fact used expedited claims handling procedures on properties for which it was not allowed.  *See* Ex. "A" [1634-1] at 2.  Therefore, the Court cannot say that any of the foregoing sources publicly disclosed the allegations advanced by Relators that State Farm submitted an express false certification when it placed a long-form XacTotal report in a flood file for properties where it had not performed a line-by-line estimate.  *See* 2d Am. Compl. [1623] at 26.  The public disclosure bar is inapplicable as to these claims, and State Farm's Motion [1634] to Dismiss should be denied in part to this extent.

(ii)     Whether charging incorrect adjusting fees was publicly disclosed

State Farm also seeks dismissal of Relators' claim in Count One that it submitted an express false certification by sending bills or statements of withdrawal seeking payment for conducting line-by-line estimates under FEMA's

---

[5] The NFIP Adjuster Claims Manual speaks to adjuster participation in the NFIP and does not appear relevant to this particular claim.  *See* Ex. "E" [1634-5].

normal adjusting fee schedule when it had in fact used an expedited procedure for adjusting claims on Category 3 homes.  *See* 2d Am. Compl. [1623] at 26.  Under the expedited procedure, State Farm could only have requested the limited fee set forth in W-5054 ($750 + $400 for a site visit).  *See id.*

The NFIP Adjuster Claims Manual set forth the NFIP adjuster's service fee schedule.  *See* Ex. "E" [1634-5] at 12.  W-5054 was issued by FEMA on September 21, 2005, and as the Court has discussed, it permitted some expedited claims handling processes for properties in Categories 1 and 2.  See Ex. "D" [1634-4] at 2. W-5054 also modified the existing NFIP fee schedule for claims adjusted using the expedited process and provided that "[t]he fee will be $750.00 for each claim + $400.00 if a site visit is necessary at a later date."  *Id.*  However, "[p]rocess # 3 will be paid based upon the existing NFIP fee schedule."  *Id.*  Relators allege that, although State Farm used an expedited claims handling procedure for Category 3 properties, it nevertheless charged adjusting fees based upon the NFIP fee schedule for conducting lengthier, line-by-line estimates.  *See* 2d Am. Compl. [1623] at 26.

The December 2006 GAO report found that FEMA permitted WYO companies to use an expedited procedure under some circumstances and "authorized payments to its private insurance company partners of $750 per expedited claim adjustment – a lower fee than would have been paid for a more time-consuming room-by-room, line-item-by-line-item visual assessment of flood damage." Ex. "B" [1634-2] at 14.  The report also disclosed that two large, but unnamed, WYO companies developed models approved by FEMA to make square-

foot estimates.  *Id.* at 35.  However,

> [b]ecause usage of the square footage method by the two companies with
> approved models was not carefully tracked during Hurricanes Katrina
> and Rita, FEMA paid the same fee for square foot adjustments as it did
> for regular line-item-by-line-item adjustments that took longer to
> perform and required more extensive documentation.

*Id.* at 36.

*The Times-Picayune* article dated June 12, 2007, discussed the GAO report and noted that while "FEMA scaled back the fee that private companies earned for adjusting claims if satellite photos and house measurements on file made it likely that the home was a total loss," it "paid the same fees to companies for the easier square-foot adjustments that it paid for the detailed line-by-line adjustments."  Ex. "A" [1634-1] at 4.  While the two companies were not named in the GAO report or in the article, State Farm has presented evidence that it argues demonstrates that it "was the largest and most easily identifiable WYO carrier in both Louisiana and Mississippi at the time of Hurricane Katrina."  Mem. [1635] at 3 (citing Ex. "C" [1634-3] at 7, 21); *see* Ex. "C" [1634-3] at 7 (then-Representative Jindal stating that State Farm is "the largest residential insurer in Louisiana" and "has 32 percent of the market") & 21 (then-Mississippi Attorney General Hood representing that "State Farm has one-third of the policies along our [Mississippi] coastal area.").

State Farm reasons that, read together, the foregoing publicly available sources disclosed Relators' current claim that State Farm improperly sought payment for conducting line-by-line estimates under FEMA's normal adjusting fee schedule when it had used an expedited procedure.  *See* 2d Am. Compl. [1623] at 26.

Having carefully compared the public disclosures with Relators' allegations in the Second Amended Complaint [1623], the Court finds that that there had been a public disclosure of the allegations regarding the charging of improper adjustment fees before Relators filed their Second Amended Complaint. The Court next considers whether this claim is "based upon" those public disclosures.

b.  Whether the improper adjusting fee claim in the Second Amended Complaint is "based upon" the public disclosures

Under Fifth Circuit precedent, once a defendant has identified public disclosures that could plausibly be the source of an FCA claim, a relator "must produce evidence sufficient to show that there is a genuine issue of material fact as to whether his action was based on those public disclosures." *Solomon*, 878 F.3d at 144 (quotation omitted). An FCA complaint is based upon public disclosures "if one could have produced the substance of the complaint merely by synthesizing the public disclosures' description of the . . . scheme." *Id.* (quotation omitted). The public disclosures must "provide specific details about the fraudulent scheme and the types of actors involved in it sufficient to set the government on the trail of the fraud." *Id.* (quotation omitted).

The Fifth Circuit has adopted the test utilized the United States Court of Appeals for the District of Columbia Circuit to evaluate whether public disclosures contain sufficient indicia of an FCA violation to bar a subsequently filed complaint. *See id.*; *see also United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). Under this approach, "the combination of X and Y must be revealed, from which the readers or listeners may infer Z," that is, an inference of

fraud under the FCA.  *Solomon*, 878 F.3d at 144 (quotation omitted).  "X and Y are two required elements for the inference: 'a misrepresented state of facts *and* a true state of facts.'"  *Id.* (quoting *Springfield Terminal*, 14 F.3d at 655) (emphasis in original).  "The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud."  *Id.* (quoting *Springfield Terminal*, 14 F.3d at 655).

The question is not whether the public disclosures expressly allege fraud, but "whether the relator *could have* synthesized an inference of fraud from the public disclosures."  *Id.* at 145 (emphasis in original).  In other words, a court must consider whether public disclosures "comprise both the misrepresented state of facts (X) and the true state of facts (Y) for an inference of an FCA violation (Z)."  *Id.* Public disclosures are sufficient "if they provide details such that the defendant's misconduct would have been readily identifiable and furnish evidence of the fraudulent scheme alleged."  *Id.* at 145-46 (quotation omitted).

In the present case, even if the public disclosures did not expressly allege fraud with respect to the adjusting fees, the Court is persuaded that Relators could have synthesized an inference of fraud from the publicly available information regarding adjusting fees.  *See Solomon*, 878 F.3d at 145.  The so-called "X" (the misrepresented state of facts) was that State Farm allegedly misrepresented to FEMA that it had performed line-by-line estimates on certain properties by requesting payment under the normal fee schedule, when in fact it had not done so; the "Y" (or the true state of facts) is that State Farm instead performed an

expedited claims handling procedure on certain claims and was only due the lesser flat adjusting fee contemplated by W-5054; and the "Z" (the inference of an FCA violation) was that State Farm allegedly misrepresented or certified by its request for payment under the normal fee schedule for expedited claims that it had performed line-by-line adjustment when it had not. *See* 2d Am. Compl. [1623] at 26.

The public disclosures identified by State Farm, including the NFIP Adjuster Claims Manual, W-5054, the GAO report, the newspaper article, and the testimony identifying State Farm as a very large WYO company for flood policies in in Mississippi and Louisiana, publicly revealed sufficient details such that State Farm's alleged misconduct would have been readily identifiable, and these publicly available disclosures furnished sufficient information from which one could synthesize the fraudulent scheme regarding State Farm requesting overpayment for its adjusting of claims for which it had used the expedited process. *See Solomon*, 878 F.3d at 145-46; *see also* Ex. "E" [1634-5] at 12; Ex. "D" [1634-4] at 2; Ex. "C" [1634-3] at 7, 21; Ex. "B" [1634-2] at 14; Ex. "A" [1634-1] at 4.

The disclosures provided specific details about the alleged fraudulent scheme as well as the types of actors involved, which would have been "sufficient to set the government on the trail of the fraud," *Solomon*, 878 F.3d at 144 (quotation omitted), and Relators have not produced evidence sufficient to show that there is a genuine issue of material fact as to whether their adjusting fee claim was based on these public disclosures, *see id.* For these reasons, Relators' claim in Count One that State Farm submitted an express false certification by sending bills or statements

seeking payment for conducting line-by-line estimates under FEMA's normal fee schedule when it had used an expedited adjusting procedure is "based upon" the public disclosures. *See* 31 U.S.C. § 3730(e)(4)(A) (2006). The Court must therefore consider whether Relators qualify as the "original source" of this information.

      c.    <u>Whether Relators are the "original source" of the information</u>

Even if an FCA complaint is based upon public disclosures, it may proceed if the relator is the original source of the information. *See Solomon*, 878 F.3d at 146. The Fifth Circuit uses a

> two-part test in determining the original source exception: (1) the relator must demonstrate that he or she has direct and independent knowledge of the information on which the allegations are based and (2) the relator must demonstrate that he or she has voluntarily provided the information to the Government before filing his or her qui tam action.

*Id.* (quotation omitted). This is a conjunctive test, meaning a negative answer to either prong requires dismissal of the FCA claim. *See id.* Because the party invoking federal jurisdiction bears the burden of establishing that jurisdiction is proper, it is "Relators' burden to show that they qualified under the original source exception; otherwise, the public disclosure bar 'strips' the court of subject matter jurisdiction." *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 325 (5th Cir. 2017).

Under the first part of the test, knowledge is "direct" if it is "derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others," while knowledge is "independent" only if "it is not derived from the public disclosure." *Id.* at 147

(quotations omitted).  In evaluating whether a relator has direct and independent

knowledge, a court

> must look to the factual subtleties of the case before [it] and attempt to
> strike a balance between those individuals who, with no details
> regarding its whereabouts, simply stumble upon a seemingly lucrative
> nugget and those actually involved in the process of unearthing
> important information about a false or fraudulent claim.

*Rigsby*, 794 F.3d at 473.  Under this standard, a relator is not required to have

direct and independent knowledge of each false claim alleged in the complaint, but

she "is simply required to possess direct and independent knowledge of the

information on which the publicly disclosed allegations are based."

*United States ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d

168, 177 (5th Cir. 2004).

In this case, Relators have not pointed to evidence sufficient to demonstrate

that they possessed direct and independent knowledge of the information on which

the publicly disclosed allegations regarding the adjustment fees are based.  *See id.*[6]

As State Farm points out in its Memorandum, *see* Mem. [1635] at 18-19, Relators'

earlier Amended Complaint [16] alleged, or at least implied, that the percentage-

based fee schedule applied to the adjustment of all of State Farm's flood claims, *see*

---

[6] The evidence supplied by Relators in opposition to State Farm's Motion [1634] includes
Kerri Rigsby's Declaration, *see* Ex. "A" [1654-1], and correspondence between Relators'
counsel and the United States Department of Justice concerning the filing of the Second
Amended Complaint, *see* Ex. "B" [1654-2]; Ex. "C" [1654-3].  None of these documents
evidence any direct and independent knowledge regarding the adjustment fees.  Kerri
Rigsby's Declaration instead focuses on adjusters allegedly being told that Hurricane
Katrina was a "water storm," on explaining the "shortcut adjusting program" that State
Farm used, and on adjusters being instructed to manipulate that program in order to "hit
the limits" on the flood claims.  Ex. "A" [1654-1] at 2-3.  None of the evidence submitted
refers to the adjusting fees State Farm was charging for each claim.

Am. Compl. [16] at ¶¶ 61, 101-07.  For example, Relators' assertion that State

Farm's instruction to E.A. Renfroe, Inc.'s contract adjusters to "hit the limits" "was

a *quid pro quo* to E. A. Renfroe for its compliance with the flood-fraud scheme in

that adjusting costs paid to State Farm under the Flood Insurance Program are

linked directly to the amount of damage paid to the insurer."  *Id.* at ¶ 61.  This

implied that adjusters received a percentage-based fee for every flood claim.  *See id.*

If there were flat rate adjusting fees, non-State Farm adjusters would have no

financial incentive to maximize flood damage.  *But see id.*

        The record reflects that Relators have not submitted any evidence that they

were even aware at the time they filed their Amended Complaint [16] that WYO

insurers such as State Farm were supposed to be paid a lesser, flat fee for adjusting

flood claims for properties in Categories 1 and 2, rather than the normal percentage

they received under the regular fee schedule.  Until Relators' most recent pleading,

which was filed approximately 14 years after their original Complaint, they never

referenced this issue or the $750.00 flat fee.  Because Relators have not

demonstrated that they have direct and independent knowledge of the information

on which the allegations regarding the fees State Farm charged for adjusting claims

are based, the public disclosure bar applies to this particular claim, and it must be

dismissed.  *See Solomon*, 878 F.3d at 146.

        In sum, State Farm's Motion [1634] to Dismiss will be granted in part to the

extent it seeks dismissal of Relators' claim in Count One of the Second Amended

Complaint that State Farm submitted an express false certification by sending bills

or statements seeking payment for adjusting fees for conducting line-by-line estimates under FEMA's normal fee schedule when it had in fact used an expedited procedure, entitling it only to seek a lesser fee.  *See* 2d Am. Compl. [1623] at 26. This claim is subject to the public disclosure bar and should be dismissed for lack of jurisdiction.  *See* 31 U.S.C. § 3730(e)(4) (2006).

State Farm's Motion [1634] will otherwise be denied in part as to Relators' claims in Count One that State Farm submitted express and implied false certifications when it placed a long-form XacTotal report in a flood file for properties where it did not perform a line-by-line estimate, and these claims will proceed.  *See* 2d Am. Compl. [1623] at 26.

B.     State Farm's Motion [1632] to Dismiss for failure to state a claim

1.     The parties' positions

State Farm asks the Court to dismiss Relators' Second Amended Complaint [1623] pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 10(b), and 12(b)(6). *See* Mot. [1632] at 1.  It asserts that Relators' new claims and theories of liability are time-barred, *see* Mem. [1633] at 4, 6-8 (citing 31 U.S.C. § 3731(b)), that the Second Amended Complaint [1623] fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud claims, *see id.* at 4-5, 8, and that it does not state a claim for false certification liability because it does adequately allege the essential elements of such a claim, *see id.* at 5, 10-18.

State Farm further contends that Relators have not adequately pled the scienter requirement for their false certification theory in light of ambiguity

concerning whether W-5054 was intended as a mandate, *id.* at 5-6, 19-20, and that the Second Amended Complaint [1623] violates Rule 10(b) because each claim must be stated in a separate count, *see id.* at 6, 21-22 (citing Fed. R. Civ. P. 10(b)). Alternatively, if Relators' claims are not fully dismissed, State Farm asks the Court to require a more definite statement pursuant to Rule 12(e).  *See* Mot. [1632] at 1.

Relators counter that State Farm's use of XacTotal when not permitted and its failure to perform required line-by-line damage estimates has been part of their theory for how State Farm shifted liability for wind damage to the NFIP since the inception of this case.  *See* Mem. [1653] at 3-4.  Relators point out that State Farm has represented to the Court in previous filings on discovery matters that (1) Relators' claims regarding XacTotal and the failure to perform line-by-line estimates when required were part of the same scheme Relators have alleged since 2006, *see id.* at 4-5, (2) they pled State Farm's failure to perform required line-by-line estimates in the Second Amended Pretrial Order [1081], *see id.* at 5, and (3) the Fifth Circuit has previously held that Relators proved State Farm's improper use of XacTotal in violation of W-5054 at the McIntosh trial, *see id.* at 5-7.

According to Relators, while they have no obligation to plead legal theories of falsity, they did so in the Second Amended Complaint out of an abundance of caution.  *See id.* at 7-8.  Because Relators' false certification theories of liability are based upon the same schemes they pled in their original Complaint, these relate back to the original pleading and are not barred by the statute of limitations.  *See id.* at 9-13.  Relators also maintain that they have adequately pled their claims,

including the element of scienter.  *See id.* at 13-35.

In its Rebuttal [1659], State Farm takes the position that Relators have failed to address the dispositive issue:  "whether the false certification claims, as pled in the [Second Amended Complaint], satisfy the rigorous pleading requirements demanded by the Supreme Court in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995-96 (2016)."  Rebuttal [1659] at 1. Specifically, State Farm asserts that the Second Amended Complaint does not adequately identify any qualifying "certification," either express or implied, that it does not plausibly plead materiality and State Farm's knowledge of materiality, and that State Farm's "reasonable interpretation" of an ambiguous legal requirement defeats FCA scienter.  *See id.* at 1-11.

State Farm further contends that the statute of limitations bars the new false certification allegations because these claims are new and different, and State Farm was not on notice of them prior to the date the statute of limitations expired.  *See id.* at 11-12.  Additionally, State Farm argues that any allegations involving properties beyond the 501 on the List should be dismissed, and that the Second Amended Complaint fails as a whole because Relators have asserted that their false certification claims are core and central to the wind versus flood scheme.  *See id.* at 12-13.

2.    Relevant legal authority

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim that is plausible on its face."  *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 783-84 (5th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] all well-pleaded facts as true and review[ ] them in the light most favorable to the plaintiff."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010).  Allegations of fraud must also satisfy Rule 9(b)'s heightened pleading standard, "under which plaintiffs must state with particularity the circumstances of the allegedly fraudulent conduct."  *Id.* at 784 (quotation omitted).  This requirement applies to a complaint filed under the FCA. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

"An otherwise plausible claim may also be doomed by a procedural impediment, like a statute of limitations or similar bar."  *Stringer v. Town of Jonesboro*, 986 F.3d 502, 506 (5th Cir. 2021) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003)).  According to the Fifth Circuit, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's

pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones*, 339 F.3d at 366.

3.   Analysis

a.   State Farm's statute of limitations argument

State Farm takes the position that Count One's new claims and theories of liability are untimely. *See* Mem. [1633] at 2-4, 6-8 (citing 31 U.S.C. § 3731(b)). It argues that Relators are attempting to recast this case by adding to the Second Amended Complaint "two never-before-pled sets of allegations (W-5054 procedures compliance and adjustment fee compliance) under two never-before-pled theories of FCA liability (express and implied false certification)," but that these claims are time-barred under the applicable statute of limitations. *Id.* at 3. Relators counter that their false certification theories are based upon the same schemes pled in their original Complaint and that these relate back to the original pleading, making them timely. *See* Mem. [1653] at 9-13.

Count One of the Second Amended Complaint advances both express and implied false certification claims. *See* 2d Am. Compl. [1623] at 25-28. It alleges that State Farm submitted an implied false certification that it had performed a line-by-line estimate for all Category 3 homes, as required by W-5054, when in fact it had not done so, *see id.* at 25, and that State Farm submitted an express false certification for at least every property on the List by placing the long-form XacTotal report in the flood file when it had not performed a line-by-line estimate, *see id.* at 26. Relators assert that State Farm improperly used the expedited claims

handling procedure under circumstances not permitted by FEMA and placed the

long-form XacTotal report in the flood file in order to falsely certify that it had

complied with W-5054, which was a prerequisite to payment by the Government.

*See id.* at 25-26.[7]

The FCA provides that

[a] civil action under section 3730 may not be brought--
(1)     more than 6 years after the date on which the violation of section
        3729 is committed, or
(2)     more than 3 years after the date when facts material to the right
        of action are known or reasonably should have been known by the
        official of the United States charged with responsibility to act in
        the circumstances, but in no event more than 10 years after the
        date on which the violation is committed,
whichever occurs last.

31 U.S.C. § 3731(b).

The Supreme Court has explained that the FCA sets forth two limitations

periods applicable to the presentation of false claims to the Government.  *Cochise*

*Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019).

The first period requires that the action be brought within 6 years after
the statutory violation occurred.  The second period requires that the
action be brought within 3 years after the United States official charged
with the responsibility to act knew or should have known the relevant
facts, but not more than 10 years after the violation.  Whichever period
provides the later date serves as the limitations period.

*Id.*

Under Federal Rule of Civil Procedure 15(c)(1),

[a]n amendment to a pleading relates back to the date of the original

---

[7]  The Court has already determined that the public-disclosure bar precludes Relators'
other new claim in Count One that State Farm submitted an express false certification by
sending bills or statements seeking payment for adjusting fees for conducting line-by-line
estimates when it had instead used an expedited procedure.

pleading when:
(A)    the law that provides the applicable statute of limitations allows relation back; [or]
(B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading . . . .

Fed. R. Civ. P. 15(c)(1)(A)-(B).  Here, Relators appear to rely on Rule 15(c)(1)(B), arguing that their false certification theories are based upon the same schemes they pled in their original Complaint.  *See* Mem. [1653] at 9-13.[8]

At least one circuit court of appeals has applied Rule 15(c)(1)(B) to amended complaints filed under the FCA to evaluate whether claims were filed within the applicable statute of limitations.  *See, e.g., United States v. Kaplan, Inc.*, 517 F. App'x 534, 536 (9th Cir. 2013) (finding some of relator's allegations in the fourth amended complaint were barred by FCA's statute of limitations because they did not arise "out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading") (quoting Fed. R. Civ. P. 15(c)(1)(B)); *see also, e.g., United States ex rel. Woodard v. DaVita, Inc.*, No. 1:05-CV-227, 2010 WL 11531271, at *14 (E.D. Tex. Dec. 21, 2010) (collecting cases).  Nor has State Farm argued that this Rule does not apply to FCA claims.  The Court will therefore consider whether Relators' new false certification allegations relate back to their original or first

---

8  *But see* Mem. [1653] at 10 (referring to Rule 15(c)(2) in parenthetical to Fifth Circuit case citation). Rule 15(c)(2) concerns notice to the United States when it or a United States officer or agency is added as a defendant by amendment, *see* Fed. R. Civ. P. 15(c)(2), which is not applicable here. Additionally, the case cited by Relators actually considered whether an amendment related back under Rule 15(c)(1).  *See Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 440 (5th Cir. 2019).  The Fifth Circuit's reference to Rule 15(c)(2) was in a parenthetical to a case cite in a footnote considering relation back under Rule 15(c)(2), but supporting the Fifth Circuit's conclusion that the district court was not prohibited from considering sources beyond the pleadings in its relation-back analysis conducted under Rule 15(c)(1).  *See id.* at 442 n.21 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516-18 (6th Cir. 2007)).

Amended Complaints.

It is beyond dispute that Relators' Amended Complaint [16] was filed on May 22, 2007, within the statute of limitations. *See* 31 U.S.C. § 3731(b). The Second Amended Complaint [1623] was filed nearly 15 years after Hurricane Katrina struck the Gulf Coast in 2005. The question presented is whether Relators' purportedly new false certification claims in Count One of the Second Amended Complaint [1623] "arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the [Amended Complaint]." Fed. R. Civ. P. 15(c)(1)(B). State Farm takes the position that Count One's false certification theories of liability are new and untimely.

Count One alleges in relevant part that State Farm (1) submitted an implied false certification for at least every property on the List when it represented to FEMA that each property incurred flood damage equal to or exceeding the SFIP flood limits because State Farm was required to perform line-by-line estimates for each, but did not do so; (2) submitted an express false certification for at least every property on the List by placing the long-form XacTotal report in the flood file when it did not perform a line-by-line estimate; and (3) submitted an express false certification by sending bills or statements of withdrawal seeking payment for conducting line-by-line estimates under FEMA's normal adjusting fee schedule when it had used an expedited procedure. *See* 2d Am. Compl. [1623] at 25-28. The Court has already concluded that the third of these claims is subject to the public-disclosure bar and should be dismissed for lack of jurisdiction under 31 U.S.C.

§ 3730(e)(4) (2006), mooting State Farm's Motion [1633] to Dismiss as to that claim.[9]

The first two false certification claims both relate to the purported requirement that State Farm use a line-by-line methodology for calculating flood damage to properties in the catchall Category 3 of homes described in W-5054, as opposed to employing an expedited procedure such as State Farm's XacTotal program. *See* 2d Am. Compl. [1623] at 25-28. Similarly, the premise of Relators' FCA claims in their earlier Amended Complaint was that, instead of utilizing a line-by-line methodology,

> [a]djusters used a computer program designed by State Farm known as "XACT Total" [sic] as a shortcut to determine the amount of damage for a claim. XACT Total [sic] was used to make determinations of total flood loss even in homes that sustained moderate flood damage.

Am. Compl. [16] at 17; *see also Rigsby*, 794 F.3d at 464 ("[F]oregoing a line-by-line estimate, [adjusters] presumed that flooding was the primary cause of damage to [the McIntosh] home."). The Court is satisfied that these allegations form the basis of the first two false certification claims in Count One of the Second Amended

---

[9] Even if the Court had not dismissed the third claim, it would nevertheless conclude that it is barred by the statute of limitations. Relators assert that State Farm submitted an express false certification by sending bills or statements seeking payment for conducting line-by-line estimates under FEMA's normal adjusting fee schedule when it had used an expedited procedure. *See* 2d Am. Compl. [1623] at 29. But this did not arise out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the Amended Complaint or any other earlier pleading filed in this case. *See* Fed. R. Civ. P. 15(c)(1)(B). It is an entirely new factual and legal claim. While Relators' earlier pleadings discussed adjusters' actions in adjusting Hurricane Katrina claims and the impact this had on the size of the resulting flood claims submitted to the Government for payment, there were no allegations regarding the payments billed for the adjuster's services themselves. This is clearly a new claim presented for the first time in the Second Amended Complaint [1623], and it does not relate back to any earlier pleading for statute-of-limitations purposes. *See id.*

Complaint, that State Farm was required to perform line-by-line estimates for each

property on the List, but did not.

In the appeal in this case, the Fifth Circuit considered the question of the

falsity of the McIntosh claim under §§ 3729(a)(1) and 3729(a)(1)(B), and observed

that

> [t]he parties dispute whether State Farm's alleged violation of FEMA
> directive W5054 can independently support the jury's verdict. State
> Farm contends that compliance with W5054 was not an express
> condition or prerequisite for payment of the claim. *See U.S. ex rel.*
> *Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) ("Not
> every breach of a federal contract is an FCA problem. We have thus
> repeatedly upheld the dismissal of false-certification claims (implied or
> express) when a contractor's compliance with federal statutes,
> regulations, or contract provisions was not a 'condition' or 'prerequisite'
> for payment under a contract."). The Rigsbys contend that this is not a
> false certification case that would require concluding that compliance
> with W5054 was a prerequisite for payment of a claim. Even were we
> to agree with State Farm that compliance with W5054 must be a
> prerequisite for payment in this context, FEMA regulations emphasize
> that WYO insurers "shall comply with written standards, procedures,
> and guidance issued by FEMA." 44 C.F.R. pt. 62, app. A, art. II(G)(1);
> *see also* 44 C.F.R. pt. 62, app. A, art. II(A)(2) ("Companies will also be
> required to comply with . . . guidance authorized by . . . [FEMA].").
> Additionally, directive W5054 itself states that the "NFIP's general
> adjusters will be involved in closely monitoring the performance and
> procedures of the WYO carriers utilizing this process," signifying that
> FEMA took compliance seriously. Finally, FEMA officials testified that
> line-by-line estimates were in fact a prerequisite to payment under the
> NFIP.

*Rigsby*, 794 F.3d at 478 n.14.

It is clear from the Amended Complaint and the Fifth Circuit's opinion that

the central theme of Relators' FCA claims has always been that State Farm

improperly used an expedited procedure, namely XacTotal, rather than a line-by-

line estimate for certain properties, and by doing so, improperly foisted the cost of

privately-covered wind damage from Hurricane Katrina upon the federal fisc in violation of the FCA. The assertions in Count One of the Second Amended Complaint that State Farm was required to perform line-by-line estimates for each property on the List, but instead, placed the long-form XacTotal report in the flood file in order to make it appear as though it had actually conducted the required line-by-line estimate, stem from Relators' earlier contentions concerning line-by-line estimates as a prerequisite for payment of SFIP claims. The Court concludes that the first two false certification claims in Count One of the Second Amended Complaint arise out of the same conduct, transaction, or occurrence set out, or attempted to be set out, in the Amended Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B). These two claims therefore relate back to Relators' earlier pleadings, and they are not barred by the statute of limitations. *See* 31 U.S.C. § 3731(b).

b.   <u>State Farm's argument that Relators have failed to adequately plead their fraud claims</u>

State Farm next contends that Count One fails to meet the heightened pleading requirement for fraud claims under Rule 9(b), *see* Mem. [1633] at 4-5, 8, and that it does not state a claim for false certification liability because it does adequately allege the essential elements of such a claim, *see id.* at 5, 10-18. State Farm further posits that Relators have not adequately pled the scienter requirement for a false certification claim in light of what it contends is ambiguity concerning whether W-5054 was intended as a mandate. *See id.* at 5-6, 19-20.

The Fifth Circuit has explained that "FCA claims can be either legally false or factually false." *United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368,

373 (5th Cir. 2016).  An FCA claim is factually false "when the information provided
to the government for reimbursement is inaccurate."  *Id.*  In contrast, "[a] claim is
legally false when a claimant falsely certifies compliance with a statute or
regulation."  *Id.* (quotation omitted).  Count One advances both factually false and
legally false claims in violation of 31 U.S.C. § 3279(a)(1) (1994).  *See* 2d Am. Compl.
[1623] at 25-28.

"Claims brought under the FCA must comply with Rule 9(b)," which at a
minimum "requires that a plaintiff set forth the 'who, what, when, where, and how'
of the alleged fraud."  *United States ex rel. Thompson v. Columbia/HCA Healthcare
Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Although the Fifth Circuit has held that
"fraud may be pled on information and belief under such circumstances, [it has] also
warned that this exception must not be mistaken for license to base claims of fraud
on speculation and conclusory allegations."  *Id.*  "[E]ven where allegations are based
on information and belief, the complaint must set forth a factual basis for such
belief."  *Id.*

Rule 9(b) "does not reflect a subscription to fact pleading and requires only
simple, concise, and direct allegations of the circumstances constituting fraud,
which after *Twombly* must make relief plausible . . . when taken as true."  *Grubbs*,
565 F.3d at 186.  It requires that "the circumstances of fraud be pled with
particularity."  *Id.* at 188.  The Fifth Circuit has cautioned that "the 'time, place,
contents, and identity' standard is not a straitjacket for Rule 9(b).  Rather, the rule
is context specific and flexible and must remain so to achieve the remedial purpose

of the False Claim Act." *Id.* at 190.

      (i)     Relators' express false certification claim in Count One

Relators' remaining express false certification claim is that State Farm submitted an express false certification for at least every property on the List by placing the long-form XacTotal report in the flood file when it did not perform a more detailed line-by-line estimate. *See* 2d Am. Compl. [1623] at 26.

The Fifth Circuit has recognized that "where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *Thompson,* 125 F.3d at 902. However, "false certifications of compliance create liability only when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quotation omitted).

> [W]hen payment is not conditioned on a certification of compliance, it is not fair to infer such certification from a mere request for payment. Similarly, even if a contractor falsely certifies compliance (implicitly or explicitly) with some statute, regulation, or contract provision, the underlying claim for payment is not "false" within the meaning of the FCA if the contractor is not required to certify compliance in order to receive payment . . . .  In short, a false certification of compliance, without more, does not give rise to a false claim for payment unless payment is conditioned on compliance.

*United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 269 (5th Cir. 2010).

The express false certification claim in Count One is that "[e]very so-called long form XacTotal report that State Farm placed in a flood file when it did not

perform a line-by-line estimate for that claim is a false certification of compliance with W-5054." 2d Am. Compl. [1623] at 26. According to the Second Amended Complaint, performing a line-by-line estimate was an actual prerequisite for payment. *Id.* at 25.

Taking the allegations in the Second Amended Complaint [1623] as true, as the Court must at this stage, Relators have stated with sufficient particularity an actual certification to the Government that was a prerequisite to obtaining a Government benefit. Relators have also identified all 501 of the properties on the List as ones where State Farm purportedly expressly certified its compliance with federal requirements for line-by-line adjustments for SFIP claims. While the evidence might ultimately contradict Relators' allegations concerning the fact that certification of compliance was a prerequisite for payment, at this stage the Court must accept the allegations in the Second Amended Complaint [1623] as true.[10] Doing so, Relators have adequately alleged with sufficient particularity their express false certification claim. State Farm's Motion to Dismiss should be denied with respect to this claim.

---

[10] The Court notes that, in the earlier appeal in this case, the Fifth Circuit considered arguendo whether compliance with W-5054 was an express condition or prerequisite for payment and recognized that

> FEMA regulations emphasize that WYO insurers "shall comply with written standards, procedures, and guidance issued by FEMA." 44 C.F.R. pt. 62, app. A, art. II(G)(1); *see also* 44 C.F.R. pt. 62, app. A, art. II(A)(2) ("Companies will also be required to comply with . . . guidance authorized by . . . [FEMA]."). Additionally, directive W5054 itself states that the "NFIP's general adjusters will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing this process," signifying that FEMA took compliance seriously. Finally, FEMA officials testified that line-by-line estimates were in fact a prerequisite to payment under the NFIP.

*Rigsby*, 794 F.3d at 478 n.14.

(ii)     Relators' implied false certification claim in Count One

Here, Relators assert that State Farm submitted an implied false certification for at least every property on the List when it represented to FEMA that each property incurred flood damage equal to or exceeding the limits of the applicable SFIP because State Farm was required to perform line-by-line estimates for each property, yet did not.  *See* 2d Am. Compl. [1623] at 25.

In 2016, the Supreme Court concluded that the FCA prohibits implied false certifications.  *See Escobar*, 136 S. Ct. at 1999.  *Escobar* held that, "[b]y punishing defendants who submit 'false or fraudulent claims,' the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions."  *Id.*  According to the Fifth Circuit, *Escobar* "made clear that defendants could be liable under the FCA for violating statutory or regulatory requirements, whether or not those requirements were designated in the statute or regulation as conditions of payment."  *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159-60 (5th Cir. 2019).

"[H]alf-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations."  *Escobar*, 136 S. Ct. at 2000.

> [T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied:  first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Id.* at 2001.

Evidence relevant to the materiality analysis under *Escobar* can include the following:

> (1) "the Government's decision to expressly identify a provision as a condition of payment" and (2) "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." Moreover, (3) materiality "cannot be found where noncompliance is minor or insubstantial."

*Lemon*, 924 F.3d at 160 (quoting *Escobar*, 136 S. Ct. at 2003). While the violation of a requirement labeled as a condition of payment does not conclusively establish materiality, "it is certainly probative of materiality." *Id.* at 161 (quotation omitted).

Relators plead that "State Farm made specific representations to support its claim on the government's fisc when it represented to FEMA that each property [on the List] incurred flood damage equal to or exceeding the limits of their SFIP policies." 2d Am. Compl. [1623] at 25. The Second Amended Complaint alleges that those misrepresentations were misleading in context because, while State Farm was required to ascertain the amount of flood damage by performing line-by-line estimates for all Category 3 homes, it did not do so. *Id.* Relators maintain that "[a]ny person at FEMA reviewing the NFIP flood payment 'would probably—but wrongly—conclude that' State Farm had performed the requisite line-by-line estimate." *Id.* (quoting *Escobar*, 136 S. Ct. at 2000). Relators claim that the line-by-line estimates were an actual prerequisite for payment, but that State Farm never disclosed to FEMA its failure to comply with W-5054 and never obtained permission to forego its requirements. *See id.* at 25-26 (citing *Rigsby*, 794 F.3d at

478 n.14).

In light of the foregoing, and having reviewed the allegations in the Second Amended Complaint [1623], the Court concludes that it contains sufficient factual matter which, if taken as true, might lead a reasonable jury to conclude that State Farm made implied false certifications in violation of the FCA. At this stage, Relators have plausibly and sufficiently alleged their implied false certification claims.

c. State Farm's request to dismiss Count Two

State Farm also seeks dismissal of Count Two of the Second Amended Complaint, which claims that State Farm violated 31 U.S.C. § 3729(a)(1)(B) (2009) by knowingly making false records and statements material to false or fraudulent claims for payment. *See* Mem. [1633] at 20; *see also* 2d Am. Compl. [1623] at 28-30. State Farm contends that, while Count Two purports to impose liability for false statements under § 3729(a)(1)(B), no such FCA liability exists in the absence of a false claim. *See id.* Because State Farm maintains that Count One should be dismissed, it argues that Count Two should likewise be dismissed. *See* Mem. [1633] at 20.

The Court will not dismiss all of Relators' claims in Count One. State Farm's argument that Count Two should necessarily be dismissed is therefore unavailing, and its request to dismiss Count Two will be denied.

d. Relators' attempt to plead claims beyond the list

State Farm next asserts that any attempt to raise claims beyond the 501 on

the List constitutes impermissible speculative pleading in violation of Rule 8(a).

*See* Mem. [1633] at 21.  State Farm points to Relators' use of the word "possible" in

paragraph 76 of the Second Amended Complaint.  *See id.*  Relators respond that

they have repeatedly stated that the claims on the List "do not encompass the full

scope of [State Farm's] fraud and provided additional, specific details of the List's

under-inclusiveness in the [Second Amended Complaint.]"  Mem. [1653] at 3.

According to Relators, "State Farm's desire to limit the scope of judicial inquiry into

its fraud does not render [their] allegations speculative."  *Id.*; *see also id.* at 32-33.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6),

"[f]actual allegations must be enough to raise a right to relief above the speculative

level, . . . on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)."  *Twombly*, 550 U.S. at 555.  A complaint's allegations, when

taken as true, must make relief plausible, not merely conceivable.  *See Walker v.*

*Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

Paragraph 76 appears in the "General Allegations" section of the Second

Amended Complaint and, in its entirety, reads as follows:

> State Farm submitted a false claim every time it certified compliance
> with a line-by-line estimate requirement with which it did not comply.
> It is entirely possible that State Farm failed to conduct a line-by-line
> estimate of a Category 3 home yet still did not pay the flood insurance
> policy limits on that claim (*e.g.*, where a home's insured value far
> exceeded its replacement cost).  Such claims would not appear on State
> Farm's List, yet would fall within the scope of State Farm's scheme.

2d Am. Compl. [1623] at 16.  Relatedly, Count One advances claims for implied false

certifications and express false certifications for "*at least* every property on the

List." *Id.* at 25, 26 (emphasis added).

The parties' arguments on this issue go more to the Court's previous rulings on the scope of discovery in this case.  This Court has repeatedly stated that the initial scope of discovery as to Relators' claims will be limited to the 501 Hurricane Katrina insurance claims on the properties identified on the List.  *See, e.g.,* Order [1323] at 3; *see also United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* 794 F.3d 457, 470 (5th Cir. 2015), *aff'd,* 137 S. Ct. 436 (2016) ("We are sympathetic to the district court's fear of unconstrained discovery.  To that end, a reasonable place to begin would be to allow the Rigsbys access to a list that State Farm already prepared in response to the district court's request to review in camera certain materials in its August 10, 2009, order.").  The Court has made no determination at this time whether this initial scope of discovery may later be expanded or restricted. *See id.*  As the Court stated in its May 12, 2017, Order [1317], "[o]nce discovery commences, the Magistrate Judge will be able to resolve any particularized discovery disputes that may arise as to specific potential claims on the List." *Id.* State Farm's Motion to Dismiss on this point is not well taken and will be denied.

> e.    Relators' purported violation of Rule 10(b)

State Farm contends that the Second Amended Complaint [1623] violates Rule 10(b) which requires that each claim be stated in a separate count. *See* Mem. [1633] at 6, 21-22 (citing Fed. R. Civ. P. 10(b)).  Relators respond that the theories advanced in Count One that State Farm claims are disparate "in fact are just explanations – grounded in precedent – for how the facts alleged violated *the same*

*statutory provision.*"  Mem. [1653] at 33-34.  They maintain that they "have no

obligation to plead different theories of recovery under the same statutory provision

as separate counts."  *Id.* at 34.

> Rule 10(b) concerns the form of the pleadings and states that

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  *If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.*

Fed. R. Civ. P. 10(b) (emphasis added).

"Rule 10(b) does not make it necessary to use separate counts to state

different theories of recovery or to seek relief under separate statutory provisions,

although the pleader may choose to do so for clarity or out of caution."  5A Fed.

Prac. & Proc. Civ. § 1324 (4th ed.).  Individual counts are required "only when they

arise out of separate transactions or occurrences."  *Id.*  However, this requirement is

limited because, even when there is "a distinct claim arising out of a separate

transaction or occurrence, Rule 10(b) only requires a separate statement if a clear

presentation of the issues presented by the case will be facilitated thereby."  *Id.*

Even if Count One can be read to set forth separate transactions and

occurrences, the Court does not find it necessary for a clear presentation of the

issues to require Relators to file yet another amended pleading separating the

claims in Count One.  The manner in which Relators have presented the claims in

the Second Amended Complaint does not interfere with the ability to understand

their claims, nor does it otherwise work any prejudice to State Farm.  To the extent

State Farm seeks dismissal on this basis, its Motion will be denied.

f. State Farm's request for a more definite statement

In the event that not all of Relators' claims are dismissed, State Farm requests in the alternative a more definite statement pursuant to Rule 12(e) "setting forth in detail which numbered factual allegations are pled in support of any remaining claim and striking the remainder of the allegations." Mot. [1632] at 1; *see also* Mem. [1633] at 22 n.18.

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Rule 12(e) provides in relevant part that

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). Such a motion is appropriate "[i]f a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed . . . ." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

The Court has carefully reviewed the Second Amended Complaint and cannot say that it is so vague or ambiguous that State Farm cannot reasonably frame a response. *See* Fed. R. Civ. P. 12(e); *Beanal*, 197 F.3d at 164. Nor does the Second Amended Complaint fail to make specific allegations in a manner sufficient to afford State Farm notice so that it may formulate a defense. *See Swierkiewicz*, 534

U.S. at 514.  State Farm's request for a more definite statement will be denied.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [1634] to Dismiss for Lack of Subject-Matter Jurisdiction is **GRANTED IN PART**, to the extent it seeks dismissal of Relators' claim in Count One of the Second Amended Complaint [1623] that State Farm submitted an express false certification by sending bills or statements of withdrawal seeking payment for adjusting fees for conducting line-by-line estimates under FEMA's normal fee schedule when it had in fact used an expedited procedure, and this claim is **DISMISSED** for lack of jurisdiction under 31 U.S.C. § 3730(e)(4) (2006).  The Motion [1634] is **DENIED IN PART**, to the extent it seeks dismissal of Relators' claims in Count One that: (1) State Farm submitted an implied false certification for at least every property on the List when it represented to FEMA that each property incurred flood damage equal to or exceeding the SFIP flood limits even though did not perform the required line-by-line estimates for each; and (2) State Farm submitted an express false certification when it placed a long-form XacTotal report in a flood file for properties where it did not perform a line-by-line estimate.  These claims will proceed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [1632] to Dismiss Relators Cori Rigsby and Kerri Rigsby's Second Amended Complaint [1623] is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 26th day of March, 2021.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

50