IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. <br> CORI RIGSBY and KERRI RIGSBY | RELATORS/COUNTER-DEFENDANTS |
| v. | CASE NO. 1:06cv433-HSO-JCG |
| STATE FARM FIRE AND CASUALTY COMPANY | DEFENDANT/COUNTER-PLAINTIFF |

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**

Pursuant to the Federal Arbitration Act ("FAA"), the Financial Assistance/Subsidy Arrangement (the "Arrangement"), and applicable law, Defendant State Farm Fire and Casualty Company ("State Farm"), submits this memorandum of law in support of its Motion to Stay Proceedings with respect to the False Claims Act ("FCA") claims in this action[1] until after arbitration has concluded in accordance with State Farm's June 18, 2021 Amended Arbitration Demand to the Federal Emergency Management Agency ("FEMA").

## INTRODUCTION

The Arrangement – the agreement between State Farm and the United States governing State Farm's participation as a Write Your Own ("WYO") carrier in the National Flood Insurance Program – provides for arbitration of any misunderstandings or disputes between State Farm and FEMA with reference to any factual issue under that Arrangement. (Ex. 1 to Mtn., at 13.) As this Court is aware from the briefing on State Farm's pending [1688] Motion to Compel Arbitration, State Farm's position is that the allegations raised in the [1623] Second Amended Complaint ("SAC"), which center on State Farm's supposed non-compliance with standards set

---

[1] State Farm is not seeking a stay of proceedings with respect to the separate counterclaims that it has brought against Kerri Rigsby and Cori Rigsby (the "Rigsbys"). Those claims – arising out of the Rigsbys' conduct in their personal capacity – are not subject to State Farm's arbitration agreement with the United States.

1

forth in a FEMA Bulletin issued to WYOs, are subject to arbitration under the Arrangement. The United States, however, has opposed the Motion to Compel, claiming that this Court cannot compel the United States to arbitration under Section 4 of the FAA because it is not a formal "party" in this case.  As State Farm has laid out in its Reply to the United States' [1693] Opposition, this United States' position is flatly at odds with its legal status as the real party in interest in this case as well as its retained control over the FCA claims at issue.

Because those FCA claims of the United States were disputes being pursued in this litigation, there was no need for State Farm, as the defendant, to serve an arbitration demand with respect to them, and State Farm instead moved to compel them to arbitration pursuant to the FAA in its [1688] Motion.  After filing its Motion to Compel, State Farm initiated a separate arbitration with FEMA on May 18, 2021 (the "May 18 Demand," Ex. 2 to Mtn.), identifying several discrete factual disputes that relate to the SAC claims.  On June 15, 2021, FEMA counsel responded by letter, questioning whether the matters identified by State Farm qualify for arbitration under the Arrangement (the "June 15 Response," Ex. 3 to Mtn.).  State Farm addressed the issues raised by FEMA by amending the May 18 Demand on June 18, 2021 (the "Amended Demand," Ex. 4 to Mtn.), including a clarification that this Amended Demand was not seeking an arbitral determination of ultimate FCA liability as that dispute is subject to the separate [1688] Motion to Compel (with a separate request for a stay to the extent arbitration is compelled as to the FCA claims).  The instant Motion to Stay seeks a stay pending the narrower State Farm-initiated arbitration of the four discrete disputes identified in the Amended Demand.

Because Section 3 of the FAA provides for a mandatory stay of proceedings where an action is brought on issues referable to arbitration, regardless of whether a party to that suit can be compelled to arbitration under Section 4 of the FAA, State Farm's Amended Demand

2

provides an independent basis for this Court to stay the proceedings here without the Court having to address, or regardless of any Court decision with respect to, (a) whether the United States is a "party" to this action, (b) whether the FCA claims themselves can be ordered to arbitration, or (c) whether the [1688] Motion to Compel Arbitration should be granted in full.[2]

The allegations raised in the SAC contain numerous issues referable to arbitration under the Arrangement (beyond the question of ultimate FCA liability which also is referable to arbitration as discussed in the separate [1688] Motion to Compel). Several of these SAC issues are identical to the disputes described in the Amended Demand, including the contested SAC allegation that State Farm failed to comply with a so-called "line-by-line" requirement that purportedly applied to WYO carriers pursuant to FEMA Bulletin W-5054 and a contested SAC allegation that FEMA did not authorize State Farm as a WYO carrier to use XactTotal to adjust certain categories of Hurricane Katrina flood claims. The fact that these allegations are raised in a *qui tam* complaint in which the United States has declined to intervene and that the "parties" asserting the claims are not signatories to the Arrangement are not relevant to the central question of this stay motion, which is whether the SAC alleges issues referable to arbitration. The answer to that central question is "yes" and, consequently, a stay of proceedings is warranted.

Moreover, even if a stay were not mandatory, this Court in the exercise of discretion can enter an order staying this proceeding pending resolution of the separate State Farm-FEMA arbitration, and the Court should do so because the arbitration undoubtedly will impact the

---

[2] To be clear, State Farm is not in any way withdrawing its [1688] Motion to Compel and respectfully submits that it should be granted in full for all of the reasons stated in State Farm's briefing in support of that motion.

claims in the SAC.[3]  State Farm does not anticipate a lengthy arbitration over these issues. Rather, State Farm expects FEMA to confirm that, contrary to the allegations raised in the SAC in the name of the United States, State Farm's position on these issues is correct.  Such confirmation from FEMA would be consistent with the fact that, in its [1693] Opposition to State Farm's [1688] Motion to Compel Arbitration and its June 15 Response to State Farm's May 18 Demand, neither the United States nor FEMA has in any manner adopted or supported the SAC's factual allegations of non-compliance with FEMA requirements.

That confirmation also would be consistent with the facts, including that FEMA permitted State Farm's use of XactTotal on the flood claims at issue in the SAC.  Indeed, in its [1693] Opposition, the United States emphasized that "FEMA has not challenged the adjustment of or denied payment on any claims submitted by State Farm under the WYO Arrangement." ([1693] at 6.)  And in its June 15 Response, FEMA "recognize[d] the tremendous efforts that State Farm put forth to make the NFIP a success, particularly during Hurricane Katrina."  (Ex. 3 to Mtn., at 2.)

Accordingly, whether pursuant to FAA Section 3 or in the exercise of discretion, the Court should grant this Motion to Stay pending the outcome of the separate State Farm-FEMA arbitration.[4]

---

[3] The Court may issue such a discretionary stay without reaching the issue of arbitrability under Section 3 of the FAA.  *See, e.g.*, *PASI of LA, Inc. v. Harry Pepper & Assocs., Inc.*, No. 1:15cv369, 2016 WL 2993199, at *3 (S.D. Miss. May 23, 2016) (Ozerden, J.).

[4] The United States' position, expressed in its [1693] Opposition to State Farm's [1688] Motion to Compel Arbitration, is that it is not a "party" to this action.  *See* ([1693] at 2.)  As such, the United States has no basis on which to object to a stay of these proceedings pending the separate arbitration between State Farm and FEMA.  Even if it had the ability to do so, however, it would be foreclosed from registering any such objection because, pursuant to the May 29, 2020 Non-Waiver of Arbitration Rights Agreement entered into by the U.S. Department of Justice, FEMA, and State Farm, the United States agreed not to oppose a motion to stay pending arbitration and authorized State Farm to so inform the Court of the United States' non-opposition.  (Ex. 5 to Mtn., at 2.)

4

## **A**RGUMENT

In keeping with the "strong national policy favoring arbitration of disputes," *Primerica Life Ins. Co v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002), Section 3 of the FAA provides for a mandatory stay of proceedings where, as here, those proceedings involve issues referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In evaluating a motion to stay under Section 3, the court "first determine[s] whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of that agreement." *Midwest Mech. Contractors, Inc. v. Commonwealth Const. Co.*, 801 F.2d 748, 750 (5th Cir. 1986). "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id.* at 751.

Under Section 3, the operative inquiry is whether matters in the litigation are "issues referable to arbitration." If so, a stay is mandatory. It does not matter whether the United States is a "party" to this action, and it makes no difference that the Rigsbys are not signatories to the arbitration agreement. "Perhaps that would be true if § 3 mandated stays only for disputes between parties to a written arbitration agreement. But that is not what the statute says. It says that stays are required if the claims are 'referable to arbitration under an agreement in writing.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). *See Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000) (staying all claims in litigation, even as to plaintiffs who were non-signatories, pending outcome of arbitration between signatories); *Subway Equip. Leasing Corp.*

5

*v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999) (finding that litigation should be stayed even as to parties having no right to arbitrate because issues presented in the litigation were the subject of an arbitration agreement).[5]  Indeed, "a district court may order a stay under section 3 even when it cannot compel arbitration in accordance with section 4 of the Act[.]" *Midwest Mech. Contractors, Inc.*, 801 F.2d at 751.

I.   **THERE IS NO DISPUTE THAT A WRITTEN AGREEMENT TO ARBITRATE EXISTS**

State Farm briefed the existence of the Arrangement as a written agreement to arbitrate in its [1688] Motion to Compel Arbitration, and neither the United States nor the Rigsbys challenged the existence or validity of that arbitration agreement in their Oppositions thereto.  In its June 15 Response to State Farm's May 18 Demand, FEMA likewise acknowledged the Arrangement and its arbitration provision.  *See* (Ex. 3 to Mtn.)  Moreover, two federal courts – the Fourth Circuit in *United States v. Bankers Insurance Co.* and the District of Maryland in *United States ex rel. Lutz v. Electronic Data Systems, Inc.* – have evaluated the Arrangement's arbitration provision and determined it to be valid and enforceable.  *See Under Seal v. Under Seal*, 326 F.3d 479, 480 (4th Cir. 2003) (describing sealed decision below in *Lutz*); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 321 (4th Cir. 2001).

The Arrangement was published as an appendix to Title 44, Part 62 of the Code of Federal Regulations.  Like all WYO carriers, State Farm annually executed the Arrangement with FEMA, including one in effect during the aftermath of Hurricane Katrina when State Farm adjusted the flood claims at issue in this litigation.  *See* (Ex. 1 to Mtn.)  Article VIII of the Arrangement – entitled "Arbitration" – specifies in part:

---

[5] Even if the United States and the Rigsbys had distinct claims in the litigation, the Court could rest "as a matter of its discretion to control its docket" on its power to "stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983).

6

> If any misunderstanding or dispute arises between the Company and the FIA with reference to any factual issue under any provisions of this Arrangement or with respect to the FIA's nonrenewal of the Company's participation, other than as to legal liability under or interpretation of the standard flood insurance policy, such misunderstanding or dispute may be submitted to arbitration for a determination that shall be binding upon approval by the FIA.

(Ex. 1 to Mtn., at 13.)[6]

## II.  ARBITRATION STATUS IS NOT RELEVANT TO THE STAY

Under Section 3, "there is no specific requirement that arbitration actually be pending before a stay of litigation can be granted[.]" *Midwest Mech. Contractors, Inc.*, 801 F.2d at 750. *See also Horizon Navigation Ltd. v. Progressive Barge Line, Inc.*, 365 F. Supp. 3d 715, 724 (E.D. La. 2019) (recognizing that "the U.S. Supreme Court has affirmed a stay of litigation in which no affirmative demand for arbitration had been made, no motion to compel arbitration had been sought, and there were, at that point in the litigation, apparently no ongoing arbitration proceedings" (citing *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449, 453-54 (1935))).

Here, however, State Farm has initiated arbitration with FEMA. (Ex. 2 to Mtn.)  And, in response to FEMA's letter raising questions about the sufficiency of the May 18 Demand, State

---

[6] 42 U.S.C. § 4083(a) authorized the FIA Administrator to agree to this arbitration provision: "The Administrator is authorized to make final settlement of any claims or demands which may arise as a result of any financial transactions which he is authorized to carry out under this subchapter, and may, to assist him in making any such settlement, refer any disputes relating to such claims or demands to arbitration, with the consent of the parties concerned."  The Arrangement is a financial transaction that the Administrator is authorized to carry out under the subchapter.  *See* 42 U.S.C. § 4081(a) ("In administering the flood insurance program under this subchapter, the Administrator is authorized to enter into any … appropriate arrangements which may, from time to time, be necessary for the purpose of utilizing, on such terms and conditions as may be agreed upon, the facilities and services of any insurance companies …; and such … arrangements may include provision for payment of applicable operating costs and allowances for such facilities and services as set forth in the schedules prescribed under section 4018 of this title.").  Thus, the agreement between the United States and WYO carriers to arbitrate disputes "with reference to" any provisions of the Arrangement is fully enforceable without additional reference to Section 4083(a).

7

Farm served an Amended Demand. (Ex. 4 to Mtn.) Thus, while initiation of arbitration is not a precondition for entry of a stay, arbitration has been commenced here as to four discrete categories of disputes.

Even if, as State Farm expects, FEMA confirms its agreement with State Farm's position on the disputes identified for arbitration, a stay of this litigation pending arbitration is appropriate. "In other words, once a stay is granted under Section 3, litigation of the dispute may end there if the claimant chooses not to pursue its claims in arbitration," and "a stay under Section 3 need not result in arbitration[.]" *Horizon Navigation Ltd.*, 365 F. Supp. 3d at 724 (quoting *Sims v. Montell Chrysler, Inc.*, 317 F. Supp. 2d 838, 841 (N.D. Ill. 2004)). Here again, while the Rigsbys – acting on behalf of the United States – have asserted State Farm's non-compliance with supposed obligations as a WYO carrier under the Arrangement, the United States pointedly has stated in its [1693] Opposition to the [1688] Motion to Compel that FEMA itself has not challenged or denied payment of any flood claims adjusted by State Farm. *See* ([1693] at 6.) It is of no moment for the present stay inquiry that State Farm and FEMA thus may quickly resolve any dispute between them without a full arbitral proceeding being necessary. If that occurs, then the stay will be short-lived.[7]

### III. THE ISSUES RAISED IN THE AMENDED ARBITRATION DEMAND ALSO ARE ISSUES IN THIS LAWSUIT

As briefed in State Farm's papers in support of its [1688] Motion to Compel Arbitration, the Arrangement's arbitration provision is extremely broad, covering "any misunderstanding or dispute" that arises between State Farm and FEMA with reference to "any factual issue under

---

[7] State Farm will notify this Court of any resolution of the arbitrable disputes, including if FEMA further confirms that no dispute exists due to an alignment of positions. Presently, however, a dispute exists because the United States has allowed the Rigsbys to assert as much through its SAC allegations for and in the name of the United States.

any provisions" of the Arrangement.[8] (Ex. 1 to Mtn., at 13.) *See Bankers Ins. Co.*, 245 F.3d at 324 n.10 ("This arbitration provision is an example of the broadest type of arbitration agreement[.]").

The Amended Demand identifies misunderstandings or disputes that fall within the broad scope of that arbitration provision:

(a) State Farm's position is that FEMA – whether via its Bulletin W-5054, issued on September 21, 2005, or through FEMA regulations, policies, and procedures documents – did not impose a requirement on WYO carriers, including State Farm, to use a "line-by-line" estimating methodology to adjust flood claims on all properties damaged by Hurricane Katrina that would fall within the ambit of W-5054's Process #3. The position put forward by third parties, acting for and in the name of the United States, is that Bulletin W-5054 did impose a requirement on WYO carriers, including State Farm, to use a "line-by-line" estimating methodology to adjust flood claims on all properties damaged by Hurricane Katrina that would fall within the ambit of W-5054's Process #3.

(b) State Farm's position is that FEMA authorized State Farm's use of XactTotal instead of a "line-by-line" estimating methodology to assist in the adjustment of flood claims on properties, including those damaged by Hurricane Katrina, with a site visit where losses appeared to exceed policy limits. The position put forward by third parties, acting for and in the name of the United States, is that FEMA prohibited State Farm's use of XactTotal instead of a "line-by-line" estimating methodology in these same circumstances.

(c) State Farm's position is that FEMA authorized State Farm's use of its Flood Square Foot Calculator to assist in the adjustment of flood claims on certain properties damaged by Hurricane Katrina. The position put forward by third parties, acting for and in the name of the United States, is that FEMA prohibited State Farm's use of its Flood Square Foot Calculator.

---

[8] For the reasons stated in State Farm's Reply to the Rigsbys' [1694] Opposition to the [1688] Motion to Compel Arbitration, the one carve-out to this broad provision (for "other than as to legal liability under or interpretation of the standard flood insurance policy") is not applicable here. Nowhere, in either FEMA's June 15 Response to State Farm's arbitration demand or the [1693] Opposition, has the United States argued that the carve-out is applicable to the issues raised in the arbitration or in this litigation.

9

>   (d)     State Farm's position is that, even if State Farm's use of XactTotal or the Flood Square Foot Calculator were prohibited, (i) State Farm's use was not material to FEMA's decision to pay Hurricane Katrina flood claims adjusted by State Farm, and/or (ii) FEMA, with knowledge of such use, would not have paid a lesser amount on Hurricane Katrina flood claims adjusted by State Farm. The position put forward by third parties, acting for and in the name of the United States, is that (i) the use of a "line-by-line" estimating methodology was material to FEMA's decision to pay Hurricane Katrina flood claims, and (ii) FEMA, with knowledge of a failure to use a "line-by-line" estimating methodology, would have paid a lesser amount or not at all on Hurricane Katrina flood claims.

(Ex. 4 to Mtn., at 3-4.)

Allegations that State Farm – as a WYO carrier adjusting flood claims for FEMA pursuant to the Arrangement – used unauthorized adjustment methodologies and documentation to adjust and pay those claims easily qualify as factual issues under provisions of the Arrangement. For instance, Article II.A.2 covers Claims Processing: "All claims processing must be processed in accordance with the processing of all the companies' insurance policies and with the Financial Control Plan. Companies will also be required to comply with the FIA Policy Issuances and other guidance authorized by FIA or the Federal Emergency Management Agency ('FEMA')." (Ex. 1 to Mtn., at 5.) And the Arrangement also covers the payment of claims in Articles III.D and IV.A. *Id.* at 8, 10.[9]

These same disputes also are at issue in the litigation.[10] As explained in State Farm's briefing in support of its [1688] Motion to Compel Arbitration, both SAC counts are dependent on allegations about State Farm's claims processing and payment conduct as a WYO carrier.

---

[9] To the extent any doubt exists, all "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

[10] While the SAC presently makes no allegations with respect to State Farm's use of its Flood Square Foot Calculator – which use is identified as in dispute in the Amended Demand – if the Rigsbys moved to amend the complaint to add such allegations, the issue would be referable to arbitration.

10

The SAC makes specific allegations regarding whether there was a line-by-line requirement, whether use of XactTotal was prohibited in certain circumstances, and whether use of XactTotal was material to FEMA. *See, e.g.*, ([1623] ¶ 126) ("State Farm was required to ascertain the amount of flood damage by performing line-by-line estimates …."); *id.* ¶ 47 ("State Farm's shift from line-by-line estimates to XacTotal to adjust NFIP flood claims for homes that were still standing in the wake of Katrina was a willful violation of the controlling FEMA directive and industry standards."); *id.* ¶ 141 ("The so-called long form XacTotal reports were material to State Farm's claims for payment to the federal government because they appeared deceptively to be a line-by-line estimate." (internal quotations omitted)). All of these are issues referable to arbitration under the Arrangement and, indeed, are included as discrete dispute categories in the Amended Demand.

While the Rigsbys are a party to this litigation, their status as non-signatories to the Arrangement need not be addressed in order for a stay to issue.[11] As the Fifth Circuit explained in a somewhat analogous situation:

> Because [defendant 1's] potential liability derives from [defendant 2's] conduct, the claims asserted against [defendant 1] are based on the same operative facts and are inherently inseparable from the claims against [defendant 2]. Furthermore, a suit against [defendant 1] could have a critical impact in the [defendant 2] arbitration. If [defendant 1] were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration. Therefore, we fail to see how litigation could proceed as to [defendant 1] without adversely affecting [defendant 2's] right to arbitrate.

---

[11] As explained in State Farm's Reply to the Rigsbys' [1694] Opposition to the [1688] Motion to Compel Arbitration, the Rigsbys only are partial assignees of the United States and thus the FCA claims in the SAC – which continue to belong to the United States – are subject to the arbitration agreement despite the Rigsbys' non-signatory status. *See Arthur Andersen LLP*, 556 U.S. at 630 ("Neither [FAA Sections 2 or 3] purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)."). The Court can grant a stay pursuant to FAA Section 3 and the Amended Demand, however, without actually compelling the FCA claims to arbitration because the allegations in the SAC involve issues referable to arbitration.

*Harvey*, 199 F.3d at 795-96 (internal citations omitted).  *See also Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004) (considering "the similarity of operative facts, the inseparability of claims, and the effect of the litigation on the arbitration" in assessing mandatory stay as to non-signatory claims).  Here, the operative facts in the State Farm-FEMA arbitration and in the SAC as to W-5054, any "line-by-line" requirement, and XactTotal are not only similar, they are the same.

### IV.  THIS COURT CAN ORDER A DISCRETIONARY STAY PENDING THE OUTCOME OF THE STATE FARM-FEMA ARBITRATION

Finally, even if this Court declined to reach the question or determined that a mandatory stay was not warranted under FAA Section 3, the Court nevertheless "has the discretion to stay claims between non-arbitrating parties pending the outcome of an arbitration as a means of controlling its docket."  *PASI of LA, Inc.*, 2016 WL 2993199, at *2 (citing *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *United States ex rel. John Jamar Const. Servs. v. Travelers Cas. & Sur. Co. of Am.*, No. CIV.A. H-14-3363, 2015 WL 757858, at *1 (S.D. Tex. Feb. 23, 2015)).  That discretionary authority "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Id.* (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009)).  *See also DRW Texas LLC v. McGrew*, No. A-19-CV-00830, 2019 WL 7761812, at *7 (W.D. Tex. Oct. 31, 2019).

Because of the likelihood that the outcome of the State Farm-FEMA arbitration will significantly impact the trajectory of this litigation (and, State Farm believes, completely undermine it), such a stay is warranted in the interests of a just and efficient resolution of this litigation.  And, as noted above, this Court need not reach and address the issue of arbitrability in order to grant that discretionary stay.  *See PASI of LA, Inc.*, 2016 WL 2993199, at *3.

## CONCLUSION

For these reasons, the Court should stay proceedings with respect to the FCA claims in this action pending conclusion of the arbitration between State Farm and FEMA.

This the 18th day of June, 2021.

                                          Respectfully submitted,

                                          STATE FARM FIRE AND CASUALTY COMPANY

By:    s/ *E. Barney Robinson III* (MB # 09432)
           Michael B. Beers, PHV (ASB-4992-S80M)
           Phil B. Abernethy (MB # 1023)
           E. Barney Robinson III (MB # 09432)
           Amanda B. Barbour (MB # 99119)
           Michael C. McCabe, Jr. (MB # 101548)
           Douglas W. Baruch, PHV (DC Bar # 414354)
           Jennifer M. Wollenberg, PHV (DC Bar # 494895)

                                          ITS ATTORNEYS

OF COUNSEL:

Butler Snow LLP
Post Office Drawer 4248
Gulfport, MS  39502
(P) (228) 575-3025
(E) michael.mccabe@butlersnow.com

Butler Snow LLP
250 Commerce Street, Suite 203
Montgomery, AL  36104
(P) (334) 832-2900
(F) (334) 832-2901
(E) michael.beers@butlersnow.com

Butler Snow LLP
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) phil.abernethy@butlersnow.com
(E) barney.robinson@butlersnow.com
(E) ben.watson@butlersnow.com
(E) amanda.barbour@butlersnow.com

Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, D.C.  20004-2541
(P) (202) 739-5219
(F) (202) 739-3001
(E) douglas.baruch@morganlewis.com
(E) jennifer.wollenberg@morganlewis.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all parties to this action by e-file using the Court's CM/ECF system.

THIS the 18th day of June, 2021.

        By:      /s/ *E. Barney Robinson III* (MB # 09432)
                   E. Barney Robinson III (MB # 09432)